The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| SCOTT AND KATHRYN KASEBURG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 14-cv-00784-JCC |
| | ) | |
| vs. | ) | KING COUNTY'S MOTION TO |
| | ) | DISMISS |
| PORT OF SEATTLE,  a municipal corporation; | ) | |
| PUGET SOUND ENERGY, INC., a Washington | ) | NOTE ON MOTION CALENDAR: |
| for profit corporation and KING COUNTY, a | ) | October 3, 2014 |
| home rule charter county, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.     RELIEF REQUESTED

In this action, plaintiffs' claim broad property rights under the Trails Act, 16 U.S.C.

§1247(d), to a "railbanked" railroad corridor that was formerly owned by BNSF and is now

owned by King County.  Their action rests on the novel legal theory that BNSF "abandoned [its]

easement for railroad purposes on the surface of Plaintiffs' fee ownership," and that the Port of

Seattle (Port) and King County "merely acquired a surface easement [from BNSF] for a hiking

and biking trail on Plaintiffs' property with the possible reactivation of a railroad."  Dkt. 1-2 at p.

52, ¶129 (First Amended Complaint).  Plaintiffs' reading of the Trails Act for this unprecedented

conclusion is foreclosed by the Supreme Court's holdings in the seminal railbanking case of

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

*Preseault v. I.C.C.*, 494 U.S. 1, 8 (1990).  In *Preseault*, the Court held that the Trails Act actually operates to "*prevent*[] property interests from reverting under state law" to the owner of the underlying fee estate. (Emphasis added).   Because plaintiffs misconstrue the Trails Act, rely on preempted state law remedies, and raise matters outside the Court's subject matter jurisdiction, the Court should dismiss this matter under Fed. R. Civ. P. 12(c) for failure to state a claim and lack of subject matter jurisdiction.

## II.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

Plaintiffs purport to own property along the railroad corridor that runs from milepost 5.0 near Kennydale to milepost 10.6 at Wilburton along the Eastern shore of Lake Washington (South Rail Corridor).[1]  Dkt. 1-2 at p. 6, ¶1.  The South Rail Corridor is part of the Seattle Branch Line (the "Line"), a roughly 19.5 mile long railroad segment running along the eastern shore of Lake Washington between Woodinville and Renton.

### A.    BNSF Conveys Its Property Interests in the South Rail Corridor to the Port.

According to the First Amended Complaint, predecessors to BNSF acquired easements over plaintiffs' properties in the late 1800s and the early 1900s for "railroad purposes."  *Id.* at p. 6, ¶2 & p. 41, ¶92.  Until mid-2008, the Line was actively used for freight rail service.  *Haggart v. United States*, 108 Fed.Cl. 70, 75 (Fed. Cl. 2012).[2]

---

[1] In accord with Fed. R. Civ. P. 12(b) & (c), King County accepts the facts as plead in the First Amended Complaint as true for purposes of this motion only.  King County otherwise disputes plaintiffs' various factual claims, including the nature of the ownership interest enjoyed by some plaintiffs, as outlined in King County's Answer and Counterclaim.  *See* Dkt. 18 (King County's Answer and Counterclaim).

[2] Plaintiffs reference and rely upon the *Haggart* matter in their complaint.  As such, the Court may take judicial notice of the facts stated in the various *Haggart* decisions without converting King County's motion into one for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (A court may judicially notice "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment).  Certain legal conclusions reached by the *Haggart* court, including its characterization of some of the underlying railroad deeds under Washington law, are not raised in this motion and are not binding on defendants, who were not parties to the *Haggart* case.

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820  Fax (206) 296-8819

1    On May 12, 2008, BNSF entered into a series of agreements with the Port and King

2    County to transfer its interests in the Line to the Port and designate King County to serve as

3    Interim Trail Manager for "railbanking."[3]  Dkt. 1-2 at pp. 44-45, ¶¶104-05.  The agreements,

4    which concern the property and contemplate a conveyance from BNSF to the Port and King

5    County following railbanking, are attached to the First Amended Complaint.  *See* Dkt. 4-1 at p. 9

6    (Ex. C to Complaint), p. 31 (Ex. D to Complaint), & p. 73 (Ex. G to Complaint).

7    These agreements were contingent on approval from the Surface Transportation Board

8    (STB) and the satisfaction of other conditions precedent.  As successor to the Interstate

9    Commerce Commission (ICC), the STB has exclusive and plenary authority over freight rail

10   operations in interstate commerce, including the abandonment of rail corridors. *See* 49 U.S.C. §

11   10903-04.

12   To obtain STB approval for interim trail use, railbanking and the transfer of BNSF's right

13   to restore service along the South Rail Corridor to King County, all parties to the agreement were

14   required to actively pursue STB approval for the overall deal.  Dkt. 1-2 at pp. 45-46, ¶105; Dkt.

15   4-1 at pp. 43-44 (Ex. D to Complaint, pp. 13-14).  In September 2008, BNSF filed the

16   appropriate petition with the STB.  Dkt. 4-1 at p. 1(Ex. A to Complaint), p. 6 (Ex. B to

17   Complaint); *see also BNSF Ry. Co. -- Abandonment Exemption -- in King Cnty., Wa*, AB-6 (Sub.

18

19

20

21

22   ---

[3] In response to the drastic shrinkage of the national rail transportation system during the middle decades

23   of the 20th century, Congress in 1983 amended the National Trails System Act to create the "railbanking"
program. The railbanking statute, 16 U.S.C. § 1247(d), authorizes state and local governments to acquire
railroad corridors proposed for abandonment for use as recreational trails, subject to future reactivation
for railroad use.

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

No. 464X), 2008 WL 3992071 (STB Sept. 8, 2008).[4]  On September 18, 2008, King County

filed a request for issuance of a Notice of Interim Trail Use (NITU) in order to allow railbanking,

and interim trail.  Dkt. 4-1 at p. 1 (Ex. A to Complaint).  Through a separate filing, King County

also requested the STB's approval for the transfer of railroad reactivation rights from BNSF to

the County.  *King County, Washington – Verified Petition for an Exemption from 49 U.S.C.

§10901*, Finance Docket No. 35148 (STB Sept. 22, 2008)

The STB, in conducting its environmental assessment of the BNSF petition, determined

that the proposal would not significantly affect the quality of the human environment and

therefore did not require a full environmental impact statement.  *BNSF Ry. Co.--Petition for

Exemption--in King Cnty., Wa*, AB-6 (Sub-No. 464X), 2008 WL 4459403 (S.T.B. Oct. 3, 2008).

The Board reached this decision after noting that BNSF was "closely coordinating" its actions as

part of a multi-transaction arrangement with the Port and King County, and that the Port intended

that the line be railbanked under 16 U.S.C. § 1247(d) with King County as the Interim Trail

Manager. *Id.*  The Board also acknowledged that "the Port will determine the line's ultimate use

after seeking input from the public."  *Id.*

On October 27, 2008, the STB issued its Decision and NITU, which modified the BNSF

exemption and authorized railbanking of the Line.  Dkt. 4-1 at p. 6 (Ex. B to Complaint).  The

Board determined to issue the NITU:  "Because King County's request complies with the

requirements of 49 CFR §1152.29 and BNSF is willing to negotiate for trail use, a NITU will be

---

[4] This Court may take judicial notice of filings before the STB and the Board's decisions. *Yreka W. R.
Co. v. Tavares*, CIV. 2:11-1868 WBS, 2012 WL 2116500 (E.D. Cal. June 4, 2012)(*citing Burbank–
Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir.1998)). The First
Amended Complaint incorrectly identifies the relevant petition as AB-6 (Sub-No 465X), filed on August
11, 2008.  See Dkt. 1-2 at p. 44, ¶102.  However, that petition relates to a different segment of the Line,
not the South Rail Corridor.  See *Id*. at ¶¶104-105.  As evidenced by the exhibits to the First Amended
Complaint, AB-6 (Sub-No. 464X) is the petition relevant to the South Rail Corridor at issue in this
matter.  See Dkt. 4-1 at p. 1 (Ex. A to Complaint), p. 6 (Ex. B. to Complaint), and p. 73 (Ex. G to
Complaint).

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    issued." *Id.* BNSF and King County were given 180 days to negotiate a trail agreement. The

2    Board's seven-part order contains provisions that interim trail use/railbanking is subject to both

3    "the future restoration of rail service" and to the trail sponsor's willingness to meet various

4    conditions. *Id.*

5        A September 17, 2009 STB decision approved the transfer of BNSF's right to reactivate

6    the South Rail Corridor to King County. *King Cnty., Wa--Acquisition Exemption--BNSF Ry.*

7    *Co.*, Fed. Carr. Cas. (CCH) ¶ 37322, 2009 WL 2979430 (S.T.B. Sept. 17, 2009). The STB

8    recounted the plans for the line, including the South Rail Corridor:

9
        BNSF, King County, and the Port of Seattle (Port) filed a joint pleading stating that the
        parties have agreed to a series of proposed transactions that are intended for: BNSF to
10      enter into an interim trail use agreement with King County, the Port to acquire the real
        property and physical assets of the rail segments, and BNSF to transfer its remaining
11      rights to reactivate rail service on these segments to King County.

12   *Id.* The Board indicated that its role was "to see if the trail sponsor meets the statutory and

13   regulatory requirements to be a trail sponsor, that the railroad agrees to trail use, and that nothing

14   occurs that would preclude a railroad's right to reassert control over the [corridor] at some future

15   time to revive rail service." *Id.* It determined that there was no conflict between King County's

16   role as trail sponsor and its ownership of BNSF's reactivation rights in the corridor.

17        On December 18, 2009, with regulatory approval completed for the key portions of the

18   deal, BNSF, the Port and the County proceeded to closing. Dkt. 4-1 at p. 73 (Ex. G to

19   Complaint). A February 4, 2010 letter from BNSF to the STB provides notice to the Board that:

20
        [O]n December 18, 2009, BNSF consummated the donation of the real property and
        physical assets of the Rail Line to the Port of Seattle, entered into a Trail Use agreement
21      with King County and transferred the reactivation rights with respect to the Rail Line to
        King County. Attached is the Verification of Susan Odom certifying compliance with the
22      Board's requirement that the transferee of the physical assets agree to comply with the
        environmental conditions imposed by the Board.

23

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

1    *Id.*  The result of the agreements was to railbank the South Rail Corridor for potential future

2    railroad use.  *Haggart,* 108 Fed.Cl. at 75-76.  All property rights formerly held by BNSF in the

3    South Rail Corridor were transferred by Quit Claim Deed to the Port.  Dkt. 1-2 at p. 46, ¶107;

4    Dkt. 4-1 at 57 (Ex. F to Complaint).

5          BNSF transferred the South Rail Corridor and other portions of the Line to the Port

6    through a Donation Agreement, which also designated King County as the Interim Trail

7    Manager.  *See* Dkt. 4-1 at p. 31, Ex. D.  The Donation Agreement provides that "BNSF agrees to

8    donate and convey to Port, and Port agrees to accept from BNSF, the Property."  *Id.* at p.3.  The

9    "Property" is broadly defined to include all of BNSF's "right, title and interest" in the "tracts or

10   parcels" that are associated with the South Rail Corridor.[5]  *Id.* at p.2.

11         The Port agreed to grant the County a "Public Multipurpose Easement" for the County's

12   use of the South Rail Corridor and Wilburton Portions. *Id.*  The Donation Agreement also

13   provided that BNSF would transfer to King County "the right and/or obligation to restore rail

14   freight service over the Railbanked portion."  *Id.* at p.13.

15         BNSF conveyed the property to the Port with limited title warranties.  The Donation

16   Agreement states that the Port and King County were willing to accept the South Rail Corridor

17   even though "BNSF may not hold fee simple title to the Property, [and] that BNSF's interest in

18   all or part of the Property, if any, may rise only to the level of an easement for railroad

19   purposes."  *Id.* at p.7.  However, BNSF affirmatively warranted that "BNSF does represent and

20   warrant that BNSF's ownership interest in and to the Property . . .  is sufficient to permit railroad

21   operations on the Property, including passenger railroad operations."  *Id.*

22

23

---

[5] The Property also includes the "Wilburton Portion," from milepost 10.6 north to milepost 11.25, which is not implicated in this lawsuit.

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

**B.      The Port Sells Easements to PSE and Sound Transit.**

As the new owner of BNSF's property interests in the South Rail Corridor, in December 2010, the Port granted an easement along the Line to PSE to "construct, operate, maintain, repair, replace, improve, remove, enlarge, and use Easement Area for one or more utility systems for purposes of transmission, distribution, and sale of electricity." Dkt. 4-1 at p. 82 (Ex. H. to Complaint at p. 2). The easement also granted PSE the right to install gas facilities. *Id.* The PSE easement includes subsurface, surface and aerial rights. *Id.*

In April 2012, the Port conveyed a portion of the Line north of the South Rail Corridor to Sound Transit. Dkt. 4-1 at p. 212 (Ex. I to Complaint at p. 4). It also granted a "high capacity transportation easement" over the entire Line, including the South Rail Corridor. *Id.* The easement acknowledged the railbanked status of the Line and allowed Sound Transit "to develop and operate High Capacity Transit Facilities" along the Line. *Id.* As with the PSE easement, the Sound Transit easement includes subsurface, surface and aerial rights. *Id*.

**C.      The Port Conveys Its Property Interests in the South Rail Corridor to King County.**

Pursuant to a purchase and sale agreement dated February 8, 2013, the Port transferred all its remaining property interests in the South Rail Corridor to King County by quit claim deed. Dkt. 4-1 at p. 133 (Ex. J to Complaint) & p. 209 (Ex. K to Complaint). As such, with regard to the South Rail Corridor, King County is currently the Interim Trail Manager, the holder of the right to reactivate for future railroad use, and the successor to all property rights previously held by BNSF (except for the easements granted by the Port).

**D.      Plaintiffs' Fully Compensated for Operation of the Trails Act.**

On February 19, 2009 – while BNSF, the Port and King County were finalizing the property transaction – a takings case was filed against the United States seeking compensation

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1   for operation of the Trails Act on the Line, including the preservation of easements along the

2   South Rail Corridor. *Haggart v. United States*, No. 09-103L (Ct. Claims 2009). The *Haggart*

3   case recently settled for nearly $140 million. The terms of the takings judgment are summarized

4   in *Haggart v. United States*, 116 Fed.Cl. 131 (Fed. Cl. 2014). Most, if not all, of the plaintiffs in

5   the current action were also part of the plaintiffs' class in *Haggart*, or successors in interest to the

6   properties held by those class members.

7   **III.   ISSUES**

8        A.    Does the Trails Act preclude plaintiffs' claim that BNSF's prior rail road

9   easement was "abandoned" and replaced by an easement for a hiking and biking trail only with

10   the potential for future reactivation of a railroad? Yes.

11        B.    To the extent that plaintiffs seek to affect an abandonment of BNSF's prior

12   railroad easement, do the ICCTA, the Trails Act, associated regulations and decisions of the STB

13   preclude this Court from granting plaintiffs' requested relief? Yes.

14   **IV.   AUTHORITY AND ARGUMENT**

15        **A.    Judgment As A Matter of Law.**

16        A Rule 12(c) motion for judgment on the pleadings is considered utilizing the same

17   standards applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

18   relief can be granted. *McGlinchy v. Shull Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988). The

19   Court should dismiss plaintiffs' First Amended Complaint "if it is clear that no relief could be

20   granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v.*

21   *Shull Chem. Co.*, 845 F.2d at 810 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.1980).

22

23

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

**B.     The Trails Act Prevents Any "Abandonment" of BNSF's Prior Railroad Easement Over the South Rail Corridor, Which Is Now Held By King County.**

Plaintiffs' cause of action depends entirely on misreading the Trails Act to nullify a valid, state law railroad easement.[6]  The First Amended Complaint admits that "prior to the implementation of the Trails Act and the granting of a quit claim deed to the Port, [BNSF] possessed an easement for railroad purposes" in the Line. Dkt. 1-2 at p. 52, ¶127.  Because the Trails Act *preserves* such easements through railbanking and *prevents* any abandonment under state law, plaintiffs' action should be dismissed.  As successor in title to BNSF, King County now owns the railroad easement along the South Rail Corridor, which under Washington law, includes subsurface, surface and aerial rights.

**1.     The Trails Act Precludes Any Claim of Abandonment And Preserves the Railroad Easement Via The Railbanking Process.**

Plaintiffs' claim for quiet title and declaratory judgment rests on the incorrect proposition that the robust railroad easement held by BNSF was somehow "abandoned" and replaced by operation of the Trails Act with only an easement for a hiking and biking trail with the potential for future reactivation of a railroad. Dkt. 1-2 at pp. 52-53, ¶¶129-30.  Plaintiffs' claim that the BNSF easement was somehow "abandoned" is contrary to the purposes and provisions of the Trails Act.

The Trails Act expressly prevents the "abandonment" of any railbanked corridor.  16 U.S.C. § 1247(d).  It broadly applies this stricture to "any law or rule of law," thereby making clear that any state law abandonment of a railroad easement is a nullity.  *Id.*  The Trails Act states:

---

[6] Although some plaintiffs have no property interest in the South Rail Corridor, for purposes of this motion only, King County will assume that BNSF enjoyed only a rail road easement over all plaintiffs' respective properties, rather than a fee simple estate.

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, *such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.*

*Id.* (emphasis added).

In accord with this language, the *Preseault* decision recognizes that the explicit purposes of the Trails Act are to *expand* railroad easements for interim trail use, and *preserve*, not diminish, existing railroad easements:

Two congressional purposes are evident. First, Congress intended to "encourage the development of additional trails" and to "assist recreation[al] users by providing opportunities for trail use on an interim basis." H.R.Rep., at 8, 9; S.Rep., at 9, 10 (same), U.S.Code Cong. & Admin.News 1983, p. 119; see also 16 U.S.C. § 1241(a) (Trails Act "promote [s] the preservation of, public access to, travel within, and enjoyment and appreciation of the open-air, outdoor areas and historic resources of the Nation"). Second, Congress intended "to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use." H.R.Rep., at 8; S.Rep., at 9, U.S.Code Cong. & Admin.News 1983, p. 119; see also 16 U.S.C. § 1247(d). These are valid congressional objectives to which the Amendments are reasonably adapted.

*Preseault*, 494 U.S. at 17-18. *See also Friends of the E. Lake Sammamish Trail v. City of Sammamish*, 361 F.Supp.2d 1260, 1274 (W.D. Wash. 2005)("The purpose of the Rails to Trails Act is not to encourage the development of recreational trails near inactive railroad rights of way—it is to encourage the transition of these railbeds into recreational trails, *and to preserve the right-of-way for possible future railroad reactivation.*").

The Supreme Court in *Preseault* laid out how the Trails Act accomplishes these goals.  It explained that "many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests." *Preseault,* 494 U.S. at 8.  Further, "[w]hile the terms of these easements and applicable state law vary, frequently the easements provide that the

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820  Fax (206) 296-8819

1   property reverts to the abutting landowner upon abandonment of rail operations." *Id.*  Congress

2   prevented such abandonment from occurring when a corridor is railbanked by providing that

3   such "interim trail use 'shall not be treated, for any purposes of any law or rule of law, as an

4   abandonment of the use of such rights-of-way for railroad purposes.'" *Id.* (quoting 16 U.S.C. §

5   1247(d)).  Congress thereby "prevented property interests from reverting under state law" when

6   railroad use ceases and a corridor is railbanked.  *Id.*

7       The Supreme Court further explained that the Trails Act "is the culmination of

8   congressional efforts to *preserve* shrinking rail trackage by converting unused rights-of-way to

9   recreational trails."  494 U.S. at 5 (emphasis added).  The Trails Act accomplishes this goal of

10  preserving rail capacity through railbanking, which authorizes state and local governments to

11  acquire railroad corridors proposed for abandonment for use as recreational trails, subject to

12  future reactivation for railroad use. 16 U.S.C. § 1247(d).

13      In response to a railroad's notice of intent to abandon service, a state or local government

14  or qualified private organization may file a "Statement of Willingness To Assume Financial

15  Responsibility" with the STB. 49 CFR § 1152.29(a).  If the railroad agrees to consider

16  railbanking, the STB issues a NITU, stating that railbanking is authorized for the corridor at

17  issue. *Id.* § 1152.29(c).  "If a state, political subdivision, or qualified private organization is

18  prepared to assume full responsibility for the management of such rights-of-way, . . . [then] the

19  Commission ... *shall not permit abandonment* or discontinuance inconsistent or disruptive of

20  such [trail] use." 16 U.S.C. § 1247(d)(emphasis added).  A railroad corridor is thus railbanked

21  rather than abandoned.  A railbanked corridor remains part of the national rail transportation

22  system subject to the jurisdiction of the STB.  *Caldwell v. United States*, 391 F.3d 1226, 1229

23

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820  Fax (206) 296-8819

1    (Fed. Cir. 2004); *Friends of the East Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp.

2    2d 1260, 1273-74 (W.D. Wash. 2005).

3          Counter to plaintiffs' position, railbanking and "conversion from railroad to trail use

4    *blocks* the abandonment of the corridor even though the conditions for abandonment are

5    otherwise met." *National Association of Reversionary Property Owners v. STB,* 158 F.3d 135,

6    138 (D.C. Cir. 1998) (emphasis added).  "[S]uch interim use *shall not be treated for purposes of*

7    *any law or rule of law, as an abandonment* of the use of [the railbanked] rights-of-way for

8    railroad purposes." *Preseault*, 494 U.S. at 6 (emphasis added).

9          Because the Trails Act operates to preserve and protect the South Rail Corridor, plaintiffs

10   lack any viable legal authority to support their claim that the BNSF railroad easement was

11   somehow "abandoned" and/or replaced by a recreational trail for hiking and biking with a

12   possible future railroad.  The Trails Act precludes operation of any state law that might otherwise

13   "provide that the property reverts to the abutting landowner upon abandonment of rail

14   operations." *Preseault*, 494 U.S. at 6.  Federal law "preempts state law on the question of

15   abandonment" because "the ICC's determination of abandonment is plenary, pervasive, and

16   exclusive of state law."  *Grantwood Vill. v. Missouri Pac. R. Co.*, 95 F.3d 654, 658 (8th Cir.

17   1996).

18         Indeed, plaintiffs' theory would undermine the purposes of the Trails Act by leaving the

19   South Rail Corridor without the railroad easement rights necessary for viable future railroad

20   operations.  Absent preservation of BNSF's former property rights along the South Rail

21   Corridor, plaintiffs may well seek to use the corridor for their own purposes – including the

22   construction of buildings and other permanent facilities that would impede the possible return of

23   railroad operations – so long as room was left for a narrow ribbon of public trail.  Plaintiffs'

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

theory also leaves many unanswerable questions about the nature, width and scope of the interim trail by replacing a well-defined railroad easement with an unwritten and undefined federal "easement" for trail use.  Complete preservation of the rail corridor as intended by Congress, with its associated property rights, avoids these problems and the follow-up litigation that plaintiffs' position would spawn.

Because plaintiffs' rely on an interpretation of the Trails Act that is contrary to *Preseault* and the Act's language, they have failed to state a claim for which relief may be granted.  The Court should dismiss this action.  *See also Glosemeyer v. Missouri-Kansas-Texas R.R.*, 879 F.2d 316, 319 (8th Cir. 1989), *cert denied*, 494 U.S. 1003 (1990) ("The key finding of [§1247(d)] is that interim use of a railroad right-of-way of trail use, when the route itself remains intact for future railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad purposes.").

## 2.   King County Now Owns BNSF's Robust State Law Railroad Easement.

Because BNSF's prior state law railroad easement was not abandoned, it is now owned by King County (subject to the PSE and Sound Transit easements conveyed by the Port).  In accord with Washington law, railroad easements provide exclusive control within the easement boundaries, including subsurface, surface and aerial rights.

The United States Supreme Court has noted that "[i]t must be admitted that a railroad company has the exclusive control of all the land within the lines of its roadway."  *Grand Trunk Railroad Co. v. Richardson*, 91 U.S. 454 (1875).  The Washington Supreme Court has similarly recognized the robust nature of a railroad easement:

> Many of the courts say that the nature of the right of way purchased or condemned by a railroad company is more than a mere easement. It has been designated as a qualified or determinable fee, although it is not very important what it is called. It is taken for a

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

specific purpose, to be held so long as devoted to that purpose. *A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. Abercrombie v. Simmons, supra, citing Western Union Tel. Co. v. Pennsylvania R. Co.*, 195 U. S. 540, 25 S. Ct. 133, 49 L. Ed. 312.

*Morsbach v. Thurston Cnty.*, 152 Wash. 562, 568-69, 278 P. 686, 688 (1929) (emphasis added).

The owner of the railroad easement is "'entitled to the exclusive use, possession, and control of the land, and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever.'" *N. Pac. Ry. Co. v. Tacoma Junk Co.,* 138 Wash. 1, 6, 244 P. 117 (1926) (quoting *Roby v. N.Y. Cent. & Hudson River R. Co.,* 142 N.Y. 176, 180, 36 N.E. 1053 (1894)).

In summarizing the broad nature of railroad easements in Washington, the Washington Court of Appeals has held that:

> A railroad right-of-way is a very substantial thing, more than a mere right of passage and more than an ordinary easement. *Morsbach,* 152 Wash. at 569, 278 P. 686 (citing *W. Union Tel. Co. v. Pa. R.R.,* 195 U.S. 540, 570, 25 S.Ct. 133, 49 L.Ed. 312 (1904) and *Abercrombie v. Simmons,* 71 Kan. 538, 81 P. 208, 211 (1905)); *State ex rel. N. Coast Ry. v. N. Pac. Ry.,* 49 Wash. 78, 84, 94 P. 907 (1908). It is often likened to a determinable fee. *See, e.g., Morsbach,* 152 Wash. at 568, 278 P. 686; *Brown,* 130 Wash.2d at 439, 924 P.2d 908. It is an easement with the substantiality of a fee and the attributes of a fee, perpetuity and exclusive use and possession; also the remedies of a fee. *Morsbach,* 152 Wash. at 569, 278 P. 686. This "fee-like" estate is frequently granted in terms usually associated with the grant of a fee simple. *See, e.g., Morsbach,* 152 Wash. at 569-70, 278 P. 686.

*Hanson Indus., Inc. v. Cnty. of Spokane*, 114 Wn. App. 523, 528, 58 P.3d 910, 914 (2002), *review denied* 149 Wn.2d 1028 (2003). *See also* Danaya C. Wright and Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 Ecology L.Q. 351, 387-88 (2000)(courts have "consistently recognized that the easement is bigger, more extensive, and exclusive as against the fee owner than most private easements and public utility easements").

A Washington railroad easement also includes subsurface, surface, and aerial rights within the corridor.  The Washington Court of Appeals addressed this question in *Kershaw*

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1   *Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 121 Wn. App. 714, 735, 91 P.3d 104,

2   116 (2004) *aff'd in part, rev'd in part*, 156 Wn.2d 253, 126 P.3d 16 (2006).[7]  Noting that a

3   railroad easement is "more than a mere right of passage," the Court of Appeals adopted the

4   majority view that:

5       The railroad right-of-way also includes the incidental below ground uses of its right-of-
        way. . .
6
7       The test for determining right-of-way uses is whether the subject use is inconsistent with
        the purposes for which the right-of-way was granted. *United States v. Union Pacific R.R.,*
8       353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957). In *Union Pacific,* the Supreme Court
        stated the railroad right-of-way uses which are incidental to, or consequential upon, those
        things which the legislature has authorized, ought not, unless specifically prohibited, to
9       be held by judicial construction to be ultra vires. *Id.*

10      This Court finds the right-of-way surface includes the non-mineral topsoil that would be
        occupied by a buried fiber optic line, and the fiber optic cable is an authorized incidental
11      use which is not inconsistent with railroad uses and does not burden the subservient estate
        retained by the Plaintiff.
12
13  *Kershaw*, 121 Wn.App. at 736 (*quoting Mellon v. Southern Pacific Transport Co.,* 750 F.Supp.

14  226, 230–31 (W.D. Tex. 1990).  It is also recognized that "[r]ailroads generally have exclusive

15  air rights over the railroad corridors" created by easement.  Wright  and Hester, *supra* at 407

16  (*cited in Kershaw*, 156 Wn.2d at 273, *Rasmussen*, 299 F.3d at 1088).

17      The inclusion of subsurface, surface and aerial rights in a railroad easement is also

18  consistent with Washington's approach to road easements.  Washington courts analogize railroad

19  easements to public highway easements.   *Washington Sec. & Inv. Corp. v. Horse Heaven*

20  *Heights, Inc.,* 132 Wn. App. 188, 194, 130 P.3d 880, 883 (2006); *see also* RCW 80.36.050

21  (defining railroads as "post roads.").  Easements granted for public highways allow not only the

22  primary purpose of public travel, but also "numerous other purposes for which the public ways

23

---
[7] The Washington Supreme Court decided the case on other grounds and neither addressed, nor altered
the lower appellate court's discussion regarding the scope of railroad easements.

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

way be used, such as for water mains, gas pipes, telephone and telegraph lines, etc." which are "termed secondary uses and are subordinate to, and permissible only when not inconsistent with, the primary object of the highways."  *State ex rel. York v. Bd. of Comm'rs of Walla Walla Cnty.*, 28 Wn.2d 891, 898, 184 P.2d 577, 582 (1947).

As a matter of law, plaintiffs have no viable claim to quiet title in the broad railroad easement rights held by BNSF and later purchased by the Port and King County.  By operation of the Trails Act, BNSF's prior easement over the South Rail Corridor was preserved against any abandonment claim.  Like BNSF before it, King County owns a railroad easement that includes fence-to-fence subsurface, surface and aerial rights along the corridor.  Plaintiff's quiet title and declaratory judgment action against King County should be dismissed.

### C.    Federal Law Precludes Plaintiffs' Action.

#### 1.    Plaintiffs Are Barred From Collaterally Attacking the STB's NITU Order.

Through its October 27, 2008 NITU Order, the STB decided to prohibit abandonment and preserve BNSF's railroad easement by both railbanking the South Rail Corridor and allowing for interim trail use.  Because plaintiffs seek to effectively undo the STB's work and cause an abandonment of the railroad easement, their action represents an attempted collateral attack against the STB's order that falls outside the jurisdiction of this Court.

A District Court lacks jurisdiction to review an STB order.  Under the Hobbs Act, 28 U.S.C. § 2321(a), the United States Court of Appeals has sole jurisdiction to review decisions of the STB:  "a proceeding to enjoin or suspend, in whole or in part, a rule, regulation or order of the Surface Transportation Board shall be brought in the court of appeals, as provided by and in the manner prescribed in chapter 158 of this title."  28 U.S.C. § 2321(a).  Chapter 158 provides that the Court of Appeals "has *exclusive jurisdiction* to enjoin, set aside, suspend . . . or to

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1  determine the validity of . . . all rules, regulations, or final orders" of the STB.  *Id.* § 2342(5)

2  (emphasis added).

3      The STB ordered railbanking and interim trail use, thereby indefinitely postponing

4  abandonment of the railroad easement along the South Rail Corridor.  16 U.S.C. 1247(d); 49

5  C.F.R. 1152.29(d)(1).  Plaintiffs' quiet title action, if successful, would effectively revise the

6  STB's orders to cause an abandonment of BNSF's prior railroad easement and compromise the

7  ability to return a railroad to the corridor.

8      A quiet title action "is in essence a collateral attack on the ICC's order authorizing interim

9  trail use on the right-of-way."  *Grantwood Vill. v. Missouri Pac. R. Co.*, 95 F.3d 654, 657 (8th

10  Cir. 1996).  Where the "practical effect" of a lawsuit is review of the STB's NITU order, the

11  District Court has no jurisdiction and must dismiss the action.[8]  *Dave v. Rails-to-Trails*

12  *Conservancy*, 79 F.3d 940, 942 (9th Cir. 1996); *Grantwood Village*, 95 F.3d at 658.  *See also*

13  *Ballard Terminal R. Co., LLC v. City of Kirkland*, C13-586MJP, 2013 WL 1990872 (W.D.

14  Wash. May 13, 2013)(District Court lacks subject matter jurisdiction to hear collateral attack

15  against STB NITU).

16/17
>           **2.      Any State Law Remedies That Would Cause An Abandonment of the**
>                     **Rail Corridor Are Pre-Empted by the ICCTA, the Trails Act and**
>                     **Associated Federal Regulations.**

18      By seeking to quiet title in BNSF's former railroad easement and declare it "abandoned,"

19  plaintiffs attempt to use state law remedies that are plainly preempted by operation of the

20  ICCTA, the Trails Act, and associated STB regulations.  Plaintiffs' have failed to state a claim

21

22

23  [8] If plaintiffs disagreed with the STB's NITU order favoring preservation and trail use, their sole option was to seek review by the Court of Appeals within the 60 day period provided by the Hobbs Act. Because the appeal period is long expired and plaintiffs failed to make their abandonment arguments before the STB, plaintiffs have waived their arguments.

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 17

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

upon which relief may be granted because state law remedies cannot operate to vitiate federal law.

Federal regulation of railroads under the ICCTA "has been recognized as 'among the most pervasive and comprehensive of federal regulatory schemes.'" *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998) (quoting *Chicago & N.W. Transp. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981)).  The ICCTA provides that:

(b) *The jurisdiction of the [STB] over –*

(1) *transportation by rail carriers and the remedies provided in this part* [49 U.S.C. §§ 10101, *et seq.*] with respect to rates classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; *and*

(2) The construction, acquisition, operation, *abandonment*, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one state

is exclusive. Except as otherwise provided in this part, *the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law*.

49 U.S.C. 10501(b) (emphasis added).

Due to federal preemption, plaintiffs cannot rely on the state law mechanisms of quiet title and declaratory judgment to limit or reduce the railroad easement over the South Rail Corridor.  "The preemption doctrine is a corollary of the Supremacy Clause of the United States Constitution, and in general provides that any municipal law that is inconsistent with federal law is without effect."  *Friends of the E. Lake Sammamish Trail v. City of Sammamish*, 361 F.Supp.2d 1260, 1273 (W.D. Wash. 2005).  Since *McCulloch v. Maryland,* 17 U.S. 316 (1819), it has been well settled that state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 18

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Here, the ICCTA and the Trails Act preempt the application of quiet title and declaratory judgment causes of action to either active, or railbanked corridors.  In *City of Auburn,* the Ninth Circuit rejected efforts to apply state and local environmental regulations to a railroad corridor:

> We believe the congressional intent to preempt this kind of state and local regulation of rail lines is explicit in the plain language of the ICCTA and the statutory framework surrounding it. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 486, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).  Because congressional intent is clear, and the preemption of rail activity is a valid exercise of congressional power under the Commerce Clause, we affirm the STB's finding of federal preemption.

*City of Auburn,* 154 F.3d at 1031(footnotes omitted).

Given the preemption of local regulatory efforts, it follows that state law remedies like quiet title – which operate to reduce the scope of a railbanked corridor, or eliminate it altogether – should similarly be preempted by federal law.  *See, e.g., 14500 Limited LLC—Petition for Declaratory Order*, STB Docket No. FD 35788 (June 5, 2014) (ICCTA categorically preempts property owner's adverse possession and exclusive prescriptive easement claims because those claims would deprive a railroad of its property and the deprivation would affect rail transportation); *Ao-Zhou—Petition for Declaratory Order*, STB Docket No. FD 35539, Slip Op. at p.6 (June 6, 2012) (ICCTA categorically preempted petitioners' adverse possession claim under Washington State law to quiet title to a strip of land along the South Rail Corridor because claim represented "regulation that has the effect of preventing or unreasonably interfering with railroad transportation[.]").  *See also City of Lincoln v. STB*, 414 F.3d 858, 862 (8th Cir. 2005) (denying petition to review STB order that dismissed city's eminent domain suit as categorically preempted by ICCTA due to potential interference with rail transportation caused by a "permanent action").  Consistent with the "broad reading of Congress' preemption intent"

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 19

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

recognized in *City of Auburn v. United States,* 154 F.3d 1025, 1030 (9th Cir.1998), this Court should dismiss plaintiffs' action.[9]

### 3. Any Abandonment of the South Rail Corridor Lies within the STB's Exclusive Jurisdiction and Outside the Jurisdiction of this Court.

Even if plaintiffs did have a valid cause of action under state or federal law to decrease the scope of the prior BNSF railroad easement, their case should nonetheless be dismissed because this Court lacks subject matter jurisdiction to order any abandonment. The STB has exclusive and plenary authority over freight rail operations in interstate commerce under the ICCTA. *See* 49 U.S.C. § 10903-04; *See also Colorado v. United States,* 271 U.S. 153 (1926). There can be no "abandonment" of a rail corridor without prior authorization by the STB. *Philips Company v. Denver & Rio Grande Western Railroad,* 97 F.3d 1375 (10th Cir. 1996).

Federal law defines the STB as the sole appropriate forum for any abandonment of the South Rail Corridor. "It is therefore clear that railbanked corridors remain part of the national rail transportation system subject to the jurisdiction of the STB." *Friends of the E. Lake Sammamish Trail v. City of Sammamish*, 361 F.Supp.2d 1260, 1273-74 (W.D. Wash. 2005). The STB is "the only entity that could authorize any *permanent* use of the right-of-way" by plaintiffs. *Palmetto Conservation Foundation v. H.J. Smith,* 642 F.Supp.2d 518, 525, 528 (S. Car. 2009). Because the STB has exclusive jurisdiction over abandonments, the Court should dismiss plaintiffs' action.

---

[9] In discussing available remedies, the STB has noted that the options available to landowners who believe they have a state-law property interest in a railbanked railroad line is to either "ask the trail sponsor to vacate the NITU pertaining to that portion of the [line], thereby permitting immediate abandonment of the involved property; or to bring a takings case seeking just compensation under the Tucker Act [28 U.S.C. §1491(a)]." *Ao-Zhou*, STB Docket No, FD 35539 at 7 n.9. To the extent that plaintiffs brought and settled their takings case, they have already received all the remedy allowed by the ICCTA, the Trails Act, and associated regulations. *See also 14500 Limited LLC*, STB Docket No, 35788, Slip Op. at 6 ("federal law does not provide [plaintiff] with an alternative remedy that would allow it to possess [defendant's] property. This result is consistent with the strong federal policy in favor of retaining rail property in the national rail network, where possible.").

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 20

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820  Fax (206) 296-8819

1   **V.     CONCLUSION**

2          For the foregoing reasons, the Court should grant King County's motion to dismiss.

3

4          DATED this 11th day of September, 2014 at Seattle, Washington.

5

6                                          DANIEL T. SATTERBERG
                                           King County Prosecuting Attorney
7
                                           By: _s/ David J. Hackett_____
8                                          DAVID J. HACKETT, WSBA #21236
                                           Senior Deputy Prosecuting Attorney
9

10                                         By: _s/ Andrew W. Marcuse_____
                                           ANDREW W. MARCUSE, WSBA #27552
11                                         Senior Deputy Prosecuting Attorney
                                           Attorneys for Defendant King County
12                                         500 Fourth Ave., 9th Floor
                                           Seattle, WA.  98104
13                                         Telephone: (206) 296-8820 / Fax: (206) 296-8819
                                           Email: david.hackett@kingcounty.gov
14                                                      andrew.marcuse@kingcounty.gov

15

16

17

18

19

20

21

22

23

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1

<u>**DECLARATION OF FILING AND SERVICE**</u>

2

I hereby certify that on September 11, 2014, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

3

4

Daryl A. Deutsch, WSBA # 11003
Rodgers, Deutsch & Turner, PLLC
Three Lake Bellevue Drive, Suite 100
Bellevue, WA 98005

5

6

Timothy G. Leyh, WSBA #14853
Randall Thomsen, WSBA #25310
Kristin Ballinger, WSBA #28253
Calfo, Harrigan, Leyh & Eakes, LLP
999 Third Avenue, Suite 4400
Seattle, WA 98104

7

8

9

10

Thomas S. Stewart
Elizabeth McCulley
BAKER STERCHI COWDEN & RICE, LLC
2400 Pershing Road, Suite 500
Kansas City, MO  64108

11

12

13

James E. Breitenbucher
Gavin W. Skok
Courtney Seim
Bryan J. Case
Riddell Williams PS
1001 – 4th Avenue, Suite 4500
Seattle, WA 98154-1065

14

15

16

17

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

18

DATED this 11th day of September, 2014 at Seattle, Washington.

19

20

*s/ Karen Richardson*
Karen Richardson
King County Prosecuting Attorney's Office
500 Fourth Avenue, Suite 900
Seattle, WA.  98104
(206) 296-8820

21

22

23

DEFENDANT KING COUNTY'S MOTION
TO DISMISS (14-cv-00784-JCC) - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819