1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The Honorable John C. Coughenour

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, ET AL, <br><br>               Plaintiffs, <br> vs. <br><br> PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, <br><br>               Defendants. | **NO. 2:14-CV-000784-JCC** <br><br><br> **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT KING COUNTY'S MOTION TO DISMISS** |

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  HISTORY OF TRAILS ACT JURISPRUDENCE—NOT A NOVEL LEGAL THEORY, BUT RATHER, A WELL-SETTLED AREA OF LAW .................................. 3

   A.   The Legislative History of the Trails Act ................................................. 3

   B.   Timeline and Facts of This Case Under the Trails Act ............................ 5

   C.   *Preseault v. Interstate Commerce Comm'n* ("*Preseault I*") ..................... 6

   D.   *Preseault v. United States* ("*Preseault II*") ............................................. 9

   E.   Post-*Preseault* Cases ............................................................................. 12

   F.   This Case Involves Original Easements for Railroad Purposes and all Plaintiffs Still Own the Underlying Fee ................................................. 14

III. THE ISSUE OF ABANDONMENT UNDER THE TRAILS ACT, ALTHOUGH PREVALENT THROUGHOUT DEFENDANTS' MOTION, IS NOT EVEN RELEVANT HERE—PLAINTIFFS' REVERSIONARY INTEREST WAS BLOCKED AND THE RAILROAD PURPOSES EASEMENT WAS CONVERTED TO A NEW EASEMENT FOR TRAIL USE AND RAILBANKING ............................... 15

IV.  RAILBANKING IS NOT A RAILROAD PURPOSE AND DOES NOT AUTHORIZE THE DEFENDANTS TO USE THE LAND CONSISTENT WITH OR INCIDENTAL TO ANY RAILROAD PURPOSES EASEMENT ............................. 19

V.   THE EASEMENT FOR A HIKING AND BIKING TRAIL UNDER THE TRAILS ACT IS A SURFACE EASEMENT UNDER FEDERAL LAW AND WASHINGTON LAW ............................................................................................. 23

   A.   Landowners Still Own the Underlying Fee Including Subsurface and Aerial Rights ......................................................................................... 23

   B.   Although a Railroad Easement is "Robust" under Washington Law, it Still Does not Include Subsurface and Aerial Rights .................................... 24

   C.   Defendants' Attempt to Rely on a Reversed Opinion in *Kershaw*, Similar To Their Failure to Even Cite to *Lawson*, Lacks Candor to this Court ........ 26

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

VI.   CONTRARY TO DEFENDANTS' MOTION, PLAINTIFFS ARE NOT TRYING TO COLLATERALLY ATTACK STB JURISDICTION AT ALL—THE OPPOSITE IS TRUE ........................................................................................ 30

VII.   CONCLUSION ................................................................................................ 31

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**TABLE OF AUTHORITIES**

*Anna F. Nordhus Family Trust v. United States,* 98 Fed. Cl. 331 (Fed. Cl. 2011)........................20

*Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006).......................................................13, 18

*Biery v. United States,* 99 Fed. Cl. 565 (Fed. Cl. 2011) ................................................................20

*Bright v. United States,* 603 F.3d 1273 (Fed. Cir. 2010) .........................................................13, 20

*Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004)......................................................12, 17

*Capreal v. United States,* 99 Fed. Cl. 133 (Fed. Cl. 2011) ...........................................................20

*Dana R. Hodges Trust v. United States,* 101 Fed. Cl. 549 (Fed. Cl. 2011) ..................................20

*Ellamae Phillips Co. v. United States,* 99 Fed. Cl. 483 (Fed. Cl. 2011).......................................20

*Ellamae Phillips Co. v. United States*, 564 F.3d 1367 (Fed. Cir. 2009).......................................13

*Farmers Cooperative v. United States,* 98 Fed. Cl. 797 (Fed. Cl. 2011)................................20, 21

*Gregory v. United States,* 101 Fed. Cl. 203 (Fed. Cl. 2011)........................................................20

*Haggart v. United States,* 108 Fed. Cl. 70 (Fed. Cl. 2012)................................. 1, 6, 14, 23, 30-31

*Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005)................................................................13

*Jenkins v. United States,* 102 Fed. Cl. 598 (Fed. Cl. 2011) ....................................................18, 20

*Kershaw Sunnyside Ranches Inc. v. Yakima Interurban Lines Ass'n*, 91 P.3d 104 (Wash. App. 2004) ....................................................................................................................................26

*Kershaw Sunnyside Ranches Inc. v. Yakima Interurban Lines Ass'n*, 126 P.3d 16 (Wash. 2006) ............................................................................................................................... 26-28

*Knutson v. Reichel*, 518 P.2d 233 (Wash. App. 1973).................................................................23

*Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) ..........................................................13, 20

*Lawson v. State*, 730 P.2d 1308 (Wash. 1988) ..........................2, 11, 16-17, 19, 24-26, 28-29, 32

*Macy Elevator v. United States,* 97 Fed. Cl. 708 (Fed. Cl. 2011) ...........................................20, 23

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

*McConiga v. Riches*, 700 P.2d 331 (Wash. App. 1985) ....................................................23

*Morsbach v. Thurston Cy.,* 278 P. 686 (Wash. 1929)........................................................24

*Pollnow v. Department of Natural Resources,* 276 N.W.2d 738 (Wiscconsin 1979) ...................25

*Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990) ("*Preseault I")*........6-9, 20-21, 32

*Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996) at 1552 ("*Preseault II*") ..................................................................... 7-9, 11-12, 17-18, 22, 28-29, 32

*Preseault v. Interstate Commerce Comm'n*, 853 F.2d 145 (2nd Cir. 1998) ....................................7

*Puget Sound Elec. Ry. v. Railroad Comm'n,* 117 P. 739 (Wash. 1911) ........................................24

*Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011)........................................................18, 20

*Roeder Co. v. Burlington Northern*, 716 P.2d 855 (Wash. 1986)..........................................23, 24

*Rogers v. United States,* 101 Fed. Cl. 287 (Fed. Cl. 2011) ........................................................20

*Thompson v. United States,* 101 Fed. Cl. 416 (Fed. Cl. 2011) ........................................................20

*Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004) ........................................................12, 18

*Ybanez v. United States*, 102 Fed. Cl. 82 (Fed. Cl. 2011)........................................................18

*Ybanez v. United States,* 98 Fed. Cl. 659 (Fed. Cl. 2011) ........................................................20

*Zobrist v. Culp*, 95 Wn.2d 556 P.2d 1308 (1981) .................................................................. 24-25

**STATUTES**

National Trail System Act, 16 U.S.C. § 1247(d) ("Trails Act")..................................................1, 3

Filing and Procedure for Application to Abandon or Discontinue, 49 U.S.C. § 10903 .................4

Authority to Exempt Rail Carrier Transportation, 49 U.S.C. § 10502 ...........................................4

**REGULATIONS**

Prospective Use of Rights-of-Way for Interim Trail Use Agreement and Railbanking, 49 C.F.R. § 1152.29(c)...........................................................................................................4

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page iv

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110 Fax (425)455-1626

## I.    INTRODUCTION

This case involves a former railroad right-of-way that has been converted into an easement for trail use with the *potential* reactivation of a railroad under the National Trail System Act, 16 U.S.C. § 1247(d) ("Trails Act").  The potential reactivation of a railroad is called "railbanking" and preserves federal jurisdiction over the former right-of-way just in case, sometime in the speculative future, the line would be reactivated as a railroad.  Railbanking, under well-established law, is not a vested interest in the former railroad corridor but, rather, is an unvested interest that will likely never come to fruition.[1]  Currently, no railroad owns or has any interest in the easement.

Defendant King County filed a motion to dismiss and claims that railbanking preserves the railroad purposes easement under the Trails Act.[2]  The Defendants argue that, since railbanking preserves the railroad purposes easement, they can use the railroad purposes easement, including subsurface and aerial rights, for any purpose they want that is "incidental" to railroad purposes.  Defendants' legal position demonstrates a total misunderstanding of Trails Act jurisprudence, or ignorance or denial of it, and a total lack of candor to this Court with respect to overwhelming and controlling binding precedent from the Supreme Court of the United States and the Supreme Court of Washington.[3]

---

[1]  *See* Section IV *infra.*

[2]  Defendant Port joined in King County's motion to dismiss and both King County and the Port will hereinafter be referred to as "Defendants."

[3]  Defendants' legal position is also contrary to 18 years of overwhelming authority from the United States Court of Appeals for the Federal Circuit, who has jurisdiction over most Trails Act cases, and from the Court of Federal Claims, who has already ruled on pertinent issues with respect to this exact trail.  *See Haggart v. United States,* 108 Fed. Cl. 70 (Fed. Cl. 2012).  *See also* Section V.C *infra.*

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 1

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Although Defendants readily admit that the railroad only had an easement for railroad purposes, and that the railroad quit claimed its interest to Port of Seattle ("Port") and ultimately to King County pursuant to the Trails Act, the Defendants now somehow claim that they can use aerial and subsurface rights amounting to the fee because they acquired the railroad's easement on the surface, which was not abandoned, and is railbanked.  However, contrary to Defendants' argument, the railroad purposes easement on the surface no longer exists and has actually now been converted to a trail/railbanked easement on the surface under the Trails Act and Washington law.

Under federal law—the Trails Act—Plaintiffs' reversionary interest is blocked from vesting.  Because the railroad purposes easement is converted to a new and different easement under the Trails Act, Plaintiffs' reversionary interest would ordinarily vest to the Plaintiffs but for the Trails Act and, since Plaintiffs' reversionary interest is blocked, a taking occurs.  Contrary to Defendants' assertion, if a railroad purposes easement were to exist after the issuance of a Notice of Interim Trail use ("NITU"), then there could be no taking in the first place.  Here, under binding Washington Supreme Court precedent, once a railroad easement is converted to a trail pursuant to the Trails Act, the railroad easement no longer exists and is actually abandoned by law, a taking occurs, and the railroad purposes easement is replaced by an easement for a hiking and biking trail with the possible reactivation of a railroad.  *See Lawson v. State*, 730 P.2d 1308, 1313 (Wash. 1988).[4]

---

[4] Defendant's argument is fatally flawed.  If the Defendants' position were correct then there could never be a Trails Act takings case <u>ever</u>.  Almost 25 years of Trails Act jurisprudence eviscerates the Defendants' arguments and supports Plaintiffs' request for declaratory judgment and quiet title in the subsurface and aerial rights of their property.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 2

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## II.   HISTORY OF TRAILS ACT JURISPRUDENCE—NOT A NOVEL LEGAL THEORY, BUT RATHER, A WELL-SETTLED AREA OF LAW

The Defendants have asserted that Plaintiffs are claiming "broad property rights" and are pursuing or relying on a "novel legal theory" to reach an "unprecedented conclusion." Defendants' positions and arguments are contrary to the legislative history of the Trails Act, Supreme Court precedent, Washington Supreme Court precedent, and is a desperate attempt to mislead this Court.  The Defendants' misstatements and misapplications of the law demonstrate the Defendants complete misunderstanding of Trail Act jurisprudence.

### A.  The Legislative History of the Trails Act

Congress enacted the Trails Act to address the national problem of railroad abandonments and the loss of the national network of rights-of-way.  The Trails Act authorizes the Surface Transportation Board ("STB"), the governmental entity responsible for regulating railroads and their common carrier obligations, to "preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails." 16 U.S.C. § 1247(d).  The Trails Act authorizes the STB to preserve railroad corridors or rights-of-way not currently in use for train service for possible future rail use by converting those rights-of-way into recreational trails.  In essence, the Trails Act allows a railroad to relinquish responsibility for a rail line by transferring the corridor to an entity that will use it as a recreational trail.  Although the corridor is not used as a railroad during the period of interim trail use, the corridor remains intact for potential future use for rail service.  This process is called "railbanking."  As a matter of law, railbanking is not a railroad purpose and does not preserve a

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

railroad purposes easement.[5]   The former railroad easement no longer exists and is, instead, <u>converted</u> to an easement for recreational trail purposes and railbanked.

Pursuant to the Trails Act, before a railroad corridor may be converted into a recreational trail, the railroad must either initiate abandonment proceedings with the STB under 49 U.S.C. § 10903 or seek an exemption from the ordinary abandonment procedures under 49 U.S.C. § 10502.   Under either procedure, abandonment of the rail line and right-of-way will not be approved by the STB if a qualified trail provider submits to the STB a request to use the right-of-way <u>as a recreational trail</u>.   If the trail provider submits a statement of willingness to assume financial and legal responsibility to the STB and the railroad, the STB will issue a NITU which preserves the STB's jurisdiction over the rail corridor while the parties negotiate an Interim Trail Use Agreement.   49 C.F.R. § 1152.29(c).   The NITU preserves the STB's jurisdiction over the rail corridor, allows the railroad to discontinue operations and remove track and equipment, and affords the railroad and the trail provider 180 days to negotiate a railbanking and Trail Use Agreement.   During this period, the railroad will negotiate an agreement for the transfer of the corridor to the trail operator.

If an agreement is ultimately reached, the NITU automatically authorizes the interim trail use.   If the STB takes no further action, the trail sponsor then may assume management of the right-of-way for a recreational trail, subject only to the right of the STB and a railroad to reassert control of the property for restoration of rail service.

---

[5] *See* Section IV *infra*.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 4

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**B.  Timeline and Facts of This Case Under the Trails Act**

On August 11, 2008, BNSF filed a Petition for Exemption to abandon the line with the STB.  On September 18, 2008, King County filed a request for Issuance of Notice of Interim Trail Use/Railbanking.  A NITU cannot be issued unless all the conditions for abandonment by the railroad have been met.

The STB issued three NITUs for the abandoned railroad corridor and the one applicable to Plaintiffs was issued on October 27, 2008 pursuant to the Trails Act.  On May 12, 2008, prior to issuance of the NITU, BNSF, the Port, and King County entered into a Purchase and Sale Agreement for the "North Line" and a Donation Agreement for the "South Rail Line" portion of the right-of-way to the Port and King County.  The South Rail Line was defined as the "real and personal property comprising the Woodinville Subdivision from milepost 23.45 in Woodinville south to milepost 5.0 in Renton," which encompasses Plaintiffs' property at issue in this case.  In November of 2009, the Port, King County, and PSE, along with Sound Transit, the City of Redmond and the Cascade Water Alliance, entered into a Memorandum of Understanding to work together to obtain and secure property rights in the former railroad corridor.

On December 18, 2009, pursuant to the Purchase and Sale Agreement for the North Rail Line and the Donation Agreement for the South Rail Line, BNSF executed two Quit Claim Deeds to the Port.  BNSF, as grantor, in consideration of ten dollars, quit claimed their interest in the South Rail Line, which was formerly an easement for railroad purposes on the surface of Plaintiffs' property, to the Port, as grantee.

Pursuant to the Trails Act and its implementing regulations, King County entered into an interim Trail Use Agreement with BNSF on February 5, 2010 to railbank the railroad corridor

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 5

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

from Woodinville to Renton as well as the Redmond Spur from Woodinville to Redmond, subject to reactivation for the resumption of interstate freight service. The interim Trail Use Agreement designated King County as the interim trail user for the trail/railbanking purposes easement.

Defendants' actions and arguments demonstrate their complete misunderstanding and misreading of the Trails Act. No taking could ever occur under the Trails Act under Defendants' reading and application of it. Therefore, a brief history of precedent under the Trails Act is important to show the fatal flaws with Defendants' motion and arguments.

## C. *Preseault v. Interstate Commerce Comm'n* (*"Preseault I"*)

Defendants' complete misunderstanding of Trails Act jurisprudence is demonstrated by United States Supreme Court precedent in *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990) (*"Preseault I")*. Beginning with this United States Supreme Court precedent, the *Preseault* cases are the seminal cases establishing the proper vehicle to assert a takings claim pursuant to the Trails Act. A brief history of the *Preseault* cases, as well as subsequent Trails Act "takings" cases, is essential to lay the appropriate foundation for the requisite elements of Plaintiffs' burden on liability issues, why a taking occurred under the *Haggart* decision, and why the Defendants currently only own an easement for trail use/railbanking and nothing more.

The Preseaults, along with other property owners (hereinafter "Preseaults"), were Vermont property owners with land adjacent to the Vermont Railway, Inc.'s ("Railway") railroad right-of-way. The Preseaults sued to get their land back. Through a long and tortuous

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

procedural morass,[6] the Preseaults' claim made its way to the United States Supreme Court. *Preseault I*, 494 U.S. 1.

The Supreme Court's decision in *Preseault I* was a unanimous decision delivered by Justice Brennan.  Although the Court did not specifically address the merits of the Preseaults' takings claim,[7] the full Court unequivocally laid the foundation and provided the precedential ruling for future takings claims pursuant to the Trails Act.  The question presented to the Court was the constitutionality of the Trails Act under which railroad rights-of-way were authorized for conversion to recreational trails notwithstanding whatever reversionary property interests may exist under state law.

The Court examined the history and purpose of the Trails Act, the constitutionality of the Trails Act and the proper vehicle for property owners to receive just compensation for a taking under the Trails Act.  The Court noted that the Tucker Act constitutes an implied promise to pay just compensation, which individual laws (such as the Trails Act) need not reiterate.  Thus, the Court held that the Tucker Act provides jurisdiction to the Federal Court of Claims over claims against the government to recover damages founded on the Constitution and that the Tucker Act is the proper vehicle for property owners seeking a remedy for a taking pursuant to operation of the Trails Act.

---

[6]   For a description of the procedural history, including the initial quiet title action in Vermont state court, the dismissal because the ICC had not authorized abandonment, the appeal to the Vermont Supreme Court, the Preseaults' petition with the ICC, the Railway's notice seeking a "class exemption" for abandonment, the ICC's issuance of a CITU, the dismissal of the Petition before the ICC, and the Preseaults' appeal to the Second Circuit, *see Preseault v. Interstate Commerce Comm'n*, 853 F.2d 145 (2nd Cir. 1988).

[7]   The Court did not address the merits of the Preseaults' takings claim because the Preseaults chose the wrong vehicle to assert their claim — they did not file their claim under the Tucker Act (however, and importantly, based on the Supreme Court's foundation, upon remand in *Preseault II*, the Preseaults' takings claim was validated and it was ordered that they were due just compensation for a takings, as more further discussed *infra*).

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 7

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5
6
7
8
9
10
11

The Supreme Court noted that the stated purposes of the Trails Act are (1) to encourage the development of additional recreational trails on an interim basis, and (2) to preserve federal jurisdiction over established railroad rights-of-way for potential future reactivation of rail service.  494 U.S. at 17.  In light of the long history involved in attempting to address problems of losing federal jurisdiction over the network of railroad corridors due to rail abandonments, the Court concluded that Congress was entitled to make the judgment that every line is a potentially valuable national asset meriting preservation—even if no future rail use for it is currently foreseeable.  The Court held under a rational basis review, that the Trails Act provisions are a valid exercise of Congress' Commerce Clause Power because the stated purposes are valid objectives to which the Trails Act Amendments are reasonably adapted.

12
13
14
15
16
17
18
19
20
21
22
23

After the Court analyzed the Preseaults' claim challenging the constitutionality of the Trails Act and the determination that the Trails Act was constitutional, the Court went on to analyze whether a takings claim was a viable cause of action against the government for the blocking of the Preseaults' reversionary interest in their land.  The Court stated unequivocally that Rails-to-Trails conversions giving rise to just compensation claims were clearly authorized by the Trails Act.  494 U.S. at 13.  The Court affirmed that state property laws dictate whether the railroad held an easement or fee interest, and thus, dictated the nature of the property interests held by property owners.  494 U.S. at 8.  Further, under section 8(d) of the Trails Act authorizing issuance of a NITU, Congress intentionally prevented easement property interests from reverting[8] to adjacent property owners under state law, which would occur absent the Trails Act.

24
25

---

[8]   As noted by the Federal Circuit in *Preseault II*, 100 F.3d at 1533, the Courts use the term "reversion" as an alternative way to describe property transactions involving easements.  Instead of calling the property owner's retained interest a fee simple burdened by the easement, this alternative labels the property owner's retained interest following the creation of an easement as a "reversion" in fee.  Upon termination, however, instead of

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 8

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

*Id.* And, if Congress violated the Fifth Amendment by precluding reversion of state law property interests, here, a surface easement, the Tucker Act is the available remedy to property owners. *Id.* The rulings in *Preseault I* set the stage and laid the foundation for future takings cases.

### D. *Preseault v. United States ("Preseault II")*

Subsequent to the Supreme Court decision, and noting the proper vehicle to pursue their claim, the Preseaults filed a takings claim in the Court of Federal Claims under the Tucker Act. The Court of Federal Claims rejected the Preseaults' claims and granted summary judgment for the government. Of course, the Preseaults appealed. On rehearing en banc, <u>the Federal Circuit reversed the Court of Federal Claims decision and determined that the Federal Government was liable for a takings under operation of the Trails Act and that just compensation was required</u>. The most notable decisions and rulings by the Federal Circuit in *Preseault II* were that:

    a.  state law defined the interest in property acquired by railroads;

    b.  under state (Vermont) law, the railroad held easements over the Preseaults' land;

    c.  the scope of the easements were granted for maintenance and operation of a railroad and <u>did not</u> encompass use of the easements for a public recreational trail; and

    d.  the Federal Government engaged in a taking of the Preseaults' property by authorizing the conversion and transfer of the easement to a "trails group" (the city) **for conversion to a public recreational trail**.

*Preseault II*, 100 F.3d 1525.

---

saying that the easement is extinguished and the fee interest becomes possessory; it is sometimes loosely said that the estate "reverts" to the owner. Thus, the courts use the term "reversionary" as a convenient short-hand method for describing what happens to property interests when an easement would terminate. *Id.* So, Plaintiffs have often used the same terminology in order to be consistent with the courts.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 9

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110 Fax (425)455-1626

The Federal Circuit explained that the key issue in the case was whether authorization **for the conversion**, under the authority of the Trails Act, of a railroad right-of-way to a public recreational hiking and biking trail constituted a taking of the property interests—surface interests—of the owners of the underlying fee simple estate.  The analysis and discussion by the Federal Circuit supplied the foundation for all future rails-to-trails cases.  The Court specifically rejected the government's argument that federal legislation blocking reversionary interests re-defined state-created property laws and held that <u>state property laws dictate the nature of the property held by the railroad and the plaintiffs related to the railroad right-of-way</u>.  100 F.3d at 1530.  Here, the Defendants are attempting to redefine state-created property laws to assert that they are now allowed to use subsurface and aerial rights even though only easement surface rights were ever granted to the railroad.  The Defendants' claims are contrary to every case under the Trails Act.

The Court also held, importantly, <u>that the railroad only acquired an easement limited to railroad purposes</u> and that the <u>fee estates remained with the original property owners</u>.  Since the easements involved were limited grants for specific railroad purposes, then the scope of the easement was fixed by the conveyance and must be limited to railroad purposes.  Most importantly, <u>the Federal Circuit also specifically held that "a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes</u>," and was not included within the terms of the original grant to the railroad.  100 F.3d at 1542-43 (emphasis added).  Importantly to this case, the trail use easement that was acquired by the Defendants is inconsistent with the original railroad purposes easement and they do not receive the benefits the railroad held in regards to uses consistent with railroad operations because the railroad purposes

easement <u>was converted</u> to a trail/railbanking easement and the railroad purposes easement no longer exists by law.[9]

The Court held that when the easements were originally granted to the Preseaults' predecessors in title at the turn of the century, for transportation of goods and persons via railroad, the burden imposed on the land was for that particular purpose and when that purpose no longer exists, the easement "reverts" back to the property owner under state law.   After analysis of the nature of the burdens imposed for a railroad purpose verses a public recreational trail, the Court also held that a public recreational trail was not encompassed within the original grant for railroad purposes and the Preseaults were due just compensation for the taking of their surface interest in their land by blocking the "reversion" of the easement back to the property owners.[10]   The Court remanded the case back to the Court of Federal Claims to determine damages.

Thus, the *Preseault* cases laid the foundation and set forth the requirements for a compensable taking by operation of the Trails Act.   Whether a plaintiff is entitled to compensation under the Tucker Act in a Rails-to-Trails case depends on meeting two prongs of a three-prong test — a taking occurs if the railroad only held an easement (prong 1) <u>and</u> if either one of the other two prongs are met, as specifically set out by the Federal Circuit in *Preseault II*:

> (1)   who owned the strips of land involved, specifically did the Railroad. . . acquire only easements, or did it obtain fee simple estates;

---

[9]   It is also critical to point out that the Federal Circuit, at great length, pointed out that *Lawson*, 730 P.2d 1308, was "on all fours" with the Federal Circuit's conclusion, and Defendants here shamelessly failed to even cite binding precedent from the Washington Supreme Court.

[10]   Contrary to Defendants' arguments regarding incidental uses, a <u>trail</u> is <u>not</u> incidental or consistent with a railroad purposes easement, a trail is beyond the scope of a railroad purposes easement, and a taking occurs as a result under longstanding precedent.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 11

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

(2)   if the Railroad acquired only easements, if the terms of the easements were limited to use for railroad purposes, then the authorization for future use as public recreational trails constituted a taking [*i.e.*, exceeds scope of the easement]; or

(3)   even if the grants of the Railroad's easements were broad enough to encompass recreational trails, if the easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements then a taking occurred [*i.e.*, abandonment of the easement], which is irrelevant to this case because the taking occurred under prong II.

100 F.3d at 1533 (emphasis added).

### E.  *Post-Preseault Cases*

Subsequent to the *Preseault II* determination in 1996 that a takings had occurred, the Federal Circuit on at least seven separate occasions has repeatedly and consistently addressed and affirmed the principles set forth in *Preseault II* that a taking occurs pursuant to the Trails Act when the NITU is issued and, when a railroad only holds an easement limited in scope to railroad operations and a "trail" or different public use is authorized and exceeds the scope of the original railroad easement, a taking occurs upon issuance of the NITU:

- In 2004, the Federal Circuit decided *Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004), affirming that a takings occurs when the NITU is issued implementing the Trails Act and reversion of a railroad purposes easement is blocked.  376 F.3d at 1376;

- Also, in 2004, in *Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004), the Federal Circuit held that the date a takings claim accrues is upon issuance of the NITU–the date of the "taking."  The court set forth that the Trails Act, through the "railbanking" process, prevents the operation of state laws that would otherwise come into effect upon what would have been an abandonment, and thus "would result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." *Id.* at 1229 (emphasis added).  The taking ultimately occurs under the Trails Act when the NITU is issued and authorization for a railroad right-of-way is to be converted to interim trail use and "state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting."  *Id.* at 1233;

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

- In 2005, the Federal Circuit decided *Hash v. United States*, 403 F.3d 1308 (Fed. Cir. 2005), and confirmed that a taking occurs one of two ways under the Trails Act—either because a trail or public use easement exceeds the original railroad easement, OR, the railroad easement is abandoned or expires prior to the issuance of the NITU;

- In 2006, the Federal Circuit decided *Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006), further noting that the taking occurs upon issuance of the NITU and such a taking occurs whether or not there is a trail use agreement or actual trail use of the former railroad easement;

- In 2009, in *Ellamae Phillips Co. v. United States*, 564 F.3d 1367 (Fed. Cir. 2009), the Federal Circuit affirmed that if a railroad obtained an easement limited to railroad purposes then, upon issuance of a NITU, a "taking" of the property owners' property rights occurs and "just compensation" is owed.  564 F.3d 1367;

- In 2010, in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010) the Federal Circuit reaffirmed all of the *Preseault II* principles and also further clarified that the filing of a class action for a Trails Act taking tolls the statute of limitation for the entire putative class; and

- Also, in 2010, in *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010), the Federal Circuit again affirmed that when a railroad obtained an easement for railroad purposes and a NITU blocks the reversionary interests of the property owner's rights to the use of their land **unencumbered** by an easement, a taking occurs requiring just compensation whether or not a trail ever burdens the land.

The Federal Circuit's holdings are relevant here because, when a taking occurs, the railroad purposes easement is converted to a trails/railbanked easement and the railroad purposes easement no longer exists.   Because if the railroad purposes easement remained intact, as Defendants claim, then no taking could ever occur, and here a taking did in fact occur in 2008. Defendants' position is in direct contravention to almost 25 years of Trails Act jurisprudence.

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**F.  This Case Involves Original Easements for Railroad Purposes and all Plaintiffs Still Own the Underlying Fee**

In the late 1800s, the Northern Pacific and Puget Sound Shore Railroad Company acquired land to construct their railroad right-of-way along Lake Washington.  Burlington Northern Santa Fe Railway Co. ("BNSF") became the railroad's successor in interest.

The Port performed title work concerning the railroad's original acquisition of land for the railroad's right-of-way in conjunction with the Port's utilization of the Trails Act and determined that the original right-of-way was obtained through Plaintiffs' land by the use of two deeds and one condemnation: (1) the Lake Washington Belt Line Co. deed, recording instrument number 102518; (2) the Kittinger deed, recording instrument number 269500; and/or (3) the State of Washington condemnation, recording instrument number 40536.  The Port's title work and mapping concluded that those conveyances were all easements for railroad purposes.[11]

In addition to the title work already performed by the Port, these three original conveyances to the railroad have already been analyzed and determined to convey mere easements for railroad purposes by Judge Charles F. Lettow of the United States Court of Federal Claims in *Haggart v. United States*, 108 Fed. Cl. 70 (Fed. Cl. 2012).  Judge Lettow's Opinion and Order, rendered on December 18, 2012, concluded that all three conveyances were conveyances of easements to the railroad for their railroad purposes only and that the easement currently on Plaintiffs' land is a surface easement for recreational trail use with the potential reactivation of a railroad.  For purposes of this motion, although probably not in dispute in this

---

[11] In addition, documents produced in this litigation by King County also contain title reports and opinions that these original source conveyances were easements for railroad purposes.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 14

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

litigation, this Court should treat the three source conveyances as easements for railroad purposes.[12]

As a matter of law, since the original source conveyances were easements for railroad purposes only, Plaintiffs own the underlying fee in the railroad right-of-way adjacent to their property, including subsurface and aerial rights.  BNSF, prior to implementation of the Trails Act and the granting of a quit claim deed to the Port, possessed an easement for railroad purposes on the surface of Plaintiffs' fee ownership in the railroad's right-of-way.  The Port, by and through a Quit Claim Deed from BNSF, on December 18, 2009, acquired BNSF's easement which is now converted to an easement for a hiking and biking trail with the potential reactivation of a railroad pursuant to the Trails Act, on the surface of Plaintiffs' fee ownership.  Pursuant to the Trails Act and Washington law, BNSF abandoned their easement for railroad purposes on the surface of Plaintiffs' fee ownership and the Port and King County, as trail operators under the Trails Act, acquired a surface easement for a hiking and biking trail with the possible reactivation of a railroad.

### III. THE ISSUE OF ABANDONMENT UNDER THE TRAILS ACT, ALTHOUGH PREVALENT THROUGHOUT DEFENDANTS' MOTION, IS NOT EVEN RELEVANT HERE—PLAINTIFFS' REVERSIONARY INTEREST WAS BLOCKED AND THE RAILROAD PURPOSES EASEMENT WAS CONVERTED TO A NEW EASEMENT FOR TRAIL USE AND RAILBANKING

The issue of abandonment, although prevalent throughout Defendants' motion, is actually irrelevant to this case and is a red herring.  Abandonment is irrelevant because the Defendants acquired their interests in the former right-of-way pursuant to the federal Trails Act and only

---

[12] If the issue persists beyond this motion, it will be further addressed in Plaintiffs' subsequent briefing.  Judge Lettow thoroughly reviewed decades of precedent from the Supreme Court of Washington in reaching his conclusion that all 3 conveyances at issue conveyed easements for railroad purposes only under Washington law.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 15

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

acquired an easement for trail/railbanking purposes.   Under Washington Supreme Court precedent, a change in use of the railroad purposes easement to a recreational trail easement constitutes abandonment of the railroad purposes easement by law. *Lawson v. State*, 730 P.2d at 1313.

*Lawson* involved a former railroad easement for railroad purposes that was converted to a recreational trail under Washington Statutes mirroring the Trails Act and <u>federal issuance</u> of a public use condition (similar to a NITU).  The Court held that:

> In addition to outright abandonment of a right of way, there may be a change in use of the right of way which is inconsistent with the purpose for which the right of way was granted. Where the particular use of an easement for the purpose for which it was established ceases, the land is discharged of the burden of the easement and right to possession reverts to the original landowner or to that landowner's successor in interest.

*Lawson*, 730 P.2d at 1312.

The Supreme Court of Washington has specifically and directly resolved this entire issue: "We hold that a <u>change</u> <u>in</u> <u>use</u> from 'rails to trails' constitutes abandonment of an easement which was granted for railroad purposes only.  At common law, therefore, the right of way would automatically revert to the reversionary interest holders." *Lawson*, 730 P.2d at 1312-13. The fact that *Lawson* is totally consistent with 25 years of Trails Act jurisprudence is one thing, the fact that the Defendants failed to even cite it to this Court is another thing altogether.[13]

The blocking of abandonment pursuant to the Trails Act prevented the vesting of Plaintiffs' reversionary interest, consisting of Plaintiffs' rights in the surface only, and authorized the placement of an easement for recreational trail use with the potential reactivation of a railroad.  The Federal Circuit has repeatedly and consistently described the taking that occurs

---

[13] *See* Section V.C *infra*.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 16

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

when the fee owner's reversionary interest is blocked or destroyed, and abandonment is irrelevant to that taking—meaning the blocking of abandonment doesn't preserve the railroad purposes easement in any way, shape or form because, if it did, no taking could ever occur.

In *Preseault II*, the Federal Circuit, analyzing and affirming *Lawson,* specifically stated that "when state-defined property rights are <u>destroyed</u> by the Federal Government's preemptive power and circumstances such as those here before us, the owner of those rights is due just compensation." *Preseault II*, 100 F.3d at 1552 (emphasis added). The Defendants' position that "blocking" Plaintiffs' reversionary rights pursuant to the Trails Act prevented abandonment and somehow preserved the railroad purposes easement through railbanking is fatally flawed. Such a position is not only contrary to over 25 years of Trails Act jurisprudence, it would effectively mean that there never could be a taking under the Trails Act.

In fact, lack of abandonment has never ever been accepted for the proposition that a railroad purposes easement continues to be present on the land after a trail use agreement is reached. The railroad purposes easement is converted to a new easement upon the Plaintiffs' land and the railroad purposes easement no longer exists and, under federal and Washington law, the railroad purposes easement is abandoned by law. *See Lawson*, 730 P.2d at 1312-13. Blocking abandonment is only relevant to whether a Trails Act taking occurred and has nothing to do with the interest currently held by the trail users—the Port, King County, PSE and Sound Transit. The Defendants hold an easement for trail/railbanking, period, and do not hold any easement related to railroad purposes.

After *Preseault II*, the Federal Circuit revisited and reiterated this same property law concept in *Caldwell*, in 2004. In *Caldwell*, the Federal Circuit stated that "we have previously

1
2
3

held that a Fifth Amendment taking occurs when, pursuant to the Trails Act, state law reversionary interests are <u>effectively eliminated</u> in connection with a **conversion** of a railroad right-of-way to trail use." 391 F.3d at 1228 (emphasis added). *See also Barclay*, 443 F.3d 1368.

4
5
6
7

Among many judges of the Court of Federal Claims, Judge Margolis, in *Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011), correctly held and recently confirmed both the law of "what" was taken, the status of Plaintiffs' land after the taking, and the proper methodology to determine just compensation:

8
9
10
11
12
13

> But for the Trails Act, the railbanking agreement would have effected an abandonment under South Carolina law, which would have caused the easement to revert back to plaintiffs. Plaintiffs' damages must therefore be determined by reference to the fee simple value of their properties, unencumbered by any railroad easement. Ultimately, the measure of damages for just compensation must be the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of **plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad**.

14
15
16
17
18
19

*See Raulerson*, 99 Fed. Cl. at 11-12 (emphasis added). The rule of law is clear <u>and</u> well-settled. When the reversionary interest in the surface is blocked, and taken, the railroad purposes easement is <u>converted</u> to a new easement for recreational trail purposes/railbanking that exists upon Plaintiffs' land.[14]   Abandonment is irrelevant, lack of abandonment under the Trails Act does not preserve a railroad purposes easement and railbanking is not a railroad purpose and

20
21
22
23
24
25

---

[14] Numerous cases exist on this exact issue. *See Preseault II*, 100 F.3d at 1549. ("We find the question of abandonment is not the defining issue, since whether abandoned or not the Government's use of the property for a public trail constitutes a new, unauthorized, use."). *See also Jenkins v. United States*, 102 Fed. Cl. at 614-15 ("[T]he government's narrow interpretation of the Trails Act divorces the language of the Act from its history, purpose, and regulatory scheme. The Trails Act scheme does not, as the government contends, authorize only that the railway right-of-way will not be deemed abandoned for railroad purposes if the corridor is railbanked."); *Ybanez v. United States*, 102 Fed. Cl. 82, 87 (2011) (*citing Preseault II*, 100 F.3d at 1533 and *Toews v. United States*, 376 F.3d at 1381) ("Where the scope of a new easement exceeds the original grant, a determination of whether abandonment occurs is unnecessary.").

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 18

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

does not preserve any railroad purposes easement.  The Defendants' argument on abandonment is misplaced, does not preserve a railroad purposes easement and is a red herring.

## IV. RAILBANKING IS NOT A RAILROAD PURPOSE AND DOES NOT AUTHORIZE THE DEFENDANTS TO USE THE LAND CONSISTENT WITH OR INCIDENTAL TO ANY RAILROAD PURPOSES EASEMENT

The Defendants completely rely on the proposition that "railbanking" is a preservation of the railroad easement under the Trails Act, and is a railroad purpose, such that after the railroad transfers all right, title and interest to the trail user and the railroad purposes easement is not abandoned and is preserved upon Plaintiffs' land.[15]  Such a position is contrary to almost 25 years of Trails Act jurisprudence!  It has clearly and specifically been held by the Federal Circuit on numerous occasions that "railbanking" under the Trails Act is <u>NOT</u> a railroad purpose and railbanking exceeds the scope of an easement granted for railroad purposes.  Railbanking is not evidence of an intention to maintain a railroad purpose easement for the operation of trains, but exactly the opposite—to relinquish all requirements, responsibility and liability for running trains over the right-of-way.  There is no distinguishment between trail use and railbanking.  They go hand in hand and, it must be noted, that if railbanking was a railroad purpose then the scope of the railroad purposes easement would not be exceeded and no taking could ever occur.

In the process of "railbanking," the STB retains jurisdiction for possible future railroad use and the abandonment of the corridor is blocked, **even though the conditions for abandonment are otherwise met**.  Railbanking prevents the operation of state laws that would otherwise come into effect upon abandonment, specifically, property laws that would "result in

---

[15] Under Washington law, once the NITU is issued and a change in use of the easement occurs, the railroad purposes easement is abandoned as a matter of law.  *See Lawson*, 730 P.2d at 1313.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 19

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." *Bright*, 603 F.3d at 1275.[16]

Long ago, the Supreme Court rejected that railbanking is a railroad purpose, and further, Supreme Court Justice Scalia scolded the government for arguing railbanking is a railroad purpose during oral argument stating:

> The ICC didn't order the railroad to keep running. Saying the railroad could have continued using the land for rail purposes so you really haven't lost anything. In fact, they didn't, but they might have. Even though you have a deed that says if we stop using it for rail purposes its yours, you say, well you haven't lost anything because they have stopped using it for rail purposes, but they might not have. . . that is not very appealing to me.[17]

Moreover, the Federal Circuit rejected, once again, this worn-out railbanking is a railroad purpose argument. In *Ladd*, Judge Moore responded to the government's argument that railbanking is a railroad purpose by stating:

> That is the argument you made unsuccessfully in the Supreme Court where Justice Scalia seemed to make fun of you. I mean, I don't think that's going to work on us at this point. You can't say, oh yea, well they didn't lose anything because they didn't have anything the day before.

*Ladd*, oral argument (http://www.cafc.uscourts.gov/oral-argument-recordings/all/ladd.html).

---

[16] Numerous judges in numerous cases before the Court of Federal Claims have specifically ruled that railbanking is not a railroad purpose. *See* (1) *Macy Elevator v. United States*, 97 Fed. Cl. 708 (2011) (Indiana) (Judge Firestone); (2) *Anna F. Nordhus Family Trust v. United States*, 98 Fed. Cl. 331 (2011) (Kansas) (Judge Wheeler); (3) *Ybanez v. United States*, 98 Fed. Cl. 659 (2011) (Texas) (Judge Hodges); (4) *Farmers Cooperative v. United States*, 98 Fed. Cl. 797 (2011) (Kansas) (Judge Damich); (5) *Capreal v. United States*, 99 Fed. Cl. 133 (2011) (Massachusetts) (Judge Wheeler); (6) *Ellamae Phillips Co. v. United States*, 99 Fed. Cl. 483 (2011) (Colorado) (Judge Baskir); (7) *Biery v. United States*, 99 Fed. Cl. 565 (2011) (Kansas) (Judge Firestone); (8) *Gregory v. United States*, 101 Fed. Cl. 203 (Fed. Cl. 2011) (Mississippi) (Judge Wheeler); (9) *Thompson v. United States*, 101 Fed. Cl. 416 (Fed. Cl. 2011) (Michigan) (Judge Braden); (10) *Dana R. Hodges Trust v. United States*, 101 Fed. Cl. 549 (Fed. Cl. 2011) (Michigan) (Judge Damich); (11) *Raulerson v. United States*, 99 Fed. Cl. 9, 11-12 (2011) (South Carolina) (Judge Margolis); (12) *Rogers v. United States*, 101 Fed. Cl. 287 (Fed. Cl. 2011) (Florida) (Judge Williams); and (13) *Jenkins v. United States*, 102 Fed. Cl. 598 (Fed. Cl. 2011) (Iowa) (Judge Firestone).

[17] Oral argument, *Preseault I*, 494 U.S. 1 (No. 88-1076) (statements of Justice Antonin Scalia), available at http://www.oyez.org/cases/1980-1989/1989/1989_88_1076/argument.

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Although contrary to established law, the Defendant attempts to distinguish trail use from railbanking, under the Trails Act, but as the courts confirm, interim trail use and railbanking are one in the same, "go hand-in-hand under the Trails Act," part and parcel and are not separate. *See*, *e.g.*, *Farmers Cooperative v. United States*, 98 Fed. Cl. 797 (2011).  Meaning, if a railroad wants to reap the benefits of the Trails Act and decide to enter into a trail use agreement, it must also agree to railbanking—this is compulsory.   By entering into an agreement for trail use/railbanking under the Trails Act, the railroad does not show "intent" to preserve the right-of-way for railroad purposes but, rather, indicates or carries out its previously expressed intent to discontinue railroad operations (if railroad operations are not already ceased), and relinquish all interest, liability, and responsibility in the corridor, which is exactly what happened in this case in 2008 with BNSF's request to abandon the line.  In short, the Defendants' assertions that railbanking indicates "intent" to preserve the railroad purposes easement, or allowed King County to assume a railroad purposes easement via the Trails Act, or somehow preserved Defendant King County's right to assume any railroad rights to use the railroad purposes easement is laughable, false and a repeatedly rejected argument.

In reality, railbanking is merely a provision allowing the maintaining of federal jurisdiction over a railroad right-of-way under the Trails Act upon issuance of a NITU, whereby the railroad discontinues service and relinquishes all interest and responsibility in the right-of-way to a public use entity and it is converted to a public recreational use with the agreement that the STB may at some time in the indefinite future authorize some non-specified railroad to build a new rail line over the right-of-way.  *See*, *e.g.*, *Preseault I*, 494 U.S. at 17-18.  The NITU allows the rail carrier to discontinue service (thereby extinguishing the railroad purposes easement, or in

other words abandon the railroad purposes easement), cease railroad operations if not already ceased, and salvage track and other equipment.  At the same time, the NITU extends indefinitely to permit interim trail use once an agreement is reached between the railroad and the trail operator.

Here, the three easements to the railroad specifically allowed the railroad an easement for railroad purposes.   By law, the easements were limited in scope to railroad purposes. Railbanking does not become a railroad purpose just due to mere speculation and the remote possibility that a railroad will ever be reactivated, as the Court of Federal Claims, Federal Circuit and United States Supreme Court and many other courts have confirmed in numerous previous cases involving the Trails Act.  The authorized use as a recreational trail evidences the railroad's intent to relinquish the easement for a use other than railroad use, which in turn, <u>extinguishes</u> the railroad purposes easement under Federal and Washington law.

As Judge Rader stated in his concurring opinion in *Preseault II*, "the vague notion that the [trail user] may at some time in the future return the property to the use for which it was originally granted [railroad purpose], does not override its present use of that property inconsistent with the easement.  That **conversion** demands compensation."  *Preseault II*, 100 F.3d  at 1554.  But the conversion also dictates what interest the trail users, here the Defendants, actually hold.   The Defendants hold easements for trail use/railbanking only.   Because railbanking is not a railroad purpose and does nothing to preserve the former easement for railroad purposes, the easement currently upon the Plaintiffs' land is an easement for trail use with the potential reactivation of a railroad (called "railbanking") and any use other than trail use violates Plaintiffs' rights in their property.

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

### V.   THE EASEMENT FOR A HIKING AND BIKING TRAIL UNDER THE TRAILS ACT IS A SURFACE EASEMENT UNDER FEDERAL LAW AND WASHINGTON LAW

#### A.   Landowners Still Own the Underlying Fee Including Subsurface and Aerial Rights

A longstanding doctrine of common law says that "the conveyance of land bounded by or along a highway carries title to the center of the highway unless there is something in the deed or surrounding circumstances showing an intent to the contrary." *Roeder Co. v. Burlington Northern*, 716 P.2d 855, 861 (Wash. 1986); *see also Macy Elevator*, 97 Fed. Cl. at 719. Washington adopted this common law doctrine, applying it first to private streets and non-navigable rivers. *See McConiga v. Riches*, 700 P.2d 331 (Wash. App. 1985); *Knutson v. Reichel*, 518 P.2d 233 (Wash. App. 1973). The Washington Supreme Court, sitting *en banc*, then held that this "'highway presumption' likewise appl[ies] to railroad rights of way." *Roeder*, 716 P.2d at 861. Under Washington law, "[g]enerally then, the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear." *Id.*

Here, Plaintiffs must only present, and have presented, the original deeds granting a right-of-way to the predecessor railroad and the deeds that show Plaintiffs owned the property abutting the right of way at the time the NITU was issued. Plaintiffs' burden is satisfied and the presumption that Plaintiffs hold title to the center line of the right-of-way applies.[18] Because the railroad only held a surface easement and could only transfer what it owned to the Defendant

---

[18] *See Haggart*, 108 Fed. Cl. 70, where Judge Lettow discussed and confirmed that these Plaintiffs own the fee to the center line of the right-of-way under Washington law.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 23

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Trail Users, the Defendant trail users only own a trail/railbanked easement and Plaintiffs continue to own the underlying fee including the subsurface and aerial rights in the trail/railbanked easement.

### B. Although a Railroad Easement is "Robust" under Washington Law, it Still Does not Include Subsurface and Aerial Rights

As a threshold matter, as evidenced above, the Defendants do not have any rights in a railroad purposes easement.  Rather, the Defendants acquired a recreational trail/railbanked easement pursuant to the acquisition under the Trails Act.  The Washington Supreme Court decision in *Lawson* totally eviscerates the Defendants' arguments that the railroad purposes easement continues to exist, and therefore they are entitled to use it for incidental purposes, and that they have some entitlement to use subsurface and aerial rights.  Interestingly, the Defendants never even mention *Lawson* in their motion to dismiss, which is appalling.  In *Lawson*, the Court held that:

> We first address the issues raised in light of common law principles.  <u>Defendants argue that under Washington law a railroad is a perpetual public easement.  They contend that a railroad right of way easement does not terminate upon a change from one transportation use to another transportation or recreation use, or any other consistent public use. We disagree.</u>  It is true railroad companies were created on the theory that they will provide a public benefit. Pursuant to statute, the State has conferred upon them special and extraordinary privileges.  In return, the railroads must hold their property in trust for the public use.  *Puget Sound Elec. Ry. v. Railroad Comm'n,* 65 Wash. 75, 83-84, 117 P. 739 (1911). A railroad is a public highway, created for public purposes.  *Puget Sound Elec. Ry.,* at 84.  But these considerations do not necessarily lead to the conclusion that a railroad right of way is a perpetual public easement.  To the contrary, this court has frequently recognized that railroad rights of way revert to reversionary interest holders when a railroad company abandons a line.  *See, e.g., Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 716 P.2d 855 (1986); *Zobrist v. Culp,* 95 Wn.2d 556, 627 P.2d 1308 (1981); *Morsbach v. Thurston Cy.,* 152 Wash. 562, 278 P. 686 (1929).  These cases demonstrate that, under Washington law, when an easement is granted to a railroad through a private conveyance, the easement is not a "perpetual public easement."

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Plaintiffs have alleged that the grantors conveyed easements for railroad purposes only… Although specifically interpreting the deed involved in that case, our decision in *Zobrist* provides guidance here; <u>clearly, a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes only</u>.   In the words of the Wisconsin State Court, '[t]o hold that the conversion from a public transportation system to a recreational system still reflected the purpose of the original easement would, in our view, stretch the principle of *Faus* beyond reasonable limits.'   *Pollnow v. Department of Natural Resources,* 88 Wis. 2d 350, 366-67, 276 N.W.2d 738 (1979) (construing common law).   *Pollnow* and other decisions from other jurisdictions <u>support our conclusion that a change in use of a railroad right of way to a recreation trail or nature trail is a change of use evidencing abandonment of the right of way</u>.

*Lawson,* 730 P.2d at 1312-13 (emphasis added).

Subsurface and aerial rights are simply not available or applicable to interim trail use on the surface.   In fact, Defendants' attempted use or claim of ownership in this case in the subsurface or aerial interests are void of any legal authority whatsoever.   Because railroad easements only include surface uses and uses limited to railroad purposes, the adjoining landowners, who are the owners of the fee, previously had the right to use the right-of-way for any purpose which they see fit if consistent with the railroad's use of the surface for its railroad purposes.   The fee owner, the adjacent landowners in this case, retain all of their other fee ownership rights, including all subsurface and aerial rights.   Now that the railroad purposes easement has been converted to a trail/railbanked easement, Plaintiffs retain all of their ownership rights which are consistent with a trail/railbanked easement.   Defendants do not have any rights in a railroad purposes easement and only hold an interest in a recreational trail/railbanked easement under federal and Washington law.

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

**C. Defendants' Attempt to Rely on a Reversed Opinion in *Kershaw*, Similar To Their Failure to Even Cite to *Lawson*, Lacks Candor to this Court**

2

3      The Defendants first wrongly assert that the original railroad purposes easement has not

4  been abandoned and still exists under the Trails Act.  Then, incredibly, the Defendants attempt to

5  build on an incorrect legal proposition in the first place by wrongfully asserting that they can

6  now use the original railroad purposes easement for any incidental use they want, including the

7  invasion of Plaintiffs' fee ownership by using Plaintiffs' subsurface and/or aerial rights.   In

8  support of their folly, the Defendants cite and quote an appellate ruling in *Kershaw Sunnyside*

9  *Ranches Inc. v. Yakima Interurban Lines Ass'n*, 91 P.3d 104 (Wash. App. 2004).   The

10  Defendants specifically cite to that <u>appellate opinion</u> to state that a railroad easement is "more

11  than a mere right of passage" and that the railroad right-of-way also includes the incidental

12  below ground uses of its right-of-way.  Defs Br. at p. 15 *citing Kershaw*, 91 P.3d at 116.  What

13  the Defendants fail to acknowledge and present to this Court is the fact that the Supreme Court

14  of Washington specifically and directly overturned <u>that very holding and quotation cited by the</u>

15  <u>Defendant</u>.  *Kershaw*, 126 P.3d at 27-29.

16      The Washington Supreme Court case of *Kershaw Sunnyside Ranches Inc. v. Yakima*

17  *Interurban Lines Ass'n*, 126 P.3d 16 (Wash. 2006) held that:

18

> The parties expend much energy disputing the application of the incidental use
> doctrine.  The incidental use doctrine "states that a railroad may **use** its easement
> to conduct not only railroad-related activities, but also any other incidental
> activities that are not inconsistent and do not interfere with the operation of the
> railroad."

* * * * *

The trial court rejected Level 3's contention that the fiber optic lines were an
incidental use.  Centering its analysis on whether the "incidental use" is

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

reasonably necessary to the operation of the railroad, and finding that "[i]ncidental rights should be limited to facilitating construction, maintenance and operation of the railroad," the trial court determined that the buried fiber optic line here is not an incidental use. *Id.* at 974. It thus concluded that Level 3's line constituted a trespass. *Id.* at 19, 974. The Court of Appeals found no trespass and rejected the trial court's strict reliance on the relationship between the alleged incidental use and railroad operations. Rather, it held that the incidental use doctrine applies so long as "the *use* is 'not . . . inconsistent with the public *use* to which the highways are dedicated,'"

\* \* \* \* \*

It establishes that when the railroad has acquired rights to a certain right of way through a government grant, a telecommunications company "shall have the right to construct and maintain all necessary telecommunications lines" along or across that railroad right of way. *Id.* However, if the railroad did not acquire the particular right of way via a government grant, i.e., a private party conveyed the right of way to the railroad by deed, then the "right to construct and maintain such lines *shall* be secured *only* by the exercise of right of eminent domain, as provided by law."

\* \* \* \* \*

Based on statutes governing this exact circumstance, giving effect to *article, XII, section 19 of the Washington Constitution*, we reverse the Court of Appeals on this issue. The unambiguous language of *RCW 80.36.040* requires an eminent domain proceeding in this context. Therefore, we affirm the trial court's conclusion that, absent an eminent domain action, Level 3's placement of the fiber optic cable within the right of way constituted a trespass.

*Kershaw*, 126 P.3d at 27-29 (various citations omitted) (emphasis added).

Thus, the Supreme Court of Washington held that the original deed conveyed only an easement interest in the right-of-way and that the placement of the fiber optic transmission line through the right-of-way was a trespass, in other words using subsurface rights, and required an eminent domain proceeding under statutes governing telecommunications companies. *Id.* That is the exact situation present in this case and the Defendants' arguments to the contrary, including the improper use of an appellate opinion without informing this Court that it has

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

specifically been overruled, is not only contrary to binding precedent, but also lacks candor to this Court.[19]

Furthermore, Defendants' failure to cite *Lawson* also lacks candor to the Court. Even though the Defendants cited to *Preseault II*, Defendants failed to inform this Court that *Preseault II* thoroughly analyzed *Lawson* and affirmed *Lawson*. *Lawson* specifically ruled that trail use exceeds a railroad purpose easement under Washington law and a change in use from rails to trails constitutes abandonment of the railroad purposes easement. *Lawson*, 730 P.2d at 1312-13. Moreover, in *Preseault II*, the Federal Circuit specifically analyzed and affirmed, in the context of Rails-to-Trails, the holding and reasoning of the Supreme Court of Washington as set forth in *Lawson*. *Preseault II*, 100 F.3d at 1543, 1550. The *Lawson* opinion is totally dispositive that trail use/railbanking exceeds the scope of the original railroad purposes only easement in this case under Washington law and, under binding Federal law, that a taking of Plaintiffs' reversionary interest in their land occurred and the railroad purposes easement no longer exists, was converted to a trail/railbanked easement, and the railroad purposes easement was abandoned. *See Lawson*, 730 P.2d at 1312-13; *Preseault II*, 100 F.3d at 1552.

While the Defendants may likely attempt to claim that *Lawson* is distinguishable because it did not involve possible reactivation of rail service (*i.e.*, railbanking), such distinction fails because *Preseault II* itself involved railbanking and the Federal Circuit concluded *Lawson* was "on all fours." *Preseault II* discussed (and approved) *Lawson* at length, as follows:

---

[19] Defendants' failure to cite the *Kershaw* opinion from the Supreme Court of Washington is egregious under these facts. Although *Kershaw* addressed a specific statute relating to telecommunications and the power of eminent domain, similar statutes relating to eminent domain exist and are applicable for each Defendant in this case such that each Defendant is liable for a trespass just as the telecommunications company was in *Kershaw*. *See* Rev. Code Wash. 53.25.190 (Port); 8.08.010 (King County); 80.32.060 (Puget Sound Energy).

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

> [The BNSF railroad] petitioned the ICC for permission to discontinue rail service over a certain right-of-way.  King County requested the ICC to determine that the right-of-way was suitable as a public recreational trail, and to require that it be offered for sale for public purposes.  The ICC did so under its Rails-To-Trails authority, and King County acquired the right-of-way from the Railroad.
>
> The property owners who owned the underlying fee estates sued in Washington State court for a declaratory judgment that this was an unlawful taking without just compensation.  The trial court held for the County.  The Washington Supreme Court, *en banc*, reversed.  The Court stated the common law rule to be that when a deed conveys a right-of-way for railroad purposes only, upon abandonment by the railroad of the right-of-way the land over which the right-of-way passes "reverts" to the reversionary interest holder (the owner of the fee estate) **free of the easement**…
>
> In addition to outright abandonment of a right of way, there may be a change in use of the right of way which is inconsistent with the purpose for which the right of way was granted.  Where the particular use of an easement for the purpose for which it was established ceases, the land **is discharged of the burden of the easement** and right to possession reverts to the original land owner or to that landowner's successor in interest.

*Id*. at 1543-1544 (emphasis added) (citations omitted).

The Court thus concluded that "King County cannot acquire the right of way from Burlington Northern without payment of just compensation to the reversionary interest holders. If the County takes this right of way and commences to build a recreation trail, it does so in violation of the constitution." *Id.*  The Federal Circuit was clear that *Lawson* "is an example of a case practically on all fours with" *Preseault II*.  100 F.3d at 1543.  Even the dissent in *Preseault II* recognized that *Lawson* is a "leading case" and "is virtually on all fours with the facts of this case (except that the plaintiff sued the state, not the United States): a state with a railbanking policy which used state government agencies to convert an old railroad easement to a recreational trail …." *Id.* at 1574.

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 29

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## VI.   CONTRARY TO DEFENDANTS' MOTION, PLAINTIFFS ARE NOT TRYING TO COLLATERALLY ATTACK STB JURISDICTION AT ALL—THE OPPOSITE IS TRUE

Defendants assert that Plaintiffs are trying to attack the STB's NITU Order (Def. MTD p. 16).  Defendants' argument totally lacks merit and makes no sense.  Plaintiffs do not attack the STB at all.  The Trails Act authorized the STB to issue a NITU.  The Trails Act authorized BNSF to negotiate with the Port and King County for transfer of the line for use as a recreational trail.  BNSF did nothing wrong and the trail users are authorized to acquire the original railroad purposes easement that is then converted to a trails/railbanked easement by way of the Trails Act.  Plaintiffs assert that trail use is entirely appropriate and authorized under the Trails Act.

Likewise, Plaintiffs assert and agree that the former right-of-way is legally railbanked.  The corridor can legally be reactivated as a railroad at any time in the future.  Plaintiffs' lawsuit has nothing to do with any claim that railbanking is not authorized or appropriate.

Further, preemption is misplaced.  Preemption relates to blocking the railroad's abandonment so that the Plaintiffs' reversionary interests do not vest under state law.  That is the preemption that is at issue in Rails-to-Trails cases under the Trails Act.  Here, the interest that is "preempted" is the vesting of the reversionary right—the right to land unencumbered by any easement—and has nothing to do with subsurface or aerial rights but has to do with surface rights when the railroad purposes easement is converted to a trail/railbanked easement.  Defendants' argument shows a complete misunderstanding of the law.

In *Haggart*, Plaintiffs will be paid for the loss of their reversionary interest, the loss of their surface buildable rights, pursuant to the Trails Act.  Defendant trail users assert that the federal government already paid Plaintiffs for their "land" in *Haggart* and that somehow allows

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

them to use Plaintiffs' land without paying the Plaintiffs.  Not so.  Pursuant to the Trails Act, Plaintiffs were paid for the loss of their "reversionary" interest—the right to their land unencumbered by any easement—with the authorization of the placement of a new "trails/railbanked easement" upon their land.  Defendant Trail Users clearly misunderstand Trails Act jurisprudence in thinking they were acquiring more than a surface easement.  If the railroad would have been allowed to abandon the easement, the landowner would have had their land back unencumbered by any easement.  Instead, the STB blocks the railroad's abandonment and authorizes a third party to use the land for interim recreational trail use.

In *Haggart*, the Plaintiffs will be paid for the difference between the value of Plaintiffs' land unencumbered by a railroad easement and the value of Plaintiffs' land *now encumbered* by a perpetual trail use easement subject to the possible reactivation as a railroad (and that new easement is all that Defendant Trail Users acquired pursuant to the Trails Act).  Plaintiffs are not being paid for the subsurface or aerial rights in their land and Plaintiffs absolutely own all right, title and interest in the subsurface and aerial rights.

## VII.   CONCLUSION

Under binding precedent, once a NITU is issued, a railroad purposes easement is converted to a new easement for trail/railbanking use and the land is no longer burdened with a railroad purposes easement.  Defendants' claims that they are authorized to use the land for railroad purposes as if the railroad purposes easement still exists, which still would not authorize their claimed incidental uses, or as if they acquired a fee interest, are contrary to almost 25 years of Trails Act jurisprudence.  Most importantly, if the railroad purposes easement still existed,

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

either because it had never been abandoned or because railbanking is deemed to be a railroad purpose, there could never be a taking under the Trails Act.

Longstanding precedent from the Supreme Court in *Preseault I*, from the Federal Circuit in *Preseault II*, and from the Supreme Court of Washington in *Lawson* completely defeat the fatally flawed arguments attempted by the Defendants.  Pursuant to overwhelming precedent, the Defendants only acquired the easement for trail use with the potential reactivation of a railroad and Defendants did not acquire any rights or authorization for use in Plaintiffs' subsurface or aerial property rights.   Plaintiffs respectfully request that Defendants' motion to dismiss be denied.

Date:  October 6, 2014.                                     BAKER STERCHI COWDEN & RICE, L.L.C.


                                                           By  /s/ *Thomas S. Stewart*
                                                               Thomas S. Stewart
                                                               Elizabeth McCulley
                                                               Laura J. Bettenhausen
                                                               2400 Pershing Road, Suite 500
                                                               Kansas City, MO 64108
                                                               Telephone:     (816) 471-2121
                                                               Facsimile:      (816) 472-0288
                                                               stewart@bscr-law.com
                                                               mcculley@bscr-law.com
                                                               bettenhausen@bscr-law.com

                                                               AND

                                                               RODGERS DEUTSCH & TURNER, P.L.L.C.
                                                               Daryl A. Deutsch, WSBA No. 11003
                                                               Rodgers Deutsch & Turner, P.L.L.C.
                                                               3 Lake Bellevue Dr. Suite 100
                                                               Bellevue, WA  98005
                                                               Telephone      (425) 455-1110
                                                               Facsimile       (425) 455-1626
                                                               daryl@rdtlaw.com
                                                               **ATTORNEYS FOR PLAINTIFFS**

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 32

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October 2014, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon all parties of record.

Timothy G. Leyh
Randall Thomsen
Kristin Ballinger
CALFO, HARRIGAN, LEYH & EAKES, LLP
999 Third Avenue, Ste. 4400
Seattle, WA  98104
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com
*Attorneys for Defendant Port of Seattle*

Gavin W. Skok
Bryan J. Case
Courtney L. Seim
James E. Breitenbucher
RIDDELL WILLIAMS PS
1001 – 4th Avenue, Ste. 4500
Seattle, WA  98154-1065
gskok@riddellwilliams.com
bcase@riddellwilliams.com
cseim@riddellwilliams.com
jbreitenbucher@riddelwilliams.com
*Attorneys for Defendant Puget Sound Energy*

Andrew W Marcuse
David J. Hackett
King County Prosecuting Attorney, Civil Division
500 4th Avenue, Suite 900
Seattle, WA 98104-5039
andrew.marcuse@kingcounty.gov
david.hackett@kingcounty.gov
*Attorneys for Defendant King County*

/s/ *Thomas S. Stewart*
_____

*4834-4208-8222, v. 1*

Plaintiffs' Brief In Opposition to Defendant King County's
Motion to Dismiss – 2:14-cv-000784-JCC - Page 33

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626