The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation and KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, <br><br> Defendants. | No. 14-cv-00784-JCC <br><br> KING COUNTY'S REPLY IN SUPPORT OF MOTION TO DISMISS <br><br> NOTE ON MOTION CALENDAR: October 10, 2014 |

Through this quiet title and declaratory judgment action, plaintiffs seek to remove the burden of railroad easements that have encumbered their respective properties for more than 100 years. The crux of plaintiffs' action is that the Trails Act worked an "abandonment" of the BNSF railroad easement through railbanking, and thus diminished the property rights connected with the rail corridor to just a hiking/biking surface easement with the possibility of future railroad activation. Although plaintiffs claim that "[a]lmost 25 years of Trails Act jurisprudence eviscerates" King County's arguments, Dk. 48 at 7 (Plaintiffs' Opp. at 2 n.2), they fail to cite a single case holding that railbanking relieves adjacent properties owners of the burden on their fee estate by extinguishing or abandoning the railroad easements that comprise the railbanked

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 1

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

corridor.[1]  To the contrary, plaintiffs admit that "Railbanking *prevents the operation of state laws that would otherwise come into effect upon abandonment, specifically property laws that would 'result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners.*"  Dkt. 48 at 24-25 (Plaintiff's Opp. at 19-20)(emphasis added; citing *Bright v. United States*, 603 F.3d 1273, 1275 (Fed. Cir. 2010)).  Such admissions are fatal to plaintiffs' proposed causes of action.[2]  Because (1) the takings cases cited by plaintiffs are either inapposite, or contrary to plaintiffs' claim that the BNSF easement was abandoned or extinguished; and (2) plaintiffs have made no effort to explain how this Court would have jurisdiction and/or authority to effect an abandonment of the BNSF railroad easements, or a diminution of the property rights established by those easements, this Court should grant King County's Motion to Dismiss.

**A.    Plaintiffs' Citation to Takings Case Law Does Not Establish A Viable Cause of Action Under The Trails Act to Quiet Title By Abandoning, Extinguishing, or Otherwise Terminating the BNSF Railroad Easement**

Plaintiffs fail to make a cogent argument demonstrating how takings case law could justify abandoning, extinguishing or otherwise terminating the BNSF railroad easement through a quiet title/declaratory judgment action.  The Trails Act causes a taking of plaintiffs' property rights by (1) preventing operation of state laws that would otherwise extinguish the railroad easement and remove the burden on plaintiffs' fee estate; and (2) causing plaintiffs to bear the

---

[1] As noted in King County's opening brief, for purposes of this Rule 12(c) motion only, the county is accepting plaintiffs' allegations that BNSF's interest was merely an easement.

[2] While sometimes acknowledging that the Trails Act prevents the abandonment and reversion of railroad easement property rights, plaintiffs directly contradict this principle by also asserting that the railroad easement "no longer exists." Dkt. 48 at 7 (Plaintiffs' Opp. at 2). Under real property principles, these two statements are mutually exclusive. The property rights embodied in the railroad easement either remain vested with the easement holder, or the rights are terminated through abandonment and revert to the underlying property owner. *Lawson v. State*, 107 Wn.2d 444, 452, 730 P.2d 1308 (1986)(upon abandonment easement automatically reverts to reversionary interest holder); 17 Wash. Prac., Real Estate § 2.12 (2d ed.) (the abandonment of an easement does not result in the easement becoming unowned, but rather it is released to the owner of the servient tenement).  Because the Trails Act prevents abandonment and reversion, the rights necessarily remain with the easement holder, now King County.

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

additional burden of a recreational trail in situations where the original easement was not broad enough to include a trail. *See, e.g,. Biery v. United States*, 99 Fed. Cl. 565, 572, 580 (Fed. Cl. 2011) ("if the recreational trail use and railbanking authorized by the NITU exceed the scope of that easement and prevented expiration of the easement and reversionary interests from vesting in the fee owners, then a taking has occurred"). A takings case is allowed, not because the Trails Act diminishes the easement rights held by the railroad prior to cessation of operations, but because it maintains those rights through railbanking *and* often expands those rights to include recreational trail use.[3]

The fundamental problem with plaintiffs' reliance on takings case law is that those cases necessarily address the property rights that plaintiffs have lost, which is often loosely referred to as their "reversionary interest," and the additional burden caused by the added recreational trail. The takings case law is not precedential authority for the easement rights held by rail roads and trail sponsors following operation of the Trails Act because these entities are not parties to the takings matter. Although takings case law does not ultimately support plaintiffs' effort to manufacture a quiet title action out of the Trails Act, plaintiffs' effort to use that case law to support their quiet title/declaratory judgment theories far exceeds any proper holdings from those cases.[4]

Plaintiffs' efforts to rely on takings case law to establish termination of the original railroad easement does not survive plaintiffs' own citation to the Federal Circuit's decision in

---

[3] Plaintiffs' argument that King County's position eliminates their takings claim makes no sense. The takings claim exists precisely because the Trails Act preserves the BNSF easements and prevents operation of plaintiffs' reversionary rights.

[4] If plaintiffs' were correct that the railroad easement preserved through operation of the Trails Act is then immediately converted to a lesser easement or extinguished, then the easement holder would also likely have a viable takings claim against the United States. The scope of such a claim would be substantial. For example, BNSF alienated its rights in the Seattle Branch Line, which includes the South Rail Line, for approximately $84 million in cash payments and hundreds of millions more in tax write offs for the associated donation agreements. News Release (December 12, 2009)(available online at http://www.portseattle.org/Newsroom/News-Releases/Pages/default.aspx?year=2009#113; visited October 10, 2014).

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820  Fax (206) 296-8819

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996)("*Preseault II*"). The issue of whether a taking has occurred depends on the answer to three questions:

> (1) who owned the strips of land involved, specifically did the Railroad by the 1899 transfers acquire only easements, or did it obtain fee simple estates; (2) *if the Railroad acquired only easements, were the terms of the easements limited to use for railroad purposes, or did they include future use as public recreational trails*; and (3) even if the grants of the Railroad's easements were broad enough to encompass recreational trails, had these easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements.

*Preseault II*, 100 F.3d at 1533 (emphasis added).[5]

The second *Preseault II* question renders plaintiffs' reliance on the takings case law to extinguish the railroad easement untenable. If the underlying railroad easement were extinguished through operation of the Trails Act, there would be no reason to examine the scope of such an easement to determine if a taking occurred through the addition of a trail. An abandoned easement would have no role in determining the scope of property rights taken from plaintiffs because the easement itself would have terminated with railbanking.

Plaintiffs' reliance on *Preseault II* and other takings case law to argue that "the railroad no longer exists and is actually abandoned by law" and "is replaced by an easement for a hiking and biking trail with the possible reactivation of a railroad" is simply misplaced. Dkt. 48 at 7 (Plaintiff's Opp. at 2). In obtaining their $140 million takings award, plaintiffs were certainly clear that the takings occurred because "the railroad easement *would have* terminated under state law in these circumstances, absent the NITU."[6] They argued vociferously that:

> It is the NITU that empowered the subsequent use as a public trail outside the scope of

---

[5] In their opposition brief, plaintiffs offer a block quotation of this passage that grossly misquotes the passage by inserting phrases that were not used by the Federal Circuit and "adding emphasis" to language that does not exist in the opinion. Dkt. 48 at 16-17 (Plaintiffs' Opp. at 11-12). Elsewhere in the brief, plaintiffs offer a supposed block quotation stating the holdings in *Preseault II*, but the quote exists nowhere in the opinion. *Id.* (Plaintiff's Opp. at 9).

[6] Memorandum in Support of Subclass Two Plaintiffs' Motion for Partial Summary Judgment On Liability And On The Proper Methodology to Determine the Amount of Just Compensation at p.39 (Dkt. 89 *filed* on 6/18/2012 in *Haggart v. United States*, No. 09-103 L, (Fed. Ct. Claims)(emphasis added; cited excepts attached as Ex. 1).

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

> the railroad purpose easements, and simultaneously stopped the state law extinguishment effect that such use **would have had**, but for the NITU, and it is that empowerment for use outside the scope (which by state law **would have** fatally destroyed and **extinguished** the entire easement) that worked the taking. The NITU did not block part of the "reversionary" interest, it blocked all of the landowner's "reversionary" interest. Thus, the government is obligated to pay for all of the "reversionary" interest to unencumbered land the landowner had on the date of the NITU, and that is what must be valued.

*Id.* (all emphasis in original). Having obtained money in the Court of Federal Claims by arguing that the NITU *preserved* the BNSF railroad easement, plaintiffs should not now be heard to argue that the same easement was extinguished by railbanking. *See Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.")

The Court of Federal Claims cases clearly state that a taking resulting from a NITU is a combination of preventing termination of a railroad easement and adding trail use to the scope of the railroad easement. As the *Haggart* court held in favor of plaintiffs' takings claim: "The NITU mechanism, *even as it preserves the continued existence of the easement*, points to the government's liability for transforming the purpose of the easement *beyond* what the original parties to the transaction contemplated." *Haggart v. United States*, 108 Fed. Cl. 70, 82 (2012) (emphasis added). *Accord Biery v. United States*, 99 Fed. Cl. at 572.

Federal Circuit rulings on Trails Act takings cases also confirm that the Trails Act operates to retain existing railroad easements.[7] In *Caldwell v. United States*, 391 F.3d 1226

---

[7] Plaintiffs severely fault King County for not citing *Lawson*, but that case did not involve the Trails Act case, did not involve railbanking, and pre-dated the NITU process. In *Lawson*, acting under a state statute, King County obtained from the ICC a right of public use negotiating period to buy the railroad corridor under 49 U.S.C. §10906. *Lawson*, 107 Wn.2d at 446-447. Although §10906 was also concerned with the loss of trackage and the promotion of trails, it was later superseded by the Trails Act because the statute proved unsuccessful. *Preseault v. I.C.C.*, 494 U.S. 1, 6 (1990). The *Lawson* court held that under state common law principles that the change in use from rails to trails constituted an abandonment of the railroad easement. *Id.* at 452. The result in *Lawson* is precisely why the Trails Act was adopted – to prevent trail use from being treated as an abandonment. 16 U.S.C. §1247(d). It is unremarkable that King County did not cite *Lawson* for these points because the opinion has no bearing on how

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

(Fed. Cir. 2004), the court described that the Trails Act *prevents* extinguishment of the railroad easement: "the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment - property laws that would 'result in extinguishment of easement rights for railroad purposes and reversion of rights of way to abutting landowners.'" *Id*. at 1229. Likewise, the court in *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006), agreed with the property owners' accurate statement that issuance of the NITU under the Trails Act caused "the easement [to] continue[] in existence beyond the time when it otherwise would have been abandoned.'" *Id*. at 1374.

    The combination of retaining the existing railroad easement and adding the right to use the property for trail use is sometimes shorthanded in takings decisions as a "conversion" of the prior easement, or even as the creation of a new easement. Regardless of what it is called, the description of what actually happens to the property rights is clear. Railbanking preserves the railroad easement and adds the ability of the trail sponsor to carry out interim trail use. Absent preservation of the easement rights, the trail sponsor would have only limited ability to site a trail and no ability to maintain the corridor for future rail use – which is the very purpose of the Trails Act. It is the railroad easement that allows the trail sponsor to maintain the integrity of the corridor for both trail use and future rail use. After all, a railroad corridor is not an abstraction, but rather consists of the state law property rights embodied in the railroad easement, including the ability to prohibit uses inconsistent with the easement.

    In *Illig v. United States*, 58 Fed. Cl. 619, 630-31 (2003), the Court of Federal Claims explained that the "Trails Act was enacted in order to 'preserve established railroad rights-of-way for future reactivation of rail service, [and] to protect rail transportation corridors.'" *Id.* at

---

railbanking works under the subsequent Trails Act.

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

631. Toward this purpose, the Trails Act maintains the prior easement:

> [T]he stated intent of the government in creating the Trails Act was to *preserve railroad rights-of-way as they existed*. See 16 U.S.C. § 1247(d) (stating that 'if . . . interim trail use is subject to restoration and reconstruction for railroad purposes, such interim use shall not be treated . . . as an abandonment of the use of such rights-of-way for railroad purposes.') Although *interim trail use of the railroad corridor was authorized* by the Trails Act through the NITU issued here, the use of the easement for trail purposes is subject to the future restoration of rail services. *See id.;* 49 C.F.R. §1152.29(a)(3). The clear implication is that defendant [United States] wished to maintain the status quo, securing for Trailnet whatever rights MoPac previously held in the easement.

*Id.* (emphasis added). As *Illig* makes clear, the railroad easement rights held by the railroad are preserved as they existed prior to the NITU, and the Trails Act adds authorized trail use. *See also Dana R. Hodges Trust v. United States,* 111 Fed.Cl. 452, 458 (2013) ("The trail operator's 'scope of easement,' as was recognized by the Court of Federal Claims in *Illig*, 'retain[s] essentially the same characteristics as the original easement.'").

The takings case law simply fails to support plaintiffs' causes of action.

**B.    The Trails Act Precludes Any Claim By Plaintiffs That the BNSF Easement Was Abandoned, Terminated Or Otherwise Extinguished**

In claiming that the BSNF easement "no longer exists," Dkt. 48 at 18 (plaintiffs Opp. at 13), Plaintiffs disregard and do not directly address the plain language of the Trails Act, 16 U.S.C. § 1247(d), where Congress specifies that railbanking and interim trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." Plaintiff's also ignore other provisions in the Trails Act recognizing that the use of "established railroad rights-of-way" for railbanking can be achieved through "donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter." *Id.* If plaintiff's position were correct, there would be no need for Congress to make provision for

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 7

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

alienating an easement that was extinguished by operation of the act.[8]

The purposes of the Trails Act, as explained by the Supreme Court, are to preserve, not diminish railroad corridors.[9] *Preseault,* 494 U.S. at 17-18.  Plaintiffs' fail to provide any answer to the practical questions posed in King County's motion that would result if the Trails Act did cause the railroad easement to be abandoned or extinguished.  How can a railroad return when the scope of the property interests in the corridor are left undefined and the railroad easement rights that established the corridor have been extinguished?  Plaintiff's theory of the Trails Act in their current quiet title/declaratory judgment action would replace a well-defined state law easement, heretofore recognized as the proper source of property rights,[10] with a nebulous and ill-defined "Trails Act easement" for future railroad operations – what plaintiffs call a "new and different easement."[11]  Dkt. 48 at 7 (Plaintiff's Opp. at 2).  With no railroad easement, the purpose of the Trails Act – "to preserve established railroad rights-of-way for future reactivation of rail service" – would be entirely frustrated.

---

[8] Plaintiffs do soundly defeat a number of arguments that King Count does not make and that do not matter.  For example, plaintiffs devote substantial pages to arguing that railbanking is not a "railroad purpose," which apparently responds to a state law argument that the United States sometimes makes in Trails Act takings cases.  Dkt. 48 at 24-27 (Plaintiffs' Opp. at 19-22); s*ee Biery*, 99 Fed. Cl. at 577-78.  This issue is of no moment to King County's Motion to Dismiss, which addresses operation of the Trails Act to preserve property rights created by the BNSF easement.

[9] The brief in opposition misstates *Preseault* by claiming that: "The Supreme Court noted that the stated purposes of the Trails Act are (1) to encourage the development of additional recreational trails on an interim basis, and (2) to preserve federal jurisdiction over established railroad rights-of-way for potential future reactivation of rail service. 494 U.S. at 17."  Dkt. 48 at 13 (Plaintiff's Opp. at 7).  This is not what the Court noted on page 17 or elsewhere in the opinion.  The Court said nothing about "preserving federal jurisdiction" over railroad rights-of-ways.  Instead, the Court quoted the Trails Act itself, which states its purpose is to "preserve" not federal jurisdiction but "established railroad rights-of-way."  494 U.S. at 17-18.

[10] Although the Trails Act expands a railroad easement to include interim trail use and prevents abandonment of the easement, state law remains the device for delineating the property interests acquired through a railroad easement. *Preseault v. I.C.C.*, 494 U.S. 1, 22, 110 S.Ct. 914, 927, 108 L.Ed.2d 1 (1990)(O'Connor, J, concurring).

[11] One of the many questions left unanswered by plaintiffs' theory is who would own this new corridor upon reactivation of railroad traffic?  Prior to reactivation, which plaintiffs claim "will likely never come to fruition," plaintiffs' would likely be free to use their property in any manner that does not interfere with the narrow trail easement.  Plaintiffs' theory would effectively grant for themselves "interim reversion rights," where they are allowed to use the railbanked corridor without the burden of an actual railroad easement unless reactivation one day occurs.  Considering that the $140 million takings payment was compensation for operation of the Trails Act in *preventing* plaintiff's reversion rights, this is certainly "nice work if you can get it."

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

The Court of Federal Claims in *Illig* explained why the railroad easement must be kept intact in order for the trail sponsor to keep the corridor available for future activation.

> The Trails Act and its implementing regulations require trail sponsors to assume 'full responsibility' for managing the right-of-way and for any legal liability arising out of the right-of-way. 49 C.F.R. § 1152.29(a). As part of this responsibility, a trail sponsor must also make assurances that the right-of-way is kept available for 'future reactivation . . . for rail service.' *Id.* §1152.29(a)(3). In order to meet these requirements, we believe the Trails Act and its implementing regulations require that a trail sponsor *must have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trails sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service. . . .* We therefore conclude that the Trails Act imposed a new easement across plaintiffs' properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity."

*Illig*, 58 Fed. Cl. at 631 (emphasis added).

The need to keep the railroad easements intact is also emphasized by the rules related to reactivation. The Surface Transportation Board has described the immediacy with which a corridor must be available for use. "In short, an interim trail use arrangement is subject to being cut off *at any time* by the reinstitution of rail service." " *Georgia Great S. Div., South Carolina Cent .R.R. Co. – Abandonment and Discontinuance Exemption – Between Albany and Dawson, in Terrell, Lee, and Dougherty Counties, GA*., Slip Op. at 3, STB Docket AB-389 (Sub-No. 1X), 2003 WL 21132515 at *3 (Service Date May 16, 2003)(emphasis added). Because reactivation can occur any day (and for an abandoning carrier without any additional STB approval or any transfer of real property rights), the railroad easement must be fully intact and available for immediate use by a reactivating railroad.[12]

Consistent with the notion that the railroad easement survives railbanking, the STB has recognized that additional public uses may be made of railbanked corridors, stating that "we see

---

[12] Railbanking under the Trails Act does not cause a railroad easement to be extinguished and then spring into life again sometime in the future upon resumption of rail use. If that was the intent, certainly Congress and the STB would have clearly spelled out this complicated manipulation of state property rights.

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 9

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

no reason why the development of non-trail activities or structures on or around the right-of-way should be restricted, as long as they are consistent with interim trail use, rail banking, and future restoration of rail service." *Comments on Rail Abandonments-Use of Rights-of-Way As Trails (49 CFR Parts 1105 & 1152)*, 2 I.C.C.2d 591, 597 (Apr. 16, 1986). Such public uses may include excursion trains or light rail. *See, e.g., Baltimore and Ohio Railroad Company—Abandonment and Discontinuance of Service in Montgomery County, MD and the District of Columbia*, STB Docket No AB-19 (Sub-No. 112) (decided February 22, 1990) 1990 WL 287371 at *2 ("the County's plains to use the right-of-way as a rail passenger transitway, in addition to a recreational trail, would not be inconsistent with railbanking.").

The broad scope of uses allowed under a railroad easement is a function of Washington State law. Plaintiffs' are simply wrong in claiming that Washington recognizes no incidental uses for rail corridors and that King County violated ethical obligations by citing *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 121 Wn. App. 714, 735, 91 P.3d 104, 116 (2004) *aff'd in part, rev'd in part*, 156 Wn.2d 253, 126 P.3d 16 (2006).[13] Dkt. 48 at 31 (Plaintiff's Opp. at 26). Although the Washington Supreme Court affirmed the Court of Appeals on some grounds and reversed on others, it did not disturb the lower appellate court's discussion of the incidental use doctrine. A later decision by the Court of Appeals, *Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188, 201, 130 P.3d 880, 887 (2006), *review denied* 158 Wn.2d 1023 (2006), thoroughly examines the two opinions in determining that the Supreme Court's *Kershaw* opinion "strongly indicates an endorsement of the interpretation of the incidental use doctrine as embodied in the Court of Appeals [*Kershaw*] opinion." Thus, the current state of Washington law (as determined by state courts) is that "the incidental use

---

[13] Contrary to plaintiffs' representation to the Court, King County accurately disclosed the complicated procedural history of *Kershaw* just as it does here. Dkt. 36 at 14-15.

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

doctrine permits a railroad to use its easement to conduct not only railroad activities, 'but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad.'"[14]  *Id.* at 200 (*quoting* 156 Wn.2d at 273).

It is important to note that King County's Motion to Dismiss does not require this Court to determine whether the easements granted by the Port to PSE and Sound Transit satisfy Washington's incidental use doctrine.  Plaintiffs make no incidental use claims in their complaint, relying exclusively on the theory that the Trails Act extinguishes or abandons the prior BNSF railroad easements.  King County's motion is addressed exclusively to this federal question and the jurisdictional problems that accompany a quiet title/declaratory judgment action that seeks to abandon or diminish the easement rights that underlie a federally regulated rail corridor.  King County merely seeks to preserve, against plaintiffs' federal question challenge, the railroad easements that it purchased from the Port and the Port received from BNSF.  Because plaintiffs lack any basis in the federal Trails Act for their quiet title/declaratory judgment action, this case should be dismissed.

**C.    Plaintiffs Offer Little To No Argument Disputing That This Court Lacks Authority Or Jurisdiction to Grant Plaintiffs' Requested Relief**

Although granted additional pages and an extra week to respond to King County's Motion to Dismiss, plaintiffs almost entirely fail to address King County's arguments this Court lacks jurisdiction and/or authority to adjudicate plaintiffs' causes of action.  King County offered three separate arguments in this regard: (1) that this Court lacks statutory jurisdiction to entertain a collateral attack against the STB's NITU order, which operated to *prevent* abandonment of the South Rail Corridor and preserve the property rights necessary to conduct future railroad

---

[14] To date, plaintiffs have certainly not made a good case that Washington law limits railroad easements to surface rights only.  In contrast with the substantial authority regarding the robust nature of railroad easements in King County's Motion to Dismiss, plaintiffs' fail to cite any cases supporting their narrow view of railroad easements.

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 11

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

operations in the corridor (s*ee* Dkt. 36 (Motion to Dismiss at 16-17)); (2) that any state law remedies that would cause an abandonment of the rail corridor or operate to reduce the property rights connected to the corridor, are pre-empted by the ICCTA, 49 U.S.C. §1050(b) (s*ee id.* at 17-20); and (3) that any action seeking an abandonment of the BNSF easement rights or a diminution of the attendant property rights lies exclusively within the jurisdiction of the STB (s*ee id.* at 20).   Plaintiff offers only a cursory response to the first jurisdictional argument and no response to the other two.  *See* Dkt. 48 at 35-36 (Plaintiffs' Opp. at 30-31).

King County's jurisdictional arguments are well-supported by the authorities cited in the motion.  By failing to respond, plaintiffs' have provided this Court with no reason to depart from these established authorities, effectively conceding King County's points.  *See* LCR 7(b)(2)("if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."); *Westcott v. Wells Fargo Bank, N.A*, 862 F.Supp.2d 1111, 1121 (W.D. Wash. 2012) ("Plaintiffs do not respond to Wells Fargo's argument that fraudulent concealment and public policy offer no basis for rescission, and the Court considers those grounds abandoned.").  If plaintiffs somehow have pled a viable federal claim for abandonment or termination of the BNSF easement under the Trails Act, this Court should nevertheless dismiss for want of jurisdiction or authority.

//

//

//

//

//

//

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 12

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

For the foregoing reasons, this Court should grant King County's Motion to Dismiss.

DATED this 10th day of October, 2014 at Seattle, Washington.

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By: *s/ David J. Hackett*
DAVID J. HACKETT, WSBA #21236
Senior Deputy Prosecuting Attorney

By: *s/ Andrew W. Marcuse*
ANDREW W. MARCUSE, WSBA #27552
Senior Deputy Prosecuting Attorney
Attorneys for Defendant King County
500 Fourth Ave., 9th Floor
Seattle, WA. 98104
Telephone: (206) 296-8820 / Fax: (206) 296-8819
Email: david.hackett@kingcounty.gov
andrew.marcuse@kingcounty.gov

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

## DECLARATION OF FILING AND SERVICE

I hereby certify that on October 10, 2014, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daryl A. Deutsch, WSBA # 11003
Rodgers, Deutsch & Turner, PLLC
Three Lake Bellevue Drive, Suite 100
Bellevue, WA 98005

Timothy G. Leyh, WSBA #14853
Randall Thomsen, WSBA #25310
Kristin Ballinger, WSBA #28253
Calfo, Harrigan, Leyh & Eakes, LLP
999 Third Avenue, Suite 4400
Seattle, WA 98104

Thomas S. Stewart
Elizabeth McCulley
BAKER STERCHI COWDEN & RICE, LLC
2400 Pershing Road, Suite 500
Kansas City, MO  64108

James E. Breitenbucher
Gavin W. Skok
Courtney Seim
Bryan J. Case
Riddell Williams PS
1001 – 4th Avenue, Suite 4500
Seattle, WA 98154-1065

I further certify that on October 10, 2014 I electronically served a copy of the same to the following party who have not yet appeared in this case:

Loren Armstrong
Jordan Wagner
Desmond Brown
Sound Transit
401 S. Jackson St.
Seattle, WA 98104

//

//

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1  I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

2  DATED this 10th day of October, 2014 at Seattle, Washington.

*s/ Karen Richardson*
Karen Richardson
King County Prosecuting Attorney's Office
500 Fourth Avenue, Suite 900
Seattle, WA.  98104
(206) 296-8820

KING COUNTY'S REPLY IN SUPPORT OF
MOTION TO DISMISS (14-cv-00784-JCC) - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819