THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KASEBURG, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PORT OF SEATTLE, *et al.*,<br><br>Defendants. | CASE NO. C14-0784-JCC<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 36). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the Motion for the reasons explained herein.

I.      BACKGROUND

Plaintiffs, owners of Eastside property extending from Woodinville to Renton, seek to quiet title and obtain declaratory relief in light of allegedly unlawful expansions of former railway easements, following the easements' "railbanking" under the Trails Act (16 U.S.C. § 1247(d)).

The parties agree that Burlington Northern Santa Fe Railway (BNSF), through its predecessors, acquired easements on Plaintiffs' land in the late 1800s and early 1900s. (Second Amended Complaint, Dkt. No. 46 at ¶3; Motion to Dismiss, Dkt. No. 36 at 2.) In a 2012 decision by Judge Charles F. Lettow of the U.S. Court of Federal Claims, these same easements

were determined to be surface easements for railroad purposes only. (Second Amended Complaint, Dkt. No. 46 at ¶99 (citing *Haggart v. United States,* 108 Fed. Cl. 70, 80 (2012).) By 2008, BNSF no longer used these easements. (Motion to Dismiss, Dkt. No. 36 at 2.)

The Trails Act provides that railroad easements that have fallen into disuse by a railway, and would thus otherwise revert to the fee simple owner under state law abandonment doctrines, may instead be "railbanked" in a multiparty transfer governed by the Surface Transportation Board. *See* 16 U.S.C. § 1247(d). In railbanking, the railway effectively abandons the easement, but the federal Trails Act preempts state abandonment and reversion doctrines, and the railway is allowed to transfer the easement to a state or local government that has agreed to maintain it for interim recreational trail use. *Id.* The railway retains the right to reactivate the railroad easement if, in the future, it reactivates rail service in that corridor. *Id.*

Pursuant to this railbanking process, on May 12, 2008, BNSF entered into a series of agreements with the Port of Seattle (Port) and King County (County) to transfer the corridor via quitclaim deed to the Port and to designate King County as the Interim Trail Manager. (Motion to Dismiss, Dkt. No. 36 at 3.) In this transfer, BNSF made no representations or warranties concerning title and specifically stated that "the Port and County acknowledge and affirm that BNSF may not hold fee simple title to the Property, that BNSF's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes . . . and the Port and County are willing to accept the Property on this basis." (Second Amended Complaint, Dkt. No. 46 at ¶110 (citing the Donation Agreement, Dkt. No. 46, Ex. D).) In *Haggart,* the Federal Claims case that analyzed the takings issue implicated by these easements, Judge Lettow found that the Trails Act-enabled transfer of easements from BNSF to the Port granted the Port a *surface easement for recreational trail use* with potential reactivation of a railroad right-of-way. (Second Amended Complaint, Dkt. No. 46 at ¶99 (citing *Haggart,* 108 Fed. Cl. at 80).)

In alleged contravention of the axiom that one cannot transfer a greater property interest than one holds, the Port, along with King County, assigned some of these *recreational trail use*

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PAGE - 2

surface rights, as well as *subsurface* and *aerial* rights (which the Port does not appear to have possessed in the first place), to Defendant Central Puget Sound Regional Transit Authority (Sound Transit) *for public transportation purposes* (the building of a High Capacity Transit System), and also to Defendant Puget Sound Energy, Inc. (PSE), a private utility corporation, *for electricity distribution and utility delivery purposes*. (Second Amended Complaint, Dkt. No. 46 at 47-49; Motion to Dismiss, Dkt. No. 36 at 7.) The fact and scope of these transfers are undisputed by the parties. In these transfers, the Port made no warranty of title as to the Property or Easement Agreement and specifically advised these parties that the Port "may not hold fee simple title to the Property and that the Port's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes." (Second Amended Complaint, Dkt. No. 46 at 49-50 (citing High Capacity Transportation Easement Agreement, Dkt. No. 46, Ex. L).)

Plaintiffs do not dispute that the Port and County possess surface easements on Plaintiffs' parcels, for recreational trail use. However, Plaintiffs do object to these allegedly scope-exceeding transfers of the subsurface and aerial rights under and above these surface easements, as well as the easements' imminent use in public transportation and energy transmission ventures, rather than for recreational trails. Plaintiffs seek to quiet title in their favor to these non-recreational trail use surface rights and aerial and subsurface rights to which PSE, Sound Transit, and the Port now lay claim. Plaintiffs seek declaratory relief confirming that they maintain the fee simple estates underlying the easements. (Second Amended Complaint, Dkt. No. 46 at 51-54). Defendant King County has filed the instant Motion to Dismiss (Dkt. No. 36), which Defendant Port of Seattle has joined (*see* Dkt. No. 39).

## II.   DISCUSSION

### A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but

early enough not to delay trial – a party may move for judgment on the pleadings."[1] To grant a motion for judgment on the pleadings, the court must conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). There must be no genuine issues of material fact in dispute. *Id.*

However, to survive a motion to dismiss or a motion for judgment on the pleadings, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

B.   **Defendants' Direct Critiques of Plaintiffs' Complaint**

This Court does not see how, even crediting the allegations of and making inferences in the light most favorable to the *moving* party, Defendants' arguments could establish that they were entitled to judgment as a matter of law. Defendants spend the majority of their Motion creating and attacking the straw man issues of abandonment and the current state of the railroad easement. In doing so, they misconstrue Plaintiffs' position.

First, although Defendants may be correct that at times, Plaintiffs incorrectly refer to BNSF as having "abandoned" the rail corridor, the Court recognizes this to be more of a rhetorical precision issue than a legal mischaracterization of the technical aspects of the railbanking process. In the everyday sense of the word, BNSF *did* "abandon" its right of way. But, in the portions of their briefing in which Plaintiffs actually describe the technical aspects of the railbanking process, they completely concede that the Trails Act preempts abandonment *qua* abandonment triggering reversion under state law. Whether "abandonment" has occurred is

---

[1] That Defendants entitle their Motion a motion to dismiss but include authorities pertaining to a motion for judgment on the pleadings is not problematic as these two motions are "functionally identical[;] the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine, Inc.,* 867 F. 2d 1188, 1192 (9th Cir. 1989).

irrelevant[2] because Plaintiffs are not, as Defendants seem to imply, taking the extreme position that the Trails Act is preempted by *state law* such that BNSF's functional abandonment of the right of way should have caused the easements to revert.

Second, Defendants make much of Plaintiffs' statements that the railway easement "no longer exists." (*See e.g.,* Plaintiffs' Brief in Opposition, Dkt. No. 48 at 13.) This is another straw man, rhetorically-focused argument that, again, would be relevant only if Plaintiffs were arguing that the full easement ought have reverted to them. Instead, Plaintiffs argue, and are supported by federal and state law precedent in doing so, that the present easements burdening their land are surface easements for recreational trail use.[3] These trail use easements *replaced* the railway easements, pursuant to the Trails Act.[4,5] Thus, Plaintiffs argue, the Port did not have the power to convey surface *and* subsurface and aerial easements for electricity transmission and mass transit purposes to PSE and Sound Transit.[6]

---

[2] *See Ybanez v. United States,* 102 Fed. Cl. 82, 87 (2011) ("Where the scope of a new easement exceeds the original grant, a determination of whether abandonment occurs is unnecessary.") (citing *Preseault v. United States (Preseault II),* 100 F.3d 1525, 1533 (Fed. Cir. 1996) and *Toews v. United States,* 376 F.3d 1371, 1381 (Fed. Cir. 2004)).

[3] *See, e.g.* Plaintiffs' Brief in Opposition, Dkt. No. 48 at 16 (stating, in reference to *Lawson v. Washington,* 730 P.2d 1308 (Wash. 1986), that "[t]he blocking of abandonment pursuant to the Trails Act prevented the vesting of Plaintiffs' reversionary interest, consisting of Plaintiffs' rights in the surface only, and authorized the placement of an easement for recreational trail use with the potential reactivation of a railroad."); *id.* at 30 ("Plaintiffs assert that [recreational, surface-limited] trail use is entirely appropriate and authorized by the Trails Act. . . Plaintiffs assert and agree that the former right-of-way is legally railbanked . . . Plaintiffs' lawsuit has nothing to do with any claim that railbanking is not authorized or appropriate.").

[4] *See* Plaintiffs' Brief in Opposition, Dkt. No. 48 at 17 ("The railroad purpose easement is converted to a new easement upon the Plaintiffs' land.").

[5] At times, Defendants themselves seem to concede this description: the "combination of retaining the existing railroad easement and adding the right to use the property for trail use is sometimes shorthanded in takings decisions as a 'conversion' of the prior easement, *or even as the creation of a new easement.*" (Defendants' Reply in Support of Motion to Dismiss, Dkt. No. 51 at 6 (emphasis added).)

[6] *See* Plaintiffs' Brief in Opposition, Dkt. No. 48 at 23-24 ("Because the railroad only held a surface easement and could only transfer what it owned to the Defendant Trail Users, the Defendant Trail Users only own a trail/railbanked easement and Plaintiffs continue to own the underlying fee including the subsurface and aerial rights in the trail/railbanked easement.").

In sum, Defendants' direct Rule 12(c) attacks on Plaintiffs' Complaint fail because Plaintiffs simply do not dispute the validity of the recreational trail use surface easements on their parcels.[7] Given their lack of arguments on the topic, nothing in the Defendants' Motion or Reply would allow the Court to conclude that Defendants were entitled to judgment as a matter of law on the central issue of whether the Port lacked the power to grant PSE and Sound Transit the easements they now claim.[8,9]

### C. Preemption Arguments

Defendants raise three preemption arguments they claim compel this Court to dismiss Plaintiffs' case.

First, Defendants state that Plaintiffs are barred from collaterally attacking the STB's NITU order approving BNSF's transfer of the easement to the Port. Defendants allege that Plaintiffs "seek to effectively undo the STB's work and cause an abandonment of the railroad easement" and that this Court, as a "District Court[,] lack[s] jurisdiction to review an STB

---

Defendants themselves concede that the "property rights formerly held by BNSF in the South Rail Corridor were transferred by Quit Claim deed to the Port." (Motion to Dismiss, Dkt. No. 36 at 6.)

[7] *See e.g.,* Second Amended Complaint, Dkt. No. 46 at ¶¶121, 134, 138, 141 (relief sought does not include exclusive surface possession).

[8] The only arguments Defendants make regarding the central issue of whether the Port was in a position to grant these subsurface/aerial and non-recreational trail use rights to PSE and Sound Energy consist of citing dicta from 150-year-old cases explaining that railway easements are "robust" and "very substantial thing[s]" that may include subsurface and aerial rights *incidental* to *rail use*. (*See* Motion to Dismiss, Dkt. No. 36 at 13.) Furthermore, these pre-Trails Acts dicta say nothing about the "robustness" and inherent scope of a *former* railway easement that is now a recreational trail easement no longer in the hands of the railroad.

[9] For the authorities supporting Plaintiffs' legal positions, see *Preseault v. Interstate Commerce Comm'n (Preseault I),* 494 U.S. 1 (1990) (holding that Rails to Trails conversions giving rise to just compensation claims are clearly authorized by the Trails Act and that railbanking is not a railroad purpose); *Preseault II*, 100 F.3d 1525 (holding in a Trails Act case that state property laws dictate the nature of the property held by a railroad, and holding that the trail use easement acquired by similarly situated defendants did not receive the incidental use benefits the predecessor railroad had held); *Lawson,* 730 P.2d 1308 (holding that "when an easement is granted to a railroad through a private conveyance, the easement is not a perpetual public easement").

order." (Motion to Dismiss, Dkt. No. 36 at 16.) Again, Defendants thoroughly mischaracterize Plaintiffs' position. Plaintiffs do not challenge the STB's authority to preside over the transfer of BNSF's railway easement to the Port, in the form of a surface easement for recreational trail use, nor challenge the transfer itself. Instead, they dispute that the *Port* lacked authority to then grant larger easements than it had received received to PSE and Sound Transit.[10] That the STB's blessing of the original, Trails Act-compliant transfer to the Port somehow gave the Port absolute immunity when assigning property rights that it never had in the first place, is not a compelling argument to this Court.

Second, Defendants argue that any state law remedies that would cause an abandonment of the rail corridor are pre-empted by the ICCTA, the Trails Act, and associated federal regulations. (Motion to Dismiss, Dkt. No. 36 at 17.) This preemption argument misses the mark, at the point that Plaintiffs are not arguing that BNSF abandoned the railway corridor, in the technical sense of an abandonment that would trigger reversion under state law. *See* Section II(B), *supra*.

Third, Defendants argue that any abandonment of the corridor lies within the exclusive jurisdiction of the STB, and is outside this Court's jurisdiction. (Motion to Dismiss, Dkt. No. 36 at 20.) This argument is similarly inapposite. That the "STB has exclusive plenary authority over freight rail operations in interstate commerce under the ICCTA" (*id.*) hardly mandates the conclusion that no federal court may ever touch a suit in which the STB once played a role in the underlying events. Plaintiffs are not suing the STB, nor are they questioning the STB's well-established authority to preside over and approve transformations of railway easements into recreational trail use easements under the Trails Act. Defendants cannot seriously suggest that the fact that the STB supervised that original transfer means that any suit related to the resultant recreational trail easement, whether sounding in tort, contract, property law, or even criminal

---

[10] *See* footnote 3, *supra*.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
PAGE - 7

law, must be reserved for the extra-Article III review of the Surface Transportation Board.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 36) is DENIED.

DATED this 5th day of December 2014.

                    John C. Coughenour
                    UNITED STATES DISTRICT JUDGE