UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PORT OF SEATTLE, et al., <br><br> Defendants. | No. 2:14-cv-000784 <br><br> **PUGET SOUND ENERGY, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY RELIEF** <br><br> *ORAL ARGUMENT REQUESTED* |

## I.   INTRODUCTION

Plaintiffs' motion highlights a clear distinction between the parties. Plaintiffs contend that all rights under the prior railroad easements *disappear* as soon as a rail corridor is railbanked. In contrast, PSE contends that the railbanking statute *preserves* all rights under the prior railroad easements when a corridor is railbanked, but also grants an additional permission for interim trail use until the railroad use resumes. Plaintiffs support their position by analogy to various takings cases, none of which squarely address this issue or directly support their argument. PSE's position is supported by the plain language of the railbanking statute (which says railbanking implements "the national policy to *preserve* established railroad rights-of-way," 16 U.S.C. 1247(d)), by more closely applicable case law (including a prior decision from this

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 1
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

1  Court and other case law squarely addressing this issue, e.g., *Illig v. United States*, 58 Fed. Cl.

2  619 (Fed. Cl. 2003)), by the actual operation of the railbanking and reactivation process, and by

3  logic. PSE's position is correct; Plaintiffs' is not. Accordingly, this Court should deny

4  Plaintiffs' request to enter a declaratory judgment that the railroad easements in the disputed

5  corridor have been extinguished and replaced by new, narrower "easements for a recreational

6  trail."

7      The Court should also deny Plaintiffs' request for a declaratory judgment that the

8  Kittinger deed granted only an easement to the railroad. The Kittinger deed granted a fee interest

9  under the factors set forth in *Brown v. State*, 130 Wash.2d 430, 924 P.2d 908 (1996). In

10  particular, the intent to grant fee is shown by: (i) the granting language, which contains no

11  reference to a "right of way" or any easement; (ii) the grantor's reservation of rights, which is

12  consistent with the grant of a possessory interest (i.e., fee) to the railroad; and (iii) the amount

13  paid by the railroad, which is consistent with a grant of fee and far in excess of the grant of only

14  an easement.

15  ## II.  STATEMENT OF FACTS

16      The factual background of this matter is largely set forth in King County's previously

17  filed Motion to Dismiss (Dkt. No. 36), which PSE hereby incorporates by reference, along with

18  any statements of fact by any other Defendants in their responsive briefing to the Plaintiffs'

19  motion. By way of further background, PSE adds that on December 21, 2010, the Port of Seattle

20  granted PSE a utility easement over the entire railbanked corridor, including the portion of the

21  corridor where Plaintiffs allegedly own adjacent property. *See* Dkt No. 46-93 (Exhibit H). PSE

22  is considering what, if any, use to make of the corridor.[1]

---

[1] Further information about potential uses of the corridor under consideration by PSE can be found at http://www.energizeeastside.com/.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 2
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

### III.   AUTHORITY & ARGUMENT

**A.   Railbanking Preserves Existing Rights Under the Railroad Easement and Adds Permission for Interim Trail Use.**

Ten years ago, in *Friends of the East Lake Sam. v. City of Sammamish*, 361 F. Supp. 2d 1260 (W.D. Wash. 2005) (Coughenour, J.), this Court recognized:

> In amending the National Trails System Act Congress sought to effect two purposes: (1) to "preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use," and (2) to "encourage the development of additional trails" and "assist recreation[al] users by providing opportunities for trail use on an interim basis."

361 F.Supp.2d at 1273 (*citing Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 17-18, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) ("*Preseault I*")).

While both purposes are important, trail use does not take precedence over railroad rights under the railbanking statute.  To the contrary, the permission for interim trail use remains secondary to the railroad's rights to use the corridor.[2]  As this Court explained in *Friends of East Lake Sammamish Trail*, "[t]he purpose of the Rails to Trails Act is not to encourage the development of recreational trails near inactive railroad rights of way — it is to encourage the transition of these railbeds into recreational trails, and to *preserve* the right-of-way for possible future railroad reactivation." *Id.* at 1274 (emphasis added).

Accordingly, even when interim trail use is allowed, railbanked corridors remain part of the national rail transportation system subject to the jurisdiction of the STB.  *Id.* at 1273-74.  The STB's jurisdiction over rail transportation is extensive and exclusive.  49 U.S.C. § 10501(b).  *See Friends of the Atglen-Susquehanna Trail, Inc. v. Surface Transp. Bd.,* 252 F.3d 246, 250 n. 1 (3rd Cir. 2001) ("The STB is the federal agency having exclusive jurisdiction over transportation

---

[2] No right to continuing trail use exists; rather, that right must give way to railroad use whenever the Surface Transportation Board ("STB") determines there is such a need.  Accordingly, "the [trail] use is deemed 'interim' because the corridor may be returned to active railroad use in the future." *National Ass'n of Reversionary Interest Property Owners v. Surface Transp. Bd.*, 158 F.3d 135, 138 n.5 (D.C. Cir. 1998) (citing *Birt v. Surface Transp. Bd.*, 90 F.3d 580, 583 (D.C. Cir. 1996)).

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 3
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

by railroad."). However, the STB has no statutory authority over state trail systems. Because the STB's authority is limited to rail use, any corridor over which it has jurisdiction *must* be a rail transportation corridor, *i.e.*, it must be subject to a railroad easement. In *Friends of East Lake Sammamish Trail*, this Court held that the STB retained jurisdiction over the East Lake Sammamish rail corridor even while it was railbanked and being put to interim trail use. 361 F.Supp.2d at 1273-74 ("It is therefore clear that railbanked corridors remain part of the national rail transportation system subject to the jurisdiction of the STB") (citations omitted). The necessary and logical underpinning of that holding is that the corridor – even while under interim trail use – was still available for "transportation by rail carrier," *i.e.*, that a railroad easement still existed.

That conclusion is entirely consistent with other case law emphasizing that railbanking *preserves* the existing railroad right of way. *See, e.g., Preseault I,* 494 U.S. at 6 (railbanking statute "authorize[s] the ICC to preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails."); *Fauvergue v. United States,* 86 Fed.Cl. 82, 85 (2009) ("The Trails Act preserves the railroad's right-of-way by affording a State, municipality, or private group an opportunity (1) to negotiate with a railroad (2) to assume temporary managerial responsibility (3) to implement an interim use of the land (4) to build recreational trails.") (*citing Preseault I,* 494 U.S. at 6-8); *Palmetto Conserv. Found. v. Smith*, 642 F.Supp.2d 518, 524 (D.S.C. 2009) ("The purpose of allowing interim trail use is to preserve the rail lines for possible future reactivation.").

Plaintiffs wrongly argue that the railbanking statute extinguishes rights under the railroad easements and creates new, diminished property rights. The process for railbanking and reactivating rail service demonstrates that the railbanking statute actually *preserves* prior rights, while *adding* a permission for interim trail, which remains subject and secondary to railroad rights. The STB retains plenary authority over the rail corridor at all times, both before and after railbanking. The process of railbanking is purely administrative, requiring action only by the

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 4
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

STB to issue an NITU permitting interim trail use. Reactivation is also administrative; a railroad wanting to resume service need only obtain permission for such service from the STB and obtain the preserved railroad easement rights from whoever is then holding them (if it is no longer the railroad):[3]

> [T]he resumption of rail service over a banked right of way is a rather straightforward process for the rail carrier that originally agreed to rail banking. If the rail carrier that banked a right-of-way wants to return it to rail service, the carrier has to notify the [Surface Transportation] Board; the abandonment proceeding is then reopened, and the trail use authority is revoked.

*Issues Related to Preserving Inactive Rail Lines as Trails*, GAO/RCED-00-4, United States General Accounting Office, p. 13 (October 1999) ("GAO Report"). The railbanking statutes do not destroy property rights, but instead preserve them and grant permission to temporarily use those corridors for trail use while rail service is unnecessary.

Importantly, such service cannot resume without a railroad easement, which necessarily raises the question the status of railroad easements after railbanking. The Court of Federal Claims squarely addressed that question in *Illig v. United States*, 58 Fed. Cl. 619 (Fed. Cl. 2003), and made it clear that rights created by the original railroad easement were preserved after railbanking and continued to exist side-by-side with the additional permission for interim trail use created when a corridor is rail-banked. Like this case, *Illig* involved a rail corridor. Missouri Pacific Railroad Company ("MoPac") held a railroad easement in that corridor. The corridor was later railbanked under the railbanking statute. A trail operator, Trailnet, petitioned the ICC (precursor to the STB) for permission to use the railbanked corridor for interim trail use. MoPac conveyed to Trailnet by quitclaim deed all of its rights, title and interest in the corridor, *i.e.*, its railroad easement. The parties in *Illig* agreed that MoPac previously held an exclusive railroad easement, just as in this case nobody disputes that BNSF had at least a railroad easement (if not fee). The plaintiffs/landowners claimed that the railbanking statute narrowed the scope of the

---

[3] Stated differently, the STB determines whether to permit a railroad to operate in a certain manner along a corridor. The STB does not allocate property rights.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 5
4821-6883-9457.07

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

rights under the rail easement when it was railbanked; accordingly, plaintiffs argued, Trailnet's rights in the corridor were much more limited than what the railroad held. *Id.* at 630. The Court rejected that argument, holding instead that the rights under the prior railroad easement were preserved, with the railbanking statute merely granting permission for interim trail use:

> The Trails Act was enacted in order to "to preserve established railroad rights-of-way for future reactivation of rail service, [and] to protect rail transportation corridors." 16 U.S.C. § 1247(d). Although we have previously found that interim trail use, or railbanking, was not a legitimate railroad purpose, **the stated intent of the government in creating the Trails Act was to preserve railroad rights-of-way as they existed**… Although interim trail use of the railroad corridor was authorized by the Trails Act through the NITU issued here, the use of the easement for trail purposes is subject to the future restoration of rail services. *See id.*; 49 C.F.R. § 1152.29(a)(3). **The clear implication is that defendant wished to maintain the status quo, securing for Trailnet whatever rights MoPac previously held in the easement**.
>
> **The new easement, in short, was intended to be capable of functioning at a later date as a railroad easement.** The Trails Act and its implementing regulations require trail sponsors to assume "full responsibility" for managing the right-of-way and for any legal liability arising out of the right-of-way. 49 C.F.R. § 1152.29(a)(2). As part of this responsibility, a trail sponsor must also make assurances that the right-of-way is kept available for "future reconstruction and reactivation ... for rail service." *Id.* § 1152.29(a)(3). In order to meet these requirements, **we believe the Trails Act and its implementing regulations require that a trail sponsor must have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trail sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service. As discussed above, under Missouri law, such control is exclusive. We therefore conclude that the Trails Act imposed a new easement across plaintiffs' properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity.**

58 Fed. Cl. 619, 630-31 (emphasis added, internal citations omitted).

*Illig* answers the question left open by this Court in denying King County's motion to dismiss when the Court referred to a new easement "replac[ing] the railway easements, pursuant to the Trails Act." Dkt. No. 59 at p. 5. *Illig* explains that, in order to fulfill the Congressional

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 6
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

purpose of preserving rail corridors for future use, when a corridor is railbanked: (1) all of the rights under the former railroad easement are preserved, and (2) the STB is authorized to permit interim trail use in the rail corridor that it has exclusive jurisdiction over. But that grant of permission does not create a new, narrower easement in the interim trail user, nor does it eliminate pre-existing rights in the corridor. To the contrary, the permission can be readily revoked at any time by the STB through a simple administrative proceeding, as described above. That is why the trail operator in *Illig* who received by quitclaim deed all of the railroad's rights in the corridor was held to have the same rights as the railroad did under the railroad easement (*e.g.* ability to grant easements and licenses to third parties in the corridor).[4]

The fallacy in Plaintiffs' theory is illustrated by taking it to its logical conclusion. Plaintiffs claim that the rights under the prior railroad easements disappear once a corridor is railbanked and are replaced with a new narrowed "trail easement." If that were true:

- The STB would *not* have continuing jurisdiction over the corridor because it only has jurisdiction over rail transportation, contrary to 49 U.S.C. § 10501(b) and this Court's holding in *Friends of Ease Lake Sammamish Trail*, 361 F.Supp.2d at 1273-74.
- The corridor would no longer be part of the national rail transportation system, unless and until it was actually reactivated for rail use, contrary to *Friends of East Lake Sammamish Trail,* 361 F.Supp.2d at 1273-74 ("It is therefore clear that railbanked corridors remain part of the national rail transportation system subject to the jurisdiction of the STB") (*citing Preseault I*, 494 U.S. at 5-6 n. 3, 110 S.Ct. 914)

---

[4] Both the Court in its prior order (Dkt. No. 59 at 5) and the *Illig* case refer to the post-railbanking easement as a "new" or "replacement" easement. These are semantic, not substantive, matters, and the differences simply reflect the difficulty in interpreting railroad deeds and applying the law in this murky area. Regardless of what words are used to describe the corridor after railbanking, the same substantive conclusion follows: the rights that existed under the prior railroad easement necessarily continue to exist after railbanking.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 7
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

- The STB, which has no statutory authority over state trail systems or state property not used for rail purposes, would effectively be given the authority to destroy state law property rights in railroad easements by creating a new, narrower "trail easement" whenever the STB administratively decided to allow interim trail use. *See also Preseault I*, 494 U.S. at 8 (noting that ICC has plenary jurisdiction to regulate abandonments but scope of reversionary rights in land burdened by easements is a matter of state law).

- Under Plaintiffs' logic, a *third* easement must necessarily be created upon reactivation to describe the scope of rights the railroad would have in the reactivated corridor because the prior railroad easement would have ceased to exist (*see, e.g., Lawson v. State*, 107 Wash.2d 444, 450, 730 P.2d 1308 (1986) ("Where the particular use of an easement for the purpose for which it was established ceases, the land is discharged of the burden of the easement and right to possession reverts to the original landowner or to that landowner's successor in interest")), constituting yet another taking. It would apparently be left up to the STB through its administrative process to create this third easement and define its scope.[5]

Plaintiffs' argument would also forbid many of the uses that a trail operator is now allowed to make of the corridor once granted permission by the STB for interim trail use:

> The [STB] has noted that there can be differing types or levels of trail use; for example, *nothing in the rail-banking statute or the Board's regulations precludes a right-of-way from being developed for a mixed use, that is combining a recreational trail with a highway or light rail line.* Similarly, the Board has noted that *a trail sponsor's receipt of revenues from a utility company maintaining transmission lines along the right-of-way is not, in and of itself, impermissible.* The arrangement could simply be a way for the trail sponsor to

---

[5] In addition to being illogical and contrary to Congressional intent, this also raises federalism, separation of powers and due process concerns by making the STB sole arbiter of the scope of property rights along a reactivated corridor.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 8
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

obtain funds for the maintenance of the right-of-way and for liabilities and taxes and may not substantially affect the trail use or rail banking.

GAO Report at 10 (emphasis added).  Such recognized mixed uses are impossible under Plaintiffs' interpretation, because they are allowable only if the rights under the original railroad easement are preserved.

The better view consistent with Congressional intent and case law (including from this Court) is that the rights under the railroad easements never disappeared or diminished, but rather were preserved by operation of the railbanking statute even while that statute gave additional permission for interim trail use while rail service was not needed in the corridor.

**B.      The Kittinger Deed Conveyed a Fee to the Railroad, not an Easement.**

Plaintiffs assert that the predecessor railroad acquired only an easement in the rail corridor from the three original source deeds at issue, instead of a fee interest.  Plaintiffs' argument that the Kittinger deed conveyed only a railroad easement in the railroad corridor is wrong.  Under Washington law and a plain reading of the deed's operative language, the Kittinger deed conveyed a fee simple interest to the railroad.

> 1.      *The Kittinger Deed is a bargain and sale deed, and therefore necessarily conveyed a fee interest.*

The Kittinger Deed was a bargain and sale deed for the reasons set forth in King County's opposition briefing, which PSE incorporates by reference.  Washington law is clear that "a bargain and sale deed based on the statutory form automatically conveys a fee simple estate." *Roeder Co. v. K & E Moving & Storage Co., Inc.*, 102 Wash. App. 49, 54, 4 P.3d 839 (2000).  *See also* RCW 64.04.040.  Accordingly, the Kittinger Deed conveyed a fee interest to the railroad.

> 2.      *The Kittinger Deed conveyed a fee interest under accepted deed interpretation principles.*

Construction of a railroad deed is a mixed question of fact and law.  *Veach v. Culp*, 92 Wash.2d 570, 573, 599 P.2d 526 (1979).  The construction of railroad deeds is a difficult task,

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 9
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

and authorities vary widely on how they should be construed. *See Swan v. O'Leary*, 37 Wash.2d 533, 535, 225 P.2d 199 (1950) ("The authorities are in hopeless conflict" and, in large part, "cannot be reconciled"); *see also Brown v. State*, 130 Wash.2d 430, 437, 924 P.2d 908 (1996) ("The decisions are in considerable disarray."). However, one consistent thread in the case law is the recognition that a court's principal aim is to determine and enforce the intent of the parties to the deed, *i.e.*, whether they intended to convey/obtain a fee or an easement. *Kershaw Sunny Side Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wash.2d 253, 262, 126 P.3d 16 (2006).

The Washington Supreme Court has warned that courts should not merely stop at "identifying the purpose of the conveyances," but rather should ascertain the parties' intent by performing a deed-by-deed inquiry into the interests conveyed based on: (1) the particular language of the deed, (2) the form of the deed, and (3) the surrounding circumstances and subsequent conduct of the parties. *Brown*, 130 Wash.2d at 438-40. Specifically, the Court in *Brown* listed seven factors for courts to consider as an aid in interpreting railroad deeds: (i) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (ii) whether the deed conveyed a strip of land and limited its use to a specific purpose; (iii) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (iv) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (v) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (vi) whether the consideration expressed was substantial or nominal; and (vii) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed. 130 Wash.2d at 438.

Under the *Brown* factors, it is far from clear that the Kittinger deed grants only an easement. To the contrary, the express language of the deed, as well as the circumstances

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 10
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

surrounding its making, show it was intended to convey a fee interest. In its entirety, the Kittinger deed reads:

> This indenture made this 24th day of June A.D.1903 by and between Mary C. Kittinger and George B. Kittinger, her husband of Seattle state of Washington; the Puget Sound National Bank a body corporate under the laws of the United States doing business at Seattle in the State of Washington and J.R. Lewis of the city of San Jose, State of California, parties of the first part and the Northern Pacific Railway Company a body corporate under the laws of Wisconsin, the party of the second part. Witnesseth that the said parties of the first part are the owners in fee simple of the following premises, situate in the County of King State of Washington, to wit: Lots number One (1), Two (2), and Three (3) of Section Twenty (20) Township Twenty–Four (24) north of range Five (5) East, which said lands lie next to and front upon the eastern shore of [L]ake Washington and have appurtenant thereto certain riparian and littoral rights
>
> And whereas, the said party of the second part wishes to construct its railroad over and across said lands on the westerly side thereof near to and along the shores of said lake and has made a survey for said line of said road and staked the same out, and wishes to secure for such purposes the right of way over and across said lands and to secure that end has bargained for and purchased of the parties of the first part, the following described strip, piece and parcel of said lands above named to wit: a strip, piece or parcel of said lands One Hundred (100) feet in width, in, over and across said Lots One (1), Two (2), and Three (3) of said section Twenty (20) township Twenty–Four (24) north of range Five (5) east having for its boundaries two lines parallel with and equidistant from the centerline of the road of said party of the second part as the same is now surveyed over and across the said premises together with such additional widths as may be necessary to catch the slopes cuts and fills of the road bed of said railroad in containing a total area of Ten and 5/10 acres more or less.
>
> Now therefore the said parties of the first part, for and in consideration of the sum of **Two Thousand One Hundred and Fifty Dollars** to them in hand paid do hereby grant, bargain, sell, and convey unto the said party of the second part the said strip, piece, and parcel of land One Hundred feet in width as hereinbefore described and containing Ten and 5/10 acres more or less provided, **however, and it is understood and agreed by and between the parties of the first part and the parties of the second part that the said first parties reserve from this grant for themselves heirs, successors and assigns, all littoral and riparian rights appurtenant to the lands herein conveyed, also the right of a highway crossing over and across the said lands granted to and from the lakeshore to the lands lying next**

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 11
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

> **easterly the lands herein granted. Provided that in passing and repassing the road of the second party is in no wise obstructed or injured, reserving the right to mine coal, and reserving also the right to build an overhead crossing upon an[d] over said property and tunnels under the same, provided, however, that such overhead crossing and tunnels shall be so located and constructed and operated as not to interfere with the possession or use of the said granted lands, by the said second party, its successors, or its assigns** and that the plans for such overhead crossing shall first be submitted to and approved by the superintendant of the first party before the same shall be built or constructed and no tunnels shall be made or excavated under said granted lands without the plans for the same are first submitted to an[d] approved by the chief engineer of the second party. It being understood that the crossing herein provided for shall have a clearance of at least Twenty–Three feet above the rails of the railroad track of the second party as constructed and from time to time changed.
>
> Witness the hands and seals of the first parties with the president of the said Puget Sound National Bank and the seal of the said bank this 24th day of June 1903.[6]

At least three things in the Kittinger deed compel the conclusion it grants a fee interest, not an easement: (1) the granting language; (2) the reservation of rights by the grantor; and (3) the amount paid.

        a.     <u>The granting language conveyed a fee</u>

With respect to the granting language, the Kittinger deed never uses the word "easement" nor does it expressly say that only a "right of way" is being granted. Instead, the operative granting language uses terms that parties would use to sell a fee interest, stating that the railroad "has bargained for and purchased" a "strip, piece and parcel of said lands" and saying that the grantor does "grant, bargain, sell, and convey …. the said strip, piece, and parcel of land." Plaintiffs fixate on use of the phrase "right of way" in the deed's recitals, but that is not determinative because "[a] conveyance of a right-of-way to a railroad may be either in fee simple or may be an easement only." *Veach*, 92 Wash.2d at 573.[7] The granting language in the third

---

[6] *See* Dkt. No. 55-5.

[7] Even if the Court were to start from the presumption that use of the term "right of way" means only an easement was intended in the Kittinger deed, the other portions of the Kittinger deed rebut that presumption by showing that

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 12
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

paragraph makes clear that the Kittinger deed really conveyed a fee simple interest to the railroad, with the grantors reserving for themselves from that grant certain rights and easements (namely shore and water rights associated with the land conveyed to the railroad and a highway crossing over and/or below the railroad fee corridor). That reservation is key because if the grantors were conveying only an easement, it would be entirely unnecessary to reserve any water rights and highway crossing because such rights would have necessarily stayed with them as fee owners.[8] Instead, the Kittinger grantors specifically named and reserved such rights for themselves because otherwise such rights would have passed to the railroad as part of the fee they intended to convey by the deed.

          b.      <u>The reservation of rights shows fee was conveyed</u>

Interpreting the Kittinger deed to grant a fee to the railroad is further compelled by language barring the grantors from any use of the highway crossing easement they reserved to themselves that would "interfere with the possession or use of the said granted lands" by the grantor. A fee is a possessory interest; an easement is only a *non-possessory* interest in land. *State v. Pink*, 144 Wash. App. 945, 953-54, 185 P.3d 634 (2008) ("An easement is an interest which one person has in the land of another. It is a non-possessory interest in land which is in possession of another, whereas an estate in land is a possessory interest."); *Butler v. Craft Eng. Const. Co., Inc.*, 67 Wash. App. 684, 697, 843 P.2d 1071 (1992) (same). *See also City of Olympia v. Palzer*, 107 Wash.2d 225, 229, 728 P.2d 135 (1986) (recognizing that an easement is a nonpossessory right, distinct from ownership); *Maier v. Giske*, 154 Wash. App. 6, 15-16, 223 P.3d 1265 (2010) ("An easement is a nonpossessory right to use another's land in some way

---

the actual intent of the parties was to convey a fee to the railroad. *See King County v. Rasmussen*, 299 F.3d 1077, 1086 (9th Cir. 2002) (use of the term "right of way" "merely 'begs the question' since a railroad could own a right of way either as an easement or in fee") (citation omitted).

[8] Plaintiffs' construction impermissibly renders these reservations meaningless. "In the construction of a deed, a court must give meaning to every word if reasonably possible." *Newport Yacht Basin Ass'n of Condominium Owners v. Supreme Northwest, Inc.*, 168 Wash. App. 56, 65, 277 P.3d 18, 24 (2012) (citing *Hodgins v. State*, 9 Wash. App. 486, 492, 513 P.2d 304 (1973)).

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 13
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

without compensation."). The grantor's acknowledgement that the railroad had the right to "possession or use of the said granted lands" is convincing evidence that the grantors intended to, and did, convey fee title to the railroad. If only an easement was conveyed to the railroad, the word "possession" would have not been used.

        c.    <u>The amount paid shows conveyance of fee, not an easement</u>

The conclusion that the Kittinger deed conveyed a fee, not an easement, to the railroad is further validated by the fact the railroad paid the grantors $2,150 for the property. In 1903, $2,150 was a very substantial amount of money (*e.g.*, one could buy a Ford Model T in 1910 for $950). *See Kershaw*, 156 Wash.2d at 268 (finding $1,000 to be substantial in 1905); *Brown*, 130 Wash.2d at 442 (finding $1,310 to be substantial between 1906 and 1910). It is reasonable to conclude that a railroad would pay such a sizeable amount of money to obtain fee interest, not merely an easement. *See Brown*, 130 Wash.2d at 438 (whether consideration was substantial is a factor in distinguishing between grant of a fee and grant of an easement). PSE also incorporates the analysis set forth in the Declaration of James A. Greenleaf submitted by King County, which demonstrates that the substantial amount paid was consistent with a fee, not an easement.[9]

These three parts of the Kittinger deed, which the Plaintiffs either ignore or gloss over, are the best evidence of the parties' intent – which the Court is tasked to determine – and decisively show that the grantors conveyed a fee to the railroad, not an easement.

    *3.*    *Plaintiffs' arguments that only an easement was conveyed fail.*

Plaintiffs may attempt to avoid analyzing the *Brown* factors and the deed's language and instead merely revert to arguing that *Haggart v. United States*, 108 Fed. Cl. 70 (2012), already concluded that the Kittinger deed granted an easement. *Haggart* is a Court of Federal Claims decision, and thus not binding on this Court. Rather, this Court should interpret and apply its

---

[9] As the County points out, this important evidence of was not submitted to the Court in *Haggart* or considered when the court in that case was determining whether a fee or easement was conveyed. Accordingly, the *Haggart* court's analysis of the *Brown* factors was incomplete and should not be given controlling weight here.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 14
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1  home state's law at it sees fit, rather than blindly accept a decision from across the country.  And
2  the better-reasoned conclusion is the one set forth above.

3  Even if the Court concluded that the phrase "right of way" in the Kittinger deed implied
4  an easement – which it should not – then the inevitable conclusion is that the Kittinger deed is
5  internally inconsistent:  the deed's second paragraph and part of the third paragraph support the
6  notion that the grantors conveyed an easement, while the majority of the deed's third paragraph
7  supports the better conclusion that the grantors conveyed a fee to the railroad.  In that situation,
8  the Court is then faced with receiving and weighing extrinsic evidence – the surrounding
9  circumstances and subsequent conduct of the parties – to determine the deed's intent.  It is
10 Plaintiffs' burden to prove that the grantor intended to convey less than fee simple title.
11 *Kershaw*, 156 Wash.2d at 264 (citation omitted).  But Plaintiffs have not presented any
12 admissible extrinsic evidence of the parties' intent.[10]

13 Accordingly, insofar as the Court determines the Kittinger deed is ambiguous, any doubt
14 should be resolved against the grantor and the deed construed to convey a fee interest, not simply
15 an easement.  *Ray v. King County*, 120 Wash. App. 564, 587, 86 P.3d 183 (2004) (construing
16 deed to convey fee title to railroad instead of easement and explaining that "to the extent we
17 were to engage in applying a rule of construction to any perceived ambiguities in the language of
18 the Hilchkanum deed, we would construe the deed against the Hilchkanums, the grantors"); *Carr*
19 *v. Burlington Northern, Inc.*, 23 Wn. App. 386, 390-91, 597 P.2d 490 (1979) ("Where there is
20 any doubt about the meaning of words used in a deed, it is to be resolved against the grantor and
21 in favor of the grantee.") (citations omitted).

---

[10] Plaintiffs' footnotes 5-7 tell an entertaining story, but the Court cannot accept the same as undisputed fact for the purposes of Plaintiffs' dispositive motion.  Only admissible evidence can be used to support summary judgment. Fed. R. Civ. P. 56(c)(2).  Plaintiffs provide no evidentiary support (*e.g.* declarations, sworn statements, etc.) to support their anecdotes.  The Court should strike footnotes 5-7 as factual assertions unsupported by the record.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 15
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

## IV. CONCLUSION

For the foregoing reasons, as well as those set forth in the opposition briefs submitted by other Defendants (which PSE hereby incorporates by reference, to the extent applicable to PSE), PSE respectfully requests that the Court deny Plaintiffs' motion.

DATED this 2nd day of February, 2015.

                RIDDELL WILLIAMS P.S.

                By  /s/ *Gavin W. Skok*
                      Gavin W. Skok, WSBA #29766
                      James E. Breitenbucher, WSBA #27670
                      Courtney Seim, WSBA #35352
                      Bryan J. Case, WSBA #41781
                      Attorneys for Puget Sound Energy, Inc.

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR
DECLARATORY RELIEF - (No. 2:14-cv-00784) - 16
4821-6883-9457.07

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date written below, I electronically filed the following document with the clerk of the court using the CM/ECF system, and upon filing notification of filing will be served on the following parties:

**Service List**

| | |
|---|---|
| Daryl A. Deutsch, WSBA #11003<br>RODGERS DEUTSCH & TURNER PLLC<br>Three Lake Bellevue Drive, Suite 100<br>Bellevue, WA 98005-2440<br>daryl@rdtlaw.com<br>*Attorney for Plaintiffs* | Kristin E. Ballinger, WSBA #28253<br>Randall T. Thomsen, WSBA #25310<br>Timothy G. Leyh, WSBA #14853<br>Calfo Harrigan Leyh & Eakes LLP<br>999 Third Avenue, Suite 4400<br>Seattle, WA 98104<br>kristinb@calfoharrigan.com;<br>randallt@calfoharrigan.com<br>timl@calfoharrigan.com<br>*Attorneys for Port of Seattle* |
| Thomas S. Stewart<br>Elizabeth G. McCulley<br>Baker Sterchi Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>stewart@bscr-law.com<br>mcculley@bscr-law.com<br>*Attorneys for Plaintiffs (Admitted Pro Hac Vice)* | Andrew W. Marcuse, WSBA #27552<br>516 3rd Avenue, W400<br>Seattle, WA 98104<br>andrew.marcuse@kingcounty.gov<br><br>David JW Hackett, WSBA #21236<br>500 4th Avenue, #900<br>Seattle, WA 98104<br>david.hackett@kingcounty.gov<br>*Attorneys for King County* |
| Loren G Armstrong<br>Desmond L. Brown<br>SOUND TRANSIT<br>401 SOUTH JACKSON<br>SEATTLE, WA 98104<br>loren.armstrong@soundtransit.org;<br>desmond.brown@soundtransit.org<br>*Attorneys for Central Puget Sound Regional Transit Authority* | |

Dated this 2nd day of February, 2015, at Seattle, Washington.

 */s/ Courtney R. Tracy*
 Courtney R. Tracy

PSE'S OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY RELIEF - (No. 2:14-cv-00784) - 17
4821-6883-9457.07

Riddell Williams P.S.
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600