The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT AND KATHRYN KASEBURG, et al.,

                      Plaintiffs,

    vs.

PORT OF SEATTLE,  a municipal corporation;
PUGET SOUND ENERGY, INC., a Washington
for profit corporation and KING COUNTY, a
home rule charter county, and CENTRAL PUGET
SOUND REGIONAL TRANSIT AUTHORITY, a
municipal corporation

                      Defendants.

No. 14-cv-00784-JCC

DEFENDANT KING COUNTY'S
RESPONSE TO PLAINTIFFS'
MOTION FOR DECLARATORY
JUDGMENT

NOTE ON MOTION CALENDAR:
February 20, 2015

ORAL ARGUMENT REQUESTED

## I.    INTRODUCTION

Plaintiffs urge this Court to hold that federally approved railbanking has extinguished or

substantially narrowed the state law railroad easement rights formerly held by BNSF and now

owned by King County.  Plaintiffs' motion unnecessarily departs from well-established

precedent and frustrates the railbanking goal of preserving railroad rights-of-way.  The Court

should deny Plaintiffs' motion.

## II.    FACTS

King County owns the property rights formerly held by BNSF and is the trail sponsor for

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

the South Rail Corridor (Corridor).  True Decl. at ¶3.  Public use and preservation of the East Side Rail Corridor (ESRC), which includes the South Rail Corridor, is a major regional project undertaken by the Port of Seattle (Port), Puget Sound Energy (PSE), local cities, Sound Transit, and others.  *Id.* at ¶9.  Tens of millions of dollars in public money have been invested in this project in addition to hundreds of millions of dollars in federal tax deductions taken by BNSF for associated donations of the railroad's property rights in the ESRC.  *Id.* at ¶¶13, 20.   In the railbanked sections of the ESRC, the primary goals are to develop a world class regional trail, provide public transportation, allow for appropriate utility services, and preserve the Corridor for possible future rail service.  *Id.* at ¶10.

To carry out this public purpose, King County and its regional partners expended substantial sums to acquire state law property rights from BNSF throughout the ESRC.  *Id.* at ¶13.  King County obtained fee simple rights in those portions of the Corridor where BNSF held the property in fee.  Jackson Decl. at ¶¶7-9.  Where BNSF held a railroad easement in the Corridor, King County acquired BNSF's easement rights.  *Id.*  These easement rights were paid for and acquired in reliance on the provisions of federal railbanking law that prevent state law property rights from reverting to adjacent or nearby neighbors.  True Decl. at ¶11.  The acquisition of BNSF's property rights in the Corridor and King County's trail sponsor status combine to make the ESRC project both possible and beneficial for the public.  *Id.*

III.   **ISSUES**

A.   Should the Court strike Plaintiffs' factual claims because they are unsupported by any admissible declarations?  Yes.

B.   Does federal railbanking law preserve state law railroad easement rights in the Corridor and supplement those rights to add trail use?  Yes.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 2

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1        C.      Did the Kittinger Deed convey fee simple title to portions of the Corridor?  Yes.

2 **IV.    MOTION TO STRIKE PLAINTIFFS' UNSUPPORTED FACTUAL ASSERTIONS**

3        The Federal Rules of Civil Procedure (FRCP) define the appropriate and exclusive

4 procedure for seeking declaratory judgment.  FRCP 57.  The FRCPs do not allow a "Motion for

5 Declaratory Judgment."  *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma*

6 *(USA)*, 560 F.3d 935, 943 (9th Cir. 2009).  Rather, a party seeking declaratory judgment prior to

7 trial must satisfy the requirements for summary judgment under FRCP 56.  *Id.*  Plaintiffs have

8 failed to supply any supporting declarations.  In accord with FRCP 56(c), the Court should strike

9 all factual claims in Plaintiffs' briefing and not consider them in determining summary judgment.

10 **V.    RAILBANKING PRESERVES STATE LAW RAILROAD EASEMENTS AND ALLOWS TRAIL USE[1]**

11

12        Plaintiffs argue repeatedly in their motion that the railroad easements in the Corridor

13 have been abandoned and extinguished under 16 U.S.C. § 1247(d) (the "Act").  Motion for Decl.

14 Judgment (Motion) at 15-24 (Dkt. 55).  They seek a declaration that these easements no longer

15 exist and have been somehow converted by the Act into mere surface easements for recreational

16 trail use with the potential for reactivation of the railroad.  Motion at 24 (Dkt. 55).  Such a ruling

17 would greatly disrupt settled precedent and the reasonable business expectations of property

18 owners, railroads and trail sponsors throughout the country.  If Plaintiffs have any legitimate

19 complaint about new easements exceeding the scope of the underlying railroad easement, there is

20 no reason for this Court to grant Plaintiffs broad, "grand slam"- style relief because

21 Washington's incidental use doctrine already provides them with an adequate remedy.[2]

---

[1] Plaintiffs' abandonment theory applies only where the railroad possessed an easement interest. Wherever a railroad owns its corridor in fee, plaintiffs appear to accept that railbanking has no effect on the state law property rights.  This section is limited to a discussion of those portions of the Corridor where BNSF held only easement rights.

[2] As recognized in *Washington Sec. & Inv. Corp. v. Horse Heaven Heights,* 132 Wn. App. 188, 194, 130

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Plaintiffs' legal theories are contrary to the Act, the cases interpreting the Act, and the decisions of the administrative body charged with implementing the Act.

**A.** **The Act Authorizes Trail Use and Preserves Railroad Easements By Preempting Any State Law Abandonment**

The Act authorizes interim trail use and preserves railroad easements by preempting abandonment: "such interim use *shall not* be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d) (emphasis added). The statutory language sets the terms of a bargain. If a trail sponsor obtains by transfer or otherwise a railroad right-of-way for interim trail use consistent with the Act, as the County did in the present case, then such interim trail use *shall not* be treated as an abandonment. *Thomas v. U.S.,* 106 Fed. Cl. 467, 487 (2012) ("preemption of abandonment and the attendant blocking of the reversionary interest" is expressly conditioned on a trail use agreement).

Plaintiffs' argument is contrary to the Act. There can be no "abandonment" or "extinguishment" of the railroad easement because the Act expressly prevents it. Nor can the Act be read to "narrow" or "limit" the state law railroad easement to mere trail use with future reactivation because there is no such language in the Act. The statute is binary. Abandonment is either preempted and any state law railroad easement is preserved, or it is not. The plain language of the Act, which preempts "abandonment," controls.

**B.** **The United States Supreme Court and the Surface Transportation Board Have Ruled That the Act Preserves State Law Railroad By Preempting Abandonment**

In *Preseault v. ICC*, 494 U.S. 1, 17 (1990), the Supreme Court ruled that the Act

---

P.3d 880 (2006), Washington law allows an underlying fee holder to challenge any easement use of a railroad corridor that exceeds the incidental uses that are allowed to be made of the corridor.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS' MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 4

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1  authorized "the ICC [now STB] to *preserve* for possible future railroad use rights-of-way not

2  currently in service *and* to allow interim use of the land as recreational trails." *Id.* at 6.  The

3  Court went on to carefully describe the manner in which railroad rights-of-way are preserved.

4  Many railroads operate on easements which, under state law, cease to exist when the railroad

5  abandons the easement.  *Preseault*, 494 U.S. at 8.  Upon abandonment, the easement terminates

6  and is said to "revert" to the owners of the underlying fee or the owners of the abutting property.

7  *Id.*  "By deeming interim trail use to be like a discontinuance[3] rather than abandonment,

8  Congress prevented property interests from reverting under state law."  *Id.*

9       The dual trail and railroad easement preservation components of the Act were similarly

10  recognized in the rulemaking decision adopting the regulations to implement Section 1247(d).

11  The ICC (now STB) explicitly recognized that:

12      The legislative history states that the "key finding" of Section 1247(d) "is that interim use
        of a railroad right-of-way for trail use, when the route itself remains intact for future
13      railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad
        purposes."  This language demonstrates that the main purpose of the amendment is to
14      remove reversion as an obstacle that hinders or prevents the successful conversion of
        entire linear rights-of-way to recreational use when the rights-of-way have been operated
15      under easements for railroad purposes.  *Thus, Congress intends that trail use occur and
        rights-of-way remain intact when they otherwise would be subject to reversionary
16      interests.*"

17  *Rail Abandonments – Use of Rights-of-Way as Trails* (49 CFR Parts 1105 and 1152), 2 I.C.C. 2d

18  591, 597, 1986 WL 68617, **4 (1986) (emphasis added).  Such agency interpretations are

19  entitled to deference.  *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 842-44 (1984).

20      **C.**   **Cases Examining the Specific Question Have Ruled That Railroad Easement
             Rights Survive Railbanking and May Be Owned By A Trail Sponsor**

21

22      Contrary to Plaintiffs' contentions, all courts that have specifically considered the effect

_____

[3] Discontinuance under the federal law that regulates railroad operations "allows a railroad to cease
23  operating a line for an indefinite period while preserving the rail corridor for possible reactivation of
    service in the future.  *Id.* at 6 n.3.  Discontinuance does not impact the state law easement rights held by
    the railroad in the corridor.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

of the Act on state law railroad easement property rights confirm that the Act preserves those

rights without reduction and that a trail sponsor may own those rights.  For example, the

Vermont Supreme Court ruled in a quiet title action that the trail sponsor owned the same

railroad easement rights previously held by the railroad and could prevent the underlying

landowners from disturbing the corridor:

> The unambiguous purpose of this legislation is not only to provide recreational trails, but to preserve established railroad rights-of-way for future reactivation of rail service. *To construe the State's interest in the right-of-way as less than the interest of an operating railroad creates the risk of frustrating Congress' clear intent and purpose.*

*State v. Preseault*, 163 Vt. 38, 652 A.2d 1001, 1003 (1994) (internal citations omitted; emphasis

added).

One of the most thorough treatments of the issue is in *Illig v. U.S.*, 58 Fed. Cl. 619

(2003).  In *Illig* the court rejected the plaintiffs' argument that railbanking converted the

easement from an exclusive railroad easement into a narrower non-exclusive easement.

Although the court described the effect of the Act as having "imposed . . . a new easement," it

made very clear that it "retained essentially the same characteristics as the original easement,

both in its location and exclusivity."  *Id.* at 631.[4]  In addition, the Court ruled that the railroad's

right under the easement to grant utility licenses was now held by the trail sponsor.  *Id.* at 634.

Similarly, in *Dana R. Hodges Trust v. U.S.*, 111 Fed. Cl. 452, 475 (2013), the court held

that the easement obtained by the trail sponsor kept "essentially the same characteristics" of the

preexisting railroad easement.  As a result, if the railroad easement had been subject to crossing

rights, those rights were not eliminated by railbanking under the Act.  *Id.*

---

[4] The Court in *Illig*, as do some other cases, describes the resulting burden after railbanking on an underlying landowner as being a "new" easement.  Other courts have described the resulting burden to be a "conversion" or "replacement" of the railroad easement. These short hand descriptions do not mean that the railbanking burden is *less* than the prior railroad easement, but merely that trail use supplements existing railroad easement rights.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 6

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

The Eighth Circuit has also rejected an attempt by landowners to claim that a trail sponsor did not own the state law easement rights of the conveying railroad.  In *Grantwood Village v. Missouri Pac. RR Co.*, 95 F.3d 654, 658-59 (8th Cir. 1996), the court confirmed that the railroad had a valid interest in the right-of-way that was properly transferred to the trail sponsor under Missouri law, and rejected the claim that the railroad had abandoned its easement by virtue of the railbanking process.

A similar result was reached in *Palmetto Conservation Found. v. Smith*, 642 F.Supp. 2d 518, 522 (D.S.C. 2009), where an earlier case had determined that the trail sponsor "was the valid holder of Norfolk Southern's right-of-ways in the disputed rail corridor."  In affirming the right of the trail sponsor to prevent an adjacent landowner from developing a portion of the corridor, the court explained that the trail sponsor "can utilize the entire 200-foot right-of-way or it can gratuitously allow certain other temporary uses." *Id.* at 527.  The Court also held that the trail sponsor owned an easement with the same characteristics as the railroad easement, and that the trail sponsor had exclusive use of the corridor. *Id.* at 530-31.

> ### D.    Railroad Easements Must be Preserved to Allow a Trail Sponsor to Manage the Corridor so that It Remains Available for Reactivation

In holding that railroad easements continue to exist, these cases recognize that one of the primary purposes of preserving such rights is to allow the trail sponsor to control and manage the corridor so that it is available for rail use in case of reactivation.  The Act requires a trail sponsor to "assume full responsibility for management" of a right-of-way and to accept the right-of-way subject to restoration of service.  16 U.S.C. § 1247(d).  The STB rules impose this duty on trail sponsors through the Statement of Willingness to Assume Financial Responsibility, which includes an agreement to assume full responsibility for "[m]anaging the right-of-way," and requires an acknowledgment that use of the right-of-way is "subject to future reconstruction and

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    reactivation" for rail service.  49 C.F.R. § 1152.29(a)(2) and (3).

2           In *Illig,* plaintiffs claimed that the railbanking burden should be treated as a mere trail

3    easement where the underlying fee owner could use the property in any way that was not

4    inconsistent with the easement.  The court rejected this view:

5           [A] trail sponsor must also make assurances that the right-of-way is kept available for
            "future reconstruction and reactivation . . . for rail service."  In order to meet these
6           requirements, we believe the Trails Act and its implementing regulations *require that a*
            *trail sponsor must have the same control over the entire right-of-way corridor that would*
7           *be held by a railroad in order that the trail sponsor can ensure that any and all uses*
            *made of the right-of-way are consistent with the restoration of rail service.  As we*
8           *discussed above, such control is exclusive.*

9    *Illig*, 58 Fed.Cl. at 631 (emphasis added and internal citations omitted).  In *State v. Preseault,* the

10   Vermont Supreme Court relied on the same reasoning when it found that the trail sponsor's

11   rights in the corridor were exclusive, explaining that "[t]he fact that defendants' excavation

12   activities do not present a threat to the bicycle and pedestrian path is irrelevant because these

13   activities impinge upon the original railroad easement."  652 A.2d at 1003.

14          Trail sponsors like the County may exercise this control by acquiring the railroad's

15   easement rights.  Under Washington law, the holder of a railroad easement is entitled to the

16   exclusive use and possession of the land, and is considered to own a "fee-like" estate.  *Hanson*

17   *Indus. v. Cnty. of Spokane*, 114 Wn. App. 523, 528, 58 P.3d 910 (2002), *review denied* 149

18   Wn.2d 1028 (2003).  Ownership of the railroad easement rights allows King County, as the trail

19   sponsor, to grant licenses in the form of special use permits that allow others to use the Corridor,

20   to prevent unauthorized excavations and other activities in the Corridor, and to otherwise

21   preserve the corridor for possible reactivation.[5]

22

23   _____
     [5] Absent continuing ownership of the railroad easement, King County and other trail sponsors would be
     hard-pressed to manage and preserve the property for future reactivation.  For example, last December, an
     adjacent property owner used a backhoe to remove a retaining wall and destabilize a portion the Corridor

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 8

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    **E.    The Act Preserves Valuable State Law Railroad Easements in a Manner**
2    **That Allows Operating Railroad Companies and Trail Sponsors To Allocate**
     **Those Rights**

3          The Act treats railroad easements as valuable state law property rights that can be

4    allocated and conveyed during the railbanking process or thereafter.  It also requires that in order

5    to reactivate freight service, a railroad must own or acquire those rights from the owner of the

6    railroad easement.

7          First, the plain language of the Act contemplates that railroad easement rights will

8    continue to exist under railbanking.  The Act states that the protection against abandonment of a

9    railroad easement is available "in the case of interim use of any established railroad right-of-way

10   pursuant to *donation, transfer, lease, sale or otherwise . . . .*" 16 U.S.C. § 1247(d) (emphasis

11   added).  The STB's rulemaking  recognized this flexibility: "Indeed, the amendment specifically

12   lists several forms of transfer that may be used where appropriate.  Therefore, . . . trail use can

13   occur *whether the involved railroad transfers or retains its interest in the right-of-way*." *Rail*

14   *Abandonments – Use of Rights-of-Way as Trails*, 2 I.C.C. 2d at 599, 1986 WL 68617, **5

15   (emphasis added).

16         Second, the continued existence of railroad easements is recognized through the

17   reactivation mechanism, which requires the reactivating railroad to obtain the necessary property

18   rights from the railroad easement owner.  *See Georgia Great Southern Div., South Carolina*

19   *Cent. R.R. Co. – Abandonment and Discontinuance Exemption – Between Albany and Dawson,*

20   *in Terrell, Lee, and Dougherty Counties, GA.*, STB Docket No. AB-389 (Sub-No. 1X), 2003 WL

21   _____

22   in the area where plaintiffs reside.  *See* True Decl. at ¶ 26, Ex.AA.  King County must also rely on
     railroad easement rights to defend the Corridor against adverse possession claims.  *See Jie Ao and Xin*
     *Zhou – Petition for Declaratory Order*, STB Docket No. FD 35539, 2012 WL 2047726, *6-*7 (Service
23   Date June 6, 2012) (attempt by a plaintiff in the present case to obtain adverse possession and prescriptive
     easement in Corridor).

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'          **Daniel T. Satterberg**, Prosecuting Attorney
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 9          CIVIL DIVISION, Litigation Section
                                                         900 King County Administration Building
                                                         500 Fourth Avenue
                                                         Seattle, Washington  98104
                                                         (206) 296-8820  Fax (206) 296-8819

1  21132515, *5 (Service Date May 16, 2003) ( obligation of railroad to pay trail sponsor for

2  property rights left to terms of trail use agreement); *R.J. Corman R.R. Co. /Pennsylvania Lines,*

3  *Inc. – Constr. and Operation Exemption – In Clearfield County, PA*, STB Finance Docket No.

4  35116, 2009 WL 221010, *6 (Service Date July 27, 2009) ("if it acquires the railbanked Eastern

5  Segment," the railroad could reactivate); *Ballard Terminal Railroad Company, L.L.C.—*

6  *Acquisition and Operation Exemption—Woodinville Subdivision*, Docket No. FD 35731, 2014

7  WL 740589, *6 (Served Dec. 30, 2014) (denying reactivation because railroad was not "in a

8  position to obtain the funding needed to . . . pay appropriate compensation to the Regional

9  Parties  [including King County] for use of *the right-of-way they own*.").

10       The structure of the reactivation process under the Act requires that state law easement

11  rights always remain intact and be available for future railroad use.  The STB does not itself

12  control, issue or allocate such state law property rights, but rather leaves it to a reactivating

13  railroad to acquire those property rights.[6]  Plaintiffs' abandonment, extinguishment or

14  substantial narrowing theories would destroy the reactivation process by eliminating the well-

15  defined state law railroad easement rights that must be conveyed by the easement holder to a

16  railroad to allow for reactivation.

17       **F.    A Trail Sponsor Is Not Limited To Trail Use, But May Make Any Use of a
            Corridor That Is Consistent With Trail Use, Railbanking and the
18          Reactivation of Rail Service.**

19       Contrary to Plaintiffs' argument for a surface only trail easement with possible

20  reactivation, the STB's implementation of the Act makes it clear that a trail sponsor may put a

21  railbanked corridor to a variety of beneficial uses.  In the rulemaking process, the ICC (now

---

[6] In the present matter, for example, the Trail Use Agreement between BNSF and the County spells out
that if BNSF were ever to reactivate, "the County agrees that it will make its interest in the corresponding
portion(s) of the Railbanked Segments available for such restoration and BNSF will compensate the
County for such interests and any improvements that have been made by the County on the Railbanked
Segments at their then fair market value."  True Decl., Ex. D (Trail Use Agreement at Page 2, Section 3).

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 10

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

STB) stated, "we see no reason why the development of non-trail activities or structures on or around the right-of-way should be restricted, as long as they are consistent with interim trail use, rail banking, and future restoration of rail service." *Rail Abandonments-Use of Rights-of-Way As Trails,* 2 I.C.C. 2d at 608, 1986 WL 68617 at **13. This conclusion was reemphasized in subsequent rulemaking updates. *Rail Abandonments—Use of Rights-of-Way As Trails—Supplemental Trails Act Procedures*, Ex Parte No. 274 (Sub-No. 13), 1989 WL 238631 at *5 n.10 (decided May 18, 1989) ("If the rail carrier's interest allows different uses (such as underground cable) we see no reason why a trail operator should not be able to do the same. The reversionary property owner's position has not changed.").

Accordingly, the STB has "allowed dual uses of trails," including uses "of the right-of-way as both a trail and a utility corridor . . . ." *Kansas Eastern RR, Inc. – Abandonment Exemption – In Butler and Greenwood Counties, KS*, STB Docket No. AB-563 (Sub-No. 1X), 2006 WL 1516602, *3 (Service Date June 1, 2006); *T and P Railway – Abandonment Exemption – In Shawnee, Jefferson and Atchison Counties, KS*, STB Docket No. AB-381 (Sub-No. 1X), 1997 WL 68211, *5, *7 n.16 (Service Date Feb. 20, 1997), *rev'd on other grounds*, *Becker v. Surface Transp. Bd.*, 132 F.3d 60 (1997) (use of the right-of-way by Western Resources for utility transmission lines did not result in rescinding a NITU and could provide a source of funds for maintenance); *KCT Railway Corp. – Abandonment Exemption – In Franklin, Anderson, and Allen Counties, KS*, ICC Docket No. AB-335 (Sub-No. 2X), 1992 WL 311582, *1-*2 (Service Date Oct. 26, 1992) (accepting use of a railbanked corridor for street extension); *The Baltimore and Ohio R. Co, – Abandonment and Discont. Of Ser. – In Montgomery County, MD and the Dist. of Columbia*, ICC Docket No. AB-19 (Sub-No. 112), 1990 WL 287371, *2 (Service Date March 2, 1990) ("Coalition has not demonstrated that County's transitway proposal is

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

incompatible with either trail use or the restoration of service" and referencing another decision

allowing tourist train).

The United States General Accounting Office ("GAO") has the same view, noting that

the Act allows a trail sponsor to may make multiple uses of a railbanked corridor.

> "[N]othing in the rail-banking statue or the [STB's] regulations precludes a right-of-way
> from being developed for a mixed use, that is, combining a recreational trail with a
> highway or light rail line.  Similarly, the Board has noted that a trail sponsor's receipt of
> revenues from a utility company maintaining transmission lines along the right-of-way is
> not, in and of itself, impermissible.  The arrangement could simply be a way for the trail
> sponsor to obtain funds for the maintenance of the right-of-way and for liabilities and
> taxes and may not substantially affect the trail use or rail banking."

*Surface Transportation Issues Related to Preserving Inactive Rail Lines as Trails* at 10-11

(General Accounting Office October 1999) (attached to Hackett Decl., Ex. A).  *See also CSX*

*Transp., Inc. – Abandonment Exemption – In Monroe and Owen Counties, IL*, STB Docket No.

AB-55 (Sub-No, 514X), 1997 WL 598035, *1 n.5 ("Nothing in the statute or our regulations

precludes a right-of-way from being used for mixed highway (or light rail) and recreational

use.").

### G.   Takings Cases And State Court Decisions Do Not Support Plaintiffs' Theory That Railroad Easements Are Abandoned, Extinguished, Or Narrowed

Plaintiffs rely primarily on railbanking takings cases (and on non-railbanking state law

cases that are preempted by the Act) to support their argument that railroad easements are

abandoned or substantially narrowed.  Upon scrutiny, however, it becomes clear that Plaintiffs'

cited cases are inapposite and actually demonstrate that the Act preserves railroad easements by

preventing abandonment.

The fundamental holding of the takings cases is clear.  As the Federal Circuit said in

*Barclay v. U.S.,* 443 F.3d 1368, 1374 (2006), the NITU bars abandonment and is the barrier to

reversion.  After issuance of the NITU "'the easement continue[s] in existence beyond the time

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1   when it otherwise would have been abandoned.'"  *Id.*

2       Plaintiffs also argue that King County is asserting that railbanking is a railroad purpose to

3   support the continued existence of the rights embodied in any railroad easements.  Pl. Br. at 16-

4   18.  The County does not make this argument, nor does it need to make such an argument.  To

5   the contrary, the County acknowledges that railbanking is not a "railroad purpose" under

6   Washington law, and that without the Act any railroad easements in the Corridor likely would

7   have reverted back to adjacent property owners.  Such a "concession" is of no moment precisely

8   because the Act intervened to *prevent* such a reversion (and thereby enabled Plaintiffs to pursue

9   a takings claim against the federal government).

10      Plaintiffs also incorrectly argue that any railroad easements in the ERC were abandoned

11  as a matter of state law under *Lawson v. State*, 107 Wn.2d 444, 452, 730 P.2d 1308 (1986).  Such

12  a conclusion is legally impossible because the Act preempts any abandonment of railroad

13  easements -- through operation of state law or otherwise -- when a corridor is railbanked.  16

14  USC § 1247(d); *Preseault*, 494 U.S. at 8.  The *Lawson* court reached the abandonment question

15  because the corridor at issue there was *not* railbanked under the Act.  As the Washington Court

16  of Appeals later recognized in *Good v. Skagit County,* 104 Wn.App 670, 675-76, 17 P.3d 1216

17  (2001), the *Lawson* decision "has no application" where a property is acquired and railbanked

18  under the Act.

19      **H.**      **Plaintiffs' Reliance on the Description of Damages Calculations in Takings**
              **Cases is Without Merit.**

20

21      Plaintiffs erroneously rely upon the damages formulation found in some of the Court of

22  Claims takings cases, including *Haggart*, to claim that the railroad easement has been replaced

23  by an easement for a trail use and potential future reactivation of rail use.  In *Haggart,* for

example, the court described the "after" condition of the property for takings valuation purposes

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 13

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    as being "burdened by a general easement permitting recreational trail use with the potential for

2    future railway use by way of rail-banking or possible future development of a commuter rail

3    line."[7]  *Haggart v. U.S.*, 108 Fed.Cl. 70, 96 (2012).

4         Plaintiffs' interpretation of this damages language to suggest a complete abandonment

5    and extinguishment of the state law easement is not tenable because it would eliminate much of

6    the very takings claim that benefited plaintiffs.  The *Haggart* decision correctly identifies how

7    the Act causes a takings:  the railroad easements "would have terminated through abandonment .

8    . . *but for* the Trails Act . . . ."  *Id.* at 97 (emphasis added).  Plaintiffs were compensated for a

9    taking precisely because the Act prevented abandonment of the state law easement.  It is topsy-

10   turvy for Plaintiffs to claim an abandonment of state law easement rights from a takings formula

11   that exits only because the Act *prevents* such abandonment.[8]

12        Plaintiffs received a takings payment closely approximating fee value because the Act

13   preserved the state law easement and added trail usage.  The takings burden imposed by

14   railbanking is essentially the full value of the portion of land covered by the railroad easement

15   plus, in some cases, severance damages for harm to the remainder of the property.  *Moore v.*

16   *United States,* 61 Fed.Cl. 73, 74 (2004) (parties treated new easement as if it took a fee interest in

17   the property); *McCann Holdings, LTD. v. U.S.,* 111 Fed.Cl. 608, 614, 626 (2013) ("[i]n addition

18   to the value of the property actually taken, just compensation includes severance damages" and

19   "parties agree that the Government took 99% of the value of the land underlying the corridor").

20

21   [7] The fact that the Court of Claims defined the uncontested "after" condition to *include* the right for future development of a commuter rail line demonstrates that Judge Lettow understood that the railroad easement continued to exist.  Plaintiffs' request for declaratory judgment conspicuously omits the

22   *Haggart* court's recognition of valid commuter line uses.  Motion at 24 (Dkt. 55).

     [8] Plaintiffs' alternative reading of the language to narrow the railroad easements to allow only current trail

23   use with potential future activation is also foreclosed by the *Haggart* ruling that the NITU preserves the railroad easement and transforms it beyond what the original parties contemplated to add trail use.  *Id.* at 95.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 14

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1   This essentially "complete take" valuation makes sense because a railroad easement is a fee-like

2   estate with exclusive use. *Hanson,* 114 Wn.App. at 528. Indeed, most of the Plaintiffs are also

3   class members in *Haggart* and have agreed to a settlement in which they are being paid fee value

4   for this take.   Decl. of Hackett, Ex. B (Settlement Agreement).

5          Plaintiffs' reading of the summary valuation phrase to mean that the County does not

6   currently own the preserved railroad easement rights would leave ownership of the easement in

7   limbo.[9] When railbanking occurs, the status of property rights is determined under state law.

8   *Grantwood,* 95 F.3d at 658 (state law defines nature of property rights held by trail sponsor).

9   Under Washington law, the property rights embodied in a railroad easement are vested with the

10  easement holder, but if the rights are terminated through abandonment they automatically revert

11  to the underlying property owner. *Lawson*, 107 Wn.2d at 450, 52. The rights are thus held either

12  by the easement holder, or upon abandonment, by the underlying landowners with reversionary

13  interests.  17 Wash. Prac., Real Estate § 2.12 (2d ed.) (the abandonment of an easement does not

14  result in the easement becoming unowned, but rather it is released to the owner of the servient

15  tenement).  Plaintiffs' legal theories should be rejected because they leave the easement portions

16  of the Corridor without an owner; the established state law property rights and chain of title

17  somehow disappear.[10]

18

---

19  [9] In addition, Plaintiffs theory that the railroad easements no longer exist would also call into question the
20  status of scores of easements, leases and licenses that were granted by BNSF based on its ownership of
    railroad easement rights and ultimately assigned to the County. *See* True Decl. at ¶¶ 13, 14, 18, 21 and
    22. This destabilizing impact on the many uses that have been historically made in the Corridor would be
    counter to the notion of preserving the right-of-way.

21  [10] The problematic effect of treating the railroad easement rights as having somehow disappeared is
    demonstrated in the present case.  BNSF initially transferred the Corridor to the Port in December 2009
22  with a warranty that it was conveying rights "sufficient to permit railroad operations on the Property,
    including passenger railroad operations."  True Decl., Exs. N, M and S(Agreements at Section 4.4 and
23  Quit Claim Deed).  Yet under Plaintiffs' theory, those rights were either abandoned and terminated, or
    narrowed to only a current right to conduct trail use when the NITUs issued nearly a year earlier.  True
    Decl. at ¶ 4.  Thus, BNSF's railroad easement rights in the railbanked portions of the Corridor would have

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 15

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    Plaintiffs' read the takings cases out of context and beyond their proper holdings.  The

2    damage formulation in a takings case is necessarily limited to valuation issues only and does not

3    in any way adjudicate property rights.[11]  The takings cases are not quiet title cases that actually

4    determine and allocate the property rights held by the parties.  They do not result in a court

5    specifically defining the property rights held by the trail sponsor and the underlying landowners.

6    There is no judgment vesting rights in one party or the other.  Indeed, the easement owner and

7    trail sponsor are not parties to such cases, nor is the railroad.  The takings cases do not destroy or

8    create property rights in the manner imagined by Plaintiffs because those issues are simply not

9    before the takings courts.

10   **VI.    THE 1903 KITTINGER DEED CONVEYED A FEE TO THE RAILROAD**

11   Although King County agrees that the "Lake Washington Belt Line Deed" and the

12   "Condemnation Deed" (King Cy. No. 40536) transferred only easement rights to BNSF's

13   predecessor railroad, Plaintiffs incorrectly characterize the 1903 "Kittinger Deed."  By using a

14   statutory "bargain and sale" deed form, not including "right of way" in the granting clause,

15   reserving an easement back to the *grantor*, and transferring a substantial sum of money

16   consistent with a fee conveyance, the parties to the Kittinger deed successfully conveyed fee

17

18   _____

evaporated months before it sold and donated them to the Port.

19   [11] Plaintiffs' reliance on the damages formulation to set the terms of the existing burden is also
impractical.  The 31 words Plaintiffs' rely on in their request for declaratory judgment to define their view

20   of the current easement provides almost no guidance about the relative rights of the easement holder and
the underlying landowners.  Motion at 24, Section V(3) (Dkt. 55).  This Court or others would have to be
called on to define the scope and particulars of the easement.  There would be no guidance for such a

21   decision because the Act does not contemplate the creation of such hybrid easement burden.  What the
Act does call for and what is easily defined under state law is the continuation of the railroad easement

22   with the addition of trail use.  As the briefing to date in this case demonstrates, there is a well-developed
body of state law that defines the contours of a railroad easement, starting with its exclusive nature, as
well as law defining when a railroad easement holder improperly exceeds allowable incidental uses.

23   Particularly compared to Plaintiff's proposed approach, adding trail use into this existing framework is
relatively straightforward and unremarkable.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 16

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

ownership.  Because King County now owns this fee, the Court should deny Plaintiffs' motion.[12]

**A.    The Kittinger Deed is a Statutory Bargain and Sale Deed, And Thus, Was A Fee Conveyance**

In construing a deed, a court's "principal aim is to effect and enforce the intent of the parties." *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wash. 2d 253, 262, 126 P.3d 16 (2006). The form of the deed is a key indication of intent.  Under Washington law, "a bargain and sale deed based on the statutory form automatically conveys a fee simple estate." *Roeder Co. v. K & E Moving & Storage Co.*, 102 Wash. App. 49, 54 n.9, 4 P.3d 839 (2000).  Because the Kittinger transaction uses the statutory bargain and sale deed form, it conveyed a fee to the railroad.

Under RCW 64.04.040, as it existed in 1903, a bargain and sale deed exists whenever a conveyance of land is in the following form:

> 'The grantor (here insert name or names and place of residence), for and in consideration of (here insert consideration), *in hand paid, bargain, sell, and convey to* (here insert the grantee's name or names) the following described real estate (here insert description), situated in the county of _____, state of Washington. Dated this ___ day of _____, 18__.'

Laws of 1886 p. 178 §4 (emphasis added).[13]  This reflects the form of the Kittinger conveyance:

> Now therefore the said parties of the first part, *for and in consideration of* the sum of Two Thousand One Hundred and Fifty Dollars to them *in hand paid do hereby* grant, *bargain, sell, and convey unto* the said party of the second part the said strip, piece, and parcel of land One Hundred feet in width as hereinbefore described . . .

Decl. of Robert Jackson, Ex. D (emphasis added).  Historical right of way and track maps from 1917 also list the Kittinger Deed as a bargain and sale deed.  Decl. of Robert Jackson, ¶10-11,

---

[12] Plaintiffs incorrectly state that the corridor adjacent to their property is comprised of just three easements.  The portion of the corridor near or purportedly adjacent to Plaintiffs' properties is actually comprised of railroad interests acquired through five deeds.  See Decl. of Jackson at ¶7.  The two additional deeds that Plaintiffs omit are fee conveyances.  Decl. of Jackson at ¶8.

[13] A copy of the statute is attached as Exhibit C to the Hackett Declaration.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Ex. F.

Through use of the "bargain and sale" form, Kittinger conveyed fee simple ownership to the railroad.  Under the Laws of 1886 p. 178 §4, "[e]very deed in substance in the above form *shall convey* to the grantee, his heirs or other legal representatives, an estate of inheritance *in fee*."  By operation of this statute, a bargain and sale deed "conveys an estate in *fee simple* to the grantee." *Wright v. Olsen*, 42 Wash. 2d 702, 703, 257 P.2d 782 (1953) (emphasis added).

The sole exception to the fee simple rule is when a bargain and sale deed contains "express words" limiting the conveyance.  Laws of 1886 p. 178 §4.  A court "'must find that the grantors intended to convey fee simple title *unless additional language in the deeds **clearly and expressly limits or qualifies the interest conveyed***.'"  *Roeder Co. v. K & E Moving & Storage Co.*, 102 Wash. App. 49 at 54(emphasis added; *quoting Brown v. State*, 130 Wash. 2d 430, 924 P.2d 908, 910 (1996)).

A reference to "right of way" in the legal description of a bargain and sale deed does not satisfy this high standard and cannot convert a fee conveyance into an easement.   A railroad can acquire a "right of way" by either fee or easement.  *Ray v. King Cnty.*, 120 Wash. App. 564, 571, 86 P.3d 183 (2004).  As such, use of the term "'right of way' merely 'begs the question' since a railroad could own a right of way either as an easement or in fee." *King Cnty. v. Rasmussen*, 299 F.3d 1077, 1086 (9th Cir. 2002).

In *Roeder Co. v. K & E Moving*, the court held that use of "right of way" outside the granting clause could not overcome the fee presumption in a bargain and sale deed.  There, a 1901 bargain and sale transaction deeded a 50-foot-wide strip of land to a railroad.  *Id.* at 51.  In the description of the property being conveyed, it identified "a tract of land fifty (50) feet wide.... The right of way hereby conveyed contains thirty-six one hundredths (.36) of an acre." *Id.*  The

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    court held that the deed conveyed a fee simple interest.  *Id.* at 53.

2          Like a deed that follows the statutory warranty deed form, a bargain and sale deed based
           on the statutory form automatically conveys a fee simple estate. RCW 64.04.040 provides
3          that a deed modeled on the bargain and sale form "shall convey to the grantee, his heirs
           or assigns an estate of inheritance in fee simple...." This presumption also originated in
4          1886. *See* Laws of 1886, § 4 at 178.

5    *Id.* at 54.  Relying on the Supreme Court's decision in *Brown*, the court determined that use of

6    the phrase "right of way" in the description of the property being conveyed did not constitute a

7    clear and express limitation of the interest conveyed by the bargain and sale deed form.  *Id.* at

8    55.

9          Even captioning the instrument as a "right of way deed" fails to constitute a clear and

10   express limitation of a bargain and sale fee conveyance.  Again analyzing *Brown*, the *Roeder v.*

11   *K&E Moving* case explained that such references to right of way, which are outside the express

12   language of the conveyance clause, do not change the nature of the transaction from a

13   conveyance in fee. *Id.*

14         These holdings from *Roeder v. K&E* dispose of Plaintiffs' arguments.  Apart from

15   unhelpful and unsupported historical speculations,[14] Plaintiffs' argument for "additional

16   language in the deed [that] clearly and expressly limits or qualifies the interest conveyed" rest

17   entirely on a theory that the *legal description* of the conveyance somehow incorporates the

18   passing use of "right of way" in the recital paragraphs that proceed the granting clause.  *See*

19   Motion at 12 (Dkt. 55).  Although the court should reject Plaintiffs' effort to read the legal

20   description so broadly that it incorporates the other recitals, Plaintiffs' argument does not help

21   their position.  The *Roeder v. K&E* decision already holds that the use of "right of way" in a

22

23   _____
     [14] Plaintiffs offer lengthy footnotes on Judge J.R. Lewis, who was one of the grantors of the Kittinger
     deed.  Plaintiffs' colorful claims of J.R. Lewis' supposed anti-railroad animus are unsupported by the
     cited materials or the historical record.

     DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
     MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 19

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    legal description, or even as the caption for the entire deed, is insufficient to overcome the fee

2    presumption established by use of a bargain and sale deed.  102 Wn.2d at 55, 57.

3         Resort to Judge Lettow's decision in *Haggart* also does not help Plaintiffs overcome the

4    legal effect of a bargain and sale deed.  Motion at 5 (Dkt. 55).  The *Haggart* court did not

5    consider the determinative meaning that Washington state law places on the "bargain and sale"

6    language, nor have before it the 1917 maps that document the Kittinger deed as a bargain and

7    sale deed.  *See* Decl. of Jackson at ¶10-11, Ex. F.  As a result, the *Haggart* decision on the

8    Kittinger deed fails to account for a dispositive point of Washington law.

9    **B.    The Kittinger Deed is a Conveyance in Fee Under *Kershaw* and *Brown***

10        Apart from use of a "bargain and sale" deed, Plaintiffs fail to establish an easement under

11   the *Kershaw* and *Brown* cases.

12       **1.    There Is No Counter Presumption of An Easement Because the
             Kittinger Deed Contains No "Right-of-Way" Language In the
13           Granting or Habendum Clauses**

14        The *Kershaw* presumption of an easement due to the use of "right of way" purpose

15   language in the conveyance does not apply here because the Kittinger Deed uses no such

16   language.  In *Kershaw*, the deed at issue expressly included "right of way" in the granting clause

17   that limited the purpose of the conveyance.  It is this use of "right of way" in the granting clause

18   that is necessary to raise an easement presumption.  The Supreme Court noted under its prior

19   cases that the easement presumption arises only when "right of way" is used in the granting

20   clause to limit the purpose of the conveyance:

21        We think when *Morsbach* [*v. Thurston County,* 152 Wash. 562, 278 P. 686 (1929)] is
          critically read and considered with the precise question we have before us in mind, it is
22        clear that we adopted the rule that *when the granting clause of a deed declares the
          purpose of the grant to be a right of way for a railroad the deed passes an easement only,
23        and not a fee with a restricted use, even though the deed is in the usual form to convey a
          fee title.  Swan* [*v. O'Leary*, 37 Wash.2d 533, 537, 225 P.2d 199 (1950)] (emphasis

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 20

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

added). The court then applied this principle to find that a quitclaim deed conveying, "*for the purpose of a Railroad right-of-way ... a strip of land 50 feet in width,*" conveyed only an easement and not a fee interest.

*Kershaw*, 156 Wash. 2d at262-63 (emphasis in original).  The *Kershaw* decision further notes that "*Brown* established that, generally, when the granting document uses the term 'right of way' *as a limitation or to define the purpose of the grant*, it operates to 'clearly and expressly limit[ ] or qualif[y] the interest conveyed.'"  *Id.* at 265(quoting *Brown*).

With the Kittinger Deed, no easement is presumed because the phrase "right of way" is absent from the granting clause and there is no limitation of purpose.  The term "right of way" appears only in the recitals, but recitals do not carry the same weight under Washington law as the operative conveyance language.  *See Rains v. Walby*, 13 Wash. App. 712, 716, 537 P.2d 833 (1975)("The recitals supply only background for the paragraphs which set forth the bargain that the parties struck on the date of execution of the contracts.").  A passing use of the word "right of way" in a recital cannot give rise to any presumption of an easement – especially when the form of deed used already supports the parties' intention to grant a fee.  There is a stark difference between limiting a conveyance and merely explaining a party's reasons for entering into a land sale.[15]

## 2.      The *Brown* Factors Favor a Fee

The *Brown* factors clearly favor a fee determination.  With regard to *Brown* factors 1-4, the conveyance clause in the Kittinger deed conveys a "strip, piece and parcel" and contains no express limitation on the use or purpose of the conveyed property.  Even the statement in the recital, which references the railroad's intent to construct a railroad, nowhere limits the railroad's

---

[15] "The general purpose of the conveyance, i.e. for railroad purposes, is not helpful in this inquiry because it does not clarify whether the right of way is an easement or a fee."  *Roeder Co. v. K & E Moving & Storage Co.*, 102 Wash. App. at 55.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 21

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

use of the land.   These *Brown* factors favor a conveyance in fee.

The fifth *Brown* factor asks "whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor." Here, the deed contains no reverter clause, which is consistent with a fee conveyance.

With regard to the sixth factor -- whether the consideration expressed was substantial or nominal – the $2,150 paid for the Kittinger property was substantial consideration for the time. *See Kershaw*, 156 Wash. 2d at 268 (noting that $1,000 was likely a substantial sum in the early 1900s).  The Declaration of James Greenleaf, a certified real estate appraiser, confirms that the price paid by the railroad supports a fee determination.  The amount paid per acre, $205, "is equivalent to comparable fee acquisitions" in the Corridor.  Decl. of Greenleaf at ¶10.  The price for the Kittinger Deed substantially exceeds the $8.12 per acre paid for an easement in the same Corridor during the same year.  *Id.* at ¶9.  It also exceeds the price of $75.70 per acre that was determined to be fair market compensation for an easement in a 1903-04 judicial condemnation proceeding in the Corridor.  *Id.* at ¶6.  Such evidence was not presented to Judge Lettow in *Haggart*.  It strongly supports a fee conveyance.

With regard to the seventh *Brown* factor, the fee status of the Kittinger deed is apparent from the lack of an habendum clause, which is present in nearly all the easement cases.  In *Brown* and *Kershaw*, the question is "whether the conveyance *did or did not* contain a habendum clause."  The absence of a habendum clause is supports an intent to convey a fee.  *Ray v. King County*, 120 Wash. App. at 580.

The "other considerations suggested by the language of the particular deed" also strongly support a fee.  The Kittinger grantors *reserved* easements for highway crossings, the right to mine coal, etc.  If Plaintiffs were correct – that the Kittinger deed conveyed only an easement for

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 22

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    railroad purposes and that the grantors otherwise retained the fee – there would have been no

2    reason for the grantors to retain these easements for themselves.  Further, as PSE correctly

3    argues, the deed establishes the railroad's "possession" of the corridor, not merely its "use" –

4    which is also consistent with the grant of a fee.

5          Finally, the court is to consider the "circumstances surrounding" the Kittinger Deed.

6    *King County v. Rasmussen*, 299 F.3d at 1088.  During the 1903-04 timeframe, the railroad

7    assembling the Corridor was purposely obtaining fee title to the right of way.  As the Declaration

8    of Greenleaf points out, nearly every acquisition by the railroad during this period was in fee.

9    Decl. of Greenleaf at ¶4, ex. A.   The June 1903 Kittinger Deed is an example of a bargained-for

10   fee purchase by the railroad within this timeframe. *Id.*

11         Judge Lettow's determination in *Haggart* to discount *Brown* largely accounts for that

12   court's incorrect interpretation of the Kittinger Deed under Washington law.  The *Haggart*

13   opinion views *Kershaw* as supplanting *Brown*.  *See Haggart,* 108 Fed. Cl. at 87 ("The *Brown*

14   legacy lasted ten years, until the Washington Supreme Court decided *Kershaw* in 2006. *Kershaw*

15   returned to an emphasis on the earlier cases . . .").  Even though *Kershaw* cited *Brown*

16   extensively and approved *Ray v. King County* in a footnote, the *Haggart* opinion failed to give

17   full effect to these precedents.[16]

18         In addition, the *Haggart* decision should not be followed on the Kittinger Deed

19   interpretation question because Judge Lettow declined to follow the Ninth Circuit's decision in

20   *King County v. Rasmussen*, noting that decisions of the Ninth Circuit are "not binding" on the

---

[16] Plaintiffs make the same mistake.  Any doubt on the continuing authority of *Brown* was resolved by  an order of the Washington Supreme Court subsequent to the *Kershaw* decision that cites both *Brown* and *Ray v. King County* to demonstrate the clarity of Washington law on questions of deed interpretation. *Beres v. United States*, 92 Fed. Cl. 737, 753-54 (2010) (quoting order denying consideration of certified questions).  Thus, "[w]hile *Kershaw* may have refined deed construction regarding railroad deeds somewhat, it did not change the holding of the previous precedential case in Washington State, *Brown v. State*." *Id.* at 754.

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 23

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1   United States Court of Federal Claims.  *Haggart*, 108 Fed. Cl. at 87-88.  Unlike the Court of

2   Federal Claims, however, this Court applies Ninth Circuit precedent and the Circuit's prior

3   interpretation of Washington law as set forth in *Rasmussen*.  *See Kona Enterprises, Inc. v. Estate*

4   *of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000)(Prior Ninth Circuit interpretation of state law

5   "remains binding in the Ninth Circuit 'in the absence of any subsequent indication from the

6   [state] courts that our interpretation was incorrect.'").

7        The *Rasmussen* decision correctly interprets Washington law to mean that use of the

8   words "right of way" in the "granting clause as a limitation or to specify the purpose of the grant

9   generally creates only an easement," but that a fee is generally conveyed when those words "did

10  not qualify or limit the interest expressly conveyed in the granting and habendum clauses of the

11  deeds at issue." *Rasmussen*, 299 F.3d at 1085-86 (explaining *Brown*).  "In virtually all cases

12  where Washington courts have found only an easement, the granting or the habendum clauses"

13  included specific "language clearly limiting the use of the land to a specific purpose." *Id.* at

14  1086.  The Kittinger Deed contains no such language, so Washington law and the *Rasmussen*

15  decision require the conclusion of a fee conveyance.

16        C.    <u>**Any Doubts Are Resolved Against the Grantors**</u>

17        Under *Brown*, "a party wishing to prove that such a deed conveys only an easement

18  interest has the burden of showing less than fee simple title was intended to be conveyed."

19  *Kershaw,* 156 Wash. 2d at 264 (citing *Brown*).  With regard to this burden, it is important to note

20  that any remaining doubts on the scope of a deed conveyance are construed against the grantor:

21  "When the court remains in doubt as to the parties' intent or as to the quantum of interests

22  conveyed, a deed will be construed against the grantor." *Ray v. King Cnty.*, 120 Wash. App. at

23  587.

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1    For the foregoing reason, the Court should deny Plaintiffs' motion.  A proposed order is

2    attached.

3    DATED this 2nd day of January, 2015 at Seattle, Washington.

4                                    DANIEL T. SATTERBERG
                                     King County Prosecuting Attorney
5
                                     By:_ *s/ David J. Hackett*_____
6                                    DAVID J. HACKETT, WSBA #21236
                                     Senior Deputy Prosecuting Attorney
7

8                                    By:_ *s/ Peter G. Ramels*_____
                                     PETER G. RAMELS, WSBA #21120
9                                    Senior Deputy Prosecuting Attorney

10

11                                   By: *s/ Andrew W. Marcuse*_____
                                     ANDREW W. MARCUSE, WSBA #27552
12                                   Senior Deputy Prosecuting Attorney
                                     Attorneys for Defendant King County
13                                   500 Fourth Ave., 9th Floor
                                     Seattle, WA.  98104
14                                   Telephone: (206) 296-8820 / Fax: (206) 296-8819

15

16

17

18

19

20

21

22

23

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

1

## DECLARATION OF FILING AND SERVICE

2

 I hereby certify that on February 2, 2015, I electronically filed the foregoing document(s) with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

3

4

Daryl A. Deutsch, WSBA # 11003
Attorney for Plaintiff

5

Rodgers, Deutsch & Turner, PLLC
Three Lake Bellevue Drive, Suite 100

6

Bellevue, WA 98005
Email: daryl@rdtlaw.com

7

8

Thomas S. Stewart
Elizabeth McCulley
Attorneys for Plaintiff

9

BAKER STERCHI COWDEN & RICE, LLC
2400 Pershing Road, Suite 500

10

Kansas City, MO  64108
stewart@bscr-law.com

11

mcculley@bscr-law.com

12

Timothy G. Leyh, WSBA #14853
Randall Thomsen, WSBA #25310

13

Kristin Ballinger, WSBA #28253
Attorneys for Port of Seattle

14

Calfo, Harrigan, Leyh & Eakes, LLP
999 Third Avenue, Suite 4400

15

Seattle, WA 98104
timl@calfoharrigan.com

16

randallt@calfoharrigan.com
Kristinb@calfoharrigan.com

17

James E. Breitenbucher, WSBA # 27670

18

Gavin W. Skok, WSBA # 29766
Courtney Seim, WSBA # 35352

19

Bryan J. Case, WSBA # 41781
Attorneys for Puget Sound Energy

20

Riddell Williams PS
1001 – 4th Avenue, Suite 4500

21

Seattle, WA 98154-1065
gskok@riddellwilliams.com

22

jbreitenbucher@riddellwilliams.com
cseim@riddellwilliams.com

23

bcase@riddellwilliams.com

DEFENDANT KING COUNTY'S RESPONSE TO PLAINTIFFS'
MOTION FOR DECL. JUDGMENT (14-cv-00784-JCC) - 26

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

Desmond L. Brown, WSBA # 16232
Loren Armstrong, WSBA # 33068
Central Puget Sound Regional Transit Authority
401 S. Jackson Street
Seattle, WA 98104-2826
desmond.brown@soundtransit.org
loren.armstrong@soundtransit.org

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 2nd day of February, 2015 at Seattle, Washington.

*s/ Karen Richardson*
Karen Richardson
King County Prosecuting Attorney's Office

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819