1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   SCOTT AND KATHRYN KASEBURG,
    et al.,

10                                          No. 2: 14-CV-000784-JCC

11                          Plaintiffs,     SOUND TRANSIT'S
                                            OPPOSITION TO PLAINTIFFS'
                                            MOTION FOR DECLARATORY
12      v.                                  JUDGMENT

13  PORT OF SEATTLE, a municipal
    corporation; PUGET SOUND ENERGY,        NOTE ON MOTION
14  INC., a Washington for profit corporation,   CALENDAR: February 20, 2015
    KING COUNTY, a home rule charter
15  county, and CENTRAL PUGET SOUND         **ORAL ARGUMENT**
    REGIONAL TRANSIT AUTHORITY, a           **REQUESTED**
16  municipal corporation,

17                          Defendants.

18

19

20

21

22

23

24

25

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

   A.   Impact on the East Link Light Rail Project. ........................................................ 2

   B.   Sound Transit purchased the easement right to run passenger rail service in the
        corridor through a multi-party, multi-step transaction. ...................................... 3

   C.   There are many other transit agencies with similar interests in railbanked corridors
        ............................................................................................................................. 5

III.  LEGAL AUTHORITY ........................................................................................ 6

   A.   Sound Transit's intended passenger rail service is a railroad purpose. ................. 6

   B.   The Trails Act preserves railroad right-of-way intact until needed for a railroad
        purpose, and the temporary trail use does extinguish or convert the railroad
        easement into a trail easement. ......................................................................... 7

        1.   Plaintiffs represented to the Court of Federal Claims that the Trails Act
             blocked the reversion of the entirety of BNSF's original easement rights. ...8

        2.   The Trails Act preserves the original railroad easements by preempting state
             laws that would extinguish the easements and cause the property to revert to
             the abutting property owners. ........................................................................ 9

   C.   After railbanking, the original railroad easement continues to burden Plaintiffs'
        property and coexists with a new trail use. ...................................................... 10

        1.   The *Haggart* decision recognized the continuing existence of BNSF's
             original easement rights, including future passenger rail service. ................ 12

   D.   Sound Transit's easement is not limited to surface rights – it can use and occupy
        the non-mineral subsurface and reasonable airspace of the railroad corridor as
        necessary to construct, operate, and maintain passenger rail service. .................... 13

   E.   Sound Transit can construct and operate passenger rail without STB approval
        because the STB has no jurisdiction over passenger rail. ..................................... 17

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- i

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

F.    Plaintiffs misstate the effect of the numerous Trails Act takings cases. The cases do not decide the legal status of the easement preserved for a future railroad purpose .................................................................................................. 17

G.    Plaintiffs misstate the effect of the numerous Trails Act takings cases. The cases do not decide the legal status of the easement preserved for a future railroad purpose .................................................................................................. 20

IV.  CONCLUSION ............................................................................................ 23

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC - ii

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

TABLE OF AUTHORITIES

<u>Cases</u>

*Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006) ...............................................8

*Bldg. A Better Bellevue v. U.S. Dep't of Transp.*, No. C12-1019-JCC (Mar. 7, 2013).........3

*Caldwell v. United States*, 391 F.3d 1226 (Fed.Cir.2004)...............................................20

*Capreal v. U.S.*, 99 Fed. Cl. 133 (2011) .........................................................................7

*Farmers Co-op. Co. v. United States*, 98 Fed. Cl. 797 (2011) .........................................9

*Haggart v. U.S.*, 108 Fed.Cl. 70 (2012).................................................................passim

*Illig v. U.S.*, 58 Fed. Cl. 619 (2003)......................................................................passim

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253 126 P.3d 16 (2006) ...................................................................................................14

*Lawson v. State*, 107 Wn.2d 444 730 P.2d 1308 (1986) ................................................15

*Louisiana & Arkansas Ry. v. Bickham*, 602 F.Supp. 383 (M.D.La.1985) *aff'd* 775 F.2d 300 (5th Cir.1985) (49 U.S.C. § 10903 ....................................................................7

*Macy Elevator v. United States*, 105 Fed. Cl. 195 (Fed. Cl. 2012) ..................................22

*National Assoc. of Reversionary Property Owners ("NARPO") v. STB*, 158 F.3d 135 (D.C. Cir 1998)......................................................................................................7

*National Wildlife Fed'n v. ICC*, 850 F.2d 694 (D.C.Cir.1988) ........................................7

*Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990)....................................................................................................................9

*Thomas v. U.S.*, 106 Fed. Cl. 467, 488-89 (2012) .........................................................11

*Toscano v. U.S.*, 107 Fed. Cl. 179 (2012)...............................................................passim

*Zobrist v. Culp*, 95 Wn.2d 556, 627 P.2d 1308, 1311 (1981)...........................................6

<u>Regualtions</u>

49 CFR § 1152.29(a)(3)(2012)......................................................................................18

49 CFR § 1152.29(c)(3)(2012)......................................................................................18

49 CFR § 1152.29(d)(2012) ...........................................................................................6

49 CFR § 1152.29(d)(1)(2012)......................................................................................18

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- iii

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

49 CFR § 1152.29(d)(3)(2012) .................................................................................. 18

49 USC § 10501(c)(2)(A) ......................................................................................... 17

49 USC § 10903(a) ..................................................................................................... 7

16 USC §1247(d) ...................................................................................................... 17

<u>Other Authorities</u>

*Baltimore and Ohio R. Co, – Abandonment and Discont. Of Ser. – In Montgomery County, MD and the Dist. of Columbia,* 1990 WL 287371, ICC Dkt. No. AB-19 (Sub-No. 112) (February 22, 1990) ........................................................................................ 17

*BNSF Ry. Co. – Abandonment Exemption – in King Cnty., WA,* 2014 WL 7405859, STB Dkt. No. AB-6 (Sub. No. 465X) ..................................................................... passim

*Georgia Great So. Division – Aban. & Discon. Of Service,* STB Dkt. No. AB-389 (Sub-No. IX (May 9, 2003) ................................................................................................. 16

*Gnp Rly, Inc.--Acquisition & Operation Exemption--Redmond Spur & Woodinville Subdivision,* 2011 WL 2421150, Fin. Dkt. No. 35407, at *3 (June 15, 2011) .............. 18

*King Cnty., Wa--Acquisition Exemption--B.N.S.F. RailWay Company,* 2009 WL 2979430, STB Fin. Dkt. No. 35148 (Sept. 18, 2009) .................................................................... 10

*Los Angeles Cnty. Transp. Comm'n—Petition for Exemption--Acquisition from Union Pac. R.R. Co.,* 1996 WL 408632, STB Fin. Dkt. No. 32374, at *4 (July 11, 1996) ....... 19

*Norfolk Southern Railway Co. -- Abandonment Exemption – In Mecklenburg County, NC,* 2004 WL 1136634, STB Docket No. AB-290 (Sub-No. 247X) (May 21, 2004) ........... 6

*Regional Rail Right of Way Company – Abandonment Exemption – In Collin and Dallas Counties, TX,* 2010 WL 262221, STB Docket No. AB-1050X ........................................ 6

*S. Pac. Transp. Co.-Abandonment Exemption-Los Angeles Cnty., Ca.,* 1993 WL 54669, 91 I.C.C.2d 385, 390 (Feb. 12, 1993) ............................................................................... 18

*Southern Pacific Transportation Co. – Abandonment Exemption – In El Dorado County, CA,* 1995 WL 314866, STB Docket No. AB–12 (Sub–No. 128X) (May 25, 1995) ........ 6

*State of Maine, Dep't of Transp.-Acquisition & Operation Exemption-Maine Cent. R.R. Co.,* 1991 WL 84430, 8 I.C.C 2d 835 (May 20, 1991) .................................................. 19

*State of Wisconsin Dep't of Transp.-Petition for Declaratory Order,* 2002 WL 1767404, STB Fin. Dkt. No. 34181, at *2 (July 30, 2002) ......................................................... 19

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- iv

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

*The Port of Seattle--Acquisition Exemption--Certain Assets of B.N.S.F. Railway Co,*
2008 WL 4718447, STB Fin. Dkt. No. 35128, at \*4 (Oct. 23, 2008) ...........................20

*Union Pacific Railroad Co. – Abandonment and Discontinuance of Trackage Rights*
*Exemption – In Ada County, ID*, 2000 WL 124964, STB Docket No. AB-33 (Sub-No.
137X) (February 2, 2000) ..................................................................................................6

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

# I.   INTRODUCTION

The local government defendants collectively paid more than $80 million to buy and preserve Burlington Northern Santa Fe's 100-year-old, 38-mile railroad right-of-way through the federal railbanking process.[1] The effect of this motion is not limited to Plaintiffs' property. The Court's ruling  will also affect the portion of the right-of-way on which Sound Transit will place the railroad tracks required to operate light-rail passenger trains between Seattle and Redmond. The light-rail line (East Link) will begin passenger service in 2023 with 50,000 daily riders by 2030.

Plaintiffs' motion is an indirect attempt to permanently prevent Sound Transit from operating passenger rail service. Plaintiffs know that if the original railroad easements[2] no longer exist, Sound Transit will not own the property rights required to operate passenger rail on the right-of-way. They argue that the Trails Act creates a new undefined federally-chartered easement to displace the well-defined railroad easements that have encumbered the right-of-way for over a century. But their argument conflicts with the Trails Act, the Interstate Commerce Commission Termination Act of 1995, which provides the exclusive procedure for extinguishing federally-regulated railroad easements, and applicable case law. Plaintiffs' previous representations to other courts also contradict their arguments in this motion.

---

[1] *See* Dkt. No. 46, Exhibit C (Purchase and Sale Agreement between BNSF and the Port of Seattle and King County) at p.4.

[2] For ease of reference, Sound Transit's brief refers to all three of BNSF's original property grants as easements for railroad purposes.  Sound Transit concedes that the Lake Washington Belt Line Co. deed and the State of Washington condemnation conveyed easements for railroad purposes.  Sound Transit believes that the Kittinger Deed is a fee conveyance, as further set forth in King County's Opposition to Plaintiffs' Motion simultaneously filed with this opposition.  Further, Sound Transit concedes that both deeds and the condemnation, to the extent they are easements, they are easements for railroad purposes under Washington law.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 1

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

As this Court has already recognized, "the central issue [is] whether the Port lacked the power to grant PSE and Sound Transit the easements they now claim." Dkt. No. 59 at 6. Or stated another way, what railroad easement rights remain available for use after railbanking? The cases that address the issue all hold that the original railroad easements continue to exist in their entirety and can be used at any time to operate passenger railroad or any other railroad purpose within the scope of the original easement.[3] After this corridor was railbanked under the Trails Act, the right-of-way was burdened by the original railroad easements and a new trail use.[4]

The Trails Act's stated purpose is to preserve railroad easements for future railroad use. Plaintiffs cannot credibly argue that after receiving more than thirty-two million dollars as compensation for blocking the reversion of the railroad easements to Plaintiffs, and for creating the new trail use,[5] that Sound Transit cannot now use the preserved easements to operate passenger rail service—a property right the court identified as continuing after the inverse condemnation. Plaintiffs' motion should be denied.

## II.   BACKGROUND

### A.   Impact on the East Link Light Rail Project.

Sound Transit builds and operates commuter rail, light rail and regional express buses. Property acquisition and final engineering are under way on the East Link light-rail line connecting Seattle, Mercer Island, Bellevue, the Overlake Hospital, and the Microsoft

---

[3] *See Illig v. U.S.*, 58 Fed. Cl. 619, 632 (2003)(" It was the intent of the Trails Act to ensure that [Trail Operator] had the same rights in its easement that [original railroad] held…").

[4] *See Haggart v. U.S.*, 108 Fed.Cl. 70, 96 (2012).

[5] *See* Armstrong Decl., Exhibit 1 (*Haggart v. U.S.*– Case 1:09-cv-00103-CFL, Dkt. No. 161-2), Joint Compromise and Settlement Agreement Between Plaintiffs and the United States, identifying compensation received by each plaintiff property owner consistent with Judge Lettow's Order).

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 2

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

Campus in Redmond. Construction will begin in 2016, and passenger service will start in 2023.[6][7] East Link will be partly located on a railroad easement within the right-of-way in Bellevue next to Overlake Hospital. This part of the corridor was railbanked along with the corridor at issue in this lawsuit through the same Surface Transportation Board ("STB") process.[8] The court's ruling on Plaintiffs' claim that the easements were extinguished and replaced with a surface-only easement that does not include the aerial or underground rights needed to operate a railroad would equally apply to the right of way adjacent to Overlake Hospital on which East Link will be constructed.[9]

### B.   Sound Transit purchased the easement right to run passenger rail service in the corridor through a multi-party, multi-step transaction.

The railbanking process and the associated real property transactions that transferred BNSF's original railroad easement property rights to the various local governments occurred in three proceedings. Those three proceedings and the associated real property transactions culminated in the STB issuing a Notice of Interim Trail Use authorizing King County to maintain a trail on the right-of-way until needed for a railroad purpose. The STB also approved BNSF's transfer of its freight reactivation and federal

---

[6] *See* Sleavin Decl., ¶ 5.

[7] This Court rejected environmental challenges to the East Link project in *Bldg. A Better Bellevue v. U.S. Dep't of Transp.*, No. C12-1019-JCC (Mar. 7, 2013).

[8] The entire corridor that was railbanked by BNSF is commonly referred to as the East Side Rail Corridor. The railroad corridor adjacent to the properties owned by the Plaintiffs in this lawsuit is a subsection of the larger East Side Rail Corridor.

[9] *See*, Armstrong Decl., ¶ 12 (Although later referred to as the Lake Washington Belt Line, the easement was originally conveyed to the Northern Pacific and Puget Sound Shore Railroad Company in 1890. The Lake Washington Belt Line Company also conveyed one of the easements abutting Plaintiffs' property in 1892.). *See* Plaintiffs' Motion, Exhibit D. *See also* Sleavin Decl., ¶ 8.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 3

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

common carrier obligations to King County. The proceedings were recently summarized by the STB:[10]

- In one proceeding, King County filed a request for a Notice of Interim Trail Use ("NITU"), which the STB issued, and King County timely entered into an interim trail use agreement with BNSF to become the trail operator, precluding BNSF's abandonment.

- In another proceeding, BSNF filed a petition with the STB seeking approval of its sale of all of its physical assets and easement property rights to operate passenger rail (minus a freight rail easement retained by BNSF) to the Port of Seattle. The STB dismissed the petition because it does not exercise jurisdiction over passenger rail transactions. BNSF completed the sale to the Port. The Port then conveyed those assets and rights to the various defendants, including a high-capacity transportation easement over the corridor to Sound Transit.[11]

- In a third proceeding, King County requested and received authority from the STB to purchase BNSF's residual freight rights and obligations with respect to the easements.

Under a multiparty agreement with the other government defendants to purchase and railbank the BNSF right-of-way, Sound Transit paid $13.752 million for the high-capacity transportation easement. Armstrong Decl., ¶ 5. By agreement with King County, the recreational trail must be rerouted in locations where Sound Transit needs the right-of-way for the railroad purposes authorized by the high-capacity transportation easement. The high-capacity transportation easement provides that it is subject to a freight easement

---

[10] *See BNSF Ry. Co. – Abandonment Exemption – in King Cnty., WA*, 2014 WL 7405859, STB Dkt. No. AB-6 (Sub. No. 465X) Slip Op. at *1-2 (Dec. 30, 2014) (denying a third party request for freight reactivation).

[11] The following real property transaction documents are incorporated herein by reference: (1) Purchase and Sale Agreement between BNSF, Port of Seattle, and King County (Dkt. No. 46, Exhibit C); (2) Donation Agreement (Dkt. No. 46, Exhibit D); (3) Memorandum of Understanding (Dkt. No. 46, Exhibit E); (4) Quit Claim Deed BNSF to Port of Seattle – Woodinville South (Dkt. No. 46, Exhibit F); (5) Purchase and Sale Agreement between Port of Seattle and King County (Dkt. No. 46, Exhibit J); (6) Quit Claim Deed Port of Seattle to King County (Dkt. No. 46, Exhibit K); (7) High Capacity Transportation Easement Port of Seattle to Sound Transit (Dkt. No. 46, Exhibit L); and (8) King County's Public Multipurpose Easement (Armstrong Decl., Exhibit. 9)

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 4

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE. (206) 398-5000
FACSIMILE. (206) 398-5499

permitting freight operations to resume on the right-of-way. [12] Although the easement authorizes a broad range of transportation uses, Sound Transit only intends to construct and operate passenger rail and associated rail facilities, or any other transit uses that would be within the scope of BNSF's original easement rights. Sleavin Decl., ¶ 3.  Sound Transit currently has no plans to operate passenger rail adjacent to these Plaintiffs' property, but its easement permits the agency to do so if passenger rail is needed to serve Renton in the future.

In recent years, the Surface Transportation Board has twice denied a request by Ballard Terminal Railroad to vacate the Notice of Interim Trail Use and to reactivate freight service on the northern section of the right-of-way in part because the railroad did not appear to have the funds to compensate King County, the City of Kirkland, and Sound Transit for use of the right of way they own. [13] The STB's most recent affirmation that King County, Sound Transit, and the City of Kirkland own the property rights to operate a railroad on the right-of-way was on December 30, 2014, more than two years after these Plaintiffs were successful in their inverse condemnation lawsuit seeking compensation for the continued existence of the railroad easements. *Id.*

**C.    There are many other transit agencies with similar interests in railbanked corridors.**

Sound Transit's passenger rail interest in a railbanked corridor is not unique. Transit agencies are using railbanked corridors or are considering them for future use in many locations, including: (a) commuter rail in Salt Lake City, Utah; (b) light rail and

---

[12] *See* High Capacity Transportation Easement (Dkt. No. 46, Exhibit L, Recital B Section 5); *see also* KC Multipurpose Easement (Armstrong Decl., Exh. 9 at §§ 3, 6, 4.
[13] *See BNSF Ry. Co. – Abandonment Exemption – in King Cnty., WA,* 2014 WL 7405859, STB Docket No. AB-6 (Sub. No. 465X) Slip Op. at *6 (Dec. 30, 2014).

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 5

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

commuter rail in Dallas, TX; (c) light rail in Charlotte, NC; (d) commuter rail in Boise, ID; and (e) light rail in Sacramento, CA.[14]

### III.   LEGAL AUTHORITY

**A.**   **Sound Transit's intended passenger rail service is a railroad purpose.**

Sound Transit's interest is distinct from the other defendants who seek to use incidental easement rights. Sound Transit's only intended use is to operate passenger rail,[15] which is unambiguously a railroad purpose:

> What is the operation of a railroad? A railroad, this court said long ago … is devoted to the public service of transportation over lines and terminals having a fixed location. It follows that when a railroad is 'operating,' it is furnishing transportation, either freight or passenger, to the public.

*Zobrist v. Culp*, 95 Wn.2d 556, 561, 627 P.2d 1308, 1311 (1981). ("*Zobrist*").

BNSF's original easements allow for the "'construction, operation and maintenance' of a railroad." *See*, e.g., Plaintiff's Motion at 10:7-11 (quoting the Lake Washington Belt Line Deed). Accordingly, Sound Transit's intended passenger rail use is the very purpose for which the original easements were granted – the operation of a railroad as defined by *Zobrist*.

---

[14] *See Toscano v. U.S.*, 107 Fed. Cl. 179, 181-82 (2012) (Salt Lake City, Utah); *Regional Rail Right of Way Company – Abandonment Exemption – In Collin and Dallas Counties, TX*, 2010 WL 262221, STB Docket No. AB-1050X (January 25, 2010) (Dallas, Texas); *Norfolk Southern Railway Co. -- Abandonment Exemption – In Mecklengurg County, NC*, 2004 WL 1136634, STB Docket No. AB-290 (Sub-No. 247X) (May 21, 2004); *Union Pacific Railroad Co. – Abandonment and Discontinuance of Trackage Rights Exemption – In Ada County, ID*, 2000 WL 124964, STB Docket No. AB-33 (Sub-No. 137X) (February 2, 2000) (Boise, Idaho); *Southern Pacific Transportation Co. – Abandonment Exemption – In El Dorado County, CA*, 1995 WL 314866, STB Docket No. AB–12 (Sub–No. 128X) (May 25, 1995) (Sacramento, CA).

[15] Sleavin Decl., ¶ 3 and 11.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 6

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1    **B.**     **The Trails Act preserves railroad right-of-way intact until needed for a railroad purpose, and the interim trail use does not extinguish or convert the railroad easement into a trail easement.**

3    Plaintiffs devote nearly nine pages of their brief to the argument that BNSF's

4    easements have been abandoned or permanently converted to a trail easement. But as this

5    Court has acknowledged, the Trails Act preempts state abandonment and reversion

6    doctrines. *See* Dkt. No. 59 at 2. Plaintiffs' motion directly conflicts with their prior

7    representations to the Court of Federal Claims, the ICC Termination Act of 1995, and

8    Section 12(d) of the Trails Act.

9    The ICC Termination Act of 1995[16] precludes abandonment of a railroad easement

10    without a Surface Transportation Board order authorizing the railroad to abandon the

11    railroad right-of-way on which the easement exists.[17] In September 2008, BNSF filed a

12    notice to begin the process to abandon the corridor at issue. Before the abandonment

13    became effective, the STB issued a Decision and Notice of Interim Trail Use ("NITU")

14    authorizing the parties to negotiate a trail use agreement, subject to possible future

15    reactivation of the right-of-way for rail service.[18] The Decision and trail use agreement

---

16

17   [16] 49 USC § 10903(a) provides, in relevant part, as follows: "(a)(1) A rail carrier providing transportation subject to the jurisdiction of the Board under this part who intends to— (A) abandon any part of its railroad lines… must file an application relating

18   thereto with the Board. An abandonment or discontinuance may be carried out only as authorized under this chapter."

19   [17] *National Wildlife Fed'n v. ICC*, 850 F.2d 694, 704 (D.C.Cir.1988) (the STB must issue

20   a valid certificate of abandonment before state law may cause railroad right-of-way easements to be extinguished or transferred); *Louisiana & Arkansas Ry. v. Bickham*, 602

21   F.Supp. 383 (M.D.La.1985) *aff'd* 775 F.2d 369 (5th Cir.1985) (49 U.S.C. § 10903 prohibits an interstate rail carrier from abandoning a line without ICC [now STB]

22   approval); *National Assoc. of Reversionary Property Owners ("NARPO") v. STB*, 158 *F.3d 135, 137 (D.C. Cir 1998)* (A railroad cannot abandon or discontinue use of a railroad

23   corridor without the STB's approval); *See Capreal v. U.S.*, 99 Fed. Cl. 133, 135-36 (2011) ("When a railroad abandons a line through … these procedures, federal regulatory

24   jurisdiction ends and state property law then controls the disposition of the right-of-way.").

25   [18] See *BNSF Ry. Co. – Abandonment Exemption – in King Cnty., WA*, 2014 WL 7405859, STB Docket No. AB-6 (Sub. No. 465X) Slip Op. at *2 (Dec. 30, 2014).

---

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 7

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE, (206) 398-5000
FACSIMILE, (206) 398-5499

indefinitely stayed the abandonment proceedings until King County terminates the trail

use agreement it negotiated with BNSF. 49 C.F.R. § 1152.29(d)(2012); *Barclay v. United*

*States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006). Because the abandonment proceedings are

stayed, and because the STB has not authorized the corridor to be abandoned, the

easements continue to exist and cannot have been abandoned or extinguished.

### 1. Plaintiffs represented to the Court of Federal Claims that the Trails Act blocked the reversion of the entirety of BNSF's original easement rights.

Plaintiffs know that BNSF's easements were not abandoned or extinguished

during the railbanking process. One of Plaintiffs' briefs in *Haggart* explained (and

underlined) everything that this Court needs to deny Plaintiffs' motion:

> It is the NITU that empowered the subsequent use as a public trail
> outside the scope of the railroad purposes easement, and
> simultaneously stopped the state law extinguishment effect that
> such use **would have had**, but for the NITU, and it is that
> empowerment for use outside the scope (which by state law **would
> have** fatally destroyed and **extinguished** the entire easement) that
> worked the taking. The NITU did not block *part of* the
> "reversionary" interest, it blocked *all of* the landowner's
> "reversionary" interest. Thus, the government is obligated to pay
> for all of the "reversionary" interest to unencumbered land the
> landowner had on the date of the NITU, and that is what must be
> valued.
>
> Moreover, Washington law compels the same conclusion as that
> reached in the cases cited above, namely that the railroad easement
> *would have terminated* under state law in these circumstances,
> *absent the NITU*.

Armstrong Decl., Exh. 3 at p. 45 (bold in original, italics added).[19]  Plaintiffs affirmatively

asserted that the Trails Act didn't just block *part of* the reversionary interest, it blocked *all*

*of it*. *Id.*

---

[19] Plaintiffs' Memorandum in Support of Subclass Two Plaintiffs' Motion for Partial
Summary Judgment on Liability and on the Proper Methodology to Determine the

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 8

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE. (206) 398-5000
FACSIMILE. (206) 398-5499

2. **The Trails Act preserves the original railroad easements by preempting state laws that would extinguish the easements and cause the property rights to revert to the abutting property owners.**

The Trails Act[20] preempts state laws that would otherwise extinguish a railroad easement when rail operations cease, and preserves the easement for future railroad use. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990) ("*Preseault I*"); *Toscano v. U.S.*, 107 Fed. Cl. 179, 183-84 (2012) ( explaining railbanking process and federal preemption of state abandonment laws). When right-of-way is railbanked, the Trails Act directs that "such interim [recreational trail] use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). After railbanking, the railroad easement remains fully enforceable and available for use while the property is used as a recreational trail. Trail use is deemed "'interim' because the corridor may be returned to active railroad use at any time in the future." *NARPO,* 158 F.3d at 138 n. 5 (citing *Birt v. STB,* 90 F.3d 580, 583 (D.C.Cir.1996)); *Farmers Co-op. Co. v. United States*, 98 Fed. Cl. 797, 799 (2011).

---

Amount of Just Compensation at p.45, (submitted in *Haggart v. U.S.*, Case 1:09-cv-00103-CFL, Dkt. No 89), attached hereto as Armstrong Decl., Exh. 3.

[20] Section 12(d) of the Trails Act (16 U.S.C. § 1247(d)) provides, in relevant part:

> … to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 9

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

The Surface Transportation Board affirmed this principle when it approved BNSF's transfer of its freight reactivation right to King County. *See King Cnty., Wa-- Acquisition Exemption--B.N.S.F. Railway Company*, 2009 WL 2979430,*2, STB Fin. Dkt. No. 35148 (Sept. 17, 2009)("a railbanked line is not abandoned, but remains part of the national rail system, albeit temporarily unused for railroad operations. An interim trail use arrangement is subject to being cut off at any time by the reinstitution of rail service. If and when a railroad wishes to restore rail service on all or part of the property, it has the right to do so, and the trail sponsor must step aside.").

The Trails Act railbanking process did not extinguish BNSF's original easement rights. The easements continue to exist fully intact and can be used by Sound Transit.

**C.     After railbanking, the original railroad easement continues to burden Plaintiffs' property and coexists with a new trail use.**

When a railroad corridor is railbanked, the right-of-way is burdened with:  (a) the original railroad easement, and (b) a new interim trail use.  Otherwise, the Trails Act's primary purpose of preserving the original railroad easement rights for future railroad use is not achieved.

None of the *takings* cases cited by Plaintiffs support its positon that the original easement rights are destroyed. Plaintiffs cite cases holding that easements *would have been* extinguished under state law *but for* the Trails Act.  But none of these cases address the scope of the railroad easement rights preserved by the Trails Act and how the easements can be used while the *right-of-way* is used as a trail (or not used for freight). The cases do not discuss this issue because it was not litigated and because the Trails Act is clear that all of the original easement rights are preserved. There are only a few published decisions that squarely address how the railroad easements can be used after railbanking, and they seem to be the few cases that Plaintiffs do not cite.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 10

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In *Illig v. U.S.*,[21] the primary issue was the legal status of a 90-year old third-party utility sub-easement granted by the railroad.  The court noted that "It was the intent of the Trails Act to ensure that [trail operator] had the same rights in its easement that [original railroad] held, and that consequently, in determining the value of the easement imposed on plaintiffs by the government, we must include the value of [trail operator's] authority to grant licenses to [utility] and other utilities, at least insofar as they are embraced by railroad use." *Id.* at 632.

Having established that the railbanking process resulted in the trail operator receiving and having the current ability to utilize all of the original easement rights held by the railroad, the *Illig* court articulated the analytical framework that also applies here:

> In order to determine the extent of the rights currently held by [trail operator], we must sort out the rights originally held by [railroad] under state law.
>
> * * *
>
> It thus appears that under Missouri law a railroad company holding an easement for railroad purposes across a piece of property held in fee by another has the right to grant a license to a utility company so long as the utility has some connection to a railroad purpose. <u>We believe that this right, once held by [railroad], is now held by [trail operator] by operation of the Trails Act, consistent with the intent to preserve the Carondelet Branch for future railroad use.</u> The value of the new easement imposed on plaintiffs' property by operation of the Trails Act must therefore take this authority into consideration.

---

[21] *Illig v. U.S.*, 58 Fed. Cl. 619 (2003).

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

*Id.* at 633-34 (emphasis added).[22]

Thus, railbanking preserved all of BNSF's original property rights, and the passenger rail rights are available for use by Sound Transit, the current owner of those rights. *Illig* also recognized that the value of the railroad easement rights preserved by blocking the owner's reversionary interest should be reflected in the compensation paid to the property owners in the associated inverse condemnation takings case.  Here, Plaintiffs' compensation specifically included compensation for future passenger rail service. *Haggart v. U.S.*, 108 Fed.Cl. 70, 96 (2012).

### 1. The *Haggart* decision recognized the continuing existence of BNSF's original easement rights, including future passenger rail service.

In Plaintiffs' inverse condemnation lawsuit, Judge Lettow agreed with the Plaintiffs and ruled that the measure of takings damages was the difference between the value of Plaintiffs' property unburdened by the railroad easement (before taking value) and its value with trail use and the original freight and passenger railroad easement rights that were preserved in the railbanking process (after taking value).[23]

Plaintiffs were adequately compensated for the continued existence of the railroad easements with a $32 million settlement of their inverse condemnation claim.  When each Plaintiff purchased the abutting property, the sale price was lower because the property was burdened by a 100-year old railroad easement. And when the Trails Act blocked the

---

[22] *See also Thomas v. U.S.*, 106 Fed. Cl. 467, 488-89 (2012).  In *Thomas*, the railroad retained the right to reinstitute passenger rail service, but such rights were contractually subordinate to the trail user's trail rights.  The *Thomas* court stated "CSXT's transfer of the corridor affirmatively precludes [passenger] railroad operations along the corridor without permission of the non-railroad third party trail operator should these operations interfere with trail use, **or** until the STB, under the Trails Act, decides to reactivate rail service, abandon the property, or otherwise exercise its jurisdiction over the corridor."  This statement recognizes that passenger rail service can be activated without STB authorization and is a function of the property rights between the trail operator and the entity holding the passenger rail rights.

[23] *Haggart v. U.S.*, 108 Fed.Cl.at 96.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 12

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1  reversion of *all of* the railroad easement rights, Judge Lettow ordered that the adjacent

2  property owners be compensated for the reduced value of their property attributable to the

3  continued existence of railroad easements and the interim trail use. *See Haggart* at 96

4  (listing the three components of the after condition for which plaintiffs were

5  compensated). Plaintiffs paid less to buy their property because it was burdened by

6  railroad easements and were recently paid the value of their continued existence because

7  the easements were not extinguished. They cannot now claim that easements for which

8  they have been compensated no longer exist.

9

10     **D.**     **Sound Transit's easement is not limited to surface rights – the easement
           includes the right to use the non-mineral subsurface and reasonable
11          airspace as necessary to construct and operate passenger rail service.**

12

13          Railroad track must be constructed so that it is relatively straight and flat, and

14  when it is necessary for the track to climb or descend, the track must be constructed so

15  that it does so at relatively low gradients. Sleavin Decl., ¶ 9. The elevation of the track

16  relative to the surface at any location is determined in part by the geotechnical conditions

17  in the area and the terrain in both directions. *Id.* For a section of track to overcome a hill,

18  the track leading to the hill may begin at-grade (meaning on the surface) and then

19  transition to an elevated track so that it can utilize a low gradient to eventually overcome

20  the hill, at which point it may again transition to an at-grade track. *Id.* Or a hill could be

21  overcome by tunneling through it. *Id.* Similarly, if good engineering requires a bridge

22  over an intersecting road, a body of water, or other obstacle, the approaches to the bridge

23  on both sides would require segments of an elevated track or an elevated track bed. *Id.*

24          It has always been the case that railroad easements allow the construction and

25  placement of railroad facilities on, over, and through property as required by sound

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 13

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

engineering principles.  Plaintiffs cannot reasonably dispute that Sound Transit's
passenger rail easement encompasses the right to build, operate, and maintain passenger
rail track and facilities that are consistent with good engineering practice, and which may
in some locations be (or have components such as foundations or communications,
signaling, or overhead catenary systems that are) below the surface, on the surface, or
elevated from the surface. An easement for railroad purposes necessarily includes the right
on the part of the easement holder to penetrate the surface of the railroad corridor to the
extent necessary to install the track system over which the rail cars and locomotives will
run.  An easement for railroad purposes is without value without the right to build the
tunnels, trestles, elevated track, and overhead powers lines necessary to operate the
railroad.

This obvious result is summarized in a law review article that has been cited by the
Washington Supreme Court (*see Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban
Lines Ass'n*, 156 Wn.2d 253,273, 126 P.3d 16, 26-27 (2006)):

> Undoubtedly, railroads have the right to construct the railroad itself
> in the easement and may also construct any appurtenances
> necessary to the operation of that railroad, such as depots, elevated
> roadbeds, station buildings, water tanks, machine shops, side tracks,
> and turnouts.  Most of these structures have foundations well below
> the surface of the corridor.  Where railroads need land thousands of
> feet deep—such as tunnels burrowed through mountains—they
> have always had a right to use and occupy it.

Wright & Hester, *Pipes, Wires, and Bicycles: Rail-to-Trails, Utility Licenses, and the
Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*,
27 Ecology L.Q. 351, 411 (2000)(internal state, federal, and U.S. Supreme Court citations
omitted). A copy of this article is included as Armstrong Decl., Exh. 4.

The plain language of the original BNSF easements also support this position.
They permit "construction, operation and maintenance...over, across, and through" the

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 14

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

burdened properties.[24] The plain meaning of these words permits the construction of rail facilities as reasonably necessary that are below the surface ("through"), on the surface ("across"), or elevated from the surface ("over").

As owner of the original easements, Sound Transit's passenger rail rights also include the right to run different types of passenger rail, including commuter rail or light rail, both of which are used to transport passengers in vehicles running on steel railroad tracks. Sleavin Decl., ¶ 11.  The primary difference between commuter rail and light rail relevant to this motion is that light rail vehicle trains run on electricity rather than using large diesel engines. *Id*. Light rail trains are fully within the original railroad purposes easement because electrically powered trains were used when the original easements were created in the late 1890s and early 1900s.  For example, from ~1911 to the 1950s, the Pacific Electric Railway operated electric trains over as much as 1000 miles of track throughout southern California.[25]  Overhead catenary lines have powered freight and passenger railroads from the 1800s to present day high-speed trains such as the Amtrak Acela connecting Washington D.C and New York.[26]  Sound Transit has the same right to install the facilities and overhead lines necessary for the electrical power system to operate the light-rail trains.  Even if electric trains had not been used when the easements were created (they were), light-rail would be a permitted railroad purpose just as railroad purposes easements permitted the transition from steam to diesel locomotives; light-rail reflects the natural and current evolution of train technology—or an updated return to the

---

[24] *See*, e.g., Plaintiff's Motion at 10:7-11 ("The Lake Washington Belt Line Deed specifically states that it is 'for the construction, operation and maintenance' of the railroad, [sic] is limited to the railroad's right-of-way <u>over, across and through the grantor's land</u>…") (emphasis added).

[25] *See,* Armstrong Decl., Exh. 5 (Map of Pacific Electric Railway).

[26] *See,* Armstrong Decl., Exh. 5, 6, 7, and 8 (photographs of Pacific Electric locomotive "Juice Jack" ~1928-1958,  and Amtrak Acela 2011, historical article on electric locomotive use in the U.S., and electric locomotive use in the Cascades in 1910).

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 15

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

ubiquitous electric trolleys operating in Seattle in the 1920s. *See Lawson v. State*, 107 Wn.2d 444, 450, 730 P.2d 1308, 1312 (1986) ("In determining the meaning of a grant, it will be inferred, in the absence of express language to the contrary, that the grantee is not restricted to the methods of use which were current at the time of the grant.); *See, also,* Wright & Hester, *supra*.

**E.      Surface Transportation Board Rulings confirm that the original easement rights survive in their entirety, and are neither temporarily nor permanently destroyed.**

The STB's role in reactivating railroad operations on a railbanked corridor is limited to supervising *freight* rail reactivation. When a railroad files a request with the STB to resume freight operations, the STB determines whether there is adequate freight demand and whether the railroad is ready, willing and able to restore and operate the railroad—including compensation for use of the right-of-way. If so, the only order issued by the STB is an order vacating the interim trail use.  *See*, e.g., *Georgia Great So. Division – Aban, & Discon. Of Service*, STB 2003 WL 21132515, Dkt. No. AB-389 (Sub-No. IX) (May 9, 2003) (authorizing reactivation by ordering "The notice of interim trail use is vacated.").

The Surface Transportation Board's reactivation orders do not define the scope of the easement rights available to the reactivating railroad because the STB does not have the authority to *create* and define new state law railroad easements.  The reactivating freight railroad must own (or purchase from the owner of the right) the right to the easements that were "preserv[ed] for possible future railroad use" by the Trails Act. *Preseault I*, 494 U.S. at 5. The STB recently applied this principle when it denied Ballard Terminal Railroad the right to reactive freight service in this corridor in part because it

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 16

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1  could not afford to compensate King County for use of the freight reactivation rights the

2  County purchased from BNSF.[27]

3  **F.   Sound Transit can construct and operate passenger rail without STB**

4        **approval because the STB has no jurisdiction over passenger rail.**

5        Even though Sound Transit owns fee title or easement rights to operate commuter

6  and light rail throughout the majority of the 38- mile right-of-way, Plaintiffs assert that

7  Surface Transportation Board approval is required to construct and operate passenger rail.

8  STB approval is not required because passenger rail operated by a local government is

9  specifically excluded from STB jurisdiction. *See,* 49 USC § 10501(c)(2)(A).

10        STB decisions confirm that the STB does not regulate non-freight interim uses of a

11  railbanked corridor, and that the STB does not require passenger rail operators to seek its

12  approval to operate on railbanked right-of-way.  For example, in *Baltimore and Ohio*[28],

13  the trail sponsor agreed to allow part of the railbanked right-of-way to be used for light

14  rail.  Alleging that light-rail would interfere with the recreational trail and make it

15  impractical to resume freight service, plaintiffs therein asked the STB to either prohibit

16  light rail on the right-of-way or to vacate the certificate allowing the trail use.  The STB

17  did neither.  Instead the STB ruled that it did not have the authority to regulate the use of

18  the right-of-way or "police trail use agreements."[29] The STB dismissed the petition and

19  explained that its authority is limited to ensuring that the trail sponsor assumes legal and

20  financial responsibility for the right-of-way and agrees to maintain it so that it can be

21  restored and used for railroad purposes.[30][31]  The track can be removed and changes can be

22  ───────────────────────

[27] *See, BNSF Ry. Co. – Abandonment Exemption – in King Cnty., WA,* 2014 WL 7405859,

23  STB Docket No. AB-6 (Sub. No. 465X) Slip Op. at *6 (Dec. 30, 2014).

[28] *Baltimore and Ohio R. Co, – Abandonment and Discont. Of Ser. – In Montgomery*

24  *County, MD and the Dist. of Columbia,* 1990 WL 287371, ICC Dkt. No. AB-19 (Sub-No. 112) (February 22, 1990) ("*Baltimore and Ohio*").

[29] *Id.* at 3.

25  [30] *See,* 16 USC §1247(d); 49 CFR §1152.29

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 17

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

made to the right-of-way to permit other uses "…so long as the property remains available for reactivation of rail service."[32] "While we retain jurisdiction over the right-of-way to ensure that the statutory criteria are met, we have no other regulatory responsibilities over the interim [light rail] use of the property."[33]

If a third party were to challenge Sound Transit's proposed light rail use (as happened in *Baltimore and Ohio*), the sole question for the STB under the Trails Act would be whether Sound Transit's proposed light rail or commuter rail use precludes restoration of freight service. Because Sound Transit's high-capacity easement rights are expressly subject to the right to operate freight service in the right-of-way (*see* FN12), the STB would dismiss the petition without ruling because it has "never asserted jurisdiction over the ability of railroads to allow non-carriers to conduct non-jurisdictional activities, such as rail commuter service, on their excess real estate when regulated rail service will not be affected thereby." *S. Pac. Transp. Co.-Abandonment Exemption-Los Angeles Cnty., Ca.*, 1993 WL 54669, 91 I.C.C.2d 385, 390 (Feb. 12, 1993).

In addition to the STB's disavowal of authority to regulate use of the railbanked corridor and the easement rights preserved during railbanking, an important aspect of the decision is what the STB did not do in *Baltimore and Ohio*. A Trails Act regulation directs the STB to vacate the certificate allowing interim trail use if a railroad files a request to use the right-of-way.[34] Even though the corridor was to be used for a railroad purpose (light rail), the STB neither vacated the trail use certificate nor invoked the regulations to direct the parties to return at the appropriate time to vacate the trail use and

---

[31] *See*, STB Notice of Interim Trail Use issued to King County, Dkt No. 46, Exh. B.
[32] *Gnp Rly, Inc.--Acquisition & Operation Exemption--Redmond Spur & Woodinville Subdivision*, 2011 WL 2421150, Fin. Dkt. No. 35407, at *3 (June 15, 2011) (installation of sewer trunk line); 49 C. F. R. § 1152. 29(a)(3); 1152. 29(d)(1)
[33] *Baltimore and Ohio R. Co.*, 1990 WL 287371 at *3.
[34] *See*, 49 CFR §1152.29(c)(3) and (d)(3).

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 18

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

seek approval to operate light rail.[35] Instead, the STB dismissed the petition knowing that light rail would be constructed and coexist with the trail use. The STB could resolve the case by dismissal without any reference to vacating the interim trail use only if STB approval is not required to operate passenger rail. The ruling makes clear that the operation of passenger rail is determined by the agreements between the owner of the easement rights and the trail sponsor, not by the STB.

In this case, Sound Transit (easement owner) and King County (trail sponsor) have agreed how and where passenger rail and freight rail can operate in the right-of-way. This Court should adopt the STB's consistent position that STB approval is not required to operate passenger rail on railbanked right-of-way.

Plaintiffs' argument that STB approval is required also conflicts with the STB's many "State-of-Maine" rulings that it lacks jurisdiction over the transfer and use of property rights whose only impact is to permit local governments to use railroad right-of-way to operate passenger rail.[36] For this reason, the STB dismissed a petition requesting its

---

[35] The STB likely did not reference 49 CFR §1152.29(c)(3) and (d)(3) because the regulations necessarily only apply to rail carriers engaged in freight operations subject to the STB's jurisdiction. The failure to reference the regulations in connection with a case involving passenger rail reflects the STB's practice of not exercising jurisdiction over passenger rail. Unless freight operations subject to STB jurisdiction are implicated, the STB takes no action, including not acting to vacate a trail certificate. Had the proposed use been by a freight railroad, the STB would have been required by the regulations to vacate the trail use, to the extent such trail use was inconsistent with the freight railroad operations. *See, Georgia Great So.*, WL21132515 (vacating trail use for freight reactivation).

[36] *See, State of Maine, Dep't of Transp.-Acquisition & Operation Exemption-Maine Cent. R.R. Co.*, 1991 WL 84430, 8 I.C.C 2d 835 (May 20, 1991)(no jurisdiction over sale of property right to government for commuter rail operations if railroad retains common carrier freight rights and obligations). *Los Angeles Cnty. Transp. Comm'n—Petition for Exemption--Acquisition from Union Pac. R.R. Co.*, 1996 WL 408632, STB Fin. Dkt. No. 32374, at *4 (July 11, 1996) (no jurisdiction over sale of property rights to operate commuter rail where no interference with common carrier rights and obligations); *State of Wisconsin Dep't of Transp.-Petition for Declaratory Order*, 2002 WL 1767404, STB Fin. Dkt. No. 34181, at *2 (July 30, 2002).

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 19

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

approval when BNSF sold all its property to the Port, except for the common carrier freight obligations.  After noting that the sale of property rights allowed the Port to permit passenger rail service on the right-of-way, the STB held that the "transaction does not require Board approval, and we will not exercise jurisdiction over it."  *The Port of Seattle--Acquisition Exemption--Certain Assets of B.N.S.F. Railway Co*,  2008 WL 4718447, STB Fin. Dkt. No. 35128, at *4 (Oct. 23, 2008). [37]

Because the STB does not have jurisdiction over passenger rail operated by a local government, and because the STB dismisses petitions seeking its approval, the Court should deny Plaintiffs' motion to require Sound Transit to get approval it knows cannot be obtained.

**G.**     **Plaintiffs misstate the effect of the numerous Trails Act takings cases. The cases do not decide the legal status of the easement preserved for a future railroad purpose**

While the Court believed that "Plaintiffs are not arguing that BNSF abandoned the railway corridor, in the technical sense of an abandonment that would trigger reversion under state law," (Dkt. No. 59 at 7:12-13), Plaintiffs devote nearly nine pages to that claim, supporting it with quotes taken out of context from cases that do not apply.

First, Plaintiffs argue that if the easements aren't extinguished there could never be a taking. Almost every case that Plaintiffs cite explicitly holds that the opposite is true. For example, in *Toscano v. U.S.*, the court explained that the Trails Act's interference with state law reversionary property interests is the taking of private property that requires just compensation under the Fifth Amendment. *Toscano v. U.S.*, 107 Fed. Cl. 179, 183-84

---

[37] In *Haggart*, Judge Lettow also understood the STB's limited role by distinguishing "future railway use by way of reactivation" for freight from "possible future development of a commuter rail line."  Had freight and passenger rail not been unique, there would have been no need to separately identify them.

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 20

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

(2012) *citing Caldwell v. United States*, 391 F.3d 1226, 1228–29 (Fed.Cir.2004). Plaintiffs also explained this very concept to Judge Lettow (*see* Armstrong Decl., Exh. 3 at p. 45) but now appear to argue the exact opposite.

Second, Plaintiffs cite Fifth Amendment cases holding that railbanking is not a railroad purpose to argue that BNSF's easements no longer exist. Sound Transit agrees that railbanking is not a railroad purpose under Washington law. But because the Trails Act preempts state law abandonment rules (16 U.S.C. § 1247(d)), the fate of the easements under Washington law is relevant only to determine whether the application of the Trails Act caused a Fifth Amendment taking by blocking the extinguishment and reversion of the easements to the abutting owner. *Preseault I*, 494 U.S. at 5. The *Haggart* decision answered the takings question in favor of the Plaintiffs, but what would have happened under state abandonment law is not relevant to the issue of what easement rights remain after the taking. The purpose of the Trail Act is to preempt state law reversion and abandonment, not carry it out. It is axiomatic that the federal government would not pay to preserve railroad easements that no longer existed.

Third, Plaintiffs' citation to 22 cases for the proposition that "numerous other cases hold that the railroad easement is abandoned upon a change in use" (Plaintiffs' brief at 25:13-14) is simply inaccurate. This argument conflicts with the plain language of the Trails Act and the federal preemption doctrine. Instead, the cases hold that under state law, a change in use to a recreational trail <u>would have</u> extinguished the easement and vested the reversionary interest in the abutting owner. But because the Trails Act preserves the easement and blocks the reversionary interest from vesting in the owner, a Fifth Amendment taking occurs. *See*, e.g., *Toscano* v. U.S., 107 Fed. Cl. 179, 183-84 (2012) *citing Caldwell v. United States*, 391 F.3d 1226, 1228–29 (Fed.Cir.2004). These

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 21

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

decisions do not address or attempt to define the permanent railroad easement rights that are preserved for future rail use.

Fourth, Plaintiffs repeatedly argue that BNSF's original railroad easement has been converted or replaced with a trail easement. In analyzing the effect of state law, court's sometimes say that a rail easement has been replaced or converted to a trail easement. This language reflects the court's factual finding that the *present use* to which the corridor is devoted has changed from a railroad purpose to a recreational trail. In many cases, that factual finding is necessary to the court's state law determination of whether the rail easement would have been extinguished for misuse under state law because a trail is not a railroad purpose. Plaintiffs mischaracterize this language as legal conclusions about the easement rights preserved under the Trails Act, whose purpose is to preserve and not destroy rail easements.

Finally, Plaintiffs rely heavily on *Macy Elevator v. United States*, 105 Fed. Cl. 195 (Fed. Cl. 2012). *Macy Elevator* is no different from the third and fourth arguments discussed above. The issue in *Macy Elevator* was how to determine the property value 'before' the taking in order to compare it to the value 'after' the taking—the difference is the compensation due the owner. The federal government argued that under Indiana law the "railroad purpose easements are not abandoned when they are 'railbanked' under the Trails Act or transferred to a trail operator to be used as a recreational trail subject to reactivation as a railroad." *Id.* at 198. The court rejected that argument and concluded that the 'before' value was the value unencumbered by a railroad easement because the easement would have been extinguished. Fortunately, *Macy Elevator* does make it clear that the railroad rights were railbanked for future use and were not permanently extinguished:

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 22

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

> Given the Indiana Supreme Court's recent holding that "railbanking" and recreational trail use as authorized by the NITU do not qualify as "railroad purposes" in Indiana, the trail use agreement between the trail operator and the railroad pursuant to the Trails Act, **and the subsequent authorization of [1]"railbanking" and [2]trail use in the NITU**, violate the purpose for which these determinable easements were granted. As a matter of Indiana law, the easements automatically reverted to the underlying landowners. The continued imposition of the recreational trail easement authorized by the NITU "blocked" plaintiffs' "state law reversionary interests" in the determinable railroad purpose easements. For the purposes of determining just compensation, therefore, plaintiffs' properties must be valued in their "before" status as unencumbered land.

*Id.* at 201 (emphasis and numbering added). *Macy Elevator* illustrates the difficulty in using Trails Act *takings* cases that do not address the property rights that remain available for use after railbanking. None of the cases Plaintiffs cite are relevant to the issue of what easement rights remain available for use by the holders of those rights when a rail corridor is railbanked.

## IV.   CONCLUSION

This motion is not simply about clarifying the property rights abutting Plaintiffs' property. It is also about Sound Transit's right to use 100-year-old railroad easements as intended to restore passenger rail service—a right for which Plaintiffs have been fully compensated. Plaintiffs seek a declaratory judgment that would extinguish the original railroad easement rights that Sound Transit needs to build the facilities required for East Link (i.e., elevated track, overhead catenary lines, and tunnels) or to potentially expand the system south along Lake Washington.

The motion should be denied because the Trails Act unambiguously preserved the original easements that permit passenger and freight rail now and in the future. The Trails Act preempts "any law" that impairs the original easement rights, including state law

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 23

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

reversion and abandonment rules that would otherwise extinguish the easement in the absence of the Trails Act preemption clause.  Plaintiffs know, and told Judge Lettow, that the Trails Act blocked all of the reversionary interest in the railroad easements from vesting in the abutting property owners and not just part of it. Plaintiffs should be held to the position they argued to Judge Lettow—the original easement rights are fully preserved for future use.

The cases that address the issue (*Illig v. U.S.* and *Baltimore and Ohio*) hold that the original easements survive intact and can be used to implement passenger rail without STB approval. The third component of Plaintiffs' requested declaration should be denied.

DATED this 2nd day of February 2015.

By: _____

Desmond L. Brown, WSBA # 16232
Loren Armstrong, WSBA # 33068
Attorney for Sound Transit

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 24

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1

## CERTIFICATE OF SERVICE

2      I do hereby certify under penalty of perjury under the laws of the State of

3  Washington that on February 2, 2015, the foregoing was filed electronically with the

4  Clerk of the Court to be served by operation of the Court's electronic filing system upon

5  all parties of record:

*Attorneys for Plaintiffs*:
6  Thomas S. Stewart
   Elizabeth McCulley
7  Laura J. Bettenhausen
8  BAKER STERCHI COWDEN & RICE, LLC
   2400 Pershing Road, Suite 500
9  Kansas City, MO 64108
   stewart@bscr-law.com
10 mcculley@bscr-law.com
   bettenhausen@bscr-law.com
11

12 Daryl A. Deutsch
   Rodgers Deutsch & Turner, PLLC
13 Three Lakes Bellevue Drive
   Bellevue, WA 98005-2440
14 daryl@rdtlaw.com

15 *Attorneys for Defendant Port of Seattle*:
16 Timothy G. Leyh
   Randall Thomsen
17 Kristin Ballinger
   CALFO, HARRIGAM, LEAKES, LLP
18 999 Third Avenue, Suite 440
   Seattle, WA 98104
19 timl@calfoharringan.com
   randallt@calfoharrigan.com
20 kristinb@calfoharrigan.com

21 *Attorneys for Defendant King County*:
   Andrew W. Marcuse
22 David J. Hackett
   King County Prosecuting Attorney, Civil Division
23 500 4th Avenue, Suite 900
   Seattle, WA 98104-5039
24 andrew.marcuse @kingcounty.gov
   david.hackett@kingcounty.gov

25

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC- 25

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1    *Attorneys for Defendant Puget Sound Energy*:
     Gavin W. Skok
2    Bryan J. Case
     Courtney L. Seim
3    James E. Breitenbucher
     RIDDELL WILLIAMS PS
4    1001 – 4th Avenue, Suite 4500
     Seattle, WA 98154-1065
5    gskok@riddellwilliams.com
     bcase@riddellwilliams.com
6    cseim@riddellwilliams.com
     jbreiten@riddellwilliams.com
7
8
9    Dated this 2nd day of February 2015 at Seattle, Washington.

10   s/Ruby Fowler
11   Ruby Fowler, Legal Secretary
     Central Puget Sound Regional Transit Authority
12   Tel: 206-398-5154; email: ruby.fowler@soundtransit.org

13

14

15

16

17

18

19

20

21

22

23

24

25

SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR DECLARATORY JUDGMENT
No. 2: 14-CV-000784-JCC - 26

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499