THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, ET AL, | NO. 2:14-CV-000784-JCC |
| Plaintiffs, | PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT |
| vs. | |
| PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, | |
| Defendants. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page i

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II.  ALL OF THE DEFENDANTS' "STRAW MAN ISSUES" MUST BE REJECTED
BECAUSE OF OVERWHELMING FEDERAL AND STATE LAW PRECEDENT.......3

    A.  The Defendants' Schizophrenic Response First Admits that Railbanking is
Not a Railroad Purpose, But then Says that the Railroad Easement Still
Exists, When the Railroad Easement has Clearly Extinguished Under both
Federal and State Law.......................................................................................4

    B.  Under Federal Precedent, the Railroad Purposes Easement is Extinguished
but the Physical Characteristics Remain for Railbanking Purposes .................7

    C.  State Law Defines the Property Rights After the Taking ...............................12

III.  THE KITTINGER DEED CLEARLY CONVEYS AN EASEMENT LIMITED TO
RAILROAD PURPOSES ....................................................................................16

IV.  SOUND TRANSIT'S PROPOSED TRANSPORTATION USE CANNOT NOW BE
IMPOSED ON PLAINTIFFS' LAND UNLESS SOUND TRANSIT EXERCISES
ITS EMINENT DOMAIN POWERS UNDER WASHINGTON LAW ..........................21

V.  CONCLUSION...................................................................................................25

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**TABLE OF AUTHORITIES**

*Beres v. United States*, 97 Fed. Cl. 757 (Fed. Cl. 2011) ........................................ 19-21

*Biles v. Tacoma*, 32 P. 211 (Wash. 1893) ........................................................17

*Brown v. State*, 924 P.2d 908 (Wash. 1996) ................................................. 16-17

*Dana R. Hodges Trust v. United States*, 111 Fed. Cl. 452 (2013) ...............................12

*Haggart v. United States*, 107 Fed. Cl. 70 (2012) ........................................ 2, 9, 12-13

*Illig v. United States*, 58 Fed. Cl. 619 (Fed. Cl. 2003) ........................................11, 12

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*, 126 P.3d 16
    (Wash. 2006).................................................................3, 13, 15-20, 22, 24-25

*Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) ........................................4

*Lawson v. State*, 730 P.2d 1308 (Wash. 1986) ..............................3-4, 6, 15, 22-25

*Macy Elevator v. United States*, 105 Fed. Cl. 195 (Fed. Cl. 2012) ..............................6

*Morsbach v. Thurston County*, 278 P. 686 (Wash. 1929)..................................17, 19

*Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 111 P. 578 (Wash. 1910)..................17

*Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1(1990) ("*Preseault I*") ............................4

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*")............................4, 15

*Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011)..............................................9

*Reichenbach v. Washington Short Line Ry. Co.*, 38 P. 1126 (Wash. 1894) ...........................17, 21

*Roeder Co. v. Burlington Northern, Inc.*, 716 P. 2d 855 (Wash. 1986) ...........................17-18, 21

*Swan v. O'Leary*, 225 P.2d 199 (Wash. 1950)..........................................................17-18

*Veach v. Culp*, 599 P.2d 526 (Wash. 1979) ........................................................17

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page iii

## I.    INTRODUCTION

Following the Court's Order denying Defendants' Motion to Dismiss (Doc. 59), Plaintiffs filed their Motion for Declaratory Judgment on December 2, 2014 (Doc. 55). Plaintiffs' Motion for Declaratory Judgment sought a legal declaration on three points: (1) that the railroad originally acquired an easement; (2) that the easement was limited to railroad purposes only; and (3) that the railroad's easement has been converted to an easement for a recreational trail with the potential reactivation of a railroad by and through the Trails Act.

All of the Defendants filed separate responses.[1] The combined responses, declarations, and exhibits consist of 2,485 pages. Although the Defendants collectively killed a lot of trees, the individual responses from all of the Defendants,[2] even with significant and pervasive overlap, are not really responsive to the issues addressed in Plaintiffs' Motion for Declaratory Judgment.[3] The Defendants finally concede that 2 of the 3 original source conveyances to the railroad were easements (only attempting to attack the Kittinger deed), and that the original easements were limited to railroad purposes. But, instead of admitting that the original railroad purposes easements have been extinguished under the Trails Act, the Defendants still attempt to argue that

---

[1] Puget Sound Energy's response is Doc. 66; King County's Response is Doc. 67; Port of Seattle's Response is Doc. 72; and Sound Transit's Response is Doc. 73.

[2] The response from Sound Transit, Doc. 73, does address some unique arguments related to their purported use of the railroad corridor. The ultimate outcome, however, is still the same. *See* Section IV *infra*.

[3] The Defendants repeatedly refer to the significant sums they expended to effectuate their conspiracy to trample Plaintiffs' rights. *See* Sound Transit's Response, Doc. 73, at p. 1 ("The local government defendants collectively paid more than $80 million to buy and preserve… [the] railroad right-of-way through the federal railbanking process"); King County's Response, Doc. 67, at p. 2 ("Tens of millions of dollars in public money have been invested in this project… the primary goals are to develop a world class regional trail, provide public transportation, allow for appropriate utility services, and preserve the Corridor for possible future rail service"). The fact that Defendants expended substantial sums to inappropriately attempt to use the Trails Act to obliterate state law property rights owned by Plaintiffs makes the whole series of events even more untenable.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

Page 1

the railroad purposes easements still remain and/or have been "preserved" despite the reasoning within this Court's Order denying Defendants' Motion to Dismiss.

Although the Defendants now readily admit that railbanking is not a railroad purpose, they continue to argue that the railroad purposes easement still exists, which is wrong legally under both federal and state law, and ignores the obvious fact that a taking could not occur if the railroad purposes easement still existed, an issue that the Defendants ignore and fail to coherently address.  The important point, which the Defendants collectively miss, is that the railroad purposes easement was extinguished but the physical characteristics of its existence remain for railbanking purposes if rail freight is ever reactivated by the STB.  Finally, the ultimate point is that state law defines the present existing property rights after the taking and state law is clear that the trail operator acquired what the railroad originally owned, a surface easement which is now a surface easement for a hiking and biking trail.

Although the Defendants now admit that two of the original source conveyances to the railroad were easements for railroad purposes,[4] two of the Defendants now argue that the Kittinger deed conveyed a fee to the railroad rather than an easement for railroad purposes. Despite Judge Lettow's Opinion in *Haggart v. United States*, 107 Fed. Cl. 70, 80 (2012) that the Kittinger deed conveyed an easement for railroad purposes, which was based on over 100 years of precedent from the Washington Supreme Court, the Defendants refuse to accept that proper interpretation of the Kittinger deed.  *See* Section III *infra*.

---

[4] Besides the Kittinger deed, the other two applicable original source conveyances are the Lake Washington Belt Line deed and the State of Washington condemnation.  The Defendants now admit that they conveyed easements for railroad purposes only.  *See* King County's response, Doc. 67, at p. 16; Puget Sound Energy's response, Doc. 66, pgs. 2,-15.  For a discussion of the Kittinger deed, *see* Section III *infra*.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 2

Finally, Sound Transit not only argues that the railroad purposes easement still exists, but also argues that their intended light rail usage is a railroad purpose.  However, the railroad purposes easement does not exist anymore and it never was a perpetual public easement in the first place.  In short, Sound Transit's attempt to use the railroad corridor for a new transportation use can only be accomplished in compliance with the state law as enunciated in *Lawson v. State*, 730 P.2d 1308 (Wash. 1986) and *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*, 126 P.3d 16 (Wash. 2006).  *See* Section IV *infra*.

## II.   ALL OF THE DEFENDANTS' "STRAW MAN ISSUES" MUST BE REJECTED BECAUSE OF OVERWHELMING FEDERAL AND STATE LAW PRECEDENT

The Defendants, consistent with their previous Motion to Dismiss, continue to create mythical "straw man issues" and then spend all of their time and countless reams of paper attacking the mythical straw man issues that they alone created and this Court rejected.[5]  The loose usage of various property law concepts and terms, the basic misunderstanding of the railbanking process under the Trails Act, and the total misapplication of these federal law concepts upon state law property rights makes it almost impossible to coherently respond to the Defendants' responses.  The end result is that the Defendants' responses are not responsive at all to the issues raised in Plaintiffs' Motion for Declaratory Judgment and are contrary to federal law concerning the Trails Act and the "scope of a *former* railway easement that is now a

---

[5]  *See* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 4: "Defendants spend the majority of their Motion creating and attacking the *straw man issues* of abandonment and the current state of the railroad easement." (emphasis added).

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

recreational trail easement no longer in the hands of the railroad" or the "state property laws [that] dictate the nature of the property held by a railroad."[6]

### A. The Defendants' Schizophrenic Response First Admits that Railbanking is Not a Railroad Purpose, But then Says that the Railroad Easement Still Exists, When the Railroad Easement has Clearly Extinguished Under both Federal and State Law

The original railroad purposes easements involved in this case were converted to a recreational trail easement with the potential reactivation of a railroad as a matter of law by and through the Trails Act.  The Defendants' Motion to Dismiss argued that railbanking was a preservation of the railroad easement under the Trails Act and was a railroad purpose that did not exceed the scope of an easement granted for railroad purposes.  Since this entire argument has repeatedly been rejected and is totally worn out,[7] the Defendants now admit that railbanking is not a railroad purpose: "To the contrary, the County acknowledges that railbanking is not a 'railroad purpose' under Washington law, and that without the Act any railroad easements in the Corridor likely would have reverted back to adjacent property owners"[8]; and "Plaintiffs mistakenly argue that the Port claims that railbanking is "a railroad purpose."[9]

Despite now admitting that railbanking is not a railroad purpose, the Defendants attempt to vociferously maintain and argue that the railroad easements still exist by and through the Trails Act which only authorizes interim trail use/railbanking, which actually amounts to an argument that railbanking is a railroad purpose:

---

[6] *See* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 6, fns. 8, 9 (emphasis in original) (citing *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*"), 100 F.3d 1525; *Lawson*, 730 P.2d 1308).

[7] *See* Plaintiffs' Motion for Declaratory Judgment, Doc. 55, at pgs. 16-19; *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010); *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1(1990) ("*Preseault I*") at 17-18.

[8] *See* King County's Response, Doc. 67, at p. 13.

[9] *See* Port of Seattle's Response, Doc. 72, at p. 19.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

Page 4

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

- "Plaintiffs argue repeatedly in their motion that the railroad easements in the Corridor have been abandoned and extinguished… They seek a declaration that these easements no longer exist and have been somehow converted by the Act into mere surface easements for recreational trail use with the potential for reactivation of the railroad"[10];

- "Whether railbanking and interim trail use are railroad purposes is relevant only to whether each exceeds the scope of the railroad easement and a taking occurs; it has no relevance to whether the railroad easement still exists after railbanking"[11];

- "The necessary and logical underpinning of that holding is that the corridor — even while under interim trail use — was still available for 'transportation by rail carrier,' i.e., that a railroad easement still existed"[12]; and

- "Plaintiffs know that BNSF's easements were not abandoned or extinguished during the railbanking process."[13]

The Defendants' attempted arguments that the railroad purposes easement still exists are incredible.   In fact, the Defendants not only misinterpret numerous Trails Act cases but remarkably state that all of the binding authority to the effect that the railroad purposes easement is extinguished do not actually reach that result.[14]   Defendants are wrong.   These arguments are nothing more than a refrain of prior arguments made by the Defendants to the effect that the railroad purposes easement was not abandoned through the railbanking process, an argument

---

[10]   *See* King County's Response, Doc. 67, at p. 3 (citations omitted).

[11]   *See* Port of Seattle's Response, Doc. 72, at p. 19.

[12]   *See* Puget Sound Energy's Response, Doc. 66, at p. 4.

[13]   *See* Sound Transit's Response, Doc. 73, at p. 8.

[14]   *See* Sound Transit's Response, Doc. 73, at p. 26 ("Plaintiffs misstate the effect of the numerous Trails Act takings cases… First, Plaintiffs argue that if the easements aren't extinguished there could never be a taking.  Almost every case that Plaintiffs cite explicitly holds that the opposite is true."); Port of Seattle's Response, Doc. 72, at p. 7 ("Plaintiffs argue that this means the railroad easements are extinguished by the cases hold nothing of the sort").

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 5

already specifically rejected by this Court.[15]   Contrary to all of the Defendants' lame arguments, the railroad's easement extinguishes because of the change in use from railroad purposes to a completely different purpose, a hiking and biking trail use, under extensive and numerous authority in a myriad of federal cases and from the Supreme Court of Washington too.[16]   The reason that railway purposes easements terminate is because the Trails Act only authorizes the easement holder to change the use in a way that goes far beyond the purpose for which the easement was created, to a use for recreational trail purposes — this is basic property law that the Defendants herein simply fail to acknowledge.[17]

More importantly, however, the Supreme Court of Washington, in *Lawson*, specifically ruled that trail use exceeds a railroad purpose under Washington law and specifically held that "We hold that a change in use from 'rails-to-trails' constitutes abandonment of an easement which was granted for railroad purposes only."  *Lawson*, 730 P.2d at 1312-13 (emphasis added). The overwhelming federal authority on this topic and the *Lawson* opinion from the Supreme Court of Washington is totally dispositive that trail use/railbanking under the Trails Act exceeds the scope of the original railroad purposes easement under Washington law and that the change from railroad purposes to trails purposes extinguishes the original railroad purposes easements.

---

[15] *See* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 2 ("in railbanking, the railway effectively abandons the easement, but the Federal Trails Act preempts state abandonment and reversion doctrines, and the railway is allowed to transfer the easement to a state or local government that has agreed to maintain it for interim recreational trail us") (citing the Trails Act, 16 U.S.C. § 1247(d)).

[16] *See* Plaintiffs' Motion for Declaratory Judgment, Doc. 55, at pgs. 19-24.

[17] The Federal cases citing and relying on this basic principal of property law are too numerous to even cite. Plaintiffs cited and relied on *Macy Elevator v. United States*, 105 Fed. Cl. 195 (Fed. Cl. 2012) as support of this basic property law proposition and the Defendants made an ill-fated attempt to distinguish the reasoning behind the conclusion.   For a more thorough list of the 22 Federal cases so holding, *see* Plaintiffs' Motion for Declaratory Judgment, Doc. 55, at pgs. 20-21.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 6

### B. Under Federal Precedent, the Railroad Purposes Easement is Extinguished but the Physical Characteristics Remain for Railbanking Purposes

All of the arguments advanced by the Defendants that the railroad purposes easements continue to exist are really nothing more than another straw man argument[18] that they have some legal rights to use the <u>physical characteristics</u> of the railroad corridor beyond what state law property rights would allow.  The law is that the Trails Act interferes with the abandonment process, blocks the landowners' reversionary interests, extinguishes the railroad purposes easement, railbanking is not a railroad purpose that keeps the railroad purposes easement in place and, instead, a new easement is placed on Plaintiffs' property for a hiking and biking trail with the possible reactivation of a railroad.  Because railbanking exists under the Trails Act, the railroad corridor, <u>specifically the physical characteristics of the railroad corridor</u>, must be kept intact in case the railroad corridor is ultimately reactivated by the STB.  But, the Defendants' repeated arguments that the railbanking statute "preserves" the railroad purposes easement is nothing more than mere word-smithing in an attempt to create yet one more straw man.

The arguments set forth by all of the Defendants that railbanking "preserves" all rights and uses under the prior railroad purposes easement (which sound incredibly like "railbanking is a railroad purpose") take a variety of forms but are all misleading:

- "Ownership of the railroad easement rights allows King County, as the trail sponsor, to grant licenses in the form of special use permits that allow others to use the Corridor, to prevent unauthorized excavations and other activities in the Corridor, and to otherwise preserve the Corridor for possible

---

[18]  *See* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 5 ("second, Defendants make much of Plaintiffs' statements that the railway easement 'no longer exists.'… This is another straw man, rhetorically – focused argument that, again, would be relevant only if Plaintiffs were arguing that the full easement ought have reverted to them.  Instead, Plaintiffs argue, and are supported by Federal and State law precedent in doing so, that the present easements burdening their land are surface easements for recreational trail use").

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

reactivation."[19] — King County is inaccurate.  There are no railroad easement rights after the railroad purposes easement is extinguished, the corridor is indeed "preserved" for possible railbanking reactivation, and why would King County believe that they purportedly have rights that the railroad never possessed in the first place;

- "The Act treats railroad easements as valuable state law property rights that can be allocated and conveyed during the railbanking process or thereafter"[20] — No, the Trails Act does not do that, and the railroad purposes easement no longer exists, and the holder of the hiking and biking easement has no right to allocate or convey anything;

- "First, the plain language of the Act contemplates that railroad easement rights will continue to exist under railbanking"[21] — Again, incorrectly arguing that railbanking is a railroad purposes easement.  Railroad purposes easement rights no longer exist under the Trails Act and this amounts to a trampling over state property law rights;

- "The statute's stated purpose is 'to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation uses.  Plaintiffs' Motion asks the Court to declare that the statute had the opposite effect of eliminating the railroad right-of-way"[22] — The physical "preservation" of the right-of-way has nothing to do with the continuation of the railroad purposes easement and Plaintiffs' Motion has nothing to do with eliminating the physical characteristics of the right-of-way for later reactivation if it occurs;

- "Plaintiffs argue that this means the railroad easements are extinguished but the cases hold nothing of the sort.  Most of these decisions do not even address the issue presented here, which is defining the property rights that exist <u>after</u> the taking.  In those that do, the Courts hold that the statute <u>preserved</u> the rail easement while also allowing trail use"[23] — This is legally

---

[19] *See* King County's Response, Doc. 67, at p. 8.
[20] *Id.* at p. 9.
[21] *Id.*
[22] *See* Port of Seattle's Response, Doc. 72, at p. 7.
[23] *Id.*

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

wrong.  The cases absolutely hold that the railroad purposes easement has been extinguished, the property rights that exist after the taking will be discussed in Section II.C *infra*, and the railbanking statute merely prevents the land from reverting back to landowners and preserves the physical characteristics of the corridor in case reactivation ever occurs;

- "Plaintiffs' contention that the rail easement has been 'converted' into a trail easement is not based on the statute.  The statute's authorization to use the right-of-way as a trail does not convert any existing property right; it merely prevents the abandonment of that right — the opposite of Plaintiffs' contention"[24] — All Courts have held for over 20 years that the railroad purposes easement is "converted" to a trail/railbanked easement and, most importantly, it if wasn't converted and the railroad purposes easement still existed, no taking could occur because no reversionary rights would have been taken.  That is why the valuation in the takings cases is unencumbered in the before and encumbered in the after with a trail/railbanking easement.  In fact, the Department of Justice tried the same approach over and over again that is being attempted here and it has been repudiated by every federal judge who has analyzed the issue.  *See, e.g. Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011).  The railroad purposes easement is definitely converted into a hiking and biking trail easement, the trail easement obviously converts the existing railroad purposes easement to a hiking and biking trail easement, and the state law property rights created after the conversion will be discussed in Section II.C *infra*;

- "The *Haggart*" Court concluded this analysis (rejecting the argument that trail use/railbanking are railroad purposes) by stating that the railroad easement continued to exist after the creation of a trail easement: 'the NITU mechanism even as it preserves the continued existence of the easement, points to the government's liability for transforming the purpose of the easement beyond what the original parties to the transaction contemplated"[25] — Precisely, trail use/railbanking are not railroad purposes, the railroad purposes easement no longer exists, but the physical characteristics of the corridor continued to exist in case reactivation ever occurs in the future;

---

[24] *Id*. at p. 14.
[25] *Id*. at p. 20.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 9

- "The Trails Act preserves railroad right-of-way intact until needed for a railroad purpose, and the interim trail use does not extinguish or convert the railroad easement into a trail easement"[26] — The Trails Act does extinguish the railroad purposes easement into a trail easement and the right-of-way is preserved intact in case reactivation ever occurs under the railbanking portion of the statute;

- "Plaintiffs represented to the Court of Federal Claims that the Trails Act blocked the reversion of the entirety of BNSF's original easement rights. Plaintiffs know that BNSF's easements were not abandoned or extinguished during the railbanking process"[27] — For goodness sakes, the Trails Act blocks the landowners' reversionary interests, the railroad purposes easement is extinguished, and a new easement for a hiking and biking trail with the possible reactivation of a railroad is now burdening Plaintiffs' land;

- "The Trails Act preserves the original railroad easements by preempting state laws that would extinguish the easements and cause the property rights to revert to the abutting property owners"[28] — The Trails Act may preempt state law (by not allowing reversion upon abandonment) but it does not preserve a railroad purposes easement. The original railroad purposes easements are extinguished, a new easement for a hiking and biking trail now burdens Plaintiffs' land, and the corridor is "preserved" for future reactivation if ever necessary;

- "In contrast, PSE contends that the railbanking statute *preserves* all rights under the prior railroad easements when a corridor is railbanked, but also grants an additional permission for interim trail use until the railroad use resumes"[29] — The preservation of the physical characteristics of the railroad corridor is not what impacts the property rights, those property rights are determined by state law, and the hiking and biking trail easement is not an additional permission but is, instead, a new burden placed on Plaintiffs' land; and

---

[26] *See* Sound Transit's Response, Doc. 73, at p. 13.
[27] *Id.* at p. 14.
[28] *Id.* at p. 15.
[29] *See* Puget Sound Energy's Response, Doc. 66, at p. 1.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

- "The fallacy in Plaintiffs' theory is illustrated by taking it to its logical conclusion.  Plaintiffs claim that the rights under the prior railroad easements disappear once a corridor is railbanked and are replaced with a new narrowed 'trail easement.'"[30] — There is no fallacy in Plaintiffs' theory because it is the law, the property rights are determined by state law, the railroad purposes easement has been extinguished, and Plaintiffs' land is now burdened with a new easement for a hiking and biking trail.

The fallacy of the straw men now created by the Defendants is easily rejected by the federal precedent they actually cite.  For example, the Court in *Illig v. United States*, 58 Fed. Cl. 619 (Fed. Cl. 2003), not only concludes that the Trails Act imposes a new easement on Plaintiffs' land, but also that the new easement must maintain the same physical characteristics of the corridor, such as width for example, in case rail service is ever reactivated in the future:

> **The new easement, in short, was intended to be capable of functioning at a later date as a railroad easement.**  The Trails Act and its implementing regulations require trail sponsors to assume "full responsibility" for managing the right-of-way and for any legal liability arising out of the right-of-way.   49 C.F.R. § 1152.29(a)(2).  As part of this responsibility, a trail sponsor must also make assurances that the right-of-way is kept available for "future reconstruction and reactivation ... for rail service." Id. § 1152.29(a)(3).  In order to meet these requirements, **we believe the Trails Act and its implementing regulations require that a trail sponsor must have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trail sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service. As discussed above, under Missouri law, such control is exclusive.  We therefore conclude that the Trails Act imposed a new easement across plaintiffs' properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity**.

58 Fed. Cl. 619, 630-31 (emphasis added).

---

[30] *Id.* at p. 7.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

Page 11

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

The *Illig* Opinion clearly establishes that a new hiking and biking trail easement is placed on Plaintiffs' land but that the physical characteristics of the prior railroad purposes easement must be maintained in case the railbanking portion of the statute is ever exercised such that reactivation occurs. The Defendants' attempted reliance on *Illig* is grossly misplaced because they miss the point about the physical characteristics and attempt to articulate that the preservation of the corridor for reactivation purposes not only maintains their property rights by and through the prior railroad purposes easement but that those rights are actually expanded in some way.[31] *See also Dana R. Hodges Trust v. United States*, 111 Fed. Cl. 452, 475 (2013) (the hiking and biking trail easement obtained by the trail sponsor must preserve "essentially the same characteristics" of the preexisting railroad easement in case reactivation ever occurs).

The Defendants are actually correct when they state that the *Haggart* case, or any of the other takings cases, do not adjudicate the property rights that exist after the taking.[32] The property rights that existed before the taking are determined by state law and the property rights that exist after the taking are also determined by state law. Here, King County now "owns" the easement on Plaintiffs' land for a hiking and biking trail pursuant to their acquisition under the Trails Act, but they cannot expand those existing state law property rights under the guise that the railroad purposes easement still exists.

### C.  State Law Defines the Property Rights After the Taking

The straw men created by all of the Defendants do not change the basic legal proposition that state law now defines the property rights that exist after the taking. The Defendants seem to

---

[31] *See* King County's Response, Doc. 67, at p. 6.; Puget Sound Energy's Response, Doc. 66, at pgs. 5-7; Port of Seattle's Response, Doc. 72, at p. 27.

[32] *See* King County's Response, Doc. 67, at p. 16 ("the takings cases do not destroy or create property rights in the manner imagined by Plaintiffs because those issues are simply not before the takings Courts").

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

argue that not only is the railroad purposes easement still in place that defines the scope and permissible uses of the corridor, but boldly assert that "Washington law does not address the issue here, which is what property interests exist <u>after</u> the federal taking occurs under the railbanking statute."[33]   Not only did Judge Lettow find in *Haggart* that King County acquired a surface easement for trail purposes only,[34] Washington law is clear that BNSF held a surface easement for rail purposes only, BNSF quit claimed what they owned to the Port of Seattle, a surface easement, and King County became the trail operator under the Trails Act, thus acquiring an easement for a hiking and biking trail with the same physical characteristics of the railroad's original easement on the surface.

The original railroad purposes easement was a surface easement that allowed trains to pass over Plaintiffs' land.   The landowners continued to own the underlying fee, including subsurface and aerial rights.   King County now "owns" the surface easement that the railroad originally possessed and that surface easement can now be used for a hiking and biking trail pursuant to the Trails Act.   Because the railroad only held a surface easement and could only transfer what it owned to King County, King County can only use the trail/railbanked easement on the surface for trail purposes pursuant to the Trails Act and Plaintiffs' herein continue to own the underlying fee including the subsurface and aerial rights in the trail/railbanked easement.

The leading case that addresses subsurface rights in the context of railroad purposes easements is *Kershaw*.   Although *Kershaw* is often cited in reference to deed interpretation issues, the Supreme Court of Washington also addressed the scope of a railroad purposes

---

[33] *See* Port of Seattle's Response, Doc. 72, at p. 25.
[34] *See Haggart v. United States*, 107 Fed. Cl. 70, 80 (2012); Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 2.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC
                                        Page 13

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

easement in the context of a utility company installing underground cable within the easement. The Supreme Court of Washington concluded that the railroad has an easement to run their trains on the surface but that the utility company's use of the subsurface for underground cables was an additional burden on the servient estate owned by the adjacent landowner and constituted a trespass.  The same situation and analysis applies here if any of the Defendants have utilized or attempted to utilize either the Plaintiffs' subsurface or aerial rights in the railroad corridor.

Although King County now owns a surface easement for a hiking and biking trail, King County can't expand those basic state law property rights beyond a surface easement.[35]  Contrary to the Defendants' assertions, Plaintiffs are not attempting to narrow state law property rights at all but are, instead, attempting to require that defined state law property rights are enforced.  It is the Defendants who are attempting to trample all over state law property rights by claiming that they now have rights well beyond the surface on Plaintiffs' property.[36]

It is also not true that if King County does not "currently own the preserved railroad easement rights" that somehow "ownership of the easement [would be] in limbo."[37]  Plaintiffs do not dispute that King County now owns a valid easement for a hiking and biking trail on the surface of Plaintiffs' land by and through the Trails Act.  But, that is all they own.  State law property rights require that these landowners, who still own the underlying fee, control the subsurface and aerial rights on their property.  King County goes on to state that "Plaintiffs' legal theories should be rejected because they leave the easement portions of the Corridor without an

---

[35] *See* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 7.
[36] *See* King County's, Doc. 67, at p. 10 ("a trail sponsor is not limited to trail use, but may make any use of a corridor that is consistent with trail use, railbanking and the reactivation of rail service").
[37] *Id.* at p. 15.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

Page 14

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

owner; the established state law property rights and chain of title somehow disappear."[38]  That statement is ludicrous because the easement has an owner, King County, by and through the Trails Act, and the "easement portions of the Corridor," consisting of the subsurface and aerial rights within the Corridor, also have an owner, these Plaintiffs.

The underline former railway easement is now a recreational trail easement no longer in the hands of the railroad.[39]  Under federal law, state property laws dictate the nature of the property held by a railroad.[40]  Under state law in Washington, an easement granted to a railroad for railroad purposes through a private conveyance does not convey a perpetual public easement allowing King County or any other trail operator to use it in any fashion that they wish, thereby trampling state property rights.[41]

The Supreme Court of Washington has already determined the existing property rights of the parties.  In *Lawson*, the Supreme Court of Washington held that the blocking of abandonment pursuant to the Trails Act prevented the vesting of Plaintiffs' reversionary interest, consisting of Plaintiffs' rights in the surface only since that is all the railroad purposes easement consisted of, and authorized the placement of an easement for recreational trail use with the potential reactivation of a railroad.[42]  The scope of a railroad purposes easement which is limited to the surface was confirmed by the Supreme Court of Washington in *Kershaw* when laying fiber optic

---

[38] *Id.*

[39] *See* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 6, fn. 8.

[40] *See Preseault II*, 100 F.3d 1525 (state property laws dictate the nature of the property held by a railroad and that the trail use easement acquired by the trail operator did not receive the incidental use benefits the predecessor railroad had held).

[41] *See Lawson*, 730 P.2d 1308 (holding that "when an easement is granted to a railroad through a private conveyance, the easement is not a perpetual public easement").  *See also* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 6, fn. 9.

[42] *See Lawson*, 730 P.2d 1308.  *See also* Order Denying Defendants' Motion to Dismiss, Doc. 59, at p. 5, fn. 3.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 15

cable in the subsurface amounted to a trespass on Plaintiff's fee ownership.[43]   Under basic property law and longstanding and overwhelming precedent from all of the federal courts and the Supreme Court of Washington, the Defendants' attempts to defeat basic property law and to expand their rights by and through the Trails Act should be flatly rejected.

## III.   THE KITTINGER DEED CLEARLY CONVEYS AN EASEMENT LIMITED TO RAILROAD PURPOSES

After agreeing that the Lake Washington Belt Line Deed and the Condemnation Deed "transferred only easement rights to BNSF's predecessor railroad,"[44] the Defendants incredibly argue that the Kittinger deed was a fee conveyance.[45]   The Defendants basically argue that the Kittinger deed conveyed a fee because it was in the form of a bargain and sale deed and because of the factors enunciated in *Brown v. State*, 924 P.2d 908 (Wash. 1996).   But, based on over 100 years of cases from the Supreme Court of Washington, including *Kershaw*, the Kittinger deed clearly conveys an easement limited to railroad purposes.

The Kittinger deed clearly conveys an easement for railroad purposes because the grant is for the railroad's "right-of-way" and it specifically says that it is for "such purposes."   In fact, the Kittinger deed is very similar to the deed in *Kershaw* where the Washington Supreme Court already found that a similar deed conveyed an easement and that the easement was limited to railroad purposes, a fact that the Defendant simply attempts to ignore.   *Kershaw*, 126 P.3d at 18.

The Defendants' arguments that the Kittinger deed conveyed a fee simple interest in the land to the railroad is wrong.   For example, King County argues that an analysis of the *Brown* factors shows that there is no limiting language in this deed.   King County also argues that the

---

[43] *See Kershaw*, 126 P.3d 16.
[44] *See* King County's Response, Doc. 67, at p. 16; Puget Sound Energy's Response, Doc. 66, at p. 9.
[45] *Id.*

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Kittinger deed "contains no express limitation on the use or purpose of the conveyed property."[46] The Defendants also attempt to argue that the presumption of an easement as set forth in *Kershaw* does not apply for some reason.[47] All of these attempted arguments are totally without merit.

The Kittinger deed specifically describes the purpose of the railroad's acquisition of the land by stating that the railroad "wishes to construct its railroad over and across said lands," "has made a survey for said line of said road and staked the same out," and "<u>wishes to secure for such purposes the right-of-way over and across said lands.</u>" After reciting that the grant was for the purposes of the construction of the railroad over and across the grantors' lands and that the purpose was for the right-of-way over and across said lands, the granting clause itself states that the grantors "hereby grant, bargain, sell and convey unto the said party of the second part the said strip, piece and parcel of land One Hundred Feet in width as <u>hereinbefore described</u>." The grant that was "hereinbefore described" was the "right-of-way over and across said lands."

It is clear that the grantors intended to not only grant the right-of-way to the railroad, an easement, but that the term "right-of-way" was used as a limitation on the grant to specify the purpose of the grant. The use of the term "right-of-way" to specify the purpose creates an easement under Washington law under *Biles v. Tacoma*, 32 P. 211 (Wash. 1893), *Reichenbach v. Washington Short Line Ry. Co.*, 38 P. 1126 (Wash. 1894), *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 111 P. 578 (Wash. 1910), *Morsbach v. Thurston County*, 278 P. 686 (Wash. 1929), *Swan v. O'Leary*, 225 P.2d 199 (Wash. 1950), *Veach v. Culp*, 599 P.2d 526 (Wash. 1979), *Roeder Co. v. Burlington Northern, Inc.*, 716 P. 2d 855 (Wash. 1986), *Brown*, and *Kershaw*. In

---

[46] *See* King County's Response, Doc. 67, at p. 21.
[47] *Id*. at p. 20.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

fact, in *Kershaw*, the Washington Supreme Court reviewed the 120 years of history on this subject and clearly stated that "where the deed uses the term 'right-of-way' <u>as a limitation or to specify the purpose of the grant</u>, such a grant generally conveys only an easement." *Kershaw*, 126 P.3d at 22 (emphasis in opinion).  That is exactly what the Kittinger deed states because it clearly uses the "right-of-way" to confirm the fact that the right-of-way is being acquired "to secure for such purposes the right-of-way over and across said lands."

The Defendants' statements that there is no language in the deed limiting the use of this strip of land to any specific purpose is ludicrous given the fact that the deed specifically says that it is being conveyed "for such purposes."  In *Swan*, the grantor conveyed a right-of-way to the railroad "for the purpose of a Railroad right-of-way to wit: a strip of land 50 feet in width." Even though the actual grant was "a strip," the grant was a right-of-way "for the purpose of a Railroad" and the Washington Supreme Court clearly stated that "when the granting clause of a deed declares the purpose of the grant to be a right-of-way for a railroad the deed passes an easement only." *Swan*, 225 P.2d at 201.  Likewise, in *Roeder*, the Washington Supreme Court concluded that the grantor had conveyed an easement rather than a fee interest when the granting clause stated that the grant was "for all railroad and other right-of-way purposes, certain tracts and parcels of land situated in the City of Bellingham." *Roeder*, 716 P.2d at 857.  The precedent from *Swan* and *Roeder* alone should be the end of the discussion on the purpose of the grant in the Kittinger deed because the Kittinger deed specifically states that the railroad "<u>wishes to secure for such purposes the right-of-way over and across said lands</u>."  But, if *Swan* and *Roeder* do not end the conversation, the holding in *Kershaw* should.

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

The granting clause in *Kershaw* granted "a strip of land seventy five feet wide, in, along, over and through the hereinafter described land… to be used by [the Railway] as a right-of-way for a railway forever." *Kershaw*, 126 P.3d at 18. As a result, the granting clause involved in *Kershaw* is exactly like the granting clause in the Kittinger deed because it too grants "a strip, piece or parcel of said lands," just like the "strip of land" involved in *Kershaw,* and grants the "right-of-way over and across said lands" for "such purposes" just like the clause in *Kershaw* states "to be used by the Railway as a right-of-way." Any argument that the Defendant attempts to advance for the proposition that the Kittinger deed does not convey an easement or that there is no language relating to the use or purpose of the grant in the Kittinger deed completely fails under *Kershaw*. The Washington Supreme Court in *Kershaw* made it absolutely and abundantly clear that "we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right-of-way for a railroad the deed passes an easement only and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title." *Kershaw*, 126 P.3d at 21 (*citing Morsbach*) (emphasis added); *see also Beres v. United States*, 97 Fed. Cl. 757, 788-789 (Fed. Cl. 2011).

Likewise, the Defendant's attempted argument that the Kittinger deed "nowhere limits the railroad's use of the land"[48] also fails under *Kershaw*. The deed evaluated in *Kershaw* gave the railroad the "perpetual right to construct, maintain and operate a railway." *Kershaw*, 126 P.3d at 18. The Kittinger deed states that the railroad "wishes to construct its railroad over and across said lands" and that the railroad "has made a survey for said line of said road and staked

---

[48] *See* King County's Response, Doc. 67, at pgs. 21-22.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

2    the same out."   As the Washington Supreme Court stated in *Kershaw*, the granted right to

     construct a railway over and across the grantors' land is absolutely indicative of an easement:

3
              The language most indicative of an easement is the phrase, in the
4             granting clause, which recites that the Kershaws also granted the
              north Yakima and Valley Railway Company "the perpetual right to
5             construct, maintain and operate a railway or railways over and
              across the same."  If the Kershaws intended to grant fee title to the
6             land, there would have been no need to also grant any rights
              associated with the land, as the North Yakima & Valley Railway
7             Company would have owned those rights due solely to their status
              as fee holders.  However, if only an easement was intended, it
8             makes sense that that language was included to specify the rights
              which attached to the land and the agreed-to permissible use of the
9             same.

10   *Kershaw*, 126 P.3d at 24 (emphasis added).

11          Just like the deed before the Washington Supreme Court in *Kershaw*, the Kittinger deed

12   grants the right to construct the railroad over and across the grantors' land.  Also, just like the

13   deed in *Kershaw*, if the Kittinger grantors intended to grant fee title to the land, "there would

14   have been no need to also grant any rights associated with the land" to the railroad.   The

15   permissible use or purpose of the grant by the Kittinger grantors was the "right-of-way for such

16   purposes" just like the Kittinger deed.  *See Beres*, 97 Fed. Cl. at 788-789.
17
            The presumption of an easement is further established because of the several reservations
18
     made by the grantors in the deed to the railroad.  The grantors specifically reserved "all littoral
19
     and riparian rights appurtenant to the lands" and "the right to mine coal, and reserving also the
20
     right to build an overhead crossing upon and over said property and tunnels under the same."
21
     These reservations made by the grantors had to be constructed and operated so "as not to
22
     interfere with the possession or use of the said granted lands," which is clearly inconsistent with
23
     the idea of an intention to grant a fee and is clearly consistent with the "contextual"
24

25

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

circumstances in the 1890's and early 1900's.  The reservations of "all littoral and riparian rights," and especially the reservation to mine coal, is clearly consistent with the presumption of an easement under longstanding precedent from the Washington Supreme Court.

In *Reichenbach*, the Washington Supreme Court reviewed a grant to the railroad which was subject to several conditions and stated that the conditions "are inconsistent with the idea of an intention to grant a fee, and show the grant of an easement only for a particular purpose." *See Reichenbach*, 38 P. at 1127.  Similarly, in *Roeder*, the Washington Supreme Court examined the intent of the grantor when the deed to the railroad reserved the right to use the land in designated ways so long as those uses did not interfere with the railroad, and held that it was clear that the intent of the grantor was to convey only an easement. *See Roeder*, 716 P.2d at 859.  Likewise, in *Beres*, Judge Horn reviewed a deed that reserved to the grantor the riparian and waterfront rights on Lake Sammamish, and concluded that the deed was "even more indicative of an easement than in the other SLS & E Deeds." *Beres*, 97 Fed. Cl. at 791.  Controlling the valuable rights to the land was critical for these grantors and they were very knowledgeable that retaining "all littoral and riparian rights" controlled lake access necessary for coal mining.  The conditions placed on the grant of a right-of-way to the railroad, just like in *Reichenbach*, *Roeder*, and *Beres*, demonstrate that the grant was limited to a narrow and specific purpose, an easement for railroad purposes only.

## IV.   SOUND TRANSIT'S PROPOSED TRANSPORTATION USE CANNOT NOW BE IMPOSED ON PLAINTIFFS' LAND UNLESS SOUND TRANSIT EXERCISES ITS EMINENT DOMAIN POWERS UNDER WASHINGTON LAW

Sound Transit's response is not only wrong legally, it is also schizophrenic.  First, Sound Transit incorrectly joins the Defendants' refrain that the railroad purposes easement continues to

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

Page 21

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

exist, which is fatally flawed.   Second, building on that faulty foundation, Sound Transit incorrectly argues that their intended passenger transportation use is a railroad purpose within the scope of the original source conveyances.   Finally, although Sound Transit argues that they may be able to construct and operate a passenger rail service without STB approval, they incorrectly ignore the state law as enunciated in *Lawson* and *Kershaw* that the railroad corridor is not a perpetual public easement and they cannot now rely on an illegal easement from the Port to impose a new transportation use on Plaintiffs' property without paying just compensation.

First, Sound Transit is wrong that the railroad purposes easement continues to exist. Without beating a dead horse and reiterating and repeating all the law on the subject, the railroad purposes easement was abandoned or extinguished and the only easement burdening Plaintiffs' land is an easement for a trail/railbanking.   *See Lawson*, 730 P.2d at 1311 ("Defendants argue that under Washington law a railroad is a perpetual public easement.   They contend that a railroad right-of-way easement does not terminate upon a change from one transportation use to another transportation use.   We disagree.").

King County's attempt to trample property rights in *Lawson* is similar to Sound Transit's attempt here.[49]   King County's entire argument in *Lawson* was based on the premise that the railroad corridor was a perpetual public easement, a notion that was flatly rejected by the Supreme Court of Washington.   *See Lawson*, 730 P.2d at 1311 ("But these considerations do not

---

[49]   Let there be no mistake, King County is trying to trample state law property rights in this case too.   King County has illegally acted as if they own the fee in the right-of-way, as opposed to Plaintiffs, and their statements concerning their powers as a trail operator under the Trails Act are appalling.   *See* King County's Response, Doc. 67, at p. 8 ("Ownership of the railroad easement rights allows King County, as the trail sponsor, to grant licenses in the form of special use permits that allow others to use the Corridor, to prevent unauthorized excavations and other activities in the Corridor, and to otherwise preserve the corridor for possible reactivation); at p. 9 ("The Act treats railroad easements as valuable state law property rights that can be allocated and conveyed during the railbanking process or thereafter"); at p. 10 ("A railroad sponsor is not limited to trail use, but may make any use of a corridor that is consistent with trail use, railbanking, and the reactivation of rail service").

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

necessarily lead to the conclusion that a railroad right of way is a perpetual public easement.  To the contrary, this court has frequently recognized that railroad rights of way revert to reversionary interest holders when a company abandons a line.").  Here, Sound Transit's joinder with the chorus that the railroad purposes easement continues to exist has also flatly been rejected by the Supreme Court of Washington.  *See Lawson*, 730 P.2d at 1312 ("Where the particular use of an easement for the purpose for which it was established ceases, the land is discharged of the burden of the easement and right to possession reverts to the original landowner or to that landowners' successor in interest.").[50]

It is clear that a change in use from a railroad purposes easement to an easement for a hiking and biking trail constitutes abandonment of the railroad purposes easement.  *Lawson*, 730 P.2d at 1313.  Sound Transit, after first incorrectly arguing that the railroad purposes easement continues to exist, attempts to bootstrap their position by arguing that their purported use is a transportation use within the scope of the railroad purposes easement such that they can construct their system without interference from anyone and without oversight from the STB.  Although Sound Transit may escape oversight from the STB, as long as the corridor is properly maintained for the possible reactivation of a railroad in the future, they still cannot ignore basic property law principles and the clear rulings from the Supreme Court of Washington that they cannot do so without paying Plaintiffs through an eminent domain proceeding.

It is a potentially interesting academic question whether Sound Transit's transportation use is a railroad purpose within the scope of the original railroad purposes easements.  Although

---

[50] This is similar to Defendants' arguments that the railway purposes easement continues to exist because it hasn't been abandoned but, as *Lawson* dictates, "Put simply, abandonment by the railroad is a necessary predicate to use as a recreational trails."  *Lawson*, 730 P.2d at 1311.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 23

*Lawson* recognized that a railroad "is furnishing transportation, either freight or passenger to the public,"[51] Sound Transit's purported use is a public transportation use akin to buses.  But, after *Lawson* concluded that a railroad corridor is not a perpetual public easement, it also ruled that the statutes at issue were unconstitutional to the extent that they "underlined authorized a change in public use of a railroad right of way to a different public use without payment of compensation to any reversionary interest holders." *Lawson*, 730 P.2d at 1313 (emphasis added).

King County, in *Lawson*, attempted to argue that a railroad purposes easement could be used for any public purpose as a perpetual public easement by converting the railroad purposes easement to a hiking and biking trail.  In support of their argument, King County argued that the statutes at issue merely embodied the common law, plaintiffs' reversionary rights were not eliminated by the statutes, and that plaintiffs have no vested rights in the right-of-way.  The *Lawson* court flatly rejected all three arguments.  *See Lawson*, 730 P.2d at 1313-14.  The *Lawson* court specifically held that plaintiffs had reversionary interests which would entitle them to possession upon extinguishment, that King County could not acquire the corridor without paying just compensation, and that the statute was unconstitutional insofar as King County attempted to acquire existing reversionary rights without paying compensation after easements for railroad purposes were extinguished.  *See Lawson*, 730 P.2d at 1315-16.

Although *Lawson* addressed these issues in the context of a hiking and biking trail on the surface, the Supreme Court of Washington revisited the issues in the context of subsurface utility rights in *Kershaw* in 2006.  The Supreme Court once again recognized that a railroad purposes easement was not a perpetual public easement.  Instead, the court noted that the right of

---

[51] *See Lawson*, 730 P.2d at 1312.

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for Declaratory Judgment
2:14-cv-000784-JCC

Page 24

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

telecommunications companies to lay subsurface cable in railroad rights-of-way was both statutorily and constitutionally based but, when the railroad originally acquired the easement by private deeds as opposed to public grants, which is the case here, the utility company was required to exercise its eminent domain powers. *See Kershaw*, 126 P.3d at 23. ("Therefore, we affirm that the trial court's conclusion that, absent an eminent domain action, Level 3's placement of the fiber optic cable within the right of way constituted a trespass.").

If the original grants to the railroad were easements, and if the original easements extinguished by and through the Trails Act, it doesn't make any difference whether Sound Transit's new transportation use is a railroad purpose or not. Under *Lawson* and *Kershaw*, Sound Transit may be able to acquire and place their new transportation easement on plaintiffs' property without oversight from the STB but, if they attempt to do so in the future, they will have to utilize their eminent domain powers and they will still have to comply with the railbanking provisions of the Trails Act. What Sound Transit cannot do, however, is attempt to rely on a purported easement from the Port that the Port had no basis in law or fact to grant, make any argument that the railroad purposes easement continues to exist, or tramp over state law property rights as enunciated in *Lawson* and *Kershaw*.

## V.    CONCLUSION

Despite the Defendants' assertions that they have valid rights in Plaintiffs' properties, the only encumbrance upon Plaintiffs' land is an easement for recreational trail purposes with the potential reactivation of a railroad. Only a trail may be constructed on Plaintiffs' land pursuant to the Trails Act. The Port of Seattle gave no warranties to the other Defendants regarding the quality of title because it couldn't. The Port of Seattle knew that BNSF only held easements

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Page 25

1
2
3
4
5

over portions of the line and the Defendants simply ignored that fact, to the Plaintiffs' detriment. This Court should declare (1) that the railroad originally acquired an easement over Plaintiffs' land; (2) that the railroad's easement was limited to railroad purposes only; and (3) that the railroad's easement has been converted to an easement for a recreational trail with the potential reactivation of a railroad by and through the Trails Act.

6
7
8

Date: February 20, 2015                    BAKER STERCHI COWDEN & RICE, L.L.C.

9
10
11
12
13

By: /s/ Thomas S. Stewart
Thomas S. Stewart
Elizabeth McCulley
2400 Pershing Road, Suite 500
Kansas City, MO 64108
Telephone:  (816) 471-2121
Facsimile:  (816) 472-0288
stewart@bscr-law.com
mcculley@bscr-law.com

14
15

and

16
17
18
19
20

RODGERS DEUTSCH & TURNER, P.L.L.C
Daryl A. Deutsch, WSBA No. 11003
Rodgers Deutsch & Turner, P.L.L.C.
3 Lake Bellevue Dr. Suite 100
Bellevue, WA  98005
Telephone:  (425) 455-1110
Facsimile:  (425) 455-1626
daryl@rdtlaw.com
**ATTORNEYS FOR PLAINTIFFS**

21
22
23
24
25

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC
                                                     Page 26

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of February, 2015, a copy of the above and foregoing was filed with the Clerk of the Court, with a copy of the same being served via U.S. mail on this 20th day of February, 2015, to:

Timothy G. Leyh
Randall Thomsen
Kristin Ballinger
CALFO, HARRIGAN, LEYH & EAKES, LLP
999 Third Avenue, Ste. 4400
Seattle, WA  98104
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com
*Attorneys for Defendant Port of Seattle*


Gavin W. Skok
Bryan J. Case
Courtney L. Seim
James E. Breitenbucher
RIDDELL WILLIAMS PS
1001 – 4th Avenue, Ste. 4500
Seattle, WA  98154-1065
gskok@riddellwilliams.com
bcase@riddellwilliams.com
cseim@riddellwilliams.com
jbreitenbucher@riddelwilliams.com
*Attorneys for Defendant Puget Sound Energy*


Andrew W Marcuse
David J. Hackett
King County Prosecuting Attorney, Civil Division
500 4th Avenue, Suite 900
Seattle, WA 98104-5039
andrew.marcuse@kingcounty.gov
david.hackett@kingcounty.gov
*Attorneys for Defendant King County*


Desmond L. Brown
Loren Armstrong
General Counsel
Central Puget Sound Regional Transit Authority (Sound Transit)
401 S. Jackson Street

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

Page 27

Seattle, WA  98104-2826
Desmond.brown@soundtransit.org
Loren.armstrong@soundtransit.org
*Attorneys for Defendant*
*Central Puget Sound Regional Transit Authority*


/s/ Thomas S. Stewart_____
Attorney for Plaintiff

4849-2892-2914, v.  1

Plaintiffs' Reply to Defendants' Response to Plaintiff's Motion for
Declaratory Judgment
2:14-cv-000784-JCC

Page 28

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr. Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626