THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT KASEBURG, *et al.,*

     Plaintiffs,

  v.

PORT OF SEATTLE, *et al.,*

     Defendants.

CASE NO. C14-0784-JCC

ORDER RE PLAINTIFFS' MOTION
FOR DECLARATORY JUDGMENT

   This matter comes before the Court on Plaintiffs' Motion for Declaratory Judgment (Dkt. No. 55). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the Motion for the reasons explained herein.

## I. BACKGROUND

   The parties agree that during the 1890s and early 1900s, Burlington Northern Santa Fe Railway Company (BNSF) established a right of way/ railway corridor ("corridor") skirting the eastern shores of Lake Washington. However, the parties dispute whether this corridor was established exclusively through easements or through both easements and fee simple conveyances. (Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 55 at 1; Defendant Port of Seattle's Response to Plaintiffs' Motion, Dkt. No. 72 at 2.) By 2008, BNSF no longer used the corridor for freight rail service. (Motion to Dismiss, Dkt. No. 36 at 2.)

The federal Trails Act provides that a railroad easement no longer desired by the rail company/easement holder for freight service may be "railbanked" while such easement is kept open for recreational trail use.  *See* 16 U.S.C. § 1247(d).  Through railbanking, the Trails Act preempts extinguishment of the easement and reversion to the underlying owner, as would normally occur under state abandonment doctrines following a discontinuation of use.  *Id.*  The Trails Act permits railroads to transfer managerial responsibility to a state or local government entity that agrees to maintain the right of way.  *Id.*   However, the recreational trail is an interim use only, and the corridor may be reactivated for rail use in the future, if and when the need arises.  *See Friends of East Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp. 2d 1260, 1273-74 (W.D. Wash. 2005) (citing *Preseault v. Interstate Commerce Commission*, 494 U.S. 1, 5-6 n.3 (1990) ("*Preseault I*")).

In accordance with the railbanking process, on May 12, 2008, BNSF entered into a series of agreements with Defendants the Port of Seattle (Port) and King County (County) to transfer BNSF's interests in the corridor to the Port and to designate King County as the Interim [recreational] Trail Manager.  (Motion to Dismiss, Dkt. No. 36 at 3.)  In this transaction, BNSF made no representations or warranties concerning title and the memorializing writing stated that "the Port and County acknowledge and affirm that BNSF may not hold fee simple title to the Property, that BNSF's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes.  The Port and County are willing to accept the Property on this basis." (Second Amended Complaint, Dkt. No. 46 at ¶110; Donation Agreement, Dkt. No. 46, Ex. D at 7.)

The Port then assigned some of the rights received from BNSF to co-Defendant Central Puget Sound Regional Transit Authority (Sound Transit) for public transportation purposes (the construction of a High Capacity Transit System), and also to co-Defendant Puget Sound Energy, Inc. (PSE), a private utility corporation, for electricity distribution and utility delivery purposes. (Second Amended Complaint, Dkt. No. 46 at 47-49; Motion to Dismiss, Dkt. No. 36 at 7.)  In

these transfers, the Port made no warranty of title as to the Property and specifically advised these parties that the Port "may not hold fee simple title to the Property and that the Port's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes." (Second Amended Complaint, Dkt. No. 46 at 49-50 (citing High Capacity Transportation Easement Agreement, Dkt. No. 46, Ex. L).)

Plaintiffs own land adjacent to the corridor (which runs from Woodinville to Renton). (Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 55 at 1.) Plaintiffs seek to quiet title and to obtain declaratory relief in light of allegedly unlawful expansions to the easements, following railbanking under the Trails Act. Before the Court is Plaintiffs' Motion for Declaratory Judgment. (Dkt. No. 55.) Plaintiffs request that the Court declare that:

1) The railroad originally acquired an easement for the railroad corridor;

2) The railroad easement was limited to use for railroad purposes; and

3) The railroad's easement for railroad purposes has been extinguished and has been converted to an easement for a recreational trail with the potential reactivation of a railroad by and through the Trails Act.

(Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 55 at 2.) For the following reasons, the Court DENIES Plaintiffs' requests.

## II. DISCUSSION

### A. Legal Standard

As a preliminary matter, parties seeking declaratory judgment prior to trial must satisfy the requirements for summary judgment under Federal Rule of Civil Procedure 56. As the Ninth Circuit held in *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935 (9th Cir. 2009):

> [A] party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment. Insofar as plaintiffs seek a motion for a declaratory judgment, plaintiffs' motion is denied because such a motion is inconsistent with the Federal Rules. The only way plaintiffs' motion can be construed as being consistent with the

Federal Rules is to *construe it as a motion for summary judgment on an action for a declaratory judgment.*

*Id.* at 943 (citing *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)) (emphasis added).  In *Kam-Ko,* the Ninth Circuit recognized that "the district court thus properly construed Kam–Ko's 'motion' for declaratory judgment as a motion for summary judgment on Kam–Ko's 'action' for declaratory judgment."  *Id.*  In light of this precedent, this Court has applied Rule 56's summary judgment standard to the instant Motion.

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. If, as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party . . . , [the court] must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact."  *Furnace v. Sullivan,* 705 F.3d 1021, 1026 (9th Cir. 2013).  In resolving summary judgment motions, courts are not at liberty to weigh the evidence, make credibility determinations, or draw inferences from the facts that are adverse to the non-moving party.  As the Supreme Court has held, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

There are genuine issues of material fact, and, in many cases, disputed legal questions, with regard to each of the three declaratory judgment requests presented by Plaintiffs.  Thus, declaratory judgment is not appropriate at this stage, and the Court must DENY Plaintiffs' Motion.

**B.     Plaintiffs' Request that this Court Declare that "the Railroad Originally Acquired an Easement for the Railroad Corridor"**

Plaintiffs contend that all three of the corridor's original source conveyances conveyed easements only.  (Plaintiffs' Motion, Dkt. No. 55 at 3.)  In support of this contention, Plaintiffs

1) offer Judge Charles F. Lettow's December 18, 2012 opinion (regarding the takings issues raised by the railbanking of the corridor), in which Judge Lettow concluded that all three conveyances were of easements (*see Haggart v. United States*, 108 Fed. Cl. 70 (2012)); 2) assert that "Every Case Decided by the Washington Supreme Court for Over 100 Years, from 1893 to 1996, Found that the Railroad Acquired an Easement Only"; 3) argue that the multifactor analysis prescribed by the Washington Supreme Court in *Brown v. State,* 130 Wash. 2d 430 (1996) militates against a finding that the source deeds conveyed fee simple interests; and 4) argue that the Washington Supreme Court's holding in *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association*, 156 Wash. 2d 253 (2006) establishes a presumption that railroad rights of way are easements.  (*See* Plaintiffs' Motion, Dkt. No. 55 at 3-10.)

Taking care not to weigh the evidence, as would be inappropriate at the summary judgment stage, the Court asks only if there are any genuine disputes of material fact raised by the non-moving parties (Defendants), such that Plaintiffs are not entitled to judgment as a matter of law.  The Court finds that there are genuine disputes of material fact that prevent granting declaratory judgment on this issue.

Defendants contend that the 1903 "Kittinger Deed," one of the original source conveyances, did *not* transfer a mere easement to the railroad, but rather transferred a strip of land in fee simple.  (King County's Response to Plaintiffs' Motion, Dkt. No. 67 at 16.) Defendants provide the following evidence in support of this contention, evidence that the Court finds sufficient to establish a genuine dispute regarding the matter.

1)      Defendants present evidence that the Kittinger Deed was a Bargain and Sale Deed.  The Kittinger conveyance states that:

Now therefore the said parties of the first part, *for and in consideration of* the sum of Two Thousand One Hundred and Fifty Dollars to them *in hand paid do hereby* grant, *bargain, sell, and convey unto* the said party of the second part the said strip, piece, and parcel of land One Hundred feet in width as hereinbefore described.

ORDER RE PLAINTIFFS' MOTION FOR
DECLARATORY JUDGMENT
PAGE - 5

1  (Declaration of Robert Jackson, Dkt. No. 68, Ex. D (emphasis added).)  Under the 1903 version

2  of RCW 64.04.040, a bargain and sale deed exists whenever a conveyance of land is in the

3  following form:

> The grantor (here insert name or names and place of residence), for and in
> consideration of (here insert consideration), *in hand paid, bargain, sell, and
> convey to* (here insert the grantee's name or names) the following described real
> estate (here insert description).

7  Laws of 1886 p. 178 §4 (*see* Declaration of David Hackett, Dkt. No. 71, Ex. C at 4) (emphasis

8  added).  Under Section Four of the Laws of 1886, "[e]very deed in substance in the above form

9  *shall convey* to the grantee, his heirs or other legal representatives an[] estate of inheritance *in fee*

10  *simple."*  (*Id.; see also Wright v. Olsen,* 42 Wash. 2d 702, 703 (Wash. 1953) (holding that under

11  RCW 64.04.040, a bargain and sale deed "conveys an estate in fee simple to the grantee").)

12  Robert Jackson, the King County Department of Natural Resources and Parks' Real Estate

13  Agent, states that historical right of way and track maps dating back to 1917 classify the

14  Kittinger Deed as a bargain and sale deed.  (Declaration of Robert Jackson, Dkt. No. 68 at ¶10-

15  11; Ex. G.)  To this day, under Washington law, "a bargain and sale deed based on the statutory

16  form automatically conveys a fee simple estate."  *Roeder Co. v. K & E Moving & Storage Co.,*

17  *Inc.,* 102 Wash. App. 49, 54 n.9 (2000).

18          There is an exception to the general rule that a bargain and sale deed conveys land in fee

19  simple.  To wit, a court "must find that the grantors intended to convey fee simple title *unless*

20  *additional language in the deed[] clearly and expressly limits or qualifies the interest*

21  *conveyed."  Roeder,* 102 Wash. App. at 54 (emphasis added).  Plaintiffs argue that the Kittinger

22  Deed falls under this exception because, *external to the granting clause*, the Kittinger Deed

23  states that the **_railroad_** "_wishes_ to secure for such purposes the right-of-way over and across said

24  lands."  (*See* Plaintiffs' Motion, Dkt. No. 55 at 11.)

25          However, as Defendant King County indicates, a railroad can acquire a "right of way" by

26  either fee or easement. *Ray v. King County,* 120 Wash. App. 564, 571 (2004) ("Where a deed

ORDER RE PLAINTIFFS' MOTION FOR
DECLARATORY JUDGMENT
PAGE - 6

conveys a right of way to a railroad, the conveyance may be in fee simple or may be an easement only.  The interpretation of such a deed is a mixed question of fact and law.").  Thus, use of the term "right of way" is not dispositive of whether the conveyance was of land in fee or of an easement.

Additionally, that the *railroad* wished to obtain a right-of-way (even if this is interpreted as an easement) is distinct from whether the *grantors* intended to convey a right of way (interpreted as an easement).  Thus, even if the term "right of way" is construed as an easement, it does not conclusively establish a limitation in the conveyance.

Further, neither is the term "right of way" a *per se* "express limitation" on or a "clear qualification" to a conveyance, no matter where in the deed the term is employed.[1]  As Defendants explain, the *Roeder* court noted that the use of the term "right of way" *outside* the granting or habendum clauses does not overcome the presumption of fee conveyance when a bargain and sale deed form was employed, and that use of the term "right of way" in a *description* of the property being conveyed does not qualify as a "clear and express limitation" on the interest.  102 Wash. App. at 51, 55 ("Because the words 'right of way' appeared only in each deed's legal description or in the description of the railroad's obligations, instead of in the granting or habendum clauses, the court concluded that '[u]sed in this manner, 'right of way' merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses.'").[2]

---

[1] *See King County v. Rasmussen,* 299 F.3d 1077, 1085-86 (9th Cir. 2002) ("The court concluded that 'used in this manner, 'right of way' merely describes a strip of land acquired for rail lines.' *Brown,* 924 P.2d at 914.  Since the term did not qualify or limit the interest expressly conveyed *in the granting and habendum clauses* of the deeds at issue, the court concluded it did not indicate an intent to grant an easement only. . . Here, . . . neither *the granting nor the habendum clauses* contains language clearly limiting the use of the land to a specific purpose. *In virtually all cases where Washington courts have found only an easement, the granting or the habendum clauses contained such language.*").

[2] Further, King County cites cases holding that even the use of "right of way" as a caption to the entire deed is not sufficient to overcome the strong presumption of a fee conveyance engendered

Plaintiffs' argument that the use of "right of way" was *incorporated by reference* into the granting clause (*see* Motion, Dkt. No. 55 at 12) does not suffice to allow Plaintiffs to prevail as a matter of law on this issue.  Plaintiffs admit that the use of the term "right-of-way" occurred in the context of describing the "*railroad's* desire to acquire the 'right-of way'" and offer no evidence that the grantors employed the term "right of way" anywhere to explicitly describe *their* intentions regarding the conveyance.

2.  Defendants point out that Judge Lettow's decision in *Haggart* (examining the takings issues related to Plaintiffs' claims) did not take into account the aforementioned legal effects of the use of a bargain and sale deed form and declined to follow Washington law and Ninth Circuit law on these issues.  As King County states, Judge Lettow did not "have before [him] the 1917 maps that document the Kittinger deed as a bargain and sale deed," nor did he consider the "determinative meaning that Washington state law places on the 'bargain and sale' language." (King County's Response, Dkt. No. 67 at 20.)  In formulating his decision, Judge Lettow declined to follow *Rasmussen*, after noting that Ninth Circuit decisions were not binding on the Court of Federal Claims.  *Haggart*, 108 Fed. Cl. at 88.  Plaintiffs concede that Judge Lettow's decision is not binding on this Court.  (Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 55 at 15.)

3.  Defendants establish genuine issues of material fact and law with regard to Plaintiffs' argument that *Kershaw*, 156 Wash. 2d 253, establishes a widely-applicable presumption that railroad rights of way are easements.  For instance, Defendant King County indicates that in *Kershaw,* the deed at issue employed the term "right of way" *in the granting clause*, (*id.* at 257-

---

by use of the bargain and sale deed form.  *See e.g., Roeder,* 102 Wash. 2d at 55, 57.  Defendants explain that in the Kittinger Deed, the term "right of way" is used only in the recitals, not in the granting clause, and recitals are not dispositive, as is the language of conveyance under Washington law.  (King County's Response, Dkt. No. 67 at 21 (citing *Rains v. Walby,* 13 Wash. App. 712, 716 (1975) (explaining that "recitals supply only background for the paragraphs which set forth the bargain that the parties struck")).)

ORDER RE PLAINTIFFS' MOTION FOR
DECLARATORY JUDGMENT
PAGE - 8

1  58) unlike the Kittinger Deed, which employed the term outside the granting clause.  The

2  *Kershaw* court cited its approval for the holding of *Swan v. O'Leary*, 37 Wash. 2d 533, 535, 537

3  (1950) – "it is clear that we adopted the rule that *when the granting clause of a deed* declares the

4  purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not

5  a fee with a restricted use, even though the deed is in the usual form to convey a fee title."

6  *Kershaw,* 156 Wash. 2d at 263-66.  Thus, it is disputed whether *Kershaw* is entirely on point.

7  　　　　4.  <u>Defendants establish genuine disputes of fact and law with regard to whether the</u>

8  <u>*Brown* factors point to the conveyance of a fee or of an easement</u>.  In *Brown v. State,* 130 Wash.

9  2d 430, 438 (1996), the Washington Supreme Court set out seven factors to be referenced when

10  determining whether original parties to a deed intended to convey an easement or land in fee.[3]

11  Plaintiffs argue that the *Brown* factors point to the conclusion that the Kittinger deed conveyed

12  only an easement.   However, in reference to the *Brown* factors, Defendants note that 1) the

13  granting clause of the Kittinger deed contains no express limitation on the use or purpose of the

14  conveyed property; 2) the deed contains no reverter clause; 3) the consideration paid was

15  substantial ($2,150 in the early 1900s); 4) the deed lacks the habendum clause present in most

16  easement conveyances; 5) the Kittinger grantors *reserved easements for themselves* across the

17  land conveyed to the railroad; 6) the deed identifies the railroad's right to *possession* of the

18  _____

19  [3] "In determining whether the property owners have met their burden of showing that the original
20  parties intended to adapt the statutory form to grant easements instead of fees simple, we have
   relied on the following factors: (1) whether the deed conveyed a strip of land, and did not contain
21  additional language relating to the use or purpose to which the land was to be put, or in other
   ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its
22  use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land,
   rather than a strip thereof; (4) whether the deed granted only the privilege of constructing,
23  operating, or maintaining a railroad over the land; (5) whether the deed contained a clause
   providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6)
24  whether the consideration expressed was substantial or nominal; and (7) whether the conveyance
   did or did not contain a habendum clause, and many other considerations suggested by the
25  language of the particular deed.  In addition to the language of the deed, we will also look at the
   circumstances surrounding the deed's execution and the subsequent conduct of the parties."
26  *Brown*, 130 Wash. 2d at 438 (citations omitted).

corridor, rather than to mere *use*; and 7) "nearly every acquisition by the railroad during this period was in fee" (citing Declaration of James Greenleaf, Dkt. No. 70 at ¶4).  (King County's Response, Dkt. No. 67 at 21-23.)  These points create a dispute as to the outcome when the *Brown* analysis is applied to the facts of this case.

      5. <u>Defendants cite *Kershaw* for the proposition that any "party wishing to prove that such a deed conveys only an easement interest has the burden of showing less than fee simple title was intended to be conveyed."</u>  156 Wash. 2d. at 264.  Thus, Plaintiffs' bear the burden of proving, despite the aforementioned evidence, that the Kittinger deed conveyed only an easement to the railroad.

      Defendant King County does concede that two of the source conveyances, the "Lake Washington Belt Line Deed" and the "Condemnation Deed" (King. Cy. No. 40536) "transferred only easement rights to BNSF's predecessor railroad."  (Defendant King County's Response, Dkt. No. 67 at 16.)  However, there appears to be some dispute among the parties regarding the number of source conveyances used to create the Corridor (*see id.* at 12 n.12 (Plaintiffs maintain that there were three source conveyances; Defendants argue that there were five, *three* of which allegedly conveyed land in fee)).  Further, Plaintiffs simply ask this Court to declare that "the railroad originally acquired *an* easement for the railroad corridor."  (Motion, Dkt. No. 55 at 2.)

      Given the foregoing analysis, there remain several disputes of material fact and mixed questions of fact and law with regard to the Kittinger deed, disputes which preclude Plaintiffs from prevailing as a matter of law at this time.  Thus, the Court DENIES Plaintiffs' first request, which we have construed as a motion for summary judgment on the issue of whether the railroad acquired an easement for the railroad corridor.

### C.    Plaintiffs' Request that this Court Declare that "the Railroad's Easement was Limited to Use for Railway Purposes"

      Plaintiffs argue that the original source conveyances are all easements *limited to railroad*

*purposes*, and seek a declaration from this Court confirming the same. (Motion, Dkt. No. 55 at 2.) Plaintiffs cite evidence such as the language in the Lake Washington Belt Line deed specifically stating that the conveyed land is "for the construction, operation, and maintenance" of the railroad, that the right of way is over, across, and through the grantor's land, and that the railroad can use the right-of-way only "so long as the same shall be used for railroad purposes." (Motion, Dkt. No. 55 at 10 (citing Lake Washington Belt Line Deed, Dkt. No. 55, Ex. D).)

However, at the point that we have denied summary judgment on the issue of whether the railroad acquired "an" easement for the Corridor, we must also deny Plaintiffs' request for summary judgment on the issue of whether this easement was limited to use for railway purposes. Further, to the extent that this request touches upon any limited purpose of the easement as it now stands, Defendant King County has raised points sufficient to establish a dispute regarding the scope of any easements now held by Defendants following the operation of the Trails Act. (*See* Defendant King County's Response, Dkt. No. 67 at 10.)

> **D.** **Plaintiffs' Request that this Court Declare that "the Railroad's Easement for Railroad Purposes Has Been Extinguished and Has Been Converted to an Easement for a Recreational Trail with the Potential Reactivation of a Railroad By and Through the Trails Act"**

In support of this request, which lies at the heart of the parties' dispute, Plaintiffs cite several cases that establish that railroad easements are generally abandoned upon a change in use/discontinuance of use, and that hold that railbanking and interim trail use are not railroad purposes. *See e.g. Haggart,* 108 Fed. Cl. 70; *Macy Elevator v. United States*, 97 Fed. Cl. 708 (2011); *Preseault I,* 100 F.3d 1525; *Ladd v. United States,* 630 F.3d 1015 (Fed. Cir. 2010); *Lawson v. State,* 730 P.2d 1308 (Wash. 1986). Plaintiffs argue that at common law/under Washington state law, an abandonment of the railroad easement would trigger an automatic

1   reversion to the reversionary interest holders. (Plaintiffs' Motion, Dkt. No. 55 at 21 (citing

2   *Lawson*, 730 P.2d at 1312-13).)

3          However, Defendants do not appear to dispute these points (*see e.g.,* Defendant Port of

4   Seattle's Response, Dkt. No. 72 at 1; Defendant King County's Response, Dkt. No. 67 at 13),

5   and such points do not go to the heart of the issue, which is whether a discontinuation in use,

6   *when accompanied by operation of the Trails Act,* triggers an *extinguishment* of railway

7   easements.[4] Defendants cite authorities and facts sufficient to create genuine disputes whether

8   BNSF's discontinued use of the easement triggered extinguishment.

9

10         First, Defendants establish questions of law whether the Trails Act "*preserves* the

11  railroad easements while *also* allowing for interim use as a trail." (Defendant Port of Seattle's

12  Response, Dkt. No. 72 at 7-8 (arguing that "Plaintiffs' contention that the rail easement has been

13

14  ───────────────

15  [4] Defendant King County takes the position that the Trails Act preempts not just extinguishment/
    reversion in the face of discontinuance but also preempts "abandonment" itself. (*See* Defendant
16  King County's Response, Dkt. No. 67 at 4.) All Defendants agree that the Trails Act *preempts
    state law extinguishment/ reversion of the easement in the face of a discontinuance of use by the
17  railroad* (what might be termed "abandonment" in an everyday usage sense of the word). When
    King County has stated that the Trails Act preempts "abandonment," the Court has interpreted
18  this to mean that the Trails Act preempts abandonment *qua* extinguishment/reversion. The
    explicit terms of the Trails Act support such an interpretation – "such interim use shall not *be
19  treated,* for the purposes of any law or rule of law, *as* an abandonment of the use of such rights-
    of-way for railroad purposes." 16 U.S.C. § 1247(d). This provision could be interpreted to state
20  that an "abandonment" does not occur during railbanking or to state that "abandonment" during
    railbanking does not trigger the typical *consequences* of abandonment under state law ("shall not
21  *be treated . . . as* an abandonment"). But either interpretation has the same *functional meaning* –
    the Trails Act will prevent *extinguishment/ reversion* even in the face of discontinuance of use.
22  *See also Chevy Chase Land Co. v. United States,* 733 A.2d 1055, 1090-91 (Md. 1999)
    (distinguishing the railroad's "pursuit of federal regulatory approval for 'abandonment'" (to
23  allow for railbanking) from the railroad's evincing of an "intent to abandon an easement under
    state law"). Here, BNSF did file a petition for exemption to authorize abandonment. (Port of
24  Seattle's Response, Dkt. No. 72 at 4.) However, Defendants argue, given that doing so was a
    necessary step in the railbanking process, this did not trigger extinguishment/ reversion under
25  state law.

26

'converted' into a trail easement is not based on the statute").)  Most importantly, Defendants

cite provisions from the Trails Act itself that support their interpretation.  As the Port of Seattle

indicates, the Trails Act institutes railbanking "in furtherance of the national policy to *preserve*

established railroad-rights-of-way for future reactivation of rail service, to protect rail

transportation corridors, and to encourage energy efficient transportation use."  16 U.S.C. §

1247(d) (emphasis added).  The Trails Act states that the interim use of "railroad rights-of-way"

as a recreational trail "shall *not* be treated, for purposes of *any* law or rule of law, as an

abandonment of the use of such rights-of-way for railroad purposes."  *Id.* (emphasis added).  If,

Defendants argue, an existing rail easement is not abandoned, it remains in effect.  (Defendant

Port of Seattle's Response, Dkt. No. 72 at 8.)

Second, Defendants cite a substantial body of case law supporting their contention that

the Trails Act prevents extinguishment of the rail easements by preempting state law

abandonment doctrines.  In 1990, the United States Supreme Court ruled that the Trails Act

authorizes "the ICC [now STB] to *preserve* for possible future railroad use rights-of-way not

currently in service *and* to allow interim use of the land as recreational trails."  *Preseault I,* 494

U.S. at 6.   In 2005, this Court held that the purpose of the Trails Act was "not to encourage the

development of recreational trails," but rather was to "*preserve* the right-of-way for possible

future railroad reactivation."  *Friends of the East Lake Sammamish Trail*, 361 F. Supp. 2d at

1274.  In 2006, the Federal Circuit held that after issuance of the NITU, "the easement

continue[s] in existence beyond the time when it would otherwise have been abandoned."

*Barclay v. United States*, 443 F.3d 1368, 1374 (Fed. Cir. 2006).  In 2011, the Court of Federal

Claims opined that "through passage of the National Trails System Act Amendments of 1983

(the Trails Act), Congress authorized a process by which the railroad's right-of-way can be

*preserved* for future railroad use, and during the interim period, used as a recreational trail."
*Capreal, Inc. v. United States*, 99 Fed. Cl. 133, 136 (2011).  And, most significantly, in 2012, in Plaintiffs' own takings case, Judge Lettow explained that "[r]ail-banking under the Trails Act *preserves railroad purpose easements* which otherwise would terminate by operation of law, thus retaining the easements for potential later reactivation of railroad use."  *Haggart*, 108 Fed. Cl. at 76 n.3.  In explaining its compensation award, the *Haggart* court stated the "NITU mechanism, *even as it preserves the continued existence of the easement,* points to the government's liability for transforming the purpose of the easement *beyond* what the original parties to the transaction contemplated."[5]  *Id.* at 94.  In other words, according to Defendants, the "United States compensated these plaintiffs not just for the expanded use as a trail, but also for the preservation of the rail easement that would have reverted to the plaintiffs but for the statute."  (Defendant Port of Seattle's Response, Dkt. No. 72 at 12.)

The above cases create a dispute of law with regard to whether the Trails Act *preserves* railroad easements such that they are in perpetual existence even during such time as the railroad right of way is only being used as a recreational trail, or whether, as Plaintiffs argue, the Trails Act *extinguishes* the rail easement while the right of way is being used as a recreational trail, but

---

[5] With regard to the takings case, Plaintiff's position is essentially that that they were entitled to just compensation because the Trails Act placed a *new* burden on their land (in the form of a recreational trial), but that the compensation award received after they prevailed in this takings case did not reimburse them for the full loss of value due to any *preservation* of a *still-existing* rail way easement, because this railway easement was abandoned and thus had been extinguished.  Defendants, on the other hand, take the position that the takings case and subsequent award compensate Plaintiffs for *both* the *addition* of a recreational trail easement on Plaintiffs' property *and* for the continual and perpetual *preservation* of the rail easement, the latter of which easement would have been extinguished under the state law abandonment doctrine but for the operation of the preemptive Trails Act.  (*See e.g.,* Defendant Port of Seattle's Response, Dkt. No. 72 at 14 ("[I]t is the effect of the NITU blocking the reversion and adding trail use that constitutes the taking.").)

banks the railroad right of way in the form of a future interest contingent on the STB's reactivation of freight service.

Third, Defendants point out lingering issues of law with regard to Plaintiffs' argument that the "railroad purposes easement extinguishes because of the change in use from railroad purposes." (Plaintiffs' Motion, Dkt. No. 55 at 19.)  For instance, Plaintiffs' leading case, *Macy Elevator,* 105 Fed. Cl. 195, does not sufficiently address the precise nature of the remaining burdens on that railbanked land, as *Macy Elevator* pertained to takings and compensation valuation issues.  The other takings cases cited by Plaintiff likewise fail to establish that a change in use from railroad purposes will *extinguish* the rail easement when the Trails Act is invoked. The Port of Seattle presents ample support for their contention that "[n]one of these cases held that the original railroad easement no longer existed."  (Port of Seattle's Response, Dkt. No. 72 at 16-18; 16 n.12.)  Thus, Plaintiffs have failed to establish that, as a matter of law, a change in use from railroad purposes extinguishes the easement, even in situations in which the Trails Act has wrought its preemptive powers.[6]

---

[6] Plaintiffs fail to establish as a matter of law their contention that "the rail banking statute merely prevents the land from reverting back to landowners and preserves the physical characteristics of the corridor [but not the easement itself] in case reactivation ever occurs," at which time the easement presumably springs back into existence.  (*See* Plaintiffs' Reply, Dkt. No. 80 at 9, 11-12.)  *That we found this contention, as well as Plaintiffs' other contentions, to be undeserving of dismissal at the 12(c) Motion for Judgment on the Pleadings stage* (*see* Order Denying Defendants' Motion to Dismiss, Dkt. No. 59), *should not be construed as a conclusive endorsement of the contention.*  The Court's analysis in the Order Denying Defendants' Motion to Dismiss was necessarily conducted in the light most favorable to Plaintiffs, there the non-moving party, after accepting Plaintiffs' allegations as true, and in the context of the limited briefing and limited evidence to which the Court was permitted to look.  However, now, at what is effectively the summary judgment stage, the Court must construe the evidence and make inferences in the light most favorable to the non-moving party, here, *Defendants.*  Further, the Court has now benefited from 2,485 pages of additional briefing and declarations from Defendants alone.

1
2
          Fourth, Defendants raise questions about Plaintiffs' reliance on *Lawson,* 107 Wash. 2d
444 (1986) and its progeny.  As the Port of Seattle explains:

3
4
5
6
7
8
9
10
11
12
13
14
> Plaintiffs rely heavily on the Washington decisions of *Lawson v. State,* 107 Wash.
> 2d 444 (1986), and *King County v. Squire Investment Co.,* 59 Wash. App. 888
> (1990), but again neither addresses the particular issue presented by this motion.
> Both decisions hold that cessation of railroad operations and commencement of
> trail use constituted abandonment of the rail easement, which is a basic tenet of
> Washington State property law.  *But there was no railbanking statute in these
> cases to <u>block</u> abandonment.*  The fact that the railbanking statute blocked
> abandonment in *Haggart* is what entitled Plaintiffs to compensation.  Because the
> railbanking statute <u>prevented</u> abandonment and a reversion to Plaintiffs, they were
> entitled to compensation . . . based on the difference between the property's value
> <u>unencumbered</u> (what would have occurred under state law) and its value
> encumbered by a "general easement" (what did occur under the railbanking
> statute ).  *Haggart,* 108 Fed. Cl. at 96.  Plaintiffs nonetheless argue that "[under
> Washington law,] change in use from railroad purposes to trail purposes
> constitutes an abandonment of the easement . . . [and] the railroad purpose
> easements were extinguished by the Trails Act and no longer exist."  Motion at
> 24.  This statement is directly contrary to the railbanking statute itself, which
> states, "interim [trail] used shall not be treated, for purposes of any law or rule of
> law, as an abandonment of the use of such rights-of-way for railroad purposes."
> 16 U.S.C. 1247(d).

15
16
17
18
19
20
21
22
23
24
(Port of Seattle's Response, Dkt. No. 72 at 19 (emphasis added).)  Defendants have created a

dispute of law whether *Lawson* and its progeny even address the issue of what property interests

remain after the Trails Act effectuates a taking on the former corridor land.  For instance,

*Lawson* dealt with *state* statutes that allowed for the conversion of a railroad right of way into a

recreational trail, and considered the question of *whether just compensation was necessary* when

King County built said trail.  107 Wash. 2d at 446.  Similarly, in *King County v. Squire

Investment Co.,* 59 Wash. App. 888, 891, 894-95 (1990), the railroad had abandoned the right of

way prior to trail use – railbanking did not occur in this case.  Thus, *Lawson* and *Squire

Investment* do not establish, as a matter of law, that Plaintiffs' position is correct.

25
26
          For the aforementioned reasons, there remain significant issues of fact and law, such that

ORDER RE PLAINTIFFS' MOTION FOR
DECLARATORY JUDGMENT
PAGE - 16

the Court cannot grant summary judgment on Plaintiffs' third declaratory judgment request

regarding extinguishment.

**III.    CONCLUSION**

      For the foregoing reasons, Plaintiffs' Motion for Declaratory Judgment (Dkt. No. 55) is

DENIED.

      DATED this 23rd day of April 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE