THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KASEBURG, *et al.,*<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PORT OF SEATTLE, *et al.,*<br><br>　　　　　　Defendants. | CASE NO. C14-0784-JCC<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on the Port of Seattle's, Puget Sound Energy's, King County's and Sound Transit's (Defendants') Motion for Partial Summary Judgment on Plaintiffs' Declaratory Judgment Claim (Dkt. No. 95).  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Motion (Dkt. No. 95) for the reasons explained herein.

**I.   BACKGROUND**

The parties agree that during the 1890s and early 1900s, Burlington Northern Santa Fe Railway Company (BNSF) established a right of way/ railway corridor ("corridor") skirting the eastern shores of Lake Washington.  However, the parties dispute whether this corridor was established exclusively through easements or through both easements and fee simple conveyances. (Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 55 at 1*;* Defendant Port of Seattle's Response to Plaintiffs' Motion, Dkt. No. 72 at 2.)  By 2008, BNSF no longer used the

corridor for freight rail service. (Motion to Dismiss, Dkt. No. 36 at 2.)

The federal Trails Act provides that a railroad easement no longer desired by the rail company/easement holder for freight service may be "railbanked" while such easement is kept open for recreational trail use. *See* 16 U.S.C. § 1247(d). Through railbanking, the Trails Act preempts extinguishment of the easement and reversion to the underlying owner, as would normally occur under state abandonment doctrines following a discontinuation of use. *Id.* The Trails Act permits railroads to transfer managerial responsibility to a state or local government entity that agrees to maintain the right of way. *Id.* However, the recreational trail is an interim use only, and the corridor may be reactivated for rail use in the future, if and when the need arises. *See Friends of East Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp. 2d 1260, 1273-74 (W.D. Wash. 2005) (citing *Preseault v. Interstate Commerce Commission*, 494 U.S. 1, 5-6 n.3 (1990) ("*Preseault I*")).

In accordance with the railbanking process, on May 12, 2008, BNSF entered into a series of agreements with Defendants the Port of Seattle (Port) and King County (County) to transfer BNSF's interests in the corridor to the Port and to designate King County as the Interim [recreational] Trail Manager. (Motion to Dismiss, Dkt. No. 36 at 3.)

The Port then assigned some of the rights received from BNSF to co-Defendant Central Puget Sound Regional Transit Authority (Sound Transit) for public transportation purposes (the construction of a High Capacity Transit System), and also to co-Defendant Puget Sound Energy, Inc. (PSE), a private utility corporation, for electricity distribution and utility delivery purposes. (Second Amended Complaint, Dkt. No. 46 at 47-49; Motion to Dismiss, Dkt. No. 36 at 7.)

Plaintiffs own land adjacent to the corridor (which runs from Woodinville to Renton). (Plaintiffs' Motion for Declaratory Judgment, Dkt. No. 55 at 1.) Plaintiffs seek to quiet title and to obtain declaratory relief in light of allegedly unlawful expansions to the easements, following railbanking under the Trails Act.

Most recently, the Court denied Plaintiffs' Motion for Declaratory Judgment (Order, Dkt.

No. 91), which this Court evaluated under the summary judgment standard. Before the Court today is Defendants' Motion for Partial Summary Judgment on Plaintiffs' Declaratory Judgment Claim. (Dkt. No. 95.) In this Motion, Defendants "ask the Court to affirmatively rule, as a matter of law, that railbanking under the Trails Act preserved the railroad easements in the corridor and allowed for interim use of the corridor as a trail." (*Id.* at 1.)[1] For the following reasons, we hold as such.

## II. DISCUSSION

### A. Legal Standard

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. If, as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party . . . , [the court] must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan,* 705 F.3d 1021, 1026 (9th Cir. 2013). Disputes of fact are "genuine" when "a reasonable jury could return a verdict for the nonmoving party" on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes of fact are "material" if the fact "might affect the outcome of the suit under the governing law." *Id.*

In resolving summary judgment motions, courts are not at liberty to weigh the evidence, make credibility determinations, or draw inferences from the facts that are adverse to the non-moving party. As the Supreme Court has held, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

---

[1] The Court's holding on this matter does not address Plaintiffs' full declaratory judgment claim because the exact scope of the property interests originally obtained by the railroad is still to be determined. Essentially, Defendants are asking for a ruling that all *easements* obtained by BNSF were preserved when railbanked.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 3

a judge, whe[n] he is ruling on a motion for summary judgment." *Id.* at 255.

However, to prevent summary judgment, the nonmoving party must make a showing via affidavits, depositions, answers to interrogatories, or admissions of "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

**B.    Here, Railbanking Pursuant to the Trails Act Preserved the Railroad Easements in the Corridor and Allowed for Interim Use of the Corridor as a Trail**

The Court is in a position to grant Defendants' Motion because the question presented is resolvable as a matter of law. As Rule 56 states, "[t]he court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). The limited scope of Defendants' request – a holding regarding the *legal effect* of Trails Act railbanking on railroad easements – does not require this Court to wade into the more fact-bound waters of the precise nature of the property interests acquired by BNSF over a century ago. The present issue entails no genuine disputes of material fact, and may be cleanly resolved as a matter of law. Plaintiffs do not contest that this matter is amenable to resolution as a matter of law.

1. *The Plain Language of the Trails Act Makes Clear That It Preserves Railroad Easements Through Railbanking and Allows for Interim Trail Use.*

Defendants state that the Trails Act "expressly preserves railroad easements by preempting abandonment of those easements under state law" and "provides that interim trail use shall not result in the abandonment of railroad easements." (Defendants' Motion for Partial Summary Judgment, Dkt. No. 95 at 5.)

On this matter of law, Defendants are correct. The Trails Act provides that:

> [I]n furtherance of the national policy *to preserve established railroad rights-of-way* for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such *interim use*

> *shall not be treated, for the purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.*

16 U.S.C. § 1247(d) (emphasis added).  That the Trails Act preserves railroad easements in railbanked corridors and allows for interim trail use by preempting state property law is plainly evident from the text.

Nevertheless, Plaintiffs attempt to argue that Congress did not mean "current preservation" when employing the term "preserve" in the above passage.  (Plaintiffs' Response, Dkt. No. 98 at 4.)  But this goes against the grain of any ordinary usage of the term "preserve,"[2] despite the absence of any indication that Congress was employing the word in some special sense.  Further, Plaintiffs do not provide any authority for the position that Congress did not imply "current preservation" by the statute, while there is substantial authority for the position that they did.  (*See* Defendants' Motion, Dkt. No. 95 at 6-7.)  In short, the Trails Act clearly provides that railroad easements *survive* railbanking.

### 2. The Governing Case Law Uniformly Holds That the Trails Act Preserves Railroad Easements Through Railbanking and Allows for Interim Trail Use.

First, the Supreme Court's treatment of the issue soundly supports Defendants' requested holding.  In the landmark case *Preseault v. Interstate Commerce Commission*, the Court confirmed this plain language interpretation of the Trails Act, holding that the Trails Act allowed "the ICC to *preserve* for possible future railroad use rights-of-way not currently in service *and* to allow interim use of the land as recreational trails."  494 U.S. 1, 6 (1990) (emphasis added).  The Court added that the "key finding of this amendment is that interim use of a railroad-right-of-way for trail use, when the route itself maintains intact for future railroad purposes, shall not constitute an abandonment of such rights-of-way for railroad purposes."  *Id.* at 8-9 (quoting H.R. Rep. No. 98-28 at 8-9 (1983)).  Thus, the Court recognized that the Trails Act preempts abandonment and reversion, and instead "allows a railroad to cease operating a line for an

---

[2] "Preserve: To *keep* in its *original or existing state;* to make lasting; to *maintain* or keep alive." Oxford English Dictionary, 3d ed. (emphasis added).

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 5

indefinite period of time *while preserving* the rail corridor for possible reactivation of service in the future. *Id.* at 6 n.3 (emphasis added).[3]

"Preserving . . . for future reactivation" cannot, as Plaintiffs have sometimes argued, mean something akin to *resurrecting in the case of/ contingent upon potential future reactivation.* (*See, e.g.,* Plaintiffs' Response, Dkt. No. 98 at 2.) There is simply no authority supporting such an interpretation, which greatly stretches the ordinary meaning of the words. As Defendants state, "the Trails Act does not create a contingent future interest that springs back into existence upon reactivation as plaintiffs have argued. Congress enacted 16 U.S.C. § 1247(d) 'to preserve established railroad rights-of-way *for* future reactivation,' not for use '*upon* future reactivation.'" (Defendants' Motion, Dkt. No. 95 at 7 (emphasis added).)

Second, all courts *presented with the issue*[4] have held that the Trails Act preserves railroad easements and that a trail sponsor may own and exercise the rights inherent to the railroad easement. As the Vermont Supreme Court held in the quiet-title action that followed the U.S. Supreme Court's decision in *Preseault,* "[t]o construe the State's interest in the right-of-way as less than the interest of an operating railroad creates the risk of frustrating Congress' clear intent and purpose." *State v. Preseault*, 163 Vt. 38, 42 (1994). The Vermont Supreme Court held that the trail sponsor's rights in the right-of-way were the same as those that would have been held by the railroad: "[t]he fact that the defendants' excavation activities do not present a threat to the bicycle and pedestrian path is irrelevant because these activities impinge on the original railroad easement." *Id*.

In *Illig v. United States,* the Court of Federal Claims declined to hold, as those plaintiffs requested, that the original rail easement at issue had been destroyed by means of railbanking. Rather, the *Illig* court held that trail sponsors:

---

[3] The Surface Transportation Board has adopted the same interpretation.
[4] Takings cases are rarely on point because the means by which land has been taken is tangential to the compensatory questions at the heart of those cases.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 6

> [M]ust also make assurances that the right-of-way is kept available for 'future reconstruction and reactivation . . . . for rail service.' In order to meet these requirements, we believe that the Trails Act and its implementing regulations require that a trail sponsor must have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trail sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service. As we discussed above . . . such control is exclusive.

58 Fed. Cl. 619, 631 (2003).

Additionally, in *Geneva Rock Products, Inc. v. United States,* the Court of Federal Claims held that "[r]ail-banking under the Trails Act preserves railroad-purpose easements which otherwise would terminate by operation of law, thus retaining the easements for potential later reactivation of railroad use." 107 Fed. Cl. 166, 168 n.3 (2012).

Finally, in *Barclay v. United States,* the Federal Circuit held that after an NITU's issuance, "the easement continued in existence beyond the time when it otherwise would have been abandoned." 443 F.3d 1368, 1374 (Fed. Cir. 2006).

Plaintiffs do not distinguish or offer any alternative interpretations for the above cases in their Response.

> 3. *The Surface Transportation Board's Decisions Support an Interpretation of the Trails Act as Preserving Railroad Easements Through Railbanking and Allowing for Interim Trail Use.*

In interpreting *Preseault* and the Trails Act, the STB has stated that railroad easements are not destroyed by railbanking.[5] The STB's interpretation is that the Trails Act "preempts State laws that would otherwise result in extinguishment of easements for railroad purposes and

---

[5] In reference to the ICC, the STB's predecessor agency, the Supreme Court noted that "[j]udicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well-settled principle of federal law." *National Railroad Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 417 (1992). Plaintiffs offer no reasons or authority for their bare assertion that these STB decisions are "incorrect procedurally and are incorrect legally under the Trails Act." (Response, Dkt. No. 98 at 5.)

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 7

reversion of rights-of-way to abutting landowners." *Rail Abandonment-Use of Rights-of-Way as Trails,* 2 I.C.C. 2d 591, 596 (Apr. 16, 1986). The STB pronounced that the Trails Act's "language[] and its legislative history[] express congressional intent to preempt State property law that might otherwise require a reversion of rights-of-way upon the discontinuance of rail operations . . . Since the amendment provides that interim trail use under section 1247(d) shall not constitute abandonment of rights-of-way for railroad purposes, *the railroad easement continues and reversionary interests do not mature."* *Id.* at 600 (emphasis added).

### C. Plaintiffs' Responsive Arguments Fail to Create Any Questions of Law Preventing This Court's Award of Summary Judgment on This Legal Issue

In their Response, Plaintiffs repeat many of the arguments this Court did not find compelling in Plaintiffs' Motion for Declaratory Judgment. (*See* Order, Dkt. No. 91.)

Plaintiffs once more assert that "[u]nder Washington law and federal law, by pursuing and entering into a trail use/railbanking agreement, the easement is extinguished and abandoned . . . *Lawson* controls," and that a "use inconsistent with railroad purposes constitutes abandonment of the easement" and that courts "have always declined to find railbanking a railroad purpose." (Plaintiffs' Response, Dkt. No. 98 at 5-6.) However, railbanking under the Trails Act expressly *preempts* abandonment, 16 U.S.C. § 1247(d),[6] *Lawson v. State,* 107 Wash. 2d 444, 446 (1986) is simply not on point as it did not deal with *federal* preemption or with the Trails Act, but rather with Washington State rails to trails law,[7] and whether discontinuance in use would result in reversion under state law *in the absence of the Trails Act* is immaterial here.

It is not inconsistent, as Plaintiffs argue, for Defendants to admit that railbanking is not a railroad purpose, but to simultaneously maintain that the railroad easement still exists.

---

[6] *See City of Ford v. United States,* 106 Fed. Cl. 136, 140 (2012) (holding that in circumstances such as these, federal law, not state law, determines whether abandonment has occurred).
[7] *Lawson* was "on all fours" with *Preseault* only on the limited point that under *state law*, trail use would have been outside the scope of the railroad easement (in the absence of the Trails Act). *Preseault v. United States,* 100 F.3d 1525, 1543 (Fed. Cir. 1996).

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 8

(Plaintiffs' Response, Dkt. No. 98 at 7.)  This is the exact result dictated by the Trails Act.  As Defendants explain:

> It is immaterial whether railbanking is a 'railroad purpose,' because the Trails Act preserves a railroad easement and preempts state reversion law through the mechanism of railbanking regardless of the easement's original purpose.  Indeed, Plaintiffs and their current counsel received nearly $140 million in compensation for the associated taking in this railroad corridor because the Trails Act *prevented* the abandonment and extinguishment of the railroad easement while imposing the additional burden of trail use.

(Defendants' Reply, Dkt. No. 102 at 3.)  *See also Jenkins v. United States*, 102 Fed. Cl. 598, 619 (2011) (holding that NITUs result in a takings by blocking reversion in the face of railroad discontinuance and also by expanding the scope of the easement by adding on trail use).

Also in response, Plaintiffs incorporate by reference their argument from their Motion for Declaratory Judgment that the "[f]ederal cases citing and relying on [the] basic principle of property law" (that when an "easement holder changes the use in a way that goes far beyond the purpose for which the easement was created" then "that railway purposes easement[] terminate[s]") are "too numerous to even cite."  (Response, Dkt. No. 98 at 8.) [8]  But this ignores the inescapable point of law that the Trails Act *preempts* the operation of this basic principle of property law, and prevents both reversion in the face of discontinuance of use (what would otherwise be abandonment under state law) and allows a new easement holder (the trail sponsor) to add an additional use to the easement that is not a railroad purpose – recreational trail use.  This, as Defendants have explained, is why the operation of the Trails Act effectuated a takings on Plaintiffs' land, for which they received just compensation.

Finally, Plaintiffs repeat their assertion that railbanking merely preserves the "physical characteristics" of the railroad corridor for "future reactivation – not current use."  (Plaintiffs'

---

[8] Plaintiffs cite no new cases or authorities beyond those cited in their Motion for Declaratory Judgment, which the Court found did not support the statements of law asserted by Plaintiffs.  *See* Order, Dkt. No. 91 at 15-16 (finding that *Macy Elevator*, *Lawson,* and the many takings/just compensation cases cited by Plaintiffs were not on point).

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT
PAGE - 9

Response, Dkt. No. 98 at 3-4.) But Plaintiffs can point to no language in the Trails Act or in any case dealing with its effects that suggests that this is the case. Again, this interpretation goes against the grain of the simplest, ordinary-meaning interpretation of "preserve."

None of these above arguments create any genuine disputes as to material facts or as to the status of the governing law. Plaintiffs do not offer any responses to or authorities contradicting any of the points of law Defendants have established, as detailed in Section II(A), *supra.* Nor could they. It is simply true as a matter of law that the Trails Act preempts state law and preserves railroad easements despite a discontinuance in railroad use, while permitting the addition of recreational trail use to the easement.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Dkt. No. 95) is GRANTED.

This Court HOLDS AS FOLLOWS:

By its terms, the Trails Act preserves railroad easements in railbanked corridors by preempting abandonment of those easements. When a railroad corridor is railbanked pursuant to the Trails Act, the railroad easements are preserved and trail use becomes a new interim authorized use. BNSF's railbanking of the Eastside Rail Corridor preserved BNSF's railroad easements and allowed interim use of the corridor as a trail.

DATED this 24 day of July 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE