1

2 THE HONORABLE JOHN C. COUGHENOUR

3

4

5
IN THE UNITED STATES DISTRICT COURT
6 WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
7

8 | SCOTT AND KATHRYN KASEBURG, ET AL, | NO. 2:14-CV-000784-JCC

9 |           Plaintiffs,
vs.
10 |                                    | PLAINTIFFS' MOTION FOR PARTIAL
                                        SUMMARY JUDGMENT ON
11 | PORT OF SEATTLE, a municipal corporation; | WHETHER THE DEFENDANTS
PUGET SOUND ENERGY, INC., a Washington | ACQUIRED AN EASEMENT UNDER
for profit corporation,               | THE TRAILS ACT
12 | KING COUNTY, a home rule charter county,
and CENTRAL PUGET SOUND REGIONAL      | NOTE ON MOTION CALENDAR:
13 | TRANSIT AUTHORITY, a municipal      | SEPTEMBER 18, 2015
corporation,
14 |                                     | **ORAL ARGUMENT REQUESTED**
15 |           Defendants.

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page i

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     PROCEDURAL POSTURE AND BACKGROUND RELATED TO THE
        PLAINTIFFS' OWNERSHIP OF THE LAND ............................................................ 3

III.    SUMMARY JUDGMENT STANDARD ..................................................................... 6

IV.     THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE LAKE
        WASHINGTON DEED AND THE CONDEMNATION GRANTED EASEMENTS
        TO THE RAILROAD AS A MATTER OF LAW ........................................................ 7

        A.      Under Washington Law, the Lake Washington Deed and the Condemnation
                Conveyed an Easement for Railroad Purposes ................................................... 8

        B.      The Mapping and Title Work Done by the Port at the Time of Acquisition
                Confirmed that Easements Only were Granted ................................................. 10

        C.      The Defendants Have Already Admitted that the Lake Washington Deed and
                the Condemnation Conveyed Easements for Railroad Purposes ..................... 11

        D.      Judge Lettow of the Court of Federal Claims Has Already Ruled that the
                Lake Washington Deed and the Condemnation Conveyed Easements to the
                Railroad .......................................................................................................... 12

        E.      The Declaration of John Rall Confirms that the Lake Washington Deed and
                the Condemnation Conveyed Easements Only to the Railroad ....................... 13

V.      IF THE RAILROAD ONLY POSSESSED AN EASEMENT FOR RAILROAD
        PURPOSES BY AND THROUGH THE LAKE WASHINGTON DEED AND THE
        CONDEMNATION, THE PORT AND KING COUNTY DID NOT OBTAIN THE
        FEE OWNERSHIP OF THE RIGHT-OF-WAY BY DEFINITION AND AS A
        MATTER OF LAW ............................................................................................... 14

        A.      The Owner of an Easement Does Not Own the Fee ......................................... 14

        B.      Holders of Railroad Easements Have No Ownership Interest in the Portion of
                Fee Ownership Rights Pertaining to the Subsurface and Aerial Rights ........... 15

        C.      The Defendants Cannot Expand the Scope of the Railroad Purposes
                Easement Beyond What was Acquired Pursuant to the Trails Act .................. 17

VI.     THE *HAGGART* SETTLEMENT DID NOT INVOLVE PAYMENT FOR
        PLAINTIFFS' FEE OWNERSHIP OF THE RIGHT-OF-WAY ................................. 21

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

A.   "What" was Taken in *Haggart* was Only the Plaintiffs' Reversionary Rights on the Surface .................................................................................................. 21

B.   *Haggart* Did Not Involve Payment for the Fee, Rather Involved Payment for the Taking of Plaintiffs' "Reversionary" Rights in the Surface—the Difference Between the Land Unencumbered by a Railroad Easement and the Land Now Encumbered by a Surface Easement for a Recreational Trail with the Potential Reactivation of a Railroad. .......................................................... 24

VII.   SINCE THE PORT AND KING COUNTY DON'T OWN THE FEE, AND SINCE FEE OWNERSHIP INCLUDES SUBSURFACE AND AERIAL RIGHTS, THE EASEMENT GRANTS TO PSE AND SOUND TRANSIT, TO THE EXTENT THEY ATTEMPT TO GRANT SUBSURFACE AND AERIAL RIGHTS, ARE NULL AND VOID ..................................................................................................... 25

VIII.   CONCLUSION .......................................................................................... 28

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page iii

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........................................................6

*Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006) ........................................... 22-23

*Beebe v. Swerda*, 793 P.2d 442 (Wash. App. 1990) .......................................................15

*Brown v. State*, 924 P.2d 908 (Wash. 1996) ............................................................... 8-9

*Butler v. Craft Eng. Const. Co.*, 843 P.2d 1071, 1080 (Wash. App. 1982) ..................26

*Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004) ....................................... 22-23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................6

*Ellamae Phillips Co. v. United States*, 564 F.3d 1367 (Fed. Cir. 2009) ........................23

*Energy Transp. Sys., Inc., v. Union Pacific Railroad Company*, 435 F. Supp. 313
   (D. Wyo. 1977) *aff'd sub nom. Energy Transp. Sys., Inc. v. U. Pac. R. Co.*, 606
   F.2d 934 (10th Cir. 1979) .................................................................................16

*Furnace v. Sullivan,* 705 F.3d 1021 (9th Cir. 2013) .........................................................6

*Great Northern Ry. Co. v. United States*, 315 U.S. 262 (1942) .....................................16

*Haggart v. United States*, 108 Fed. Cl. 70 (Fed. Cl. 2012) ...........................2-3, 12, 15, 21, 24-25

*Hanson Indus., Inc. v. County of Spokane*, 58 P.3d 910 (Wash. App. 2002) ...........12, 15

*Hayfield Northern R. Co. v. Chicago & North Western Transp. Co.,* 467 U.S. 622,
   104 S. Ct. 2610, 2617, 81 L.Ed.2d 527 (1984) ...............................................18

*Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171 (10th Cir. 1949)..........................16

*Jenkins v. United States*, 102 Fed. Cl. 598 (Fed. Cl. 2011) ..........................................23

*Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.,* 476 F.2d 829 (10th Cir. 1973) .............16

*Kershaw Sunnyside Ranches v. Yakima Interurban Lines Ass'n*, 2003 WL 25275291
   (Wash. Super 2003) .............................................................................................16

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*,
   126 P.3d 16 (Wash. 2006)...................................................... 8, 15-16, 21, 27

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page iv

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) ........................................................ 22-23

*Lawson v. State*, 730 P.2d 1308 (Wash. 1986) ....................................................................25

*Morsbach v. Thurston Cnty.*, 278 P. 686 (Wash. 1929) .....................................................12

*Neitzel v. Spokane Int.'l Ry.*, 117 P. 864 (Wash. 1911) ...................................................9-10, 12-13

*Northwest Supermarkets, Inc. v. Crabtree,* 338 P.2d 733 (Wash. 1959)...........................27

*Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990) ("*Preseault I*") .............. 18-19, 23

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996)
    ("*Preseault II*") ....................................................................................................... 20-23

*Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011)..............................................23

*Restatement of Property* § 450, Comments A and E, at 2902-03 (1944) ......................26

*Sunnyside Valley Irr. Dist. v. Dickie*, 73 P.3d 369 (Wash, 2003)...................................26

*Swan v. O'Leary*, 225 P.2d 199 (Wash. 1950) ................................................................12

*Toews v. United States*, 376 F.3d 1371 (Fed. Cir. 2004); ..............................................19

*Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 130 P.3d 880
    (Wash. App. 2006)...........................................................................................15, 17

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

2

## I.   INTRODUCTION

As a matter of basic property law, somebody owns the fee in the former railroad right-of-way.[1]  Plaintiffs herein claim they own the fee.[2]  But, what is evident from the historical context in this case surrounding this conversion from an operating railroad to a hiking and biking trail, is that neither the Port of Seattle ("Port"), who acquired a surface easement,[3] or King County, who acquired an easement for a hiking and biking trail, own the fee in the right-of-way.  It is also clear that the other Defendants, Puget Sound Energy, Inc. ("PSE") and Central Puget Sound Regional Transit Authority ("Sound Transit"), who obtained invalid easements from the Port, do not even make any claim to fee ownership.[4]

Since somebody has to own the fee in the right-of-way, it is first critical to determine what interest the Burlington Northern Santa Fe Railroad ("BNSF") held when the Port initially acquired the right-of-way from the railroad.  Plaintiffs assert, and in fact there doesn't seem to be any opposition to the fact, that the BNSF had a surface easement for its railroad purposes, and the Port acquired a trail/railbanked easement by and through the Trails Act.[5]  Although the scope

---

[1]  As will be demonstrated herein, under Washington law, fee ownership includes the surface of the land and the subsurface below and the aerial above.  *See* Section V *infra*.

[2]  Plaintiffs claim fee ownership in their Complaint, pursuant to the centerline presumption under Washington law, and will ultimately be put to their proof under their quiet title cause of action.

[3]  Pursuant to the Trails Act, the railroad purposes easement has been converted to a trail/railbanked easement.  The Port acquired the trail/railbanked easement and then passed it on to King County.

[4]  The easements granted by the Port to both PSE and Sound Transit, to the extent they purport to invade these Plaintiffs' fee ownership, particularly in the subsurface and aerial rights owned by these Plaintiffs, are null and void.  *See* Section VII *infra*.

[5]  There are 3 original source conveyances to the railroad at issue with respect to the 85 Plaintiffs in this case. Because the Defendants attacked the nature of the conveyance with respect to the Kittinger deed, that fight will wait for another day.  As a result, this motion is brought on behalf of 58 Plaintiffs who own land adjacent to the right-of-way where the railroad originally acquired an easement by and through either the Lake Washington Belt Line deed or the State of Washington condemnation.  *See* Straup Decl., Exhibit A, ¶ 18-19, and exhibits attached thereto; *see also* § II *infra*.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 1

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

of the existing easement on the right-of-way can and will be debated at some other time,[6] you simply cannot convert an easement to fee ownership by and through the Trails Act and BNSF cannot transfer anymore interest in the right-of-way than it held.

The Port transferred their interest in the right-of-way to King County and King County became the ultimate trail operator pursuant to the Trails Act.  Plaintiffs argued that the railroad purposes easement was extinguished and a new hiking and biking trail easement now burdens the fee ownership of these Plaintiffs.  King County went to great lengths to establish that the original railroad purposes easement was "preserved" under the Trails Act.  But, that is immaterial—if the original railroad purposes easement is preserved for future railroad uses and a new hiking and biking trail easement with the potential future use for railroad purposes (railbanking) has now been added on top of that, you simply cannot convert a railroad purposes easement and a hiking and biking trail easement into fee ownership by and through the Trails Act.

Fee ownership of land is the greatest estate and includes all of the rights in the land, including surface, subsurface, and aerial rights.[7]  An easement, on the other hand, is a limited right to use the land for a particular purpose.  Here, under these facts, since the Port and King County only obtained easements by and through the Trails Act, Plaintiffs move for summary judgment and will prove that:

---

[6] The Defendants herein will probably admit that the railroad had an easement and that they don't own the fee.  But, they will probably attempt to argue that the "preserved" railroad purposes easement gives them the right to use their easement any way that they want under the purported "incidental use" doctrine and to invade the fee ownership of the land, including subsurface and aerial rights.  Although Plaintiffs herein will ultimately prove that they own the fee under the longstanding centerline presumption, just like in *Haggart*, the scope of what the Defendants can and cannot do with their easement should be determined after a final determination that the railroad only had an easement, that the Port and King County only acquired an easement by and through the Trails Act, and that the Port and King County didn't' somehow acquire the fee by and through the Trails Act.

[7] *See* Section V *infra*.

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1. BNSF only had an easement for railroad purposes on the surface of Plaintiffs' fee ownership by and through the Lake Washington Belt Line deed and the State of Washington condemnation;

2. Since BNSF only had an easement, and the Port and King County only acquired an easement by and through the Trails Act, the Port, and ultimately King County, do not own the fee in the railroad right-of-way by definition;

3. Since subsurface and aerial rights are part of fee ownership, and since the Port and King County do not and cannot own the fee in the right-of-way, the Port and King County do not own any interest in the subsurface and aerial rights within the right-of-way;

4. The applicable Plaintiffs in *Haggart*[8] were paid for their reversionary interest in the right-of-way, in essence their surface rights that the railroad was using, and they have not been paid for their subsurface and aerial rights contained within their fee ownership as a matter of law; and

5. Since the Port and King County don't own the fee in the right-of-way, and didn't acquire the fee ownership in the right-of-way by and through the Trails Act, and since the Plaintiffs' fee ownership in the right-of-way includes subsurface and aerial rights, the easements from the Port to PSE and Sound Transit are null and void, at least so far as they attempt to further burden the Plaintiffs' fee ownership rights in the subsurface and aerial portions of the right-of-way.[9]

## II. PROCEDURAL POSTURE AND BACKGROUND RELATED TO THE PLAINTIFFS' OWNERSHIP OF THE LAND

This Motion does not apply to all 85 Plaintiffs. Plaintiffs' motion for declaratory judgment sought a ruling that the 3 original source conveyances conveyed easements to the railroad. Unfortunately, despite Judge Lettow's opinion in *Haggart*, the Port's own maps, and

---

[8] The Defendants continue to argue that the payment in *Haggart* somehow bars their claims in this lawsuit because the Plaintiffs have already been paid for their fee ownership rights. Although Defendants' arguments are wrong as a matter of law, *see* discussion in Section VI *infra*, the argument doesn't even apply to 17 Plaintiffs who weren't even part of the *Haggart* settlement, as follows: #5, Kommendat; #6, Blokker; #15, Easton; #21, Riley; #29, Vaughn; #30, Howell; #36, Chen and Li; #40, Jones; #43, Kaner; #46, Burroughs; #55, Francehina; #63, Heily; #69, Williamson; #73, DeMund; #76, Zhoui, #77, Humphrey; and #83, Crosetto.

[9] *See* Section VII *infra*.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 3

title reports prepared on behalf of the Port and King County to the contrary,[10] Defendants took the position that the Kittinger deed conveyed fee title to the railroad.  It is certainly the Defendants' right to take contrary positions than what their own documents reveal, but the fact remains that the Defendants did not even object and Plaintiffs' declarations herein establish[11] that the Lake Washington Belt Line Deed ("Lake Washington deed") and the State of Washington Condemnation ("Condemnation") granted easements to the railroad for their railroad purposes.

Since the Kittinger deed is not included in this motion, only those Plaintiffs who own land adjacent to the right-of-way where the railroad originally acquired their easement by and through the Lake Washington deed and the Condemnation are included.  There are 58 Plaintiffs who bring this motion because their land adjoins the right-of-way where the railroad obtained an easement either by and through the Lake Washington deed or the Condemnation and, therefore, they are presumed to own the fee underlying the right-of-way under Washington law as well.[12]

Pursuant to the Railroad Valuation Act of 1913, the Interstate Commerce Commission ("ICC") required every American railroad to prepare an inventory of all property owned in 1915, including their right of ways, in the form of Valuation Maps and Valuation Schedules.  49 U.S.C. § 10781-10708, 37 Stat. 701 *repealed* 92 Stat. 1466, 1470, Pub. L. No. 95-473, § 4(b) (Oct. 17, 1978).  These Valuation Maps and Valuation Schedules have been preserved in the United States

---

[10] *See* Section IV *infra*.

[11] *See* Straup Decl., Exhibit A; Rall Decl., Exhibit B; Section IV *infra*.

[12] As shown in Exhibit A to Plaintiffs' Motion for Declaratory Judgment (Doc. 55), 38 Plaintiffs own land adjacent to the corridor originally acquired by the railroad through the Lake Washington deed, 27 Plaintiffs own land adjacent to the corridor originally acquired by the railroad through the Kittinger deed, and 20 Plaintiffs own land adjacent to the corridor originally acquired by the railroad through the State of Washington condemnation.  The 38 Plaintiffs from the Lake Washington deed and the 20 Plaintiffs from the Condemnation bring this current motion.  *See* Straup Decl., Exhibit A, ¶ 19.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 4

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

National Archives ("NARA").  *See* https://research.archives.gov/id/562366, last visited August 10, 2015.  The railroad right-of-way at issue in this case extends from Renton, Washington to Woodinville, Washington with a spur track through Redmond, Washington, along the eastern shore of Lake Washington.

Using the above-referenced Valuation Maps and Schedules, and various other documents describing the right-of-way, Straup Solutions, LLC created a map depicting the portions of the right-of-way corresponding to the land described by the Lake Washington deed and the Condemnation.  *See* Straup Decl., Exhibit A, ¶¶ 12-17, and accompanying exhibits thereto.  The map created by Straup Solutions, LLC is attached to Ms. Straup's Declaration as Exhibit A-6.

By referencing the valuation map, the moving Plaintiffs' ownership deeds, and by consulting the King County title maps, Ms. Straup also assembled a list describing where each of the moving Plaintiffs' property lies in relation to the portions of the right-of-way corresponding to the Lake Washington deed and/or the Condemnation.  *See id* at ¶¶18, 19.  This listing of the moving Plaintiffs and their respective properties is attached to Ms. Straup's Declaration as Exhibit A-8.

The accuracy of the Straup Solutions, LLC map is supported by the previous mapping of the Lake Washington deed and the Condemnation performed by the Port.  As explained by Ms. Straup in her Declaration, and as is clear when one compares the two sets of maps, the Port's mapping and Ms. Straup's mapping are virtually identical.  *See id* at ¶¶15, 16.  Ms. Straup's Declaration and the documents attached thereto therefore conclusively show that each of the moving Plaintiffs own property that adjoins the portions of the railroad right-of-way that the original railroad acquired via the Lake Washington deed and/or the Condemnation.  *See id.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 5

### III.   SUMMARY JUDGMENT STANDARD

Rule 56(a) provides that "the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To avoid summary judgment, the non-moving party must present, by affidavits, depositions, answers to interrogatories, or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. If, as to any given material fact, evidence produced by the moving party... conflicts with evidence produced by the nonmoving party..., [the court] must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan,* 705 F.3d 1021, 1026 (9th Cir. 2013). In resolving summary judgment motions, courts are not at liberty to weigh the evidence, make credibility determinations, or draw inferences from the facts that are adverse to the non-moving party. As the Supreme Court has held, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 6

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Here, there are actually no disputed issues of material fact.[13]  The issues presented are issues of law only and Plaintiffs are entitled to judgment as a matter of law that the Lake Washington deed and the Condemnation conveyed an easement to the railroad.  Every other legal issue flows directly from that point of law and also do not involve any genuine issues of material fact.

## IV.   THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE LAKE WASHINGTON DEED AND THE CONDEMNATION GRANTED EASEMENTS TO THE RAILROAD AS A MATTER OF LAW

The first and most pivotal issue in this litigation is whether BNSF held an easement for its railroad purposes or owned a fee simple interest in the right-of-way.  If BNSF owned the right-of-way in fee simple, then these Plaintiffs' claims cannot succeed.  However, if the BNSF held an easement for railroad purposes, then the Port and ultimately King County obtained an easement as well.  It is Plaintiffs' position that BNSF's property interest in the right-of-way was limited to a surface easement for railroad purposes and that neither the Port nor King County acquired any fee ownership in the right-of-way.

Plaintiffs previously sought a declaratory judgment from this Court on whether all 3 of the original source conveyances at issue to the railroad conveyed an easement or fee.  The Defendants admitted that 2 of the 3 original source conveyances granted easements to the railroad, the Lake Washington deed and the Condemnation, but the Defendants disputed the legal nature of the Kittinger conveyance (despite their own title company's opinion).  This Court ruled that disputes of material fact remained with respect to the Kittinger deed and never directly ruled

---

[13] All of the pertinent facts have already been presented to the Court on several occasions by all parties in prior pleadings, including the Complaint, Plaintiffs' Motion for Declaratory Judgment , and Defendants' Motions to Dismiss and for Summary Judgment and won't be repeated herein.  All of the basic facts are uncontested at this point, leaving only questions of law.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 7

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

concerning either the Lake Washington deed or the Condemnation.  Now, 58 of the 85 Plaintiffs seek summary judgment that the Lake Washington deed and the Condemnation conveyed easements to the railroad in the right-of-way for their railroad purposes for the following reasons: (1) the law of Washington clearly establishes they conveyed easements to the railroad; (2) the Defendants have admitted they conveyed easements to the railroad; and (3) Plaintiffs' declarations establish the fact that they both conveyed easements to the railroad.

### A. Under Washington Law, the Lake Washington Deed and the Condemnation Conveyed an Easement for Railroad Purposes

The entire history of numerous cases decided by the Washington Supreme Court concerning whether the railroad acquired an easement or fee has already been briefed.[14]  Under Washington law, "[A] party wishing to prove that a [railroad right of way deed] conveys only an easement interest has the burden of showing less than fee simple title was intended to be conveyed." *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 126 P.3d 16, 22 (2006).  In *Brown v. State*, 924 P.2d 908 (Wash. 1996), the Washington Supreme Court announced the following 7 factors to be utilized to ascertain whether a deed to a railroad conveys a fee or an easement:

> (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right-of-way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the

---

[14] Plaintiffs' Motion for Declaratory Judgment set forth every case from the Washington Supreme Court over 100+ years.  *See* Doc. 55, Section III, at pgs. 3-14.  That analysis will not be repeated herein but is, instead, incorporated by reference.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 8

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.

*Id.* at 438 (citations omitted).

An analysis of the Lake Washington deed under the *Brown* factors reveals that the parties to the deed unambiguously intended to convey a surface easement for railroad purposes over the right-of-way. Rather than conveying a strip of land, the Lake Washington deed "does grant … a right-of-way." *See* Rall Decl., Exhibit B. Furthermore, the granted right-of-way is "over and across" the described premises, and the parties specify that the right-of-way is "for the construction operation and maintenance of said Railroad Company's proposed line of Railroad." *Id*. In addition, the parties state that the right will continue "so long as the same shall be used for railroad purposes." *Id*. And finally, the consideration ($1.00) is nominal. *Id*. Thus, the deed meets with all of the *Brown* factors (1 through 6) that support a finding that the parties intended that an easement for railroad purposes was to be conveyed. *See Brown*, 924 P.2d at 438.

In addition, under Washington law, when the railroad appropriated the land by condemnation, its use of the land was limited to an easement for railroad purposes. Under Washington law, the use of appropriated land is limited to the purpose for which it was taken. *See Neitzel v. Spokane Int.'l Ry.*, 117 P. 864 (Wash. 1911). In *Neitzel*, a railroad originally acquired an easement for its "corporate purposes" because its purposes were deemed to be a "public use." *Id*. at 865. The railroad later allowed a private wholesale grocer to lease part of the land and conduct business on it. The court in *Neitzel* noted that the railroad had acquired an easement "only as it needed for its corporate purposes, constituting a public use" and the court concluded that the plain language of the condemnation suggested that the railroad's easement allowed for common carrier activities undertaken for a railroad purpose.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 9

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The language of the condemnation interpreted by the Washington Supreme Court in *Neitzel* is quite similar to that of the Condemnation at issue here.  *See* Rall Decl., Exhibit B.  In both situations, the land was condemned for use as an easement for the railroad and its corporate purposes as a common carrier to serve the public. *See id.*  It follows that the Northern Pacific and Puget Sound Shore Railroad Company acquired an easement for railroad purposes only as a result of the Condemnation.

### B. The Mapping and Title Work Done by the Port at the Time of Acquisition Confirmed that Easements Only were Granted

In 2004, in anticipation of the potential acquisition of the railroad corridor—long before the actual acquisition of the railroad corridor—the Port commissioned Pacific Title Company to perform title research and map all of the original railroad source conveyances along the railroad right-of-way, as well as provide "opinion and characterization" as to whether the railroad owned the land in fee or only held an easement.  (*See* complete set of the Port of Seattle commissioned maps attached hereto as Exhibit C).  Pacific Title opined that the original source conveyances either conveyed fee title to the railroad (highlighted blue), conveyed an easement to the railroad (highlighted red), or the title to the railroad was "questionable" (highlighted yellow).

Most importantly, here, Pacific Title opined that the Lake Washington deed and the Condemnation conveyed an easement in their "opinion and characterization" of the nature of the conveyance.  (Opinion and Characterizations attached as Exhibit D).  Therefore, even pursuant to the Port's own maps and title reports, the Lake Washington deed and the Condemnation conveyed an easement, which is not disputed, and should be conceded by the Defendants.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 10

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

### C. The Defendants Have Already Admitted that the Lake Washington Deed and the Condemnation Conveyed Easements for Railroad Purposes

In the previous briefing before this Court on Plaintiffs' Motion for Declaratory Judgment (*See* ECF No. 55), defendants King County and Sound Transit conceded that the Lake Washington deed and the Condemnation transferred only easements to the Northern Pacific and Puget Sound Shore Railroad Company. *See* King County's Resp. to Pls.' Mot. for Decl. J., ECF No. 67 at p. 16 ("King County agrees that the 'Lake Washington Belt Line Deed' and the 'Condemnation Deed' (King Cy. No. 40536) transferred only easement rights to BNSF's predecessor railroad."); Sound Transit's Opp. to Pls.' Mot for Decl. J., ECF No. 73 at p. 1, n. 2 ("Sound Transit concedes that the Lake Washington Belt Line Co. deed and the State of Washington condemnation conveyed easements for railroad purposes.").

In addition, neither the Port nor PSE submitted any opposition to Plaintiffs' arguments that the Lake Washington deed and the Condemnation granted easements. *See* Port of Seattle's Opp. to Pls.' Mot. for Decl. J., ECF No. 72; PSE's Resp. to Pls.' Mot. for Decl. J., ECF No. 66. In fact, the Port and PSE affirmatively stated in their prior briefing that they adopted King County's position regarding the two conveyances in full. *See* ECF No. 72 at p1 n.2 ("The Port's brief is limited to [whether the Trails Act eliminated the right-of-way] as the Port understands King County will address the deed issues."); ECF No. 66 at p16. ("PSE hereby incorporates by reference [the opposition briefs submitted by the other defendants]"). Thus, all of the Defendants have admitted that the Lake Washington deed and the Condemnation conveyed easements for railroad purposes.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 11

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**D. Judge Lettow of the Court of Federal Claims Has Already Ruled that the Lake Washington Deed and the Condemnation Conveyed Easements to the Railroad**

After noting that the Lake Washington deed stated that it was "for the construction, operation, and maintenance" of the railroad "on, over, across, and through" Plaintiffs' land "so long as the [strip of land] shall be used for railroad purposes," Judge Lettow concluded that:

> The plain language of the deeds at issue limits the scope of the easements to "railroad purposes," noting that the railroad and its assigns are granted an easement to construct and operate a railroad, but must cede the easement when the land is no longer "used for railroad purposes."  Consistent with the plain language of the deeds, Washington courts have stated that deeds containing similar, or even less precise language, conveyed easements that were limited to railroad purposes.  *See Swan v. O'Leary*, 225 P.2d 199, 199-201 (Wash. 1950) (en banc) (holding that a grant "for the purpose of a Railroad right-of-way" was an easement that was abandoned when a logging railroad terminated its operations); *Morsbach v. Thurston Cnty.*, 278 P. 686 (Wash. 1929) (holding that a grant of a right-of-way for the construction of a railroad was an easement for railroad purposes); *Hanson Indus., Inc. v. County of Spokane*, 58 P.3d 910, 914 (Wash. App. 2002) ("Washington decisions have consistently interpreted deeds granting a strip of land for a railroad right-of-way as conveying an easement, even in the face of traditional factors signifying a fee.").  Thus, the court holds that the source deeds at issue granted an easement for railroad purposes only.

*Haggart v. United States*, 108 Fed. Cl. 70, (Fed. Cl. 2012).

Judge Lettow also concluded that land appropriated by condemnation is limited to the purpose for which it was taken.  Relying on *Neitzel*, Judge Lettow concluded:

> In *Neitzel*, a railroad had earlier acquired an easement for its "corporate purposes" because those purposes were deemed to be a "public use."  *Id.* at 865.  It later allowed a private wholesale grocer to lease part of the land and conduct business on it.  *Id.* at 869.  The court in *Neitzel* noted that the railroad had acquired an easement "only as it needed for its corporate purposes, constituting a public use."  *Id.* at 867.  While the court in other paragraphs referred generally to the purpose of the easement as one of "public use," this was merely shorthand for the aforementioned phrase.  As the plain language of the condemnation suggested, the railroad's easement allowed for common carrier activities —*i.e.,* activities undertaken for a railroad purpose—that served the general public.  The court concluded that "[i]t cannot be seriously argued that a wholesale grocery business conducted by private corporation is a public use."  *Id.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 12

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

In both the *Neitzel* condemnation and the Condemnation in this case, the land was condemned for use as an easement for railroad purposes. As such, Judge Lettow pointed out, it follows that BNSF, as the successor to the Northern Pacific Railway Company, acquired an easement for railroad purposes <u>only</u> as a result of the Condemnation.

### E.  The Declaration of John Rall Confirms that the Lake Washington Deed and the Condemnation Conveyed Easements Only to the Railroad

Plaintiffs' title expert, Mr. John Rall, likewise reviewed and analyzed the Lake Washington deed and the Condemnation. *See* Rall Decl., Exhibit B, at ¶¶ 5-7. Mr. Rall concluded that the two instruments convey and describe an easement for railroad purposes in the right-of-way located as indicated by the map prepared by Ms. Straup. *See id.* at ¶9. Mr. Rall further verified his conclusions by reviewing previous title work performed on the right-of-way on behalf of the Port and produced by King County. *See id.* at ¶¶13, 14.

In addition, Mr. Rall states that the Northern Pacific and Puget Sound Shore Railroad Company changed names and ownership on several occasions over many decades, and that BNSF became the eventual owner of the easement for railroad purposes conveyed by the Lake Washington deed and the Condemnation. *See id.* at ¶10. As a result, according to Mr. Rall, when the railroad right-of-way was transferred by BNSF to the Port pursuant to the Trails Act, the extent of the interest received by the Port was no more than what was owned by BNSF. *See id.* at ¶¶11, 12. Thus, there is no issue of any material fact that BNSF is the successor-in-interest to the portions of the right-of-way at issue and that the Port succeeded to BNSF's interest and nothing more when the land was quit-claimed to the Port pursuant to the Trails Act.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 13

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**V.   IF THE RAILROAD ONLY POSSESSED AN EASEMENT FOR RAILROAD PURPOSES BY AND THROUGH THE LAKE WASHINGTON DEED AND THE CONDEMNATION, THE PORT AND KING COUNTY DID NOT OBTAIN THE FEE OWNERSHIP OF THE RIGHT-OF-WAY BY DEFINITION AND AS A MATTER OF LAW**

The fee title to the land within the right-of-way includes surface, subsurface and aerial rights.  The surface was initially burdened with an easement for the railroad's purposes and is now encumbered with a surface easement for a hiking and biking trail with the possible reactivation of a railroad (known as "railbanking") pursuant to the Trails Act.  The Plaintiffs' reversionary interest, the right to their land unencumbered by the railroad purposes easement, was taken from Plaintiffs by the federal government pursuant to the Trails Act.  By operation of the Trails Act, the railroad line was ultimately transferred to the Port and then King County in order that the property may be used for a public recreational trail.  Since the railroad only had railroad rights for an easement on the surface of the land, then that is all the right, title and interest that the railroad could have transferred to the Port and the Port could only transfer a surface easement to King County.

**A.   The Owner of an Easement Does Not Own the Fee**

"The fee simple absolute is the 'largest' estate, meaning that it may last the longest. Law books are fond of saying it is of potentially infinite duration."  *See* 17 Wash. Prac., Real Estate § 1.3 (2d ed.), 1.3 Fee Simple Absolute.  As with all estates, during the time of ownership, the owner of a fee simple is entitled to all the rights of possession in the surface, subsurface and aerial rights.  *Id*.  Here, Plaintiffs own fee simple title to their property including the underlying

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 14

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

fee in the railroad right-of-way.[15]

"An easement is generally defined as '[a] right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with a general property in the owner." *Beebe v. Swerda*, 793 P.2d 442, 445 (Wash. App. 1990) (*citing Black's Law Dictionary* 599 (rev. 4th ed. 1968)).   Although a railroad easement is typically regarded as more than an ordinary easement, they nonetheless can be held only so long as they are devoted to railroad purposes.  *See Hanson Industries, Inc. v. County of Spokane*, 58 P.3d 910, 914 (Wash. App. 2002).  And no matter what use the right-of-way is put, a railroad's interest can never rise to fee ownership, since "a railroad with a right-of-way held in easement **has no title to the underlying property**." *Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 130 P.3d 880, 887 (Wash. App. 2006) (emphasis added).[16]

### B. Holders of Railroad Easements Have No Ownership Interest in the Portion of Fee Ownership Rights Pertaining to the Subsurface and Aerial Rights

Courts are nearly unanimous in holding that railroad easements do not encompass subsurface and aerial rights.  *See Kershaw,* 126 P.3d at 28.   In *Kershaw*, a communications company laid fiber optic cable in the subsurface of a railroad right-of-way and Kershaw sued for trespass arguing that the railroad only held an easement for railroad purposes and, as the fee owner of the land, he owned the subsurface such that the installation of fiber optic cable

---

[15] All of the adjacent landowners own the underlying fee in the railroad corridor pursuant to the centerline presumption as recognized and enforced under Washington law.  *See Kershaw*, 126 P.3d 16; *see also Haggart*, 108 Fed. Cl. 70, where the United States Court of Federal Claims has already ruled that the adjoining landowners own the underlying fee in the railroad corridor, that the railroad obtained a mere easement for their railroad purposes, and that a "takings" occurred of the surface easement under the Trails Act.

[16] The legal conclusions that a railroad with an easement for railroad purposes does not own the fee in the land is basic property law and is supported by Washington's incidental use doctrine, which states that a railroad may use its right-of-way easement to conduct non railroad-related activities, but only incidental activities in aid of its railroad that are not inconsistent with and do not interfere with the operation of the railroad.  *Kershaw*, 126 P.3d at 27.  Indeed, when a railroad right-of-way is utilized in a manner that is not incidental to railroad purposes, then such is regarded as a trespass.  *Id*.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 15

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

constituted a trespass.  Both the trial court and the Washington Supreme Court reached that exact conclusion.  *See Kershaw Sunnyside Ranches v. Yakima Interurban Lines Ass'n*, 2003 WL 25275291 (Wash. Super 2003); *Kershaw,* 126 P.3d 16.

The fiber optic company in *Kershaw* argued that no trespass occurred because the railroad had authorization to allow fiber optic cable in the subsurface of Kershaw's land under the incidental use doctrine.  The trial court rejected that argument.  *Kershaw*, 2003 WL 25275291. The trial court held that incidental uses are measured by what is reasonably necessary for the building, operation and maintenance of the railroad, and where the fiber optic cable will be used substantially to service other members of the public and where the railroad is not significantly dependent on the fiber optic cable for its primary means of communication, the cable is not an "incidental use" of the railroad.  *Id*.  The Supreme Court affirmed.  *Kershaw*, 126 P.3d 16; *see also*, *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 279 (1942) (since the 1875 Act granted only an easement, but no title to the subsurface lying in the servient estate, the railroad "had no right to the underlying oil and minerals."); *Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.,* 476 F.2d 829, 835 (10th Cir. 1973) (use of the land for railroad purposes "cannot deprive the owner of the servient estate… from making use of the land in strata below the surface and below substrata… and which in nowise, as in the instant cases, interferes with the construction, maintenance and operation of the railroad."); *Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171, 172-173 (10th Cir. 1949) (any use of subsurface by railroad must be for railroad purposes and railroad cannot grant "any part of their right-of-way for private use… "); *Energy Transp. Sys., Inc., v. Union Pacific Railroad Company*, 435 F. Supp. 313, 318 (D. Wyo. 1977) *aff'd sub nom. Energy Transp. Sys., Inc. v. U. Pac. R. Co.*, 606 F.2d 934 (10th Cir. 1979) (the

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 16

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

court separated the surface grant from the servient estate underlying it, opining that "the 'land forming the right-of-way' did not include the subsoil, servient estate.").

It follows that the Defendants do not own any interest and have no legal rights in the right-of-way adjoining the moving Plaintiffs' property beyond that which was owned by BNSF. This is so because the incidental use doctrine naturally carries over to subsequent railroad transferees of railroad right-of-ways. *See Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 130 P.3d 880, 887 (Wash. App. 2006) (a railroad may alienate a portion of its property "so long as the transfer results in a use of the right-of-way that is not inconsistent and does not interfere with the operation of the railroad."). Since Washington law is clear that railroads do not own the fee interest in their rights-of-way where they only hold an easement, then as a matter of law neither do any of the Defendants. Accordingly, the moving Plaintiffs are entitled to summary judgment on the issue that the Defendants did not acquire the fee interest in the railroad right-of-way where the right-of-way is comprised of the easements acquired by the Lake Washington deed and the Condemnation deed.

### C. The Defendants Cannot Expand the Scope of the Railroad Purposes Easement Beyond What was Acquired Pursuant to the Trails Act

The Defendants selectively mix and contort the case law to somehow say that they acquired more than a surface easement for trail purposes via the Trails Act. Not so. The Port and King County only acquired a surface easement pursuant to the Trail Act, period. The intent of the Trails Act is to create public trails from unused railroad rights-of-way. While by its legislative history, the Trails Act also has the stated purpose of preserving the rail corridors <u>in case</u> they are needed in the future, the main intent of Congress was to create public trails. The

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 17

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

takings cases arise because those public trails are often placed on private land, but with no compensation to the landowner, and therein lies the Fifth Amendment taking.

The Supreme Court gleaned that precise intent in its review of the Trails Act when it noted that passage of the Amendments of 1983 to the Trails Act was "the culmination of congressional efforts to preserve shrinking rail trackage **by _converting_ unused rights-of-way _to recreational trails._**"   *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 4 (1990) ("*Preseault I*") (emphasis added).   The Supreme Court noted that under the Trails Act, "trail *conversion* [of the unused rights of way] is permitted *after* the Commission [ICC at the time, now the STB] determines that rail service will not be needed in the foreseeable future."   *Id*. at 8. Hence, the most fundamental and obvious point here is that the Trails Act creates and converts railroad purposes easements to public trail easements out of unused rail corridors where trains no longer operate and will not be needed in the foreseeable future.

Focusing on the impact of interim trail use of a railroad easement, and the impact of the Trails Act, the Supreme Court specifically noted that Section 8(d) of the amended Trails Act provides that **interim trail use** "shall not be treated for any purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."   "By deeming **interim trail use** to be like discontinuance[17] rather than abandonment, **Congress prevented property interests from reverting** under state law."   *Preseault I*, 494 U.S. at 8.   Before sending the

---

[17] In *Preseault I,* at 5, The Supreme Court explained that: "There is an important distinction in the Interstate Commerce Act between "abandonment" of a rail line and "discontinuance" of service. See 49 U.S.C. § 10903 (1982 ed.). Once a carrier "abandons" a rail line pursuant to authority granted by the Interstate Commerce Commission, the line is no longer part of the national transportation system, and although the Commission is empowered to impose conditions on abandonments, see, e.g. 49 U.S.C. §§ 10905(f)(4), 10906 (1982 ed.), as a general proposition ICC jurisdiction terminates. See *Hayfield Northern R. Co. v. Chicago & North Western Transp. Co.,* 467 U.S. 622, 633-634, 104 S.Ct. 2610, 2617, 81 L.Ed.2d 527 (1984); 54 Fed.Reg. 8011-8012 (1989).   In contrast, "discontinuance" authority allows a railroad to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future."

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 18

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

*Preseaults* to the Court of Federal Claims to file a Tucker Act claim—the proper remedy for a taking of this nature—the Supreme Court quite properly noted that:

> [U]nder any view of takings law, only some rail-to-trail <u>conversions</u> will amount to takings. Some rights of way are held in fee simple…. Others are held as easements by the railroad that do not even as a matter of state law revert upon interim authorization for use as nature trails.

*Preseault* I, 494 U.S. at 16 (citations omitted) (emphasis added).

In addressing the question of whether there had been a taking by reason of trail use exceeding the scope of the railroad easement under state law, the Federal Circuit noted that: "It appears beyond cavil that use of these easements for a recreational trail… is not the same use made by a railroad…. the different uses create different burdens."  *Toews v. United States*, 376 F.3d 1376 (Fed. Cir. 2004). Note that the Federal Circuit did not say trail use created incremental burdens, it said "**different"** burdens.  The fact that the burden is different and not just more of the same original burden is what causes the extinguishment. It then went on to hold as follows:

> We have concluded that the trial court correctly found the scope of the easement not to encompass the new use as a recreational trail. As a result of the imposition of the recreational trail and linear park, the easement for railroad purposes was **converted into a new and different easement.**

*Toews,* 376 F.3d at 1381 (emphasis added).

Importantly, note further that the Federal Circuit did not say the different use added some incremental burden to the continuation of an existing easement, nor did it say that the trail user obtained anything more than a surface easement for a recreational trail.  It said the easement was converted into a **new** and **different** <u>easement</u> (a trail/railbanked easement).  This is precisely in keeping with state law which would have operated to cause the easement extinguishment and reversion of the landowners' rights when the railroad stopped operating trains and instead

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 19

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2

allowed the right-of-way to be used for a new and different purpose, thereby exceeding the scope of the original railroad easement purpose.

3

Furthermore, railbanking is not a railroad purpose and does not create any additional

4

rights to the land by the trail user.  Railbanking preserves the railroad easement for future use

5

and amounts to a non-vested future interest.  As Judges Rader and Lourie so ably and aptly noted

6

in their concurrence in *Preseault II*:

7
8
9
10

> The vague notion that the State may at some time in the future return the property to the use for which it was originally granted, <u>does not override its present use of that property inconsistent with the easement</u>.   That conversion demands compensation. Moreover, the United States facilitated that conversion with its laws and regulatory approval.

11

*Preseault v. United States*, 100 F.3d 1554 (Fed. Cir. 1996) ("*Preseault II*") (emphasis added).

12

The Federal Circuit in *Toews* again left no doubt that any attempt by the Defendants in

13

this case to expand uses because the railroad's easement has been preserved for possible future

14

railroad uses is totally meritless:

15
16
17
18

> There is a reality test in takings law. It is clear from the record that for the foreseeable future these lands will be used for the recreational trail project. Whether there ever will be a light rail system or other railroad service over these paved routes in Clovis is a matter of speculation about the distant future, based on uncertain economic and social change, and a change in government policy by managers not yet known or perhaps even born.

19
20

*Toews,* 376 F.3d at 1381.

21

In sum, the railroad only held an easement for railroad purposes on the surface of the

22

Plaintiffs' land and, pursuant to the Trails Act, the railroad purposes easement was converted to a

23

recreational trail/railbanked easement.  As a result, the Port and King County acquired nothing

24

more than a surface easement upon Plaintiffs' land.

25

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 20

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

This result is also supported by Washington's incidental use doctrine, which states that a railroad may use its right-of-way easement to conduct underline(railroad-related activities) (but only incidental activities that are not inconsistent with and do not interfere with the operation of the railroad). *Kershaw,* 126 P.3d at 27. Indeed, when a railroad right-of-way is utilized in a manner that is not incidental to railroad purposes, then the use is regarded as a trespass. *See id* at 277. In sum, the railroad only held an easement for railroad purposes on the surface of Plaintiffs' land pursuant to the Trails Act, the railroad purposes easement was converted to a trail/railbanked easement, and potential incidental uses as if the railroad was still operating have absolutely nothing to do with the property issues in dispute in this case.

## VI.   THE *HAGGART* SETTLEMENT DID NOT INVOLVE PAYMENT FOR PLAINTIFFS' FEE OWNERSHIP OF THE RIGHT-OF-WAY

### A.   "What" was Taken in *Haggart* was Only the Plaintiffs' Reversionary Rights on the Surface

In every Court of Federal Claims case and every Federal Circuit case, "what" was taken was the rights the landowner had under state law to use his property without any easement—their "reversionary" interest in their land, and nothing more. Due to the NITU, the railroad was authorized to negotiate to convert the right-of-way to be used as a public trail and the *Haggart* Plaintiffs' reversionary interest was taken—which by definition was the right to the surface of their land unencumbered by a railroad purposes easement and the authorization for the conversion of the railroad purposes easement to a trail easement.

The Federal Circuit has repeatedly and consistently described the taking that occurs when the fee owner's reversionary interest is blocked or destroyed. In *Preseault II*, the Federal Circuit specifically stated that "when state-defined property rights are underline(destroyed) by the Federal Government's preemptive power and circumstances such as those here before us, the owner of

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 21

those rights is due just compensation." *Preseault II*, 100 F.3d at 1552 (emphasis added).  The Federal Circuit revisited and reiterated this same property law concept in *Caldwell* in 2004 and *Barclay* in 2006.  In *Caldwell v. United States*, 391 F.3d 1229 (Fed. Cir. 2004), the Federal Circuit stated that "we have previously held that a Fifth Amendment taking occurs when, pursuant to the Trails Act, state law <u>reversionary interests</u> are <u>effectively eliminated</u> in connection with a <u>conversion</u> of a railroad right-of-way to trail use." 391 F.3d at 1228 (emphasis added).  In *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006), the Federal Circuit relied on its holding in *Caldwell* and reiterated that a Trails Act taking "occurs when state law <u>reversionary</u> property interests that would otherwise vest in the adjacent landowners are <u>blocked from so vesting</u>." 443 F.3d at 1373 (emphasis added).  The facts in *Barclay* involved a trail where the railroad had not abandoned the line and was, in fact, still using the right-of-way.  The Federal Circuit concluded that "state law reversion was still delayed by the issuance of the NITU, and the claims still accrued with the issuance of the NITU." 443 F.3d at 1374.

In *Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010), the Federal Circuit concluded that the issuance of <u>the NITU operates to prevent statutory abandonment</u> and thus operated to preclude the vesting of state law reversionary interests in the right-of-way that <u>amounted to a taking</u>:

> We determined that the limitations period began when state law reversion interests are "forestalled by operation of §8(d) of the Trails Act" and we further determined that "this occurs when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues a NITU that operates to preclude abandonment under Section 8(d)." We explained that "[t]he issuance of the NITU is the only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way."

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 22

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

630 F.3d at 1020.  In fact, although railroad use ceased prior to the NITU in *Ladd*, it makes

absolutely no difference if the railroad use continued after the NITU was issued or if a trail is

ever built on the corridor.  *Id.*; *see also Barclay*, 443 F.3d 1368.  The NITU, by blocking the

reversion of state law property rights, amounts to a <u>taking of those reversionary interests</u>.

Judge Margolis, in *Raulerson*, correctly held and confirmed both the law of "what" was

taken and the proper methodology to determine just compensation:

> But for the Trails Act, the railbanking agreement would have effected an
> abandonment under South Carolina law, which would have caused the easement
> to revert back to plaintiffs. Plaintiffs' damages must therefore be determined by
> reference to the fee simple value of their properties, unencumbered by any
> railroad easement. Ultimately, the measure of damages for just compensation
> must be the difference between the value of plaintiffs' land unencumbered by a
> railroad easement and the value of plaintiffs' land encumbered by a perpetual trail
> use easement subject to possible reactivation as a railroad.

*See Raulerson v. United States*, 99 Fed. Cl. 9, 11-12 (Fed. Cl. 2011).

The rule of law is clear <u>and</u> well-settled, it is the <u>reversionary interest that is taken</u>, which

is the right to their land unencumbered by any easement.  In fact, Judge Firestone of the Court of

Federal Claims, in *Jenkins*, flatly rejected the federal government's argument that the interest

taken under the Trail Act is "an easement for railroad purposes."  *Jenkins v. United States*, 102

Fed. Cl. 598, 605 (Fed. Cl. 2011).  Just as the Supreme Court held in *Preseault I*, and the Federal

Circuit held in *Preseault II*, *Caldwell*, *Barclay*, *Ellamae Phillips*[18] and *Ladd*, Judge Firestone

correctly affirmed binding precedent that the interest taken from the landowner in any Rails-to-

Trails case is the landowner's reversionary interest, "the ability of the underlying fee owners to

reclaim their property free of any railroad easement," that is the interest taken that requires just

compensation.

---

[18] *Ellamae Phillips Co. v. United States*, 564 F.3d 1367 (Fed. Cir. 2009).

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 23

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Here, the *Haggart* Plaintiffs' reversionary interest on the surface was taken and nothing more. The fee interest, including the subsurface and aerial rights, was <u>not</u> taken and the Plaintiffs still own the fee interest in their land. After the Trails Act taking, as evidenced by Judge Lettow's opinion holding that the reversionary interest was taken, the payment to the Plaintiffs in *Haggart* was the difference in the unencumbered fee and the land encumbered by a trail easement. *See Haggart*, 108 Fed. Cl. 70.

> **B.** ***Haggart*** **Did Not Involve Payment for the Fee, Rather Involved Payment for the Taking of Plaintiffs' "Reversionary" Rights in the Surface—the Difference Between the Land Unencumbered by a Railroad Easement and the Land Now Encumbered by a Surface Easement for a Recreational Trail with the Potential Reactivation of a Railroad**

Under well-settled precedent, what was taken in *Haggart* was the landowner's reversionary interest—the right to their land unencumbered by a railroad purposes easement, period. Given Washington law as to the effect of use beyond the scope of the railroad easement, the measure of damage formula would, by definition, be the difference between what rights the landowner would have enjoyed under state law if the NITU were not blocking them when the railroad right-of-way was permitted to be used as a public trail vs. what the landowner was forced by the Trails Act to allow on his property by reason of the Trails Act and resulting NITU.

Therefore, the measure of damages that was implemented for the Plaintiffs in *Haggart* is the difference between the value of Plaintiffs' land free and clear of any easement and the value of their land with a Trails Act-imposed public trail of indefinite duration over the space the railroad easement had occupied. The taking of Plaintiffs' unencumbered property for use as an easement for a public trail is Plaintiffs' damage for the compensable taking. The measure of damages must be the difference between an unencumbered fee and a fee encumbered with an easement for public trail/railbanked use for the indefinite future.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 24

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

The Defendants assert that the railroad purposes easement currently exists and a recreational trail easement was added.  Such an assertion is not supported by Washington or Federal law because, the Defendants were correct, the Plaintiffs in *Haggart* would have been paid "incremental damages" via the concept of merely "adding another easement."  Such a position is not supported by any Trails Act takings case in the Court of Federal Claims or the Federal Circuit, nor is it remotely in keeping with Washington law where a railroad purposes easement is used outside its scope because exceeding the scope causes abandonment of the easement.  *See Lawson v. State*, 730 P.2d 1308 (Wash. 1986).

VII.  **SINCE THE PORT AND KING COUNTY DON'T OWN THE FEE, AND SINCE FEE OWNERSHIP INCLUDES SUBSURFACE AND AERIAL RIGHTS, THE EASEMENT GRANTS TO PSE AND SOUND TRANSIT, TO THE EXTENT THEY ATTEMPT TO GRANT SUBSURFACE AND AERIAL RIGHTS, ARE NULL AND VOID**

Prior to the date the Port and King County even became the trail operators pursuant to the Trails Act, the Port, King County, PSE, Sound Transit, the City of Redmond and Cascade Water Alliance entered into a Memorandum of Understanding to work together to obtain and secure property rights in the right-of-way easement in support of transportation, recreation and utility uses.  *See* Memorandum of Understanding, dated November 5, 2009, attached hereto as Exhibit E.  Once the right-of-way was quit-claimed to the Port (*see* Rall Decl., Exhibit B-2), through an orchestrated series of transactions, the Port proceeded to grant PSE, Sound Transit, and King County additional easement rights above and below the right-of-way easement.

Specifically, the Port granted a nonexclusive perpetual easement to PSE over, under, along, across and through BNSF's former easement in the right-of-way.  *See* South Line Rail Easement, dated December 21, 2010, attached hereto as Exhibit F.  The Port then granted a perpetual high capacity transportation easement to Sound Transit, which included:

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 25

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

"the right to own or operate a High Capacity Transit System…, a perpetual non-exclusive easement…, in, on, under, over, along, across and through the [right-of-way] for high capacity transportation purposes, including the installation, construction, use, operation, inspection, maintenance, repair, replacement, enhancement, expansion, improvement or removal of one or more High Capacity Transit facilities… for all purposes necessary, desirable or reasonably related to the development, construction or operation of a High Capacity Transit System, including placement of utilities…."

*See* High Capacity Transportation Easement, dated April 11, 2012, attached hereto as Exhibit G. The Port also granted King County a portion of right-of-way between Woodinville and Renton. *See* Quit Claim deed from the Port to King County, dated February 11, 2013, attached hereto as Exhibit H.  Pursuant to this quit claim deed, King County was granted rights above and below the surface of the right-of-way easement.  *See id*.

An easement is an interest which one person has in the land of another.  An easement is a non-possessory interest in land and an estate in land is a possessory interest.  *See Butler v. Craft Eng. Const. Co.*, 843 P.2d 1071, 1080 (Wash. App. 1982) (citing *Restatement of Property* § 450, Comments A and E, at 2902-03 (1944)).  If BNSF had an easement for their railroad purposes, then the Port and King County only acquired an easement over the right-of-way and neither obtained the fee by and through the Trails Act.

The existing easement for trail/railbanking cannot NOW be expanded over time to include subsurface and aerial rights.  Under Washington law, an existing easement can only be expanded "if the express terms of the easement manifest a clear intention by the <u>original</u> parties [here, BNSF and Plaintiffs predecessors in interest] to modify the initial scope based on future demands."  *See Sunnyside Valley Irr. Dist. v. Dickie*, 73 P.3d 369, 374 (Wash, 2003) (emphasis added).  Here, the railroad purposes easement which has now been converted to a trail/railbanked easement on the surface cannot be expanded to include subsurface and aerial rights because the

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 26

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

original parties merely intended to grant an easement for railroad purposes on the surface of the servient estate.

In addition, and most importantly, the owner of the servient estate is the only one who can grant an easement. Under Washington law, the abutting landowners who own the fee are the only ones who have the right to grant any interest in the land that they own in fee. *See Northwest Supermarkets, Inc. v. Crabtree,* 338 P.2d 733, 735 (Wash. 1959) (recognizing the rule that property landowners own the fee in public streets and can grant easement rights through their property). Furthermore, the property rights of the fee owner, including subsurface and aerial rights, must clearly be taken into account when securing a subsurface or aerial easement. *See Kershaw*, 126 P.3d at 28 (grant of easement for installation of fiber optic cable by line operator and railroad easement holder was invalid and fiber optic company should have exercised eminent domain powers to lay cable within the subsurface which the landowner owned in fee).

In this case, the Port and King County, who do not own the fee, are simply acting as if they do own the fee. The Port and King County not only have zero legal rights to grant easements to PSE and Sound Transit because they are not the owners of the fee estate, they also have no legal right whatsoever to expand the scope of the existing easement on the servient estate to include subsurface and aerial rights. Plaintiffs herein are entitled to summary judgment as a matter of law that the Port and King County cannot expand their existing property rights by and through the Trails Act and that the purported easements granted to PSE and Sound Transit are null and void.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 27

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## VIII.   CONCLUSION

Under Washington law and federal law, Plaintiffs are the fee title holders in the land abutting and including the former railroad right-of-way that has now been converted from a railroad purposes easement to the current trail/railbanked easement pursuant to the Trails Act. BNSF only held an easement for railroad purposes on the surface of Plaintiffs' land and could only transfer a surface easement to the Port and King County.  Under the Trails Act, the Port and King County only acquired a trail/railbanked surface easement upon Plaintiffs land.

Plaintiffs currently own their land in fee, including the subsurface and aerial rights, and their fee title is burdened with a surface easement for a trail, period.  The Port and King County only hold a surface easement and have no right or authority to use or grant any interest in subsurface or aerial rights whatsoever.

For the foregoing reasons, this Court should grant Plaintiffs Motion for Partial Summary Judgment holding that the railroad only possessed an easement, the Port and King County only acquired a surface easement for recreational trail purposes with the potential reactivation of a railroad, and that the Port and King County did not acquire the fee in the land by and through the Trails Act, including subsurface and aerial rights.

Date: August 24, 2015.                        **STEWART, WALD & MCCULLEY, LLC**

By  */s/ Thomas S. Stewart*
　　Thomas S. Stewart
　　Elizabeth McCulley
　　Michael J. Smith
　　9200 Ward Parkway, Suite 550
　　Kansas City, MO 64114
　　Telephone:  (816) 303-1500
　　Facsimile:  (816) 527-8068
　　stewart@swm.legal
　　mcculley@swm.legal
　　smith@swm.legal

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 28

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

AND

RODGERS DEUTSCH & TURNER, P.L.L.C.
Daryl A. Deutsch, WSBA No. 11003
Rodgers Deutsch & Turner, P.L.L.C.
3 Lake Bellevue Dr. Suite 100
Bellevue, WA  98005
Telephone:  (425) 455-1110
Facsimile:  (425) 455-1626
daryl@rdtlaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August 2015, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon all parties of record.

Timothy G. Leyh
Randall Thomsen
Kristin Ballinger
CALFO, HARRIGAN, LEYH & EAKES, LLP
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com
*Attorneys for Defendant Port of Seattle*

Gavin W. Skok
Bryan J. Case
Courtney L. Seim
James E. Breitenbucher
RIDDELL WILLIAMS PS
gskok@riddellwilliams.com
bcase@riddellwilliams.com
cseim@riddellwilliams.com
jbreitenbucher@riddelwilliams.com
*Attorneys for Defendant Puget Sound Energy*

Andrew W Marcuse
David J. Hackett
King County Prosecuting Attorney, Civil Division
andrew.marcuse@kingcounty.gov
david.hackett@kingcounty.gov
*Attorneys for Defendant King County*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 29

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

Desmond L. Brown
Loren Armstrong
desmond.brown@soundtransit.org
lore.armstrong@soundtransit.org.
*Attorneys for Central Puget Sound Regional Transit Authority*

                       *      /s/ Thomas S. Stewart*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT
UNDER THE TRAILS ACT
No. 2:14-cv-000784-JCC – Page 30

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626