HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHYRN KASEBURG, et al., | No. 2: 14-CV-00784-JCC |
| Plaintiffs, | SOUND TRANSIT'S COMBINED: |
| v. | (1) OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER THE DEFENDANTS ACQUIRED AN EASEMENT UNDER THE TRAILS ACT, AND |
| PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, | |
| | (2) CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON WHETHER CONSTRUCTION AND OPERATION OF LIGHT RAIL IS CONSISTENT WITH BNSF'S EASEMENTS |
| Defendants. | |
| | NOTE ON MOTION CALENDAR: OCTOBER 9, 2015 |
| | ORAL ARGUMENT REQUESTED |

//

//

//

//

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S  JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

# Table of Contents

I. INTRODUCTION .................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................2

III. STATEMENT OF ISSUES ..............................................................................6

IV. EVIDENCE RELIED UPON ...........................................................................6

V. ARGUMENT......................................................................................................7

   A. BNSF's Lake Washington Belt Line Co. Deed and the Condemnation Judgment are railroad easements that were preserved through railbanking...........................8

   B. Light Rail is a Railroad Use Consistent with BNSF's Railroad Easements   9

      1.   Railroad easements permit both passenger and freight rail service. .......................................................................................9

      2.   The language of the original easements does not restrict railroad use to freight rail only. ..................................................10

      3.   The Court of Federal Claims recognized the permissibility of passenger rail in the easements and compensated Plaintiffs for its potential future construction ...............................................10

      4.   Until the creation of Amtrak in the early 1970's, freight railroads were obligated to provide intercity passenger rail service. .......................................................................................11

      5.   This corridor, and these easements, have historically been used for passenger rail service. ............................................11

   C. BNSF's easements were not limited to surface rights – the easements include the right to use the non-mineral subsurface and airspace as necessary to construct and operate a Railroad. ....................................................................................12

      1.   Law review articles and case law support the conclusion that railroad easements are not limited to the surface..........................14

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - i

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

2.    None of the cases cited by Plaintiffs support the position that railroad facilities cannot be located below the surface, on the surface, or elevated above the surface. ..........................................15

3.    The plain language of BNSF's railroad easements do not limit usage to the surface. .......................................................17

4.    BNSF's modifications in the corridor were not limited to the surface. ...................................................................17

5.    Plaintiffs were compensated for the aerial and subsurface rights included in the BNSF Easements in the *Haggart* decision...........18

6.    Various federal, state, and local laws and requirements require installation of aerial or underground facilities. ..............................19

VI.  CONCLUSION ...............................................................20

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - ii

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

# Table of Authorities

**Cases**

*Energy Transp. Systems, Inc. v. Union Pac. R. Co.*, 435 F.Supp. 313, 318 (D. Wyo. 1977) ..................................................................................................................16

*Great Northern R. Co. v. U.S.*,  315 U.S. 262, 270, 62 S.Ct. 529, 532 (1942)..................15

*Haggart v. U.S.*, 108 Fed. Cl. 70, 96 (2012)..........................................................passim

*Hanson Industries, Inc. v. County of Spokane*,114 Wn.App. 523, 528, 58 P.3d 910, 914 (2002).......................................................................................................6

*Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171, 174 (10th Cir. 1950) ........................16

*Ioppolo. et. al, v. Port of Seattle*, CV-00358-JCC .............................................................19

*Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829, 834-35 (10th Cir. 1973) ........................................................................................................15, 17

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253,273, 126 P.3d 16, 26-27 (2006) ..........................................................................14

*Railway Co. v. Telford's Executors*, 89 Tenn. 293, 299, 14 S.W. 776 (1890) ..................15

*Zobrist v. Culp*, 95 Wn.2d 556, 561, 627 P.2d 1308, 1311 (1981)..............................passim


**Publication**

Wright & Hester, *Pipes, Wires, and Bicycles: Rail-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 Ecology L.Q. 351, 411 (2000) ................................................................... 14

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - iii

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1

2

## I.   INTRODUCTION

3      This Court has already ruled that BNSF's railroad easements were preserved

4  through the railbanking process. Contrary to that ruling, Plaintiffs now ask this Court to

5  rule that all that remains is a surface easement even though the word "surface" does not

6  appear anywhere in the property descriptions in the easements. The easement language

7  grants rights to operate a railroad on, over, across and through the easement area.  But

8  Plaintiffs do not discuss or analyze the broad descriptive words in each easement that

9  directly conflict with the relief Plaintiffs seek.

10      Sound Transit's only intended use of the easement is to construct and operate a

11  railroad--the core purpose for which the easements were originally conveyed.  Plaintiffs'

12  argument that the BNSF railroad easements convey surface-only rights is inconsistent

13  with the easement language, inconsistent with the historic use of the easements, and is

14  inconsistent with the rights necessary to run a railroad.  Plaintiffs' argument would

15  effectively extinguish the easements because trains cannot climb steep grades. The

16  easements could not be used to operate any railroad (freight or passenger) if limited to a

17  surface-only easement.

18      Plaintiffs' argument also fails because they were compensated for the preservation

19  and continuation of the BNSF railroad easements in the *Haggart* takings action. The

20  *Haggart* decision identified the right to operate passenger rail as one of the rights included

21  in the preserved railbanked easements for which Plaintiffs were entitled to

22  compensation—the same easement purchased by Sound Transit and now challenged by

23  Plaintiffs.

24      In this Opposition and Cross Motion, Sound Transit respectfully requests that this

25  Court recognize that Sound Transit's light rail operations constitute a railroad operation

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 1

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

within the scope of the preserved BNSF easements, and that the light rail railroad track and associated facilities can be constructed underground, on the surface, or above the ground, all as dictated by sound railroad engineering practices and operational needs.

## II.   FACTUAL BACKGROUND

The basic facts related to this case are in briefs filed with the Court and will not be repeated here.  For purposes of this opposition and cross motion, the following facts are relevant:

1. BNSF was the successor-in-interest to the Lake Washington Belt Line Co. deed and the Condemnation Judgment.  Dkt No. 83, ¶ 101 (Plaintiffs' Third-Amended Complaint).

2. The Lake Washington Belt Line Co. deed and the Condemnation Judgment are railroad easements that permit the construction and operation of a railroad.

    a. The Lake Washington Belt Line Co. deed provides in relevant part:

    > …hereby does grant to the said party of the second part its successors and assigns a right of way one hundred (100) feet in width for the construction, operation and maintenance of said railroad company's proposed line of railroad **on, over, across and through** the following described tracts or parcels of land…

    *See* Dkt No. 113-6 (Straup Decl. Exh A-4—Lake Washington Belt Line Co. Deed) (emphasis added).

    b. The Condemnation deed provided in relevant part as follows:

    > …All of those portions of the shore lands … lying and being included within that certain 100 foot strip of land, having for its boundaries two lines that are parallel with and 50 feet distant from, on each side of the center line of the Seattle Belt Line Branch of the Northern Pacific Railway **as the same is now located, staked out and to be constructed over and across** such shorelands the center line of which railroad is more particularly described as follows…

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 2

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

> *See* Dkt No. 113-7 (Straup Decl. Exh A-5 – Judgment and Decree of
> Appropriation) (emphasis added).

3. This Court ruled on summary judgment that both easements were preserved and survive intact after the railbanking process. *See* Dkt No. 107 (Order Granting Defendant's Motion for Partial Summary Judgment) at 10 ("BNSF's railbanking of the Eastside Rail Corridor preserved BNSF's railroad easements and allowed interim trail use of the corridor as a trail.").

4. Federal law obligated the Northern Pacific Railway, the original grantee of these two easements, to provide intercity passenger rail service until the early 1970's.[1] The railroad periodically utilized the eastside rail corridor for passenger rail service.[2]

5. The *Spirit of Washington* dinner train operated on the rail corridor between Renton and Woodinville as a passenger rail tourist attraction until 2007.[3]

6. BNSF (or its predecessors-in-interest to the easements) used a combination of underground, at-grade, and aerial installations and modifications to construct and operate its railroad facilities. Those include wooden trestle bridges; signs that penetrate the ground and extend aerially; elevated track beds; cuts and fills to level the roadbed on hillsides; and installation of drainage ditches.[4]

---

[1] *See* https://en.wikipedia.org/wiki/Amtrak (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 6.

[2] *See* https://en.wikipedia.org/wiki/Woodinville_Subdivision (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 2. "[t]he line also used to serve as a bypass during outages for the only other north-south rail route between the Cascade Mountains and Puget Sound, the Seattle/Scenic Subdivision, which runs through downtown Seattle and along Puget Sound."

[3] *See* https://en.wikipedia.org/wiki/Woodinville_Subdivision (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 2.

[4] *See* Armstrong Cross Motion Decl., ¶ 9 and related pictures attached as Armstrong Cross Motion Decl., Exhs. 7A – 7M.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 3

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

7. Light rail is a type of railroad that transports passengers in vehicles running on steel railroad tracks between fixed, established stations. The primary difference between commuter rail and light rail relevant to this motion is that light rail vehicles are typically smaller and run on electricity (carried through the overhead catenary system) rather than using large diesel engines.[5] Electric locomotives have been in use in the United States since the early 1900's.[6] For a more detailed description of light rail, *see* Armstrong Cross Motion Decl., Exh. 8 (Wikipedia article entitled "Light Rail," last accessed on September 11, 2015, which is available at: https://en.wikipedia.org/wiki/Light_rail ).

8. The East Link light rail system will connect downtown Seattle with Redmond, passing through and making stops at established stations located at (a) Seattle, between Rainer Avenue S. and 23rd Ave S.; (b) Mercer Island between 78th Ave SE and 80th Ave SE; (c) South Bellevue at the Bellevue Park and Ride lot; (d) Bellevue at S Main Street; (e) Bellevue at the Bellevue Transit Center; (f) Bellevue at SE 8th Street near Overlake Hospital; (g) Bellevue at 120th Ave SE in the Spring District; (h) Bellevue 130th Ave SE in the Bel-Red district; (i) Redmond, at Overlake Village; and (j) Redmond, at Overlake Transit Center.  During operations, the light rail vehicles will stop only at established stations.[7]

9. In addition to the steel rails along which the light rail vehicles travel, light rail requires installation of additional facilities that are part and parcel to light rail's operation and typical of any railroad operation.  These include the following:

    a. Communications facilities – The communications systems primary function is to provide interface between the operating trains, track workers, and the central

---

[5] *See* Dkt. No. 74 -- Sleavin DJ Decl. at ¶ 11.
[6] *See* Dkt. No. 75 - Armstrong DJ Decl. at ¶¶ 8-11, and Exhibits No. 5-8 attached thereto.
[7] *See* Dkt. No. 74 -- Sleavin DJ Decl. at ¶ 5.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 4

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

operations at the Operation and Maintenance Facility.  This is accomplished with hard wiring, which may be in buried conduit or above-ground conduit depending on the elevation of the track, and radio transmission to assure all of the operating railroad is covered.[8]

b.  Signaling facilities –  The signal system provides multiple functions along the alignment to keep the trains operating safely.  These functions include speed limitations, separation distance between trains, stop and proceed signals at intersections, and interlocking between tracks at switching locations.  These facilities may be in buried conduit or above-ground conduit depending on the elevation of the track at that location.[9]

c.  Overhead Catenary System –  The Overhead Catenary System (OCS) provides the electrical power to run the train's electrical propulsion motors and other electrical systems on the train.  The positive power is supplied by local utilities to Sound Transit's substations where it is converted and feed into the 1500 volt OCS.  The rails are the negative return current (Ground) back to the substation to complete the circuit.  The OCS, as its name implies, is located above the trains and is supported at consistent intervals by poles along the length of the track.[10]

---

[8] *See* Dkt. No. 74 -- Sleavin DJ Decl. at ¶ 8.

[9] *See* Dkt. No. 74 -- Sleavin DJ Decl. at ¶ 8.

[10] *See* Dkt. No. 74 -- Sleavin DJ Decl. at ¶ 8.

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE  (206) 398-5000
FACSIMILE  (206) 398-5499

1

### III.   STATEMENT OF ISSUES

2    1.  Did the Lake Washington Belt Line Co. deed and the Condemnation Judgment

3        convey to BNSF a railroad easement rather than fee ownership of the property?

4        Yes.[11]

5    2.  Does the construction and operation of light rail fit within the scope of the

6        BNSF railroad easements that were preserved through the railbanking process?

7        Yes.

8    3.  Is the BNSF railroad easement limited to the surface of the property?  No, the

9        easements permit construction of railroad and associated facilities above

10       ground, below ground, and on the surface as required by sound operational and

11      engineering practices. Plaintiffs were also fully compensated for the preserved

12      railroad easement rights without distinction between surface, subsurface, and

13      aerial rights.

14

### IV.   EVIDENCE RELIED UPON

15  Sound Transit relies upon the following declarations:

16      • Dkt. No. 74 ( Declaration of John Sleavin in Support of Sound Transit's
17        Opposition to Plaintiffs' Motion for Declaratory Judgment) ("Dkt. No. 74 -
         - Sleavin DJ Decl.").

18
19      • Dkt. No. 75 (Declaration of Loren Armstrong in Support of Sound
        Transit's Opposition to Plaintiffs' Motion for Declaratory Judgment)
20        ("Dkt. No. 75 - Armstrong DJ Decl.").

21

---

22 [11] The Court should be aware, however, that railroad easements under Washington law are
quite substantial and almost fee-like in nature. *See, e.g., Hanson Industries, Inc. v. County*
23 *of Spokane*,114 Wn.App. 523, 528, 58 P.3d 910, 914 (2002) ("A railroad right-of-way is a
very substantial thing, more than a mere right of passage and more than an ordinary
24 easement.  It is often likened to a determinable fee. It is an easement with the
substantiality of a fee and the attributes of a fee, perpetuity and exclusive use and
25 possession; also the remedies of a fee.  This 'fee-like' estate is frequently granted in terms
usually associated with the grant of a fee simple.")

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

- Declaration of Loren Armstrong in Support of Sound Transit's Combined Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross Motion ("Armstrong Cross Motion Decl.")

## V.    ARGUMENT

**A.    BNSF's Lake Washington Belt Line Co. Deed and the Condemnation Judgment are railroad easements that were preserved through railbanking.**

Defendants acknowledge that the Lake Washington Belt Line Co. deed and the Condemnation Judgment conveyed easements, and consequently, that BNSF's ownership interest was a railroad easement. And this Court ruled that BNSF's easements were preserved by railbanking under the Trails Act. *See* Dkt No. 107 (Order Granting Defendant's Motion for Partial Summary Judgment) at 10. Plaintiffs now ask this Court to rule that in the portions of the corridor that are subject to the Lake Washington Belt Line Co. deed and the Condemnation Judgment:[12]

> [1] [BNSF] only possessed an easement,
> [2] the Port and King County only acquired a surface easement for recreational trail purposes with the potential reactivation of a railroad, and
> [3] that the Port and King County did not acquire the fee in the land by and through the Trails Act, including subsurface and aerial rights.

Dkt No. 113 at 28 (numbering added for reference below).

The first point is not in dispute. The Lake Washington Belt Line Co. deed and the Condemnation Judgment conveyed railroad easements whose plain language expressly permit the construction and operation of a railroad on, across, over, and through Plaintiffs' property. The easement terms are of the broadest scope and place no limits on the mode, manner or method of operation. The easements do not define how the railroad engines must be powered (e.g., steam, diesel or electric), nor do they prohibit the operation of a

---

[12] As set forth in the Port's/King County's brief, Defendants dispute the identification of the specific properties that are subject to the various easements.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 7

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

passenger railroad or a freight railroad. Any activity that constitutes the construction or operation of a railroad on, across, over, or through the property is within the easements' scope. Since at least the early 1900's, electrically-powered trains have operated passenger rail service on railroad tracks in the United States and are a railroad use expressly permitted by the easements at issue here. All the Court need know to grant Sound Transit's cross motion and deny Plaintiffs' motion is the undisputed fact that Sound Transit intends to construct a railroad to carry passengers within the easement area as expressly permitted by the easement terms.

On the second point, Plaintiffs fundamentally misconstrue the nature of a railroad easement and this Court's prior summary judgment rulings. A railroad easement is not a *surface* easement—it is an easement that grants exclusive use of the described property for the purpose of constructing and operating a railroad and any other permitted uses. *See* Section C, below. This Court has already ruled that railbanking preserves the broad property rights intact. *See* Dkt No. 107 (Order Granting Defendant's Motion for Partial Summary Judgment) at 10 ("BNSF's railbanking of the Eastside Rail Corridor preserved BNSF's railroad easements and allowed interim trail use of the corridor as a trail.").

The Port and King County will address the third point in their briefs. But for purposes of Sound Transit's opposition and cross motion, any railroad facilities that BNSF could have installed below or above the surface can still be installed consistent with the preserved railroad easements, in addition to the new interim trail use.

**B.      Light Rail is a Railroad Use Consistent with BNSF's Railroad Easements.**

The construction and operation of light rail for the purpose of transporting passengers is plainly a railroad use permitted by the BNSF easements. Binding Washington Supreme Court precedent supports this conclusion, as does the Court of

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 8

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

Federal Claims' decision in *Haggart*, the language of BNSF's original railroad easements, the long-standing federal obligation of freight railroads to provide passenger service, and the historic usage of this corridor.

### 1.      Railroad easements permit both passenger and freight rail service.

As a threshold matter, the construction and operation of light rail is unambiguously a railroad use. Traditionally, railroad operations encompass both freight and passenger railroad use:

> What is the operation of a railroad? A railroad, this court said long ago … is devoted to the public service of transportation over lines and terminals having a fixed location. It follows that when a railroad is 'operating,' it is furnishing transportation, either freight or passenger, to the public.

*Zobrist v. Culp*, 95 Wn.2d 556, 561, 627 P.2d 1308, 1311 (1981).  ("*Zobrist*").

Sound Transit's light rail trains satisfy the requirement by providing the public service of "transportation over lines and terminals having a fixed location."  *See* Dkt. No. 74—Sleavin DJ Decl. at ¶ 5 (identifying the fixed locations of the stations where stops will be made) and ¶ 11 ("Sound Transit runs commuter rail and light rail, both of which transport passengers in vehicles running on steel railroad tracks between fixed, established stations.").  *See also* Armstrong Cross Motion Decl., Exh. 8 (Wikipedia article entitled "Light Rail," last accessed on September 11, 2015, which is available at: https://en.wikipedia.org/wiki/Light_rail ) (providing a more detailed description of light rail).

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 9

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1

2

   **2.     The language of the original easements does not restrict railroad use to freight rail only.**

3

   Because the BNSF easements do not limit the railroad use to freight operations,[13]

4

under *Zobrist,* they plainly permit any railroad use, including a passenger railroad. This

5

result is reinforced by the historical usage by the original grantee of both easements, the

6

Northern Pacific Railway ("NP"). At the time these easements were granted, NP's main

7

activities were "…shipping wheat and other farm products, cattle, timber and minerals;

8

bringing in consumer goods, **transporting passengers**; and selling land."[14] As a matter of

9

law, the easements grant Sound Transit the same right to transport passengers as the

10

original easement grantee.

11

   **3.     The Court of Federal Claims recognized the permissibility of passenger rail in the easements and compensated Plaintiffs for its potential future construction.**

12

13

   Judge Lettow recognized that light rail could be constructed in the corridor

14

consistent with the railbanked easements. He held (and Plaintiffs agreed) that the measure

15

of takings damages be calculated based on the "after" condition of the property being

16

"burdened by a general easement permitting recreational trail use with the potential for

17

future railway use by way of rail-banking or **possible future development of a**

18

**commuter rail line**." *Haggart v. U.S.*, 108 Fed. Cl. 70, 96 (2012) (emphasis added).

19

Thus, Plaintiffs were awarded compensation for the very use (passenger rail service) that

20

Sound Transit now asks this Court to acknowledge is permitted by the easements.

21

22

─────────────────

23

[13] Dkt No. 113-6 (Straup Decl. Exh A-4 -- Lake Washington Belt Line Co. Deed); Dkt No. 113-7 (Straup Decl. Exh A-5 – Judgment and Decree of Appropriation).

24

[14] *See* https://en.wikipedia.org/wiki/Northern_Pacific_Railway (last accessed September 7, 2015) (emphasis added), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 1.

25

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 10

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

**4.      Until the creation of Amtrak in the early 1970's, freight railroads were obligated to provide intercity passenger rail service.**

Federal law also supports interpreting the railroad easements to permit passenger rail. Around the time these easements were granted, "nearly all intercity travelers in the United States moved by rail. Historically, passenger trains in the US were owned and operated by the same privately owned companies that operated freight trains."[15] By 1929, these companies operated nearly 65,000 railroad passenger cars throughout the country.[16] But even as ridership deteriorated significantly over the following decades, the railroads were still obligated by federal law to continue to provide inter-city passenger service until the obligation terminated with the creation of Amtrak by passage of the Rail Passenger Service Act of 1970.[17] If railroad easements such as BNSF's were generally limited to freight, railroads could not have fulfilled this obligation across the thousands of miles of track comprising the national rail system.

**5.      This corridor, and these easements, have historically been used for passenger rail service.**

Over the years, this corridor has often been used to transport passengers. For example, the Eastside Rail Corridor was used for a passenger dinner train until 2007.[18] "The line also used to serve as a bypass during outages for the only other north-south rail

---

[15] *See* https://en.wikipedia.org/wiki/Amtrak  (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 6.

[16] *Id.*

[17] *Id.*

[18] *See also*, https://en.wikipedia.org/wiki/Woodinville_Subdivision (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 2 ("Until 2007, the [eastside rail corridor] line was also used by the Spirit of Washington Dinner Train, a tourist attraction.").

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 11

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

route between the Cascade Mountains and Puget Sound, the Seattle/Scenic Subdivision, which runs through downtown Seattle and along Puget Sound."[19]

In conclusion, given (a) the broad, unrestricted language of the easements; (b) *Zobrist's* inclusion of passenger rail within the definition of operating a railroad; (c) *Haggart's* inclusion of future passenger rail as a component of the measure of damages; (d) the pre-existing passenger rail obligations that existed for railroads (including the railroad that was the grantee of these easements); and (e) the historic usage of the corridor; passenger rail service is within the scope of BNSF's original easements. Moreover, Plaintiffs have already admitted that "the operation of electric-powered locomotives on the Railroad Line for the purpose of transporting freight was within the scope of BNSF's Original Property Rights,"[20] so they cannot base any dispute on the fact that light rail utilizes electrically-powered vehicles.

**C.    BNSF's easements were not limited to surface rights – the easements include the right to use the non-mineral subsurface and airspace as necessary to construct and operate a railroad.**

Railroad track design is generally dictated by sound engineering principles. Dkt. No. 74—Sleavin DJ Decl., ¶ 9. Railroad track must be constructed so that it is relatively straight and flat, and when it is necessary for the track to climb or descend, the track must be constructed so that it does so at relatively low gradients. *Id*. The elevation of the track relative to the surface at any location is determined in part by the geotechnical conditions in the area and the terrain in both directions. *Id*. For a section of track to overcome a hill (or an intersecting street), the track leading to the hill may begin at-grade (meaning on the

---

19 *See* https://en.wikipedia.org/wiki/Woodinville_Subdivision (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 2.

[20] *See* Armstrong Cross Motion Decl., Exh. 5 (Plaintiffs' Answers and Objections to Sound Transit's First Set of Requests for Admission, No. 21).

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 12

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

surface) and then transition to an elevated track so that it can utilize a low gradient to eventually overcome the hill, at which point it may again transition to an at-grade track. *Id*. Alternatively, a hill could be overcome by tunneling through it. *Id*. Similarly, if good engineering requires a bridge over an intersecting road, a body of water, or other obstacle, the approaches to the bridge on both sides would require segments of an elevated track or an elevated track bed. *Id*. Thus, An easement for railroad purposes necessarily includes the right on the part of the easement holder to penetrate the surface of the railroad corridor or install elevated facilities to the extent necessary to install the track system over which the rail cars and locomotives will run.

The elevation of the track relative to the surface at any location may be determined based on other factors as well. Dkt. No. 74 -- Sleavin DJ Decl., ¶ 10. For example, a grade-separated track is generally safer than an at-grade track because it is less accessible to pedestrians and vehicles, thereby minimizing the potential for collisions and pedestrian strikes. *Id*. Additionally, road crossings that use bridges do not interfere with or impact vehicular traffic. *Id*. Decisions related to the use or non-use of grade separation are part of the mandatory environmental alternatives analysis that all Sound Transit projects must utilize. *Id*.

Railroad easements must allow the construction and placement of railroad facilities on, over, and through property as required by sound engineering principles and operational concerns. Plaintiffs cannot reasonably dispute that BNSF's railroad easement encompasses the right to build, operate, and maintain railroad track and facilities that are consistent with good engineering practice, and which may in some locations be (or have components such as foundations or communications, signaling, or overhead catenary systems that are) below the surface, on the surface, or elevated from the surface. A railroad easement is without value absent the right to build the tunnels, trestles, elevated

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

track, and overhead powers lines necessary to operate the railroad safely and consistent with sound engineering principles.

**1.    Law review articles and case law support the conclusion that railroad easements are not limited to the surface.**

A law review article cited in *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253,273, 126 P.3d 16, 26-27 (2006) summarized decades of case law supporting the premise that railroad easements include aerial and subsurface rights.

> Undoubtedly, railroads have the right to construct the railroad itself in the easement and may also construct any appurtenances necessary to the operation of that railroad, such as depots, elevated roadbeds, station buildings, water tanks, machine shops, side tracks, and turnouts. Most of these structures have foundations well below the surface of the corridor. Where railroads need land thousands of feet deep—such as tunnels burrowed through mountains—they have always had a right to use and occupy it.

Wright & Hester, *Pipes, Wires, and Bicycles: Rail-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 Ecology L.Q. 351, 411 (2000)(internal state, federal, and U.S. Supreme Court citations omitted).[21]

In addition, decades of case law hold that railroad easements include surface, sub-surface, and aerial rights because they are part and parcel to railroad operations:

> Of course, a railroad company which acquires a right of way over and through lands of another acquires more than the mere right of passage over such lands. It acquires the right to excavate drainage ditches; to construct beneath the surface supports for bridges and other structures; to erect and maintain telegraph lines and supporting poles with part of the poles beneath the surface; to construct passenger and freight depots, using portions of the land below them for foundations; to construct signals; to make fills and

---

[21] A copy of this article is included as Dkt. No. 75 - Armstrong DJ Decl., Exh. 4.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 14

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE (206) 398-5499

cuts to decrease the grades of their rail lines, and to use material from the land covered by the right of way to make such fills; and to construct a roadbed and lay its ties and rails thereon. Hence, it has substantial surface and subsurface rights, which it is entitled to have protected.

*Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829, 834-35 (10th Cir. 1973). *See also Railway Co. v. Telford's Executors*, 89 Tenn. 293, 299, 14 S.W. 776 (1890) (a railroad "has the free and perfect use of the surface of the land so far as necessary for its purposes, and the right to use as much above and below the surface as may be needed.).

**2.      None of the cases cited by Plaintiffs support the position that railroad facilities cannot be located below the surface, on the surface, or elevated above the surface.**

All of the cases relied on by Plaintiffs relate to non-railroad uses of an easement or to disputes over the ownership of mineral or oil rights far below the portion used by the railroad.[22]

In *Great Northern R. Co. v. U.S.*, 315 U.S. 262, 270, 62 S.Ct. 529, 532 (1942), the Court concluded that mineral and gas rights were not included in the government's grant of a railroad easement because the mineral rights were not required to construct or operate the railroad, not because they were subsurface rights. *Great Northern* is entirely consistent with Sound Transit's position: the railroad easements include non-mineral rights necessary to construct and operate a railroad. The decision supports Sound Transit's cross-motion because its easement does not claim property rights beyond those needed to build and operate a light-rail railroad.

---

[22] Plaintiffs' reliance on *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253, 277, 126 P.3d 16, 29 (2006), is inapposite because that case involved the installation of a fiber-optic line by a telecom provider who had statutory eminent domain rights that it was required to exercise to install its facilities in the right of way. The case says nothing about whether a railroad is limited to installing its railroad facilities on the "surface" only.

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

In *Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171, 174 (10th Cir. 1950), the issue was whether an adjacent property owner could obtain an easement by prescription for an irrigation ditch underneath the railroad's easement. The court allowed the fee owner to maintain an irrigation ditch "so as not to interfere with the use of the right of way by the Railroad Company for railroad purposes." *Id*. The decision implicitly affirms Sound Transit's argument that a railroad easement conveys all rights necessary to operate the railroad. This result is reinforced by Plaintiffs' own parenthetical description of the case: "any use of **subsurface** by railroad must be for railroad purposes…"  Dkt No 113 at 16:21-22 (emphasis added).

In *Energy Transp. Systems, Inc. v. Union Pac. R. Co.*, 435 F.Supp. 313, 318 (D. Wyo. 1977) *aff'd sub nom Energy Transp. Systems, Inc. v. Union Pac. R. Co.*, 606 F.2d 934 (10th Cir. 1979), the court permitted a pipeline to be constructed under the railroad but noted the railroad's right to use the subsurface as necessary. The railroad's easements "do not preclude reasonable use of the subsurface, for support of trackage or for cuts or tunnels or similar roadbed changes." *Id.*

Finally, Plaintiffs rely on selective quotes from *Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829, 834-35 (10th Cir. 1973) that do not completely represent the quoted passage.  If one were to include the sentence immediately before Plaintiffs' quote, and fill in the ellipses, the quote becomes:

> *Hence, [the railroad] has substantial surface and subsurface rights, which it is entitled to have protected. But in our opinion it* cannot deprive the owner of the servient estate *or those claiming through such owner* from making use of the land in strata below the surface and below substrata *which are used or needed by the railroad company*, and which in nowise, as in the instant cases, interferes with the construction, maintenance and operation of the railroad.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 16

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE (206) 398-5000
FACSIMILE (206) 398-5499

*Id.* (italicized text added to Plaintiffs' quoted text).  In other words, this case expressly recognizes a railroad's right to construct its facilities below the surface and even below the 'substrata' layer, which is defined as "an underlying layer or substance, in particular, a layer of rock or soil beneath the surface of the ground."[23]

All of these cases unambiguously support the conclusion that railroad facilities can be installed below the surface, on the surface, or elevated from the surface.

### 3.    The plain language of BNSF's railroad easements do not limit usage to the surface.

The plain language of the Lake Washington Belt Line Co. deed also reinforces this conclusion.  It permits "construction, operation and maintenance...on, over, across, and through" the burdened properties.[24]  The ordinary meaning of these words permits the construction of railroad facilities that are below the surface ("through"), on the surface ("on" or "across"), or elevated from the surface ("over").  If the easement was limited to the surface, all of the foregoing words would not have been included, and when the Court construes this language it must give meaning to all of the words. [25]

### 4.    BNSF's modifications in the corridor were not limited to the surface.

BNSF's (or its predecessors') modifications of the corridor for its railroad purposes further reinforce the conclusion that railroad use is not limited to just the surface.

---

[23] New Oxford American Dictionary (2nd ed. 2005)

[24] *See* The Lake Washington Belt Line deed (Dkt No. 113-6 (Straup Decl., Exh. A-4)), which grants "a right of way one hundred (100) feet in width for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across, and through the following described tracts..."

[25] The Condemnation easement similarly provides an easement for a railroad "...as the same is now located, staked out and to be constructed **over and across** such shore lands..." Dkt No. 113-7 (Straup Decl., Exh. A-5)(emphasis added).  As noted in Section C(4),below, this section was "now located, staked out, and [] constructed" in a manner that included subsurface, elevated, and surface facilities.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 17

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

The portion of the Eastside Rail Corridor covered by the Lake Washington deed and the
Condemnation Judgment include the following modifications or installations:

- At least one large (100-foot-plus-long) wooden trestle bridge that spans over two different lanes where vehicles can pass underneath the elevated railroad tracks.[26]

- Modifications of the surface grades for the approaches leading up to each side of the trestle bridge to maintain the steady grade required for railroads.[27]

- Aerial usage for railroad signs that stick up from the ground into the air.[28]

- Modifications to the hill on which the track runs to create level ground for the installation of track, accomplished through a combination of cutting in certain areas and filling in other areas.[29]

- Structural elements that for engineering reasons must penetrate the ground, including bridge abutments, railroad ties, sign foundations, and railroad crossings.[30]

- Installation of elevated roadbed materials for structural reasons and to create grade separation as required for drainage or other engineering purposes.[31]

**5.      Plaintiffs were compensated for the aerial and subsurface rights included in the BNSF Easements in the *Haggart* decision**

Aerial and subsurface rights were within the scope of the original easements
because, as described above, BNSF and its predecessors used aerial and subsurface rights
to construct and operate the railroad for over 100 years. When the railbanking process

---

[26] *See* Armstrong Cross Motion Decl., at ¶9, Exhs. 7A, 7B, and 7C.

[27] *See* Armstrong Cross Motion Decl., at ¶9, Exhs. 7D, 7E, and 7F.

[28] *See* Armstrong Cross Motion Decl., at ¶9, Exh. 7G.

[29] *See* Armstrong Cross Motion Decl., at ¶9, Exh. 7H and 7I.

[30] *See* Armstrong Cross Motion Decl., at ¶9, Exh. 7B, 7D, 7G, and 7J.

[31] *See* Armstrong Cross Motion Decl., at ¶9, Exh. 7K, 7L, and 7M.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 18

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

blocked Plaintiffs' reversionary interest in the easements, the right to construct and use trestles, tunnels, elevated roadbeds, and below grade structures was part of the easements preserved in the railbanking process. Plaintiffs sued and were compensated for the taking of these reversionary easement rights and for the creation of a trail easement in the *Haggart* decision. In finding liability for the taking, the *Haggart* Court "made no mention of a limitation with respect to surface rights as opposed to subsurface or aerial rights." *See Ioppolo. et. al, v. Port of Seattle*, CV-00358-JCC (Order Granting Defendant King County's Motion for Partial Summary Judgment) (Dkt No. 56 at 10). This Court rightly concluded in *Ioppolo* that Plaintiffs have already been compensated for those rights. *Id.*

> **6.    Various federal, state, and local laws and requirements require installation of aerial or underground facilities.**

Legal requirements often require railroad facilities to be constructed or installed in an underground or aerial configuration. For example:

- The federal government implemented positive train control requirements through passage of the Rail Safety Improvement Act of 2008. PL 110-432; 49 U.S.C. § 20157. Positive train control generally requires "fixed signaling infrastructure such as coded track circuits and wireless transponders to communicate with the on board speed control unit or wireless data radios spread out along the line to transmit the dynamic information." Both of these necessarily require underground or aerial facilities, because they cannot just be set on the ground.[32]

- Traction power systems for electric-powered vehicles require high voltage electric transmission wires  are subject to state and local versions of the National Electrical Safety Code that require the wires to be located a minimum height above the ground for safety and other reasons. The locally-adopted components of the NESC also govern the placement of

---

[32] *See* https://en.wikipedia.org/wiki/Positive_train_control (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 3.

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

other communications and signaling system facilities, both of which must be located underground or aerially.[33]

In order for railroads (freight or passenger) to comply with the various regulations that govern their construction and operation, their easement property rights must include the right to install aerial and underground facilities.

In summary, (a) common sense, (b) decades of case law, (c) the plain language of the easements, (d) BNSF's historic modifications to the corridor, (e) the rationale underlying the *Haggart* decision, and (f) various local and federal laws and requirements all support the logical conclusion that railroad easements permit the construction of railroad facilities below the surface, on the surface, or elevated above the surface, all as determined by sound engineering design and operational needs.

## VI.    CONCLUSION

All of the parties agree that the Lake Washington Belt Line Co. deed and the Condemnation Judgement conveyed railroad easements.  This Court ruled that these easements were preserved by the railbanking process, and the *Haggart* court expressly compensated the adjacent property owners for the passenger rail easement that Plaintiffs are now challenging.  The easements' plain language permit the construction and operation of light rail passenger trains as a railroad use, and the easements permit the construction of associated facilities necessary for the operation of light rail to be located underground, above ground, or at the surface, as required by sound engineering practice and operational needs.

---

[33] *See* https://en.wikipedia.org/wiki/National_Electrical_Safety_Code (last accessed September 7, 2015), a copy of which is attached as Armstrong Cross Motion Decl., Exh. 4.

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 20

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

Accordingly, Sound Transit requests that the Court issue an order denying Plaintiffs' motion for partial summary judgment and ordering the following:

- Sound Transit's Link Light rail is a railroad use that is consistent with and permitted by the Lake Washington Belt Line Co. deed and the Condemnation Judgment.

- The Lake Washington Belt Line Co. deed and the Condemnation Judgment permit the construction and operation of the Link Light railroad and the light rail facilities associated with its operation that may be located underground, on the surface, or elevated from the surface, all as dictated by sound engineering and operational practices.

Dated September 14, 2015 at Seattle, Washington

By: _____
    Loren Armstrong, WSBA No. 33068
    Attorney for Defendant Sound Transit

CERTIFICATE OF SERVICE

I do hereby certify under penalty of perjury under the laws of the State of Washington that on September 14, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties of record:

*Attorneys for Plaintiffs*:
Thomas S. Stewart
Elizabeth McCulley
STEWART WALD & McCULLEY
9200 Ward Parkway, Suite 550
Kansas City, MO 64114

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 21

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1   stewart@swm.legal
    mcculley@swm.legal
2

3   Daryl A. Deutsch
    Rodgers Deutsch & Turner, PLLC
4   Three Lakes Bellevue Drive
    Bellevue, WA 98005-2440
5   daryl@rdtlaw.com

6   *Attorneys for Defendant Port of Seattle*:
    Timothy G. Leyh
7   Randall Thomsen
    Kristin Ballinger
8   CALFO, HARRIGAN, LEAKES, LLP
    999 Third Avenue, Suite 440
9   Seattle, WA 98104
    timl@calfoharrigan.com
10  randallt@calfoharrigan.com
    kristinb@calfoharrigan.com
11

12  *Attorneys for Defendant King County*:
    Andrew W. Marcuse
13  David J. Hackett
    King County Prosecuting Attorney, Civil Division
    500 4th Avenue, Suite 900
14  Seattle, WA 98104-5039
    andrew.marcuse @kingcounty.gov
15  david.hackett@kingcounty.gov

16  *Attorneys for Defendant Puget Sound Energy*:
    Gavin W. Skok
17  Bryan J. Case
    Courtney L. Seim
18  James E. Breitenbucher
    RIDDELL WILLIAMS PS
19  1001 – 4th Avenue, Suite 4500
    Seattle, WA 98154-1065
20  gskok@riddellwilliams.com
    bcase@riddellwilliams.com
21  cseim@riddellwilliams.com
    jbreiten@riddellwilliams.com
22

23  *Attorneys for Cascade Water Alliance*
    Dale N. Johnson
24  WSBA #26629
    Van Ness Feldman LLP
25

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 22

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499

1  2025 First Avenue, Suite 500
   Seattle, WA 98121-3140
2  Tel: (206) 382-9540
   Fax: (206) 626-0675
3  dnj@vnf.com

4  Dated  September 14, 2015 at Seattle, Washington.

5  _____
6  Ruby Fowler, Legal Secretary
   Central Puget Sound Regional Transit Authority
7  Tel: 206-398-5154; email: ruby.fowler@soundtransit.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SOUND TRANSIT'S COMBINED
OPPOSITION TO MPSJ & CROSS MOTION - 23

CENTRAL PUGET SOUND REGIONAL
TRANSIT AUTHORITY
401 S. JACKSON STREET
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 398-5000
FACSIMILE: (206) 398-5499