THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT AND KATHRYN KASEBURG, *et al*,

Plaintiffs,

v.

PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation and KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation,

Defendants.

NO. 14-cv-00784-JCC

PORT OF SEATTLE AND KING COUNTY JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**NOTED ON MOTION CALENDAR: SEPTEMBER 18, 2015**

AND

CROSS-MOTION FOR SUMMARY JUDGMENT

**NOTED ON MOTION CALENDAR: OCTOBER 9, 2015**

**ORAL ARGUMENT REQUESTED**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. RELEVANT FACTS .......... 2

A. The Corridor and Its Historical Use by Utilities and Others .......... 2

B. BNSF's Divestiture, the Port's Purchase, and the Financial Assistance Provided by Other Entities to Acquire and Preserve the Corridor .......... 3

C. The Railbanking of the Corridor and the Preservation of BNSF's Railroad Easement .......... 4

D. Plaintiffs' Properties and Limitations on Their Ownership Interests .......... 5

E. The *Haggart* and *Smith* Cases and Plaintiffs' Recovery for the "Taking" of Any Reversionary Interest .......... 5

III. ARGUMENT .......... 7

A. The Port and King County Are Entitled to Summary Judgment. .......... 7

B. This Court Held That Railbanking Preserved BNSF's Railroad Easement .......... 8

C. The Easement Holder Has Exclusive Use and Control of Property Encumbered by a Railroad Easement. .......... 11

1. Under Washington law, a railroad easement affords the holder the exclusive use and control over all property within the easement. .......... 11

2. The scope of a railroad easement is determined by its use and purpose, and is not delineated vertically. .......... 13

3. Incidental uses of a railroad easement, including utility uses, are within the scope of the easement. .......... 14

D. Plaintiffs Do Not Prove as a Matter of Law That the Scope of the Railroad Easements in the ERC Exclude Subsurface and Aerial Rights. .......... 17

E. The Conveyances at Issue Grant Railroad Easements That Include Subsurface and Aerial Rights .......... 19

1. The parties' conduct under the conveyances evidences an intent to grant the right to use all of the property, including that below, at, and above the surface. .......... 20

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

2. The conveyances grant an easement to use all of the land for the purposes described ........ 21

IV. CONCLUSION ........ 23

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# TABLE OF AUTHORITIES

## Cases

*City of Seattle v. Nazarenus*,
60 Wn.2d 657, 374 P.2d 1014 (1962)....................21

*Danville & Western Ry. Co. v. Lybrook*,
69 S.E. 1066 (Va. 1911)....................15

*Grand Trunk R. R. Co. v. Richardson*,
91 U.S. 454 (1875)....................11

*Haggart v. United States*,
108 Fed. Cl. 70 (2012)....................6, 19

*Haggart v. United States*,
116 Fed. Cl. 131 (2014)....................6

*Hanson Indus., Inc. v. Cnty. of Spokane*,
114 Wn. App. 523, 58 P.3d 910 (2002)....................12

*Illig v. United States*,
58 Fed. Cl. 619 (2003)....................8, 9, 10, 12, 19

*Ioppolo v. Port of Seattle*,
C15-0358-JCC (Sept. 11, 2015)....................7, 9, 19

*Johnson v. Poway Unified Sch. Dist.*,
658 F.3d 954 (9th Cir. 2011)....................7

*Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.*,
476 F.2d 829 (10th Cir. 1973)....................18

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*,
156 Wn.2d 253, 126 P.3d 16 (2006)....................16

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*,
121 Wn. App. 714, 91 P.3d 104 (2004), *aff'd in part, rev'd in part*
156 Wn.2d 253, 126 P.3d 16 (2006)....................14, 15

*Lane v. Port of Seattle*,
178 Wn. App. 110, 316 P.3d 1070 (2013)....................4

*Lawson v. State*,
107 Wn.2d 444, 730 P.2d 1308 (1986)....................13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*McCullough v. Interstate Power & Light Co.*, 163 Wash. 147, 300 P. 165 (1931) ....................15

*Midland Valley R.R. Co. v. Sutter*, 28 F.2d 163 (8th Cir. 1928) ....................12

*Missouri Real Estate & Ins. Agency v. St. Louis Cnty.*, 959 S.W.2d 847 (Mo. Ct. App.1997) ....................19

*Morsbach v. Thurston Cnty.*, 152 Wash. 562, 278 P. 686 (1929) ....................1

*Neitzel v. Spokane Int'l Ry. Co.*, 80 Wash. 30, 141 P. 186 (1914) ....................1

*Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 277 P.3d 18 (2012)....................20

*N. Pac. Ry. Co. v. Tacoma Junk Co.*, 138 Wash. 1, 244 P. 117 (1926) ....................11

*Nw. Supermarkets v. Crabtree*, 54 Wn.2d 181, 338 P.2d 733 (1959)....................13

*Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993 (9th Cir. 2007) ....................17

*Sammamish Homeowners v. Cnty. of King*, No. C15–284 MJP, 2015 WL 3561533 (W.D. Wash. June 5, 2015)....................5

*Smith v. United States*, No. 1:14-cv-0387L (Fed. Cl. Sept. 2, 2015)....................6

*State v. Preseault*, 652 A.2d 1001 (Vt. 1994)....................12

*State ex rel. York v. Bd. of Comm'rs*, 28 Wn.2d 891, 184 P.2d 577 (1947)....................14

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064 (9th Cir. 2003) ....................19

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

*Veach v. Culp*,
92 Wn.2d 570, 599 P.2d 526 (1979)....................20

*Wash. Secs. & Inv. Corp. v. Horse Heaven Heights*,
132 Wn. App. 188, 130 P.3d 880 (2006)....................1, 17

**Statutes and Regulations**

49 C.F.R. § 1152.29....................13

RCW 80.36.040....................13, 16

RCW 80.36.050....................13

**Administrative Decisions and Rulemaking**

*Baltimore & Ohio R. Co,—Abandonment and Discont. Of Ser.—In Montgomery County, MD & the Dist. of Columbia*,
ICC Docket No. AB-19 (Sub-No. 112), 1990 WL 287371 (March 2, 1990)....................9

*CSX Transp., Inc.—Abandonment Exemption—In Monroe & Owen Counties, IL*,
STB Docket No. AB-55 (Sub-No, 514X), 1997 WL 598035 (Sept. 30, 1997)....................10

*Kansas Eastern R.R., Inc.—Abandonment Exemption—In Butler & Greenwood Counties, KS*,
STB Docket No. AB-563 (Sub-No. 1X), 2006 WL 1516602 (June 1, 2006)....................9

*KCT Ry. Corp.—Abandonment Exemption—In Franklin, Anderson, & Allen Counties, KS*,
ICC Docket No. AB-335 (Sub-No. 2X), 1992 WL 311582 (Oct. 26, 1992)....................9

*Rail Abandonments-Use of Rights-of-Way As Trails (49 CFR Parts 1105 & 1152)*,
2 I.C.C.2d 591, 1986 WL 68617 (Apr. 16, 1986)....................9

*Rail Abandonments-Use of Rights-of-Way As Trails-Supplemental Trails Act Procedures*,
Ex Parte No. 274 (Sub-No. 13), 1989 WL 238631 (May 18, 1989)....................9

*T & P Ry.—Abandonment Exemption—In Shawnee, Jefferson & Atchison Counties, KS*,
STB Docket No. AB-381 (Sub-No. 1X), 1997 WL 68211 (Feb. 20, 1997)....................9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ....................................................................................22

Danaya C. Wright,
*Doing A Double Take: Rail-Trail Takings Litigation in the Post-Brandt Trust Era*, 39 Vt. L. Rev. 703 (2015)....................................................................................14

Danaya C. Wright & Jeffrey M. Hester,
*Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 Ecology L.Q. 351 (2000) ....................................................................................12, 20

U.S. Gov't Accountability Office,
GAO/RCED-00-4, *Surface Transportation: Issues Related to Preserving Inactive Rail Lines as Trials* (1999) ....................................................................................10

William B. Stoebuck & John W. Weaver,
17 *Washington Practice: Real Estate* (2d ed. 2004)....................................................................................11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

# I. INTRODUCTION

Plaintiffs' motion misses the critical point already resolved by this Court's prior ruling—that the Trails Act preserved the railroad easements in the Eastside Rail Corridor ("ERC").[1] The Court held, "[i]t is simply true as a matter of law that the Trails Act preempts state law and preserves railroad easements" and thus plaintiffs' estate, to the extent they have any, continues to be fully encumbered by "BNSF's railroad easements."[2]

Plaintiffs' motion seeking a ruling that the railroad easements currently encumbering their property are limited to surface use is without merit. Under Washington law, a railroad easement is "more than an easement" because it "is more than a mere right of passage." *Morsbach v. Thurston Cnty*., 152 Wash. 562, 569, 278 P. 686 (1929). The railroad easement entitles the holder to "exclusive control and use" of the property and the right to use its easement to conduct not only railroad activities, but also any other incidental activities allowed under Washington law. *Wash. Secs. & Inv. Corp. v. Horse Heaven Heights,* 132 Wn. App. 188, 200, 130 P.3d 880 (2006); *Neitzel v. Spokane Int'l Ry. Co.*, 80 Wash. 30, 38, 141 P. 186 (1914). Because the Trails Act preserved BNSF's railroad easement, the holder of that easement (now King County) is entitled to use the entire right of way, including any aerial or subsurface estate, for trail use, rail use, and uses "incidental" to those purposes.

Even if the property rights of a railroad easement holder were not so broad as a matter of law, plaintiffs offer no reason why these particular railroad easements are limited to "surface" rights as a matter of fact. For years the ERC has been used in precisely the same manner as plaintiffs now contest. The two conveyances at issue—the Lake Washington Belt

[1] Neither the Port of Seattle (the "Port") nor King County dispute plaintiffs' allegation that the two conveyances at issue, the Lake Washington Belt Line deed and the State of Washington Condemnation, granted only railroad easements rather than a fee interest to BNSF's predecessors-in-interest. As outlined in this brief, however, the fact that neither conveyed a fee interest does not entitle plaintiffs to a summary judgment declaring that those conveyances granted only a surface easement nor does it demonstrate that these plaintiffs own the underlying fee interest in the rail corridor.

[2] Order Granting Defs.' Mot. for Partial Summ. J. (Dkt. No. 107) at 10.

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Line Deed and the State of Washington Condemnation—are broadly worded and do not limit the scope of their grants to only a surface estate. Rather, both conveyances expressly convey to BNSF's predecessors-in-interest the right to use the property for all railroad purposes (and one also allows use for all "corporate purposes"), which necessarily must include the subsurface and aerial estates. Even if the Court concludes the conveyances are ambiguous, Washington rules of construction require that the conveyances be construed against the grantor (predecessors-in-interest to the plaintiffs) and in favor of the grantee (predecessors-in-interest to King County).

As the Court ruled, BNSF's easements have been fully preserved. As a matter of law and as a matter of deed interpretation, those easements include the exclusive right to the use and possession of the area on, beneath, or above the surface of the property. Consequently, plaintiffs' motion must be denied.[3] For these same reasons, the defendants are entitled to a ruling that the preserved railroad easements created by the Lake Washington Belt Line Deed and the State of Washington Condemnation afford the easement holder the exclusive use and possession of the area on, beneath, and above the surface of the rail corridor, for railroad, trail, and, in accord with Washington law, uses incidental to those purposes.

## II. RELEVANT FACTS[4]

### A. The Corridor and Its Historical Use by Utilities and Others

Constructed in the early 1900s, the ERC is a 42-mile railroad corridor that provided freight and passenger service east of Lake Washington. In order to maintain a consistent and gradual grade for the rail bed, the ERC was constructed utilizing various subsurface, surface, and aerial features. *See generally* Sullivan Decl. ¶¶ 4–16 (discussing rail bed construction);

[3] In separate oppositions, Sound Transit and Puget Sound Energy ("PSE") challenge plaintiffs' motion as it pertains to their easements. King County and the Port join those motions.

[4] By separate motion noted September 4, 2015, King County and the Port requested plaintiffs' motion be stricken or continued until the pending motion to compel (Dkt. No. 105) is decided and discovery completed. Dkt. No. 114. For the reasons stated therein, additional discovery would allow the presentation of other facts further justifying denial of plaintiffs' motion.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

Nunnenkamp Decl. ¶¶ 2–6 (discussing rail bed construction features on ERC).

BNSF and its predecessors-in-interest have for decades controlled the use of the corridor, granting easements and licenses to a variety of public and private companies, including utilities. Thomsen Decl. ¶ 7 & Ex. 12; Dkt. No. 77-11. These easements and licenses have permitted a broad range of uses including underground and surface pipelines for gas, water, sewage, and drainage; underground and overhead electrical, telephone, cable, power, and fiber optic wires; and roads and highways, including Interstate 405. *Id.* Those uses existed at the time of the Port's acquisition in 2009 and remain to this day. *Id*; *see also* Nunnenkamp Decl. ¶ 7 (discussing Eastside Interceptor).

**B. BNSF's Divestiture, the Port's Purchase, and the Financial Assistance Provided by Other Entities to Acquire and Preserve the Corridor**

In 2003, BNSF decided to sell the corridor and provided the opportunity to the Puget Sound region to maintain and preserve the corridor for transportation and other public purposes. Dkt. No. 77-1 at 10–11. In response, eight governmental entities[5] engaged in a multi-year public process to evaluate the future of the corridor and its potential acquisition. *Id.* The process was well-publicized and all interested parties, including plaintiffs, were able to attend and participate in that community process. *Id.* at 49–62 (description of public meetings). After years of deliberation, BNSF, the Port, and King County entered into a series of interrelated agreements to transfer the corridor to the Port and preserve the underlying right of way for existing and future transportation purposes. Dkt. Nos. 69-13, 69-14.

To offset the significant cost to purchase the corridor and in light of the regional benefits the corridor provided, several local government agencies and public utilities, including King County, PSE, and Sound Transit, agreed "to share in the cost of acquiring" the corridor. Dkt. No. 77-3 at 1.

[5] King County, Snohomish County, the Cities of Bellevue, Kirkland, Redmond, Renton, Snohomish, and Woodinville, the Port, Sound Transit, and the Washington State Department of Transportation participated in the process.

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

### C. The Railbanking of the Corridor and the Preservation of BNSF's Railroad Easement

In September 2008, BNSF filed Petitions for Exemption with the Surface Transportation Board ("STB") to allow for the railbanking of the corridor.[6] Dkt. No. 77-6 (petition for segment at issue here). Contemporaneously, King County filed statements expressing its willingness to assume financial responsibility over the corridor and requesting issuance of Notices of Interim Trail Use ("NITUs"). Dkt. No. 77-7 (statement for segment at issue). On October 27, 2008, the STB issued the NITUs based on the County's and BNSF's expressed willingness to "negotiate for trail use." Dkt. No. 77-8 (NITU for segment at issue). The parties successfully negotiated an agreement that provided for interim trail use, while at the same time allowing for the transfer of BNSF's interests in the corridor to the Port, resulting in the railbanking of the corridor. Dkt. 77-9. As a condition of BNSF's successful railbanking of the corridor, King County agreed to "assume full responsibility for management" of a right-of-way and to accept the right-of-way subject to restoration of rail service. *Id.*

In December 2009, following the railbanking of the corridor, the Port paid BNSF $81 million for the northern portion of the corridor and BNSF donated the balance of the corridor. Dkt. Nos. 69-13, 69-14. These were "a single, interdependent transaction." *Lane v. Port of Seattle*, 178 Wn. App. 110, 115, 316 P.3d 1070 (2013). BNSF warranted that it was conveying rights "sufficient to permit railroad operations on the Property, including passenger railroad operations." Dkt. Nos. 69-13; 69-14 (both at § 4.4). As contemplated at the time of purchase, the Port sold easement rights to PSE and Sound Transit that allowed for installation of electric transmission lines and a high capacity transportation line. Dkt. No. 77-13; Thomsen Decl., Ex. 13. In both instances, the easement rights are subject to the future use of the corridor for freight railroad purposes. *Id.* In 2013, King County purchased the Port's remaining interest in

[6] Approximately 14.5 miles of the ERC remain in active freight service. Dkt. No. 69 at ¶ 7. For the purposes of this brief, references to the ERC or the corridor concern only the railbanked segments.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

the corridor and to this date is the trail sponsor. Dkt. No. 69 ¶¶ 3, 22.

**D. Plaintiffs' Properties and Limitations on Their Ownership Interests**

With a handful of exceptions, all of the plaintiffs bringing this motion acquired their interests in property adjacent to the corridor in the last fifteen years. Thomsen Decl. 2 & Ex. 1. No plaintiff acquired the property before 1962. *Id.* At the time of plaintiffs' acquisitions, the ERC already had been a working rail corridor for over a half century, and was subject to the prior easements and licenses granted by BNSF and its predecessors. Thomsen Decl., Ex. 12; Dkt. No. 77-11. Although beyond the scope of plaintiffs' motion and this cross-motion, defendants dispute plaintiffs claim of ownership in the corridor, as well as the source deeds applicable to many of plaintiffs' properties.[7] These factual disputes do not preclude summary judgment on the scope of the railroad easement. They will be further explored (and perhaps resolved) if and when plaintiffs answer pending discovery.

**E. The *Haggart* and *Smith* Cases and Plaintiffs' Recovery for the "Taking" of Any Reversionary Interest**

In February 2009, a group of plaintiffs, including nearly all of the plaintiffs involved in the pending motion,[8] sued the United States in the Court of Federal Claims for a "taking" based on the STB's issuance of NITUs in the corridor. *Haggart v. United States*, No. 09-103L (Fed. Cl.). Plaintiffs brought the case after BNSF's sale of its interests to the Port and after

[7] The Port and King County believe several plaintiffs do not own property immediately adjacent to the corridor (for instance, it may be separated by a dedicated street). The bulk of plaintiffs also are not entitled to claim ownership in the corridor through Washington's "centerline presumption" and lack standing to raise a claim based on the corridor's use. *See, e.g., Sammamish Homeowners v. Cnty. of King*, No. C15–284 MJP, 2015 WL 3561533 (W.D. Wash. June 5, 2015). In addition, King County previously submitted testimony that the segment of corridor at issue in this matter initially was assembled through four separate railroad deeds and one eminent domain proceeding, and not merely two deeds and an eminent domain proceeding, as plaintiffs assume. Dkt. No. 68 at ¶ 7. In ten instances, plaintiffs either misidentified or oversimplified the railroad deed or deeds for the railroad corridor segments adjoining some of the plaintiffs' parcels. *Id.* at ¶13. Plaintiffs' Motion and its attachments (specifically, the Straup Declaration, Dkt. No. 113-1, and the exhibits attached thereto) do not resolve the factual issues previously identified. As a result there remain materials issues of fact that preclude partial summary judgment in favor of plaintiffs.

[8] Of the 58 plaintiffs who are parties to this motion, 50 were parties in *Haggart* or own property that was at issue in the *Haggart* case. Thomsen Decl., Ex. 1.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

King County had assumed the responsibility as the trail sponsor, and the case settled after the Port sold easements to PSE and Sound Transit. The Court of Federal Claims held that the STB's issuance of NITUs for the corridor was a taking that required the United States to compensate plaintiffs for the value of their reversionary interest in their property. 108 Fed. Cl. 70 (2012).

As advocated by plaintiffs, the court measured the value of the taking by comparing the difference between the value of their land unencumbered by the railroad easement (what plaintiffs would have had if the Trails Act had not prevented abandonment under state law) and the value of their land encumbered by a "general easement permitting recreational trail use with the potential for future railway use by way of rail-banking or possible future development of a commuter rail line." *Id.* at 96. The "possible future development of a commuter rail line," is an express reference to Sound Transit's easement. *Id.* The United States and the plaintiffs entered into a settlement agreement approved by the court. *Haggart v. United States*, 116 Fed. Cl. 131 (2014); Thomsen Decl., Exs. 2–4.[9]

A second case alleging a taking from the railbanking of the ERC was brought in 2014 and settlement of that case is awaiting agency and court approval. Order on Joint Status Report, *Smith, et al. v. United States*, No. 1:14-cv-0387L (Fed. Cl. Sept. 2, 2015) (Dkt. No. 30) (Thomsen Decl., Ex. 7); *see also* Thomsen Decl., Exs. 5–6. Three of the *Smith* plaintiffs are parties to this motion. Thomsen Decl., Ex. 1. Thus only four plaintiffs in the present motion were not plaintiffs or successors-in-interest to plaintiffs in *Haggart* or *Smith*.

On September 11, 2015 (three days before this brief was filed), this Court held in the

[9] Plaintiffs refused to produce the appraisals used to value the takings in *Haggart* to allow an evaluation of what "taking" they were compensated for in *Haggart*. That issue is now the subject of a motion to compel brought by King County, Dkt. No. 105, and one of the bases cited in King County's and the Port's request for a Rule 56(d) continuance of the pending motion for summary judgment, Dkt. No. 114. The Port and King County believe the appraisals may evidence that the $137,961,218.69 settlement (averaging $545,000 per plaintiff) reflects the fee value of the property taken. But even if plaintiffs compromised their claims (or failed to pursue them altogether), this Court correctly concluded in *Ioppolo* that plaintiffs were "beholden to pursue the claims available to them in the earlier litigation." Order, *Ioppolo, et al. v. Port of Seattle, et al.*, C15-0358-JCC, at 7-8 (Dkt. No. 56).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

companion case of *Ioppolo, et al. v. Port of Seattle, et al.*, C15-0358-JCC, that the claims of the putative class seeking damages for a "taking" of the aerial or subsurface rights by King County and Sound Transit are barred. Order at 7-8 (Dkt. No. 56) (Thomsen Decl., Ex. 9). The Court found the settlement in *Haggart* fully compensated plaintiffs for any "taking" of interests that they may have possessed. *Id.* The Court reasoned that "members of the class of named and opt-in plaintiffs were compensated for the fact that the conveyance by BNSF pursuant to the Trails Act exceeded the preexisting scope of the easement: the very claim asserted here," *id.* at 4, and held "to the extent that the expansion of the BNSF easement exceeded its original scope and amounted to a taking, Plaintiffs have already received just compensation under the settlement in *Haggart*," *id.* at 3. As this Court held, this taking compensation was not limited to "surface rights" in the property. *Id.* at 7–8.

## III. ARGUMENT

### A. The Port and King County Are Entitled to Summary Judgment.

With this brief, the Port and King County oppose plaintiffs' motion and cross-move as to the same issue: whether the scope of the railroad easements now held by King County are limited dimensionally to surface use (as plaintiffs claim) or instead entitle the holder to the exclusive control and use of the property and the right to use the property below, at, and above ground to conduct not only railroad and trail activities, but also any other incidental activities allowed under Washington law. To the extent plaintiffs' motion seeks a ruling on the narrow legal issue of the scope of railroad easements, both plaintiffs' motion and King County and the Port's motion may be decided as a matter of law. Disputed issues of fact bar entry of any broader ruling such as whether plaintiffs actually have an ownership interest in the corridor.[10] *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011) (court must view the facts and inferences in the light most favorable to the nonmoving party).

---

[10] See discussion *supra* note 7.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

**B. This Court Held That Railbanking Preserved BNSF's Railroad Easement.**

Plaintiffs' motion studiously avoids the primary reason why their motion should be denied—this Court already held that the Trails Act preserved the railroad easements in the ERC. This Court noted: "When a railroad corridor is railbanked pursuant to the Trails Act, the railroad easements are preserved and trail use becomes a new interim authorized use. BNSF's railbanking of the Eastside Rail Corridor preserved BNSF's railroad easements and allowed interim use of the corridor as a trail."[11] Because BNSF's railroad easements were preserved, all rights attendant to that easement also were preserved and are now held by King County.

This point was confirmed in *Illig v. United States*, 58 Fed. Cl. 619 (2003). In that federal takings case—a case this Court cited as persuasive and relied on in its earlier ruling—the parties disagreed on whether the takings valuation had to account for utility licenses that burdened the plaintiffs' property. *Id.* at 621. The court concluded that the underlying fee owners remained fully subject to the preexisting railroad easements and obtained no new rights as a consequence of railbanking. *Id.* at 631 ("the Trails Act imposed a new easement across plaintiffs' properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity"). Instead, the court held that compensation for the federal government's taking must include the right by the trail sponsor to grant utility licenses, because it was a right that the railroad previously possessed:

> It was the intent of the Trails Act to ensure that [the trail sponsor] had the same rights in its easement that [the railroad] held, and that consequently, in determining the value of the easement imposed on plaintiffs by the government, we must include the value of [the trail sponsor's] authority to grant licenses to [the electrical company] and other utilities, at least insofar as they are embraced by railroad use.

*Id.* at 632 (emphasis added). The court concluded that so long as utility use was consistent with the original railroad easement, the trail sponsor held all authority once held by the railroad to allow it. *Id.* at 634.

[11] Order (Dkt. No. 107) at 10 (emphasis added).

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

More recently, this Court's decision in *Ioppolo* reaffirms the principle enunciated in *Illig*, that the preservation of the corridor by application of the Trails Act necessarily includes all rights associated with the railroad easement. There, the Court recognized that plaintiffs were compensated "based on the federal government's taking of their reversionary interests when the corridor was railbanked" and that there was "no mention of a limitation with respect to surface rights as opposed to subsurface or aerial rights." *Ioppolo*, C15-0358-JCC, at 7 (Dkt. No. 56).

The federal government also recognizes that trail sponsors—by virtue of railbanking—may continue to permit incidental uses of the railroad/trail easements. In the rulemaking process, the ICC (now STB) stated, "we see no reason why the development of non-trail activities or structures on or around the right-of-way should be restricted, as long as they are consistent with interim trail use, rail banking, and future restoration of rail service." *Rail Abandonments—Use of Rights-of-Way as Trails*, 2 I.C.C.2d 591, 608, 1986 WL 68617, at **13 (Apr. 16, 1986); *see also Rail Abandonments—Use of Rights-of-Way As Trails—Supplemental Trails Act Procedures*, Ex Parte No. 274 (Sub-No. 13), 1989 WL 238631, at *5 n.10 (May 18, 1989) ("If the rail carrier's interest allows different uses (such as underground cable) we see no reason why a trail operator should not be able to do the same. The reversionary property owner's position has not changed."). Accordingly, the STB has "allowed dual uses of trails," including uses "of the right-of-way as both a trail and a utility corridor." *Kansas Eastern R.R., Inc.—Abandonment Exemption—In Butler & Greenwood Counties, KS*, STB Docket No. AB-563 (Sub-No. 1X), 2006 WL 1516602, at *3 (June 1, 2006).[12] Similarly, the United States

[12] *See also T & P Ry.—Abandonment Exemption—In Shawnee, Jefferson & Atchison Counties, KS*, STB Docket No. AB-381 (Sub-No. 1X), 1997 WL 68211, at *5, *7 n.16 (Feb. 20, 1997) (use of the right-of-way for utility transmission lines did not result in rescinding a NITU and could provide a source of funds for maintenance), *rev'd on other grounds*, *Becker v. Surface Transp. Bd.*, 132 F.3d 60 (1997); *KCT Ry. Corp.—Abandonment Exemption—In Franklin, Anderson, & Allen Counties, KS*, ICC Docket No. AB-335 (Sub-No. 2X), 1992 WL 311582, at *1-*2 (Oct. 26, 1992) (accepting use of a railbanked corridor for street extension); *Baltimore & Ohio R. Co,—Abandonment & Discont. of Ser.—In Montgomery County, MD & the Dist. of Columbia*, ICC Docket No. AB-19 (Sub-No. 112), 1990 WL 287371, at *2 (March 2, 1990) ("Coalition has not demonstrated that County's

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

General Accounting Office noted that the Trails Act allows a trail sponsor to may make multiple uses of a railbanked corridor.

> [N]othing in the rail-banking statue or the [STB's] regulations precludes a right-of-way from being developed for a mixed use, that is, combining a recreational trail with a highway or light rail line. Similarly, the Board has noted that a trail sponsor's receipt of revenues from a utility company maintaining transmission lines along the right-of-way is not, in and of itself, impermissible. The arrangement could simply be a way for the trail sponsor to obtain funds for the maintenance of the right-of-way and for liabilities and taxes and may not substantially affect the trail use or rail banking.

U.S. Gov't Accountability Office, GAO/RCED-00-4, Surface Transportation: Issues Related to Preserving Inactive Rail Lines as Trials (1999) (Dkt. No. 71-1); *see also CSX Transp., Inc.—Abandonment Exemption—In Monroe & Owen Counties, IL*, STB Docket No. AB-55 (Sub-No, 514X), 1997 WL 598035, at *1 n.5 (Sept. 30, 1997) ("Nothing in the statute or our regulations precludes a right-of-way from being used for mixed highway (or light rail) and recreational use.").

Without acknowledging the unique nature of the preserved railroad easements, plaintiffs claim—without citation—that the easements at issue are merely "a limited right to use the land for a particular purpose," Motion (Dkt. No. 113) at 2, and further limited to use of only the surface, *id.* at 1, 7. Plaintiffs' theory is fundamentally incorrect, as *Illig* and this Court's recent order in *Ioppolo* illustrate. King County possesses the same rights under the railroad easement that BNSF (and its predecessors) held, which under Washington law is exclusive and broad and includes the right to use the subsurface, surface, and aerial dimensions of the land and to permit incidental uses.

---

transitway proposal is incompatible with either trail use or the restoration of service" and referencing another decision allowing tourist train).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

### C. The Easement Holder Has Exclusive Use and Control of Property Encumbered by a Railroad Easement.

#### 1. Under Washington law, a railroad easement affords the holder the exclusive use and control over all property within the easement.

Courts have long accepted that "a railroad company has the exclusive control of all the land within the lines of its roadway." *Grand Trunk R. R. Co. v. Richardson*, 91 U.S. 454, 468 (1875). Under Washington law this principle of "exclusive control" is particularly true:

> Many of the courts say that the nature of the right of way purchased or condemned by a railroad company is more than a mere easement. It has been designated as a qualified or determinable fee,[13] although it is not very important what it is called. It is taken for a specific purpose, to be held so long as devoted to that purpose. A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement.

*Morsbach*, 152 Wash. at 568-69 (citations omitted). Because railroad easements confer the easement holder exclusive use and possession, a railroad easement is unlike a traditional easement in that it eliminates the fee owner's rights altogether while the easement exists: "While this easement exists, the defendant is entitled to the exclusive use, possession, and control of the land, and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever." *N. Pac. Ry. Co. v. Tacoma Junk Co.*, 138 Wash. 1, 6, 244 P. 117 (1926) (citations omitted) (internal quotation marks omitted).

To this day, Washington courts continue to recognize the exclusive use and possession that a railroad easement confers to its owner, likening the property interest conferred to a "fee-like" estate virtually indistinguishable from a fee simple absolute:

> A railroad right-of-way is a very substantial thing, more than a mere right of passage and more than an ordinary easement. It is often likened to a determinable fee. <u>It is an easement with the substantiality of a fee and the attributes of a fee</u>, perpetuity and exclusive use and possession; also the remedies of a fee. <u>This</u>

---

[13] As described at the time, a determinable fee is one for which "while the estate continues, and until the qualification upon which it is limited is at an end, the grantee has the same rights and privileges over his estate as if it were a fee simple." *Aumiller v. Dash*, 51 Wash. 520, 523, 99 P. 583 (1909); *see also* William B. Stoebuck & John W. Weaver, 17 *Washington Practice: Real Estate* § 1.7 (2d ed. 2004) (a determinable fee "is fee simple estate with one of two kinds of conditions attached" that "may cause or allow it to come to an end").

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

> "fee-like" estate is frequently granted in terms usually associated with the grant of a fee simple.

*Hanson Indus., Inc. v. Cnty. of Spokane*, 114 Wn. App. 523, 528, 58 P.3d 910 (2002) (emphasis added) (citations omitted); *see also* Danaya C. Wright & Jeffrey M. Hester, *Pipes, Wires, and Bicycles: Rails-to-Trails, Utility Licenses, and the Shifting Scope of Railroad Easements from the Nineteenth to the Twenty-First Centuries*, 27 Ecology L.Q. 351, 387–88 (2000) (courts have "consistently recognized that the easement is bigger, more extensive, and exclusive as against the fee owner than most private easements and public utility easements").

The right to exclusive use and possession is not a happenstance of case law, but was necessitated by the practical realities of running a railroad[14] and now by the responsibilities of preserving the corridor for potential future reactivation of freight service:

> [T]he Trails Act and its implementing regulations require that a trail sponsor must have the same control over the entire right-of-way corridor that would be held by a railroad in order that the trail sponsor can ensure that any and all uses made of the right-of-way are consistent with the restoration of rail service. As discussed above, . . . such control is exclusive.

*Illig*, 58 Fed. Cl. at 631; *see also State v. Preseault*, 652 A.2d 1001, 1003 (Vt. 1994) ("The fact that defendants' excavation activities do not present a threat to the bicycle and pedestrian path is irrelevant because these activities impinge upon the original railroad easement.").

By operation of the Trails Act and the NITUs, the responsibility for maintaining the railroad corridor is now vested with the trail sponsor, King County. The STB imposes these

---

[14] The Eighth Circuit Court of Appeals explained:

> The nature of railway service requires exclusive occupancy. A railroad company is held to the highest degree of care, and the exercise of this care necessarily requires that it should have complete dominion over its right of way. It is bound to prevent obstructions from being placed on its tracks, and is required to keep them fenced in, and free from rubbish or other combustible materials. The duties of a railway company are due to the public as well as to individuals, and these duties it must perform at its peril. The rules which apply to the use of streets or highways fail, when applied to railroads, because the necessities of their use are different. The railroad must have the exclusive possession and control of the land within the lines of its location, and the right to remove everything placed or growing thereon, which it may deem necessary to remove to insure the safe management of its road.

*Midland Valley R.R. Co. v. Sutter*, 28 F.2d 163, 166 (8th Cir. 1928) (citation omitted).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

duties on the trail sponsor through the "Statement of Willingness to Assume Financial Responsibility," which includes an agreement to assume full responsibility for "[m]anaging the right-of-way," and requires an acknowledgment that use of the right-of-way is "subject to future reconstruction and reactivation" for rail service. 49 C.F.R. § 1152.29(a)(2); (3). As a condition of the successful railbanking of the ERC, King County agreed to assume full responsibility for management of the right-of-way and to accept the right-of-way subject to restoration of service. This responsibility requires the same level of exclusivity and complete dominion as was held by BNSF.

**2. The scope of a railroad easement is determined by its use and purpose, and is not delineated vertically.**

Without any citation to authority or explanation of their reasoning, plaintiffs argue that BNSF's railroad easement only granted surface use rights and excluded subsurface and aerial rights. But plaintiffs' narrow characterization of the railroad easement has no support in the law. Rather, like all easements, the scope of a railroad easement is determined by its use and purpose, and is not delineated vertically by arbitrarily carving the rights into subsurface, surface, and aerial estates. *See* Stoebuck & Weaver, *supra*, § 2.9 ("The 'scope' of an easement or profit is what the holder may legally do under it.").

The Washington Supreme Court explained over 80 years ago that a railroad easement is "a permanent easement for the uses and purposes of its railroad" in which the fee owner has no right to use, occupy, or interfere "in any manner whatever." *N. Pac. Ry. Co.*, 138 Wash. at 6 (emphasis added) (citation omitted); *see also Nw. Supermarkets v. Crabtree*, 54 Wn.2d 181, 186, 338 P.2d 733 (1959) (having granted a street easement,[15] fee owner could not grant to another entity a sewer easement because "there remains no interest in realty that the [fee

[15] Washington has equated the property rights in railroad corridors and street corridors. Like streets, railroad right-of-ways are "public highway[s], created for public purposes," *Lawson v. State*, 107 Wn.2d 444, 449, 730 P.2d 1308 (1986), and statutorily are designated "post roads," RCW 80.36.050. As public highways, railroads "hold their property in trust for the public use." *Lawson*, 107 Wn.2d at 449. A discussion of the relationship between incidental uses of street easements and railroad easements is in the next section.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

owner] could convey"). Railroad construction and operation require extensive use of surface, subsurface and aerial placements. *See* Sullivan Decl. ¶¶ 2–16 (discussing the substantial use of subsurface, aerial and surface rights to construct operational rail beds). The limited gradient suitable for railroad use, for example, requires many tunnels, cuts and bridges, which can extend several hundred feet below and above the surface of the land. *Id.* ¶¶ 8–14; *see also* Danaya C. Wright, *Doing A Double Take: Rail-Trail Takings Litigation in the Post-Brandt Trust Era*, 39 Vt. L. Rev. 703, 713 (2015) (railroad must "alter drainage, build permanent structures, dig into the subsurface of the land for support, locate ballast for tracks and ties, or extend into the airspace for all variety of structures from bridges to cranes to water towers").

**3. Incidental uses of a railroad easement, including utility uses, are within the scope of the easement.**

Under Washington law, the scope of a railroad easement is not limited to construction and operation of a railroad. Rather, within the broad scope of a railroad easement is the right to use the land for "incidental activities": "From th[e] principle of exclusivity has arisen the incidental use doctrine, which states that a railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad." *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*, 121 Wn. App. 714, 731, 91 P.3d 104 (2004) (citation omitted) (emphasis added).[16] The ERC has long been used for incidental purposes. See, *e.g.* Nunnenkamp Decl. ¶ 8 (discussing installation of Eastside Interceptor trunk line in early 1960s); Thomsen Decl., Ex. 12; Dkt. No. 77-11.

The incidental use doctrine arose in the context of highways and streets. A road easement "is held in trust for the public," with "the primary purpose" "for the convenience of public travel." *State ex rel. York v. Bd. of Comm'rs*, 28 Wn.2d 891, 898, 184 P.2d 577 (1947)

[16] The Supreme Court affirmed in part and reversed in part the Court of Appeals decision in *Kershaw*. 156 Wn.2d 253, 126 P.3d 16 (2006). The holdings in both cases are discussed in greater detail *infra*.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

(citation omitted) (internal quotation marks omitted). "In addition to this primary purpose," the *York* court held, "there are numerous other purposes for which the public ways may be used, such as for water mains, gas pipes, telephone and telegraph lines, etc." *Id.* These "secondary uses," the court continued, are permissible "when not inconsistent with[] the primary object of the highways." *Id.* The court held that "[p]oles and wires for carrying electric current" were an "incidental use of highways," such that the fee owner did not have "a right to compensation for the additional servitude to which their fee interests are subjected." *Id.* at 904; *see also McCullough v. Interstate Power & Light Co.*, 163 Wash. 147, 300 P. 165 (1931); *Kershaw*, 121 Wn. App. at 733–34 (applying *York* to railroad easement).

In *Neitzel*, the Washington Supreme Court applied the incidental use doctrine to a railroad easement. There, the fee owner sought to have the railroad easement deemed abandoned because the property was not being used for rail, but instead the railroad had leased the property to a private company, which built a warehouse on the site from which it operated a grocery store. The court held that because "the railway company intends to devote the property to a public use as soon as public necessity requires," abandonment had not occurred. *Neitzel*, 80 Wash. at 34–35. "[S]o long as the property is applied to a use incidental to, or which contributes to, the public business of the transportation company" the fee owner had no right of action. *Id.* at 38.[17]

More recently, in *Kershaw*, 121 Wn. App. 714, the Washington Court of Appeals rejected the fee owner's claim that installation of fiber-optic cables in a railroad easement exceeded the scope of the railroad easement. The court held that "the incidental use doctrine [applies] to railroad rights-of-way, just as it does to public highways." *Id.* at 732.

---

[17] The court cited with approval *Danville & Western Railway Co. v. Lybrook*, 69 S.E. 1066 (Va. 1911), in which the court rejected the fee owner's claim that use of the railroad easement as a fishing and boating club was not permitted, stating, "a railroad . . . is under no obligation to refrain from using its property to the best advantage of the public and itself." *Id.* at 1070.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

> The issue, then, is whether compensation is required because the use places an additional burden on the servient estate. A use places an additional burden on the servient estate if it unreasonably interferes with the rights of the abutting landowner. *York*, 28 Wn.2d at 904. In light of *York's* holding that power (and presumably telephone) poles and lines do not unreasonably interfere with abutting landowners' rights, it is difficult to imagine how placement of underground lines would nevertheless be unreasonable.

*Id.* at 733. The court concluded that the incidental use need not be directly related to railroad activities, but nonetheless noted that to the extent that the incidental use generates revenue,[18] it "at least indirectly serves a railroad purpose." *Id.* at 732–33.

On review, the Washington Supreme Court reversed in part and affirmed in part the Court of Appeals' decision. *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Assoc.*, 156 Wn.2d 253, 126 P.3d 16 (2006). The Supreme Court referred approvingly to the Court of Appeals' reasoning regarding the incidental use doctrine, but reversed because a statute (RCW 80.36.040) that applied only to telecommunications companies required eminent domain proceedings for the installation of fiber-optic cables. *Kershaw*, 156 Wn.2d at 276–77. The court noted, "Absent the clarifying language in RCW 80.36.040, the Court of Appeals analysis may be sufficiently compelling to find the telecommunications cable an incidental use and conclude no compensation was due Kershaw Sunnyside Ranches; however its presence dictates the result here." *Id.* at 276.

In dissent, Justice Madsen, joined by Justices Owens and C. Johnson, would have found the statute inapplicable and held that the installation of the cable "was a permissible incidental use for which no additional compensation was due to Kershaw Sunnyside Ranches, Inc." *Id.* at 281 (Madsen, J., dissenting). Her reasoning reflects what the majority left undecided—the incidental use doctrine continues to apply to railroad easements: "While the parties have not cited Washington cases where the incidental use doctrine has been applied to

---

[18] The Port's sale of easements to PSE and Sound Transit absorbed a portion of the $81 million cost the Port incurred to acquire the corridor. The Port acquired the corridor to "preserve[] a valuable transportation asset for the region, maintain[] current freight rail service, and secure[] the corridor for potential future freight rail use supporting the region's economy." Dkt. No. 77-10.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

railroad rights of way,[19] the doctrine should apply." *Id.* at 288.

Most recently, in *Washington Securities & Investment Corp. v. Horse Heaven Heights, Inc.*, 132 Wn. App. 188, 130 P.3d 880 (2006), the Court of Appeals affirmed the application of the incidental use doctrine to railroad easements. In doing so, the court stated that the *Kershaw* Supreme Court decision "strongly indicates an endorsement of the interpretation of the incidental use doctrine as embodied in the Court of Appeals [*Kershaw*] opinion rather than the stricter application employed by the trial court." *Id.* at 201. The court held that the incidental use doctrine did not require the use to be directly related to a railroad purpose but only that the use be "not inconsistent" with the operation of the railroad. Thus, "the incidental use doctrine permits a railroad to use its easement to conduct not only railroad activities, 'but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad.'" *Id.* at 200 (quoting *Kershaw*, 156 Wn.2d at 273); *see also Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("Where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.") (citation omitted) (internal quotation marks omitted).

**D. Plaintiffs Do Not Prove as a Matter of Law That the Scope of the Railroad Easements in the ERC Exclude Subsurface and Aerial Rights.**

Plaintiffs state unequivocally, "Courts are nearly unanimous in holding that railroad easements do not encompass subsurface and aerial rights," followed by citation to "*Kershaw*, 126 P.3d at 28." Motion at 15. *Kershaw* says nothing of the sort. Rather, the Court suggested the Court of Appeals analysis (which <u>allowed</u> subsurface use) might be "sufficiently compelling" absent the particular statute requiring eminent domain proceedings. *Kershaw*, 156 Wn.2d at 276. No statute likewise requires eminent domain in proceedings for the uses at issue

[19] The parties appear not to have cited *Neitzel*.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

here. The decision contains no holding (let alone reflecting "near unanimity" in the case law) that railroad easements exclude subsurface or aerial rights. Rather, on the page plaintiffs cite, the Court assumed that the railroad had an interest in the subsurface rights and surmises the fee owner may not, stating, "the railroad's property rights and those of the fee owner [will be] taken into account" during the eminent domain proceedings and, "[i]t certainly is possible that no additional burden will be imposed on the servient estate." *Kershaw*, 156 Wn.2d at 276–77.

Plaintiffs' only other citations for the stated proposition are to out-of-state cases. Motion (Dkt. No. 113) at 15–17. But even those cases recognize that a railroad easement—under federal land grants which are not at issue here—include subsurface rights. And none held that all railroad easements, let alone railroad easements under Washington law, "unanimously" exclude subsurface or aerial estates. In fact, in one, *Kansas City Southern Railway Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829 (10th Cir. 1973), the court stated unequivocally that railroad easements include "substantial" subsurface rights:

> Of course, a railroad company which acquires a right of way over and through lands of another acquires more than the mere right of passage over such lands. It acquires the right to excavate drainage ditches; to construct beneath the surface supports for bridges and other structures; to erect and maintain telegraph lines and supporting poles with part of the poles beneath the surface; to construct passenger and freight depots, using portions of the land below them for foundations; to construct signals; to make fills and cuts to decrease the grades of their rail lines, and to use material from the land covered by the right of way to make such fills; and to construct a roadbed and lay its ties and rails thereon. Hence, it has substantial surface and subsurface rights, which it is entitled to have protected.

*Id.* at 834–35 (emphasis added).

Plaintiffs also find no support for their "surface easement only" theory in the *Haggart* decisions.[20] As this Court noted, nothing in *Haggart* limits plaintiffs' compensation to only

[20] Plaintiffs also appear to argue that the Trails Act operated to prevent abandonment of the surface rights related to the railroad easement, but not the aerial and subsurface rights. If this is plaintiffs' argument, it finds no support in the language of the Trails Act and is directly contrary to the Court's order stating, "BNSF's railbanking of the Eastside Rail Corridor preserved BNSF's railroad easements and allowed interim use of the corridor as a trial." Order (Dkt. No. 107) at 10.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

surface rights. Order, *Ioppolo, et al. v. Port of Seattle, et al.*, C15-0358-JCC, at 7-8 (Dkt. No. 56).[21] To the contrary, the court recognized that the Trails Act operated to encumber plaintiffs' property with a continued railroad easement and the additional burden of a trail, in addition to the "possible future development of a commuter rail line," meaning Sound Transit's easement. *Haggart*, 108 Fed. Cl. at 96–98. Under *Illig*, a taking by the federal government includes all rights possessed by the railroad, including the right to provide utility licenses, and those rights necessarily would have been (or should have been) included in the valuation in *Haggart*. That some plaintiffs did not seek compensation from the federal government is immaterial: the question is not what plaintiffs received, but what the federal government took. As this Court held, operation of the Trails Act preserved all property rights established by the railroad easements and added trail use.[22]

**E. The Conveyances at Issue Grant Railroad Easements That Include Subsurface and Aerial Rights.**

Because the scope of easements are determined by their purpose and are not delineated vertically, as a matter of law railroad easements allow for use of the subsurface, surface, and aerial estate. That legal conclusion is buttressed by the plain language of the conveyances here, which include the right to use the entirety of the land, including the land below, at, and above the surface.

The rules of construction that apply to land conveyances are well-established under Washington law. When construing deeds, a court's "principal aim is to effect and enforce the

---

[21] Even if plaintiffs voluntarily limited their recovery to surface rights by not pursuing compensation for subsurface and aerial rights, it would not matter. Plaintiffs "were beholden to pursue the claims available to them in the earlier litigation." *Ioppolo*, C15-0358-JCC, at 8; *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1080 (9th Cir. 2003) (affirming dismissal of takings that involved "the same nucleus of facts" of a prior takings claim that had resulted in a final judgment, but where plaintiffs had failed to pursue all available claims in the prior matter). Plaintiffs' effort to subdivide their subsurface, surface, and aerial rights is nothing more than an effort to bring multiple takings cases for the same property. *See Missouri Real Estate & Ins. Agency v. St. Louis Cnty.*, 959 S.W.2d 847, 851 (Mo. Ct. App.1997) (where condemnation action compensated property owner for governmental taking, owner could not thereafter initiate inverse condemnation action based upon the same taking).

[22] Order (Dkt. No. 107) at 10.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

intent of the parties." *Kershaw*, 156 Wn.2d at 262. In those instances "where ambiguity exists, extrinsic evidence may be considered in ascertaining the intentions of the parties." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 65–66, 277 P.3d 18 (2012). For deeds granting railroad right-of-ways, Washington courts have considered extrinsic evidence even without ambiguity. *Id.* at 69. In considering extrinsic evidence, the Court may consider the circumstances of the transaction and the subsequent conduct of the parties in determining their intent at the time the deed was executed. *Id.*[23] But when the Court remains in doubt as to the parties' intent, "ambiguity in a deed is resolved against the grantor." *Kershaw*, 156 Wn.2d at 272.

**1. The parties' conduct under the conveyances evidences an intent to grant the right to use all of the property, including that below, at, and above the surface.**

The parties' subsequent conduct reflects a clear intention to confer an easement beyond only the surface estate. As one author explained:

> Because the intent of the original grantor as to the scope of the easement is the critical issue, courts will generally allow incidental uses to which the servient landowner consented over an extended period of time. The landowner's failure to complain about a single third-party use may give rise to a presumption that the intent of the parties was to allow any additional third-party incidental uses. Original intent, therefore, can be gleaned from the ongoing actions of the parties and, when coupled with the incidental use doctrine, can play an important role in assessing the divisibility of a railroad easement.

Wright & Hester, *Pipes, Wires, and Bicycles*, at 424.

Here, the Court can determine the original intent based on the actions by the parties' predecessors-in-interest. Each of the 58 plaintiffs who brought this motion acquired his or her property interest at least a half-century after the railroad right-of-way was created. Thomsen Decl., Ex. 1. The railroad used substantial subsurface, surface, and aerial rights to construct

---

[23] Thus in *Veach v. Culp*, 92 Wn.2d 570, 599 P.2d 526 (1979), the specific language in the conveyance, the subsequent conduct of the parties, and the fact that the railroad operated only an infrequent tourist excursion train outside the jurisdiction of the ICC/STB led the court in to conclude that the underlying landowners retained some concurrent use of the corridor for access to an adjacent lake so long as it did not interfere with rail operations.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

the rail bed and facilitate railroad operations in the ERC. Nunnenkamp Decl. ¶¶ 2–7. Each of the plaintiffs at issue acquired his or her property interest decades after BNSF (or its predecessor) licensed or granted easements to a variety of public and private entities for utilities and other uses. Thomsen Decl., Exs. 1, 12; Dkt. No. 77-11. To defendants' knowledge, none tried to bar BNSF from using the corridor in any respect. BNSF used the corridor in exactly the same manner as proposed by PSE and Sound Transit in granting licenses and rights to others to install sewer pipes, electrical transmission lines, and engage in a whole host of activities involving subsurface and aerial estates. *Id.*

It is impossible to reconcile plaintiffs' position that only a surface easement exists with the existing and historical uses of the corridor. *See, e.g.*, *City of Seattle v. Nazarenus*, 60 Wn.2d 657, 670, 374 P.2d 1014 (1962) (when property owners purchased their property they "knew, or should have known" that the city had an easement and therefore could take no action encroaching on the city's right of way).

**2. The conveyances grant an easement to use all of the land for the purposes described.**

Even absent consideration of the subsequent conduct, the two conveyances at issue convey broad rights and cannot be read to convey only the use of the surface of the property. Because any ambiguity must be construed against the grantors (plaintiffs' predecessors-in-interest) and in favor of the grantee (King County's predecessors-in-interest), the broad terms can only be read as conveying all rights to use the land for the purposes described. *See Ray v. King County*, 120 Wash. App. 564, 571, 587, 86 P.3d 183 (2004) ("When the court remains in doubt as to the parties' intent or as to the quantum of interests conveyed, a deed will be construed against the grantor.").[24]

The Lake Washington Belt Line Deed (Dkt. No. 113-6) consists of a conveyance from

[24] For purposes of this brief only, King County and the Port accept the transcriptions of the documents plaintiffs filed at Dkt. Nos. 113-6 and 113-7.

LAW OFFICES
CALFO HARRIGAN LEYH & EAKES LLP
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

one railroad company (the Lake Washington Belt Line Company) to another (the Northern Pacific and Puget Sound Shore Railroad Company). The deed's plain language conveys more than just use of the surface of the property. It provides to the grantee the right to use the property for the "construction, operation, and maintenance" of a railroad line that goes "on, over, across and through" the described tracts of land. These terms are broad and not limited to only a surface right; one may not go "over" or "through" a parcel if the grantee is limited to the parcel's surface and there was no need to use four words where one would suffice. In addition, the deed expressly refers to the right of way as being "staked out and graded," physical acts that could not occur unless the right to use the subsurface is included.

What is referred to as the State of Washington Condemnation is a Judgment and Decree of Appropriation in King County Superior Court Case No. 40536, dated February 8, 1904 (Dkt. No. 113-7). It contains similar broad language. The document states that the "land, real estate and premises" was acquired both for "purposes of a right of way for the railroad" and for "all other of its corporate purposes" and vests title to the railroad and "its successors and assigns for such corporate purposes." "Corporate purposes" refers to any purpose that "constitut[es] a public use." *Neitzel*, 65 Wash. at 107. Acquisition of "land, real estate and premises" expresses much more than mere surface use. "Land" is a "three-dimensional area consisting of a portion of the earth's surface, the space above and below the surface. . . . 'In its legal significance, land is not restricted to the earth's surface, but extends below and above the surface.'" Black's Law Dictionary at 1008 (10th ed. 2014) (citation omitted). "Real estate" means "primarily land, and everything which is naturally a part of the land, or is more or less permanently added to it. Trees, mineral deposits, gas and oil wells are all classed as real property so long as they remain a part of the land . . . ." *Id.* at 1412 (citation omitted). These broad terms include (and cannot be reasonably interpreted to exclude) subsurface or aerial estates. The "land, real estate and premises" are "described" as, "All those portions of the

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

shore lands . . . lying and being included within that . . . 100 foot strip of land . . . as the same is now located, staked, out and to be constructed over and across such shore lands." The term "all" is broad and inclusive, referring to the entirety of the property—and not delimited to the surface—"lying" and "included" within the "100 foot strip of land." The conveyance simply places no vertical limits on the use of the right of way.

The conveyances at issue expressly confer more than a "surface" easement. That conclusion is even more clear in light of the directive to construe ambiguity in favor of the easement holder. *See, e.g.*, *Newport Yacht*, 168 Wn. App. at 66–67.

## IV. CONCLUSION

Plaintiffs have not and cannot prove the premise of their motion: that the railroad easements now held by King County are limited to surface use of the property. Washington law directs the opposite conclusion. Because plaintiffs are wrong about the scope of the railroad easements, they are wrong that the easements granted by the Port are "null and void." In addition to denying plaintiffs' motion for partial summary judgment, King County and the Port request this Court grant partial summary judgment and rule as a matter of law that the railroad easements at issue (now held by King County) provide for the holder's exclusive use and possession of the area on, beneath, and above the surface of the rail corridor, for railroad, trail, and incidental uses allowed under Washington law.

DATED this 14th day of September, 2015.

CALFO HARRIGAN LEYH & EAKES LLP

By *s/ Timothy G. Leyh*
Timothy G. Leyh, WSBA#14853

By *s/ Randall Thomsen*
Randall Thomsen, WSBA#25310

By *s/ Kristin Ballinger*
Kristin Ballinger, WSBA#28253



LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717

999 Third Avenue, Suite 4400
Seattle, WA 98104
Telephone: (206) 623-1700
Fax: (206) 623-8717
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com

Attorneys for Defendant Port of Seattle

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By *s/David J. Hackett*
DAVID HACKETT, WSBA #21236
Senior Deputy Prosecuting Attorney

By *s/H. Kevin Wright*
H. KEVIN WRIGHT, WSBA #19121
Senior Deputy Prosecuting Attorney

By *s/Peter G. Ramels*
PETER G. RAMELS, WSBA #21120
Senior Deputy Prosecuting Attorney

By *s/Barbara A. Flemming*
BARBARA A. FLEMMING,
WSBA #20485
Senior Deputy Prosecuting Attorney
*Attorneys for Defendant King County*

King County Prosecuting Attorney's Office
500 Fourth Ave., 9th Floor
Seattle, WA 98104
Telephone: (206) 296-8820 / Fax: (206) 296-8819
Email: david.hackett@kingcounty.gov
kevin.wright@kingcounty.gov
pete.ramels@kingcounty.gov
barbara.flemming@kingcounty.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daryl A. Deutsch WSBA#11003
daryl@rdtlaw.com

Thomas S. Stewart
Elizabeth McCulley
stewart@swm.legal
mcculley@swm.legal

Michael J. Smith
smith@swm.legal

Gavin W. Skok, WSBA#29766
James E. Brietenbucher, WSBA#27670
Courtney Seim, WSBA#35352
Bryan J. Case, WSBA#41781
gskok@riddellwilliams.com
jbreitenbucher@riddellwilliams.com
cseim@riddellwilliams.com
bcase@riddellwilliams.com

David J. Hackett, WSBA#21236
Andrew W. Marcuse, WSBA#27552
david.hackett@kingcounty.gov
andrew.marcuse@kingcounty.gov

Desmond L. Brown, WSBA #16232
Loren G. Armstrong, WSBA #33068
desmond.brown@soundtransit.org
loren.armstrong@soundtransit.org

DATED this 14th day of September, 2014.

*s/Susie Clifford*

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700 FAX, (206) 623-8717