THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, ET AL, | NO. 2:14-CV-000784-JCC |
| Plaintiffs, | PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, | Originally Noted on Motion Calendar for SEPTEMBER 18, 2015 and then Renoted to OCTOBER 9, 2015 |
| | and |
| | PLAINTIFFS' OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT |
| Defendants. | NOTE ON MOTION CALENDAR: October 9, 2015 |
| | ORAL ARGUMENT REQUESTED |

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page i

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     THE DEFENDANTS MERELY ACQUIRED A SURFACE EASEMENT FOR A
        HIKING AND BIKING TRAIL BY AND THROUGH THE TRAILS ACT AND
        HAVE NO CURRENT INTEREST IN A RAILROAD PURPOSES EASEMENT .........4

III.    A RAILROAD PURPOSES EASEMENT IS A SUBSTANTIAL THING, BUT IT
        DOES NOT INCLUDE THE SUBSURFACE OR AERIAL RIGHTS OF THE FEE
        OWNER EXCEPT TO THE EXTENT THE SUBSURFACE OR AERIAL RIGHTS
        ARE ACTUALLY USED TO SUPPORT THE CONSTRUCTION OR OPERATION
        OF THE RAILROAD .................................................................................................6

        A.   Although a Railroad Purposes Easement is a Substantial Thing, the
             Adjacent Landowner is Still the Owner of the Servient Estate, Which
             Includes Subsurface and Aerial Rights ............................................................7

        B.   A Railroad Purposes Easement Does Not Overcome Plaintiffs' Fee
             Ownership in the Subsurface or Aerial Portions of the Land as a Matter of
             Law ...............................................................................................................12

IV.     THE "INCIDENTAL USE" DOCTRINE DOES NOT APPLY AT ALL AND DOES
        NOT GIVE THE DEFENDANTS THE RIGHT TO USE THE SUBSURFACE AND
        AERIAL RIGHTS OF THE FEE OWNER IN ANY FASHION THEY DESIRE ...........15

V.      THE SETTLEMENT RECEIVED BY SOME OF THE PLAINTIFFS FOR THEIR
        "REVERSIONARY INTEREST" IN THE RAILROAD CORRIDOR IN *HAGGART*
        AND *SMITH* DID NOT INCLUDE PAYMENT FOR THEIR SUBSURFACE AND
        AERIAL RIGHTS WITHIN THEIR FEE OWNERSHIP AS A MATTER OF LAW
        AND AS A MATTER OF FACT ...................................................................................20

VI.     THE FEE OWNERSHIP RIGHTS OF THESE PLAINTIFFS IN THE
        SUBSURFACE AND AERIAL PORTIONS OF THE RAILROAD CORRIDOR
        HAVE NOT BEEN IMPACTED AT ALL BY THE DEFENDANTS'
        ACQUISITION OF THE RAILROAD CORRIDOR BY AND THROUGH THE
        TRAILS ACT ............................................................................................................26

VII.    CONCLUSION ........................................................................................................30

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING
COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION
TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-
cv-000784-JCC - Page ii

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

# TABLE OF AUTHORITIES

*Anna F. Nordus Family Trust v. United States*, 106 Fed. Cl. 289 (Fed Cl. 2012).....................5, 21

*Blair v. United States*, Case No. 09-528 (Fed. Cl. 2014)...............................................................18

*Brandt Revocable Trust v. United States,* 134 S. Ct. 1257 (2014) ............................................8, 12

*Energy Transportation Systems, Inc., v. Union Pacific Railroad Company*, 435 F. Supp. 313 (D. Wyo. 1977) *aff'd sub nom. Energy Transp. Sys., Inc. v. U. Pac. R. Co.*, 606 F.2d 934 (10th Cir. 1979) ..........................................................................................................................9

*Great Northern Ry. Co. v. United States*, 315 U.S. 262 (1942)........................................8-9, 12-13

*Haggart v. United States*, 108 Fed. Cl. 70 (Fed. Cl. 2012)......................................3, 10-11, 20-25

*Hanson Indus., Inc. v. Cnty. of Spokane*, 58 P.3d 910 (Wash. App. 2002) ........................9, 10, 13

*Hayward v. Mason*, 104 P. 139 (Wash. 1909) ..............................................................................12

*Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171 (10th Cir. 1949).............................................9

*Howard v. United States*, 106 Fed. Cl. 343 (Fed. Cl. 2012) ........................................................21

*Illig v. United States,* 58 Fed. Cl. 619 (Fed. Cl. 2003) .......................................................... 27-28

*Ioppolo et al v Port of Seattle et al.*, Case No. 2:15-cv-00358-JCC.............................................22

*Kansas City Southern Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829 (10th Cir. 1973)..................................................................................................................8

*Kansas Eastern R.R. Inc.—Abandonment Exemption—In Butler & Greenwood Counties, KS,* STB Docket No. AB-563 2006 WL 1516602 (June 1, 2006)................................................28

*Kershaw Sunnyside Ranches Inc. v. Yakima Interurban Lines Ass'n*, 91 P.3d 104 (Wash. App. 2004).............................................................................................. 18-19

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 126 P.3d 16 (Wash. 2006)............................................................................... 13, 14, 17, 19-20, 29

*Ladd v. United States*, 630 F.3d 1015 (Fed. Cir. 2010) ........................................................24, 28

*Lawson v. State*, 730 P.2d 1308 (Wash. 1986) .............................................6, 10-11, 13-15, 17, 29

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page iii

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

*Morsbach v. Thurston Cy.,* 278 P. 686 (Wash. 1929)..................................................9, 11

*Neitzel v. Spokane Intern. Ry. Co.*, 141 P. 186 (Wash. 1914) ...........................10, 13, 17

*New Mexico v. United States Trust Co.*, 172 U.S. 171 (1898)........................................7

*Northwest Supermarkets, Inc. v. Crabtree*, 338 P.2d 733 (Wash. 1959).......................11

*Pollnow v. Department of Natural Resources,* 276 N.W.2d 738 (Wis. 1979)...............17

*Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Preseault I*") ..........24

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*").................. 4-5, 6, 16

*Raulerson v. United States*, 99 Fed. Cl. 9 (Fed. Cl. 2011)...........................................21

*Rogers v. United States*, 90 Fed. Cl. 418 (Fed. Cl. 2009)...............................................5

*Smith v. United States*, Case No. 14-cv-387L (Fed. Cl. 2014) ........................... 3, 20-25

*Sunnyside Valley Irr. Dist. v. Dickie*, 73 P.3d 369 (Wash. 2003)..................................15

*T & P Ry.—Abandonment Exemption—In Shawnee, Jefferson & Atchison Counties, KS,* STB Docket No. AB-381, 1997 WL 68211 (Feb. 20, 1997) .......................................28

*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, 180 Cal. Rptr. 3d 173, 196 (Cal. App. 2014) ...................................................................................................9

*Western Union Tele. Co. v. Penn. R.R.*, 195 U.S. 540 (1904) ..................................7, 12

*Zobrist v. Culp,* 627 P.2d 1308 (Wash. 1981) ...........................................................16

**Statutes**

16 U.S.C. 1247(d) .........................................................................................................6, 23

45 U.S.C. § 151 ..................................................................................................................15

49 U.S.C. §10501 .............................................................................................................16

49 U.S,C. §10102 ........................................................................................................15, 16

Rev. Code Wash. 8.08.010..............................................................................................20

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page iv

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

Rev. Code Wash. 53.25.190.........................................................................................20

Rev. Code Wash. 80.32.060.........................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING
COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION
TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-
cv-000784-JCC - Page v

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

## I.      INTRODUCTION

2

The Port and King County (hereinafter "Defendants") have known from the very

3

beginning that the original source conveyances to the railroad conveyed easements only.[1]

4

Despite specific statements in the agreements between the railroad and the Defendants,[2] despite

5

their own internal title documents, despite specific requests for admission that both Defendants

6

dodged,[3] and despite prior motions on this exact subject, the Defendants did not and could not

7

admit prior to now that the original source conveyances at issue conveyed easements to the

8

railroad.   Now that all of the parties agree that the original source conveyances to the railroad

9

conveyed easements, we can finally address the scope of the property interest that the

10

Defendants acquired by and through the Trails Act.

11

The necessary discussion concerning the scope of what the Defendants acquired under

12

the Trails Act and the scope of the railroad's easement is now fundamental to all of the related

13

property rights issues going forward.   The scope of the railroad's easement, and now King

14

County's trail easement, is not complicated.   The Defendants first argued that the railroad's

15

16

17

18

---

[1]  The mapping and title work done by the Port and King County at the time of acquisition confirmed that easements only were granted.  *See* Pls. Motion, D.E. 113, Section IV.B, at p. 10.

19

[2]  As this Court has already pointed out, "In these transfers, the Port made no warranty of title as to the Property or Easement Agreement and specifically advised these parties that the Port may not hold fee simple title to the property and that the Port's interest in all or part of the property, if any, may rise only to the level of an easement for railroad purposes."  *See* Order Denying Defendants' Motion to Dismiss, D.E. 59, at p. 3.

20

21

[3]  Requests for admissions were served on all of the Defendants and all of them refused to admit that the original source conveyances to the railroad conveyed easements.  The response by Defendant King County is typical:

22

King County cannot truthfully admit or deny.  King County admits that at least one court has found that this conveyance conveyed only an easement but King County was not a party to that case.  Whether the conveyance was in fee or an easement is a mixed question of fact and law and King County does not have sufficient factual information to make this determination at this point, especially when the attached exhibit is largely illegible and the transcription is not authenticated.  King County thus has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

23

24

25

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 1

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

easement was "preserved," and they even filed a motion to that affect and this Court already ruled, but the Defendants made no effort whatsoever to articulate what that actually means within the context of property rights and what exactly was preserved.[4]

Instead of dealing with the actual scope of the easement that they acquired pursuant to the Trails Act, the Defendants merely make a quantum leap to assume they can use the former railroad corridor in any fashion that they want.  In essence, the Defendants have acted and are still acting as if they own the fee in the former railroad corridor, including subsurface and aerial rights.  In fact, the Defendants state that "the fact that neither [the original source conveyances] conveyed a fee interest does not entitle Plaintiffs to a summary judgment declaring that those conveyances granted only a surface easement nor does it demonstrate that these Plaintiffs own the underling fee interest in the rail corridor."[5]  So, without even attempting to address the nature of the easement that they actually acquired by and through the Trails Act, surface easement or not, the Defendants merely state that Plaintiffs have not demonstrated their fee ownership interest yet, which will ultimately either be briefed or be the subject of a quiet title trial, and they ignore the obvious fact that by admitting they acquired an easement the Defendants are admitting that they themselves do not own the fee, which includes the subsurface and aerial rights.

The Defendants are basically attempting to circumvent over 100 years of basic property law principles by and through the Trails Act.  The Defendants first state that they are "entitled to use the entire right-of-way, including any aerial or subsurface estate, for trail use, rail use, and

---

[4] The railroad's easement is "preserved" for future railroad activities through the railbanking process by and through the Trails Act.  *See* Section II *infra*.
[5] *See* Def.'s Br., D.E. 124, at p. 1, fn. 1.

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 2

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

uses 'incidental' to those purposes,"[6] which is a complete misapplication of the "incidental use" doctrine and contrary to binding precedent from the Supreme Court of Washington. Worse than that, however, they completely ignore their tacit admission that they do not own the fee, which includes subsurface and aerial rights, and argue that they have the "exclusive right to the use and possession of the area on, beneath, or above the surface of the property,"[7] which does not address the scope of their <u>current</u> easement[8] and ignores the basic property law proposition that the Defendants do not own the fee in the railroad corridor.[9]

In order to address the Defendants' incorrect and misguided arguments, Plaintiffs' reply and response to Defendants' cross-motion will address five primary issues, as follows:

1. The scope of the actual property interest that the Defendants actually acquired by and through the Trails Act (discussed in Section II *infra*);

2. Although a railroad purposes easement is a substantial thing, it does not include the subsurface and aerial rights of fee ownership (discussed in Section III *infra*);

3. The "incidental use" doctrine does not apply under these facts at all and does not give the Defendants the right to use the railroad corridor in any fashion they desire (discussed in Section IV *infra*);

4. The settlement received by some of the Plaintiffs for their "reversionary interests" in the railroad corridor in *Haggart v. United States* and *Smith v. United States* did

---

[6] *Id.* at p. 1 (emphasis added).

[7] *Id.* at p. 2.

[8] The Defendants merely acquired an easement for a hiking and biking trail by and through the Trails Act. The railroad purposes easement has been "preserved" merely for future possible reactivation as a railroad by a qualified carrier by and through the Trails Act. *See* Section II *infra*; *see also* Plaintiffs' response to Sound Transit's cross-motion for summary judgment filed contemporaneously herewith.

[9] The Court has already pointed out these nuances with the Defendants' position, taking Plaintiffs' allegations from the Complaint, by stating "In alleged contravention of the axiom that one cannot transfer a greater property interest than one holds, the Port, along with King County, assigned some of these <u>recreational trail use</u> surface rights, as well as <u>subsurface</u> and <u>aerial</u> rights (which the Port does not appear to have possessed in the first place), to Defendant Central Puget Sound Regional Transit Authority (Sound Transit) <u>for public transportation purposes</u> (the building of a High Capacity Transit System), and also Defendant Puget Sound Energy, Inc. (PSE), a private utility corporation, <u>for electricity distribution and utility delivery purposes</u>." *See* Order Denying Defendants' Motion to Dismiss, D.E. 59, at pgs. 2-3 (emphasis in original).

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 3

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110 Fax (425)455-1626

not include payment for their subsurface and aerial rights within their fee ownership as a matter of law and as a matter of fact (discussed in Section V *infra*); and

5.  The fee ownership rights of these Plaintiffs in the subsurface and aerial portions of the former railroad corridor have not been impacted at all by the Defendants' acquisition of their easement for a hiking and biking trail by and through the Trails Act (discussed in Section VI *infra*).

## II.   THE DEFENDANTS MERELY ACQUIRED A SURFACE EASEMENT FOR A HIKING AND BIKING TRAIL BY AND THROUGH THE TRAILS ACT AND HAVE NO CURRENT INTEREST IN A RAILROAD PURPOSES EASEMENT

As a threshold matter, the Defendants did not acquire a railroad purposes easement by and through the Trails Act but, rather, acquired a trail/railbanked easement.   A railbanked easement, by definition, is the preservation of the railroad purposes easement for potential future reactivation, not the current right to use a railroad purposes easement.   In fact, in order for any entity, Defendant or not, to invoke the use of the railbanked corridor, the entity must comply with the reactivation requirements of the Surface and Transportation Board ("STB").   *See* GNP Rly, Inc., FD 35407, Decision dated June 15, 2011, attached as Exhibit A (denying GNP Railway's request to reactivate the railbanked right-of-way that is also involved in this case); *see also* Report to the Honorable Sam Brownback, Surface Transportation Issues Related to Preserving Inactive Rail Lines as Trails, attached as Exhibit B (noting that "if the rail carrier that banked a right-of-way wants to return it to rail service, the carrier has to notify the Board, the abandonment proceeding is then reopened, and the trail use authority is revoked").

The fact that railbanking involves a future use, not a current use, is the reason why Courts have always declined to find that railbanking is a current railroad purpose.   *See, e.g.*, *Preseault v. United States*, 100 F.3d 1525, 1554 (Fed. Cir. 1996) ("*Preseault II*") (Rader, J., concurring)

(rejecting the railbanking argument as a "vague notion," incapable of overriding the <u>present use of the property as a recreational trail</u>) (emphasis added); *Anna Nordhus Family Trust v. United States*, 98 Fed. Cl. 331, 339 (Fed. Cl. 2011) railbanking is "simply a speculative assertion by Defendant <u>that some resumed rail service could occur in the future</u>. The transfer of the easement to entities completely unconnected with rail service, and the removal of all rail tracks on the corridor, lead the Court to conclude <u>that any future rail use</u> simply is unrealistic") (emphasis added); *Rogers v. United States*, 90 Fed. Cl. 418, 432 (Fed. Cl. 2009) (interpreting Florida law and indicating, "[h]ere, as in *Preseault II*, the use of the right-of-way as a public trail while <u>preserving</u> the right-of-way for <u>future</u> railroad activity was not something contemplated by the original parties to the Honor conveyance back in 1910") (emphasis added).

Under the Trails Act, it is imperative to note that if railbanking was a current railroad purpose, there would not be any Trails Act takings cases because the "reversionary interest"—to have land back unencumbered by a railroad purposes easement would **never vest** if the current railroad purposes easement did not extinguish/expire upon issuance of the NITU by the STB. Instead, the railroad purposes easement is converted to a new "railbanked" easement/trail easement that replaces the former railroad purposes easement. Railbanking under the Trails Act is not a current railroad purposes easement but is, instead, merely meant to maintain federal jurisdiction in case a qualified railroad reactivates service over the corridor at some unknown future time.

The Defendants simply do not have any current rights in the former railroad purposes easement. Rather, the Defendants acquired a recreational trail/railbanked easement pursuant to the Trails Act. The Defendants, as the "trail users" under the Trails Act (the manner they

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

acquired their interest formerly held by BNSF), are authorized to use the land on an interim basis as a trail.

Washington law is totally on all fours with these basic property law concepts.  Because trail use causes the termination of the current railroad purposes easement under Washington law pursuant to *Lawson v. State*, 730 P.2d 1308 (Wash. 1986),[10] then the **only way** the railroad purposes easement could currently exist is **if railbanking is a railroad purpose**.  The United States Supreme Court and every other court has rejected that argument over and over again.  Although this Court held that railbanking "preserved" the railroad purposes easement, the "preserved" easement is NOT a current railroad purposes easement that is currently available to be used for railroad purposes but, rather, the railroad purposes easement has been "preserved" for future *potential* use—that is railbanking.  *See* 16 U.S.C. 1247(d) (expressly stating that "the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for **future reactivation** of rail service) (emphasis added).[11]

III.  **A RAILROAD PURPOSES EASEMENT IS A SUBSTANTIAL THING, BUT IT DOES NOT INCLUDE THE SUBSURFACE OR AERIAL RIGHTS OF THE FEE OWNER EXCEPT TO THE EXTENT THE SUBSURFACE OR AERIAL RIGHTS ARE ACTUALLY USED TO SUPPORT THE CONSTRUCTION OR OPERATION OF THE RAILROAD**

Despite the fact that the current easement is a trail/railbanked surface easement and none of the Defendants have the right to use the easement for anything other than a recreational trail, the Defendants expend a considerable effort to attack Plaintiffs' characterization of the

---

[10] It is Plaintiffs' position that change to a trail use also causes conversion of the current railroad purposes easement under federal law and that railbanking is a new easement for a hiking and biking trail with the potential future reactivation of a railroad is created by and through the Trails Act.

[11] *See also Preseault II* (holding that converting the easement to trail use while preserving the right of way for future use was not the intent of the original grantor and railroad).

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 6

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

easements involved in this case as "surface easements."  Yet, whether characterized as a surface easement or a railroad purposes easement, the Defendants make no effort whatsoever to define the actual scope of the easement.  Instead, the Defendants merely make broad and sweeping statements to the effect that they can use the subsurface and aerial portions of the railroad corridor in any fashion they choose.  But, in the face of 150 years of federal and state jurisprudence that define and delineate the nature and scope of railroad rights-of-way in relation to the rights of adjacent landowners, that is simply insufficient.

### A. Although a Railroad Purposes Easement is a Substantial Thing, the Adjacent Landowner is Still the Owner of the Servient Estate, Which Includes Subsurface and Aerial Rights

From the beginning of westward expansion, Courts have recognized the unique aspect of a railroad right-of-way.  As early as 1904, the United States Supreme Court stated that "[a] railroad right-of-way is a very substantial thing.  It is more than a mere right of passage.  It is more than an easement." *See Western Union Tele. Co. v. Penn. R.R.*, 195 U.S. 540, 570 (1904).  The Supreme Court noted that a railroad purposes easement is an "interest in the land, special and exclusive in its nature." *Id.*  In distinguishing a railroad right-of-way from an easement at common law — which was considered a nonpossessory and incorporeal interest in property — the Court referred to *New Mexico v. United States Trust Co.*, 172 U.S. 171 (1898), which stated that if a railroad right-of-way was an easement it was "one having the attributes of the fee, perpetuity and exclusive use and possession." *Id.* at p. 183.

Although a railroad purposes easement is a "substantial thing" that is more than a traditional nonpossessory, incorporeal interest in land, there are obvious limits based on basic common law principles.  By and though a railroad purposes easement, a railroad acquires more

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

than the mere right of passage over the land, it acquires the right to excavate drainage ditches, to construct various supports under the surface for bridges and other structures, and to construct signals and the like.  As a result, a railroad has substantial surface rights, with very limited subsurface and aerial rights, which it is entitled to have protected.  *See Kansas City Southern Ry. Co. v. Arkansas Louisiana Gas Co.*, 476 F.2d 829, 834-835 (10th Cir. 1973).

But, although the railroad purposes easement allows the railroad minimal subsurface and aerial rights, all of the subsurface and aerial rights that the railroad acquires by and through a railroad purposes easement must be for the purpose of constructing and running the railroad itself.  As the Tenth Circuit pointed out in *Kansas City*, the necessary functions of the railroad to operate its trains in the subsurface "cannot deprive the owner of the servient estate… from making use of the land in strata below the surface and below substrata which are used or needed by the railroad company, and which in no wise… interferes with the construction, maintenance and operation of the railroad."  *See Kansas City*, 476 F.2d at 835 (emphasis added).  Although the railroad might have exclusive rights to the surface, whatever subsurface and aerial functions that are utilized by the railroad must be used to support the construction or operation of the railroad and the owner of the servient estate can otherwise use all of their subsurface and aerial rights that do not interfere with the construction or operation of the railroad.

All of these basic principles were recently reaffirmed by the United States Supreme Court in *Brandt Revocable Trust v. United States,* 134 S. Ct. 1257 (2014).  The United States Supreme Court first concluded that the wording of the 1875 Congressional land grant conveyed an easement for railroad purposes by stating that "[a]pter words to indicate the intent to convey an easement would be difficult to find."  *Brandt*, 134 S. Ct. at 1265 (citing *Great Northern Ry. Co.*

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

*v. United States*, 315 U.S. 262, 271 (1942)).  In light of the conclusion that the railroad had a mere easement, the Court then applied traditional common law principles to find that, when the railroad ceases using the easement for its intended purpose, it disappears and the owner of the servient estate resumes full and unencumbered interest in the land, including subsurface and aerial rights.  *Brandt*, 134 S. Ct. at 1265.[12]

Washington law is in full accord with these basic property law concepts and the Defendants totally fail to address the scope of a railroad purposes easement under Washington law.  Defendants first cite *Morsbach v. Thurston Cy.,* 278 P. 686 (Wash. 1929) and *Hanson Indus., Inc. v. Cnty. of Spokane*, 58 P.3d 910 (Wash. App. 2002) for the proposition that a "railroad right-of-way is a very substantial thing."  Yet, regardless of how often that proposition is promoted, Defendants cannot escape their fundamental dilemma, which is that in order to succeed on their cross-motion for summary judgment they must prove as a matter of law that the railroad purposes easement is active and currently exists and available for the Defendant's use, which is specifically contrary to the Trails Act, and then prove that their intended uses for the railroad corridor are railroad purposes, which they can't do, because they invade the fee owners' rights, and then they still must comply with the STB requirements and obtain the STB's approval to reactivate the banked railroad easement.

---

[12] *See also Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171, 172-173 (10th Cir. 1949) (any use of subsurface by railroad must be for railroad purposes and railroad cannot grant "any part of their right-of-way for private use"); *Energy Transp. Sys., Inc. v. Union Pacific Railroad Co.,* 435 F. Supp. 313, 318 (D. Wyo. 1977), *aff'd sub nom. Energy Transp. Sys., Inc. v. Union Pacific Railroad Co.,* 606 F.2d 934 (10th Cir. 1979) (the Court separated the surface grant from the servient estate underlying it, opining that "the 'land forming the right-of-way' did not include the subsoil, servient estate"); *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.*, 180 Cal. Rptr. 3d 173, 196 (Cal. App. 2014) ("the owner of the servient estate – not the railroad – had the right to build a pipeline below the railroad's right-of-way").

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 9

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

2
It is clear that Washington courts have adopted a very restrictive view of the scope of

3
railroad easements.  In *Hanson*, the court was called upon to determine whether century-old

4
railroad deeds that applied to an abandoned railroad line conveyed fee or an easement.  The suit

5
arose as a quiet-title action brought by an adjoining landowner against Spokane County, which

6
had acquired the right-of-way from BNSF.  *Hanson*, 53 P.3d at 913.  The adjoining landowner

7
brought suit alleging ownership of the right-of-way in fee simple, in light of Spokane County's

8
usage of the fee for *road, sewers, water lines and trail purposes*.  *Id.*  The court held that the

9
deeds at issue conveyed easements, and in so doing recognized that the fee simple owner was

10
entitled to just compensation for a seizing of his property.  As explained by the court, "[t]he

11
modern recognition of the immense public benefit to be derived from converting abandoned

12
railroads into perpetual public utilities does not outweigh the constitutional considerations

13
inherent in the prohibition against seizing property without just compensation."  *Id*. at 918 (citing

14
*Lawson*, 730 P.2d 1308) (emphasis added).  Importantly, *Hanson* so held while recognizing the

15
Washington rule relied on by the Defendants, that a "railroad is a very substantial thing" and

16
"more than an ordinary easement."  *Id*. at 914.

17
The case of *Neitzel v. Spokane Intern. Ry. Co.*, 141 P. 186 (1914), which upholds the

18
longstanding rule that although a railroad's property is for a public use such use must

19
nonetheless be for a railroad purpose, is also instructive.  The interplay between the phrase

20
"public use" and the concept of railroad purposes from *Neitzel* was explained very clearly in

21
*Haggart*: "the court in *Neitzel* noted that the railroad had acquired an easement 'only as it needed

22
for its corporate purposes, constituting a public use.'  *Id*. at 867.  While the court in other

23
paragraphs referred generally to the purpose of the easement as one of 'public use,' this was

24

25

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING
COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION
TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-
cv-000784-JCC - Page 10

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

merely shorthand for the aforementioned phrase." *Haggart v. United States*, 108 Fed. Cl. 70, 80 (Fed. Cl. 2012). By focusing solely on the public nature of railroads, the Defendants completely ignore the fact that any public use must nonetheless be within the scope of railroad use.

At the end of the day, the Defendants' entire argument is directly contrary to the law of Washington, which has repeatedly recognized that owners of the fee of rights-of-way possess rights in the land underlying the easement. *See Lawson*, at 1314 (noting that a reversionary interest in rights-of-way "are valuable property interests entitled to protection under our Constitution's prohibition against takings without payment of just compensation"). Basically, all the Defendants are attempting to accomplish now is an iteration of the very same argument King County made in *Lawson*, which was soundly rejected by the Washington Supreme Court.

In *Lawson*, the governmental entities (including King County) strenuously argued that any use of a railroad easement that served a public use was allowable under Washington law under the principle that a railroad is "a very substantial thing... more than a mere right of passage." *Lawson*, 730 P.2d at 1311 (quoting *Morsbach*, 278 P. at 688). The Washington Supreme Court specifically held that even though a railroad purposes easement is a substantial thing, the Defendants cannot overcome the rule that a railroad right-of-way easement is extinguished when the use is converted to one that is not encompassed within a grant of an easement for railroad purposes and it does not matter, as Defendants argue, that the use to which the land is converted be public because such cannot act to eliminate the property interest owned by Plaintiffs.[13] Although the Defendants make a valiant effort to avoid it, they cannot deny the

---

[13] The Defendants also cite *Northwest Supermarkets, Inc. v. Crabtree*, 338 P.2d 733 (Wash. 1959), but Defendants misrepresent that opinion. According to Defendants, *Northwest Supermarkets* stands for the proposition that fee owners can never grant easement rights in their fee since the court held that "there remains no interest in realty

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 11

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

rule of law in Washington that landowners' rights to their fee continue to exist even though they are burdened by an easement.  *See Hayward v. Mason*, 104 P. 139, 140 (Wash. 1909) ("[T]he owner of the servient estate may use his property in any manner and for any purpose consistent with the enjoyment of the easement").

### B.  A Railroad Purposes Easement Does Not Overcome Plaintiffs' Fee Ownership in the Subsurface or Aerial Portions of the Land as a Matter of Law

Courts have always recognized that there is a difference between a railroad purposes easement and fee ownership rights in the subsurface and aerial.  In *Western Union*, after extolling the substantiality of a railroad purposes easement, the United States Supreme Court nevertheless opined that a railroad purposes easement was simply a "fee in the surface and so much beneath as may be necessary for support."  *Western Union*, 195 U.S. at 570.  Thus, the land underneath the surface and the aerial rights above the surface, which are part of fee title ownership, are not part of a railroad purposes easement except as necessary for a physical foundation.  Although the subsurface may not ordinarily have much value unless the land is underlaid by a quarry, mine, fiber-optic cable or pipeline, the aerial has significant value, particularly along Lake Washington where views of Lake Washington are so important. Nevertheless, as a matter of law, it is this distinction between the railroad purposes easement and the subsurface and aerial rights that the Defendants completely obscure.

Much of the analysis by the United States Supreme Court in *Brandt* was based upon an earlier case, *Great Northern*, which dealt directly with the use of the subsurface underlying a

---

that the [fee owner] could convey." *See* Def.'s Br., D.E. 124, at p. 14 (citing *Northwest Supermarkets*, 338 P.2d at 736).  In reality, the Washington Supreme Court simply noted that because that fee owner had already granted easement rights incidental to the use of the street, and those rights encompassed the installation of a storm sewer,

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 12

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

railroad right-of-way.  In *Great Northern*, a railroad sought to drill for and remove gas, oil, and other minerals from beneath its right-of-way.  The United States Supreme Court pointed out that Congress had merely granted an encumbrance upon the land (an easement), but no actual land to the railroad (fee title).  *Great Northern*, 315 U.S. at 272.  The Supreme Court made it clear that the railroad did not own fee title to the land, including the subsurface rights, since the railroad only had an easement for railroad purposes, and thus title to the subsurface was part of the servient estate and the railroad had no right to the underlying oil and minerals.  *Id.* at 279.  Put another way, the railroad had the right to use the surface of the land to construct and operate its railroad, but it had no right to extract value from the subsurface or the aerial which was not part of the railroad purposes easement.

The Washington Supreme Court follows these exact principles.  In addition to the clear holdings from *Lawson, Hanson, and Neitzel,* the Washington Supreme Court clearly addressed the scope of a railroad purposes easement in *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 126 P.3d 16 (Wash. 2006).  *Kershaw* involved the placement of a subsurface fiber-optic line within a railroad's right-of-way easement.  *Id.* at 19.  According to the trial court, the fiber-optic line constituted a trespass because it was not an "incidental use" to the operation of the railroad.  The Court of Appeals reversed because of the incidental use doctrine. *Id.*  The Washington Supreme Court resolved the disagreement by focusing on a requirement under Washington law that does not permit fiber-optic lines to be installed in railroad easements where the fiber-optic company has not initiated condemnation proceedings.  *Id.* at 27-29.

---

there were no additional interests to convey because the right to build a storm sewer was within the scope of the dedicated street easement.

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 13

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

2

As a result, the holding in *Kershaw* clearly supports the principle of Washington law that railroad purpose easements are of an inherently limited scope.[14]  In *Kershaw*, the Supreme Court

3

could have supported the proposition that subsurface licenses were consistent with a railroad

4

purposes easement, but the Supreme Court of Washington said "no."  Instead, the Supreme Court

5

correctly recognized the rights of the landowner as the fee simple owner of the land, including

6

the subsurface rights, and concluded that the landowner's fee simple ownership was burdened by

7

a railroad purposes easement.  In other words, at the very least, *Kershaw* recognizes that the

8

scope of railroad purposes easements cannot invade the landowner's rights in the subsurface.[15]

9

As a matter of law, the Defendants' proposed activities cannot be considered to be "for

10

the construction, operation and maintenance" of the railroad and are not, therefore, within the

11

scope of the railroad purposes easement. In addition, the Defendants' proposed expansion of the

12

railroad's easement is not only an unlawful expansion of the railroad purposes easement[16] but

13

14

also tramples over Plaintiffs' fee rights by further burdening Plaintiffs' land with additional

15

easements in the subsurface and air.  The Plaintiffs' fee ownership rights in the subsurface and

16

17

18

[14] The Defendants cite cases explaining the broad scope of highway easements in support of their proposition that railroad easements also enjoy as broad a scope.  But equating highway easements with railroad purpose easements is directly contrary to Washington law.  As pointed out in *Lawson*, although Washington does confer certain privileges on railroads because of their public benefit, that "do[es] not necessarily lead to the conclusion that a railroad right of way is a perpetual public easement."  *Lawson*, 730 P.2d at 1311.  Were such the case, court decisions recognizing the rights of reversionary interest holders in railroad rights of way would be turned on their head.  *See id.* ("under Washington law, when an easement is granted to a railroad through a private conveyance, the easement is not a 'perpetual public easement'") (citations omitted).

19

20

21

22

[15] Furthermore, the fact that BNSF might have improperly granted easement rights in the corridor for installation of a sewer trunk line has no bearing on whether the utility and other uses contemplated by the Defendants are permitted by the Lake Washington deed and the Condemnation decree.  *See* Nunnenkamp Decl., at ¶8.  There is no support for the notion that a previously granted sewer line easement, of which no validity has been established, works in favor of the Defendants' proposition that the railroad purposes easement is broad enough to encompass the activities they propose.  The sewer easement referred to in the Defendants' declaration is completely irrelevant to the issue of the scope of the Lake Washington deed and the Condemnation decree.

23

24

25

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 14

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

aerial portions of their land are valuable property interests that must be protected pursuant to overwhelming precedent from the United States Supreme Court and the Supreme Court of Washington.

## IV. THE "INCIDENTAL USE" DOCTRINE DOES NOT APPLY AT ALL AND DOES NOT GIVE THE DEFENDANTS THE RIGHT TO USE THE SUBSURFACE AND AERIAL RIGHTS OF THE FEE OWNER IN ANY FASHION THEY DESIRE

The Defendants argue that the scope of a railroad purposes easement is not limited to the construction and operation of a railroad, but rather, the easement also includes "incidental activities." Throughout their entire argument, the Defendants selectively lift quotes from cases in an attempt to support their argument that because BNSF previously held a railroad purposes easement, and because the right-of-way is now railbanked, the Defendants can use the land in any manner that is incidental to railroad activities. In the railbanking process, the federal government maintains jurisdiction and only the railroad has the right to petition the STB for reactivation of the railroad, not the trail user—the trail user cannot use the recreational trail easement for railroad purposes or any other purposes.[17]

Under the Trails Act, King County, as the trail operator, can only use the corridor on an interim basis for a hiking and biking trail. Moreover, King County cannot actually reactivate the railbanked railroad purposes easement because King County is not a qualified

---

[16] *See Sunnyside Valley Irr. Dist. v. Dickie*, 73 P.3d 369, 374 (Wash. 2003) (an easement can be expanded over time only "if the express terms of the easement manifest a clear intention by the original parties to modify the initial scope based on future demands").

[17] Although King County holds the "residual common carrier rights and obligations," King County cannot reactivate rail service alone because King County is not a "railroad" or "rail carrier" and does not comply with the requirements of a railroad subject to the jurisdiction of the STB—and the STB has jurisdiction over any reactivation of the railbanked corridor. *See* 49 U.S.C. § 10102 (defining "rail carrier" as "a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation"); *see also*, 45 U.S.C. § 151 (defining rail carrier).

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 15

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1  railroad within the jurisdiction of the STB.  *See* 49 U.S.C. § 10501 (defining railroads) and 49

2  U.S,C. § 10102 (specifically excluding street, suburban, interurban electric railways or any

3  other entities who are not part of the general system of rail transportation subject to STB

4  jurisdiction).

5      The Washington Supreme Court decision in *Lawson*, which was completely analyzed and

6  basically adopted by the Federal Circuit in *Preseault II*, totally eviscerates the Defendant's

7  arguments regarding their purported entitlement to use the right-of-way for uses "incidental" to a

8  railroad purposes easement. In *Lawson*, the Court held that:

9

10      We first address the issues raised in light of common law principles.  Underlined: Defendants
       argue that under Washington law a railroad is a perpetual public easement.  They
11      contend that a railroad right of way easement does not terminate upon a change
       from one transportation use to another transportation or recreation use, or any
12      other consistent public use.  We disagree.  It is true railroad companies were
       created on the theory that they will provide a public benefit. Pursuant to statute,
13      the State has conferred upon them special and extraordinary privileges. In return,
       the railroads must hold their property in trust for the public use… A railroad is a
14      public highway, created for public purposes…  But these considerations do not
       necessarily lead to the conclusion that a railroad right of way is a perpetual public
15      easement.  To the contrary, this court has frequently recognized that railroad
       rights of way revert to reversionary interest holders when a railroad company
16      abandons a line…  These cases demonstrate that, under Washington law, when
       an easement is granted to a railroad through a private conveyance, the easement is
17      not a "perpetual public easement."  Instead, the particular deeds conveying the
       right of way must be interpreted to determine the scope and duration of the
18      easement granted…  This is true even though, as this court has observed, a
       railroad easement has a peculiar nature as "a very substantial thing . . . more than
19      a mere right of passage . . . more than an easement."

20
       Plaintiffs have alleged that the grantors conveyed easements for railroad purposes
21      only… Although specifically interpreting the deed involved in that case, our
       decision in *Zobrist* provides guidance here; clearly, a hiking and biking trail is not
22      encompassed within a grant of an easement for railroad purposes only.  In the
       words of the Wisconsin State Supreme Court, '[t]o hold that the  conversion from
23      a public transportation system to a recreational system still reflected the purpose
       of the original easement would, in our view, stretch the principle of *Faus* beyond

24

25

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

reasonable limits.' <u>*Pollnow* and other decisions from other jurisdictions support</u> <u>our conclusion that a change in use of a railroad right of way to a recreation trail</u> <u>or nature trail is a change of use evidencing abandonment of the right of way</u>.

*Lawson,* 730 P.2d at 1312-13 (various citations omitted) (emphasis added).

The Defendants cite *Neitzel* and *Kershaw* to support their allegation of incidental uses. The Defendant cites to *Neitzel* as support for the lack of abandonment argument to bootstrap to a conclusion that the railroad easement is "preserved," to bootstrap to a conclusion that the railroad purposes easement is current, and to bootstrap to a conclusion that they can use it for incidental purposes.  However, *Neitzel* and *Kershaw* provide no support whatsoever for the Defendants' conclusion.

*Neitzel* involved a case <u>where the railroad was still operating</u> and <u>leased</u> lots in exchange for the lessee company's agreement to construct a two-story building and route all its business over the railway company's road (obviously benefiting the railroad)—and the railroad company anticipated that it would in the "near future" need and expect to devote the grounds for terminal use and use the new buildings as more superior freight houses.  Not only was the railroad still active and running trains over the land next to the lots, the court held that the use was concurrent with and did not exclude the railroad's occupation, and was consistent with railroad purposes. *Neitzel*, 141 P. 186.  *Neitzel* provides no support for the Defendants' argument that railbanking is a railroad purpose or that the railroad purposes easement continued from before the NITU until after the NITU in the same condition and manner as before.

Moreover, the Defendants ARE NOT railroads and ARE NOT operating railroads upon the land and do not comply with the statutory requirements for rail transportation subject to the

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 17

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

STB's jurisdiction.  The only railroad purposes easement that is preserved is a <u>future</u> potential railbanked easement, not a current actual railroad purposes easement.

The Defendants also cite to an appellate ruling in *Kershaw*, 91 P.3d 104.116 (Wash. App. 2004), as support for their assertion that the incidental use doctrine applies to railroad rights-of-way, just as it does to public highways.  The *Kershaw* appellate opinion was overturned by the Washington Supreme Court—a fact that the Defendants continue to attempt to ignore.  Even though the Defendants do not have any current interest in a railroad purposes easement and only have a recreational trail use/railbanked easement, the Defendant cites to the *Kershaw* appellate opinion to state that a railroad purposes easement allows incidental uses, including incidental subsurface uses.

The *Kershaw* cases involve the laying of fiber optic cables and the Kershaws sued the communication company for trespass.  The communications company argued that no trespass occurred because the railroad had authorization to allow fiber optic cable in the subsurface of Kershaw's land under the incidental use doctrine.  The **trial court** rejected the argument. *Kershaw*, 2003 WL 25275291.[18]  The trial court correctly held that:

> [I]ncidental uses **are measured** by what is **reasonably necessary** for the **building, operation and maintenance of the railroad** and where the fiber optic cable will be used substantially to service other members of the public and **where the railroad is not significantly dependent on the fiber optic cable for its primary means of communication, the cable is not an "incidental use" of the railroad**.

*Id.*  (emphasis added).

---

[18] Counsel for Plaintiffs in this case also represented Robert Kershaw in a Trails Act takings case and have personal knowledge of Mr. Kershaw and the Kershaw properties and lawsuits.  *See Blair v. United States*, Case No. 09-528 (Fed. Cl. 2014).

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 18

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

The Washington Supreme Court affirmed this conclusion in its *Kershaw* opinion and held that:

> The parties expend much energy disputing the application of the incidental use doctrine.  The incidental use doctrine "states that a railroad may **use** its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad."

> \* \* \* \* \*

> The trial court rejected Level 3's contention that the **fiber optic lines were an incidental use.  Centering its analysis on whether the "incidental use" is reasonably necessary to the operation of the railroad, and finding that "[i]ncidental rights should be limited to facilitating construction, maintenance and operation of the railroad,"** the trial court determined that the buried fiber optic line here is not an incidental use. *Id.* at 974.  It thus concluded that Level 3's line constituted a trespass. *Id.* at 19, 974.  The Court of Appeals found no trespass and rejected the trial court's strict reliance on the relationship between the alleged incidental use and railroad operations.  Rather, it held that the incidental use doctrine applies so long as "the *use* is 'not . . . inconsistent with the public *use* to which the highways are dedicated,'"

> \* \* \* \* \*

> Based on statutes governing this exact circumstance, giving effect to *article, XII, section 19 of the Washington Constitution*, we reverse the Court of Appeals on this issue.  The unambiguous language of *RCW 80.36.040* requires an eminent domain proceeding in this context.  Therefore, we affirm the trial court's conclusion that, absent an eminent domain action, Level 3's placement of the fiber optic cable within the right of way constituted a trespass.

*Kershaw*, 126 P.3d at 27-29 (various citations omitted) (emphasis added).

Thus, the Supreme Court of Washington held that the original deed conveyed only an easement interest in the right-of-way and that the placement of the fiber optic transmission line through the right-of-way was a trespass, in other words using subsurface rights, and required an eminent domain proceeding under statutes governing telecommunications companies.  *Id.*  The

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Defendants attempt to avoid this result by asserting that the statute pertaining to telecommunications was unique.  Not so.  Although *Kershaw* addressed a specific statute relating to telecommunications companies **and the power of eminent domain**, similar statutes relating to eminent domain exist and are applicable for each Defendant in this case such that Defendants are liable for a trespass just as the telecommunications company was in *Kershaw*.  *See* Rev. Code Wash. 53.25.190 (Port); 8.08.010 (King County); 80.32.060 (Puget Sound Energy).  That is the exact situation present in this case.

The Defendants' arguments regarding incidental uses flatly fail because (1) railbanking is not a railroad purpose; (2) the former BNSF railroad purposes easement is not a current easement but is a railbanked easement; (3) the Defendants are not railroads and are not running trains; and (4) the Defendants are trail users under the Trails Act and are only authorized to use the surface easement for a recreational trail.  In essence, just like in *Kershaw*, the Defendants can only use the subsurface and aerial portions of fee ownership beyond the scope of the railroad purposes easement if they use their eminent domain powers and pay these landowners.

**V.    THE SETTLEMENT RECEIVED BY SOME OF THE PLAINTIFFS FOR THEIR "REVERSIONARY INTEREST" IN THE RAILROAD CORRIDOR IN *HAGGART* AND *SMITH* DID NOT INCLUDE PAYMENT FOR THEIR SUBSURFACE AND AERIAL RIGHTS WITHIN THEIR FEE OWNERSHIP AS A MATTER OF LAW AND AS A MATTER OF FACT**

It is true that most of the Plaintiffs in this case sought compensation for their "reversionary interests" in the railroad corridor under the Trails Act in either *Haggart* or *Smith*.  Although the Defendants first acknowledge that the Plaintiffs were compensated "for the value

of their reversionary interest in their property,"[19] they make no attempt to define the actual "reversionary interest"[20] that was taken and what the landowners were actually paid for in *Haggart* and *Smith*, and make no effort to relate Plaintiffs' reversionary interest to either their subsurface or aerial rights.

The Defendants also acknowledge that the Court measured the value of the taking in *Haggart* and *Smith* "by comparing the difference between the value of their land unencumbered by the railroad easement (what Plaintiffs would have had if the Trails Act had not prevented abandonment under state law) and the value of their land encumbered by a 'general easement permitting recreational trail use with the potential of future railway use by way of rail-banking or future development of a commuter rail line.'"[21]   As a result, both by the definition of "reversionary interest" and the appraisal methodology used in *Haggart* and *Smith*, it is clear that the Plaintiffs were not paid for the subsurface and aerial portions of their fee ownership.

Rather than attempting to rely on either the law of fee ownership, which includes subsurface and aerial rights beyond the railroad's easement, or the fact that the *Haggart* and

---

[19]  *See* Def.'s Br., D.E. 124, at p. 6.

[20]  Numerous decisions by numerous judges in the Court of Federal Claims, as well as the Federal Circuit, have repeatedly defined the "reversionary interest" that is taken and the methodology utilized to determine compensation.  In *Haggart v. United States*, 108 Fed. Cl. 70, 97-98 (Fed. Cl. 2012), for example, Judge Lettow explained that the measure of the landowners' just compensation is the difference between their unencumbered fee and their fee interest encumbered by a hiking and biking trail easement.  *See also Howard v. United States*, 106 Fed. Cl. 343, 356 (Fed. Cl. 2012) (court granted plaintiffs' request that the measure of just compensation in a Rails-to-Trails case "must be the difference between an unencumbered fee and a fee encumbered with an easement for public trail use for the indefinite future"); *Raulerson v. United States*, 99 Fed. Cl. 9, 12 (Fed. Cl. 2011) ("the appropriate measure of damages is the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation as a railroad"); *Anna F. Nordus Family Trust v. United States*, 106 Fed. Cl. 289, 290 (Fed Cl. 2012) (court described the method of calculating damages as "the difference between the value of plaintiffs' land unencumbered by a railroad easement and the value of plaintiffs' land encumbered by a perpetual trail use easement subject to possible reactivation of a railroad").

[21]  *Id*.  However, Plaintiffs dispute this characterization of railbanking as including commuter rail to the extent light rail is within that meaning.

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 21

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

*Smith* appraisals did not include the Plaintiffs' subsurface and aerial rights, the Defendants call the *Ioppolo* case a "companion case" and rely exclusively on the conclusion that "*Haggart* fully compensated Plaintiffs for any 'taking' of interests that they may have possessed" and that "Plaintiffs have already received just compensation under the settlement in *Haggart*."[22] Obviously, Plaintiffs' counsel herein is aware of this Court's opinion in *Ioppolo* but the *Haggart* and *Smith* Plaintiffs have not been compensated for the subsurface or aerial portions of their fee ownership rights and Plaintiffs have not already received just compensation under the settlements[23] in *Haggart* and *Smith* for the subsurface and aerial rights either as a matter of law or as a matter of fact.[24]

Simply put, the Plaintiffs in *Haggart* and *Smith* have only been paid for the loss of their surface rights, which is basically the loss of their rights to build, utilize and travel over the surface freely and/or utilize the surface in any other manner, and Plaintiffs have not been paid for their subsurface rights nor aerial rights in the former railroad corridor and Plaintiffs respectfully assert that any decisions or judgments by this Court to the contrary are simply wrong. Moreover, Plaintiffs were not compensated for any other easements, such as an easement for high speed rail or for substantial overhead electrical power lines. To put this issue in the context of the "reversionary interest" taken from Plaintiffs with what the Plaintiffs were actually paid for in *Haggart* and *Smith*, it should be helpful to the Court to explain exactly what was taken from the Plaintiffs in *Haggart* and *Smith* and what they were actually paid for in the context of the Trails

---

[22] *Id.* at p. 7.

[23] Settlements of the Plaintiffs' reversionary interests were reached in both *Haggart* and *Smith* after extensive mediations in both cases. Not only do the settlements not apply to all of the Plaintiffs in this case, but the settlements have not actually been paid to any of the Plaintiffs in either case.

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 22

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

2

Act and correlate that specifically back to the basic property law principle that fee ownership includes surface, subsurface, and aerial rights.

3

4

5

6

7

8

9

10

11

12

13

14

In the early 1900's, grantors of land in Seattle, Washington granted easements to the Railroad to run their trains.  Those easements that were granted by the original grantors were specific easements that were limited to railroad purposes, such that, when railroad operations ceased, the land surface would revert back to the landowners.  From the time of the original grants to the railroad, landowners have always had all of their rights to use the surface and aerial interests in their properties subject to train operations.  Under Washington law, an easement for railroad purposes is merely a surface easement that is limited to train operations.  Therefore, once the railroads were granted easements for railroad purposes, the Plaintiffs owned the land that had a surface easement running over it.  The Plaintiffs still owned the underlying fee, which consisted of their subsurface and aerial rights, and their surface rights too, although the surface rights were encumbered by an easement.

15

16

17

18

19

20

21

22

23

The Trails Act allows the federal government to block the extinguishment of a railroad purposes easement which thereby blocks the vesting of the landowner's reversionary interest and allows the railroad to transfer the interest that it owns to a third party to be utilized as a recreational trail.  *See* 16 U.S.C. § 1247(d).  There is nothing in the Trails Act that says a Trails Act taking includes anything more than a surface easement or anything more than the railroad previously had.  It is basic property law that if the railroad only has an easement for railroad purposes and the Trails Act then allows a new surface easement for a recreational trail, you

24

25

---

[24] *See* Declarations of David Matthews, the primary appraiser in both *Haggart* and *Smith*, attached hereto as Exhibit C, and John Kilpatrick, the review appraiser in both *Haggart* and *Smith*, attached hereto as Exhibit D.

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 23

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4

cannot convert an easement for railroad purposes into a taking that is the taking of a fee interest for a recreational trail and other public uses.  Congress did not authorize a taking of Plaintiffs' fee ownership, including their aerial or subsurface rights when enacting the Trails Act.  *See Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Preseault I*").

5
6
7
8
9
10
11
12
13
14
15
16
17
18

Additionally, it is important to note how the appraisal methodology for valuing the taking under the Trails Act occurs.  All appraisals in Trails Act takings cases must follow the Uniform Standards for Federal Land Acquisitions ("Yellow Book") when appraising federal takings.  As noted by the Federal Circuit in *Ladd*, the methodology to determine the valuation is to value the land in the before condition as unencumbered by any easement (basically their fee ownership) and then valuing the land in the after condition where the land is encumbered by a recreational trail easement with the <u>potential</u> reactivation of a railroad (their fee value less the diminution in value because of the easement).  The difference between those valuations is the amount of the taking.  There is nothing in the Trails Act, nor the Federal Circuit precedent, that instructs or authorizes any taking and valuation of the actual fee interest in the land.  In the bundle of sticks of fee ownership of land, the surface may be worth more than the subsurface or aerial rights, but it is still not an actual taking of the fee nor valuation of or payment for the fee.

19
20
21
22
23
24
25

Subsequent to a Trails Act taking, once it has occurred, the landowners still own the subsurface and aerial rights, as well as the surface rights now encumbered by a recreational trail.  For instance, imagine that coal mining was still occurring in Seattle today, the landowner would not have given up the right to mine coal in providing the railroad an easement for railroad purposes and the right to travel over their land.  There is no authorization from any source that, in post-Trails Act takings, that the subsurface and aerial rights have been appropriated from the

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 24

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5

landowner.  Further, when valuing a Trails Act taking under the Yellow Book, the appraiser is to assume that the land is vacant.  The appraisers do not include the improvements, such as houses, in their evaluations, nor did they include any impact to the improvements such as the potential financial impact for high powered transmission lines 40 feet from a house that would adversely affect the price of the home.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

If more than a surface easement was taken under the Trails Act, the appraisers would have still valued that land in the before condition as unencumbered by a railroad easement but, in the after condition, as encumbered with utility easements, recreational trail easements, and every other kind of easement that was authorized by the Port and King County.  However, the appraisers did not value any subsurface or aerial takings because, under the Trails Act, there has never been any case where the taking encompassed the taking of a fee interest, which included subsurface and aerial rights.  The reason for that is because the Trails Act does not authorize the taking of any subsurface and aerial rights but merely authorizes the conversion of a railroad purposes easement into a recreational trail easement with the potential reactivation of a railroad. If Congress had intended for the Trails Act to convert an easement for railroad purposes into fee ownership, they would have expressly said so.  Likewise, if every Court to consider the question would have equated the landowners' "reversionary interest" in a railroad purposes easement to fee ownership, all appraisals in every Rails-to-Trails case to date followed the incorrect appraisal methodology and every case would have been decided differently.

22
23
24
25

Not only have the Plaintiffs not been paid for their fee ownership in *Haggart* and *Smith* as a matter of law, they were not paid for their fee ownership as a matter of fact either.  As conclusively shown in the Declaration of David Matthews, the preeminent appraiser in the

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 25

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4
5
6
7
8
9
10

United States in Rails-to-Trails cases, attached hereto as Exhibit C, the only interest acquired and valued in the appraisals in both *Haggart* and *Smith* was the acquisition of the surface use of the property for a hiking and biking trail with the possible reactivation of a railroad.  In fact, the appraisals specifically did not make any attempt to value the Plaintiffs' subsurface rights or aerial rights and it was specifically assumed that the subsurface rights and aerial rights were part of the bundle of rights of fee ownership that remained with the landowner Plaintiffs.  These basic appraisal methodology facts are confirmed by the other nationally-known and highly-respected appraisal expert from Seattle, John Kilpatick, who served as Plaintiffs' review appraiser in both *Haggart* and *Smith*.  *See* Declaration of John Kilpatrick attached hereto as Exhibit D.

11
12
13
14
15
16
17

The Defendants repeatedly state that Plaintiffs received $141 million in *Haggart* as if that total must have been for the fee.  Although Plaintiffs' counsel is very proud of that result, the reality is that the total amount is actually more of a function of land values in Seattle than anything else and the simple fact is that the total amount would have been much higher than $141 million if the Plaintiffs had actually been paid for their fee ownership including their subsurface and aerial rights.

18
19
20

**VI.   THE FEE OWNERSHIP RIGHTS OF THESE PLAINTIFFS IN THE SUBSURFACE AND AERIAL PORTIONS OF THE RAILROAD CORRIDOR HAVE NOT BEEN IMPACTED AT ALL BY THE DEFENDANTS' ACQUISITION OF THE RAILROAD CORRIDOR BY AND THROUGH THE TRAILS ACT**

21
22
23
24
25

The Defendants have now admitted that the original source conveyances at issue in this motion conveyed easements to the railroad.  The easements are and were clearly for railroad purposes under Washington law.  The issue of the scope of the railroad's easement is also defined under state law.  Although the railroad necessarily could and did use the subsurface of

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 26

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1
2
3
4

the right-of-way to support the construction and operation of its railroad, the railroad never received fee title to the land, including subsurface and aerial rights, under an avalanche of federal and state precedent.  As a result, the Defendants never received fee title either by and through the Trails Act for the Plaintiffs' subsurface and aerial rights contained within fee ownership.

5
6
7
8
9
10
11
12

The Defendants attempt to argue that they can use the railroad corridor because the railroad's right-of-way was preserved by and through the Trails Act.  Under the Trails Act, however, there is no current and active railroad purposes easement that exists because the railroad's right-of-way is preserved for future railroad use under the Trails Act.  The original railroad purposes easement is railbanked under the Trails Act for potential future use.  Simply put, the Defendants did not receive a railroad purposes easement by and through the Trails Act, they merely acquired an easement for a hiking and biking trail.

13
14
15
16
17
18
19
20
21
22
23
24
25

In addition, even if the railroad purposes easement currently exists for current use, which it doesn't, the uses contemplated by the Defendants herein do not fall within the scope of a railroad purposes easement under federal or Washington law.  The Defendants repeatedly make broad and unsupported statements that railroads allow for additional uses within the right-of-way but, what the Defendants gloss over, is that the Court in each instance had to analyze whether the potential new use was within the scope of the pre-existing railroad purposes easement under state law.  For example, the Defendants cite *Illig v. United States,* 58 Fed. Cl. 619 (Fed. Cl. 2003) for the proposition that the Defendants herein can somehow use subsurface and aerial rights within the existing scope of the railroad purposes easement.  In *Illig,* the CFC held that under Missouri law the railroad could grant a license to a utility company provided that the utility has some connection to a railroad purpose.  *Id.* at 634.  The Defendants herein appear to suggest that utility

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 27

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

licenses can be granted as a matter of course when railroad corridors are converted to recreational trail uses. *Illig* simply doesn't support that conclusion.

Likewise, the STB decisions cited by the Defendants do not support their argument either. Rather, the STB decisions merely stand for the proposition that utility licenses would not interfere with trail use or future trail use and are not incongruous with the Trails Act. *See* e.g., *Kansas Eastern R.R. Inc.—Abandonment Exemption—In Butler & Greenwood Counties, KS,* STB Docket No. AB-563 2006 WL 1516602 (June 1, 2006); *T & P Ry.—Abandonment Exemption—In Shawnee, Jefferson & Atchison Counties, KS,* STB Docket No. AB-381, 1997 WL 68211 (Feb. 20, 1997). Moreover, the STB does not analyze "trail users" or approve or disapprove of uses of the railbanked corridor and expressly states that its role is ministerial and only determines whether a potential trail user meets the requirements of assuming financial responsibility and liability and agrees to keep the corridor intact for future rail operations should reactivation occur.

In all Trails Act takings cases, the critical inquiry is whether the intended activities are encompassed by the railroad purposes easement under state law. In Trails Act litigation, the critical inquiry is whether a hiking and biking trail is a railroad purpose under state law. *See Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010) ("it is settled law that a Fifth Amendment takings occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement"). In this litigation, there is no current railroad purposes easement that exists. The Trails Act was enacted specifically authorizing trail use and the Defendants' new purported uses violate the Trails Act on this railbanked corridor.

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 28

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Under Washington law, "when an easement is granted to a railroad through a private conveyance, the easement is not a perpetual public easement. Instead, the particular deeds conveying the right-of-way must be interpreted to determine the scope and duration of the easement granted." *Lawson*, 730 P.2d at 1311. Here, the potential uses by the Defendants violate the Trails Act and, further, are well beyond the scope of the railroad's easement even if it currently existed. The easements granted by the Port to PSE and Sound Transit are null and void because the Port did not have the legal right to grant <u>any</u> easement <u>and</u> because they include subsurface and aerial rights which are beyond the railroad's easement. In essence, the Defendants are attempting to make the easement under the Trails Act into a perpetual public easement, and that notion has been specifically rejected by the Supreme Court of Washington.

The Defendants claim that the proposed subsurface and aerial uses beyond the scope of the railroad purposes easement under Washington law are allowed because the purported uses are "incidental uses" to a railroad purposes easement. This argument fails for a variety of reasons. First, there is no current railroad easement under the Trails Act. Second, the "incidental uses" are not incidental at all to the construction, operation or maintenance of a railroad. Third, and most importantly, under *Kershaw*, the Defendants can only invade the Plaintiffs' subsurface and aerial rights if they utilize their condemnation powers under Washington law and pay the Plaintiffs for those rights. *Kershaw*, 126 P.3d at 28.

The facts of this case demonstrate that the Defendants formulated a grand plan to act as if they acquired fee ownership in the right-of-way by and through the Trails Act. Federal law does not allow it because they only acquired an easement for a hiking and biking trail under the Trails Act. State law does not allow it either because subsurface and aerial uses are not within the

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 29

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1   scope of a railroad purposes easement (even though no current railroad purposes easement
2   exists) under Washington law and are not incidental uses either.  In essence, the Defendants are
3   merely trying to eliminate property interests owned by these Plaintiffs and they are trying to
4   acquire those property interests without properly paying for them.

5   **VII.    CONCLUSION**

6          The Defendants did not acquire subsurface and aerial rights in this railroad right-of-way
7   by and through the Trails Act.  Any purported claim to be able to use the railroad corridor in any
8   fashion they wish, including subsurface and aerial rights, should be rejected.  As a result,
9   Plaintiffs' motion for summary judgment should be granted and the Defendants' cross-motion
10  for summary judgment should be denied.

11  Date: October 5, 2015.                              **STEWART, WALD & MCCULLEY, LLC**

12                                                      By _/s/ Thomas S. Stewart_____
13                                                          Thomas S. Stewart
14                                                          Elizabeth McCulley
15                                                          Michael J. Smith
16                                                          9200 Ward Parkway, Suite 550
17                                                          Kansas City, MO 64114
18                                                          Telephone:  (816) 303-1500
19                                                          Facsimile:  (816) 527-8068
20                                                          stewart@swm.legal
21                                                          mcculley@swm.legal
22                                                          smith@swm.legal

23                                                          AND

24                                                          RODGERS DEUTSCH & TURNER, P.L.L.C.
25                                                          Daryl A. Deutsch, WSBA No. 11003
                                                            Rodgers Deutsch & Turner, P.L.L.C.
                                                            3 Lake Bellevue Dr. Suite 100
                                                            Bellevue, WA  98005
                                                            Telephone:  (425) 455-1110
                                                            Facsimile:  (425) 455-1626

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING
COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION
TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-
cv-000784-JCC - Page 30

daryl@rdtlaw.com

**ATTORNEYS FOR PLAINTIFFS**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of October, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon all parties of record.

Timothy G. Leyh
Randall Thomsen
Kristin Ballinger
CALFO, HARRIGAN, LEYH & EAKES, LLP
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com
*Attorneys for Defendant Port of Seattle*

Gavin W. Skok
Bryan J. Case
Courtney L. Seim
James E. Breitenbucher
RIDDELL WILLIAMS PS
gskok@riddellwilliams.com
bcase@riddellwilliams.com
cseim@riddellwilliams.com
jbreitenbucher@riddelwilliams.com
*Attorneys for Defendant Puget Sound Energy*

Andrew W Marcuse
David J. Hackett
King County Prosecuting Attorney, Civil Division
andrew.marcuse@kingcounty.gov
david.hackett@kingcounty.gov
*Attorneys for Defendant King County*

Desmond L. Brown
Loren Armstrong
desmond.brown@soundtransit.org
lore.armstrong@soundtransit.org.
*Attorneys for Central Puget Sound Regional Transit Authority*

_____
*/s/ Thomas S. Stewart*

PLAINTIFFS' REPLY TO THE PORT OF SEATTLE AND KING COUNTY'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 31

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626