THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, ET AL, <br><br> Plaintiffs, <br><br> vs. <br><br> PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, <br><br> Defendants. | NO. 2:14-CV-000784-JCC <br><br> PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT <br><br> Originally Noted on Motion Calendar for SEPTEMBER 18, 2015 and then Renoted to OCTOBER 9, 2015 <br><br> NOTE ON MOTION CALENDAR: October 9, 2015 <br><br> ORAL ARGUMENT REQUESTED |

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page i

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. THE CONVERSION OF RAILROAD PURPOSES EASEMENTS TO TRAIL/RAILBANKED EASEMENTS UNDER THE TRAILS ACT..............................2

III. SOUND TRANSIT IS NOT A RAILROAD AND THEREFORE CANNOT REACTIVATE THE RAILROAD'S RIGHT-OF-WAY UNDE THE TRAILS ACT.......6

    A. Sound Transit is Not a Railroad Pursuant to Federal Law.......................6

    B. Sound Transit Cannot Reactivate this Railbanked Corridor....................7

IV. SOUND TRANSIT'S ARGUMENTS ABOUT THE SCOPE OF A RAILROAD PURPOSES EASEMENT OR THAT LIGHT RAIL FALLS WITHIN THE SCOPE OF A RAILROAD PURPOSES EASEMENT ARE IRRELEVANT .....................................11

V. CONCLUSION................................................................................................11

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page ii

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

# TABLE OF AUTHORITIES

*Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010) .................................................................8

*Citizens Against Rails to Trails v. STB*, 267 F. 3d 1144, 1149-50 (D.C. Cir. 2001) ........................5

*Georgia Great Southern; Iowa Power–Const. Exempt.–Council Bluffs, Iowa*, 8 I.C.C.2d 858, 866-67 (1990).................................................................................................................................5, 9

*Haggart v. United States*, 108 Fed. Cl. 70 (Fed. Cl. 2012)...........................................................2, 8

*Kulmer v. Surface Transp. Bd.*, 236 F.3d 1255 (10th Cir. 2001).....................................................10

*Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Preseault I*") .............................8

*Smith v. United States*, Case No. 14-cv-387L (Fed. Cl. 2014) ........................................................2

## STATUTES

16 U.S.C. § 1241(1) ...........................................................................................................................3

16 U.S.C. § 1241(2)(a)........................................................................................................................3

16 U.S.C. §1247(d) .................................................................................................................. 3, 4, 5

45 U.S.C. § 151...................................................................................................................................7

49 U.S.C. § 10102(5) ..........................................................................................................................7

49 U.S.C. § 10901................................................................................................................................8

49 U.S.C. § 10904................................................................................................................................9

49 U.S.C. § 10905..............................................................................................................................10

49 U.S.C. § 26106................................................................................................................................7

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page iii

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## I.    INTRODUCTION

Sound Transit is trying to hoodwink this Court into believing that it has rights in this former railroad corridor. It does not.[1] Since there is no current railroad purposes easement that exists and since Sound Transit is not a railroad under federal law, any easement rights sold or granted to Sound Transit are null and void.

The original railroad purposes easements have been "preserved" for future use, meaning possible reactivation in the future, by and through the Trails Act. Now, only the Port and King County have the right to construct a trail upon Plaintiffs' land by and through the Trails Act. Sound Transit, with very little Washington authority cited and repeated cites to Wikipedia,[2] assumes that the railroad purposes easement currently exists and skips over the fact that only an easement for a recreational trail with the potential reactivation of a railroad was acquired by the Port and King County and currently exists on the former rail corridor.

Then, Sound Transit pretends that it is a railroad for purposes of STB jurisdiction, expounds concerning the scope of a railroad purposes easement so it can attempt to fall within the railroad purposes easement that does not currently exist, and incredibly argues that it can currently use the corridor without reactivating the right-of-way through the STB. It cannot. What all of the Defendants in this case ignore is the fact that, under the Trails Act, if a railroad is reactivated, then the trail use is revoked—they are mutually exclusive.

Plaintiffs have also concurrently filed their response to the cross-motion for summary judgment filed by Defendants King County and the Port and will not repeat all of those

---

[1] Sound Transit may have rights in the railroad corridor at locations where the railroad owned the corridor in fee, but it has no rights in the corridor adjacent to all of the Plaintiffs in this case where the railroad merely possessed an easement.

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 1

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

arguments again here, including the argument that the Plaintiffs were purportedly paid for fee ownership rights in *Haggart* and *Smith*—which they were not. But, in order to address Sound Transit's incorrect and misguided arguments herein, Plaintiffs' reply and response to Sound Transit's cross-motion will address three primary issues, as follows:

1. The conversion of railroad purposes easements to trail/railbanked easements under the Trails Act;

2. Sound Transit is not a railroad and therefore cannot reactive the railroad's right-of-way under the Trails Act; and

3. Sound Transit's arguments about the scope of a railroad purposes easement or that light rail falls within the scope of a railroad purposes easement are irrelevant.

## II. THE CONVERSION OF RAILROAD PURPOSES EASEMENTS TO TRAIL/RAILBANKED EASEMENTS UNDER THE TRAILS ACT

What is purpose of the Trails Act? The purpose of the Trails Act was, first and foremost, to encourage and promote recreational trails while allowing the "preservation" of railroad rights-of-ways for <u>future use</u>. As a result of the Trails Act, federal jurisdiction remains over those former rights-of way and prevents the land from reverting to the adjacent landowners. Congress recognized that the establishment of railroads in this country in the late 1800's and early 1900's was a very significant part of our history as a country and that railroads had a huge impact on the growth of our nation. In order to preserve this national treasure, Congress recognized that:

> …trails provide for the ever-increasing outdoor recreation needs of an expanding population and in order to promote the preservation of, public access to, travel within, and enjoyment and appreciation of the open-air, outdoor areas and historic resources of the Nation, trails should be established. Preserving the national treasure of railroad rights-of-way while promoting outdoor recreation was

---

[2] Wikipedia is an internet based center for information that does not require verification and anyone can write information, accurate or inaccurate, on Wikipedia. Wikipedia is not an authoritative cite and it is no authority for anything.

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 2

accomplished by allowing interim use of railroad rights-of-way as recreational trails.

16 U.S.C. 1241(2)(a). "This Act may be cited as the 'National Trails System Act'." 16 U.S.C. 1241(1).

The entire purpose of the Trails Act was to encourage and establish hiking and biking trails in our country by utilizing would-be abandoned railroad rights-of-way. The only purpose of the Act was to establish trails. 16 U.S.C. 1241 *et seq*. Specifically, the Act authorized three types of trails: the National Scenic Trails, National Recreation Trails and connecting-and-side trails. *Id*. The Act is quite comprehensive but a complete reading of the Act conclusively establishes that the Act's sole purpose was to narrowly authorize and promote recreational trails. The Act is specific and provides for trails and nothing more. This was the sole purpose of Congress—to prevent the loss of this national treasure by preserving rights-of-way for potential future use and promoting trails—period.

Because of potential legal issues relating to the possible reversion of rights-of-way to adjacent landowners under state law prior to consummating the establishment of trails, and in order to prevent that possible reversion and allow trail users time to negotiate with railroads, Congress enacted section 1247(d). 16 U.S.C. § 1247(d). In 1983, concerned by the rapid contraction of America's rail network, Congress amended the National Trails System Act to create the railbanking program. Railbanking was created as a method by which rights-of-way proposed for abandonment could be <u>preserved for future use</u> through interim conversion to trail use:

> The Secretary of Transportation, the Chairman of the Interstate Commerce Commission, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976, shall encourage State and local agencies and private interests to establish appropriate trails using the

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 3

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

provisions of such programs.  Consistent with the purposes of that Act, and in furtherance of the national policy **to preserve established railroad rights-of-way for future reactivation** of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise **in a manner consistent with the National Trails System Act**, **if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes**.  If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Commission shall impose such terms and conditions as a requirement of any transfer or conveyance **for interim use in a manner consistent with this Act**, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

16 U.S.C. § 1247(d) (emphasis added).  The statutory language allowing <u>use</u> "in a manner consistent with the National Trails System Act" means TRAIL USE.

Even though the Act only and specifically involved recreational trails, the Defendants attempt to interject other interim uses of the railbanked rights-of-way.  Such attempts violate numerous canons of statutory construction.[3]  Congress did not intend to allow third parties or governmental entities to take advantage of the Act and utilize the rights-of-way for other purposes other than trail use or reactivation.  If Congress intended any other type of use, it would have expressly stated so.  It did not.  Congress was very specific in the language of the Trails Act and authorized trails upon would-be abandoned railroad rights-of-ways and nothing more.

Moreover, Congress expressly stated that if the railroad was to be reactivated then the interim trail use would be revoked.  Interim trail use and invocation of the railbanking provision

---

[3] As provided by the Rehnquist Court's Cannons of Statutory Construction, the plain meaning of the ordinary statutory text should be followed—here, allowing would-be abandoned railroad rights-of-way to be used as recreational trails while railbanking the corridor.  Moreover, the cannon of Expressio unius: expression of one thing suggests the exclusion of others—here, use as a recreational trail excludes uses other than trail use.  *See* http://www.ncsl.org/documents/lsss/2013PDS/Rehnquist_Court_Canons_citations.pdf (last visited 9/29/2015).

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 4

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

to reactivate the railroad are mutually exclusive. *See* Report to the Honorable Sam Brownback, Surface Transportation, Issues Related to Preserving Inactive Rail Lines as Trails, attached as Exhibit A (noting that "if the rail carrier that banked a right-of-way wants to return it to rail service, the carrier has to notify the Board; the abandonment proceeding is then reopened, and the trail use authority is revoked").

Under the Trails Act, Congress "preserved" rights-of-way that otherwise would have been abandoned and preserved them for potential <u>future</u> railroad use, period: we "<u>preserve</u> established railroad rights-of-way for <u>future</u> reactivation of rail service" by prohibiting abandonment where a trail sponsor offers to assume managerial, tax, and legal liability for the right-of-way <u>for use in the interim as a trail</u>. *See* 16 U.S.C. § 1247(d) (emphasis added); *Citizens Against Rails to Trails v. STB*, 267 F.3d 1144, 1149-50 (D.C. Cir. 2001). The STB also recognizes and states that the right to reactivate a railbanked line is not an exclusive right to the original railroad, but it still has to be reactivated by a qualified railroad, and the qualified railroad has to follow the procedures established by the STB. *See, e.g.*, *Georgia Great Southern; Iowa Power–Const. Exempt.–Council Bluffs, Iowa*, 8 I.C.C.2d 858, 866-67 (1990).

A railbanked easement is simply the preservation of the railroad purposes easement for potential future use, not the current right to use a railroad purposes easement. In fact, in order for any entity, Defendant or not, to invoke the use of the railbanked corridor, it must comply with the reactivation requirements of the STB. *See* GNP Rly, Inc., FD 35407, Decision dated June 15, 2011, attached as Exhibit B (denying GNP Railway's request to reactivate the banked right-of-way that is also involved in this case). As stated by the STB, King County, who holds the reactivation rights, or a bona fide petitioner who comes forward by and through King County, could request that the NITUs be vacated to permit reactivation for continued rail service in the

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 5

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

future.  It is clear under the Trails Act, as well as the STB's own decisions, the corridor is either a railroad running trains or a recreational trail—one or the other—period.

Simply put, the Trails Act authorizes trail use ONLY upon a would-be abandoned right-of-way and provides the federal government with continuing jurisdiction over the railbanked corridor just in case it is ever reactivated in the future.  The STB does not police or regulate railbanked corridors and would not have authority or involvement regarding whether the Defendants' proposed uses of the railbanked corridor, including Sound Transit's proposed use, are proper, improper, or even authorized under some other state or federal law.   If any bona fide railroad petitioned the STB for reactivation and reactivation were granted, the NITU would be vacated and the authorization for trail use would be revoked.

When the STB issues a NITU, it does not regulate any activities on the railbanked corridor—it simply maintains jurisdiction for potential reactivation by a railroad. Sound Transit simply acts as if it is a railroad, without authority, that a railroad purposes easement currently exists upon the former right-of-way, which it does not, that it has the right to use that easement, which is not the case, and that it has the power and authority to reactivate the railroad under the railbanking provisions of the Trails Act, which it does not.  Incredible.

### III.  SOUND TRANSIT IS NOT A RAILROAD AND THEREFORE CANNOT REACTIVATE THE RAILROAD'S RIGHT-OF-WAY UNDER THE TRAILS ACT

**A.  Sound Transit is Not a Railroad Pursuant to Federal Law**

Simply put, the STB does not maintain jurisdiction over light rail because light rail is not considered a railroad under federal law.   Although the Secretary of Transportation has

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 6

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

jurisdiction over high-speed light rail,[4] the term "high-speed rail" means intercity or interurban passenger rail service that is reasonably expected to reach speeds of at least 110 miles per hour.[5] As a result, this proposed use of light rail by Sound Transit does not qualify as a "railroad" under the STB's regulations.

Specifically, railroads governed by the STB are defined as follows:

> The term "carrier" includes any railroad subject to the jurisdiction of the Surface Transportation Board, … Provided, however, That the term "carrier" shall not include any street, interurban, or suburban electric railway, unless such railway is operating as a part of a general steam-railroad system of transportation...

45 U.S.C. § 151.  As a result, since the STB specifically defines a "rail carrier" to be "a person providing common carrier railroad transportation for compensation, but **does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation,**" Sound Transit by definition is not a railroad as defined by the STB. 49 U.S.C. § 10102(5)(emphasis added).  Sound Transit is not operated as part of the general system of rail transportation, is not a common carrier, and is, instead an electric railway not under the STB's jurisdiction.  Despite Sound Transit's claim that its proposed uses fall within the meaning of a railroad and it serves "railroad purposes," it actually does not, and the STB has no jurisdiction over Sound Transit.  Sound Transit is not a railroad within the meaning or jurisdiction of the STB and, as a result, Sound Transit cannot reinstate or "reactivate" this railbanked corridor.

### B.  Sound Transit Cannot Reactivate this Railbanked Corridor

Railbanking is voluntary.  Railroads wanting to abandon their rail lines must petition the STB for authority to abandon the line.  In the process of "railbanking," the STB retains jurisdiction for possible future railroad use and the abandonment of the corridor is blocked, **even**

---

[4] *See* 49 U.S.C. § 26106.

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 7

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**though the conditions for abandonment are otherwise met**. A NITU cannot be issued unless the conditions of abandonment by the railroad have been met. Railbanking prevents the operation of state laws that would otherwise come into effect upon abandonment, specifically, property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." *Bright v. United States*, 603 F.3d 1273, 1275 (Fed. Cir. 2010). Just as the Federal Circuit, as well as all of the Court of Federal Claims judges have so held, including Judge Lettow in *Haggart*, railbanking, with the **railroad's relinquishment of the easement** and the speculative and remote possibility of future rail service, does not constitute a railroad purpose.

Railbanking is merely a provision allowing the maintaining of federal jurisdiction over a railroad right-of-way under the Trails Act upon issuance of a NITU. Railbanking allows a railroad to discontinue service while the railroad relinquishes all interest and responsibility in the right-of-way. Then, a public use entity converts the railroad's right-of-way to a public recreational use with the agreement that the STB may at some time in the indefinite future authorize some non-specified railroad to build a new rail line over the right-of-way. *See*, *e.g*., *Preseault I*, 494 U.S. at 17-18.

In order to reactivate a railbanked corridor, <u>a bona fide railroad</u> must petition the STB and request reactivation and vacation of the NITU that railbanked the line:

> According to Board officials, the resumption of rail service over a banked right-of-way is a rather straightforward process for the rail carrier that originally agreed to rail banking. <u>If the rail carrier that banked a right-of-way wants to return it to rail service, the carrier has to notify the Board; the abandonment proceeding is then reopened, and the trail use authority is revoked</u>. However, if a different rail carrier wants to use the right-of-way, it must file an application for the construction and operation of a line of railroad. *See* 49 U.S.C. 10901. Depending

---

[5] *Id.*

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 8

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

on the situation, this may trigger an environmental review by the Board under its requirements for initiating rail service.

Surface Transportation, Issues Related to Preserving Inactive Rail Lines as Trails, United States General Accounting Office, Report to the Honorable Sam Brownback, U.S. Senate, Exhibit A (emphasis added).

Under the Trails Act, established railroad rights-of-way are <u>preserved for future reactivation</u> of rail service and the right to reactivate a rail-banked line is not an exclusive right. If a railroad other than the original railroad wants to reactivate the line, that qualified railroad must seek STB approval for reactivating rail service. *See, e.g.*, *Georgia Great Southern; Iowa Power–Const. Exempt.–Council Bluffs, Iowa*, 8 I.C.C.2d 858, 866-67 (1990). Although King County acquired the reactivation rights under the Trails Act, King County is not a railroad and cannot reactivate the railbanked corridor in and of itself. King County would have to grant or transfer or sell those rights to a <u>bona fide carrier</u> under the Trails Act.

Sound Transit is simply not a railroad, is not a bona fide petitioner, and cannot reactivate this railbanked corridor. Even if Sound Transit were able to somehow obtain the STB's approval to reactivate the railbanked corridor, then the NITU would be revoked and the abandonment proceedings would be reopened. Simply put, the Defendants in this case, including Sound Transit, cannot have their cake and eat it too, cannot use the corridor for any purpose they see fit, and must comply with the Trails Act.

That any conversion of the railbanked line to light rail use is outside the jurisdiction of the STB is supported by those instances where the STB has declined to recognize the interests of light rail line developers who attempt to inject themselves into the Offer of Financial Assistance Provisions ("OFA") of 49 U.S.C. § 10904. Under 49 U.S.C. § 10904, a financially responsible

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 9

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

person may offer to purchase, or subsidize continued rail operations over a rail line sought to be abandoned. In *Kulmer v. Surface Transp. Bd.*, 236 F.3d 1255 (10th Cir. 2001), the Tenth Circuit upheld the STB's decision to dismiss an OFA from a light rail developer whose OFA did not include evidence that continued freight service would likely result from their proposal. Specifically, the court upheld the STB's findings that the OFA was "too indefinite and insufficient to support continued freight rail operations." *Id*. at 1258. What is apparent from Kulmer and the similar STB decisions as the one analyzed therein, is that it is the preservation of railroad operations which is the concern of the STB during abandonment proceedings.

It is the STB's concern over railroad operations which led to the railbanking of the line, and why the corridor remains under the jurisdiction of the STB. King County represented that it was going to establish a nature and hiking trail. Sound Transit did not seek a public use exception from 49 U.S.C. § 10905 under the time period prescribed therein to establish light rail use, and so the STB did not approve public use for a light rail. What occurred was that King County affirmatively stated that it would establish a hiking trail yet nonetheless preserve the land for future reactivation, and the STB was convinced of King County's representations. Therefore, the STB issued a NITU. There have been no proceedings initiated by Sound Transit to justify light rail use of the land. And the STB has not given its approval that such use would not interfere with the possibility of the corridor being reactivated for railroad purposes.[6] Thus, Sound Transit's intended use is outside the scope of the federally-approved use of the land. If Sound Transit (or any other entity for that matter) wishes to establish a light rail, an entirely new

---

[6] Documents from the East Side Rail Corridor Master Plan Project by King County demonstratively show the potential horror of what all the Defendants envision for the corridor and how Sound Transit's light rail system will definitely interfere with the future reactivation of a railroad. Three pages which show the additional burden on the servient estate and the interference with future reactivation are collectively attached as Exhibit C.

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 10

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

proceeding would have to be formally initiated by King County, through the STB. Sound Transit asks the court to "bless" the construction of a light rail system, even though it is the STB which has jurisdiction over the railroad corridor, and only the STB can approve such use.

## IV.  SOUND TRANSIT'S ARGUMENTS ABOUT THE SCOPE OF A RAILROAD PURPOSES EASEMENT OR THAT LIGHT RAIL FALLS WITHIN THE SCOPE OF A RAILROAD PURPOSES EASEMENT ARE IRRELEVANT

Sound Transit is not a "railroad" and its arguments regarding subsurface or aerial rights connected with railroad purposes is irrelevant. All of Sound Transit's arguments fail as a matter of law. First, the railroad purposes easement is "preserved" for future reactivation as a railroad under the Trails Act and does not currently exist for current railroad uses, or any other uses except trail use. Second, even if the railroad purposes easement does exist, the scope of a railroad purposes easement is not broad enough to include subsurface and aerial rights beyond railroad purposes. Third, Sound Transit's purported uses of the subsurface and aerial rights contained within fee ownership are not "incidental" to railroad purposes. And fourth, any railroad purposes use would require reactivation of the railroad by a bona fide petitioner (which Sound Transit is not), reactivation would then require the authorization of the STB, and if such authorization were to be given the NITU would be revoked. As a result, the Port had no right to convey easements to Sound Transit and the only way Sound Transit can legally obtain any subsurface or aerial rights is to utilize their powers of condemnation and to pay the fee owners.

## V.  CONCLUSION

The Defendants did not acquire subsurface and aerial rights in this railroad right-of-way by and through the Trails Act. Any purported claim to be able to use the railroad corridor in any fashion they wish, including subsurface and aerial rights, should be rejected. Sound Transit did not acquire any valid rights in the corridor because it is not the trail user and only the trail user

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 11

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

acquired the right to construct a trail. As a result, Plaintiffs' motion for summary judgment should be granted and the Defendants' cross-motion for summary judgment should be denied.

Date: October 5, 2015.

**STEWART, WALD & MCCULLEY, LLC**

By */s/ Thomas S. Stewart*
Thomas S. Stewart
Elizabeth Gepford McCulley
Michael J. Smith
9200 Ward Parkway, Suite 550
Kansas City, MO 64114
Telephone: (816) 303-1500
Facsimile: (816) 527-8068
stewart@swm.legal
mcculley@swm.legal
smith@swm.legal

AND

RODGERS DEUTSCH & TURNER, P.L.L.C.
Daryl A. Deutsch, WSBA No. 11003
Rodgers Deutsch & Turner, P.L.L.C.
3 Lake Bellevue Dr. Suite 100
Bellevue, WA 98005
Telephone: (425) 455-1110
Facsimile: (425) 455-1626
daryl@rdtlaw.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon all parties of record.

Timothy G. Leyh
Randall Thomsen
Kristin Ballinger
CALFO, HARRIGAN, LEYH & EAKES, LLP
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com
*Attorneys for Defendant Port of Seattle*

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT —
No. 2:14-cv-000784-JCC - Page 12

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110 Fax (425)455-1626

| | |
|---|---|
| 1 | Gavin W. Skok |
| 2 | Bryan J. Case |
|   | Courtney L. Seim |
| 3 | James E. Breitenbucher |
|   | RIDDELL WILLIAMS PS |
| 4 | gskok@riddellwilliams.com |
|   | bcase@riddellwilliams.com |
| 5 | cseim@riddellwilliams.com |
|   | jbreitenbucher@riddelwilliams.com |
| 6 | *Attorneys for Defendant Puget Sound Energy* |

Gavin W. Skok
Bryan J. Case
Courtney L. Seim
James E. Breitenbucher
RIDDELL WILLIAMS PS
gskok@riddellwilliams.com
bcase@riddellwilliams.com
cseim@riddellwilliams.com
jbreitenbucher@riddelwilliams.com
*Attorneys for Defendant Puget Sound Energy*

Andrew W Marcuse
David J. Hackett
King County Prosecuting Attorney, Civil Division
andrew.marcuse@kingcounty.gov
david.hackett@kingcounty.gov
*Attorneys for Defendant King County*

Desmond L. Brown
Loren Armstrong
desmond.brown@soundtransit.org
lore.armstrong@soundtransit.org.
*Attorneys for Central Puget Sound Regional Transit Authority*

_____/s/ *Thomas S. Stewart*_____

PLAINTIFFS' REPLY TO SOUND TRANSIT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT — No. 2:14-cv-000784-JCC - Page 13

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626