THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, *et al*,<br><br>             Plaintiffs,<br><br>       v.<br><br>PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation and KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation,<br><br>             Defendants. | NO. 14-cv-00784-JCC<br><br>PORT OF SEATTLE AND KING COUNTY REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>**NOTED ON MOTION CALENDAR: OCTOBER 9, 2015**<br><br>**ORAL ARGUMENT REQUESTED** |

19

20

21

22

23

24

25

REPLY IN SUPPORT OF CROSS-MOT. FOR
SUMM J.
NO. 14-cv-00784-JCC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      ARGUMENT ................................................................................................................1

    A.      The Court Already Held That the Trails Act Preserved Railroad Easements for
        Current Use .........................................................................................................1

    B.      Plaintiffs Now Concede the Central Point of the Defendants' Cross-Motion,
        That Railroad Easements Are Exclusive and Not Limited Physically to the
        Surface .................................................................................................................2

    C.      *Brandt* and *Lawson* Did Not Involve Railbanking or the Trails Act. ....................5

    D.      Use of the Corridor Does Not Require Reactivation of the Line for Freight .........7

        1.      The STB Does Not Limit the Use of Railbanked Corridors Pending
            Reactivation ...............................................................................................7

        2.      The court in *Haggart* held that compensation should include use of the
            Corridor for commuter rail, which was distinct from possible
            reactivation ...............................................................................................8

        3.      The appraisers valued plaintiffs' property as encumbered by reactivation
            and light rail ...............................................................................................8

    E.      Issues of Fact Remain to Be Decided Regarding Plaintiffs' Ownership But those
        Disputed Facts Do No Impact the Defendants' Right to Summary Judgment ........9

II.    CONCLUSION ...........................................................................................................10

OPP'N TO PLS.' MOT. FOR SUMM. J. &
CROSS-MOT. FOR SUMM J. - i
NO. 14-cv-00784-JCC

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# TABLE OF AUTHORITIES

## Table of Cases

*Brandt Revocable Trust v. United States*,
    ___ U.S. ___, 134 S. Ct. 1257, 188 L. Ed. 2d 272 (2014)...................................................6

*Great N. R. Co. v. United States*,
    315 U.S. 262, 62 S. Ct. 529, 86 L. Ed. 836 (1942).............................................................3

*Haggart v. United States*,
    108 Fed. Cl. 70 (2012).......................................................................................................8

*Hanson Indus., Inc. v. Cnty. of Spokane*,
    114 Wn. App. 523, 58 P.3d 910 (2002)..........................................................................6, 7

*Hayward v. Mason*,
    54 Wash. 649, 104 P. 139 (1909) ...................................................................................4, 5

*Illig v. United States*,
    58 Fed. Cl. 619 (2003)........................................................................................................1

*Kansas City S. Ry. Co. v. Arkansas La. Gas Co.*,
    476 F.2d 829 (10th Cir. 1973) ........................................................................................3, 4

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*,
    156 Wn.2d 253, 126 P.3d 16 (2006)...............................................................................4, 5

*Lawson v. State*,
    107 Wn.2d 444, 730 P.2d 1308 (1986)...........................................................................5, 6

*Neitzel v. Spokane Int'l Ry. Co.*,
    80 Wash. 30, 141 P. 186 (1914) .......................................................................................3

*Northwest Supermarkets, Inc. v. Crabtree*,
    54 Wn.2d 181, 338 P.2d 733 (1959)..................................................................................4

*Wash. Secs. & Inv. Corp. v. Horse Heaven Heights*,
    132 Wn. App. 188, 130 P.3d 880 (2006)...........................................................................3

*Western Union Tele. Co. v. Penn. R.R.*,
    195 U.S. 540 (1904)...........................................................................................................3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

**Statutes**

RCW 8.08.010 ...................................................................................................................5

RCW 53.25.190 ................................................................................................................5

RCW 80.32.060 ................................................................................................................5

RCW 80.36.040 ................................................................................................................5

**Other Authorities**

Baltimore & Ohio R. Co,—Abandonment & Discont. of Ser.—In Montgomery County, MD & the Dist. of Columbia, ICC Docket No. AB-19 (Sub-No. 112),
    1990 WL 287371 (March 2, 1990) ...................................................................................7

OPP'N TO PLS.' MOT. FOR SUMM. J. &
CROSS-MOT. FOR SUMM J. - iii
NO. 14-cv-00784-JCC

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# I.  ARGUMENT

**A.      The Court Already Held That the Trails Act Preserved Railroad Easements for Current Use.**

Plaintiffs' primary argument is one the Court already has ruled upon and rejected. Plaintiffs again argue that the Trails Act preserved something <u>less</u> than the full scope of BNSF's original rail easements and served only to hold the railroad easements in abeyance until the Surface Transportation Board ("STB") reactivates the line for freight rail.  But the Court already ruled that railbanking preserved the full railroad easements in the Eastside Rail Corridor ("Corridor") for current use:

> Plaintiffs repeat their assertion that railbanking merely preserves the "physical characteristics" of the railroad corridor for "future reactivation – not current use." . . . [T]his interpretation goes against the grain of the simplest, ordinary-meaning interpretation of "preserve."
>
> . . . .
>
> This Court HOLDS AS FOLLOWS:
>
> By its terms, the Trails Act preserves railroad easements in railbanked corridors by preempting abandonment of those easements.  When a railroad corridor is railbanked pursuant to the Trails Act, the railroad easements are preserved and trail use becomes a new interim authorized use.  BNSF's railbanking of the Eastside Rail Corridor preserved BNSF's railroad easements and allowed interim use of the corridor as a trail.

Order (Dkt. No. 107) at 9-10.

The Court's ruling that railbanking preserved BNSF's easements and also allowed for trail use forecloses plaintiffs' arguments.  The Trails Act did not create a "new" property interest narrower in scope than BNSF's original easements.  The railroad easements are not held in abeyance while the land is used as a trail.  King County, the easement holder, may use the preserved rail easements in exactly the same manner as the railroad could use them, for all "railroad purposes" and all uses incidental to those purposes, *see Illig v. United States*, 58 Fed. Cl. 619 (2003), in addition to trail use.  As this Court stated, "all courts presented with the issue have held that the Trails Act preserves railroad easements and that a trail sponsor may

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700    FAX, (206) 623-8717

own and exercise the rights inherent to the railroad easement." Order (Dkt. No. 107) at 6 (emphasis removed) (footnote omitted).[1]

## B.   Plaintiffs Now Concede the Central Point of the Defendants' Cross-Motion, That Railroad Easements Are Exclusive and Not Limited Physically to the Surface.

Plaintiffs concede the central relief sought by the Port's and King County's cross-motion:  a declaration that the railroad easements allow the easement holder the exclusive control and use of the area on, beneath, or above the surface of the property. Opp'n (Dkt. No. 131) at 7–8.  Plaintiffs claim the Port and King County failed to "define the actual scope of the easement," but the cross-motion merely seeks a ruling that affirms the scope of railroad easements under Washington law:  "the railroad easements at issue (now held by King County) provide for the holder's exclusive use and possession of the area on, beneath, and above the surface of the rail corridor, for railroad, trail, and incidental uses allowed under Washington law."  Cross-Motion (Dkt. No. 124) at 23.  King County and the Port thus seek a declaration that the holder of a railroad easement in a railbanked corridor may use the easements just as they could be used by BNSF, which under Washington law includes incidental uses not inconsistent with a railroad.  This is the "scope" question the Court noted was "still to be determined."  Order (Dkt. No. 107) at 3 n.1.  Defendants did not seek a ruling that specific proposed incidental uses of the Corridor are authorized, because that ruling would be premature at this time when no specific uses have been concretely proposed.

Plaintiffs now concede that the railroad easements are exclusive and not limited to the surface.[2]  This concession is not only appropriate under Washington law, but also in light of

---

[1] The Port and King County do not intend to respond (again) to plaintiffs' contention that "railbanking is not a railroad purpose."  Dkt. No. 131 at 4–6.  The Court already addressed that issue before, reasoning: "It is not inconsistent, as Plaintiffs argue, for Defendants to admit that railbanking is not a railroad purpose, but to simultaneously maintain that the railroad easement still exists.  This is the exact result dictated by the Trails Act."  Order (Dkt. No. 107) at 8–9 (citation omitted).

[2] In doing so plaintiffs have sprinkled in words like "very limited" or "minimal" in describing the subsurface and aerial dimensions of a railroad easement.  Opp'n (Dkt. No. 131) at 8.  But there are no such limitations in Washington law.

REPLY IN SUPPORT OF CROSS-MOT. FOR
SUMM J. - 2
NO. 14-cv-00784-JCC

the specific language of the conveyances at issue.  Those conveyances expressly include the right to use the property on, beneath, and above the surface.  Cross-Motion (Dkt. No. 124) at 21–23.  Plaintiffs do not even address the conveyances' plain language or dispute that BNSF and plaintiffs' predecessors-in-interest have historically allowed a multiplicity of uses of the railroad easements, including the installation of sewer pipes, electrical transmission lines, and other activities involving all of the vertical estates.  Cross-Motion (Dkt. No. 124) at 20–21.  Those historic uses of the easement are entirely consistent with proposed possible future incidental uses.  Cross-Motion (Dkt. No. 124) at 20–21 ("The railroad used substantial subsurface, surface, and aerial rights to construct the rail bed and facilitate railroad operations in the ERC.  Nunnenkamp Decl. ¶¶ 2–7.").

Plaintiffs' claim that incidental uses of the easements are only for "the purpose[s] of constructing and running the railroad itself, " Opp'n (Dkt. No. 131) at 8, but that claim is contrary to Washington law.  While incidental uses of railroad easements obtained as a result of federal land grants may be limited,[3] the Court in *Neitzel* held that Washington law permitted construction of a grocery store with no connection whatsoever to the running of trains as an incidental use of the railroad easement.  *Neitzel v. Spokane Int'l Ry. Co*., 80 Wash. 30, 38, 141 P. 186 (1914).  More recently, the Court in *Washington Securities & Investment Corp.* stated that subsurface installation of equipment with no connection whatsoever to the running of trains would be a valid incidental use of the railroad easement.  *Wash. Secs. & Inv. Corp. v. Horse Heaven Heights,* 132 Wn. App. 188, 200, 130 P.3d 880 (2006).  In its analysis, the court in *Washington Securities* specifically rejected plaintiffs' argument here, holding:  "the

---

[3] *See Kansas City S. Ry. Co. v. Arkansas La. Gas Co.*, 476 F.2d 829, 835 (10th Cir. 1973).  Likewise, the other cases cited by plaintiffs (Dkt. No. 131 at 9 n.12 and 13, including *Great N. R. Co. v. United States*, 315 U.S. 262, 271, 62 S. Ct. 529, 532, 86 L. Ed. 836 (1942)), are as to the scope of federal land grants.  Also contrary to plaintiffs' claim (Dkt. No. 131 at 12), the court in *Western Union Tele. Co. v. Penn. R.R.*, 195 U.S. 540 (1904), was nowise limiting the scope of the easement when it stated, "It is a fee in the surface and so much beneath as may be necessary for support."  *Id.* at 570.  The court was explaining the expansiveness of the property interest, not seeking to limit it.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

incidental use doctrine permits a railroad to use its easement to conduct <u>not only railroad activities</u> but also any <u>other</u> incidental activities that are not inconsistent and do not interfere with the operation of the railroad." *Id.* (emphasis added) (quoting *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253, 273, 126 P.3d 16 (2006)).

Plaintiffs fail to mention the Court of Appeals' decision in *Washington Securities*, which defendants argued in their cross-motion. *See* Dkt. No. 124 at 1, 17. Likewise, plaintiffs fail to acknowledge the Supreme Court's statement in *Kershaw* that but for the statute there <u>mandating</u> eminent domain proceedings, "the Court of Appeals analysis may be sufficiently compelling to find the telecommunications cable" which was buried underground "an incidental use." *Kershaw*, 156 Wn.2d at 276.[4]

Plaintiffs' attempt to minimize *Northwest Supermarkets, Inc. v. Crabtree*, 54 Wn.2d 181, 338 P.2d 733 (1959), also fails. The holding that the fee owner could not grant a sewer easement because "there remains no interest in realty that the [fee owner] could convey," *id.* at 186, was not because there could not be two sewer lines in the street easement as argued by plaintiffs. Opp'n (Dkt. No. 131) at 11 n.13. It was because the prior street easement included "rights incidental to the use of the street, which includes the storm sewer." *Nw. Supermarkets*, 54 Wn.2d at 186. *Northwest Supermarkets* illustrates why the result in *Kansas City Southern Ry. Co.*, where the court held that the federal land grant permitted the owner of the fee to excavate under the railroad easement, 476 F.2d at 835, would not be the result under Washington law.[5]

---

[4] Plaintiffs' citation to the <u>trial court</u> decision in *Kershaw*—their only support for this proposition under Washington law (Dkt. No. 131 at 13)—is misplaced. The trial court's decision has no precedential value as it was rejected by the Court of Appeals whose own analysis the Supreme Court found "compelling" but overborn by an "explicit statutory framework." *Kershaw*, 156 Wn.2d at 276.

[5] Plaintiffs' quotes from *Hayward v. Mason*, 54 Wash. 649, 104 P. 139, 140 (1909) – a non-railroad easement case – for the proposition that the fee owner may use property burdened by an easement so long as that use is consistent with the easement, is preceded by this finding: "There is nothing in the deed or in the circumstances existing at the time it was made to indicate that the right of way granted was an exclusive one. On the other hand, the circumstances indicate the grant was not exclusive." Plaintiffs already conceded railroad easements are

Plaintiffs claim that this case is just like *Kershaw* because there are applicable statutes mandating eminent domain proceedings.  Opp'n (Dkt. No. 131) at 19-20.  But the statute at issue in *Kershaw* was unique by stating that when telecommunication companies seek to use a right-of-way and "when the right-of-way [of a railroad] has not been acquired by or through any grant . . . from the United States, or this state, or any county, city or town therein, then the right to construct and maintain such lines <u>shall</u> be secured <u>only</u> by the exercise of right of eminent domain."  RCW 80.36.040 (emphasis added).  The Supreme Court held that the fact that the statute <u>required</u> eminent domain proceedings precluded the railroad from simply contracting with the telecommunications company to install the fiber optic lines as an incidental use of the easement.

By contrast, the eminent domain statutes cited by plaintiffs applicable to King County, the Port, and Puget Sound Energy do not require eminent domain proceedings in the same circumstances affecting telecommunication companies.  *Compare* RCW 80.36.040 *with* RCW 53.25.190; RCW 8.08.010; RCW 80.32.060.  *Kershaw* makes clear that this distinction would compel a different result:

> it is evident that RCW 80.36.040 obligated Level 3 to exercise its eminent domain powers to secure the right to lay its line. . . . This explicit statutory framework, rather than the alternative common law "incidental use doctrine," governs our analysis.  Absent the clarifying language in RCW 80.36.040, the Court of Appeals analysis may be sufficiently compelling to find the telecommunications cable an incidental use and conclude no compensation was due Kershaw Sunnyside Ranches; however its presence dictates the result here.  Level 3 was required to exercise its eminent domain powers in securing the right to construct and maintain its lines on the railroad right of way.

*Kershaw*, 156 Wn. 2d at 276.

## C.    *Brandt* and *Lawson* Did Not Involve Railbanking or the Trails Act.

Despite this Court twice explaining why *Lawson* is not relevant to the issues in this

---

exclusive under Washington law; *Hayward* is inapplicable because it does not address exclusive railroad easements.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

case (Order, Dkt. No. 91, at 16; Order, Dkt. No. 107, at 8), plaintiffs again rely on that

decision.  Plaintiffs also cite *Brandt Revocable Trust v. United States,* ___ U.S. ___, 134 S. Ct.

1257, 188 L. Ed. 2d 272 (2014).  Neither case is relevant to the scope of a railbanked easement

because each dealt with an abandoned railroad and not one that was railbanked under the Trails

Act.  *Brandt*, 134 S. Ct. at 1263 ("[I]n 1996 the [railroad] notified the Surface Transportation

Board of its intent to abandon the right of way. The railroad tore up the tracks and ties and,

after receiving Board approval, completed abandonment in 2004."); *Lawson v. State*, 107

Wn.2d 444, 449, 730 P.2d 1308 (1986) ("a change in use from 'rails to trails' constitutes

abandonment").  As this Court stated in its prior summary judgment order:

> railbanking under the Trails Act expressly preempts abandonment, 16 U.S.C. §
> 1247(d), *Lawson v. State*, 107 Wash. 2d 444, 446 (1986) is simply not on point as
> it did not deal with federal preemption or with the Trails Act, but rather with
> Washington State rails to trails law, and whether discontinuance in use would
> result in reversion under state law *in the absence of the Trails Act* is immaterial
> here.

Order (Dkt. No. 107) at 8 (emphasis in original) (footnote omitted).

Plaintiffs also cite *Hanson Indus., Inc. v. Cnty. of Spokane*, 114 Wn. App. 523, 58 P.3d

910 (2002), but that case also involved an already abandoned rail line.  *Id.* at 526 ("Burlington

Northern abandoned the rail line in 1986 or 1987 and quitclaimed its interest to Spokane

County in 1991 for $5,000.").  Just like in *Lawson*, the court in *Hanson* held that under state

law, once the railroad abandoned the rail line, the railroad easement was extinguished.  *Id.* at

536 ("The deeds conveyed easements which automatically reverted to Hanson Industries as

successor-in-interest to the grantors when Burlington Northern abandoned the line.").  But

*Hanson* <u>is</u> relevant to the scope of the preserved railroad easement here because the court of

appeals in *Hanson* addressed the expansiveness of railroad easements under Washington law:

> A railroad right-of-way is a very substantial thing, more than a mere right of
> passage and more than an ordinary easement.  It is often likened to a determinable
> fee.  <u>It is an easement with the substantiality of a fee and the attributes of a fee,</u>
> perpetuity and exclusive use and possession; also the remedies of a fee.  <u>This</u>

<u>"fee-like" estate is frequently granted in terms usually associated with the grant of a fee simple</u>.

*Hanson Indus.,* 114 Wn. App. at 528 (emphasis added) (citations omitted).

**D.    Use of the Corridor Does Not Require Reactivation of the Line for Freight.**

Plaintiffs argue that the railroad easements are not operational until the STB reactivates the Corridor for freight traffic.  This argument repeats a contention that this Court already rejected, that "railbanking merely preserves the 'physical characteristics' of the railroad corridor for 'future reactivation – not current use.'"  Dkt. 107 at 9-10 (quoting plaintiffs' briefing).  There is no support for the proposition that state law easement rights are held in abeyance until the STB reactivates the Corridor.  The Court should (again) reject plaintiff's position.

**1.    The STB Does Not Limit the Use of Railbanked Corridors Pending Reactivation.**

As the Port and King County previously explained, *see* Dkt. 124 at 8-10, the STB allows a  railbanked corridor to be used for trail, and other uses permitted under state railroad easement law, including transportations uses other than interstate freight rail.  *See id.* at 9 (quoting STB, *Rail Abandonments—Use of Rights-of-Way As Trails—Supplemental Trails Act Procedures*, Ex Parte No. 274 (Sub-No. 13), 1989 WL 238631, at *5 n.10 (May 18, 1989) ("[i]f the rail carrier's interests allows different uses (such as underground cable) we see no reason why a trail operator should not be able to do the same.")).  The STB's interest under the Trails Act is to preserve the corridor for reactivation for freight, not to place the corridor in stasis.  As such, the STB leaves available interim uses to local governance processes.  *See* Dkt. 124 at n.12 (collecting STB decisions allowing multiple public uses of railbanked corridors); *see also Baltimore & Ohio R. Co.—Abandonment & Discont. of Ser.—In Montgomery County, MD & the Dist. of Columbia*, ICC Docket No. AB-19 (Sub-No. 112), 1990 WL 287371, at *2, *3 (March 2, 1990) ("The reuse of a right-of-way for a public purpose concurrently with a trail use has previously been found consistent with the Trails Act.").

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

2.      **The court in *Haggart* held that compensation should include use of the Corridor for commuter rail, which was distinct from possible reactivation.**

2

The court in *Haggart* recognized that the Corridor would be used for commuter rail,

3

and held that the valuation of the taking should include that use as a result.  The court's

4

opinion in *Haggart* makes clear that both the court and the parties understood that development

5

of a commuter rail was possible without STB reactivation and that any compensation should be

6

based on this future use.  *Haggart v. United States*, 108 Fed. Cl. 70, 96 (2012) (after valued as

7

"general easement permitting recreational trail use with the potential for future railway use by

8

way of rail-banking or possible future development of a commuter rail line").

9

3.      **The appraisers valued plaintiffs' property as encumbered by reactivation and light rail.**

10

11

Plaintiffs selectively rely on the same *Haggart* appraisals that they are refusing to

12

produce in discovery by now having their appraisers testify about the appraisals' content.[6]

13

Even if the Court considers the appraisers' testimony, it only evidences that the appraisers

valued the "after" as including a commuter rail line.  *See* Kilpatrick Decl. (Dkt. No. 131-4) at 6

14

(stating that the government's appraiser valued the "after" as including "an easement for

15

recreational trail use subject to possible reactivation as a railroad, <u>including light rail</u> . . . with

16

all physical structures in place").[7]

17

It is impossible to know whether the appraisers appreciated Washington's expansive

18

19

────────────────

20

[6] Over one year ago, the Port requested the appraisals conducted in *Haggart*, and plaintiffs have opposed King County's motion to compel them.  *See* Dkt. Nos. 116, 110.  Ironically, plaintiffs now submit declarations from their appraisers testifying about the contents of them.  *See* Dkt. Nos. 131-3, 131-4.  As this case proceeds to resolution, it remains important to force plaintiffs to comply with their discovery obligations by granting King County's motion to compel.

21

22

[7] The Port and King County's right to see the appraisals is highlighted by this selective information.  Plaintiffs originally argued that they were compensated only for trail use and not the continuation of rail:

23

> Plaintiff's position is essentially . . . that the compensation award received after they prevailed in this takings case did not reimburse them for the full loss of value due to any preservation of a still-existing rail way easement, because this railway easement was abandoned and thus had been extinguished.

24

25

Order (Dkt. No. 91) at 14 n.5.  Had plaintiffs disclosed the appraisals, this position would have been indefensible.

REPLY IN SUPPORT OF CROSS-MOT. FOR
SUMM J. - 8
NO. 14-cv-00784-JCC

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1   allowance for incidental uses allowed in rail easements, given that the appraisals have not been

2   produced.  But even if the appraisers did not account for that aspect of Washington law,

3   plaintiffs were "beholden to pursue the claims available to them in the earlier litigation."

4   Order, *Ioppolo, et al. v. Port of Seattle, et al.*, C15-0358-JCC, at 7-8 (Dkt. No. 56).  The fact

5   remains that plaintiffs sought a takings recovery and obtained a settlement of over $141

6   million.  It is clear that the federal government preserved BNSF's easements by taking

7   plaintiffs' reversionary rights and adding trail use.  Plaintiffs' current argument that they retain

8   broad property rights in the Corridor despite the taking and compensation makes no sense.

9   Certainly, the Trails Act did not leave them with <u>more</u> property rights than they had before.

10  **E.      Issues of Fact Remain to Be Decided Regarding Plaintiffs' Ownership But those
           Disputed Facts Do Not Impact the Defendants' Right to Summary Judgment.**

11

12          It is unclear whether plaintiffs dispute that issues of fact remain about plaintiffs' claim

13  of ownership in the Corridor, as well as the source deeds applicable to many of plaintiffs'

14  properties.  Plaintiffs have not moved for a ruling about their actual ownership of specific

15  parcels and which deeds are adjacent to or burden their properties, and appear to acknowledge

16  that fact issues remain.  Opp'n (Dkt. No. 131) at 2 (not disputing that plaintiffs "fee

17  ownership" "will ultimately either be briefed or be the subject of a quiet title trial").

18  Specifically, the pending motions do not address fact issues about (1) the source conveyances

19  other than the two conveyances at issue in the cross-motions, (2) to whose property the two

20  source conveyances apply, and (3) the existence of many of the plaintiffs' rights in the

21  Corridor and their standing to present claims in this suit.  *See* Dkt. No. 124 n.7 and

22  accompanying text.  These factual disputes, however, do not preclude summary judgment on

23  the legal question of the scope of the railroad easement, which is part of the cross claims for

24  declaratory judgment in this case.

25

## II.   CONCLUSION

The Court should grant Port and King County's cross-motion and rule as a matter of law that the railroad easements at issue (now held by King County) provide for the holder's exclusive use and possession of the area on, beneath, and above the surface of the rail corridor, for railroad, trail, and incidental uses allowed under Washington law.

DATED this 9th day of October, 2015.

CALFO HARRIGAN LEYH & EAKES LLP

By____s/ Timothy G. Leyh_____
Timothy G. Leyh, WSBA#14853

By_____s/ Randall Thomsen_____
Randall Thomsen, WSBA#25310

By_____s/ Kristin Ballinger_____
Kristin Ballinger, WSBA#28253

999 Third Avenue, Suite 4400
Seattle, WA  98104
Telephone:  (206) 623-1700
Fax:  (206) 623-8717
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com

Attorneys for Defendant Port of Seattle

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By ____s/David J. Hackett_____
DAVID HACKETT, WSBA #21236
Senior Deputy Prosecuting Attorney

By ____s/H. Kevin Wright_____
H. KEVIN WRIGHT, WSBA #19121
Senior Deputy Prosecuting Attorney

By ____s/Peter G. Ramels_____
PETER G. RAMELS, WSBA #21120
Senior Deputy Prosecuting Attorney

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

By     *s/Barbara A. Flemming*      
        BARBARA A. FLEMMING,
        WSBA #20485
        Senior Deputy Prosecuting Attorney
        *Attorneys for Defendant King County*

King County Prosecuting Attorney's Office
500 Fourth Ave., 9th Floor
Seattle, WA 98104
Telephone: (206) 296-8820 / Fax: (206) 296-8819
Email: david.hackett@kingcounty.gov
        kevin.wright@kingcounty.gov
        pete.ramels@kingcounty.gov
        barbara.flemming@kingcounty.gov

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

1

2

3

4

5

6

Daryl A. Deutsch WSBA#11003
daryl@rdtlaw.com

7

8

9

Thomas S. Stewart
Elizabeth McCulley
stewart@swm.legal
mcculley@swm.legal

10

Michael J. Smith
smith@swm.legal

11

12

13

14

15

Gavin W. Skok, WSBA#29766
James E. Brietenbucher, WSBA#27670
Courtney Seim, WSBA#35352
Bryan J. Case, WSBA#41781
gskok@riddellwilliams.com
jbreitenbucher@riddellwilliams.com
cseim@riddellwilliams.com
bcase@riddellwilliams.com

16

17

18

David J. Hackett, WSBA#21236
Andrew W. Marcuse, WSBA#27552
david.hackett@kingcounty.gov
andrew.marcuse@kingcounty.gov

19

20

21

Desmond L. Brown, WSBA #16232
Loren G. Armstrong, WSBA #33068
desmond.brown@soundtransit.org
loren.armstrong@soundtransit.org

22

23

DATED this 9th day of October, 2015.

24

_s/Susie Clifford_

25

REPLY IN SUPPORT OF CROSS-MOT. FOR
SUMM J. - 12
NO. 14-cv-00784-JCC

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717