THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SCOTT KASEBURG, et al.,<br><br>     Plaintiffs,<br><br> v.<br><br>PORT OF SEATTLE, et al.,<br><br>     Defendants. | CASE NO. C14-0784 JCC<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>PARTIAL SUMMARY JUDGMENT<br>AND KING COUNTY'S MOTION<br>TO COMPEL, AND MOOTING<br>DEFENDANTS' MOTION TO<br>CONTINUE |

This matter comes before the Court on King County's motion to compel (Dkt. No. 105), the parties' cross motions for partial summary judgment (Dkt. Nos. 113 and 124), and Defendants' motion to continue and strike Plaintiffs' motion for partial summary judgment (Dkt. No. 114). In the interest of judicial economy and due to the interrelated nature of these motions, the Court now rules on each of them in this Order. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS King County's motion to compel (Dkt. No. 105), GRANTS Defendants' motion for partial summary judgment (Dkt. No. 124), and DENIES Plaintiffs' motion for partial summary judgment (Dkt. No. 113), thereby RENDERING MOOT Defendants' motion to continue and

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 1

strike (Dkt. No. 114). Plaintiffs are further ORDERED TO SHOW CAUSE as to why they

should not be required to pay King County's attorney fees for its motion to compel.

## I.    BACKGROUND

The parties agree that during the 1890s and early 1900s, Burlington Northern Santa Fe

Railway Company (BNSF) established a right of way/railway corridor (the "corridor") skirting

the eastern shores of Lake Washington.  However, the parties dispute whether this corridor was

established exclusively through easements or through both easements and fee simple

conveyances.  (Dkt. No. 55 at 6; Dkt. No. 72 at 8.)  By 2008, BNSF no longer used the corridor

for freight rail service.  (Dkt. No. 36 at 2.)

The federal Trails Act provides that a railroad easement no longer desired by the rail

company/easement holder for freight service may be "railbanked" while such easement is kept

open for recreational trail use.  *See* 16 U.S.C. § 1247(d).  Through railbanking, the Trails Act

preempts extinguishment of the easement and reversion to the underlying owner, as would

normally occur under state abandonment doctrines following a discontinuation of use.  *Id.*  The

Trails Act permits railroads to transfer managerial responsibility to a state or local government

entity that agrees to maintain the right of way.  *Id.*   However, the recreational trail is an interim

use only, and the corridor may be reactivated for rail use in the future, if and when the need

arises.  *See Friends of East Lake Sammamish Trail v. City of Sammamish*, 361 F. Supp. 2d 1260,

1273-74 (W.D. Wash. 2005) (citing *Preseault v. Interstate Commerce Commission*, 494 U.S. 1,

5-6 n.3 (1990) ("*Preseault I*")).

In accordance with the railbanking process, on May 12, 2008, BNSF entered into a series

of agreements with Defendants the Port of Seattle (Port) and King County to transfer BNSF's

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 2

interests in the corridor to the Port and to designate King County as the Interim [recreational] Trail Manager.  (Dkt. No. 36 at 3.)

The Port then assigned some of the rights received from BNSF to co-Defendant Central Puget Sound Regional Transit Authority (Sound Transit) for public transportation purposes (the construction of a High Capacity Transit System), and also to co-Defendant Puget Sound Energy, Inc. (PSE), a private utility corporation, for electricity distribution and utility delivery purposes. (Dkt. No. 83 at 41-44; Dkt. No. 36 at 7.)

In February 2009, a group of plaintiffs, including many of those in the instant case, (Dkt. No. 113 at 8), sued the United States in the Court of Federal Claims, arguing that opening the corridor to recreational use under the Trails Act was a taking. *Haggart v. United States*, 108 Fed. Cl. 70, 74-75 (2012). The *Haggart* court agreed, and required the United States to compensate plaintiffs for their property. *Id.* at 75. The United States and the plaintiffs ultimately settled for $137,961,218.69. *Haggart v. United States*, 116 Fed. Cl. 131, 149 (2014).

Plaintiffs in the current matter own land adjacent to the corridor (which runs from Woodinville to Renton).  (Dkt. No. 55 at 6.)  Plaintiffs seek to quiet title and to obtain declaratory relief in light of allegedly unlawful expansions to the easements, following railbanking under the Trails Act.

The Court's most recent order granted Defendants' motion for partial summary judgment on Plaintiffs' declaratory judgment claim. (Dkt. No. 107.) There the Court held that "[i]t is simply true as a matter of law that the Trails Act preempts state law and preserves railroad easements despite a discontinuance in railroad use, while permitting the addition of recreational trail use to the easement." (Dkt. No. 107 at 10.)

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Subsequently, King County filed a motion to compel Plaintiffs to respond to a number of discovery requests. (Dkt. No. 105). In their response, Plaintiffs asserted that they would soon be filing a motion for partial summary judgment on whether Defendants acquired an easement or fee simple in the corridor, and whether this acquisition included subsurface and aerial rights. Plaintiffs argued that the Court should stay its decision on King County's motion to compel until after it ruled on Plaintiffs' motion for summary judgment, as this would purportedly moot King County's discovery requests.

Plaintiffs then filed their promised motion for partial summary judgment (Dkt. No. 113). In it they seek to prove the following claims:

1. "BNSF only had an easement for railroad purposes on the surface of Plaintiffs' fee ownership by and through the Lake Washington Belt Line deed and the State of Washington condemnation;

2. "Since BNSF only had an easement, and the Port and King County only acquired an easement by and through the Trails Act, the Port, and ultimately King County, do not own the fee in the railroad right-of-way by definition;

3. "Since subsurface and aerial rights are part of fee ownership, and since the Port and King County do not and cannot own the fee in the right-of-way, the Port and King County do not own any interest in the subsurface and aerial rights within the right-of-way;

4. "The applicable Plaintiffs in *Haggart* were paid for their reversionary interest in the right-of-way, in essence their surface rights that the railroad was using, and they have not been paid for their subsurface and aerial rights contained within their fee

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 4

ownership as a matter of law; and

5. "Since the Port and King County don't own the fee in the right-of-way, and didn't acquire the fee ownership in the right-of-way by and through the Trails Act, and since the Plaintiffs' fee ownership in the right-of-way includes subsurface and aerial rights, the easements from the Port to PSE and Sound Transit are null and void, at least so far as they attempt to further burden the Plaintiffs' fee ownership rights in the subsurface and aerial portions of the right-of-way." (Dkt. No. 113 at 8.)

In response, Defendants filed a motion to continue and strike Plaintiffs' motion for partial summary judgment (Dkt. No. 114). Defendants allege that Plaintiffs' motion relies on information that they refused to provide for Defendants in discovery, as well as on the declarations of two previously undisclosed experts, and therefore it should be continued because they lack information necessary to contest it. Defendants also request that the Court strike Plaintiffs' motion for exceeding the 24-page limit under Local Civil Rule 7(e).

With their motion to continue and strike pending, Defendants filed a cross-motion for partial summary judgment, asking the Court to rule "that the preserved railroad easements created by the Lake Washington Belt Line Deed and the State of Washington Condemnation afford the easement holder the exclusive use and possession of the area on, beneath, and above the surface of the rail corridor, for railroad, trail, and, in accord with Washington law, uses incidental to those purposes." (Dkt. No. 124 at 9.)

The Court is now in a position to rule on each of these motions, and does so in turn.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 5

## II.   DISCUSSION

### A.   Cross-Motions For Partial Summary Judgment

The Court will first address the parties' cross motions for partial summary judgment. The Court agrees with Defendants that Plaintiffs' motion for summary judgment relies in part on the *Haggart* appraisals, which they previously refused to disclose. But neither this information nor the declarations of Plaintiffs' previously undisclosed experts is necessary to resolve the discrete issue of the rights included in the easements created by the Lake Washington Belt Line Deed and the State of Washington Condemnation. Therefore, because the Court finds that it is able to resolve the parties' cross motions for summary judgment without requiring any additional briefing, Defendants' motion to stay and strike is rendered moot.[1]

### 1.   Legal Standard

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. If, as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party . . . , [the court] must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  Disputes of fact are "genuine" when "a reasonable jury could return a verdict for the nonmoving party" on that issue. *Anderson v.*

---

[1] The Court chooses not to strike those portions of Plaintiffs' motion for partial summary judgment that exceed the 24-page limit. LCR 7(e)(6). But the Court warns Plaintiffs that if they file an overlong motion again, the Court will not read beyond the page limit and may undertake further action.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 6

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes of fact are "material" if the fact "might affect the outcome of the suit under the governing law."  *Id.*

In resolving summary judgment motions, courts are not at liberty to weigh the evidence, make credibility determinations, or draw inferences from the facts that are adverse to the non-moving party.  As the Supreme Court has held, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment."  *Id.* at 255.

However, to prevent summary judgment, the nonmoving party must make a showing via affidavits, depositions, answers to interrogatories, or admissions of "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**2.  Defendants Admit That the Lake Washington Belt Line Deed and the State of Washington Condemnation Only Granted Easements**

There are multiple conveyances at issue in this case, among them the State of Washington Condemnation (the "Condemnation"), the Lake Washington Belt Line Deed (the "Belt Line Deed"), and the Kittinger Deed. (Dkt. No. 55 at 7 and Dkt. No. 18 at 11.) The Court previously held that there are genuine disputes of material fact as to whether the Kittinger Deed supplied a fee simple or easement to BNSF. (Dkt. No. 91 at 5.) The parties agree that only the Condemnation and the Belt Line Deed are at issue in their cross-motions for summary judgment. (Dkt. No. 113 at 6 n.5 and Dkt. No. 124 at 8 n.5.)

Plaintiffs argue at length that the "first and most pivotal issue in this litigation is whether BNSF held an easement for its railroad purposes or owned a fee simple interest in the right of way." (Dkt. No. 113 at 7.) In fact, Defendants admit that the Belt Line Deed and the

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 7

Condemnation granted easements rather than fees simple. (Dkt. No. 124 at 8 n.1.)[2] They argue, however, that these are more than just surface easements, and further, that Plaintiffs are not entitled to a ruling on summary judgment that they own the underlying fee interest in the corridor. The Court agrees.

### 3.   The Court Has Already Ruled That the Trails Act Preserved the Railroad Easements in the Corridor and Added a Trail Easement

There also appears to be some confusion on a point of law that the Court has already ruled on. Plaintiffs continue to argue that "the Trails Act creates and converts railroad purposes easements to public trail easements out of unused rail corridors" and that "[r]ailbanking preserves the railroad easement for future use and amounts to a non-vested future interest." (Dkt. No. at 23, 25.)

If Plaintiffs are arguing that the Corridor Easements cannot function as railroad easements *until* they are reactivated in the future, and therefore do not *currently* include the rights that such easements would ordinarily possess, then Plaintiffs are mistaken. As the Court held in its ruling on Defendants' previous motion for partial summary judgment, the Trails Act "preserves" the railroad easements in the corridor while adding an *additional* easement for trail use. (Dkt. No. 107 at 10.) This means that the Corridor Easements now include all rights that apply to *both* railroad and trail easements—and these rights may be exercised at present. (*See id.* at 6 ("Congress enacted [the Trails Act] 'to preserve established railroad rights-of-way *for* future reactivation,' not for use '*upon* future reactivation.'") (internal citation omitted).)

---

[2] For the purposes of this Order, the Court will refer to the easements granted by the Belt Line Deed and the Condemnation as the "Corridor Easements."

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 8

### 4.   The Corridor Easements Provide the Exclusive Use, Possession, and Control of the Corridor

It is well established that a railroad easement grants the easement holder "exclusive control of all the land within the lines of its roadway." *Grand Trunk R. Co. v. Richardson*, 91 U.S. 454, 455 (1875). This means that "[w]hile this easement exists, the defendant is entitled to the exclusive use, possession, and control of the land, and the owner of the fee has no right to use, occupy, or interfere with the same in any manner whatever." *N. Pac. Ry. Co. v. Tacoma Junk Co.*, 138 Wash. 1, 6 (1926) (quoting *Roby v. New York Cent. & H.R.R. Co.*, 142 N.Y. 176, 180 (1894)); *see also Hanson Indus., Inc. v. Cnty. of Spokane*, 114 Wash. App. 523, 528 (2002) (A railroad right-of-way "is an easement with the substantiality of a fee and the attributes of a fee, perpetuity and exclusive use and possession").[3] The trail easements created by the Trails Act are just as exclusive as the coexisting railroad easements. *See Illig v. United States*, 58 Fed. Cl. 619, 631 (2003) ("We therefore conclude that the Trails Act imposed a new easement across plaintiffs' properties which retained essentially the same characteristics as the original easement, both in its location and exclusivity."). Therefore, whoever holds the Corridor Easements is granted the exclusive use, possession, and control of the corridor.

### 5.   The Scope of a Railroad Easement Is Determined By The Conveyance in Which It Is Granted and the Surrounding Circumstances

In the opening brief for their motion for partial summary judgment, Plaintiffs argue that

---

[3] Although Plaintiffs dispute the exclusivity of a railroad easement, the primary Washington case they refer to, *Hayward v. Mason*, does not involve a railroad easement and refers to a deed that was specifically non-exclusive in its wording and surrounding circumstances. 54 Wash. 649, 650, 651-52 (1909).

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 9

railroad easements do not include subsurface or aerial rights. (Dkt. No. 113 at 20.) However, in their response to Defendants' cross-motion, Plaintiffs concede that railroad easements *do* include subsurface and aerial rights, but assert that these are limited. (Dkt. No. 131 at 16.) In contrast, Defendants argue that a railroad easement's scope is defined by the language of the conveyance in which it is granted, as well as the surrounding circumstances. The Court agrees with Defendants.

Instead of looking to Washington state authority for their argument that railroad easements have limited subsurface and aerial rights as a matter of law, Plaintiffs primarily rely on *Kansas City S. Ry. Co. v. Arkansas Louisiana Gas Co.* 476 F.2d 829 (10th Cir. 1973). But that case involved federal land grants, which are not present here, and did not apply Washington law. *Id.* at 834-35 (explaining that "Acts of Congress grant[ed] the rights of way").[4] Moreover, it does not support their argument. In *Kansas City S. Ry. Co.*, the Tenth Circuit listed some of the numerous aerial and subsurface activities that a railroad easement necessarily allows its possessor to engage in:

> Of course, a railroad company which acquires a right of way over and through
> lands of another acquires more than the mere right of passage over such lands. It
> acquires the right to excavate drainage ditches; to construct beneath the surface

---

[4] Plaintiffs also cite to several other cases in an attempt to minimize the scope of railroad easements. But each of these relates to *abandoned* easements. *Hanson Indus., Inc. v. Cnty. of Spokane*, 114 Wash. App. 523, 526 (2002); *Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257, 1263 (2014); *Lawson v. State*, 107 Wn.2d 444, 449 (1986). As this Court has already explained, the Corridor Easements were never abandoned. (Dkt. No. 107 at 8.) The Court notes that *Hanson* and *Lawson* are relevant—and are cited in this Order—for various points of law that relate to railroad easements which have not been abandoned.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 10

supports for bridges and other structures; to erect and maintain telegraph lines and

supporting poles with part of the poles beneath the surface; to construct passenger

and freight depots, using portions of the land below them for foundations; to

construct signals; to make fills and cuts to decrease the grades of their rail lines,

and to use material from the land covered by the right of way to make such fills;

and to construct a roadbed and lay its ties and  rails thereon. Hence, it has

*substantial* surface and subsurface rights, which it is entitled to have protected.

*Id.* (emphasis added).

Despite Plaintiffs' arguments to the contrary, Washington courts are clear that the scope

of an easement—including a railroad easement—is determined by "the intention of the parties to

the original grant, the nature and situation of the properties subject to the easement, and the

manner in which the easement has been used and occupied." *Sunnyside Valley Irr. Dist. v.*

*Dickie*, 111 Wash. App. 209, 215 (2002); *Kershaw Sunnyside Ranches, Inc. v. Yakima*

*Interurban Lines Ass'n*, 156 Wash. 2d 253, 272-73, 272 n.15 (2006) (applying this standard to a

railroad easement). Extrinsic evidence, such as the conduct of the parties subsequent to the

conveyance, may be considered in determining the scope of even unambiguous railroad

easements. *Kershaw Sunnyside Ranches*, 156 Wash. 2d at 272 n.15. Where the language of a

conveyance is ambiguous, it is construed against the grantor. *Id.* at 272.

The Court now holds that railroad easements do not merely contain "limited" subsurface

and aerial rights as a matter of law, but rather that their scope is determined by the conveyance in

which they are granted, as well as the surrounding circumstances. Therefore, we must now turn

to the conveyances at issue in this matter.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 11

**6.    The Corridor Easements Provide the Exclusive Right to Use, Possess, and Control the Area On, Above, and Below the Corridor for Railroad and Trail Purposes**

The conveyances granting the Corridor Easements afford broad control over the area within the corridor, including subsurface and aerial rights. The transcription of the Belt Line Deed that Plaintiffs submitted, and which Defendants accept for the purposes of this motion,[5] (Dkt. No. 124 at 28 n.24), provides to the grantee "a right of way…for the construction, operation and maintenance of said railroad company's proposed line of railroad on, over, across and through the following described tracts or parcels of land." (Dkt. No. 113-6 at 1.) The Condemnation is no less expansive: it states that "the said land, real estate and premises…are appropriated for the purposes of a right of way for the railroad…and for all other of its corporate purposes." (Dkt. No. 113-7.)

As should be obvious, the parties to these grants intended them to be used for railroad easements. *Kansas City S. Ry. Co.* makes clear that the construction and operation of a railroad significantly burdens the area above and below the surface of an easement. 476 F.2d at 834-35. Moreover, the undisputed declaration of Stephen M. Sullivan, Defendants' expert and the managing director of a railroad consulting company, supports this logical conclusion. (Dkt. No. 125 at 3-5, 11 (explaining that railroad track is built on layers of subsurface material and that structures may need to be installed above the railroad to monitor and control train movement)). Furthermore, the Belt Line Deed itself acknowledges that the "center line of the proposed

---

[5] Defendants also accept the transcription of the Condemnation for the purposes of this motion. (Dkt. No. 124 at 28 n.24),

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 12

1   railroad" is to be "graded," (Dkt. No. 113-6 at 1), a process that requires significant use of the

2   subsurface. (Dkt. No. 125 at 4-5 (explaining that grading involves leveling and cutting the

3   ground underneath railroads to reduce the gradient that trains traverse)). Nowhere does either

4   conveyance remotely limit the Corridor Easements to surface use only; nor does either provide

5   "limited" subsurface and aerial rights. Instead, it is unambiguous that the grantors of the Belt

6   Line Deed and the Condemnation intended to convey easements with all those rights necessary

7   to operate, construct, and maintain a railroad—including subsurface and aerial rights.

8       The parties' behavior subsequent to the grant also supports Defendants' contention that

9   the Corridor Easements provide subsurface and aerial rights over the corridor. In constructing its

10  railroad, BNSF regraded parts of the corridor, built trestles over water, dug culverts, and built

11  signaling equipment overhead. (Dkt. No. 126 at 2-5.) Plaintiffs have not argued that these actions

12  were ever contested. Plaintiffs do argue that in *Haggart* they were only compensated for the

13  taking of their surface rights, rather than their subsurface or aerial rights. 108 Fed. Cl. at 75. But

14  the Court has already ruled that such a division was never mentioned in that decision. *Iopollo v.*

15  *Port of Seattle*, Case No. C15-0358-JCC, Dkt. No. 56 at 7 (W.D. Wash. 2015).

16      Because the scope of trail easements under the Trails Act is coextensive with railroad

17  easements, *Illig*, 58 Fed. Cl. At 63, the Court now holds that the Corridor Easements provide

18  exclusive subsurface, surface, and aerial rights in the corridor for railroad and trail purposes. But

19  as we explain below, the Corridor Easements are not restricted to only these two uses.

20

21

22

23

24

25

26  ORDER GRANTING DEFENDANTS' MOTION
    FOR PARTIAL SUMMARY JUDGMENT AND
    KING COUNTY'S MOTION TO COMPEL, AND
    MOOTING DEFENDANTS' MOTION TO
    CONTINUE
    PAGE - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### 7.   The Corridor Easements Provide the Exclusive Right to Possess and Control the Area On, Above, and Below the Corridor for Certain Incidental Uses

Defendants also argue that because the Corridor Easements provide for a railroad easement in the corridor, they also include the exclusive right to possess and control the corridor for certain other incidental uses.[6] Although the Court does not now define what these incidental uses include, it agrees with Defendants.

In *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, the Washington Court of Appeals held that a "railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad." 121 Wash. App. 714, 731 (2004) *aff'd in part, rev'd in part*, 156 Wash. 2d 253, 126 P.3d 16 (2006). The Court held that this is so because in Washington "[a] railroad is a public highway, created for public purposes." *Lawson v. State*, 107 Wash. 2d 444, 449 (1986). And in Washington, incidental uses of the public ways "are subordinate to, and permissible only when not inconsistent with, the primary object of the highways." *State ex rel. York v. Bd. of Comm'rs of Walla Walla Cnty.*, 28 Wash. 2d 891, 898 (1947).

---

[6] Plaintiffs argue that Defendants have already conceded this point, but they are mistaken. In defendant King County's response to Plaintiffs' motion for declaratory judgment, it stated: "King County agrees that the 'Lake Washington Belt Line Deed' and the 'Condemnation Deed'…transferred only easement rights to BNSF's predecessor railroad." (Dkt. No. 67 at 16.) And in Sound Transit's opposition to Plaintiffs' motion for declaratory judgment, it stated: "Sound Transit concedes that the Lake Washington Belt Line Co. deed and the State of Washington condemnation conveyed easements for railroad purposes." (Dkt. No. at 7 n.2.) Neither of these statements concedes Defendants' argument that in addition to granting railroad easements, the Corridor Easements *also* provide the right to make certain incidental uses of the corridor consistent with trail use and the operation of a railroad.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 14

The Washington Supreme Court ultimately overturned the holding in *Kershaw* that installing a telecommunications cable was a permissible incidental use. *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wash. 2d 253, 276 (2006). But it did not dispute the incidental use doctrine itself; rather, it was compelled to reach its holding because there was a specific statute on point requiring eminent domain proceedings for the specific use in question. *Id.*

Although the Supreme Court in *Kershaw* did not mention it, in *Neitzel v. Spokane Int'l. Ry. Co.*, the Washington Supreme Court already implicitly approved the incidental use doctrine, holding that a railroad easement will not be abandoned "so long as the use to which the property is put, although a private use, is incidental to the company's business as a transportation company." 80 Wash. 30, 34 (1914). Subsequent to the Supreme Court's holding in *Kershaw*, the Court of Appeals relied on *Neitzel* and *Kershaw* in holding unequivocally that the incidental use doctrine does apply to railroad easements. *Washington Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 132 Wash. App. 188, 200-01 (2006) (affirmatively reiterating the *Kershaw* Court of Appeals holding permitting incidental uses of railroad easements). The Court is obligated to respect this holding unless there is convincing evidence that the Supreme Court would find differently. *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007).

Plaintiffs argue that as in *Kershaw*, there are eminent domain statutes that require the Court to find that the Corridor Easements do not include any incidental uses. The statute in *Kershaw*, Wash. Rev. Code Ann. § 80.36.040, provides that eminent domain must be exercised when constructing telecommunication cables on all rights of way not donated by the United States. Thus, the railroad in *Kershaw* was required to exercise eminent domain before cables

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 15

could be installed on its easement. 156 Wash. 2d at 276. Section 80.36.040 dictated that the railroad easement did not include this incidental use. *Id.*

Plaintiffs offer three statutes in support of their argument, but none leads to the conclusion that eminent domain must *always* be exercised regardless of the incidental use in question. Wash. Rev. Code Ann. § 53.25.190 grants Washington ports the power of eminent domain, but does not specify when eminent domain must be exercised for uses incidental to railroad easements. In fact, it does not even mention railroads. Wash. Rev. Code Ann. § 8.08.010 similarly allows Washington counties to condemn land, but is also similarly nonspecific as to when land must be condemned. Wash. Rev. Code Ann. § 80.32.060 provides corporations with the right to exercise eminent domain "for the purpose of manufacturing or transmitting electric power." Although this is more specific than the previous two statutes, it is just as unhelpful in proving Plaintiffs' argument that the Corridor Easements do not include *any* incidental uses.

Plaintiffs also argue that the Corridor Easements do not provide the *exclusive* right to control the incidental use of the corridor. (Dkt. No. 131 at 13.) But in doing so, they again cite to *Kansas City S. Ry. Co.*, which, as noted, relates to a federal land grant and does not apply Washington law. 476 F.2d 829, 834. In Washington, the owners of public highway easements retain exclusive control over uses incidental to their easements. *Nw. Supermarkets, Inc. v. Crabtree*, 54 Wash. 2d 181, 186 (1959) (holding that once a fee owner had dedicated a street to public use, he "granted to the county the easement rights incidental to the use of the street" and could not separately grant a sewer easement because "there remains no interest in realty that the [fee owner] could convey"). Because railroads are public highways under Washington law,

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 16

*Lawson*, 107 Wash. 2d at 449, it follows that they also retain exclusive control over incidental uses.

The language of the conveyances supports Defendants' argument that the Corridor Easements provide for certain incidental uses. The Condemnation specifically provides that "the said land, real estate and premises…are appropriated for the purposes of a right of way for the railroad of said petitioner, and for all other of its corporate purposes." (Dkt. No. 113-7 at 2.) The addition of "corporate purposes" in the grant is ambiguous, although it indicates that the parties conceived the easement as potentially including uses beyond that of a railroad. In any case, it does not explicitly limit the grant to railroad purposes, and any ambiguities in a conveyance must be construed against the grantor. *Kershaw Sunnyside Ranches*, 156 Wash. 2d at 272. The Belt Line Deed is more specific: the grant is for a "proposed line of railroad." (Dkt. No. 113-7.) But as the Court has explained, Washington law provides that railroad easements also include certain incidental uses. *Washington Sec. & Inv.*, 132 Wash. App. at 200-01. The Belt Line Deed does not explicitly prohibit these uses. Therefore, it is also ambiguous.

Plaintiffs point out that the court in *Haggart v. United States* held that both the Condemnation and the Belt Line Deed granted easements (i.e. the Corridor Easements) for railroad purposes only. 108 Fed. Cl. 70, 80-81 (2012). But this is not binding on the Court, as Plaintiffs concede. (Dkt. No. 55 at 20.) And even if it were binding, it would not be dispositive. Because even though the *Haggart* court held that the Corridor Easements did not originally include trail use, it did not hold that *all* other incidental uses were also excluded. *Haggart v. United States*, 108 Fed. Cl. 70, 81 (2012) ("Under Washington law, recreational trail use is not a

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 17

'railroad purpose.'"). In fact, the *Haggart* court does not appear to have even considered the incidental use doctrine.

Finally, the parties' actions subsequent to the grant also support Defendants' position that the Corridor Easements were intended to cover certain incidental uses. There is undisputed evidence that BNSF provided licenses to third parties for certain incidental uses—e.g. the installation of sewer and stormwater pipelines—in the area within the corridor. (Dkt. No. 77-11 at 4.) Plaintiffs have not argued that any of these incidental uses were contested.

As the Court has explained, the Trails Act creates trail easements whose scope is identical to that of the railroad easements they supplement. *Illig¸* 58 Fed. Cl. at 632. It does not bar incidental uses that are consistent with trail use and the operation of a railroad. The Act's legislative history supports this conclusion. *Rail Abandonments—Use of Rights-of-Way As Trails*, 2 I.C.C.2d 591, 608 (1986) ("In addition, we see no reason why the development of non-trail activities or structures on or around the right-of-way should be restricted, as long as they are consistent with interim trail use, rail banking, and future restoration of rail service.").

Therefore, the Court holds that the Corridor Easements include the exclusive right to possess and control the corridor for certain incidental uses that are consistent with trail use and the operation of a railroad, although we do not now define what these uses are.

### 8.  Plaintiffs' Fourth and Fifth Claims for Partial Summary Judgment

Although the Court denies each of Plaintiffs' claims for partial summary judgment, its fourth and fifth claims merit a brief explanation.

Plaintiffs' fourth claim is that the plaintiffs in *Haggart* were paid only for their surface rights in the corridor, and were not paid for their subsurface and aerial rights. As the Court has

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 18

already explained, "the *Haggart* Court made no mention of a limitation with respect to surface rights as opposed to subsurface or aerial rights." *Iopollo*, Case No. C15-0358-JCC, Dkt. No. 56 at 7.[7]  In any case, whether the *Haggart* plaintiffs were compensated for their subsurface and aerial rights is neither dispositive of nor particularly relevant to the issue at present: whether the Corridor Easements include subsurface and aerial rights. The Court has held that they do.

Plaintiffs' fifth claim is that the Port could not have granted an easement to PSE and Sound Transit because the Port's easement did not include subsurface and aerial rights. As the Court has held, the Corridor Easements—which were the source of the Port's easement—*always have* included subsurface and aerial rights. Therefore the grants cannot be nullified on this basis.

Furthermore, to the extent that Plaintiffs are arguing that the grants are null because they create additional subsurface and aerial burdens to Plaintiffs' alleged fee ownership in the right-of-way, then this argument also fails. The Corridor Easements grant exclusive use, possession, and control of the area on, above, and below the corridor when used for railroad, trail, and certain other incidental purposes. So long as the holder of the Corridor Easements does not put the corridor to uses beyond these, then Plaintiffs have no subsurface or aerial rights that may be burdened.

It is important to note that in Plaintiffs' fourth and fifth claims, and throughout their briefing, they refer to their supposed "fee ownership in the right of way." The Court finds that there are genuine issues of material fact as to which Plaintiffs, if any, actually possess a fee

---

[7] The Court notes that it has been forced to rely on only the text of the *Haggart* ruling itself, because Plaintiffs have thus far refused to disclose important background information relevant to that case. The Court addresses this refusal below in its ruling on King County's motion to compel.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 19

interest in the corridor. (*See* Dkt. No. 124 at 12 n.7 (illustrating various issues of fact regarding Plaintiffs' alleged fee ownership of the corridor)).The Court will not be able resolve these issues until Plaintiffs respond to King County's outstanding discovery requests.

### 9.   Conclusion

In sum, the Court holds that the preserved railroad easements created by the Belt Line Deed and the Condemnation—i.e. the Corridor Easements—afford the easement holder the exclusive use, possession, and control of the area on, beneath, and above the surface of the rail corridor, for railroad, trail, and certain other consistent and incidental purposes.

### B.   King County's Motion to Compel and Motion for Attorney Fees

Defendant King County also seeks to compel Plaintiffs to respond to their discovery requests and interrogatories and to pay the attorney fees for its motion to compel (Dkt. No. 105). King County alleges that Plaintiffs have made frivolous blanket objections to each of King County's requests and interrogatories, and have refused to respond to a single one.

### 1.   Background

On April 6, 2015, defendant King County propounded interrogatories and requests for production on Plaintiffs. (Dkt. No. 106). On April 27, 2015, Plaintiffs served objections to each of King County's interrogatories and requests and provided no substantive response. (*Id.* at 26-41.) Counsel for King County spoke with Plaintiffs telephonically on June 24, 2015 to discuss Plaintiffs' objections. (*Id.* at 1-2.) Plaintiffs refused to alter their position. (*Id.*)

### 2.   Legal Standard

"Litigants 'may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" *Surfvivor Media, Inc. v. Surfvivor Prods.*, 406 F.3d 625, 635

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 20

(9th Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(1)). For the purposes of discovery, "relevant"

information is that which is "reasonably calculated to lead to the discovery of admissible

evidence." *Id.* In discovery disputes, the "party seeking to compel discovery has the burden of

establishing that its request satisfies the relevancy requirements," while "the party opposing

discovery has the burden of showing that discovery should not be allowed, and also has the

burden of clarifying, explaining and supporting its objections with competent evidence." *Nat'l

Union Fire Ins. Co. of Pittsburgh, PA v. Coinstar, Inc.*, 2014 WL 3396124, at *2 (W.D. Wash.

July 10, 2014).

### 3.      King County's Motion to Compel Seeks Relevant Information

King County first argues that its discovery requests seeking "real estate records, purchase

and sale agreements, and other documents relating to Plaintiffs' chain of title" are relevant to its

defense of Plaintiffs' quiet title and declaratory judgment claims. (Dkt. No. 105 at 5.) The Court

agrees. Because Plaintiffs are seeking to quiet title, they "must prevail upon the strength of their

own title, and not upon the weakness of their adversaries'." *Rohrbach v. Sanstrom*, 172 Wash.

405, 406 (1933). In order to quiet title, Plaintiffs must prove that they actually possess a fee

interest in the corridor. *See Johnson v. United States*, 402 F. App'x 298, 300 (9th Cir. 2010)

(holding that plaintiff who "failed to establish that she possesse[d] an interest in the property at

issue….lacked standing to assert a quiet title claim"). Under the centerline presumption—which

Plaintiffs rely on (Dkt. No. 113 at 6 n.1)—if any grantor in Plaintiffs' chain of title intended to

retain rather than convey the corridor, then their claim must fail. *Roeder Co. v. Burlington N.*,

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 21

*Inc.*, 105 Wash. 2d 567, 578-79 (1986).[8] King County is entitled to discover information relevant to determining whether Plaintiffs do in fact possess title to the corridor.

Plaintiffs argue that they need not produce their chain of title information because King County has failed to rebut the centerline presumption. Plaintiffs are incorrect. In order to apply the centerline presumption, it is up to Plaintiffs, not King County, to prove that each plaintiff "received his or her property from the owner of the right of way." *Sammamish Homeowners*, 2015 WL 3561533, at *2. It is not enough for Plaintiffs to merely produce their deeds, because "[a] property owner receives no interest in a railroad right of way simply through ownership of abutting land." *Id.* Furthermore, because the centerline presumption requires that *all* Plaintiffs prove their chain of title back to the original grantor, there is no basis for Plaintiffs' argument that their responses should be limited to only those Plaintiffs whose properties are derived from the Kittinger Deed. *See Roeder Co.*, 105 Wash. 2d at 578 ("Without evidence showing that the owner of abutting property received that property from the fee owner of the right of way property, the railroad presumption is inapplicable.")

King County's requested discovery regarding the boundaries of Plaintiffs' properties (Dkt. No. 105 at 5) is relevant for the same reasons. Since Plaintiffs are relying on the centerline presumption, it is necessary—although not sufficient—for them to demonstrate that their property is in fact "bounded" by the corridor. *Sammamish Homeowners*, 2015 WL 3561533, at

---

[8] The centerline presumption provides that "the conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear." *Sammamish Homeowners v. Cnty. of King*, 2015 WL 3561533, at *2 (W.D. Wash. June 5, 2015).

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 22

*2. King County's requested discovery is directly related to this fundamental issue.

King County's request that Plaintiffs produce information relating to whether their title has been transferred to creditors via bankruptcy or foreclosure (Dkt. No. 105 at 6) is similarly relevant. If Plaintiffs no longer possess title to their property, then they lack standing to file suit. *Johnson*, 402 F. App'x at 300. Furthermore, as King County points out, if any plaintiffs have attempted to conceal their property in bankruptcy proceedings, then they may be judicially estopped from proceeding in this quiet title action. *See Skinner v. Holgate*, 141 Wash. App. 840, 848 (2007). ("Courts will generally apply judicial estoppel to debtors who fail to list a potential legal claim among their assets during the bankruptcy proceedings but then pursue the claim after the bankruptcy discharge."). Plaintiffs' assert, without authority, that real property is not among those assets that must be disclosed to a bankruptcy court. Plainly, this is incorrect. *See Van Allen v. Weber*, 2012 WL 6017690, at *6 n.15 (Wash. App. 2012) ("Bankruptcy debtors must disclose *all* assets, including contingent and unliquidated claims." (internal quotation marks omitted) (emphasis added)).

As the Court has explained, Plaintiffs have also refused to release the appraisals that Plaintiffs' expert performed in *Haggart*, as well as information relating to the value of the taking in that case. (Dkt. No. 105 at 6-7.) Yet Plaintiffs have also repeatedly relied on this background information in their present motion for partial summary judgment. (*See* Dkt. No. 113 at 26-30 (arguing that "'What' was taken in *Haggart* was Only the Plaintiffs' Reversionary Rights on the Surface").) The value of the taking in *Haggart* and the expert appraisals are clearly relevant to Plaintiffs' claims and to King County's defense in this dispute. This is so not only because Plaintiffs have already relied on this information *and* it goes to the value and boundaries of their

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 23

alleged property—both of which are at issue here, but also because King County may argue that Plaintiffs should be estopped from taking contrary positions here and in *Haggart*. Plaintiffs assert that the *Haggart* appraisals and valuation will only become relevant once the Court determines whether the *Haggart* plaintiffs were compensated for a fee simple or an easement. Plaintiffs put the cart before the horse. The Court will not be able to determine the scope of the property interest addressed in *Haggart* until Plaintiffs release the information that King County requests.

King County has also requested that Plaintiffs release their property tax assessments, as well as any boundaries Plaintiffs have asserted in permit applications for "building, grading, and encroachments in the corridor." (Dkt. No. 105 at 9.) Whether Plaintiffs, in their property taxes or permit applications, have claimed to own a fee simple in the corridor or have acknowledged that they do not own the fee is relevant to Plaintiffs' claims and King County's defenses. Plaintiffs argue that fee owners of a railroad easement do not pay property taxes on the easement. But the cases they cite relate only to how a railroad may be taxed. *See, e.g.*, *N. Pac. Ry. Co. v. State*, 84 Wash. 510, 531 (1915) (recognizing that railroad property may be taxed as a whole, with payment apportioned among the counties in which the railroad runs). They do not hold that the owners of a fee burdened by a railroad easement need not include the burdened portion of their fee in property tax assessments.

King County also made various discovery requests to determine "the scope of the interests asserted in Plaintiffs' declaratory judgment claim." (Dkt. No. 105 at 9-10.) Plaintiffs object that these requests call for a legal opinion, but "[t]he Federal Rules expressly direct that '[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact.'" *Campbell v. Washington*, 2009 WL 577599, at

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 24

*3 (W.D. Wash. Mar. 5, 2009) (quoting Fed. R. Civ. P. 33(a)(2)). King County's requested information is relevant because it seeks to define Plaintiffs' exact claims in order to formulate specific defenses.

Finally, Plaintiffs refused to respond to discovery requests asking them to identify third parties with structures in the corridor. (Dkt. No. 105 at 10.) Under Washington law, "[a]ll owners of an interest in property are presumably indispensible parties to an action involving that property." *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 79 Wash. App. 221, 228 (1995). "Failure to join an indispensible party requires the dismissal of an action to quiet title." *Id*. Plaintiffs are attempting to quiet title to the corridor. By definition, parties with an easement in the corridor have an interest in the property at issue. They are therefore indispensible parties. In requesting the identification of these parties, King County sought relevant information.

### 4.    King County's Motion for Attorney Fees

Because the Court has granted King County's motion to compel, it must now address its related request for attorney fees (Dkt. No. 105 at 12).

Under Fed. R. Civ. P. 37(a)(5)(A), the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, the Court should not do so if the party's refusal was "substantially justified." *Id.* at (a)(5)(A)(ii).

Plaintiffs refused to respond a single one of King County's discovery requests, even where the relevance of the information sought was obvious. Even worse, in Plaintiffs' motion for partial summary judgment, they made arguments relying on the very information from the

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 25

*Haggart* case that they had previously refused to produce to King County. Plaintiffs'

nondisclosure does not appear "substantially justified" in the least. Nonetheless, the Court must

give Plaintiffs an opportunity to explain themselves.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment (Dkt. No.

124) is GRANTED, Plaintiffs' motion for partial summary judgment (Dkt. No. 113) is DENIED,

King County's motion to compel (Dkt. No. 105) is GRANTED, and Defendants' motion to

continue and strike (Dkt. No. 114) is MOOTED.

Plaintiffs are ORDERED to respond to each of King County's discovery requests and

interrogatories on or before November 13, 2015.

Plaintiffs are further ORDERED TO SHOW CAUSE as to why they did not respond to

King County's discovery requests and should not be required to pay its attorney fees. Plaintiffs

must file a brief of no more than three (3) pages responding to this Order on or before November

16, 2015.

DATED this 23 day of October 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
KING COUNTY'S MOTION TO COMPEL, AND
MOOTING DEFENDANTS' MOTION TO
CONTINUE
PAGE - 26