THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KASEBURG, et al., | CASE NO. C14-0784 JCC |
| Plaintiffs, | ORDER GRANTING SOUND TRANSIT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| PORT OF SEATTLE, et al., | |
| Defendants. | |

This matter comes before the Court on defendant Central Puget Sound Regional Transit Authority's ("Sound Transit") cross-motion for partial summary judgment on whether construction and operation of light rail is consistent with BNSF's easements (Dkt. No. 119). Having thoroughly considered the parties' briefing, the relevant record, and the oral argument on November 9, 2015, the Court hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

The facts in this case are well established, so we will not belabor them. A few points bear emphasis.

Burlington Northern Santa Fe Railway Company (BNSF) established a right of way/railway corridor (the "corridor") skirting the eastern shores of Lake Washington. By 2008, BNSF no longer used the corridor for freight rail service. (Dkt. No. 36 at 2.) In accordance with

the railbanking process, BNSF entered into a series of agreements with the Port of Seattle and King County to transfer BNSF's interests in the corridor to the Port and to designate King County as the Interim Trail Manager. (Dkt. No. 36 at 6.) The Port then assigned some of the rights it received from BNSF to Sound Transit for the construction of a High Capacity Transit System. (Dkt. No. 83 at 41-44.)[1] Sound Transit intends to use these rights to construct a light rail in the corridor. (Dkt. No. 119 at 1-2.)

Like an ordinary commuter rail, a light rail transports passengers in vehicles running on steel railroad tracks between fixed stations. (Dkt. No. 74 at 5.) Light rails differ from commuter rails in that they run on electricity carried through an overhead catenary system, and their vehicles are usually smaller. (*Id.*) In addition to the catenary system, light rails also require the installation of communication and signaling facilities, which may involve burying conduit underground. (*Id.*)

For the purpose of this motion, Sound Transit makes two claims. First, "that Sound Transit's light rail operations constitute a railroad operation within the scope of the preserved BNSF easements." (Dkt. No. 119 at 1-2.) And second, "that the light rail railroad track and associated facilities can be constructed underground, on the surface, or above the ground, all as dictated by sound railroad engineering practices and operational needs." (*Id.*)

## II. DISCUSSION

### A. Sound Transit Does Not Need to Reactivate Its Railroad Easement

---

[1] The rights assigned to Sound Transit were created by the Lake Washington Belt Line Deed easement and Condemnation Judgment easement, which we have termed the "Corridor Easements." The Corridor Easements are again the easements at issue in this Order.

ORDER GRANTING SOUND TRANSIT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 2

In the Court's previous order, we ruled that the Corridor Easements create railroad easements. (Dkt. No. 138 at 20.) Plaintiffs argue, however, that Sound Transit cannot construct a light rail in the corridor. For the following reasons we find that Plaintiffs' arguments are without merit—in fact, many of them were already disposed of in previous orders, thus we will not address those here.

Plaintiffs initially argue, without providing any authority, that "Congress did not intend to allow third parties or other governmental entities to take advantage of the Act and utilize the rights-of-way for other purposes other [sic] than trail use or reactivation." (Dkt. No. 134 at 7.) By "reactivation," Plaintiffs seem to be referring to reactivation as a freight railroad. In fact, the Surface Transportation Board—the governmental entity responsible for regulating railroads—has ruled conclusively that light rails may be built on railbanked easements that are also used as trails. *The Baltimore & Ohio R.R. Co-Abandonment & Discontinuance of Serv.-In Montgomery Cnty., Md, & the D.C.*, AB-19, 1990 WL 287371, at *2 (DCSS Feb. 22, 1990) (finding that a government-operated light rail was compatible with the trail use of a railbanked easement and the potential restoration of freight rail service); *C.S.X. Transp., Inc.-Abandonment Exemption-In Monroe and Owen Counties, IL*, AB-55 (SUB 514X), 1997 WL 598035, at *1 n.5 (Sept. 19, 1997) ("Nothing in the statute or our regulations precludes a right-of-way from being used for mixed highway (or light rail) and recreational use.") The STB has ruled that railbanked easements may be put to other purposes as well, such as being used as a utility corridor. *Kansas E. R.R., Inc.-Abandonment Exemption-in Butler & Greenwood Counties, KS*, AB-563 (SUB 1X), 2006 WL 1516602, at *3 (June 1, 2006) (allowing a railbanked right of way to be used as a utility corridor).

ORDER GRANTING SOUND TRANSIT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 3

Plaintiffs argue at greater length that Sound Transit cannot construct a light rail in the corridor because it has not, under the procedures established by the STB, reactivated the railbanked easement for use as a railroad. But the STB does not possess jurisdiction over any passenger railroad operated by a "local government authority"—a category that plainly includes Sound Transit, a regional transit authority. 49 U.S.C. § 10501(c)(2)(A); *see also* 49 U.S.C.A. § 5302(10)(A) (defining "local government authority" as "a political subdivision of a State").[2] Therefore, Sound Transit does not need to petition the STB for reactivation. *S. Pac. Transp. Co.-Abandonment Exemption-Los Angeles Cnty., CA*, 9 I.C.C.2d 385, 390 (I.C.C. Feb. 12, 1993) ("We have never asserted jurisdiction over the ability of railroads to allow non-carriers to conduct non-jurisdictional activities, such as rail commuter service, on their excess real estate when regulated rail service will not be affected thereby."). STB's only role in this instance is to ensure that the operation of a passenger railroad does not interfere with the potential reactivation of a freight railroad. *Baltimore & Ohio*, 1990 WL 287371, at *3 (DCSS Feb. 22, 1990) ("While we retain jurisdiction over the right-of-way to ensure that the statutory criteria are met, we have no other regulatory responsibilities over the interim use of the property."). Because Sound Transit's easement contains a clause that explicitly states that its use of the corridor is subject to the reactivation of freight rail service, the STB will not bar Sound Transit from constructing a light rail. (*See* Dkt. 83-12 at 8 ("Sound Transit…may be required to, and will if so required,

---

[2] This is why Plaintiffs' argument that Sound Transit is not a bona fide railroad under the STB is irrelevant. Sound Transit is not a railroad for the purposes of the STB because it is a local government authority operating a passenger railroad. But this is precisely why Sound Transit *can* construct a light rail in the corridor: because it is constructing a passenger railroad, it does not need to petition the STB for reactivation. *See* 49 U.S.C. § 10901(a) (requiring STB authorization when constructing railroads).

ORDER GRANTING SOUND TRANSIT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 4

make available some or all of [its] respective interests in the Property to accommodate reactivated freight rail service.")

Because the STB does not have jurisdiction over Sound Transit's planned light rail, the only question is whether Sound Transit's easement permits its construction. In order to determine the scope of Sound Transit's easement, we next turn to Washington law.

**B.     Sound Transit's Easement Permits the Construction of a Light Rail**

We have already ruled that the Corridor Easements enable the easement holder to use the area on, above, and below the surface of the easement for railroad, trail, and other incidental purposes. (Dkt. No. 138 at 18.) We have also held that, under Washington law, the scope of an easement is determined by "the intention of the parties to the original grant, the nature and situation of the properties subject to the easement, and the manner in which the easement has been used and occupied." *Sunnyside Valley Irr. Dist. v. Dickie*, 111 Wash. App. 209, 215 (2002).

Sound Transit wishes to construct a passenger light rail, and there is no indication that either of the Corridor Easements excludes this use. Neither of the conveyances granting the Corridor Easements limits its scope specifically to freight railroads. (Dkt. Nos. 113-6 at 1 and 113-7 at 1-2.) Washington caselaw is conclusive that a "railroad" can mean either a passenger or freight railroad. *See Zobrist v. Culp*, 95 Wash.2d 556, 561 (1981) ("[W]hen a railroad is 'operating,' it is furnishing transportation, either freight or passenger, to the public."). Therefore, if the grantor of either easement intended to limit its scope to freight railroads, this limitation needed to be explicit. *See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 156 Wash. 2d 253, 272 n.15 (2006) (holding that where the language of a conveyance is

ambiguous, it is construed against the grantor). We thus construe the Corridor Easements against their grantors and find that, as a matter of law, they do include passenger railroads.[3]

Next we must determine whether Sound Transit's proposed light rail is a railroad encompassed by the Corridor Easements. The proposed light rail fits with the caselaw definition of a railroad: it transports passengers along a steel track to fixed destinations. *See Zobrist*, 95 Wash.2d at 561 ("[A railroad's] operating property is devoted to the public service of transportation over lines and terminals having a fixed location."). Although the light rail will run via an electric-powered catenary system, the Corridor Easements do not explicitly cover only certain kinds of railroads, for example those that run on diesel. (Dkt. Nos. 113-6 at 1 and 113-7 at 1-2.) Plaintiffs have also admitted that electric-powered locomotives are within the scope of the Corridor Easements. (Dkt. No. 120-5 at 3.) This concession was limited to freight railroads, but as we have already explained, the Corridor Easements themselves include passenger rails. Therefore, if Plaintiffs concede that electric-powered freight railroads are included in the Corridor Easements, there is no logical reason why this concession should not extend to electric-powered passenger railroads as well.

Finally, the *Haggart* court itself specifically contemplated the future existence of a passenger light rail when it calculated the amount of Plaintiffs' taking. *Haggart v. United States*, 108 Fed. Cl. 70, 96 (2012) ("The "after" is uncontested: after the NITU issued, qualifying plaintiffs had property burdened by a general easement permitting recreational trail use with the potential for future railway use by way of rail-banking or possible future development of a

---

[3] As Sound Transit points out, BNSF actually operated a passenger railroad in the corridor. (Dkt. No. 119 at 15-16.) This also indicates that the Corridor Easements encompass passenger railroads. *See Kershaw Sunnyside Ranches*, 156 Wash. 2d at 272 n.15 (holding that the conduct of the parties subsequent to a grant may be considered in determining its scope).

ORDER GRANTING SOUND TRANSIT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 6

commuter rail line."). Plaintiffs' expert, John Kilpatrick, confirmed that Plaintiffs were already compensated for this use in his declaration accompanying Plaintiffs' opposition to King County and the Port's joint cross-motion for summary judgment. (Dkt. No. 131-4 at 6) ("In the 'after' condition, Plaintiffs' parcels will be valued subject to the present encumbrance—an easement for recreational trail use subject to possible reactivation as a railroad, including light rail."). Therefore, Plaintiffs have effectively conceded that a passenger light rail is covered by the Corridor Easements, and cannot argue otherwise.

Thus the Court finds that, as a matter of law, Sound Transit's planned light rail is within the scope of the preserved BNSF easements, and may be constructed on, above, and below ground consistent with its purpose as a railroad.

## III. CONCLUSION

For the foregoing reasons, defendant Sound Transit's motion for summary judgment (Dkt. No. 119) is GRANTED.

DATED this ___ day of November 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER GRANTING SOUND TRANSIT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT
PAGE - 7