THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT AND KATHRYN KASEBURG, ET AL, <br><br> Plaintiffs, <br><br> vs. <br><br> PORT OF SEATTLE, a municipal corporation; PUGET SOUND ENERGY, INC., a Washington for profit corporation, KING COUNTY, a home rule charter county, and CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a municipal corporation, <br><br> Defendants. | NO. 2:14-CV-000784-JCC <br><br> PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT <br><br> NOTE ON MOTION CALENDAR: December 4, 2015 |

## I.   INTRODUCTION

Puget Sound Energy, Inc. ("PSE") asserts that it has valid rights in this former railroad corridor[1] because the Port of Seattle quit claimed their rights to them—the Port only acquired rights to build a recreational trail pursuant to the National Trail Systems Act ("Trails Act") and cannot transfer rights it did not own. PSE also asserts that it has valid rights that are "incidental" to railroad purposes and asks this Court to now define incidental uses—incidental uses are those uses that do not interfere with railroad use AND further the railroad's business. PSE simply has

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 1

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

no utility rights in the corridor because such rights were not quit claimed from the Port and utility rights are not incidental to a railroad purposes easement in any event.[2]

Under the Trails Act, because federal law preempts state law, there is not a current railroad easement burdening the land but, rather, the line is railbanked for a future railroad easement—the railroad easement is preserved for FUTURE use under the Trails Act.[3] There are no uses that could possibly further the railroad's business because there is no current railroad with an interest in this railbanked corridor. The Surface and Transportation Board ("STB") has jurisdiction over the line and authorized the former railroad easement to be converted to a trail with the potential reactivation of a railroad—with any reactivation of the railroad purposes easement having to be authorized by the STB.

PSE attempts to assert that the Port had the right to transfer utility rights to PSE, acting as if they were the fee owner, such that PSE has the right to use the corridor because the corridor is railbanked. It does not. Then, PSE asserts that they have utility rights in the corridor because the railroad purposes easement exists and their utility rights are incidental uses, which they are not. PSE's assertion that title should be quieted in PSE's favor as a matter of law must fail.

Plaintiffs' response to PSE's motion for summary judgment will address two primary issues, as follows:

---

[1] It appears that PSE wants a blanket affirmation that any and all utility rights, whether subsurface or aerial, and whether buried lines or massive overhead transmission poles and lines, are permissible incidental uses.

[2] If PSE is correct in its assertion that the placement and maintenance of electric and gas utilities within the corridor is incidental to a railroad easement, then trail use would also be an incidental use, and there could be no taking under the Trails Act.

[3] Plaintiffs understand that this Court has previously held that the railroad easement was preserved and currently burdens the land. However, Plaintiffs continue to dispute this Court's legal holding and continue to maintain that the railroad easement was preserved for future use only because railbanking maintains federal jurisdiction over the line and assures that the line is maintained for any potential FUTURE railroad reactivation, and Plaintiffs must preserve this issue for appellate review at the appropriate time.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 2

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1. The Trails Act converts railroad purposes easements to trail/railbanked easements—PSE's argument that their utility uses are consistent with a current railroad purposes easement that was "preserved by the Trails Act or the recreational trail use added by railbanking"[4] is legally wrong and, in reality, is an argument that railbanking is a railroad purpose, which legally fails under binding precedent; and

2. Even if a railroad purposes easement currently exists, PSE's purported uses are not incidental to the railroad's business.

## II. THE TRAILS ACT CONVERTS RAILROAD PURPOSES EASEMENTS TO TRAIL/RAILBANKED EASEMENTS

### A. The Trails Act Authorizes Recreational Trails and Railbanks the Former Railroad Corridor

What is the Trails Act and what was its purpose?  The purpose of the Trails Act was to first and foremost encourage and promote recreational trails by allowing the preservation of railroad rights-of-ways for <u>future</u> use and allow federal jurisdiction to remain over those former rights-of way by preventing the land from reverting to the adjacent landowners.  Congress recognized that the establishment of railroads in this country was a very significant part of our history and was therefore aware of the significant impact railroads had on our country and its growth.  In order to preserve this National treasure, Congress recognized that:

> …trails provide for the ever-increasing outdoor recreation needs of an expanding population and in order to promote the preservation of, public access to, travel within, and enjoyment and appreciation of the open-air, outdoor areas and historic resources of the Nation, trails should be established.  Preserving the national treasure of railroad rights-of-way while promoting outdoor recreation was accomplished by allowing interim use of railroad rights-of-way as recreational trails.

16 U.S.C. 1241(2)(a).  "This Act may be cited as the 'National Trails System Act'."  16 U.S.C.

---

[4] *See* PSE's Motion for Summary Judgment, Doc. 114, at p. 1.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 3

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

1241(1). The entire purpose of the Act was to encourage and establish hiking and biking trails by utilizing would-be abandoned rights-of-way, that were actually abandoned by the railroad under the Trails Act, and then had abandonment blocked by the Trails Act in order to utilize the right-of-way for hiking and biking trails.

Specifically, the Act authorized three types of trails: the National Scenic Trails, National Recreation Trails, and connecting-and-side trails. *Id*. The Act is quite comprehensive and a complete reading of the Act provides the evidence that the Act and its sole purpose was to narrowly authorize and promote recreational trails. The Act is specific and provides for trails and nothing more. This was the sole purpose of Congress—to prevent the loss of this national treasure by preserving rights-of-way for potential future use and promoting trails—period.

However, because issues existed relating to the reversion of rights-of-way to the adjoining landowners prior to consummating the establishment of trails, and in order to prevent reversion and allow trail users time to negotiate with railroads, Congress enacted section 1247(d). 16 U.S.C. 1247(d). In 1983, concerned by the rapid contraction of America's rail network, Congress amended the National Trails System Act to create the railbanking program. Railbanking is a method by which lines proposed for abandonment can be preserved through interim conversion to trail use:

> The Secretary of Transportation, the Chairman of the Interstate Commerce Commission, and the Secretary of the Interior, in administering the Railroad Revitalization and Regulatory Reform Act of 1976, shall encourage State and local agencies and private interests to establish appropriate trails using the provisions of such programs. Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 4

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

> otherwise **in a manner consistent with the National Trails System Act**, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Commission shall impose such terms and conditions as a requirement of any transfer or conveyance **for interim use in a manner consistent with this Act**, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

*Id.*

Even though the Act only specifies recreational trails, the Defendants attempt to interject other uses for railbanked rights-of-way which violate all rules of statutory construction. As provided by the Rehnquist Court's Canons of Statutory Construction, the plain meaning of the ordinary statutory text should be followed—here, allowing would-be abandoned railroad rights-of-way to be used as recreational trails while railbanking the corridor. Moreover, the canon of Expressio unius provides that the expression of one thing suggests the exclusion of others—here, use as a recreational trail excludes uses other than trail use. *See* http://www.ncsl.org/documents/lsss/2013PDS/Rehnquist_Court_Canons_citations.pdf (last visited 9/29/2015). Congress did not intend to allow third parties or governmental entities to abuse the Trails Act in order to utilize the rights-of-way for other purposes other than reactivation or trail use. If Congress intended any other type of use, it would have expressly stated so. It did not. Congress was very specific in the language of the Trails Act and authorized trails upon would-be abandoned railroad rights-of-ways and nothing more.

Moreover, Congress expressly stated that if the railroad was to be reactivated, then the interim trail use would be revoked. Interim trail use and invocation of the railbanking provision

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 5

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

to reactivate the railroad are mutually exclusive. *See* Report to the Honorable Sam Brownback, Surface Transportation, Issues Related to Preserving Inactive Rail Lines as Trails, attached as Exhibit A (noting that "if the rail carrier that banked a right-of-way wants to return it to rail service, the carrier has to notify the Board; the abandonment proceeding is then reopened, and the trail use authority is revoked").

The STB views its rule as a ministerial role. Once the STB issues a NITU, it does not regulate any activities on the railbanked corridor — it merely maintains jurisdiction for potential reactivation by a railroad. Since abandonment is blocked, the adjacent landowners don't get their land back, but the fact that a trail operator can use the right-of-way for a recreational trail on an interim basis does not mean that anyone can continue to trample on the adjacent landowners' land by currently using the right-of-way in any fashion they want by claiming uses incidental to a current railroad purposes easement that no longer exists.

A railbanked easement, as a matter of law, is a preservation of the railroad purposes easement for potential future reactivation, not the current right to use a railroad purposes easement. In fact, in order for any entity, Defendant or not, to invoke the use of the railbanked corridor, it must comply with the reactivation requirements of the STB. *See* GNP Rly, Inc., FD 35407, Decision dated June 15, 2011, attached as Exhibit B (denying GNP Railway's request to reactivate the banked right-of-way that is also involved in this case). As stated by the STB, King County, who holds the reactivation rights, could request that the NITUs be vacated to permit reactivation for continued rail service in the future. It is clear under the Trails Act, as well as the STB's own decisions, that the corridor is either a railroad running trains or a recreational trail— one or the other—period.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 6

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

**B. Railbanking does not preserve the railroad purposes easement under the Trails Act for current railroad purposes because railbanking is not a railroad purpose**

PSE argues that the Trails Act preserves the railroad easement and merely "adds" the recreational trail to it.  That is legally incorrect.  Railbanking maintains federal jurisdiction over the line and preserves a potential future railroad purposes easement upon reactivation.  PSE argues that because BNSF previously held a railroad purposes easement, and because the right-of-way is now railbanked, they can use the right-of-way in any manner that is incidental to railroad activities.  PSE cannot, however, because railbanking preserves the right-of-way for possible reactivation in the future and railbanking is not a current railroad purpose.  In the railbanking process, the federal government maintains jurisdiction over the right-of-way and a railroad must petition the STB for reactivation of the railroad.  Under the Trails Act, the trail user cannot use the recreational trail easement for railroad purposes or any other purposes other than as a recreational hiking and biking trail.[5]

Courts have always declined to find that railbanking is a current railroad purpose.  *See, e.g.*, *Preseault II*, 100 F.3d at 1554 (Rader, J., concurring) (rejecting the railbanking argument as a "vague notion," incapable of overriding the present use of the property as a recreational trail); *Longnecker v. United States*, 105 Fed.Cl. 393 (Fed. Cl. 2012) (involving Washington state property laws); *Capreal, Inc. v. United States*, 99 Fed. Cl. 133, 146 (Fed. Cl. 2011)

---

[5] Although King County holds the "residual common carrier rights and obligations," King County cannot reactivate rail service alone because King County is not a "railroad" or "rail carrier" and does not comply with the requirements of a railroad subject to the jurisdiction of the STB—and the STB has jurisdiction over any reactivation of the railbanked corridor.  *See* 49 U.S.C. § 10102 (defining "rail carrier" as "a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation."); *see also*, 45 U.S,C. § 151 (defining rail carrier)..

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 7

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

(interpreting Massachusetts law in which the court stated, "that railbanking is too hypothetical and unlikely to serve as a railroad purpose"); *Nordhus Family Trust v. United States*, 98 Fed. Cl. 331, 339 (Fed. Cl. 2011) (interpreting Kansas law, the court stated, "[i]n the present case, there is no evidence of any plan to reactivate rail service and railbanking is simply a speculative assertion by Defendant that some resumed rail service could occur in the future.  The transfer of the easement to entities completely unconnected with rail service, and the removal of all rail tracks on the corridor, lead the Court to conclude that any future rail use simply is unrealistic"); *Rogers v. United States*, 90 Fed. Cl. 418, 432 (Fed. Cl. 2009) (interpreting Florida law and indicating, "[h]ere, as in *Preseault II*, the use of the right-of-way as a public trail while preserving the right-of-way for future railroad activity was not something contemplated by the original parties to the Honore conveyance back in 1910").  As a result of overwhelming authority from numerous judges and Courts who have interpreted the Trails Act, the potential future reactivation of the railroad under the railbanking provision of the Trails Act is not a current railroad purpose.

As a threshold matter, it is imperative to note that if railbanking under the Trails Act was a current railroad purpose that allowed current incidental uses there would not be any Trails Act takings cases because the reversionary interest, which is the right to have land back unencumbered by a railroad purposes easement, would **never vest** because the railroad purposes easement did not extinguish or expire upon issuance of a NITU under the Trails Act.  The railroad purposes easement is instead converted to a new "railbanked" easement/trail easement that replaces the former railroad purposes easement.  That result is required because railbanking is not a railroad purpose.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 8

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

PSE simply does not have any current rights in a railroad purposes easement under the Trails Act. Rather, the Port and King County acquired a recreational trail/railbanked easement pursuant to their acquisition of the right-of-way under the Trails Act. The Washington Supreme Court decision in *Lawson v. State*, which was completely analyzed and basically adopted by the Federal Circuit in *Preseault v. United States*, 100 F.3d 1525, 1543, 1550 (Fed. Cir. 1996), totally eviscerates PSE's argument that they are entitled to use the right-of-way for their incidental purposes. In *Lawson*, the Court held that:

> We first address the issues raised in light of common law principles. Defendants argue that under Washington law a railroad is a perpetual public easement. They contend that a railroad right of way easement does not terminate upon a change from one transportation use to another transportation or recreation use, or any other consistent public use. We disagree. It is true railroad companies were created on the theory that they will provide a public benefit. Pursuant to statute, the State has conferred upon them special and extraordinary privileges. In return, the railroads must hold their property in trust for the public use. *Puget Sound Elec. Ry. v. Railroad Comm'n,* 65 Wash. 75, 83-84, 117 P. 739 (1911). A railroad is a public highway, created for public purposes. *Puget Sound Elec. Ry.,* at 84. But these considerations do not necessarily lead to the conclusion that a railroad right of way is a perpetual public easement. To the contrary, this court has frequently recognized that railroad rights of way revert to reversionary interest holders when a railroad company abandons a line. *See, e.g., Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 716 P.2d 855 (1986); *Zobrist v. Culp,* 95 Wn.2d 556, 627 P.2d 1308 (1981); *Morsbach v. Thurston Cy.,* 152 Wash. 562, 278 P. 686 (1929). These cases demonstrate that, under Washington law, when an easement is granted to a railroad through a private conveyance, the easement is not a "perpetual public easement." Instead, the particular deeds conveying the right of way must be interpreted to determine the scope and duration of the easement granted. *See Swan v. O'Leary,* 37 Wn.2d 533, 225 P.2d 199 (1950). This is true even though, as this court has observed, a railroad easement has a peculiar nature as "a very substantial thing… more than a mere right of passage… more than an easement." *Morsbach v. Thurston Cy., supra* at 569.
>
> Plaintiffs have alleged that the grantors conveyed easements for railroad purposes only… Although specifically interpreting the deed involved in that case, our decision in *Zobrist* provides guidance here; clearly, a hiking and biking trail is not encompassed within a grant of an easement for railroad purposes only. In the

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 9

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

> words of the Wisconsin State Supreme Court, '[t]o hold that the conversion from a public transportation system to a recreational system still reflected the purpose of the original easement would, in our view, stretch the principle of *Faus* beyond reasonable limits.' *Pollnow v. Department of Natural Resources,* 88 Wis. 2d 350, 366-67, 276 N.W.2d 738 (1979) (construing common law). *Pollnow* and other decisions from other jurisdictions support our conclusion that a change in use of a railroad right of way to a recreation trail or nature trail is a change of use evidencing abandonment of the right of way. *See, e.g., Schnabel v. County of Du Page, supra*. In *Schnabel,* the court found that one factor indicating the railroad's abandonment of its right of way was its attempt to convey the right of way to the County for the purpose of establishing a prairie path or nature trail. Significantly, the court stated that no express language of reversion in the grant was required for the reversionary interest holders to regain use of the right of way upon abandonment of the railroad. *Schnabel,* at 559. The court said that the easement expired by its own limitation upon abandonment. *Schnabel*. This view accords with our decision in *Morsbach v. Thurston Cy., supra* (reversion despite absence of express reversionary clause in grant).

*Lawson,* 730 P.2d at 1312-13.

First, King County and the Port, as the "trail users" under the Trails Act (the manner they acquired their interest formerly held by BNSF), are authorized to use the land as a trail and trail use is a change in use under *Lawson*. Second, because trail use causes termination of a railroad purposes easement under state law pursuant to *Lawson*,[6] then the **only way** the railroad purposes easement currently exists is **if railbanking is a railroad purpose**. The United States Supreme Court and every other court to examine the issue has rejected that argument. Although this Court held that railbanking preserved the railroad purposes easement, the easement is NOT a current railroad purposes easement currently available or used for railroad purposes, but rather has been preserved for future *potential* use. Every court addressing the issue has ruled that railbanking is NOT a railroad purpose. A current active railroad purposes easement must currently be used (by

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 10

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

a railroad) in order to allow uses that are incidental, which actually means uses that benefit and serve the railroad.

### III. EVEN IF A RAILROAD PURPOSES EASEMENT CURRENTLY EXISTS, PSE'S PURPORTED USES ARE NOT INCIDENTAL TO THE RAILROAD'S BUSINESS

PSE also asserts that not only is the railroad easement currently burdening the land, but that it is not limited to the construction and operation of a railroad, but rather, the easement also includes "incidental activities."  As noted in PSE's motion for summary judgment, incidental uses are not just those activities that are "not inconsistent and do not interfere with the operation of the railroad," but also must "further the railroad's business as a transportation company." *See Neitzel v. Spokand Int'l Ry Co.*, 141 P.186, 188 (Wa. 1914).  Even if the railroad purposes easement were to currently exist, the incidental use doctrine does not apply to PSE because PSE's potential uses are not incidental to a railroad purpose and do not further the railroad's business.  As a result, PSE has no right to use the former railroad corridor.

PSE cites to *Neitzel* and *Kershaw* to support its allegation of incidental uses.  The Defendant cites to *Neitzel v. Spokane International Ry. Co*., 141 P. 186 (Wash. 1914) as support for its apparent lack of abandonment argument to assert the current existence of the current railroad purposes easement argument.  However, *Neitzel* provides no support whatsoever for the Defendant's conclusion.  *Neitzel* involved a case where the railroad was still operating and <u>leased</u> lots in exchange for the lessee company's agreement to construct a two-story building and route

---

[6] It is Plaintiffs' position that change to a trail use also causes termination of the current railroad purposes easement under federal law and that railbanking is a new easement for the preservation of the potential and future reactivation of a railroad.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 11

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

all its business over the railway company's road (obviously benefiting the railroad)—and the railroad company anticipated that it would in the "near future" need and expect to devote the grounds for terminal use and use the new buildings as more superior freight houses.  Not only was the railroad still active and running trains over the land next to the lots, the court held that the use was concurrent with and did not exclude the railroad's occupation, and was consistent with railroad purposes **and furthered the railroad's business**. *Neitzel*, 141 P. 186.  Although this Court has held that uses that do not interfere and are not inconsistent with railroad activities are incidental uses, in order to be a valid incidental use, such use must also benefit the railroad and further the railroad's business as was held in *Neitzel*.

PSE also cites to an appellate ruling in *Kershaw Sunnyside Ranches Inc. v. Yakima Interurban Lines Ass'n*, 91 P.3d 104.116 (Wash. 2004) as support for their assertion that the incidental use doctrine applies to railroad rights-of-way, just as it does to public highways.  The *Kershaw* appellate opinion was overturned by the Washington Supreme Court—a fact that the Defendants continue to ignore or try to work around.  PSE cites to the *Kershaw* appellate opinion to state that a railroad easement allows incidental uses.  The *Kershaw* cases involve the laying of fiber optic cables and the Kershaws sued the communication company for trespass.  The communications company argued that no trespass occurred because the railroad had authorization to allow fiber optic cable in the subsurface of Kershaw's land under the incidental use doctrine.  The **trial court** rejected the communication companies' argument. *Kershaw*, 2003 WL 25275291.[7]  The trial court correctly held that:

---

[7] Counsel for Plaintiffs in this case also represented Robert Kershaw in a Trails Act takings case and have personal knowledge of Mr. Kershaw and the Kershaw properties and lawsuits.  *See Blair v. United States*, Case no. 09-528 (Fed. Cl. 2014).

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 12

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

incidental uses **are measured** by what is **reasonably necessary** for the **building, operation and maintenance of the railroad** and where the fiber optic cable will be used substantially to service other members of the public and **where the railroad is not significantly dependent on the fiber optic cable for its primary means of communication, the cable is not an "incidental use" of the railroad**.

*Id*.

The Washington Supreme Court case of *Kershaw Sunnyside Ranches Inc. v. Yakima Interurban Lines Ass'n*, 126 P.3d 16 (Wash. 2006) addressed both the trial court decision and the appellate court's decision on incidental uses:

> The trial court rejected Level 3's contention that the **fiber optic lines were an incidental use. Centering its analysis on whether the "incidental use" is reasonably necessary to the operation of the railroad, and finding that "[i]ncidental rights should be limited to facilitating construction, maintenance and operation of the railroad,"** the trial court determined that the buried fiber optic line here is not an incidental use. *Id.* at 974. It thus concluded that Level 3's line constituted a trespass. *Id.* at 19, 974. <u>The Court of Appeals found no trespass and rejected the trial court's strict reliance on the relationship between the alleged incidental use and railroad operations. Rather, it held that the incidental use doctrine applies so long as "the *use* is 'not… inconsistent with the public *use* to which the highways are dedicated,'"</u>

\* \* \* \* \*

> It establishes that when the railroad has acquired rights to a certain right of way through a government grant, a telecommunications company "shall have the right to construct and maintain all necessary telecommunications lines" along or across that railroad right of way. *Id.* <u>However, if the railroad did not acquire the particular right of way via a government grant, i.e., a private party conveyed the right of way to the railroad by deed, then the "right to construct and maintain such lines *shall* be secured *only* by the exercise of right of eminent domain, as provided by law."</u>

\* \* \* \* \*

> Based on statutes governing this exact circumstance, giving effect to *article, XII, section 19 of the Washington Constitution*, <u>we reverse the Court of Appeals on this issue.  The unambiguous language of *RCW 80.36.040* requires an eminent domain proceeding in this context.  Therefore, we affirm the trial court's conclusion that,</u>

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 13

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

<u>absent an eminent domain action, Level 3's placement of the fiber optic cable within the right of way constituted a trespass.</u>

*Kershaw*, 126 P.3d at 27-29 (various citations omitted) (emphasis added).

Thus, even though the trial court concluded that incidental uses had to be related to the railroad's business and the appellate court merely said incidental uses were proper if they did not interfere with the operation of the railroad, the Supreme Court of Washington basically ducked the issue. Plaintiffs do not have any dispute with the concept of incidental uses if the railroad purposes easement currently exists, but do dispute the scope of what incidental uses are appropriate. As this Court pointed out, citing *Neitzel,* "the Washington Supreme Court already implicitly approved the incidental use doctrine, holding that a railroad easement will not be abandoned 'so long as the use to which the property is put, although a private use, is incidental to the company's business as a transportation company.'"[8] The purported incidental uses by PSE are not incidental to the railroad purposes easement, even if it exists, because they do not support the railroad's business in any fashion and, if allowed to place large overhead lines within the right-of-way, are actually inconsistent with the railroad's right-of-way too.

Similarly, if the railroad purposes easement currently exists, Plaintiffs do not dispute that the scope of the railroad's easement is determined by "the intention of the parties to the original grant, the nature and situation of the properties subject to the easement, and the manner in which the easement has been used and occupied."[9] But, here, based on the clear wording of the original grants at issue and the Court's opinion, "as should be obvious, the parties to these grants

---

[8] Court Order, D.E. 138, at p. 15.
[9] *Id.* at p. 11.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 14

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington 98005-2440
Tel. (425)455-1110  Fax (425)455-1626

intended them to be used for railroad easements."[10]  Because the source conveyances at issue are for the construction, operation and maintenance of the railroad, which are for railroad purposes only, PSE's uses are not incidental to railroad purposes in any event.

Thus, in *Kershaw*, the Supreme Court of Washington held that the original deed conveyed only an easement interest in the right-of-way and that the placement of the fiber optic transmission line through the right-of-way was a trespass, in other words using subsurface rights, and required an eminent domain proceeding under statutes governing telecommunications companies.  The Defendants attempt to avoid the holding by asserting that the statute pertaining to telecommunications was unique.  Not so.  Although *Kershaw* addressed a specific statute relating to telecommunications **and the power of eminent domain**, similar statutes relating to eminent domain exist and are applicable for each Defendant in this case such that Defendants are liable for a trespass just as the telecommunications company was in *Kershaw*.  *See* Rev. Code Wash. 80.32.060 (Puget Sound Energy).  That is the exact situation present in this case.

Finally, PSE's citation to the STB and its decisions are a red herring.  The STB does not watch over or investigate what uses occur on the corridor and its role is ministerial.  The STB only determines whether a trail user is qualified under the Trails Act—period.  The STB cannot authorize any use except a trail if the trail user agrees to railbanking and has no jurisdiction to authorize any other use besides trail/railbanking.  Only a court can determine what uses are legal uses under the Trails Act.

---

[10] *Id.* at p. 12.

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 15

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## IV. CONCLUSION

PSE's purported claim to be able to use the railroad corridor in any fashion they wish should be rejected. PSE did not acquire any valid rights in the corridor because it is not the trail user and only the trail user acquired the right to construct a trail. Further, even if the railroad purposes easement currently exists, PSE's purported uses are not incidental to the railroad's easement.

As a result, PSE's motion for summary judgment should be denied.

Date: November 30, 2015.                    STEWART, WALD & MCCULLEY, LLC

By */s/ Thomas S. Stewart*
Thomas S. Stewart
Elizabeth Gepford McCulley
Michael J. Smith
9200 Ward Parkway, Suite 550
Kansas City, MO 64114
Telephone: (816) 303-1500
Facsimile: (816) 527-8068
stewart@swm.legal
mcculley@swm.legal
smith@swm.legal

AND

RODGERS DEUTSCH & TURNER, P.L.L.C.
Daryl A. Deutsch, WSBA No. 11003
Rodgers Deutsch & Turner, P.L.L.C.
3 Lake Bellevue Dr. Suite 100
Bellevue, WA  98005
Telephone: (425) 455-1110
Facsimile: (425) 455-1626
daryl@rdtlaw.com
**ATTORNEYS FOR PLAINTIFFS**

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 16

RODGERS DEUTSCH & TURNER, P.L.L.C.
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by the operation of the Court's electronic filing system upon all parties of record.

Timothy G. Leyh
Randall Thomsen
Kristin Ballinger
CALFO, HARRIGAN, LEYH & EAKES, LLP
timl@calfoharrigan.com
randallt@calfoharrigan.com
kristinb@calfoharrigan.com
*Attorneys for Defendant Port of Seattle*

Gavin W. Skok
Bryan J. Case
Courtney L. Seim
James E. Breitenbucher
RIDDELL WILLIAMS PS
gskok@riddellwilliams.com
bcase@riddellwilliams.com
cseim@riddellwilliams.com
jbreitenbucher@riddelwilliams.com
*Attorneys for Defendant Puget Sound Energy*

Andrew W Marcuse
David J. Hackett
King County Prosecuting Attorney, Civil Division
andrew.marcuse@kingcounty.gov
david.hackett@kingcounty.gov
*Attorneys for Defendant King County*

Desmond L. Brown
Loren Armstrong
desmond.brown@soundtransit.org
lore.armstrong@soundtransit.org.
*Attorneys for Central Puget Sound Regional Transit Authority*

                                                              /s/ *Thomas S. Stewart*

PLAINTIFFS' RESPONSE TO PUGET SOUND ENERGY, INC'S MOTION FOR SUMMARY JUDGMENT— No. 2:14-cv-000784-JCC - Page 17

**RODGERS DEUTSCH & TURNER, P.L.L.C.**
Attorneys At Law
Three Lakes Bellevue Dr., Suite 100
Bellevue, Washington  98005-2440
Tel. (425)455-1110  Fax (425)455-1626