THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT KASEBURG, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PORT OF SEATTLE, et al.,<br><br>    Defendants. | CASE NO. C14-0784 JCC<br><br>ORDER GRANTING PUGET SOUND ENERGY'S MOTION FOR SUMMARY JUDGMENT AND KING COUNTY'S PETITION FOR ATTORNEY FEES |

This matter comes before the Court on Defendant Puget Sound Energy's (PSE) motion for summary judgment (Dkt. No. 143) and Defendant King County's petition for attorney fees (Dkt. No. 151). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS PSE's motion (Dkt. No. 143) and King County's petition (Dkt. No. 151) for the reasons explained herein.

**I.  PSE'S MOTION FOR SUMMARY JUDGMENT**

The facts in this matter are well established. The Burlington Northern Santa Fe Railway Company (BNSF) previously operated a railroad through a right of way/railway corridor (the "corridor") along the eastern shore of Lake Washington. (Dkt. No. 83 at 3, 37-38.) In 2008, BNSF transferred the South Rail Line portion of the corridor to Defendants Port of Seattle (the "Port") and King County. (*Id.* at 40-41.) In 2009, BNSF quitclaimed its interests in the South Rail Line to the Port. (*Id.* at 41.) Subsequently, PSE paid $13,339,821.21 to the Port for utility

ORDER GRANTING PUGET SOUND ENERGY'S
MOTION FOR SUMMARY JUDGMENT AND
KING COUNTY'S PETITION FOR ATTORNEY
FEES
PAGE - 1

rights "over under, along, across and through" the corridor. (*Id.* at 42-43; Dkt. No. 123-1 at 2, 21.) On December 21, 2010, PSE recorded its "South Rail Line Easement." (Dkt. No. 113-17 at 1.) This easement allegedly crosses Plaintiffs' properties. (Dkt. No. 83 at 40-41.)

The "South Rail Line Easement" purports to grant PSE the right to "construct, operate, maintain, repair, replace, improve, remove, enlarge, and use the Easement Area for one or more utility systems for purposes of transmission, distribution and sale of electricity." (Dkt. No. 113-17 at 2.) This includes the right to construct "Overhead" and "Underground" facilities. (*Id.*) It also grants PSE the right to maintain its "utility systems for purposes of transmission, distribution, and sale of gas." (*Id.*)

The Court has already held that the underlying "Corridor Easements," which are again at issue here and from which PSE's easement derives, include "the exclusive right to possess and control the corridor for certain incidental uses that are consistent with trail use and the operation of a railroad." (Dkt. No. 138 at 18.) PSE now argues that the activities included within its electrical and gas utility rights are such incidental uses. The Court agrees.

"Historically in Washington, railroads are viewed as 'public highway[s], created for public purposes.'" *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 121 Wash. App. 714, 732 (2004) *aff'd in part, rev'd in part*, 156 Wash. 2d 253, 126 P.3d 16 (2006) (quoting *Puget Sound Elec. Ry. v. R.R. Comm'n*, 65 Wash. 75, 84 (1911)). The Court therefore finds that because public highway easements may include gas and electrical utilities as incidental uses, so too may railroad easements. *See State ex rel. York v. Bd. of Comm'rs of Walla Walla Cty.*, 28 Wash. 2d 891, 898, 904 (holding that "there are numerous other purposes for which the public ways way be used, such as for watermains, gas pipes, telephone and telegraph lines," as well as for "[p]oles and wires for carrying electric current").

PSE's easement is also explicitly subject to the Port's use of the easement for purposes related to railbanking, including trail use. (Dkt. No. 113-17 at 3, 6.) And it is also subject to the reactivation of the railroad for interstate freight rail use. (*Id.* at 6.) Therefore, PSE's requested

incidental uses are "consistent with trail use and the operation of a railroad." (Dkt. No. 138 at 18); *see also Kansas E. R.R., Inc.--Abandonment Exemption--in Butler & Greenwood Ctys., KS*, AB-563 (SUB 1X), 2006 WL 1516602, at *3 (June 1, 2006) ("Here, the plans for the dual use of the right-of-way as both a trail and a utility corridor, and the use of the right-of-way for agricultural purposes, are not inconsistent with the Trails Act because the County has explained that the utility corridor will not interfere with any trail use and future rail use.").

Plaintiffs' arguments to the contrary are unavailing. They spend much of their response attempting to reargue the Court's decision that the Corridor Easements have been preserved. But the Court has already addressed these arguments at length on multiple occasions, and will not do so again. (*See* Dkt. Nos. 107, 138, and 142.) Plaintiffs also argue that PSE's utility rights are not an incidental use because they do not "further the railroad's business as a transportation company." (Dkt. No. 150 at 11.) However, the case they cite, *Neitzel v. Spokane Int'l Ry. Co.*, refers specifically to *abandoned* railroad easements. 80 Wash. 30, 34 (1914) ("Whether or not there has been an abandonment depends upon the intention of the owner of the easement."). The Court has already explained on two occasions that the Corridor Easements were not abandoned. (*See* Dkt. No. 107 at 8; Dkt. No. 138 at 10 n.4.) Moreover, the Washington Court of Appeals ruled in *Kershaw* that incidental uses need not serve a direct railroad purpose, and specifically affirmed utility rights as a permissible incidental use. *See* 121 Wash. App. at 731-32 (holding that "a railroad may use its easement to conduct not only railroad-related activities, but also any other incidental activities that are not inconsistent and do not interfere with the operation of the railroad," and including "poles and wires for carrying electric current" as permissible incidental uses) (internal quotation marks omitted). Plaintiffs again argue that *Kershaw* was overruled or is inapplicable, but the Court has already addressed these arguments. (*See* Dkt. No. 138 at 15-16.)

The Court therefore GRANTS PSE's motion for summary judgment (Dkt. No. 143) and finds that the activities included within its electrical and gas utility rights are permissible incidental uses.

## II. KING COUNTY'S PETITION FOR ATTORNEY FEES

The Court has already held that Plaintiffs must pay the reasonable expenses Defendant King County incurred in bringing its motion to compel. (Dkt. No. 148 at 2.) Defendant King County now petitions the Court to order Plaintiffs to pay a total of $17,589.50. (Dkt. No. 141 at 2.) King County incurred attorney fees of $15,484 in prosecuting its motion to compel. (Dkt. No. 152 at 2.) It also incurred an additional $2,105.50 in preparing its fee petition. (*Id.* at 3.) "The law is well established that, when fees are available to the prevailing party, that party may also be awarded fees on fees." *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990) (quoting *General Fed'n of Women's Clubs v. Iron Gate Inn, Inc.*, 537 A.2d 1123, 1129–1130 (D.C. App. 1988)).

Reasonable attorney fees are calculated using the lodestar method, under which a court "determines a reasonable fee by multiplying 'the number of hours reasonably expended on the litigation' by 'a reasonable hourly rate.'" *Marrocco v. Hill*, 291 F.R.D. 586, 588 (D. Nev. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). King County's attorneys charge hourly rates of $260 and $375. (Dkt. No. 152 at 2.) The Court finds that these rates are reasonable given the attorneys' experience and prevailing local rates. (*Id.* at 2; Dkt. No. 153 at 2); *Getty Images (U.S.), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 1744522, at *3 (W.D. Wash. Apr. 29, 2014) (holding that hourly rates ranging from $275 to $465 are "reasonable and sensible" and "commensurate with market rates"). King County's attorneys expended a total of 60 hours in prosecuting the motion to compel and preparing the fee petition. (Dkt. No. 152 at 2-3.) The Court has inspected counsel's activity logs, and finds that the hours expended were reasonable. (Dkt. No. 152 at 6-8; Dkt. No. 153 at 2-3.)

Plaintiffs argue that defense counsel expended an unreasonable number of hours on this matter. But Plaintiffs' arguments are unsupported and unconvincing, and King County ably rebuts them. (*See* Dkt. No. 156 at 2) ("King County's motion required analysis of Plaintiffs' inadequate discovery responses, attempts to secure cooperation without intervention from the Court, research into controlling law, initial drafting, supporting declarations, review for

consistency with overall case strategy, and similar tasks in reply to Plaintiffs' lengthy opposition, and then again for King County's fee petition."). Moreover, Plaintiffs' response brief was submitted on December 14, 2015—six days after the deadline—without any explanation. (*See* Dkt. No. 148 at 2) (ordering Plaintiffs to submit their response brief on or before December 8, 2015). Under Local Civil Rule 7(b)(2), this "may be considered by the court as an admission that the motion has merit."

The Court therefore GRANTS King County's petition for attorney fees (Dkt. No. 151) in full. Plaintiffs are ORDERED to pay King County's reasonable expenses of $17,589.50.

## III.   CONCLUSION

For the foregoing reasons, Defendant Puget Sound Energy's motion for summary judgment (Dkt. No. 143) and Defendant King County's petition for attorney fees (Dkt. No. 151) are hereby GRANTED.

DATED this 16th day of March 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE