1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14

| | |
|---|---|
| SCOTT KASEBURG, et al., | CASE NO. C14-0784 JCC |
| Plaintiffs, | ORDER GRANTING SUMMARY JUDGMENT ON ALL REMAINING ISSUES |
| v. | |
| PORT OF SEATTLE, et al., | |
| Defendants. | |

This matter comes before the Court on Defendant King County's motion for summary

judgment on all remaining issues (Dkt. No. 165). Having thoroughly considered the parties'

briefing, oral argument on August 23, 2016, and the relevant record, the Court hereby GRANTS

the motion for the reasons explained herein.

## I.    BACKGROUND

The facts in this case are already well established. Its central concern is the ownership of

a railway corridor (the "Corridor") that stretches along the eastern shore of Lake Washington. In

the late 1800s and early 1900s, the Northern Pacific Railway Company assembled the Corridor

by purchasing private property and condemning shoreland. (Dkt. Nos. 168-2–168-4 and Dkt. No.

167-3.) In 2008, Northern Pacific's successor in interest, the Burlington Northern Santa Fe

Railway Company, transferred its property interest in the Corridor to King County. (Dkt. No. 83

at 37–38, 40–41, 45.)

At issue in the instant motion are three of the deeds originally acquired by Northern Pacific: the Kittinger Deed, the Lake Washington Land Company Deed ("LWLC Deed"), and the Lake Washington Belt Line Company Deed ("Belt Line Deed"). Also at issue is the State of Washington Shoreland Condemnation. (Dkt. No. 167-3.) The Court has already held that the Belt Line Deed and the Condemnation granted easements entitling the easement holder to "own and exercise the rights inherent in the railroad easement," (Dkt. No. 107 at 6), that these rights include the "exclusive use, possession, and control of the corridor," (Dkt. No. 138 at 5), and that they also include "incidental uses that are consistent with trail use and the operation of a railroad." (*Id.* at 18.)

In their Third Amended Complaint, Plaintiffs, who own property near the Corridor, stated two causes for relief. First, they asked for an order quieting title in the Corridor against a number of parties, including King County. (Dkt. No. 83 at 48.) Second, they asked for a declaratory judgment that, among other things, "they are the fee owners of the railroad right-of-way at issue." (*Id.* at 50.) King County then counterclaimed to quiet title against Plaintiffs and for a declaratory judgment. (Dkt. No. 18 at 10–14.)

To that end, King County now moves the Court to grant summary judgment against Plaintiffs and find as follows:

1. That King County has a fee simple interest in the property conveyed via the Kittinger Deed and the LWLC Deed.

2. That the State of Washington has a reversionary interest in the Condemnation easement.

3. That King County has an easement in the property conveyed via the Belt Line Deed and the Shoreland Condemnation.

4. That Plaintiffs lack standing to bring a quiet title and declaratory judgment action.

As the Court explains below, it finds for King County on each of these issues, which it will address in turn.

## II.    DISCUSSION

### A.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.    The Kittinger Deed

The Court has already held that the Kittinger Deed was a "bargain and sale" deed, (Dkt. No. 91 at 5–6), which Plaintiffs do not dispute. Bargain and sale deeds "automatically convey[] a fee simple estate," unless there is "additional language in the deed[] [that] clearly and expressly limits or qualifies the interest conveyed." (*Id.*)

Plaintiffs argue that the Kittinger Deed expressly limits the interest conveyed. They point to *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, in which the Washington Supreme Court held that the use of "the words 'right of way' in both the granting clause and the habendum[1] clause" of a bargain and sale deed "presumptively evinces the parties' intent to convey only an easement." 156 Wash. 2d 253, 266 (2006). Plaintiffs argue that, as in *Kershaw*, "[t]he granting clause in Kittinger is for the railroad's 'right-of-way' and it specifically says that it is for 'such purposes.'" (Dkt. No. 170 at 8.)

The Court agrees with King County that this is a misrepresentation—and a blatant one, at that. In fact, the Court has already explained that while the Kittinger Deed does state that the railroad "wishes to secure for such purposes the right-of-way over and across said lands," it does so *external to the granting clause*." (Dkt. No. 91 at 6.) As the Court elaborated, "the use of the term 'right of way' outside the granting or habendum clauses does not overcome the presumption of fee conveyance when a bargain and sale deed form was employed, and… the term 'right of way' in a description of the property being conveyed does not qualify as a 'clear and express limitation' on the interest." (*Id.* at 7) (citing *Roeder Co. v. K & E Moving & Storage Co., Inc.*, 102 Wash. App. 49, 51, 55).   Because "right of way" is used outside of the granting and habendum clauses in the Kittinger Deed, it "automatically convey[ed] a fee simple estate."

All of this is essentially a refresher on the Court's order denying Plaintiffs' motion for a declaratory judgment (Dkt. No. 91). That motion requested, among other things, that the Court declare that "the Railroad Originally Acquired an Easement for the Railroad Corridor." (Dkt. No.

---

[1] "A dictionary definition of the habendum of a deed is that it is the clause usually following the granting part of the premises of a deed, which defines the extent of the ownership in the thing granted to be held and enjoyed by the grantee." 26A C.J.S. Deeds § 33.

91 at 4.) In its order, the Court held that entering a declaratory judgment would have been inappropriate at that time. As the Court explained, one of the bases for its holding was that Defendants had "establish[ed] a genuine dispute" as to what sort of property interest the Kittinger Deed conveyed. (*Id.* at 5.)

Plaintiffs argue that the existence of that earlier dispute means that summary judgment is *still* inappropriate. But it was Defendants, not Plaintiffs, who raised that dispute—arguing that in fact the Kittinger Deed conveyed a fee, not an easement. (*Id.*) Now that it is King County moving for summary judgment, Plaintiffs need to "come forward with specific facts showing that there is a genuine issue for trial." They have failed to do so. Instead, in the face of King County's persuasive argument that the Kittinger Deed is a bargain and sale deed that does not expressly limit the property interest conveyed—and therefore conveys a fee simple—Plaintiffs offer only rehashed legal arguments that the Court has already rejected.

Because Plaintiffs have not raised a single genuine dispute of material fact, the Court holds that the Kittinger Deed conveyed a fee simple to Northern Pacific. In their Complaint, Plaintiffs admit that King County acquired all of BNSF's property interests (which had been Northern Pacific's) in the Corridor. (Dkt. No. 83 at 111, 121.) The Court therefore finds that King County possesses a fee simple interest in the land conveyed by the Kittinger Deed and quiets title on its behalf.

In the Declaration of Robert Nunnenkamp, Property Agent with the King County Division of Parks and Recreation, he groups Plaintiffs into twelve different categories based on a number of factors, including the location of their property, the language of their conveyances,

and their behavior during this lawsuit. (Dkt. No. 168-1.)[2] Plaintiffs do not dispute the bases of the Nunnenkamp Declaration, its findings, or its admissibility. In Category 1, Nunnenkamp groups all those Plaintiffs whose property sits alongside land conveyed to King County by the Kittinger Deed. (*Id.* at 7.) Again, Plaintiffs do not dispute the accuracy of this grouping. Because King County holds a fee in the Corridor land adjacent to these Plaintiffs' properties, they have failed to demonstrate any interest in this portion of the Corridor. The Court therefore dismisses the claims of all Plaintiffs in Category 1.

### C. The Lake Washington Land Company Deed

King County next argues that it has a fee interest in those portions of the Corridor acquired via the LWLC Deed. The Plaintiffs in *Haggart v. United States*, 108 Fed. Cl. 70 (2012), which involved the vast majority of the Plaintiffs in this case, (Dkt. No. 113 at 8 n.8), stipulated that the LWLC Deed did convey a fee interest. (Dkt. No. 167-4 at 3.) Plaintiffs do not dispute that the LWLC Deed conveyed a fee interest, but they do argue that it is "irrelevant" to this case. (Dkt. No. 170 at 10.)

The Court finds that the LWLC Deed conveyed a fee interest. It is a warranty deed, both because it is captioned as such and because its granting clause states that: "The Grantor the Lake Washington Land Company, a Corporation of the State of Washington, in consideration of the sum of Two Thousand ($2000.00) Dollars, *in hand paid, conveys and warrants* unto the Northern Pacific Railway Company, a Wisconsin Corporation, the following described real estate…." (Dkt. No. 168-4 at 10) (emphasis added). As with bargain and sale deeds, warranty deeds "convey fee simple title unless additional language in the deeds clearly and expressly

---

[2] Nearly all Plaintiffs fall in more than one category.

limits or qualifies the interest conveyed." *Brown v. State*, 130 Wash. 2d 430, 437 (1996). There is no such limiting language here.

As for the LWLC Deed's relevance, Plaintiffs argue that King County "has made absolutely no attempt to establish" which individual Plaintiffs own properties adjacent to land conveyed by the LWLC Deed. (Dkt. No. 170 at 10.) That is incorrect. Instead, as King County points out in its reply, the Nunnenkamp Declaration explicitly identifies all of the Plaintiffs whose properties are adjacent to the LWLC Deed, and groups them together as Category 2.[3] (Dkt. No. 168-1 at 7.)

Plaintiffs do not specifically dispute any of Nunnenkamp's findings. Rather, they state, without any citations or elaboration, that the Nunnenkamp Declaration "conflicts with the prior title work performed on behalf of the Port and King County," and that the "only evidence before the Court on this subject is the title work and mapping performed on behalf of the Port and King County as set forth in Cindy Straup's Declaration." (Dkt. No. 170 at 10–11 & n.21.) But "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Moreover, the

---

[3] In fact, the LWLC Deed is relevant for an additional reason that King County could not have foreseen when bringing its motion due to Plaintiffs' egregiously improper behavior. As the Court explains below, despite its previous order requiring Plaintiffs to disclose their chains of title, (Dkt. No. 138 at 22), they never did so. (Dkt. No. 171 at 9–10.) Nonetheless, in Plaintiffs' response to King County's motion, they present, for the first time, chains of title for four sets of Plaintiffs, arguing that this evidence demonstrates that these Plaintiffs have a property interest in the Corridor. (*Id.*) But what three of the chains actually demonstrate is that these Plaintiffs' properties (and the properties of *many* of the Plaintiffs in this suit) actually derive from a deed sold by the Lake Washington Land Company *after* it had sold the LWLC Deed to Northern Pacific; in other words, after it no longer had any reversionary interest in the Corridor that it could convey. (*Compare* Dkt. No. 168-4 *with* Dkt. No. 170-3 at 3, 27.) Therefore, the LWLC deed is *highly* relevant to this suit, a fact that Plaintiffs, given their endless obfuscations, may well have realized.

Straup Declaration, which was submitted over a year ago, did not address the LWLC Deed. (Dkt. No. 113-1.) Straup never even reviewed it. (*Id.* at 3.)

The Court therefore finds that the LWLC Deed conveyed a fee simple interest in the Corridor to Northern Pacific, which has since been transferred to King County. As a result, the Court dismisses the claims of all Plaintiffs whose property is adjacent to the LWLC Deed—i.e., all Plaintiffs in Category 2 of the Nunnenkamp Declaration.

### D.     The State of Washington Shoreland Condemnation

On October 6, 1903, Northern Pacific initiated a condemnation proceeding in King County Superior Court against a number of defendants. (Dkt. No. 167-1.) The goal—which it achieved—was to extend the Corridor over submerged shorelands along Lake Washington. (*Id.*) In December of that year, a jury resolved the defendants' competing claims to the shorelands, finding that "the State of Washington is the owner of all the shore lands of the second class described in the petition." (Dkt. No. 167-2 at 2.) The State was therefore entitled to compensation for Northern Pacific's condemnation. (*Id.*) The Superior Court entered final judgment and a decree of appropriation on February 8, 1904. (Dkt. No. 167-3.)

A number of Plaintiffs, identified in the Nunnenkamp Declaration as those in Category 3, live alongside land that Northern Pacific obtained via the Condemnation and are attempting to quiet title to the underlying fee. (Dkt. No. 168-1.) King County admits that it only obtained a railroad easement through the Condemnation land, (Dkt. No. 138 at 7–8), but it argues that the Category 3 Plaintiffs cannot quiet title because the reversionary interest in the fee belongs to the State of Washington.

Plaintiffs do not deny that the State owned the shorelands at the time of the condemnation proceedings. (Dkt. No. 170 at 11.) But they argue, again without authority or evidence, that it no

longer owns the reversionary interest today. (*Id.*) This is plainly incorrect: the fee owner of property underlying an easement retains a reversionary interest in that property. *See Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257, 1265 (2014) ("In other words, if the beneficiary of the easement abandons it, the easement disappears, and the landowner resumes his full and unencumbered interest in the land."). Plaintiffs provide no basis for their implicit argument that because they own property alongside the Condemnation easement, they, not the State, possess the reversionary interest in the underlying fee.

Plaintiffs also argue that because the State of Washington is not a party to this suit, it is irrelevant whether it owns the fee in the condemnation land. But the Category 3 Plaintiffs are attempting to quiet title to land that King County has shown actually belongs to the State. These Plaintiffs are therefore required to raise some material dispute to this argument in order to preserve their quiet title claims; they must, in other words, provide sufficient evidence for a reasonable jury to find that they are the true owners of the underlying fee. They have not done so—in fact, they haven't provided any evidence at all. Plaintiffs may not quiet title to land that they do not actually own, regardless of whether the true owner is a party to the suit. *See King Cty. v. Squire Inv. Co.*, 59 Wash. App. 888, 899 (1990) ("[O]wnership should be determined according to the title [one] holds rather than according to whether other parties fortuitously learned of the litigation and appeared to press their claim.").

The Court therefore dismisses the Category 3 Plaintiffs' claims. In addition, the Court holds that because Northern Pacific acquired railroad easements in the Corridor via the Condemnation and the Belt Line Deed, these interests were ultimately transferred to King County. (Dkt. No. 83 at 37, 45.)

### E.     Plaintiffs' Standing to Quiet Title

King County also argues that each individual Plaintiff—including those in Categories 1 through 3—lacks standing to quiet title in the Corridor and that their claims should be dismissed for this reason as well.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011). It is Plaintiffs' burden to satisfy this standard. *U.S. v. City and County of San Francisco*, 979 F.2d 169, 171 (9th Cir. 1992).

In Plaintiffs' Third Amended Complaint, they seek to quiet title in the Corridor under RCW 7.28, the quiet title statute, and via declaratory judgment (RCW 7.24). (Dkt. No. 83 at 46–50.) "RCW 7.28.010 requires that a person seeking to quiet title establish a valid subsisting interest in property *and* a right to possession thereof." *Horse Heaven Heights*, 132 Wash. App. at 195 (emphasis added).[4] A party that cannot make this demonstration lacks standing as a real party in interest. *Id.*; *see also Sammamish Homeowners v. Cty. of King*, No. C15-284 MJP, 2015 WL 3561533, at *4 (W.D. Wash. June 5, 2015) ("The Washington statutes concerning quiet title and declaratory judgments (deeds) (RCW 7.28.010, 7.24.020) require a property interest and an injury in fact before suit may be brought under them.").

King County argues that all Plaintiffs lack standing because they have failed to establish

---

[4] A "valid subsisting interest" means "legal title to the real estate." *White v. McSorley*, 47 Wash. 18, 20 (1907).

a property interest in the Corridor or a right to possession thereof.[5]

### 1. Valid Subsisting Interest

As the party moving to quiet title, the burden is on Plaintiffs to demonstrate that they have a "valid subsisting interest" in the Corridor. *Horse Heaven Heights,* 132 Wash. App. at 195. Relying on the Nunnenkamp Declaration, King County argues that none of Plaintiffs' deeds explicitly conveys a property interest in the Corridor. (Dkt. No. 168 at 21.) Plaintiffs do not dispute this point. Therefore, because their deeds do not grant them a fee interest in the Corridor, Plaintiffs must rely on the centerline presumption. The Court has previously explained that under the centerline presumption:

> [T]he conveyance of land which is bounded by a railroad right of way will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear.

(Dkt. No. 138 at 22 n.8) (internal quotation marks removed). To be entitled to the centerline presumption, Plaintiffs must first establish that their property adjoins the right of way and that they acquired it "from the fee owner of the right of way property." *Roeder Co. v. Burlington N., Inc.*, 105 Wash. 2d 567, 578 (1986). If they are able to do so, the presumption applies unless it is rebutted through presentation of "persuasive evidence of the grantor's intent to retain the right of way." *Id.*

---

[5] Standing is judged separately for counterclaimants in a quiet title action. *See Washington Sec. & Inv. Corp. v. Horse Heaven Heights*, Inc., 132 Wash. App. 188, 195 (2006) ("[B]ecause this case comes to this court upon cross motions for summary judgment quieting title, both WSIC and the Rankins had the burden of proving ownership of the land in question and standing as a real party in interest."). As the Court explained above, King County has demonstrated an interest in the Corridor and a right to possession thereof. Thus, regardless of whether Plaintiffs have standing for their claims, the Court retains jurisdiction over King County's counterclaims for declaratory judgment and quiet title. *Id.* at 195–96.

The Court previously held that "the centerline presumption requires that all Plaintiffs prove their chain of title back to the original grantor." (Dkt. No. 138 at 22.) Nonetheless, Plaintiffs make several arguments as to why they should not be required to produce their chains of title. Yet they also provide, for the very first time, chains of title for four sets of Plaintiffs (out of the eighty-five total Plaintiffs). The Court will first address Plaintiffs' arguments against the need to produce chains of title; then it will address the chains of title that Plaintiffs actually produced.

> a.      *Plaintiffs' Interpretation of the Centerline Presumption*

Plaintiffs first argue that, in applying the centerline presumption, the Court should also apply the so-called "strip and gore doctrine," because "it Definitely Exists in Washington." (Dkt. No. 170 at 13.) Plaintiffs barely explain this doctrine, although the Court imagines that it does not require the production of chains of title. Plaintiffs do not provide a single Washington case adopting or applying the doctrine. Plaintiffs' counsel already tried this tactic before Judge Pechman, who similarly found that "Plaintiffs do not cite a single Washington case which has adopted the doctrine." *Sammamish Homeowners*, 2015 WL 3561533, at *3. The Court therefore declines to apply the strip and gore doctrine.

Plaintiffs then argue that King County has misconstrued the centerline presumption and misinterpreted *Roeder*. But at every turn it is Plaintiffs who misinterpret—willfully, it would seem—crystal clear precedent. Plaintiffs argue that *Roeder* excludes from the centerline presumption *only* those deeds that "contain BOTH a metes and bounds description and…also refer to the railroad right-of-way as a boundary" in that description. (Dkt. No. 170 at 16.) But *Roeder* actually—and quite limpidly—holds as follows:

**First:** When a party presents evidence that a grantor owned a right of way and that the party acquired property from the grantor adjoining the right of way, then under the centerline presumption the party's title extends to the center of the right of way. *Roeder*, 105 Wash. 2d at 578.

**Second:** The presumption applies "[w]hen [a] deed refers to the grantor's right of way as a boundary without clearly indicating that the side of the right of way is the boundary." *Id.* 576-77.

**Third:** The presumption is rebutted when "a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property." *Id.* at 577.

**Fourth:** The presumption may also be rebutted via evidence of the grantor's intent to retain the right of way. *Id.* at 578.

In other words, regardless of whether a party's deeds contain a meets and bounds description, the centerline presumption *will not apply* unless the party *also* demonstrates that it received its property from a grantor that owned the right of way. The *Roeder* court was explicit on this point:

> The presumption that the grantor intended to convey title to the center of the right of way *is inapplicable* where the adjoining landowner presents no evidence of having received his or her property from the owner of the right of way. A property owner receives no interest in a railroad right of way simply through ownership of abutting land.

*Id.* at 578 (emphasis added). Plaintiffs next argue that *Roeder* should be limited to its facts. However, they point to no limiting language in the opinion in support of their argument. As the block quote above makes clear, the *Roeder* court's holding was not narrow at all—at least in regards to the necessity of providing chain of title evidence to support the centerline presumption.

Finally, Plaintiffs assert that "King County's position is apparently that language in ownership deeds that 'exclude' or 'except' the right-of-way means that the centerline presumption does not apply." (Dkt. No. 170 at 170.) [6] According to Plaintiffs, this position is contrary to the Washington Supreme Court's holding in *Kershaw*. But King County's "position" is actually that Plaintiffs have failed to establish that they obtained their deeds from a grantor that owned the right-of-way—i.e. have failed to provide chains of title—so the centerline presumption does not apply. King County's position is the right one. Without such evidence, Plaintiffs' arguments about the differences between "exclude" and "except" are irrelevant.[7]

### b.    Plaintiffs' Four Chains of Title

Finally, Plaintiffs argue that even if they really must provide chains of title to assert the centerline presumption and maintain standing, the claims of four sets of Plaintiffs—the McCrays (Dkt. No. 170-3), the Piantanidas (Dkt. No. 170-4), Kevin Iden (Dkt. No. 170-5), and the Kaseburgs (Dkt. No. 170-6)—may nonetheless go forward. According to Plaintiffs, they have "obtained chains of title for 4 of the Plaintiffs," and these documents allegedly demonstrate that

---

[6] Here, Plaintiffs appear to conflate King County's argument that the centerline presumption does not apply to *all* Plaintiffs who failed to provide chains of title with its more specific argument that the centerline presumption does not apply to all Plaintiffs *whose properties are described in metes and bounds*. The Court briefly addresses King County's metes and bounds argument below.

[7] Plaintiffs assert that "King County's argument lacks candor to the Court regarding the *Kershaw Sunnyside Ranches* opinion." (Dkt. No. 17 at 25.) But Plaintiffs already made this exact argument about *Kershaw*—coupled with an identical "lack of candor" attack—to Judge Pechman, who informed them that *Kershaw*

> is not helpful to Plaintiffs. First and foremost, it is not a 'centerline presumption' case, so the theory that Plaintiffs are relying on is not at issue in *Kershaw*. Nor did the Washington Supreme Court overrule any of the previous holdings of *Roeder* (in fact, *Kershaw* calls *Roeder* 'nearly indistinguishable.')

*Sammamish Homeowners*, 2015 WL 3561533 at *3.

"nobody in the chain of title specifically reserved the right-of-way to themselves and each grantor granted all the interest they owned, including their interest in the underlying fee in the railroad right-of-way." (Dkt. No. 170 at 23.)

To quote Plaintiffs, this argument "is indeed curious," (Dkt. No. 170 at 11), as King County pointed out in its motion that "not a single Plaintiff has produced a chain of title." (Dkt. No. 165 at 15.) So then where did these four chains of title come from? It would seem that Plaintiffs have had them this entire time. Apparently, despite the Court's explicit order to Plaintiffs that they produce all chains of title, (Dkt. No. 138 at 22), and despite the fact that Plaintiffs acquired these documents on January 13, 2016,[8] they simply chose not to disclose them until now, in a response brief in which they rely on them. (*See* Dkt. No. 170 at 23) (arguing that "even if this Court somehow accepts King County's arguments, these 4 Plaintiffs have standing even under Judge Pechman's interpretation of the centerline presumption").

This is the second time Plaintiffs have relied on evidence that they failed to disclose to King County upon its request. (Dkt. No. 138 at 22, 23–24.) The difference now—and it is a significant one—is that the Court has already ordered Plaintiffs to disclose these exact documents. (*Id.*) Plaintiffs' blatant disregard of the Court's order is both inexplicable and deserving of sanction.[9] Nor do they offer any excuse for their actions. However, the fact that Plaintiffs have rather meekly inserted their chain of title argument—upon which their claims

---

[8] (Dkt. No. 170-3 at 2; Dkt. No. 170-4 at 2; Dkt. No. 170-5 at 2; Dkt. No. 170-6 at 2.)

[9] The Court notes that Plaintiff Scott Kaseburg updated the Court as to Plaintiffs' progress on responding to King County's discovery requests after the Court granted its motion to compel. (Dkt. No. 149-2.) It is therefore particularly concerning that he was also among the Plaintiffs who did not release their chains of title.

necessarily turn—in the second-to-last paragraph of a 23-page brief is perhaps an admission of guilt in itself.

The Court is empowered to dismiss these four sets of Plaintiffs for their discovery abuse, or to strike these documents from the record. *See Sanai v. Sanai*, No. C02-2165Z, 2005 WL 1593488, at *8 (W.D. Wash. July 1, 2005), *aff'd*, 141 F. App'x 677 (9th Cir. 2005) (dismissing complaint where "[p]laintiffs' pattern of discovery abuse and disobedience of Court orders has been extraordinarily prejudicial"); *see also* Fed. R. Civ. P. 37(b)(2)(A)(ii)–(iii) (providing that when a party disobeys an order to compel, the court may "strik[e] pleadings in whole or in part" or prohibit the party from "introducing designated matters into evidence"). Moreover, since Plaintiffs "agree that those [individuals] who did not respond to King County's discovery can be dismissed," (Dkt. No. 170 at 22 n.34), they have essentially admitted that these Plaintiffs should be dismissed as well. Because Plaintiffs inarguably disobeyed the Court's order that they disclose their chains of title, and then prejudiced King County by relying on undisclosed title chains, the Court strikes this evidence from the record. Thus, without any evidence of their chains of title, these four sets of Plaintiffs cannot assert the centerline presumption and do not have standing.

But the Court wouldn't want Plaintiffs to feel (or later complain) that they didn't receive a full hearing on the merits. Thus, it will address their four title chains below. As the Court explains, these Plaintiffs would lack standing even if the Court didn't strike this evidence, as their chains of title are patently insufficient to satisfy the prerequisites of the centerline presumption.

//

//

*c.*     *The Declaration of John Rall*

Along with their four chains of title, Plaintiffs present the Declaration of John Rall, in which he interprets the deeds in Plaintiffs' title chains (Dkt. No. 170-2). Rall's alleged expertise is in "identifying source deeds that Railroads used in acquiring specific property and determining what rights were conveyed to the Railroad." (Dkt. No. 170-2 at 1.) King County argues that the Court should strike Rall's Declaration because "the interpretation of a deed, like any other contract, is not a proper subject for expert testimony." (Dkt. No. 171 at 10.)

Judge Pechman was presented with a similar declaration from this same witness, and held that "Plaintiffs offer no authority supporting their right to offer expert testimony on the legal interpretation of a deed." *Hornish v. King Cty.*, No. C15-284-MJP, 2016 WL 1588346, at *7 (W.D. Wash. Apr. 20, 2016). The same is true here. Perhaps that is because, as Judge Pechman found and the Ninth Circuit has held, "[r]esolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). Moreover, Rall's legal conclusions "not only invade[] the province of the trial judge, but constitute[] erroneous statements of law." *Id.* at 1059. His testimony—consisting of no more than rank legal argument, (Dkt. No. 170-2 at 2–3)—is therefore "not only superfluous but mischievous." *Id.*

For example, Rall states that "[n]o deed in the chains of title expressly reserved the fee portion underlying the Railroad Right-of-way unto any predecessor grantor." (Dkt. No. 170-2 at 3.) This is an impermissible legal conclusion, and, as the Court explains below, it is incorrect. Because the entirety of the Rall Declaration—besides the description of his qualifications—consists of such legal conclusions, the Court strikes it from the record.

//

ORDER GRANTING SUMMARY JUDGMENT
ON ALL REMAINING ISSUES
PAGE - 17

*d.*     *Plaintiffs' Chains of Title and the Centerline Presumption*

The chains of title for each of the four sets of Plaintiffs—the McCrays, the Piantanidas, Iden, and the Kaseburgs—derive from a plat that unambiguously excludes the Corridor from the platted lots. When interpreting plats, "the intention of the dedicator controls." *Rainier Ave. Corp. v. City of Seattle*, 80 Wash. 2d 362, 366 (1972). Where, as here, a plat is unambiguous, the intent of the grantor "must be determined from a consideration of the plat itself and of the descriptions and dedicatory language contained therein." *Frye v. King Cty.*, 151 Wash. 179, 183 (1929). The language of the plat need not be repeated in Plaintiffs' deeds, because "where a deed describes land as a lot laid out on and designated on a certain plat or survey, the plat becomes as much a part of the deed as if it were copied into it." *Cook v. Hensler*, 57 Wash. 392, 398 (1910).

The Kaseburg property falls within the Pleasure Point Park No. 2 plat. (Dkt. No. 168 at 13.) As the Court has explained, when a deed, or, in this case, a plat, "refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property, the presumption of abutting landowners taking to the center of the right of way is rebutted." *Roeder*, 105 Wash. 2d at 577. That is exactly the case here. The Pleasure Point plat gives a metes and bounds description of the property using the Corridor as a boundary. (Dkt. No. 168-10 at 2.) The Kaseburgs are therefore unable to shelter under the centerline presumption, and thus have no property interest in the Corridor and no standing.

The Iden, McCray, and Piantanida Plaintiffs' property falls within the Garden of Eden No. 3 plat. (Dkt. No. 168 at 11 (Iden), 15 (McCrays), 18 (Piantanidas).) The "Description" of this plat states that it "comprises the following described tract of land," which it then describes, "[e]xcept that portion occupied by the N.P.R.R. right of way and county roads as shown on said plat." (Dkt. No. 168-8 at 2.) "The term 'except' is generally meant to exclude the described

property." *Ray v. King Cty.*, 120 Wash. App. 564, 588 (2004). "[A]n exception operates to withdraw some part of the thing granted which otherwise would pass to the grantee under the general description." *Duus v. Town of Ephrata*, 14 Wash. 2d 426, 430 (1942). As the court held in *Roeder*, the centerline presumption will apply to a conveyance of land bounded by a railroad right of way "unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear." 105 Wash. 2d at 576. Here, by excepting the NPRR right of way—which is now part of the Corridor—the plat expressly reserved the Corridor from purchasers of the platted lots. Plaintiffs argue that King County has misinterpreted the word "exception," citing to *Kershaw* and *Zobrist v. Culp*, 18 Wash. App. 622 (1977). But neither of those cases involved the centerline presumption.[10] They are therefore irrelevant.

Moreover, the chains of title for the McCray, Piantanida, and Iden Plaintiffs demonstrate that they never acquired property from an owner of the Corridor—nor could they have. Again, *Roeder* requires that a party demonstrate that it received its adjoining property "from the fee owner of the right of way property." 105 Wash. 2d at 578. Here, these Plaintiffs' chains of title show that their predecessor, the Hillman Investment Company, acquired its property on May 26, 1904, through a deed from the Lake Washington Land Company. (Dkt. No. 170-3 at 4 (McCrays); Dkt. No. 170-4 at 4 (Piantanidas); Dkt. No. 170-5 at 3 (Iden)).[11] As Plaintiffs

---

[10] In addition, they are inapplicable because each involved a dispute over whether a deed excepted an *easement* previously conveyed to a third party. *Zobrist*, 18 Wash. App. at 629; *Kershaw Sunnyside Ranches*, 156 Wash. 2d at 271. As the Court explains below, the exception here involves a *fee* interest previously conveyed to a third party.

[11] As King County points out, this deed was never disclosed to them even though they specifically requested—and the Court ordered Plaintiffs to disclose—this very sort of evidence. (Dkt. No. 138 at 21–22.) There is no question that it was highly prejudicial for Plaintiffs to withhold the May 26, 1904 deed from discovery and then rely on it in their response brief.

essentially conceded (although they argued that it was "irrelevant") and as the Court has explained, the Lake Washington Land Company had already conveyed to Northern Pacific a fee interest in the Corridor via the LWLC Deed. The May 26, 1904 Deed therefore could not have conveyed to the Hillman Investment Company any interest in the Corridor, which the Deed itself makes clear, stating: "from the lands above desc[ribed] is to be deducted the rights of way of various r[ail] companies and co[unty] roads as sh[ow]n by the deeds heretofore filed in the office of the Aud[itor] of s[ai]d K[ing] Co[unty]." (Dkt. No. 170-3 at 27.) Thus, these Plaintiffs never received "adjoining property from the fee owner of the right of way property"—since the Hillman Investment Company did not own the fee at the time of the conveyance.

Therefore, these four chains of title, which Plaintiffs have apparently concealed, do no more than conclusively demonstrate that the centerline presumption *does not* apply to them and that they have no interest in the Corridor.[12] Thus, they have no standing to sustain their quiet title action.

### F. Additional Reasons for Dismissal

King County raises a host of additional arguments why the claims of various groups of Plaintiffs fail for individualized reasons. Because Plaintiffs have not established that they have an interest in the Corridor, the Court need not reach these arguments. Nonetheless, the Court will briefly address them here.

First of all, there are a number of Plaintiffs who both parties essentially agree should be

---

[12] King County argues persuasively that Plaintiffs also have no right to *possess* the Corridor, which is the second RCW 7.28.010 requirement to quiet title. (Dkt. No. 165 at 16–17.) Plaintiffs make no attempt to rebut this argument. Regardless, because Plaintiffs fail to establish that they have an interest in the Corridor, the Court need not reach the question of whether they have a right to possession. *See* RCW 7.28.010 (requiring "a valid subsisting interest in real property, *and* a right to the possession thereof") (emphasis added).

dismissed. As the Court mentioned above, "Plaintiffs agree that those Plaintiffs who did not respond to King County's discovery can be dismissed," (Dkt. No. 170 at 22 n.34), although, again, perhaps they fail to realize that this would also logically exclude the Kaseburg, Iden, McCray, and Piantanida Plaintiffs who obtained their chains of title but did not disclose them. Plaintiffs "generally agree" that those "plaintiffs who sold their property cannot quiet title," although they argue without elaboration that the purchasers of that property would later be entitled to join the suit. (*Id.*) Plaintiffs also "generally agree" that "Plaintiffs who transferred their properties to other legal entities cannot quiet title," although they similarly argue that this "depend[s] on a number of factual questions" that they do not elucidate. (*Id.*) Plaintiffs also appear to agree that "only living plaintiffs have standing," although they argue, without evidence or citation to any authority, that the spouse or other heirs of the deceased plaintiff, Barbara Bergstrom, (Dkt. No. 167-6), "would continue to have standing." (Dkt. No. 170 at 22 n.34.) In addition, several Plaintiffs have requested that they be dismissed. (Dkt. No. 167-9 at 5–6.) Were it necessary to the Court's decision, it would find that all of these individual Plaintiffs—which King County has grouped as Categories 7 through 9, 11, and 12—should indeed be dismissed. (Dkt. No. 168-1 at 7.)

Plaintiffs do contest King County's argument that collateral estoppel bars the claims of those Plaintiffs who have previously filed suit. But their response, in its entirety, is that King County is "incorrect as a matter of procedure, fact, and law." (Dkt. No. 170 at 22 n.34.) Given that seven Plaintiffs—grouped as Category 10—have previously filed suit on the same operative

facts at issue here,[13] the Court would almost surely find their claims barred by collateral estoppel were such a finding necessary.

Finally, King County argues that Plaintiffs in Categories 4 through 6 should be dismissed because they cannot assert the centerline presumption due to: limitations in the language of their deeds (Category 4); their properties having derived from plats that exclude the Corridor (Category 5); and/or their predecessor having purchased shorelands excepting the Corridor (Category 6). (Dkt. No. 168-1 at 7.) As the Court has explained, since all but four sets of Plaintiffs failed to present chains of title (and these were insufficient), none can assert the centerline presumption. Nonetheless, because Plaintiffs have failed to persuasively rebut King County's arguments as to the Plaintiffs in Categories 4 through 6, the Court would likely have dismissed them on these grounds as well.[14]

---

[13] King County asserts, and Plaintiffs do not dispute, that five of the current Plaintiffs were parties to *Ioppolo v. Port of Seattle*, (Dkt. No. 165 at 25), in which the plaintiffs argued that "BNSF's interest [in the Corridor] was limited to a surface easement for a hiking and biking trail." Case No. C15-0358 JCC, 2015 WL 5315936, at *1 (W.D. Wash. Sept. 11, 2015). Two other plaintiffs previously filed suit in *Ao. V. Port of Seattle*, No. 09-2-44773-0 KNT (King Co. Sup. Ct. 2011), arguing that they had acquired title to property within the Corridor through adverse possession. (Dkt. No. 167-7 at 8–9.) Both cases were dismissed. *Ioppolo*, 2015 WL 5315936, at *5; (Dkt. No. 167-8 at 2–3.)

[14] Addressing the Category 4 grouping, Plaintiffs argue that the centerline presumption is unavailable *only* to those Plaintiffs whose deeds describe their property in metes and bounds *and* use the Corridor as a boundary. But dozens of Plaintiffs' deeds do, in fact, describe their property in this manner. (Dkt. No. 172-1 at 8.) Moreover, the rest of the Category 4 Plaintiffs, much like the Category 5 and 6 Plaintiffs, obtained their property through conveyances excepting or excluding the Corridor, (*id.*), which, as the Court explained above, also disentitles them to the centerline presumption. Plaintiffs' arguments to the contrary invoke *Kershaw*, *Zobrist*, the strip and gore doctrine, and a ruling from the Central District of California on a motion to dismiss, none of which relate to the application of the centerline presumption under Washington law. (Dkt. No. 170 at 20–22.)

**III.    CONCLUSION**

For the foregoing reasons, King County's motion for summary judgment on all remaining issues (Dkt. No. 165) is GRANTED.

In addition, as the Court explained above, it hereby STRIKES from the record the chains of title for the McCray, Piantanida, Iden, and Kaseburg Plaintiffs (Dkt. Nos. 170-3 to 170-6), as well as the Declaration of John Rall (Dkt. No. 170-2).

It is therefore ORDERED that:

(1)    The process of railbanking the Corridor under the Trails Act preserved all property rights formerly held by the Burlington Northern and Santa Fe Railroad ("BNSF") and authorized trail use;

(2)    King County currently holds all of BNSF's property rights in the Corridor, as well as the trail rights created by the Trails Act;

(3)    The June 24, 1903 deed from J.R. Lewis to the Northern Pacific Railway Company, recording No. 269500 (also called the Kittinger Deed), conveyed a fee simple interest.

(4)    The February 3, 1904 deed from the Lake Washington Land Company to the Northern Pacific Railway Company, recording No. 287093 (also called the LWLC Deed), conveyed a fee simple interest.

(5)    The State of Washington holds the reversionary interest to property acquired through the February 8, 1904 Condemnation.

(6)    Plaintiffs lack standing under Washington's centerline presumption doctrine to challenge King County's ownership interests in the Corridor.

//

FURTHERMORE, it is hereby ORDERED:

(1)     King County is granted a decree quieting title free and clear from all claims by the Plaintiffs and/or their successors in interest to any portions of the land conveyed by the February 11, 2013 quit claim deed from the Port of Seattle to King County, recording No. 20130213001645, attached as Exhibit A to this Order.  The Plaintiffs, King County, and their successors in interest shall recognize in perpetuity the boundary lines described in Exhibit A.

(2)     Title is quieted confirming that King County owns a fee interest in the portions of the property described in Exhibit A that are derived from the June 24, 1903 deed from J.R. Lewis to the Northern Pacific Railway Company, which is attached as Exhibit B to this Order.

(3)     Title is quieted confirming that King County owns a fee interest in the portions of the property described in Exhibit A that are derived from the February 3, 1904 deed from the Lake Washington Land Company to the Northern Pacific Railway Company, which is attached as Exhibit C to this Order.

(4)     Title is quieted confirming that King County may exercise its easement rights in any easement portions of the Corridor consistent with the prior rulings of this Court.

DATED this 23rd day of August 2016.


John C. Coughenour
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

1st Am
WPAK 1187758
㉓/95

RETURN ADDRESS:
KING COUNTY OPEN SPACE ACQUISITIONS
201 SOUTH JACKSON STREET
SUITE 600
SEATTLE, WA 98104
ATTN: LINDA HOLECEK



**20130213001645**
FIRST AMERICAN QCD          94.00
PAGE-001 OF 023
02/13/2013 12:18
KING COUNTY, WA

## QUIT CLAIM DEED

GRANTOR:                          PORT OF SEATTLE
                                  a municipal corporation of the State of Washington

GRANTEE:                          KING COUNTY
                                  a political subdivision of the State of Washington

ABBREVIATED LEGAL DESCRIPTION:    PTN of BNSF Railway Company's Woodinville to
                                  Kennydale, Washington Branch Line right-of-way lying
                                  within the following:

Parcel A:                         PTN Section 9, T26N-R05E, WM

Parcel B:                         PTN Sections 15, 16, 22, 27 & 28, T26N-R05E, WM;
                                  PTN Sections 20, 21 & 33, T25N-R05E, WM;
Said documents were filed of      PTN Sections 4, 9, 16, 17, 20, 29, 31 & 32, T24N-R05E,
record as an accommodation only.  WM; and PTN Section 6, T23N-R05E, WM
It has not been examined as to
proper execution or as to its effect    AND
upon title.

Parcel C:                         PTN of BNSF Railway Company's Redmond Spur
                                  Right of Way lying within the following:
                                  Sections 9, 15, 16, 22 & 27, T26N-R05E, WM

ASSESSOR'S TAX PARCEL NOS.

Parcel A:                         092605-9043

Parcel B:                         152605-9023; 162605-9021; 222605-9030;
                                  272605-9019; 202505-9034 (ptn); 202505-9117 (ptn);
                                  212505-9020; 332505-9029 (ptn); 042405-9024;
                                  092405-9032; 162405-9033; 172405-9008; 202405-
                                  9014;
                                  292405-9005; 322405-9005; 312405-9004; 092405-
                                  9215; 544830-0075; 202405-9119; 062305-9005 (ptn)

Parcel C:
                                  092605-9043; 152605-9023; 162605-9164
                                  222605-9030; 272605-9019

**E2588966**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00

**E2588967**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00

**E2588968**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00

**E2588969**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00
PAGE-001 OF 001

**E2588970**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00
PAGE-001 OF 001

**E2588971**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00
PAGE-001 OF 001

**E2588972**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00
PAGE-001 OF 001

**E2588973**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00
PAGE-001 OF 001

**E2588974**
02/13/2013 12:07
KING COUNTY, WA
TAX              $10.00
SALE             $0.00
PAGE-001 OF 001

KCKASEBURG00000194

6

For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration received, the Port of Seattle, a municipal corporation of the State of Washington ("Grantor"), hereby conveys and quit claims to King County, a political subdivision of the State of Washington ("Grantee"), the real property described in Exhibit A attached hereto and incorporated herein by this reference, situated in the County of King, State of Washington, subject to all matters of record, together with any after-acquired title which the Grantor may acquire.

IN WITNESS WHEREOF, Grantor has executed this Deed as of the 11th day of Feb, 2013.

                                                PORT OF SEATTLE

                                                By _____
                                                    Tay Yoshitani
                                                    Its Chief Executive Officer

STATE OF WASHINGTON          )
                             ) ss.
COUNTY OF _King_             )

I certify that I know or have satisfactory evidence that _Tay Yoshitani_ is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on oath stated that he/she was authorized to execute the instrument and acknowledged it as the _CEO_ of the Port of Seattle to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _2/11/13_

                                                _____
                                                Notary Public
                                                Print Name _Julie Kathryn Thomas_
                                                My commission expires _1-21-15_

(Use this space for notarial stamp/seal)

2

Exhibit A

**PARCEL A:**

### MP 23.45 - 23.8 Woodinville to Kennydale

All that portion of BNSF Railway Company's (formerly Northern Pacific Railway Company) Woodinville to Kennydale, Washington Branch Line right of way, varying in width on each side of said Railway Company's Main Track centerline, as now located and constructed upon, over and across King County, Washington, more particularly described as follows, to-wit:

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the N½SE¼ of Section 9, Township 26 North, Range 5 East, W. M., King County, Washington lying Southerly of the Northeasterly boundary of that certain 100 foot wide tract of land described in deed dated May 4, 1887 from Mary B. Jaderholm to Seattle Lake Shore and Eastern Railway Company , recorded May 5, 1887 in Volume 40 of Deeds, Page 288, records of said County; also,

That certain 4.02 acre tract of land described in deed dated November 13, 1903 from Emanuel Neilsen and Grete Neilsen to Northern Pacific Railway Company recorded November 16, 1903 in Volume 358 of Deeds, Page 543, records of King County, Washington, said 4.02 acre tract being described in said deed for reference as follows:

"A strip of land over and across the south half of the southeast quarter (S/2 of SE/4) of Section 9, Township twenty-six (26) north, Range five (5) east, W.M., consisting of a strip of land one hundred ten (110) feet wide, being fifty (50) feet wide on the southwesterly side of the center line of the proposed Seattle Belt line railroad of the Northern Pacific Railway Company, as the same is surveyed and staked out across said premises, and sixty (60) feet in width on the northeasterly side of said center line; and an additional strip of land twenty (20) feet in width on the northeasterly side of said above described strip from Station 29 of said railroad center line extending to the south line of said Section 9, a distance of 580 feet, said additional strip being 20 feet wide and 580 feet long; containing 4.02 acres, more or less." EXCEPTING THEREFROM, All that portion of the Southwesterly 35.0 feet of Parcels "A" and "B" of Boundary Line Adjustment Number S92L0145R, King County, Washington, according to the recorded plat thereof.

3

KCKASEBURG00000196

8

**PARCEL B:**

### MP 23.45 –Woodinville to Kennydale MP 5.0
### (Except Sound Transit and City of Kirkland Segments)

All that portion of BNSF Railway Company's (formerly Northern Pacific Railway Company) Woodinville (MP 23.45) to Kennydale (MP 5.0), Washington Branch Line right of way, varying in width on each side of said Railway Company's Main Track centerline, as now located and constructed upon, over and across King County, Washington, more particularly described as follows, to-wit:

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across the NE¼ Section 16, and the W½ Section 15, all in Township 26 North, Range 5 East, W. M., bounded on the North by the North line of said NE¼ Section 16, and bounded on the South by South line of said W½ Section 15; also,

That portion of that certain 50.0 foot wide Branch Line right of way, being 25.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across the NE¼NE¼NW¼ and the NW¼NW¼NE¼ Section 22, Township 26 North, Range 5 East, W. M., bounded on the North by the North line of said Section 22, and bounded on the South by South line of said NW¼NW¼NE¼ Section 22; also,

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across the E½ Section 22, the NW¼NE¼ and the NE¼NW¼ Section 27, all in Township 26 North, Range 5 East, W. M., bounded on the North by the North line of said E½ Section 22, and bounded on the South by South line of said NE¼NW¼ Section 27; also,

That certain 4.43 acre tract of land described in deed dated April 3, 1903 from Nellie Nelson to Northern Pacific Railway Company recorded April 3, 1903 in Book 342 of Deeds, Page 371, records of King County, Washington, said 4.43 acre tract being described in said deed for record as follows:

"All that portion of the Southeast Quarter (S.E. 1/4) of the Northwest Quarter (N.W. 1/4) of Section 27, Township 26 North, Range 5 East, lying between the easterly line of the present right of way of the Northern Pacific Railway Company, which line is 50 feet distant southeasterly from the center line of the railroad track of said company, as now located and constructed over and across said premises and a line drawn parallel to and 50 feet distant southeasterly from,

4

KCKASEBURG00000197

when measured at right angles to the center line of the proposed railroad track as now staked out and to be constructed, over and across said premises;

"Also all that portion of said Southeast Quarter (S.E. 1/4) of the Northwest Quarter (N.W. 1/4) of Section 27, Township 26, Range 5 East, W.M. lying within 50 feet of that certain straight line which connects the center line of the present track of the Northern Pacific Railway Company line with the center line of the proposed track of the Northern Pacific Railway Company line and being tangent to the curves of both of said center lines, containing in all 4.43 acres, be the same more or less." **EXCEPTING THEREFROM,** Lot 3, King County Short Plat Number 1078060, recorded under King County Recording Number 8003270855, being a subdivision of: That portion of the southeast quarter of the northwest quarter of Section 27, Township 26 North, Range 5 East, W.M., King County, Washington, lying northerly and westerly of the northerly and westerly right of way of the Northern Pacific Railway Company's "Seattle Belt Line", and south of the southerly right of way line of that road conveyed to King County by deed recorded under Recording Number 2695175 and northeasterly of a line described as follows: Beginning at the northwest corner of the southeast quarter of the northwest quarter of said Section 27; thence south 1°58'24" west along the west line of the southeast quarter of the northwest quarter of said Section 27, a distance of 265 feet; thence north 65°33'39" east 444.80 feet to the true point of beginning of the following described line; thence south 18°15'21" east, 640 feet, more or less, to the northerly right of way line of said Northern Pacific Railway Company's "Seattle Belt Line", said northerly right of way line being 50' Northeast of the center line of the maintrack as now constructed and the terminus of said line.; also,

That certain 0.05 acre tract of land described in deed dated August 25, 1904 from Otto Weppler et al. to Northern Pacific Railway Company recorded September 7, 1904 in Book 375, Page 507, records of King County, Washington, said 0.05 acre tract being described in said deed for reference as follows:

"All that piece or parcel of land in the southeast quarter of the northwest quarter (SE/4 of NW/4) of Section twenty-seven (27), Township twenty-six (26), Range five (5) east, W. M. which lies northwesterly of the original Seattle Belt Line right of way as described in deed recorded in Volume 116 of Deeds, Page 289, Records of King County, and within fifty (50) feet of the center line of the revised location of the track of the Seattle Belt Line as the same is now surveyed and being constructed over and across said subdivision, containing 5/100 acres, more or less."; also,

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across the SW¼NW¼ Section 27 the S½NE¼, NW¼SE¼, SW¼ Section 28, W½NW¼, NW¼SW¼ Section 33, SE¼ Section 32, all in Township 26 North, Range 5 East, W. M., bounded on the East by the East line of said SW¼NW¼ Section 27, and bounded on the South by South line of said SE¼ Section 32, **EXCEPTING THEREFROM,** that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26, 1998 as Document No. 9805260805, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe

5

KCKASEBURG00000198

Railway Company to ANT, LLC recorded July 30, 1998 as Document No. 9807301468, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26, 1998 as Document No. 9805260791, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Correction Quitclaim Deed dated January 6, 2000 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded February 11, 2000 as Document No. 20000211000454, records of King County, Washington, ; also,

That portion of that certain 100.0 foot wide Branch Line right of way in the City of Kirkland, Washington, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over, and across Blocks 3, 4, 5, 6, 11, 12, 13, 14, 18, 19, 23, 24, 25 and 26, the vacated alley between Blocks 13 and 14, and vacated Arlington Avenue between Blocks 14 and 19, as said Blocks and Streets are shown on plat of Lake Avenue Addition to Kirkland as recorded in Volume 6 of Plats, Page 86, Records of said County, together with any right title and interest, if any to those portions of Victoria Avenue, Harrison Avenue, Moreton Avenue; Jefferson Avenue, and Washington Avenue and Maple Street and alleys within said Blocks which lie within said 100.0 foot wide Branch Line right of way, **EXCEPTING THEREFROM,** that portion of Lot 3, Block 5, Lake Avenue Addition to Kirkland, according to the official plat thereof in the office of the Auditor of King County, Washington lying between two lines drawn parallel with and distant, respectively, 34.0 feet and 50.0 feet Westerly of, as measured at right angles from The Burlington Northern and Santa Fe Railway Company's (formerly Northern Pacific Railway) Main Track centerline as now located and constructed upon, over, and across said Block 5; also,

That portion of that certain 100.0 foot wide Branch Line right of way in the City of Kirkland, Washington, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across Blocks 220, 223, 224, 232, 233, 238, and 241 as said Blocks are shown on the Supplementary Plat to Kirkland as filed in Volume 8 of King County Plats, at page 5, together with any right title and interest, if any to those portions of Massachusetts Avenue, Madison Avenue, Michigan Avenue, Olympia Avenue, Piccadilly Avenue, Cascade Avenue, Clarkson Avenue, Fir Street, and alleys within said Blocks which lie within said 100.0 foot wide Branch Line right of way; also,

That portion of Lots 1, 2, 4, 37, and all of Lots 3, 38, and 39, Block 227 as said Lots and Blocks are shown on the Supplementary Plat to Kirkland as filed in Volume 8 of King County Plats, at page 5, which lie Northeasterly of a line parallel with and distant 50 feet Southwesterly from, measured at right angles to said Railway Company's Main Track centerline as now located and constructed and Southwesterly of a line parallel with and distant 50 feet Northeasterly from, measured at right angles to said Railway Company's Main Track centerline as originally located and constructed; also,

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across the, S½SE¼ Section 5, NW¼NE¼, E½NW¼, E½SW¼, Section 8, all in Township 25 North, Range

6

KCKASEBURG00000199

11

5 East, W. M., bounded on the North by the South right of way line of Clarkson Avenue, City of Kirkland, Washington, and bounded on the West by the West line of said E½SW¼, Section 8, **EXCEPTING THEREFROM**, that certain tract of land described in Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26, 1998 as Document No. 9805260787, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Correction Quitclaim Deed dated May 15, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded August 5, 1999 as Document No. 19990805001402, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281544, records of King County, Washington; also;

That certain 0.23 acre tract of land described in deed dated July 15, 1903 from Samuel F. French to Northern Pacific Railway Company recorded August 3, 1903 in Book 361 of Deeds, Page 249, records of King County, Washington, said 0.23 acre tract being described in said deed for reference as follows:

"Commencing at a point in the east line of Lot four (4), Section eight (8), Township twenty-five (25) North, Range five (5) east, W.M., that is 395 feet north of the southeast corner of said lot, and running thence west parallel with the south line of said Lot four (4) 67 feet, more or less, to a point that is 50 feet distant from, when measured at right angles to, the center line of the proposed Seattle Belt Line Branch of the Northern Pacific Railway Company as the same is now located, staked out and to be constructed across said Section eight (8); thence running northeasterly parallel with said railway center line 200 feet; thence westerly at right angles to said railway center line 30 feet; thence northeasterly parallel with said railway center line, and 80 feet distant therefrom, 130 feet, more or less, to the east line of said Lot four (4); thence south along said east line of said Lot four (4) 322 feet, more or less, to the point of beginning; containing 0.23 acres, more or less."; also,

That certain strip of land described in deed dated March 3, 1904 from Seattle and Shanghai Investment Company to Northern Pacific Railway Company recorded March 9, 1904 in Book 387, Page 243, records of King County, Washington, said strip being described in said deed for reference as follows:

"A strip of land Two Hundred twenty-five (225) feet in width across that certain parcel of land designated as Tract "B" in deed from the Kirkland Land and Improvement Company to H. A. Noble, dated July 13, 1899 of record in the Auditor's office of King County, Washington in Volume 245 of Deeds, at page 41, reference thereto being had. Said strip of land hereby conveyed, having for its boundaries two lines that are parallel with and respectively distant One Hundred (100) feet easterly from, and One Hundred Twenty-Five (125) feet westerly from, when measured at right angles to, the center line of the Seattle Belt Line branch of the NORTHERN PACIFIC RAILWAY COMPANY, as the same is now constructed and located across said Tract "B", which said Tract "B" is located in Section 17 of Township 25, North of Range 5 east of the Willamette Meridian"; also,

7

KCKASEBURG00000200

12

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across Government Lot 4, Section 8, Government Lots 1, 2, and 3, the E½SW¼ Section 17, and the NE¼NW¼, NE¼ Section 20, all in Township 25 North, Range 5 East, W. M., bounded on the North by the South line of that certain hereinabove described 0.23 acre tract of land described in deed dated July 15, 1903 from Samuel F. French to Northern Pacific Railway Company recorded August 3, 1903 in Book 361 of Deeds, Page 249, records of King County, Washington and the East line of said Government Lot 4, Section 8, and bounded on the South by the South line of said NE¼ Section 20, together with such additional widths as may be necessary to catch the slope of the fill in the N½ of said Government Lot 2, Section 17 as delineated in the 7th described parcel in deed dated June 20, 1903 from Kirkland Land and Improvement Company to Northern Pacific Railway Company recorded June 26, 1903 in Book 352, Page 582, records of King County, Washington. **EXCEPTING THEREFROM**, that portion of said 100.0 foot wide right of way lying within said hereinabove described parcel of land designated as Tract "B" in deed from the Kirkland Land and Improvement Company to H. A. Noble, dated July 13, 1899 of record in the Auditor's office of King County, Washington in Volume 245 of Deeds, at page 41,; also,

That certain tract of land described in deed dated December 26, 1952 from Alma F. Robinson and William G. Robinson et al. to Northern Pacific Railway Company recorded January 14, 1953 in Book 3220 of Deeds, Page 301, in the records of the Auditor's office of King County, Washington, said tract of land being described in said deed for reference as follows:

"That portion of the south half of the northeast quarter (S½NE¼) of Section 20, Township 25 North, Range 5 East of the Willamette Meridian, described as follows: Commencing at the center of said section; thence north 0 degrees 18 minutes 24 seconds west along the north and south quarter line of said section 738.60 feet to the center of the county road; thence along said road south 77 degrees 7 minutes east 500.00 feet; thence south 71 degrees 54 minutes east 308.27 feet, more or less; thence north 34 degrees 38 minutes east 18.00 feet to a stake in the north margin of said road; thence north 34 degrees 38 minutes east 609.40 feet, more or less, to the southwesterly margin of the Grantee's right of way, said margin being concentric with and distant 50 feet southwesterly, measured radially, from the center line of the main track of the Grantee's Belt Line as now constructed; thence southeasterly along said margin approximately 150 feet to a point distant 50 feet southwesterly, measured along the radius of the curve of said center line, from station 511 plus 50 in said center line (which station is distant 2337.6 feet southeasterly measured along said center line, from the north line of said section), the last-described point being the true point of beginning; thence southeasterly and southerly along said margin to a point distant 50 feet westerly, measured along the radius of said curve, from station 515 plus 60 in said center line; thence northwesterly in a straight line to a point distant 110 feet southwesterly measured along the radius of said curve, from station 514 plus 28 in said center line; thence northwesterly in a straight line to a point distant 110 feet southwesterly, measured along the radius of said curve, from station 513 plus 28 in said center line; thence northerly in a straight line to the true point of beginning.", also,

8

KCKASEBURG00000201

13

That portion of that certain 100.0 foot wide Branch Line right of way at said Railway Company's Northrup Station, being 50.0 feet on each side of said Branch Line's Main Track centerline, as originally located and constructed, upon, over and across Blocks 12, 13, 14, 15, 16, 21, 22, 23 and 24, all within Kirkland Syndicate First Addition to Seattle, together with any right title and interest, if any to those portions of Maple Street, Nelson Street, Bixby Street, Kirkland Avenue, Hawks Avenue and Fransen Avenue which lie within said 100.0 foot wide Branch Line right of way; also,

Those portion of Lots 10, 11, and 12, Block 14, Lots 1, 2, 3, and 4, Block 23 and Lot 10, Block 24, all within Kirkland Syndicate First Addition to Seattle, lying Southwesterly of a line parallel with and distant 50 feet Southwesterly from, measured at right angles to said Railway Company's Main Track centerline as originally located and constructed; also,

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Railway Company's Main Track centerline, as originally located and constructed, upon, over and across the SE¼SE¼ Section 20, and the SW¼SW¼ Section 21, all in Township 25 North, Range 5 East, W. M., bounded on the North by the North line of said SE¼SE¼ Section 20, and bounded on the South by the South line of said SW¼SW¼ Section 21, together with any right title and interest, if any to those portions of Fransen Avenue, Jordan Avenue, Elkoos Avenue, and Railroad Avenue, which lie within said 100.0 foot wide Branch Line right of way; also,

That portion of Block 7, of Kirkland Syndicate's Second Addition to Kirkland Washington, situate in the SE¼SE¼ Section 20, and that portion of said Railway Company's property situate in the SW¼SW¼ Section 21, and in the NW¼NW¼ Section 28, all in Township 25 North, Range 5 East, W. M., lying Easterly of a line parallel with and distant 50.0 feet Westerly from, measured at right angles and/or radially to said Railway Company's Main Track centerline as now located and constructed and Westerly of a line parallel with and distant 50.0 feet Westerly from, measured at right angles to said Railway Company's Main Track centerline as originally located and constructed, bounded on the West by the West line of said Block 7 and its Northerly prolongation, and bounded on the South by the intersection of said parallel lines, together with any right, title and interest, if any, to Houghton Street and Railroad Avenue of Kirkland Syndicate's Second Addition to Kirkland Washington; also,

That certain 0.63 acre tract of land described in deed dated November 13, 1904 from Nathan P. Dodge Et Ux. to the Northern Pacific Railway Company recorded February 9, 1905 in Volume 408 of Deeds, Page 263, records of King County, Washington, said 0.63 acre being described in said deed for reference as follows:

"That part of southwest quarter of southwest quarter (SW/4 of SW/4), Section twenty-one (21), Township twenty-five (25) north, Range five (5) east, W. M., described by metes and bounds as follows:

"Beginning at a point in the south line of said Section twenty-one (21) fifty (50) feet east from, when measured at right angles to, the original right of way of Seattle Belt Line Branch of the

9

KCKASEBURG00000202

14

Northern Pacific Railway Company, as conveyed by deed executed by Roscoe Dunn and Ann Dunn his wife, dated Oct. 4th, 1890 and recorded Dec. 4th, 1890 in volume 116 of deeds, page 114, and running thence north 8° 40' west parallel with and 50 feet distant easterly from said original right of way line a distance of 270 feet to a point of curve; thence northwesterly along a curve to the left having a radius of 716.8 feet, a distance of 492.7 feet; thence north 48° 5' west a distance of 135 feet more or less, to a point on the said easterly line of the original right of way of said railway; thence southeasterly along said original easterly right of way line on a curve to the right having a radius of 859 feet, a distance of 591 feet; thence continuing along said easterly right of way line south 8° 40' east, a distance of 260 feet, more or less, to an intersection of said right of way line with the southern boundary line of said section 21; thence east 50.5 feet, more or less, to point of beginning, containing 0.63 acres, more or less, situated in the County of King, State of Washington."; also,

That certain strip of land described in deed dated August 3, 1904 from John Zwiefelhofer and Aloisia Zwiefelhofer to Northern Pacific Railway Company recorded August 6, 1904 in Book 404 of Deeds, Page 44, records of King County, Washington, said strip of land being described in said deed for reference as follows:

"A strip of land fifty (50) feet wide lying immediately east of the right of way of said Railway Company and extending South from the North line of Section 28, Township 25 North Range 5 East a distance of Six Hundred feet (600) and containing 0.69 acres in the Northwest Quarter of the Northwest quarter (NW¼NW¼) of Section 28 Tp 25 N R 5 E WM.", **EXCEPTING THEREFROM**, that portion of said 50 foot wide strip lying Northerly of a line parallel to and 400.0 feet Southerly of the North line of said NW¼NW¼ of Section 28 ; also,

Parcel 3, of City of Bellevue Short Plat No. 80-16, according to the Short Plat recorded under King County Recording No. 8101239001, **EXCEPTING THEREFROM**, that certain tract of land described in deed dated December 13, 1996 from Burlington Northern Railroad Company to Fibres International, recorded December 13, 1996 as Document No. 9612130870, records of King County, Washington; also,

Tract B, of City of Bellevue Short Plat No. 80-16, according to the Short Plat recorded under King County Recording No. 8101239001; also,

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Railway Company's Main Track centerline, as now located and constructed, upon, over and across the W½W½ Section 28, W½NW¼ Section 33, all in Township 25 North, Range 5 East, W. M., bounded on the North by the North line of said W½W½ Section 28, and bounded on the South by the South line of said W½NW¼ Section 33, **EXCEPTING THEREFROM**, that portion of said 100.0 foot wide right of way lying Easterly of a line parallel with and distant 35 feet Easterly from, measured at right angles to said Railway Company's Main Track centerline as now located and constructed and Northerly of a line parallel to and 400.0 feet Southerly of the North line of said NW¼NW¼ of Section 28, **ALSO EXCEPTING THEREFROM**, that portion of said 100 foot wide Branch Line right of way lying within that certain tract of land described in Special Warranty Deed dated June 29, 1999 from The

10

KCKASEBURG00000203

15

Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 22, 2000 as Document No. 20000522001155, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 22, 1998 as Document No. 9805221787, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Correction Special Warranty Deed dated June 8, 2001 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded January 3, 2003 as Document No. 20030103001327, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Correction Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded December 28, 1998 as Document No. 9812282942, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Correction Special Warranty Deed dated March 17, 2000 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded October 4, 2000 as Document No. 20001004000767, records of King County, Washington, , also;

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across Lots 1, 2, 3, 4 and 8 of Strawberry Lawn, King County Washington, recorded in Volume 4 of Plats, page 30½, King County, Washington recorder, together with such additional widths as are necessary to catch the slopes of the cuts and fills of the roadbed of said Railway in said Lots 1 and 8 of Strawberry Lawn, King County Washington, as delineated in deed dated August 31, 1903 from Henry Hewitt, Jr. and Rocena L. Hewitt to the Northern Pacific Railway Company, **EXCEPTING THEREFROM**, that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26 1998 as Document No. 9805260792, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281537, records of King County, Washington, also;

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across the W½ Section 4, Government Lots 1 and 4, E½W½ Section 9, Government Lot 1, SW¼NW¼, NW¼SW¼ Section 16, Government Lots 4 and 5 Section 17, Government Lots 1, 2, 3 and 4 Section 20, Government Lots 1, 2, 3, 4 and 5 Section 29, all in Township 24 North, Range 5 East, W. M., bounded on the North by the North line of W½ Section 4, and bounded on the South by the South line of said Government Lot 5, Section 29, together with such additional widths or strips of land as are necessary to catch the slopes of the cuts and fills of the roadbed of said Railway in the NW¼NW¼ of said Section 4, which said roadbed is to be constructed having a width at grade of 22 feet and the cuts to have a slope of one to one and the fills to have a slope of one and one half to one, as delineated in deed dated September 8, 1903 from Lake Washington Land Company to Northern Pacific Railway Company, recorded in Volume 386 of Deeds, Page 147, records of King County, Washington, **EXCEPTING THEREFROM**, that certain tract of land described in Correction Special Warranty Deed dated April 30, 2001 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 22, 2001

11

KCKASEBURG00000204

16

as Document No. 20010522000186, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281547, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281545, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281546, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281543, records of King County, Washington, **ALSO EXCEPTING THEREFROM** that certain tract of land described in deed dated June 26, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded April 30, 2001 as Document No. 2001043000097, records of King County, Washington, **ALSO EXCEPTING THEREFROM** that certain tract of land described in deed dated June 26, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded December 15, 1998 as Document No. 9812151238, records of King County, Washington; also,

That certain Tract I and that certain Tract II described in deed dated September 19, 1967 from State of Washington to Northern Pacific Railway Company filed for record December 13, 1967 in Book 5023, Page 546, Auditor's No. 6278130, records of King County, Washington, said Tracts being described in said deed for reference as follows:

"Tract I:  (Fee)

"All those portions of the Southeast quarter of the Northwest quarter and the Northeast quarter of the Southwest quarter, Section 9, Township 24 North, Range 5 East, W.M., lying Westerly of the existing 100 foot right of way of the Northern Pacific Railway Company and Easterly of a line described as follows:  Beginning at a point opposite Station REL. R.R. 737+00 on the Relocated Railroad Center Line (as hereinafter described) and 50 feet Westerly therefrom when measured radially thereto (which point also lies on the Westerly line of said existing railroad right of way); thence Southerly parallel with said relocated railroad center line to a point opposite REL. R.R. 739+00 thereon; thence Southwesterly in a straight line to a point opposite REL. R.R. 740+00 on said relocated railroad center line and 130 feet Westerly therefrom when measured radially thereto; thence Southerly parallel with said relocated railroad center line a distance of 350 feet, more or less, to an intersection with the Northerly right of way line of State Highway Project entitled Primary State Highway No. 2 (SR 90), East Channel Bridge to Richards Road (as hereinafter described); thence North 84°13'42" East along said Northerly right of way line a distance of 125 feet, more or less to an intersection with said Westerly line of said existing railroad right of way and the end of this line description:

"Tract II:  (Fee)

12

KCKASEBURG00000205

17

"All those portions of Lots 13 and 14, Block 1, Mercer Addition, according to the plat thereof recorded in Volume 17 of Plats, page 8, records of King County and of the Northeast quarter of the Southwest quarter, Section 9, Township 24 North, Range 5 East, W.M., lying Northwesterly of the existing 100 foot right of way of the Northern Pacific Railway Company and Southeasterly of a line described as follows: Beginning at the Southeast corner of said Lot 13, which point also lies on the Northwesterly line of said existing railroad right of way; thence Northeasterly in a straight line to a point opposite REL. R.R. 753+00 on the Relocated Railroad Center Line (as hereinafter described) and 50 feet Northwesterly therefrom when measured at right angles thereto; thence Northeasterly in a straight line to a point opposite REL. R.R. 752+00 on said relocated railroad center line and 90 feet Northwesterly therefrom when measured at right angles thereto; thence Northeasterly parallel with said relocated railroad center line a distance of 120 feet, more or less, to an intersection with the Southerly right of way line of State Highway Project entitled Primary State Highway No. 2 (SR 90), East Channel Bridge to Richards Road (as hereinafter described); thence South 79°37'46" East a distance of 105 feet, more or less, to an intersection with said Westerly line of said existing railroad right of way and the end of this line description:

..."RELOCATED RAILROAD CENTER LINE DESCRIPTION:

"Beginning at Railroad Station 734+80 on the existing main line center line of the Northern Pacific Railway Company's Track in the Southeast quarter of the Northwest quarter, Section 9, Township 24 North, Range 5 East, W.M., in the vicinity of Factoria, Washington, which point equals Relocated Railroad Station (hereinafter referred to as REL. R.R.) 734+80; thence South 20°44'04" East a distance of 21.1 feet to REL. R.R. 735+01.10 T.S.; thence on the arc of an increasing spiral curve to the right having an "A" value of 5 a distance of 80 feet to REL. R.R. 735+81.10 S.C.; thence on the arc of a 4° circular curve to the right thru a central angle of 49°18' a distance of 1232.50 feet to REL. R.R. 748+13.60 C.S.; thence on the arc of a decreasing spiral curve to the right having an "A" value of 5, a distance of 80 feet to R.R. 743+93.60 S.T.; thence South 31°46' West a distance of 683.96 feet to REL. R.R. 755+77.56 T.S.; thence on the arc of an increasing spiral curve to the left having an "A" value of 5 a distance of 80 feet to REL. R.R. 756+57.56 S.C. which point equals Railroad Station 756+91.53 ahead on said existing main line center line of track in the Southeast quarter of the Southwest quarter, Section 9, and the end of this center line description.

"SOUTHERLY RIGHT OF WAY LINE OF PRIMARY STATE HIGHWAY NO. 2 (SR 90), EAST CHANNEL BRIDGE TO RICHARDS ROAD:

"Beginning at the Southwest corner of Lot 21, Block 4, Mercer Addition, according to the plat thereof recorded in Volume 17 of Plats, page 8, records of King County, and running thence North 79°37'46" West a distance of 324.08 feet.

"NORTHERLY RIGHT OF WAY LINE OF PRIMARY STATE HIGHWAY NO. 2 (SR 90), EAST CHANNEL BRIDGE TO RICHARDS ROAD:

13

KCKASEBURG00000206

"Beginning at REL. R.R. 746+28.83 P.O.C. on the Relocated Railroad Center Line (as above described); thence South 84°03'37" West a distance of 344.01 feet; thence North 5°56'23" West a distance of 212.5 feet; thence North 80°02'48" East a distance of 109.27 feet; thence North 5°56'23" West a distance of 25 feet; thence North 70°51'54" East a distance of 196.18 feet to the true point of beginning of this line description; thence North 84°13'42" East a distance of 294.43 feet."; also

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across Government Lot 1, Section 32, Township 24 North, Range 5 East, W. M., King County, Washington, bounded on the North and South by the North and South lines of said Government Lot 1; also,

That certain 100.0 foot wide Branch Line right of way, upon, over and across Government Lot 2, Section 32, and Government Lots 3 and 4 Section 31, all in Township 24 North, Range 5 East, W. M., King County, Washington, as described in Deed dated September 8, 1903 from Lake Washington Belt Line Company to Northern Pacific Railway Company, recorded in Volume 386 of Deeds, Page 147, records of King County, Washington. **EXCEPTING THEREFROM,** that certain tract of land described in deed dated September 14, 2001 from The Burlington Northern and Santa Fe Railway Company to Barbee Forest Products, Inc., recorded September 26, 2001 as document No. 20010926000601, **ALSO EXCEPTING THEREFROM,** that portion of that certain tract of land described in deed dated March 23, 1936 from Northern Pacific Railway Company to Frank Walloch, recorded on July 8, 1936 in Volume 1689 of deeds, Page 620 lying within said Government Lot 2, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated May 8, 1990 from Burlington Northern Railroad Company to Robert J. Phelps and Nancy C. Phelps, recorded as document 9005101552, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated March 19, 1992 from Burlington Northern Railroad Company to Gilbert A. Schoos and Alice G. Shoos, recorded April 1, 1992 as document No. 9204011755, also, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in deed dated February 1, 1937 from Northern Pacific Railway Company to Carl Jorgensen and Christine Jorgensen, recorded March 1, 1937 in Volume 1721 of deeds, Page 63, **ALSO EXCEPTING THEREFROM,** that portion of that certain tract of land described in Quitclaim Deed dated February 28, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded April 21 1999 as Document Number 9904210268, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that portion of that certain tract of land described in Correction Deed dated May 26, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000619, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that portion of that certain tract of land described in Correction Deed dated May 5, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000620, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that portion of that certain tract of land described in Quitclaim Deed dated June 26, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000618, records of King

14

KCKASEBURG00000207

19

County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Correction Deed dated May 6, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000621, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Correction Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded October 30, 2000 as Document Number 20001030000428, records of King County, Washington; also,

That certain tract of land described in deed dated March 17, 1904 from The Lake Washington Land Company to Northern Pacific Railway Company recorded April 1, 1904 in Volume 374 of deeds, Page 635, situated in Lot 3, Section 31, Township 24 North, Range 5 East, W. M., King County, Washington, said tract being described in said deed for reference as follows:

"All that portion of said Lot three (3) lying between the eastern line of the right of way of the Northern Pacific Railway Company over and across said lot and a line drawn parallel with and twelve and one-half (12-1/2) feet distant easterly from the center line of said Seattle Belt Line Branch of the Northern Pacific Company as the same is now temporarily located and constructed over and across said lot, and containing on-fourth of an acre, more or less ..." **EXCEPTING THEREFROM**, that portion of that certain tract of land described in Quitclaim Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded April 21, 1999 as Document Number 9904210268, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Correction Deed dated May 26, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000619, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Correction Deed dated May 5, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000620, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Quitclaim Deed dated June 26, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000618, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Correction Deed dated May 6, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded June 17, 1999 as Document Number 19990617000621, records of King County, Washington, **ALSO EXCEPTING THEREFROM**, that portion of that certain tract of land described in Correction Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded October 30, 2000 as Document Number 20001030000428, records of King County, Washington; also,

That portion of said Railway Company's property situated in Government Lot 1, Section 6, Township 23 North, Range 5 East, W. M., King County, Washington, lying Southwesterly of a line parallel with and distant 50.0 feet Northeasterly from, measured at right angles to said Railway Company's Branch Line Main Track centerline as originally located and constructed, and Northeasterly of the Southwesterly boundary of that certain 100 foot strip described in Judgment and decree of Appropriation, No. 40536, dated February 8, 1904 in the Superior Court

15

KCKASEBURG00000208

20

of the State of Washington in and for the County of King, bounded on the North by the North line of said Lot 1, Section 6, and bounded on the South by a line radial to said Railway Company's Main Track centerline, as now located and constructed at a point distant 65.5 feet Northwesterly of the East line of said Lot 1, Section 6, as measured along said Main Track centerline.

Together with an easement for a railway right of way over those second class shorelands as described in "Judgment and Decree of Appropriation" dated February 8, 1904, and entered in King County Superior Court Cause No. 40536, a certified copy of which was recorded under Recording No. 287565, bounded on the South by a line radial to said Railway Company's Main Track centerline, as now located and constructed at a point distant 65.5 feet Northwesterly of the East line of said Lot 1, Section 6, Township 23 North, Range 5 East.

**EXCEPTING FROM THE ABOVE THE FOLLOWING TWO SEGMENTS THEREOF AS CONVEYED TO SOUND TRANSIT AND THE CITY OF KIRKLAND DESCRIBED AS FOLLOWS:**

**1.)     EXCEPTING FROM SAID BNSF RAILWAY COMPANY'S (FORMERLY NORTHERN PACIFIC RAILWAY COMPANY) WOODINVILLE (MP 23.45) TO KENNYDALE (MP 5.0), WASHINGTON BRANCH LINE RIGHT OF WAY AS DESCRIBED ABOVE THAT PORTION THEREOF CONVEYED TO SOUND TRANSIT PURSUANT TO DEED RECORDED APRIL 11, 2012, UNDER RECORDING NO. 20120411001173, AND DESCRIBED AS FOLLOWS:**

All that portion of the former BNSF Railway Company's Woodinville to Kennydale Washington Branch Line right of way lying within the W1/2W1/2 Section 28, and, lying within the north 700 feet of the W1/2NW1/4 Section 33, all in Township 25 North, Range 5 East, W.M.

All of which is a portion of the former BNSF Railway Company's (formerly Northern Pacific Railway Company) Woodinville (MP 23.45) to Kennydale (MP 5.0), Washington Branch Line right of way, varying in width on each side of said Railway Company's Main Track centerline, as now located and constructed upon, over and across King County, Washington, more particularly described as follows, to-wit:

That Portion of Block 7, of Kirkland Syndicate's Second Addition to Kirkland Washington, situate in the SE¼SE¼ Section 20, and that portion of said Railway Company's property situate in the SW¼SW¼ Section 21, and in the NW¼NW¼ Section 28, all in Township 25 North, Range 5 East, W. M., lying Easterly of a line parallel with and distant 50.0 feet Westerly from, measured at right angles and/or radially to said Railway Company's Main Track centerline as now located and constructed and Westerly of a line parallel with and distant 50.0 feet Westerly from, measured at right angles to said Railway Company's Main Track centerline as originally located and constructed, bounded on the West by the West line of said Block 7 and its Northerly prolongation, and bounded on the South by the intersection of said parallel lines, together with any right, title and interest, if any, to Houghton Street and Railroad Avenue of Kirkland Syndicate's Second Addition to Kirkland Washington; also,

16

KCKASEBURG00000209

That certain strip of land described in deed dated August 3, 1904 from John Zwiefelhofer and Aloisia Zwiefelhofer to Northern Pacific Railway Company recorded August 6, 1904 in Book 404 of Deeds, Page 44, under recording No. 305888 records of King County, Washington, said strip of land being described in said deed for reference as follows:

"A strip of land fifty (50) feet wide lying immediately east of the right of way of said Railway Company and extending South from the North line of Section 28, Township 25 North Range 5 East a distance of Six Hundred feet (600) and containing 0.69 acres in the Northwest Quarter of the Northwest quarter (NW¼NW¼) of Section 28 Tp 25 N R 5 E WM.", EXCEPTING THEREFROM, that portion of said 50 foot wide strip lying Northerly of a line parallel to and 400.0 feet Southerly of the North line of said NW¼NW¼ of Section 28 ; also,

Parcel 3, of City of Bellevue Short Plat No. 80-16, according to the Short Plat recorded under King County Recording No. 8101239001, **EXCEPTING THEREFROM**, that certain tract of land described in deed dated December 13, 1996 from Burlington Northern Railroad Company to Fibres International, recorded December 13, 1996 as Document No. 9612130870, records of King County, Washington; also,
Tract B, of City of Bellevue Short Plat No. 80-16 according to the Short Plat recorded under King County Recording No. 8101239001, also,

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Railway Company's Main Track centerline, as now located and constructed, upon, over and across the W½W½ Section 28, W½NW¼ Section 33, all in Township 25 North, Range 5 East, W. M., bounded on the North by the North line of said W½W½ Section 28, and bounded on the South by the South line of said W½NW¼ Section 33, EXCEPTING THEREFROM, that portion of said 100.0 foot wide right of way lying Easterly of a line parallel with and distant 35 feet Easterly from, measured at right angles to said Railway Company's Main Track centerline as now located and constructed and Northerly of a line parallel to and 400.0 feet Southerly of the North line of said of NW¼NW¼ Section 28, ALSO EXCEPTING THEREFROM, that portion of said 100 foot wide Branch Line right of way lying within that certain tract of land described in Special Warranty Deed dated June 29, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 22, 2000 as Document No. 20000522001155, records of King County, Washington, ALSO EXCEPTING THEREFROM, that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 22, 1998 as Document No. 9805221787, records of King County, Washington, ALSO EXCEPTING THEREFROM, that certain tract of land described in Correction Special Warranty Deed dated June 8, 2001 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded January 3, 2003 as Document No. 20030103001327, records of King County, Washington, ALSO EXCEPTING THEREFROM, that certain tract of land described in Correction Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded December 28, 1998 as Document No. 9812282942, records of King County, Washington, ALSO EXCEPTING THEREFROM, that certain tract of land described in Correction Special Warranty Deed dated March 17, 2000 from The Burlington Northern and

17

KCKASEBURG00000210

Santa Fe Railway Company to ANT, LLC recorded October 4, 2000 as Document No. 20001004000767, records of King County, Washington.

**2.) ALSO EXCEPTING FROM SAID BNSF RAILWAY COMPANY'S (FORMERLY NORTHERN PACIFIC RAILWAY COMPANY) WOODINVILLE (MP 23.45) TO KENNYDALE (MP 5.0), WASHINGTON BRANCH LINE RIGHT OF WAY AS DESCRIBED ABOVE THAT PORTION THEREOF CONVEYED TO THE CITY OF KIRKLAND PURSUANT TO DEED RECORDED April 13, 2012, UNDER RECORDING NO. 20120413001315 AND DESCRIBED AS FOLLOWS:**

That portion of Sections 5, 8, 17 and 20, Township 25 North, Range 5 East, W.M. and Sections 28, 32 and 33, Township 26 North, Range 5 East, W.M., in King County, Washington, lying within the eight (8) tracts of land described as follows:

Tract 1

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed upon, over and across the S½,NE¼ and the NW¼,SE¼ and the SW¼ of Section 28, the W½,NW¼ and the NW¼,SW¼ of Section 33, the SE¼ of Section 32, all in Township 26 North, Range 5 East, W.M., bounded on the East by a line that is parallel with and 42.00 feet west of, when measured at right angles to, the centerline of 132nd Avenue NE (aka Slater Avenue NE or 132nd Place NE) as surveyed under King County Survey No. 28-26-5-19 and bounded on the South by South line of said SE¼ of Section 32, **EXCEPTING THEREFROM,** that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26, 1998 as Document No. 9805260805, records of King County, Washington; **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 30, 1998 as Document No. 9807301468, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26 1998 as Document No. 9805260791, records of King County, Washington; **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Correction Quitclaim Deed dated January 6, 2000 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded February 11, 2000 as Document No. 20000211000454, records of King County, Washington;

Tract 2

That portion of that certain 100.0 foot wide Branch Line right of way in the City of Kirkland, Washington, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across Blocks 3, 4, 5, 6, 11, 12, 13, 14, 18, 19, 23, 24, 25 and 26, the vacated alley between Blocks 13 and 14, and vacated Arlington Avenue between Blocks 14 and 19, as said Blocks and Streets are shown on plat of Lake Avenue Addition to Kirkland as recorded in Volume 6 of Plats, Page 86, Records of said King County, together with any right title and interest, if any to those portions of Victoria Avenue, Harrison Avenue, Moreton

18

KCKASEBURG00000211

Avenue, Jefferson Avenue, and Washington Avenue and Maple Street and alleys within said Blocks which lie within said 100.0 feet wide Branch Line right of way, **EXCEPTING THEREFROM,** that portion of Lot 3, Block 5, Lake Avenue Addition to Kirkland, according to the official plat thereof in the office of the Auditor of King County, Washington lying between two lines drawn parallel with and distant, respectively, 34.0 feet and 50.0 feet Westerly of, as measured at right angles from The Burlington Northern and Santa Fe Railway Company's (formerly Northern Pacific Railway) Main Track centerline as now located and constructed upon, over, and across said Block 5;

Tract 3
That portion of that certain 100.0 foot wide Branch Line right of way in the City of Kirkland, Washington, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across Blocks 220, 223, 224, 232, 233, 238, and 241 as said Blocks are shown on the Supplementary Plat to Kirkland as filed in Volume 8 of Plats at Page 5, records of said King County, together with any right title and interest, if any to those portions of Massachusetts Avenue, Madison Avenue, Michigan Avenue, Olympia Avenue, Piccadilly Avenue, Cascade Avenue, Clarkson Avenue, Fif Street, and alleys within said Blocks which lie within said 100.0 foot wide Branch Line right of way;

Tract 4
That portion of Lots 1, 2, 4, 37, and all of Lots 3, 38, and 39, Block 227 as said Lots and Blocks are shown on the Supplementary Plat to Kirkland as filed in Volume 8 of Plats, at Page 5, records of said King County, which lie Northeasterly of a line parallel with and distant 50 feet Southwesterly from measured at right angles to said Railway Company's Main Track centerline as now located and constructed and Southwesterly of a line parallel with and distant 50 feet Northeasterly from, measured at right angle to said Railway Company's Main Track centerline as originally located and constructed;

Tract 5
That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed upon, over and across the S½,SE¼ of Section 5, NW¼,NE¼ and the E½,NW¼ and the E½,SW¼ of Section 8, all in Township 25 North, Range 5 East, W. M., bounded on the North by the South line of.way line of Clarkson Avenue, City of Kirkland, Washington, and bounded on the West by the West line of said E½,SW¼ of Section 8, **EXCEPTING THEREFROM,** that certain tract of land described in Special Warranty Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded May 26, 1998 as Document No. 9805260787, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** that certain tract of land described in Correction Quitclaim Deed dated May 15, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded August 5, 1999 as Document No. 19990805001402, records of King County, Washington, **ALSO EXCEPTING THEREFROM** that certain tract of land described in Deed dated February 24, 1998 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded July 28, 1998 as Document No. 9807281544, records of King County, Washington,

19

KCKASEBURG00000212

24

Tract 6

That certain 0.23 acre tract of land described in deed dated July 15, 1903 from Samuel F. French to Northern Pacific Railway Company recorded August 8, 1903 in Book 361 of Deeds, Page 249, records of King County, Washington, said 0.23 acre tract being described in said deed for reference as follows:

"Commencing at a point in the east line of Lot four (4), Section eight (8), Township twenty-five (25) North, Range five (5) east, W.M., that is 395 feet north of the southeast corner of said lot, and running thence west parallel with the south line of said Lot four (4) 67 feet, more or less, to a point that is 50 feet distant from, when measured at right angles to, the center line of the proposed Seattle Belt Line Branch of the Northern Pacific Railway Company as the same is now located, staked out and to be constructed across said Section eight (8); thence running northeasterly parallel with said railway center line 200 feet; thence westerly at right angles to said railway center line 30 feet; thence northeasterly parallel with said railway center line, and 80 feet distant therefrom, 130 feet, more or less, to the east line of said Lot four (4); thence south along said east line of said lot four (4) 322 feet, more or less, to the point of beginning; containing 0.23 acres, more or less.";

Tract 7

That certain strip of land described in deed dated March 3, 1904 from Seattle and Shanghai Investment Company to Northern Pacific Railroad Company recorded March 9, 1904 in Book 387, Page 243, records of King County, Washington, said strip being described in said deed for reference as follows:

"A strip of land Two Hundred twenty-five (225) feet in width across that certain parcel of land designated as Tract "B" in deed from the Kirkland Land and Improvement Company to H.A. Noble, dated July 13, 1899 of record in the Auditor's office of King County, Washington in Volume 245 of Deeds, at page 41, reference thereto being had.  Said strip of land hereby conveyed, having for its boundaries two lines that are parallel with and respectively distant One Hundred (100) feet easterly from, and One Hundred Twenty-Five (125) feet westerly from, when measured at right angles to, the center line of the Seattle Belt Line branch of the NORTHERN PACIFIC RAILWAY COMPANY, as the same is now constructed and located across said Tract "B", which said Tract "B" is located in Section 17, Township 25 North, Range 5 East, Willamette Meridian";

Tract 8

That portion of that certain 100.0 foot wide Branch Line right of way, being 50.0 feet on each side of said Main Track centerline, as now located and constructed, upon, over and across Government Lot 4 of Section 8, Government Lots 1, 2, and 3 and the E½,SW¼ of Section 17, and the NE¼,NW¼ and the NE¼ of Section 20, all in Township 25 North, Range 5 East, W.M., bounded on the North by the South line of that certain herein above described 0.23 acre tract of land described in deed dated July 15, 1903 from Samuel F. French to Northern Pacific Railway Company recorded August 8, 1903 in Book 361 of Deeds, Page 249, records of King County, Washington and the East line of said Government Lot 4 of Section 8, and bounded on the South by the westerly margin of 108th Avenue NE as described in the Quit Claim Deed from State of

20

KCKASEBURG00000213

25

Washington to the City of Bellevue recorded under Recording Number 9303190367, records of said King County, together with such additional widths as may be necessary to catch the slope of the fill in N½ of said Government Lot 2, Section 17 as delineated in the 7th described parcel in deed dated June 20, 1903 from Kirkland Land and Improvement Company to Northern Pacific Railway Company recorded June 26, 1903 in Book 352, Page 582, records of King County, Washington. **EXCEPTING THEREFROM,** that portion of said 100.0 foot wide right of way lying within said hereinabove described parcel of land designated as Tract "B" in deed from the Kirkland Land and Improvement Company to H.A. Noble dated July 13, 1899 of record in the Auditor's office of King County, Washington in Volume 245 of Deeds, at page 41.

(Tracts 1 – 8 being a portion of the parcel of land conveyed by BNSF Railroad Company to the Port of Seattle by Quit Claim Deed recorded under Recording Number 20091218001535, records of said King County.)



21

KCKASEBURG00000214

26

## PARCEL C:

### MP 0.00 – 3.4 Redmond Spur

All that portion of BNSF Railway Company's (formerly Northern Pacific Railway Company) Redmond Spur Right of Way, varying in width on each side of said Railway Company's Main Track centerline, as now located and constructed, between Woodinville (Milepost 0.0) to Redmond (Milepost 3.4), King County, Washington, more particularly described as follows, to-wit:

That certain tract of land described in deed dated December 28, 1931 from John DeYoung and Ellen DeYoung to Northern Pacific Railway Company recorded in Volume 1511 of Deeds, Page 495, records of King County, Washington, lying in the N/2 of SE/4 Section 9, Township 26 North, Range 5 East, W. M., **EXCEPTING THEREFROM,** that portion of that certain tract of land described in deed dated November 17, 1998 from The Burlington Northern and Santa Fe Railway Company to Tjossem Properties IV, LLC and Tjossem Properties V, LLC, recorded December 24, 1998 as Instrument No. 9812240021, which lies within said tract described in deed dated December 28, 1931; also,

That portion of that certain 100.0 foot wide Redmond Spur right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the E½ Section 9, the NE¼NE¼ Section 16, the NW¼ Section 15, all in Township 26 North, Range 5 East, W. M., bounded Northerly by a line concentric with and distant 50.0 feet Southwesterly from, measured radially to said Railway Company's Seattle to Sumas Main Track centerline as now located and constructed, and bounded Southerly by the South line of said NW¼ Section 15, **EXCEPTING THEREFROM,** that portion of that certain tract of land described in deed dated November 17, 1998 from The Burlington Northern and Santa Fe Railway Company to Tjossem Properties IV, LLC and Tjossem Properties V, LLC, recorded December 23, 1998 as Instrument No. 9812240021, which lies within said 100.0 foot wide right of way, **ALSO EXCEPTING THEREFROM,** that portion of that certain 100.0 foot wide Seattle Belt Line right of way described in deed dated May 19, 1903 from Mary B. Hansen and Anders Hansen to Northern Pacific Railway Company recorded May 28, 1903 in Volume 361 of Deeds, Page 48, records of King County, Washington, **ALSO EXCEPTING THEREFROM,** the Northeasterly 25.0 feet of said 100.0 foot wide Redmond Spur right of way, bounded on the South by the South line of said E½ Section 9 and bounded Northwesterly by a line perpendicular to said Railway Company's Main Track centerline, at a point distant 1,060.0 feet Northwesterly of said South line of the E½ Section 9, as measured along said Main Track centerline, being that certain tract of land described in Deed dated June 29, 1999 from The Burlington Northern and Santa Fe Railway Company to ANT, LLC recorded February 11, 2003 as Document No. 20030211000429, records of King County, Washington; also,

That portion of that certain 50.0 foot wide Redmond Spur right of way, being 25.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across

22

KCKASEBURG00000215

27

the SW¼ Section 15, Township 26 North, Range 5 East, W. M., bounded Northerly and Easterly by the North and East lines of said SW¼ Section 15; also,

That portion of that certain 100.0 foot wide Redmond Spur right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the SW¼SE¼ of Section 15, Township 26 North, Range 5 East, W. M., bounded Westerly and Southerly by the West and South lines of said SW¼SE¼ of Section 15; also,

That portion of that certain 30.0 foot wide Redmond Spur right of way, being 15.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the W½NE¼ Section 22, Township 26 North, Range 5 East, W. M., bounded Northerly and Southerly by the North and South lines of said W½NE¼ Section 22; also,

That portion of that certain 100.0 foot wide Redmond Spur right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the NW¼SE¼ of Section 22, Township 26 North, Range 5 East, W. M., bounded Northerly and Southerly by the North and South lines of said NW¼SE¼ of Section 22; also,

That portion of that certain 50.0 foot wide Redmond Spur right of way, being 25.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the SW¼SE¼ of Section 22, and the W½NE¼ Section 27, Township 26 North, Range 5 East, W. M., bounded Northerly by the North line of said SW¼SE¼ of Section 22, and bounded Westerly by the West line of said W½NE¼ Section 27; also,

That portion of that certain 100.0 foot wide Redmond Spur right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the SE¼SE¼NW¼ Section 27, Township 26 North, Range 5 East, W. M., bounded Easterly and Southerly by the East and South lines of said SE¼SE¼NW¼ Section 27 ;also,

That portion of that certain 100.0 foot wide Redmond Spur right of way, being 50.0 feet on each side of said Main Track centerline, as originally located and constructed, upon, over and across the S½ Section 27, Township 26 North, Range 5 East, W. M., bounded on the North by the North line of said S½ Section 27 and on the South by the South margin of Northeast 124th Street extended.

23

KCKASEBURG00000216

28

# EXHIBIT B

v. 359

892

Given under my hand and official seal this 20th day of July A.D. 1903

Wm. Underhill.

Notary Public in and for the State of Washington residing at Redmond in said County

Filed for record at request of Grantee Jul. 21 1903 at 33 min past 9 A.M.

County Auditor.

269500   J. R. Lewis et al.

to                                                    Deed.

Northern Pacific Railway Company

Deed

This Indenture made this 21st day of June A.D. 1903 by and between Mary C. Kittinger and George B. Kittinger, her husband, of Seattle, State of Washington; The Puget Sound National Bank, a body corporate under the laws of the United States, doing business at Seattle in the State of Washington, and J. R. Lewis of the City of San Jose, State of California the parties of the first part and The Northern Pacific Railway Company, a body corporate under the laws of Wisconsin, the party of the second part,

Witnesseth, that the said parties of the first part are the owners in fee simple of the following premises, situate in the County of King in the State of Washington, to-wit: lots numbered one (1), two (2) and three (3) of section twenty (20) in township twenty four (24) north of range five (5) east, which said lands lie next to and front upon the eastern shore of Lake Washington and have appurtenant thereto certain riparian and littoral rights,

And whereas, the said party of the second part wishes to construct its railroad over and across said lands on the westerly side thereof near to and along the shores of said lake and has made a survey for said line of said road and staked the same out, and wishes to secure for

EXHIBIT

E

PLF006491

30

398

such purposes the right of way over and across said lands and to secure that end has bargained for and purchased of the parties of the first part, the following described strip, piece and parcel of said lands above named, to wit;— A strip, piece or parcel of said lands one hundred (100') feet in width, in, over and across said lots one(1), two(2) and three(3) of said sec. twenty (20), township twenty four(24), north of range five (5) east, having for its boundaries to lines parallel with and equidistant from the center line of the road of said party of the second part, as the same is now surveyed over and across the said premises, together with such additional width as may be necessary to catch the slopes, cuts and fills of the road bed of said railroad and containing a total area of ten and 6/10 acres more or less.

Now therefore the said parties of the first part, for and in consideration of the sum of Two thousand one hundred and fifty dollars, to them in hand paid, do hereby grant, bargain, sell and convey unto the said party of the second part, the said strip, piece and parcel of land one hundred feet in width as hereinbefore described and containing ten and 6/10 acres, more or less, provided, however, and it is understood and agreed by and between the parties of the first part and the parties of the second part that the said first parties reserve from this grant for themselves, heirs, successors and assigns, all littoral and riparian rights appurtenant to the lands herein conveyed, also the right of a highway crossing over and across the said lands granted, to and from the lake shore to the lands lying next easterly of the lands herein granted, provided that in passing and repassing, the road of the second party is in no wise obstructed or injured, reserving the right to mine coal, and reserving also the right to build an overhead crossing

PLF006492

394

upon and over said property and tunnels under the same, provided, however, that such overhead crossing and tunnels shall be so located, constructed and operated as not to interfere with the possession or use of the said granted lands, by the said second party, its successors, or assigns, and that the plans for such overhead crossing shall be first submitted to and approved by the superintendent of the first party before the same shall be built or constructed, and no tunnels shall be made or excavated under said granted lands without the plans for the same are first submitted to and approved by the chief engineer of the second party, it being understood that the crossing herein provided for shall have a clearance of at least twenty three feet above the rails of the railroad track of the second party as constructed and from time to time changed.

Witness the hands and seals of the first parties, with the President of the said Puget Sound National Bank, and the seal of the said bank, this 29th day of June, 1903.

In the presence of,                          J. R. Lewis        (L.S)
Witnesses to J R Lewis's            Mary C Kittinger      (L.S)
signature                                       George B. Kittinger  (L.S)
John Bell     For a The Puget Sound Nat'l Bank of Seattle (L.S)
C.P. Cooper.  Corporate  by Jacob Furth, its Prst.  (L.S)
              Seal              R.V. Ankeny.        (L.S)
                                    as Cashier.
State of California }
County of Santa Clara } ss.

On this 29th day of June, 1903, before me, the undersigned, a Notary Public in and for the said county personally appeared J. R. Lewis to me personally known to be the individual named in and who executed the within and foregoing instrument, and acknowledged to me that he signed and sealed the same as his free act and deed, freely and voluntarily, for the uses and purposes therein mentioned.

PLF006493

52

269500

Deed

JR Lewis et al

to

Northern Pacific Railway Company

Deed

This indenture made this 24th day of June A.D. 1903 by and between Mary C. Kittinger and George B. Kittinger, her husband of Seattle state of Washington; the Pugent Sound National Bank a body corporate under the laws of the United States doing business at Seattle in the State of Washington and J.R. Lewis of the city of San Jose, State of California, parties of the first part and the Northern Pacific Railway Company a body corporate under the laws of Wisconsin, the party of the second part. Witnesseth that the said parties of the first part are the owners in fee simple of the following premises, situate in the County of King State of Washington, to wit: Lots number One (1), Two (2), and Three (3) of Section Twenty (20) Township Twenty-Four (24) north of range Five (5) East, which said lands lie next to and a front upon the eastern shore of lake Washington and have appurtenant thereto certain riparian and littoral rights

And whereas, the said party of the second part wishes to construct its railroad over and across said lands on the westerly side thereof near to and along the shores of said lake and has made a survey for said line of said road and staked the same out, and wishes to secure for such purposes the right of way over and across said lands and to secure that end has bargained for and purchased of the parties of the first part, the following described strip, piece and parcel of said lands above named to wit: a strip, piece or parcel of said lands One Hundred (100) feet in width, in, over and across said Lots One (1), Two (2), and Three (3) of said section Twenty (20) township Twenty-Four (24) north of range Five (5) east having for its boundaries two lines parallel with and equidistant from the centerline of the road of said party of the second part as the same is now surveyed over and across the said premises together with such additional widths as may be necessary to catch the slopes cuts and fills of the road bed of said railroad in containing a total area of Ten and 5/10 acres more or less.

Now therefore the said parties of the first part, for and in consideration of the sum of Two Thousand One Hundred and Fifty Dollars to them in hand paid do hereby grant, bargain, sell, and convey unto the said party of the second part the said strip, piece, and parcel of land One Hundred feet in width as hereinbefore described and containing Ten and 5/10 acres more or less provided, however, and it is understood and agreed by and between the parties of the first part and the parties of the second part that the said first parties reserve from this grant for themselves _____ heirs, successors and assigns, all littoral and riparian rights appurtenant to the lands herein conveyed, also the right of a highway crossing over and across the said lands granted to and from the lakeshore to the lands lying next easterly the lands herein granted. Provided that in passing and repassing the road of the second party is in no wise obstructed or injured, reserving the right to mine coal, and reserving also the right to build an overhead crossing upon an over

said property and tunnels under the same, provided, however, that such overhead crossing and tunnels shall be so located and constructed and operated as not to interfere with the possession or use of the said granted lands, by the said second party, its successors, or its assigns and that the plans for such overhead crossing shall first be submitted to and approved by the superintendant of the first party before the same shall be built or constructed and no tunnels shall be made or excavated under said granted lands without the plans for the same are first submitted to an approved by the chief engineer of the second party.  It being understood that the crossing herein provided for shall have a clearance of at least Twenty-Three feet above the rails of the railroad track of the second party as constructed and from time to time changed.

Witness the hands and seals of the first parties with the president of the said Pugent Sound National Bank and the seal of the said bank this 24th day of June 1903.

In the presence of witnesses to J.R. Lewis's signature, John Bell, CP Cooper.

Signed JR Lewis

Mary Kittinger

George V. Kittinger

Pugent Sound National Bank of Seattle, by Jacob Furth, its president

R.N. Ankeny as cashier

[Notary Statement]

4847-2377-5247, v. 1

34

# EXHIBIT C

147

287093   Lake Washington Land Company

Warranty Deed.

to

Northern Pacific Railway Company

Deed

The Grantor the Lake Washington Land Company, a Corporation of the State of Washington, in consideration of the sum of Two Thousand ($2000.00) Dollars, in hand paid, conveys and warrants unto the Northern Pacific Railway Company, a Wisconsin Corporation, the following described real estate situated in the County of King, State of Washington, to-wit:

All those portions of the following Government subdivisions lying within the exterior lines of a right of way one hundred (100) feet in width which has for its boundaries two lines that are parallel with and equidistant from the center line of the Seattle Belt Line Branch of the Northern Pacific Railway Company as the same is now located, staked out and now in process of construction over and across or adjacent to said Government subdivisions, to-wit:

The northwest quarter of the northwest quarter (N.W.¼ of N.W.¼) and the Southwest quarter of the northwest quarter (S.W.¼ of N.W.¼) of Section thirty-three (33) Township twenty-five (25) north, range five (5) east, Willamette Meridian; Lot four (4) (or the northwest quarter of the northwest quarter N.W.¼ of N.W.¼) The northwest quarter of the Southwest quarter (N.W.¼ of S.W.¼), and the Southwest quarter of the Southwest quarter (S.W.¼ of S.W.¼) of Section four (4), Township twenty-four (24) North; Range five (5) east, Lot four (4) of Section twenty (20), Township twenty-four (24) north, Range five (5) east, Lots one (1) two (2) and Three (3) of Section twenty-nine (29), Township twenty-four (24) north, Range five (5) east; Lot Two (2) of Section thirty-two (32), Township twenty-four (24) north, Range five (5) east; Lots three (3) and four (4) of Section thirty-one (31), Township twenty-four (24) north, range five (5) east, and Lots Two (2), three (3) and four (4) of Section five (5), Township twenty-three (23) north, Range five (5) east; Lots one (1), three (3) and four (4), the northeast quarter of the northwest quarter (N.E.¼ of N.W.¼), the southeast quarter of the northwest quarter (S.E.¼ of N.W.¼) the northeast quarter of the southwest quarter (N.E.¼ of S.W.¼) the southeast quarter of the Southwest quarter (S.E.¼

36

148

of Section nine (9), Township Twenty four (24) north, Range five (5) east, excepting therefrom any portions of any such subdivisions in said sections nine (9) included within the following descriptions:

Beginning at a point on the dividing line between the east half of the northwest quarter ($E^{1/2}$ of N.W.¼) and the west half of the northwest quarter (W.½ of N.W.¼) 1855 feet south of the north line of said section nine (9); thence east at right angles 300 feet; thence south 1320 feet; thence west to the Government meander line of Mercer Slough; thence northerly along said meander line to a point 1855 feet south of the north line of said section; thence east to the place of beginning, containing 37 acres more or less.

Also such additional widths or strips of land in any of said Government subdivision as may be necessary to catch the slopes of the cuts and fills of the road bed of such railroad which roadbed is to be constructed having a width at grade of twenty-two (22) feet and the cuts to have a slope of one to one and the fills to have a slope of one-and-one-half to one.

The Lake Washington Land Company for itself, its successors and assigns, hereby assigns to said Northern Pacific Railway Company its rights to purchase from the State of Washington any of the shore lands in front of any of the above named Government subdivisions embraced within a strip of land one hundred (100) feet in width, being fifty (50) feet on each side of the center line of the Seattle Belt Line Branch of the Northern Pacific Railway Company as the same is located, staked out and now in the process of of construction across said shore lands but reserves to itself, its successors and assigns, the preference right to purchase from the State of Washington all shore lands outside of said one hundred (100) foot strip.

In witness whereof the said Lake Washington Land Company has caused these presents to be executed by its President and Secretary; thereunto duly authorized, and its corporate seal to be affixed this 8 day of Sept. A.D. 1903.

Lake Washington Land Company
By F. H. Brownell, Its President
Attest: J. C. Conrad, Its Secretary.

State of Washington County of Snohomish — s.s.

On this 8 day of Sept. A.D. 1903, before me, a notary public, personally appeared F. H. Brownell and

37

149

S. C. Conseil, to me known to be the President and Secretary, respectively, of the corporation that executed the within and foregoing instrument and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that they were authorized to execute said instrument and that the seal affixed is the corporate seal of said corporation.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year first above written.

J. A. Coleman

Notary Public in and for the State of Washington residing at Everett.

Filed for record at request of Jay Sedgwick Feb. 3, 1904 at 58 min. past 10 A. M.

County Auditor.

287120   Adolph Baker et ux                    Warranty Deed.
                to
         Harry Krutz.
                    Warranty Deed.

This indenture witnesseth, that Adolph Baker and Mary Baker, his wife, parties of the first part, for and in consideration of the sum of One Dollar, in lawful money of the United States of America; to them in hand paid by Harry Krutz, party of the second part, have granted, bargained and sold, and by these presents do grant, bargain, sell and convey unto the said party of the second part, and to his heirs and assigns, the following described premises, situate, lying and being in the County of King, and State of Washington, to wit:

Commencing at a point on the west boundary line of Section six in Township Twenty-Six North, of Range Seven East of the Willamette Meridian, which is twenty-five hundred twenty-seven and 70/100 feet south of the quarter section corner on said west boundary line, said point also being on County road located along

38

Lake Washington Land Company

187095

#12

Warranty Deed

to

Northern Pacific Railway Company

Vol 386/p. 147

Deed

The Grantor the Lake Washington Land Company, a Corporation of the State of Washington, in consideration of the sum of Two Thousand ($2000.00) Dollars, in hand paid, conveys and warrants to the Northern Pacific Railway Company, a Wisconsin Corporation, the following described real estate, situated in the County of King, State of Washington, to wit:

All those portions of the following Government subdivisions lying within the exterior lines of a right of way one hundred (100) feet in width, the two boundaries of which are parallel with and equidistant from the center line of the Seattle Belt Branch of the Northern Pacific Railway Company as the same is now located, staked out and now in process of construction over and across adjacent to said Government subdivisions, to-wit:

The northwest quarter of the northwest quarter (N.W.¼ of N.W.¼) and the southeast quarter of the northwest quarter (S.E.¼ of N.W.¼) of Section thirty-three (33), Township twenty-five (25) North, range five (5) east, Willamette Meridian; lots four (4), for the northwest quarter of the northwest quarter (N.W.¼ of N.W.¼) the northwest quarter of the southwest quarter (N.W.¼ of S.W.¼), and the southwest quarter of the southwest quarter (S.W.¼ of S.W.¼) of Section four (4), Township twenty-five (25) North, Range five (5) east; Lots four (4) of Section five (5) Township twenty-four (24) North Range five (5) east; Lots two (2), and three (3) of Section twenty...

in process &c., &c., and

suit to said Government subd. issues, To-wit:

The northwest quarter of the northwest quarter (N.W.¼ of N.W.¼) and the southwest quarter of the northwest quarter (S.W.¼ of N.W.¼) of section thirty-three (33), Township twenty-five (25) north, range five (5) east, Willamette Meridian;

Lot four (4) (or the northwest quarter of the northwest quarter N.W.¼ of N.W.¼) the northwest quarter of the southwest quarter (N.W.¼ of S.W.¼), and the southwest quarter of the southwest quarter (S.W.¼ of S.W.¼) of Section four (4), Township Twenty-four (24) north, Range five (5) east; Lot four (4) of Section twenty (20), Township Twenty-four (24) north, Range five (5) east; Lots one (1) two (2) and three (3) of Section Twenty-nine (29), Township twenty-four (24) north, Range five (5) east; Lot Two (2) of Section thirty-two (32), Township twenty-four (24) north, Range five (5) east; Lots three (3) and four (4) of Section thirty-one (31), Township twenty-five (25) north, range five (5) east; and Lots Two (2), three (3) and four (4) of Section five (5), Township twenty-three (23) north, Range five (5) east; Lots one (1), three (3) and four (4), the northeast quarter of the northwest quarter (N.E.¼ of N.W.¼), the southeast quarter of the northwest quarter (S.E.¼ of N.W.¼), the northeast quarter of the southwest quarter (N.E.¼ of S.W.¼) and the southeast quarter of the southwest quarter (S.E.¼ of S.W.¼)

of section nine (9) township twenty-four (24) north, Range five (5) east, excepting therefrom any portions of any such subdivisions in said section nine (9) included within the following description —

Beginning at a point on the dividing line between the east half of the northwest quarter (E½ of N.W.¼) and the west half of the northwest quarter (W½ of N.W.¼) 1855 feet south of the north line of said section nine (9); thence at right angles 30 feet; thence south 1320 feet; thence west to the Government meander line of Mercer Slough; thence northerly along said meander line to a point 1855 feet south of the north line of said section; thence east to the place of beginning, containing 37 acres more or less.

Also such additional widths or strips of land in any of said Government subdivisions as may be necessary to contain the slopes of the cuts and fills of the roadbed of such railroad, which roadbed is to be constructed having a width at grade of twenty-two (22) feet and the cuts to have a slope of one to one and the fills to have a slope of one and one half to one.

The Lake Washington Land Company for itself, its successors and assigns, hereby assigns to said Northern Pacific Railway Company its rights to purchase from the State of Washington any of the shore lands in front of any of the above named Government subdivisions embraced within a strip of land one hundred (100) feet in width, being fifty (50) feet on each side of the center line of the Seattle Eastern Branch of the Northern Pacific Railway Company as the same is located, staked out and now in the process of construction across said shore lands; but reserves to itself, its successors and assigns, the preference right to purchase from the State of Washington all shore lands outside

to one.

The Lake Washington Land Company for it. Its successors
and assigns hereby assigns to said Northern Pacific
Railway Company its rights to purchase from the State
of Washington any of the shore lands in front of any of
the above named government subdivisions embraced
within a strip of land one hundred (100) feet in width,
being fifty (50) feet on each side of the center line of the Seattle
Bellevue Branch of the Northern Pacific Railway Company as
the same is located, staked out and now in the process of
of construction across said shore lands but reserves to
itself, its successors and assigns, the preference right to
purchase from the State of Washington all shore lands outside
of said one hundred (100) foot strip.

In witness whereof the said Lake Washington Land Com-
pany has caused these presents to be executed by its Presi-
dent and Secretary thereunto duly authorized, and its corporate
seal to be affixed this 8 day of Sept. A.D. 1903.

                             Lake Washington Land Company

L.W.L.Co.
Corp. Seal

                       By T. H. Brownell, Its President

            Attest J. C. Connel, Its Secretary

State of Washington County of Snohomish — s.s.

On this 8 day of Sept. A.D. 1903 before me a Notary
Public, personally appeared T. H. Brownell to

42

149

J. C. Cornell to me known to be the President
and Secretary, respectively, of the corporation
that executed the within and foregoing instrument
and acknowledged the said instrument to be the
free and voluntary act and deed of said cor-
poration, for the uses and purposes therein men-
tioned and on oath stated that they were author-
ized to execute said instrument and that
the seal affixed is the corporate seal of said
corporation.

In witness whereof, I have hereunto set
my hand and affixed my official seal the
day and year first above written.

J. A. Coleman
Notary Public for the State of Washington
residing at Everett

Filed for record at request of Jay Sedgwick Feb 3, 19
at 53 min past 10 A. M.

County Auditor

Adolph Baker et ux
           to
Harry Kurtz
           Warranty Deed

Warranty Deed

This indenture witnesseth that Adolph Bak
and Mary Baker, his wife, parties of the f

43

287093

Lake Washington Land Company    }
to                              }        Warranty Deed.
Northern Pacific Railway Company }
              Deed.

 The Grantor the Lake Washington Land Company, a Corporation of the State of

Washington, in consideration of the sum of Two Thousand ($2000.00) Dollars, in hand paid,

conveys and warrants unto the Northern Pacific Railway Company, a Wisconsin Corporation, the

following described real estate situated in the County of King, State of Washington, to wit:

 All those portions of the following Government subdivisions lying within the exterior

lines of a right of way one hundred (100) feet in width which has for its boundaries two lines that

are parallel with and equidistant from the center line of the Seattle Belt line Branch of the

Northern Pacific Railway Company as the same is now located, staked out and now in process of

construction over and across or adjacent to said Government subdivisions, to wit:

 The Northwest quarter of the Northwest quarter (N.W./4 of N.W./4) and the Southwest

quarter of the Northwest quarter (S.W./4 of N.W./4) of Section thirty-three (33), Township

twenty-five (25) North, range five (5) east, Willamette Meridian; Lot four (4) (or the northwest

quarter of the northwest quarter—N.W./4 of N.W./4) the northwest quarter of the Southwest

quarter (N.W./4 of S.W./4), and the Southwest quarter of the Southwest quarter (S.W./4 of

S.W./4) of Section four (4), Township Twenty-four (24) North; Range five (5) east; Lot four (4)

of section twenty (20), Township twenty-four (24) north, Range five (5) east; Lots one (1) two

(2) and three (3) of Section twenty-nine (29), Township twenty-four (24) north, Range five (5)

east; Lot two (2) of Section thirty-two (32), Township twenty-four (24) North, Range five (5)

east; Lots three (3) and four (4) of Section thirty one (31), township twenty-four (24) North,

range five (5) east, and Lots two (2), three (3) and four (4) of Section five (5), township twenty-

three (23) north, Range five (5) east; Lots one (1), three (3) and four (4), the Northeast quarter of the Northwest quarter (N.E./4 of N.W./4), the southeast quarter of the Northwest quarter (S.E./4 of N.W./4), the northeast quarter of the Southwest quarter (N.E./4 of S.W./4), and the southeast quarter of the Southwest quarter (S.E./4 of S.W./4) of Section nine (9), Township twenty four (24) north, Range five (5) east, excepting there from any portions of any such subdivisions in said section nine (9) included within the following description:

Beginning at a point on the dividing line between the east half of the northwest quarter (E/2 of N.W./4) and the west half of the northwest quarter (W./2 of N.W./4) 1855 feet south of the north line of said section nine (9), thence east at right angles 300 feet; thence south 1320 feet; thence west to the Government meander line of Mercer slough; thence Northerly along said meander line to a point 1855 feet south of the north line of said section; thence east to the place of beginning, containing 37 acres more or less.

Also such additional widths or strips of land in any of said Government subdivisions as may be necessary to catch the slopes of the cuts and fills of the roadbed of such railroad which roadbed is to be constructed having a width at grade of twenty-two (22) feet and the cuts to have a slope of one to one and the fills to have a slope of one-and-one-half to one.

The Lake Washington Land Company for itself, its successors and assigns, hereby assigns to said Northern Pacific Railway Company its rights to purchase from the State of Washington any of the shore lands in grant of any of the above named government subdivisions embraced within a strip of land one hundred (100) feet in width, being fifty (50) feet on each side of the center line of the Seattle Belt line Branch of the Northern Pacific Railway Company as the same is located, staked out and now in the process of of [sic] construction across said shore lands

but reserves to itself, its successors and assigns, the preference right to purchase from the State of Washington all shore lands outside of said one hundred (100) foot strip.

In witness whereof the said Lake Washington Land Company has caused these presents to be executed by its President and Secretary, thereunto duly authorized, and its corporate seal to be affixed this 8 day of Sept. A.D. 1903.

{Seal}      Lake Washington Land Company by F.H. Brownell, Its President
             Attest. S.C. Corneil, Its Secretary.

State of Washington County of Snohomish— S.S.

On this 8 day of Sept. A.D. 1903, before me, a notary public, personally appeared F. H. Brownell and S.C. Corneil, to me known to be the President and Secretary, respectively, of the corporation that executed the within and foregoing instrument and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned and on oath stated that they were authorized to execute said instrument, and that the seal affixed is the corporate seal of said corporations.

In witness whereof I have hereunto set my hand and affixed my official seal the day and year first above written.

{Seal}      J.A. [illegible]
             Notary Public in and for the State of Washington residing at Everett.

Filed for record at request of Jay Sedgwick Feb. 3, 1904 at 53 min. past 10 A.M.

             Grant S Lamping
             County Auditor